## POLICYHOLDER NOTICE

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.



**Exhibit 1**

91222 (4/13)

* Subject to Protective Order *

**AIGS.000072**

*October 22, 2015*

Congratulations on purchasing your employment practices liability insurance policy from AIG, one of the premier writers of commercial insurance. Your policy offers many outstanding features, including coverage for claims arising from violations of Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act (ADA); the Age Discrimination in Employment Act (ADEA); the Equal Pay Act of 1963 (EPA); and the Rehabilitation Act of 1973 (REHAB ACT).

As a AIG policyholder, you have the confidence of knowing that your claims will be handled by experienced claims professionals. In addition, our panel counsel is comprised of leaders in employment practices law throughout the country. The services of these law firms are available to you at preferred AIG rates.

Additionally, our package includes loss-control services included automatically for all eligible insureds through **EPL Pak® Premier.** This insurance offering features access to our online EPL Risk Manager located at www.EPLriskmanager.com , designed exclusively for AIG EPL insureds by the attorneys at Littler Mendelson, the nation's largest labor and employment law firm. This web link is exclusive to AIG EPL insurance policyholders and is available at no additional cost. To register, you can log into the site with your policy number. The site offers tools and resources including:

- Human Resources Form Library
- Sample Employee Handbooks
- Employment Law Email Alerts
- Employment Law Policies
- Hire & Fire Manual

- Employment Law Reference Manuals (5000+ pages)
- 50 State Analysis of Key Employment Laws
- Preventing Unlawful Harassment Guide
- Preventing Employment Class Actions Manual
- Discounts on Employment Law Training

All forms and materials may be downloaded and customized. To view a short video tour of the risk management products and services available, please visit: http://eplriskmanager.com/take_tour.php. As a AIG policyholder, you also receive ten free seats to Littler Mendelson's monthly webinar series on preventing harassment in the workplace and discounts on over 40 employment law training courses. For additional information on these services you may contact Brian McMillan at Littler Mendelson at bmcmillan@littler.com or visit www.littler.com.

To complement these offerings, we continue to offer our risk management solutions provided by Jackson Lewis, LLP, a premier employment law firm with offices throughout the United States, including:

- Unlimited Access to the Jackson Lewis Toll Free Risk Management Hotline: (866) 614-0744
- One hour legal consultation with a Jackson Lewis attorney on any topic
- Seminars on topical issues of employment law, recent litigation development, and training
- Email subscription to The Jackson Lewis Newsletter, which highlights employment practices developments and trends
- Email updates regarding significant legislative actions, judicial decisions, and other changes which may impact your business
- Access to a self-audit checklist and a pre-termination checklist, which will assist companies in identifying potential vulnerability to employment claims
- Attendance at CAAB 1825 sexual harassment training in California

To learn more, please contact Paul Siegel at siegelp@jacksonlewis.com, Wendy Mellk at mellkw@jacksonlewis.com or view a free demonstration of training at www.jacksonlewis.com , or under the online training section or at www.workplaceanswers.com

Your decision to purchase coverage through AIG has provided your organization with powerful advantages in managing your business. We thank you for choosing AIG and look forward to a continuing successful relationship. If you have any questions or would like additional information, please contact your broker, a AIG representative or email us at executiveliability@AIG.com.

AIG is the marketing name for the worldwide property-casualty and general insurance operations of AIG Property Casualty Inc. For additional information, please visit our website at http://www.aig.com . All products are written by insurance company subsidiaries or affiliates of AIG Property Casualty Inc. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000073**





Financial Lines

# EPL Pak® Premier

## Employment Practices Training, Loss Prevention and Risk Management

Controlling employment practices liability exposures while keeping pace with employment litigation trends and regulatory changes is a major challenge for all employers. AIG gives its employment practices liability (EPL) policyholders a unique advantage with EPL Pak® Premier, industry-leading loss prevention offerings. The suite is a combination of training, loss control and risk management tools designed to help our clients manage employment practices risks. EPL Pak Premier's resources are exclusive to AIG, and provide our EPL policyholders with access to expertise and materials from two of the nation's foremost employment and labor law firms, Littler Mendelson, P.C. and Jackson Lewis LLP.

### Putting Experts By Your Side

EPL Pak Premier now includes instant access to www.eplriskmanager.com, which provides first-in-class risk management tools and resources from Littler Mendelson, a leading employment and labor law firm. Materials available include essentials to manage your workforce and reduce exposure to employment related liability including:

- **Handbooks and Policies:** Sample employee handbook and policies to help implement best employment practices, including supplemental information for all 50 states
- **Forms Library:** A library of commonly used human resource forms, which can be customized, to ease your administrative burden
- **Workforce Guides:** A hiring and firing guide to help employers mitigate the risks of these critical phases of the employment relationship and step-by-step guides to prevent harassment, including information to help address and resolve incidents and lessen potential liability
- **Legal Reference Materials:** Over 3,000 pages of employment law reference manuals providing insights on timely topics ranging from layoffs, downsizing, and furloughs, to workplace violence, discrimination, and employment class actions. Includes a state-by-state assessment of employment laws and regulations

EPL Pak Premier gives you access to expertise and resources from two of the nation's foremost employment and labor law firms, Littler Mendelson, P.C. and Jackson Lewis LLP.

**Exhibit 1**

\* Subject to Protective Order \*

**AIGS.000074**





Financial Lines

# EPL Pak® Premier

### State of the Art Enhancements

These state-of-the-art enhancements complement EPL Pak Premier's original package of risk management solutions from Jackson Lewis, LLP, which include:

- **Legal Consultation:** A one-hour legal consultation on human resources and employment law issues, such as how specific laws impact personnel decisions and potential exposure to liability
- **Liability Updates:** Access to the Jackson Lewis e-Newsletter and e-updates spotlighting important workplace law news and trends. Alerts on significant legislative actions, judicial decisions and other changes with potential impact on our insured's business
- **Checklists:** Self-audit and pre-termination checklists to help insureds identify vulnerabilities and safely navigate risky terrain
- **Special California State Training:** CA AB 1825 training, enabling companies with 50 or more employees in California to fulfill their mandate of providing sexual harassment training for supervisors every two years

EPL Pak Premier also includes Alternative Employment Dispute Resolution Programs from EDR Systems at preferred rates. EDR Systems will assist to resolve employee disputes internally and prevent time and money in litigation. The professionals at EDR Systems have more than 50 years of combined experience in human resource management, strategic planning, change management, and employee relations. They support a wide variety of businesses of all sizes, from national, multi-unit retail operations, to single-facility manufacturers, to professional firms.

To learn more about EPL Pak Premier services:

E-mail:
FinancialLines@aig.com

Visit:
www.aig.com

Contact:
Your insurance broker

 Bring on tomorrow

American International Group, Inc. (AIG) is a leading international insurance organization serving customers in more than 130 countries. AIG companies serve commercial, institutional, and individual customers through one of the most extensive worldwide property- casualty networks of any insurer. In addition, AIG companies are leading providers of life insurance and retirement services in the United States. AIG common stock is listed on the New York Stock Exchange and the Tokyo Stock Exchange.

Additional information about AIG can be found at www.aig.com | YouTube: www.youtube.com/aig | Twitter: @AIG_LatestNews | LinkedIn: www.linkedin.com/company/aig

AIG is the marketing name for the worldwide property-casualty, life and retirement, and general insurance operations of American International Group, Inc. For additional information, please visit our website at www.aig.com. All products and services are written or provided by subsidiaries or affiliates of American International Group, Inc. Products or services may not be available in all countries, and coverage is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain property-casualty coverages may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds, and insureds are therefore not protected by such funds.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000075**



## AIG Specialty Insurance Company

A capital stock company

POLICY NUMBER: 09-706-31-07         REPLACEMENT OF POLICY NUMBER: 01-910-21-63

**THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS
NOT SUBJECT TO ITS SUPERVISION.**

**Directors & Officers Liability Insurance, Employment Practices Liability Insurance, Fiduciary
Liability Insurance
DECLARATIONS**

NOTICES

[THESE NOTICES ARE APPLICABLE TO ALL COVERAGE SECTIONS OTHER THAN THE
CRIME COVERAGE SECTION AND KIDNAP AND RANSOM/EXTORTION COVERAGE
SECTION]

COVERAGE WITHIN THIS POLICY IS GENERALLY  LIMITED TO LOSS FROM CLAIMS  FIRST MADE
AGAINST INSUREDS DURING  THE POLICY PERIOD.  DEFENSE COSTS  REDUCE THE LIMITS  OF
LIABILITY (AND,  THEREFORE,  AMOUNTS  AVAILABLE TO RESPOND  TO SETTLEMENTS  AND
JUDGMENTS) AND ARE APPLIED AGAINST APPLICABLE RETENTIONS.

THE INSURER  DOES  NOT ASSUME  ANY DUTY TO DEFEND  UNLESS  SUCH COVERAGE  IS
EXPRESSLY PROVIDED WITHIN  A COVERAGE SECTION.   WHERE  THE INSURER HAS  NO DUTY
TO DEFEND,  IT WILL  ADVANCE  DEFENSE COSTS,  EXCESS OF THE  APPLICABLE RETENTION,
PURSUANT TO THE TERMS OF THIS POLICY NO LATER  THAN SIXTY (60) DAYS AFTER RECEIPT
OF INVOICES  OF SUCH DEFENSE COSTS.   PLEASE REFER  TO THE  COVERAGE SECTIONS
PURCHASED FOR DEFENSE RELATED DETAILS.

PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR
INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS NOT COVERED.

| ITEMS | | | | |
|---|---|---|---|---|
| 1 | **NAMED ENTITY:** | (the "Named Entity") | See Program Participants Endorsement | |
| 2 | **POLICY PERIOD:** | Inception Date: | 03/31/2015 Expiration Date: | 03/31/2017 |
| | | 12:01 A.M. at the address stated in Item 1 | | |

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000076**

| | | | |
|---|---|---|---|

| **ITEMS** (continued) | | | | |
|---|---|---|---|---|
| 3 | **COVERAGE SUMMARY** | | | |
| | **Liability, Retention, Continuity Date, and Premium Coverage Section** | | | |
| | **D&O** | **D&O Coverage Section** | See Program Participants Endorsement | |
| | **EPL** | **Employment Practices Coverage Section** | See Program Participants Endorsement | |
| | **FLI** | **Fiduciary Liability Coverage Section** | See Program Participants Endorsement | |
| | *With respect to the D&O, EPL, and FLI Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss.<br>*No Retention amount is applicable to Costs of Investigation for Company Shareholder Derivative Investigations, Crisis Management Events, Voluntary Compliance Loss and HIPAA Penalties. | | | |
| 4 | **TOTAL PROGRAM PREMIUM** | | | $ |
| 5 | **OTHER LIMITS OF LIABILITY** | See Program Participants Endorsement | | |
| 6 | **DISCOVERY** **PROVISIONS** (Inapplicable to Crime and KRE Coverage Sections) | **(a) Percentage of Full Annual Premium for; 1 YEAR:** | | 100% |
| | | **(b) 2 YEARS:** | | 110% |
| | | (c) **3 YEARS:** | | 120% |
| | | **(d) 4 YEARS:** | | 130% |
| | | **(e) 5 YEARS:** | | 140% |
| | | **(f) 6 YEARS:** | | 150% |
| | | **(g) Percentage of Full Annual Premium for unlimited duration:** | | 225% |
| 7 | **NAME AND ADDRESS OF INSUREDS' REPRESENTATIVE** | | | |
| | **TPG Growth**<br>345 California Street<br>Suite 3300<br>San Francisco, CA 94104 | | | |

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000077**

| 8(a) | NAME AND ADDRESS OF INSURER |
|------|------------------------------|
|      | **AIG Specialty Insurance Company**<br>**175 Water Street**<br>**New York, NY 10038**<br><br>**This Policy is issued only by the insurance company indicated in this Item 8(a).** |
| 8(b) | **NOTICE OF CLAIMS AND CIRCUMSTANCES SEND TO:** |
|      | **AIG Domestic Claims, Inc.**<br>175 Water Street<br>New York, New York 10038<br>Attention:      "C-Claims, D&O Claims"<br><br>**Reference:    09-706-31-07**<br><br>**Reference:   Appropriate Coverage Section** |

**Exhibit 1**

* Subject to Protective Order *

AIGS.000078

**IN WITNESS WHEREOF,** the **Insurer** has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____                              _____
**PRESIDENT**                                                      **SECRETARY**
AIG Specialty Insurance                              AIG Specialty Insurance
Company                                                          Company

_____
**AUTHORIZED REPRESENTATIVE**

_____   _____   _____
**COUNTERSIGNED AT**            **DATE**              **COUNTERSIGNATURE**

WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

1503641

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000079**

### GENERAL TERMS AND CONDITIONS

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

### 1. TERMS AND CONDITIONS

These **General Terms and Conditions** shall be applicable to all **Coverage Sections**. Terms appearing in these **General Terms and Conditions** which are defined in a **Coverage Section** shall have the meaning provided for such terms in such **Coverage Section** for purposes of coverage provided under such **Coverage Section**. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this Policy.

### 2. DEFINITIONS

(a)  " **Administrative Claim**" means an administrative or regulatory investigation:

(1) by the **EEOC** or similar federal, state or local agency; or

(2) of a violation of the Uniformed Services Employment and Reemployment Rights Act, when such investigation is conducted by the United States Department of Labor, Veterans Employment and Training Service, Justice Department or Office of Special Counsel;

which, in either case, is commenced by the filing of a notice of charges or similar document of which notice has been given to an **Insured**.

The term " **Administrative Claim**" shall not mean or include any **Litigated Matter**.

(b)  " **Application**" means:

(i)   the application attached to and forming part of this Policy, any attachments to such applications; and

(ii)  any materials submitted therewith, which shall be retained on file by the **Insurer** and shall be deemed to be physically attached to this Policy or incorporated therein.

(c)  " **Claim**" means:

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000080**

(i)      any written demand for monetary or non-monetary or injunctive relief (including, but not limited to, any request to toll or waive any statute of limitations);

(ii)      any civil, criminal, administrative or regulatory proceeding or arbitration, mediation or other dispute resolution proceeding for monetary or non-monetary or injunctive relief which is commenced by:

     (1)      service of a complaint, motion, writ or similar pleading or service of an order;

     (2)      return of an indictment, criminal complaint, information or similar document (in the case of a criminal proceeding);

     (3)      receipt of a notice of deposition;

     (4)      filing or service of a subpoena;

     (5)      receipt or filing of a notice of charges; or

     (6)      receipt of a request or demand to arbitrate or mediate;

(iii)      any civil, criminal, administrative or regulatory investigation or inquiry by a federal, state, local, foreign or offshore government authority or agency (including without limitation an investigation by the Equal Employment Opportunity Commission, the Securities and Exchange Commission, the Department of Labor, the Department of Justice, the Department of Treasury, any state attorney general's office or securities regulator, the Financial Services Authority, the Pension Benefit Guarantee Corporation or a Grand Jury) or any self-regulatory organization (including, but not limited to, the Financial Industry Regulatory Authority) but only after service of a subpoena, receipt of a Wells Notice, receipt of a "target" letter (within the meaning of Title 9, 11.151 of the United States Attorney's Manual) or receipt of a notice of investigation, notice of charges, SEC Form 1662, a civil investigative demand, a search warrant, service of a complaint or other similar document of which notice has been given to an **Insured**;

(iv)      any official written request for **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**;

(v)      the equivalent document in a **Foreign Jurisdiction** for (i)-(iv) above.

The term " **Claim**" shall also include any **Securities Claim**, **Contract Claim** or any **Derivative Demand**, and any equivalent thereof in any **Foreign Jurisdiction**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000081**

Solely with respect to coverage provided under D&O COVERAGE SECTION F: PRE-CLAIM INQUIRY COSTS FOR PRE-CLAIM INQUIRY, " **Claim**" also means a **Pre-Claim Inquiry**; provided, however, that a **Pre-Claim Inquiry** only shall constitute a **Claim** under this Policy only if the **Individual Insured** or **Company** elects to give to the **Insurer** written notice thereof pursuant to Clause 6. "NOTICE/CLAIM REPORTING PROVISIONS" of the policy, at which point such **Pre-Claim Inquiry** shall be deemed first made.

However, in no event shall the term " **Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(d)     " **Cleanup Costs**" means expenses, including, but not limited to, legal and professional fees incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(e)     " **Company**" means the **Named Entity** and any **Subsidiary** thereof. In the event a bankruptcy proceeding shall be instituted by or against a **Company**, the term " **Company**" shall also mean the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

(f)     " **Continuity Date**" means the date set forth in Item 4 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof with respect to each **Coverage Section**.

(g)     " **Coverage Section**" means each **Coverage Section** that is purchased by the **Insured** as indicated in each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(h)     " **Defense Costs**" means all reasonable fees (including but not limited to legal fees and experts' fees), costs, charges and expenses (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), incurred in the investigation, adjustment, defense and/or appeal of any **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**.   **Defense Costs** shall also include **Extradition Costs**.

Solely with regard to any **Pre-Claim Inquiry,** " **Defense Costs**" means only **Pre-Claim Inquiry Costs**.

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000082**

(i)     " **Designated Policy Aggregate Limit of Liability**"   means   the **Designated Policy Aggregate Limit of Liability** stated   in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(j)     " **Designated Separate Limit of Liability**" means the applicable **Separate Limit of Liability**, if any, stated in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(k)     " **Designated Shared Limit of Liability**" means the applicable **Shared Limit of Liability**, if any, stated in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof, which limit of liability shall be shared between all of the **Coverage Sections** which are listed below such **Designated Shared Limit of Liability** in each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon.

(l)     " **Discovery Period**" means **Discovery Period**, as that term is defined in Clause 8 of these **General Terms and Conditions**.

(m)    " **Domestic Partner**" means any natural person legally recognized as a domestic or civil union partner under the provisions of any:

   (i)     applicable federal, state or local law; or

   (ii)    program established by the **Company**.

(n)     " **Employee**" means any past, present or future employee, other than an **Executive** of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, volunteer, seasonal and temporary employee. An individual who is leased to the **Company**, contracted to perform work for the **Company**, or who is an independent contractor for the **Company**, shall also be an **Employee**, but only to the extent the **Company** provides indemnification to such leased or contracted individual.

(o)     " **Executive**" means:

   (i)     any past, present or future duly elected or appointed director, officer, board observer, trustee or governor, management committee member, member of the management board, supervisory board, advisory board or any other executive or board committee of a corporation, limited liability company, or joint venture, natural person general partner of a partnership, natural person limited partner, or equivalent position or any person found to have acted in such position under applicable law;

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000083**

     (ii)     any past, present or future person in a duly elected or appointed position in an entity which is organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (n)(i); or

     (iii)    any past, present or future General Counsel.

(p)    " **Financial Insolvency** " means:

     (i)     the appointment of a receiver, conservator, liquidator, trustee, rehabilitator, administrator or similar official to take control of, supervise, manage or liquidate an insolvent **Company**;

     (ii)     a **Company** becoming a debtor-in-possession pursuant to the United States bankruptcy law;

     (iii)    the filing by or against a **Company** of a petition under the bankruptcy laws of the United States of America; or

     (iv)    as to (i), (ii), (iii) in this Definition (o), any equivalent status in a **Foreign Jurisdiction**.

(q)    " **Foreign Jurisdiction** " means any jurisdiction, other than the United States or any of its territories or possessions.

(r)    " **Foreign Policy** " means the **Insurer's** or any other company of Chartis, Inc.'s ("Chartis") standard executive managerial liability policy (including any directors and officers, partnership, managerial, employment practices liability fiduciary or pension trust liability policy and all mandatory endorsements to such policies, if any) approved by Chartis to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this Policy. If more than one such policy exists, then " **Foreign Policy** " means the standard basic policy form typically offered for sale in that **Foreign Jurisdiction** for comparable risks by the Insurer or any other company of Chartis. The term " **Foreign Policy** " shall not include any professional liability coverage, also known as errors and omissions coverage.

(s)    " **Indemnifiable Loss** " means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to the fullest extent permitted by the certificate of incorporation, charter, by-laws, articles of association, limited liability company agreement, partnership agreement, operating agreement or other organizational documents of a **Company**.

(t)    " **Insurer** " means the insurance company indicated in the Declarations.

(u)    " **Insureds' Representative** " means the organization stated in Item 7 of the Declarations.

**Exhibit 1**

\* Subject to Protective Order \*

**AIGS.000084**

(v)   **"Litigated Matter"** means any civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by: (1) service of a complaint or similar pleading; or (2) return of an indictment, information or similar document (in the case of a criminal proceeding).

(w)   " **Management Control** " means:

    (i)   owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the manager or members of the management board of a limited liability company;

    (ii)   having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the manager(s) or the management board of a limited liability company;

    (iii)   possessing greater than 50% ownership interest in a corporation, joint venture or limited liability company;

    (iv)   possessing greater than 50% of the voting power of a partnership;

    (v)   having management and/or operational control of a company; or

    (vi)   <u>being the sole general partner of a limited partnership</u> or the sole manager of a limited liability company.

(x)   " **Named Entity** " means each **Named Entity** set forth in Item 1 of any **Program Participants Endorsement**, whether a corporation, association, limited liability company or any other type of business organization.

(y)   " **Non-Indemnifiable Loss** " means **Loss** that is not **Indemnifiable Loss.**

(z)   " **Outside Entity** " means:

    (i)   any not-for-profit organization; or

    (ii)   any for-profit organization, other than the **Company.**

(aa)   " **Outside Entity Executive** " means any:

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000085**

(i)    **Individual Insured** serving in the capacity as director, officer, board observer, trustee, advisor or governor of an **Outside Entity**, but only if such service is at the specific request, direction or consent of the **Company**; or

(ii)   any other person listed as an **Outside Entity Executive** in an endorsement to this Policy.

It is understood and agreed that, in the event of a disagreement between the Company and an individual as to whether such individual was acting "at the specific request, direction, or consent of the **Company**," this Policy shall abide by the determination of the **Company** on this issue and such determination shall be made by written notice to the **Insurer** within ninety (90) days after the **Claim** is first reported to the **Insurer** pursuant to the terms of the Policy. In the event no determination is made within such period, this Policy shall apply as if the **Company** determined that such **Individual Insured** was not acting at the **Company's** specific request, direction, or consent.

(bb)   " **Policy Period** " means the period of time from the inception date stated in Item 2 of the Declarations to the earlier of the expiration date stated in Item 2 of the Declarations or the effective date of cancellation of this Policy with respect to any particular **Named Entity** as set forth in Clause 7.

(cc)   " **Pollutants** " means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and **Waste**. " **Waste** " includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

(dd)   " **Prior Acts Date** " means the date set forth in Item 5 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(ee)   " **Prior AIG Policy** " means a valid and collectible policy providing substantially the same or similar coverage as is provided by this policy, issued to the **Named Entity** by the **Insurer** (or any other insurance company affiliate thereof), of which this policy is a continuous renewal.

(cc)   " **Program Participants Endorsement** " means each endorsement attached to this Policy entitled " **Program Participants Endorsement** " outlining the respective **Named Entity** insured hereunder and certain items and conditions specific to the coverage afforded under this Policy to such **Named Entity** and any **Insured** thereof, including the applicable Limits of Liability, Retention Amounts, **Continuity Dates**, **Prior Acts Date** and Premium Amount.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000086**

**(dd)** **Related Pre-Claim Inquiry"** means **Pre-Claim Inquiry(ies)** which are the same, related or continuous, or **Pre-Claim Inquiry(ies)** which arise from a common nucleus of facts. **Claims** can allege **Related Pre-Claim Inquiry(ies)** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

(ee) " **Related Claim**" means a **Claim** alleging, arising out of, based upon or attributable to any facts or **Wrongful Acts** that are the same as or related to those that were alleged in another **Claim** made against an **Insured**.

(ff)   " **Related Wrongful Act(s)**" means **Wrongful Act(s)** which are:

   (i)   the same or related facts, circumstances, situations, transactions or events or Wrongful Act(s) which arise from a common nucleus of facts; or

   (ii)   a series of related facts, circumstances, situations, transactions or events or continuous, or **Wrongful Act(s)** which arise from a common nucleus of facts.

(gg)   " **Subsidiary**" means:

   (i)   any for-profit entity, whose equity securities are not publicly traded, of which the particular **Named Entity** has or had **Management Control** (" **Controlled Entity**") on or before the inception date of the **Policy Period**, either directly or indirectly through one or more other **Controlled Entities**;

   (ii)   any for-profit entity, whose equity securities are not publicly traded, of which the particular **Named Entity** acquires **Management Control** during the **Policy Period**, either directly or indirectly through one or more other **Controlled Entities**; or

   (iii)   any not-for-profit entity sponsored exclusively by a **Company**.

   Notwithstanding the foregoing, coverage as is afforded under this Policy with respect to a **Claim** made against any **Subsidiary** or any **Individual Insureds** thereof (in their capacity as such) shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time (the "Acquisition Date") that the particular **Named Entity** obtained **Management Control** of such **Subsidiary** unless the Insurer agrees to provide coverage for **Wrongful Acts** taking place prior to the **Acquisition Date**. At the request of a particular **Named Entity**, the Insurer agrees to provide coverage for **Wrongful Acts** taking place prior to the **Acquisition Date** at no additional premium, but solely as respects to coverage provided under the **EPL Coverage Section** and the **FLI Coverage Section**, if applicable. However, in no event shall this Policy provide coverage for any **Claim** arising from a **Wrongful Act** that occurred prior to the **Acquisition Date** if any **Insured Person** of the particular **Named Entity** could reasonably expect that such **Wrongful Act** could give rise to a **Claim** against an **Insured** under the Policy.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000087**

There shall be no coverage afforded under this Policy with respect to a **Claim** made against any **Subsidiary** or any **Individual Insureds** thereof (in their capacity as such) for **Wrongful Acts** committed or allegedly committed after the time that such respective **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

## 3. EXTENSIONS

Subject otherwise to the terms hereof, this Policy shall cover **Loss** arising from any **Claim** made against:

(a)     the estates, heirs, or legal representatives of deceased **Individual Insureds**, and the legal representatives of **Individual Insureds** in the event of incompetency, insolvency or bankruptcy, who were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed;

(b)     the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** and the spouse or **Domestic Partner**, or property transferred from the **Individual Insured** to the spouse or **Domestic Partner**; *provided, however,* this extension shall not afford coverage for any **Claim** for any actual or alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims** arising out of any actual or alleged **Wrongful Acts** of an **Individual Insured**, subject to the Policy's terms, conditions and exclusions; or

(c)     any grantor trust, irrevocable trust, revocable trust, bypass trust, GST trust, marital trust, or other such trust(s), or any corporation, partnership limited liability company or other such entities used for estate planning purposes or any other estate planning or wealth management device(s), maintained by or for the benefit of such **Insured Person** or his/her spouse, children, or domestic partner, estate, heirs or assigns but only to the extent that any of the foregoing is subject to a **Claim** by reason of a **Wrongful Act** by an **Insured**.

## 4. LIMITS OF LIABILITY (FOR ALL LOSS IN THE AGGREGATE UNDER THIS POLICY AND UNDER EACH INDIVIDUAL COVERAGE SECTION - INCLUDING DEFENSE COSTS)

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000088**

The **Designated Policy Aggregate Limit of Liability** stated in Item 2 of each **Program Participants Endorsement** is the maximum limit of the **Insurer's** liability for all **Loss** (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**), including **Defense Costs**, under all **Coverage Sections** combined arising out of all **Claims** first made against the **Insureds** afforded coverage under such **Program Participant Endorsement** (in their capacity as such) during the **Policy Period** or the **Discovery Period** (if applicable); *provided, however,* the **Designated Policy Aggregate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** for the **Policy Period**.

If the **Designated Separate Limits of Liability** are stated in Item 2 of each **Program Participants Endorsement**, then each such **Designated Separate Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**), including **Defense Costs**, arising out of all **Claims** first made against the **Insureds** afforded coverage under such **Program Participant Endorsement** (in their capacity as such) during the **Policy Period** or the **Discovery Period** (if applicable) with respect to the applicable **Coverage Section** as stated on each **Program Participants Endorsement**; *provided, however,* the **Designated Separate Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Designated Separate Limit of Liability** for the **Policy Period**. Each **Designated Separate Limit of Liability** shall be part of and not in addition to the **Designated Policy Aggregate Limit of Liability** for all **Loss** under this Policy and shall in no way serve to increase the **Insurer's Designated Policy Aggregate Limit of Liability** as therein stated.

If the **Designated Shared Limits of Liability** are stated in Item 2 of each **Program Participants Endorsement**, then each such **Designated Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**) arising out of all **Claims** first made against the **Insureds** afforded coverage under such **Program Participant Endorsement** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Designated Shared Limit of Liability** is applicable, as indicated on each **Program Participants Endorsement**; *provided, however,* with respect to all **Coverage Sections** that have a **Designated Shared Limit of Liability**, the **Designated Shared Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Designated Shared Limit of Liability** for the **Policy Period**. Each **Designated Shared Limit of Liability** shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** for all **Loss** under this Policy and shall in no way serve to increase the **Designated Policy Aggregate Limit of Liability** as therein stated.

Notwithstanding the above, it is expressly understood and agreed that each **Named Entity** shall have its own **Designated Policy Aggregate Limit of Liability** which shall be in addition to, and not part of the **Designated Policy Aggregate Limit of Liability** for any of the other **Named Entity(ies)**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000089**

Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 6(b) or 6(c) of these **General Terms and Conditions** is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the **Designated Policy Aggregate Limit of Liability** and subject to any applicable **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**.

**Defense Costs** are not payable by the **Insurer** in addition to the **Designated Policy Aggregate Limit of Liability** or any applicable **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**. Defense Costs are part of **Loss** and as such are subject to the **Designated Policy Aggregate Limit of Liability** for **Loss** and any applicable **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**. Amounts incurred for **Defense Costs** shall be applied against the Retention and will reduce and may exhaust the **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**.

## 5. RETENTION CLAUSE

The Retentions stated in Item 6 of the respective **Program Participants Endorsement** are separate Retentions pertaining only to the **Coverage Section** for which they are stated in the respective **Program Participants Endorsement**. The application of a Retention to **Loss** under one **Coverage Section** shall not reduce the Retention applicable under any other **Coverage Section**.

In the event a **Claim** triggers a Retention in multiple **Coverage Sections**, then the following shall apply:

(a)     with regard to **Loss** which is payable under any **Coverage Section** which is subject to a **Designated Separate Limit of Liability**, the Retention applicable to such **Loss** pursuant to the Retention Clause of such **Coverage Section** (or pursuant to any applicable endorsement) shall apply separately to such **Loss**, and the applicable Retention for such **Coverage Section** shall not be reduced by payments of **Loss** made towards the Retention required under any other **Coverage Section**; and

(b)     with regard to **Loss** which is payable under any **Coverage Sections** which are subject to a **Designated Shared Limit of Liability**, the highest applicable Retention shall be deemed the Retention applicable to **Loss** arising from such **Claim**.

## 6. NOTICE/CLAIM REPORTING PROVISIONS

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000090**

Notice hereunder shall be given by electronic mail, facsimile transmission or certified mail to the addressee and at the address identified in Item 8(b) of the Declarations; Attention: Claim Department. Notice shall include and reference this policy number as indicated in the Declarations, as well as the **Coverage Section** under which the **Claim** is being noticed. If sent certified mailed or by electronic mail, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

The following shall apply:

(a)     The **Insureds** shall give written notice to the **Insurer** of any **Claim** made against an **Insured** or a **Crisis Management Event** as soon as practicable after: (i) the **Company's** General Counsel (or equivalent position) first becomes aware that total **Loss** (including **Defense Costs**) of a **Claim** is reasonably estimated to exceed FIFTY PERCENT (50%) of the applicable Retention (unless he or she is prohibited by court order to disclose the details or existence of such **Claim**); or (ii) the **Crisis Management Event** commences, but in all events a **Claim** must be reported no later than either:

(i)     anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

(ii)    within ninety (90) days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

(b)     If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 6(a) above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was given.

(c)     If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Insureds** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000091**

Notwithstanding the foregoing, the  provisions of this  Clause 6. shall  not apply to  any **Pre-Claim Inquiry** that the **Insured** elects not  to treat as  a **Claim** as  provided in the definition of **Claim**.

Additionally, to the  extent that  an **Insured** gives  notice to  the **Insurer** in accordance with this  CLAUSE 6. NOTICE/CLAIM  REPORTING PROVISIONS  (c) and a **Claim** subsequently  arises from such  specific circumstances, **Defense Costs** shall also mean  all legal fees incurred  in the investigation and/or  defense of any such specific circumstances that are incurred:

(i)      on or after the date of such notice is received by the Insurer; and

(ii)     prior to the time such specific circumstances rise to the level of a **Claim**

(d)     Any matter which  could  involve the  payment of **Voluntary Compliance Loss** under the **FLI Coverage  Section** shall be  reported  to the **Insurer** in  the  same manner as a **Claim** under Clause 6(a)(i) and 6(a)(ii) above.

**Note:** With respect  to this  CLAUSE 6. NOTICE/CLAIM REPORTING  PROVISIONS (a), the coverage provided by this Policy shall apply to the broadest extent permitted by law and the availability  of such coverage, and the  adequacy and timeliness of notice pursuant to  CLAUSE 6. NOTICE/CLAIM  REPORTING  PROVISIONS  (a)  shall be determined by the law of the jurisdiction most favorable to such coverage.

The following shall apply solely with respect to the  **EPL Coverage Section**:

(e)     **Claims Savings Clause for Employment Practices Claims**

1. Notwithstanding the  foregoing, with respect  to any **Claim** which (i)  first becomes a **Litigated  Matter** during  the **Policy Period**  or **Discovery  Period** (if applicable); and (ii)  is a **Related Claim**  with respect to  an **Administrative Claim** which was first made against an **Insured** prior to the **Policy Period**,  the **Insurer** shall  not deny  coverage for such  **Claim** based  upon late  notice of such **Claim** or based  upon such **Claim** first  being made prior to  the **Policy Period**, provided that:

(a)     the **Claim** was first  made against the **Insured**  at a time  during which the particular **Named Entity** was insured under a **Prior AIG Policy**;

(b)     upon the **Claim** first  becoming a **Litigated Matter**, the **Claim** was reported in accordance with Clause 6(a) above; and

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000092**

(c)    no **Insured** has made a monetary settlement offer to a claimant or responded to a monetary demand from or on behalf of a claimant with respect to such **Claim**.

2.   Coverage under this policy for any **Claim** afforded coverage pursuant to this Clause 6(e) shall be the lesser of:

(a)    the coverage which would have been provided under this policy for such **Claim** had the **Claim** been made during the **Policy Period** and reported to the **Insurer** as required by this policy; or

(b)    the coverage, if any, which would have been provided under the **Prior AIG Policy** for such **Claim** if the **Insured** had properly provided notice of such **Claim** in accordance with the provisions of the **Prior AIG Policy**,

taking into account all provisions of each policy, including, without limitation, applicable limits of liability (as reduced by payments made under such policy), retentions, exclusions and other restrictions contained in each policy;

Notwithstanding the foregoing, nothing in this Clause 6(e) shall be construed to increase the **Limit of Liability** of this policy or to provide coverage under the **Prior AIG Policy**, nor shall this Clause 6(e) ever result in providing coverage under this policy for **Loss** for which coverage is in fact provided (or would be provided but for the exhaustion of the limit of liability) under the **Prior AIG Policy**.

3. This Clause 6(e) shall not apply to any **Claim** which:

(a)    prior to the **Policy Period** was a **Litigated Matter**; or

(b)    is a **Related Claim** with respect to a **Claim** which, prior to the **Policy Period** was a **Litigated Matter**.

4. The following definitions shall apply to this Clause 6(e):

## 7. CANCELLATION CLAUSE

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000093**

This Policy or any individual **Coverage Section** may be canceled by the **Insureds' Representative** at any time by e-mailing or mailing by certified mail prior written notice to the **Insurer** stating which **Coverage Sections** are to be canceled or that the entire Policy is to be canceled and when thereafter such cancellation shall be effective, or by surrender thereof to the **Insurer** or its authorized agent. The e-mailing or mailing of such notice shall be sufficient notice and the effective date of cancellation shall be the date the **Insurer** received such notice or any later date specified in the notice, and such effective date shall become the end of the Policy or applicable **Coverage Sections**.

This Policy may only be canceled by or on the behalf of the **Insurer** with respect to any particular **Named Entity** only in the event of non-payment of premium of the **Named Entity's** respective annual premium amount as set forth in Item 7 of the **Program Participants Endorsement**. In the event of non-payment of premium by any particular **Named Entity**, the **Insurer** may cancel this Policy solely by delivering to such respective **Named Entity** and its authorized agent or by mailing to the particular **Named Entity** and its authorized agent, by registered, certified or other first class mail, at the **Insureds' Representative** address as stated in Item 7 of the Declarations and the agent of record's New York address, Attention: Willis M&A Group, written notice stating when, not less than fifteen (15) days thereafter, the cancellation shall be effective; *provided, however,* that if the unpaid premium is paid in full before 12:01 am on the 16th day following receipt by the particular **Named Entity** and its authorized agent of the notice of cancellation, then, in that event, the **Insurer** may not cancel this Policy. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** for the particular **Named Entity** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the Policy was in effect. This Policy shall remain in full force and effect for all remaining **Named Entities**, including **Insureds** thereof, that comply with this Clause 7, subject to all other terms, conditions, and exclusions of this Policy.

If the period of limitation relating to the giving of notice as set forth above is also set forth in any applicable law controlling the construction thereof, the period set forth above shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

It is further understood and agreed that the premium amount set forth in Item 7 of the applicable **Program Participants Endorsement** for the respective **Named Entity** shall be fully earned as of the inception date of this Policy; *provided, however,* should a particular **Named Entity** make a public offering of equity securities and incepts a new management liability policy or policies with similar coverage afforded herein with the **Insurer** or any member company of Chartis, Inc. ("Chartis"), then the particular **Named Entity** will be entitled to a pro-rata return payment of its unearned premium.

## 8. DISCOVERY CLAUSE

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000094**

If the **Insureds' Representative** shall cancel, either in total or on behalf of a particular **Named Entity** or the **Insureds' Representative** or the **Insurer** shall refuse to renew this Policy, either in total or on behalf of a particular **Named Entity,** or the **Insureds' Representative** or the **Insurer** shall refuse to renew any **Coverage Section**, either in total or on behalf of a particular **Named Entity**, then, solely with regard to the Policy or **Coverage Section** which was canceled or non-renewed, the **Insureds' Representative** or the respective **Named Entity** shall have the right, upon payment of the applicable "**Additional Premium Amount**" described below, to a period of up to six (6) years or of unlimited duration following the effective date of such cancellation or nonrenewal (herein referred to as the "**Discovery Period**"), in which to give the **Insurer** written notice of **Claims** first made against any **Insured** during said **Discovery Period** for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by the canceled or non-renewed Policy or **Coverage Section**, as applicable. The rights contained in this Clause 8 shall terminate, however, unless written notice of such election together with the **Additional Premium Amount** due is received by the **Insurer** within thirty (30) days of the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for the elected **Discovery Period** shall be the "**Full Annual Premium**" (as defined below) multiplied by the applicable percentage amount indicated in Item 6 of the Declarations for the length of time elected for the **Discovery Period**.

As used herein, "**Full Annual Premium**" means:

(a)     with regard to a canceled or non-renewed Policy, the premium level in effect immediately prior to the end of the Policy Period for each respective **Named Entity** based off the premium amount set forth in Item 7 of the applicable **Program Participants Endorsement** for the respective **Named Entity**; or

(b)     with regard to a canceled or non-renewed **Coverage Section**, the total annual premium charged for the respective **Named Entity** for such **Coverage Section**.

In the event of a **Transaction**, as defined in Clause 9 of these **General Terms and Conditions**, as of the effective time of the **Transaction**:

(a)     This Policy shall continue in full force and effect as to **Wrongful Acts** occurring on or prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this Policy for any **Wrongful Act** occurring after the effective time of the **Transaction**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000095**

(b)     The particular **Named Entity** shall have the right to a period of up to six (6) years following the effective time of the **Transaction** (hereinafter " **Run-Off Period** ") in which to give written notice to the **Insurer** of **Claims** first made against the **Insureds** during said **Run-Off Period** for any **Wrongful Act** occurring on or prior to the effective time of the **Transaction** and otherwise covered by this Policy, provided that in all events the coverage as is afforded by the **Run-Off Period** shall be conditioned upon the particular **Named Entity** paying when due any additional premium owed to the **Insurer**. If the particular **Named Entity** shall not exercise this right, then the **Insureds' Representative**, or any subsidiary thereof that is not an **Insured**, shall have the right to exercise such right with respect to such particular **Named Entity** upon payment of the requisite additional premium on the same terms and subject to the same limitations and conditions as would have applied to the particular **Named Entity** if it had exercised such right. In the event the **Insureds' Representative** or any such subsidiary exercise such right, then the resulting coverage afforded by the Policy shall be no less or greater than would have resulted had the particular **Named Entity** exercised such right, and in no way shall the **Insureds' Representative** or any other person or entity that is not an Insured under the Policy be afforded coverage as a result of the exercise of such right.

(c)     The additional premium for the election of the **Run-Off Period** shall be no more than 150% of the **Full Annual Premium** less any **Remaining Pro-Rata Premium** of this Policy (as used herein, " **Remaining Pro-Rata Premium** " shall be determined by multiplying the **Daily Premium** by the **Remaining Policy Period**. The **Daily Premium** means the total **Policy Period** premium for the respective **Named Entity** based off the premium amount set forth in Item 7 of the applicable **Program Participants Endorsement** for the respective **Named Entity** divided by total number of days in the **Policy Period**. The **Remaining Policy Period** means the number of days between the effective time of the **Transaction** and the expiration date of the **Policy Period**. The **Insurer** hereby agrees that if the amount of the **Remaining Pro-Rata Premium** exceeds the **Run-Off Premium** then the **Insurer** shall return to the particular **Named Entity** that amount of the **Remaining Pro-Rata Premium** which exceeds the **Run-Off Premium**.

The **Run-Off Period** shall be subject to all the terms, conditions and limitations of this Policy. The **Run-Off Period** shall not provide coverage for any **Wrongful Act(s)** occurring after the effective time of the **Transaction**.

The **Discovery Period** or **Run-Off Period** is not cancelable, except that the **Insurer** may cancel the **Discovery Period** or **Run-Off Period** for non-payment of premium. This Clause 8 and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000096**

The **Designated Limit of Liability** for the **Run-Off Period** shall be part of and not in addition to the remaining **Designated Limit of Liability** for each respective **Named Entity** in the **Program Participants Endorsement** as of the **Transaction**. In no way shall the language of this endorsement be construed to reinstate, renew or increase the **Designated Limit of Liability** or the **Run-Off Period**.

9. **CHANGE IN CONTROL OF NAMED ENTITY**

If during the **Policy Period**:

(a)     any particular **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(b)     any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of any particular **Named Entity**;

(either of the above events herein referred to as the " **Transaction**"),

then, with respect to such **Named Entity** which is subject to a **Transaction** (hereinafter referred to as " **Transaction Named Entity**"), this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this Policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**.

This Policy and any purchased **Coverage Section** may not be canceled after the effective time of the **Transaction**. The particular **Named Entity** shall also have the right to an offer by the **Insurer** of a **Run-Off Period** described in Clause 8 of these **General Terms and Conditions**.

10. **SUBROGATION**

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000097**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to each **Insured's** rights of recovery thereof, and each **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to bring suit in the name of the **Insured**. In no event, however, shall the **Insurer** exercise or pursue, directly or indirectly, any right(s) of recovery, right(s) of subrogation or other rights against any **Insured** under this Policy or the **Insureds' Representative**, unless such **Insured** or **Insureds' Representative** has been convicted of a criminal act, or been determined by a final, non-appealable adjudication in the underlying proceeding to have committed a dishonest, fraudulent act or willful violation of any statute, rule or law, or determined by a final adjudication to have obtained any profit or advantage to which such **Insured** was not legally entitled. For purposes of this Clause, in order for a criminal act to permit the **Insurer** to exercise or pursue any rights of subrogation against any **Insured** under this Policy, the act must be a criminal violation in the United States of America.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances; *provided, however,* the **Insurer's** subrogation rights shall not include the assertion of indemnification or contribution rights against the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**. Additionally, upon the **Insurer** making any payment of **Loss** within the Retention, the **Insurer** shall have a direct contractual right under this Policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States) such **Loss** which was paid by the **Insurer** within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Clause 10 and any other rights the **Insurer** may have under applicable law.

**11.OTHER INSURANCE**

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000098**

With respect to all **Coverage Sections**, other than the **EPL Coverage Section** and except in the case of (a) personal liability insurance maintained by an **Individual Insured**, or (b) insurance available to an **Individual Insured** through the **Insureds' Representative** or any investment fund established by the **Insureds' Representative**, such insurance as is provided by this Policy shall apply only as excess over any other valid and collectible insurance which actually pays **Loss** otherwise covered by this Policy, unless such other valid and collectible insurance is expressly written to be excess over the **Designated Policy Aggregate Limit of Liability** or any applicable **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** provided by this Policy. Except as provided herein, this Policy specifically shall be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend, and does actually defend, a **Claim** for which this Policy may be obligated to pay **Loss**.

Such insurance as is provided by the **EPL Coverage Section** shall be primary unless expressly written to be excess over other applicable insurance.

Such insurance that is provided by this Policy shall apply as primary insurance with respect to:

(a)   any other valid and collectible insurance issued to the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**, which covers similar exposures;

(b)   any indemnification or indemnification agreements provided by the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**;

(c)   any other valid and collectible private equity or venture capital liability, general partner liability, or other similar management or professional liability insurance maintained by the **Insureds' Representative** or any direct or indirect parent, subsidiary or any affiliate (other than the **Company**) thereof;

(d)   any other indemnification which may be owed to an **Individual Insured** by a direct or indirect shareholder or any affiliate of the **Named Entity** (other than the **Company**); and

(e)   any personal umbrella insurance coverage available to any **Individual Insured**.

With respect to all **Coverage Sections** and notwithstanding the foregoing, in the event of a **Claim** against an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** or independent contractor **Employee** as described in the definition of "**Employee**" in the applicable **Coverage Section**, coverage as is afforded by this Policy shall be specifically excess of any:

(a)   indemnification paid by such **Outside Entity** or leasing company; and

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000099**

(b)     other valid and collectible insurance provided to such **Outside Entity** or its **Executives**, leasing company or independent contractor;

provided, however, that any otherwise covered **Loss** of an **Outside Entity Executive** which is paid by an **Outside Entity** or by valid and collectible insurance coverage afforded to such **Outside Entity Executive** shall be applied to and erode any retention under this policy which is applicable to such **Outside Entity Executive**.

## 12. NOTICE AND AUTHORITY

Except for the giving of a notice of **Claim**, which shall be governed by the provisions of Clause 6 of these **General Terms and Conditions**, all notices required under this Policy to be given by the **Insured** to the **Insurer** shall be given by e-mail or by certified mail to the **Insurer** at the address stated in Item 8(a) of the Declarations. It is agreed that the **Insureds' Representative** shall act on behalf of all **Named Entities** and all **Insureds** with respect to the giving and receiving of notice of cancellation and nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the receipt and acceptance of any endorsements issued to form a part of this Policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

## 13. ASSIGNMENT

This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which consent shall be in the sole and absolute discretion of the **Insurer**.

## 14. DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this Policy, whether arising before or after termination of this Policy, including any determination of the amount of **Loss**, must first be submitted to the non-binding mediation process as set forth in this Clause.

The non-binding mediation will be administered by any mediation facility to which the **Insurer** and the particular **Named Entity** mutually agree, in which all implicated **Insureds** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the American Arbitration Association's (" **AAA**") then-prevailing Commercial Mediation Rules. The parties shall mutually agree on the selection of a mediator. The mediator shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator shall also give due consideration to the general principles of the law of the state where the particular **Named Entity** is incorporated in the construction or interpretation of the provisions of this Policy.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000100**

In the event that such non-binding mediation does not result in a settlement of the subject dispute or difference:

(i)     either party shall have the right to commence a judicial proceeding; or

(ii)    either party shall have the right, with all other parties consent, to commence an arbitration proceeding with the **AAA** that will be submitted to an arbitration panel of three (3) arbitrators as follows:

    (1)    the **Insured** shall select one (1) arbitrator;

    (2)    the **Insurer** shall select one (1) arbitrator; and

    (3)    said arbitrators shall mutually agree upon the selection of the third arbitrator. The arbitration shall be conducted in accordance with the **AAA's** then prevailing Commercial Arbitration Rules.

Notwithstanding the foregoing, no such judicial or arbitration proceeding shall be commenced until at least thirty (30) days after the date the non-binding mediation shall be deemed concluded or terminated. Each party shall share equally the expenses of the non-binding mediation. All applicable statutes of limitation shall be tolled during the pendency of the mediation and during such thirty (30) day period following the conclusion and termination of the mediation.

The non-binding mediation and arbitration proceeding may be commenced in either New York or in the state indicated in Item 1 of the **Program Participants Endorsement** as the mailing address for the respective **Named Entity**. The respective **Named Entity** shall act on behalf of each and every **Insured** in connection with any non-binding mediation under this Clause, the selection of arbitration or judicial proceeding or the selection of mediators or arbitrators.

## 15. ACTION AGAINST INSURER

Except as provided in Clause 14 above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy by the **Insured**, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000101**

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Insurer** as a party to any action against the **Insured** or the **Company** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by the **Insured** or the **Company** or their legal representatives. Bankruptcy or insolvency of the **Company** or any **Insured** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

## 16. WORLDWIDE TERRITORY

Where legally permissible, this Policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

## 17. SERVICE OF SUIT

Subject to Section 14 of this Policy, it is agreed that in the event of failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this Clause 17 constitutes, or should be understood to constitute, a waiver of the **Insurer's** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, Chartis Specialty Insurance Company, 70 Pine Street New York, NY 10270, or his or her representative, and that in any suit instituted against the **Insurer** upon this contract, the **Insurer** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## 18. REPRESENTATIONS AND SEVERABILITY

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000102**

In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this Policy as being accurate and complete in all material respects. All such statements and representations are the basis of this Policy and are to be considered as incorporated into this Policy.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the Policy and there is a **Claim** based upon or arising out of such particulars or statements, then no coverage shall be afforded under this Policy for such **Claim** with respect to any **Individual Insured** who had actual knowledge as of the inception date of the **Policy Period** that the material facts were not accurately and completely disclosed in the **Application** and only to the extent is was made with the intent to deceive the Insurer. Such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

The **Insurer** shall not be entitled under any circumstances to rescind coverage under this Policy with respect to any **Insured**, but such coverage will be subject to all other terms, conditions and exclusions of this Policy.

It is understood and agreed that this Clause 18. REPRESENTATIONS AND SEVERABILITY supersedes any inconsistent language contained in the **Application**.

## 19. ACQUISITION OR CREATION OF ANOTHER COMPANY BY THE INSUREDS' REPRESENTATIVE

If during the **Policy Period**, the **Insureds' Representative** acquires equity or debt securities in any for-profit organization whose securities are not publicly traded and whose assets total less than $125,000,000 of the acquisition date then, subject to the terms and conditions of this Policy, such company and the **Insureds** thereof (hereinafter " **New Portfolio Company Insureds** ") shall be covered under this Policy as a **Named Entity** with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Insurer** agrees to provide coverage for **Wrongful Acts** taking place prior to such acquisition or creation. At the request of a **New Portfolio Company Insured**, the **Insurer** agrees to provide coverage under the **EPL Coverage Section** and the **FLI Coverage Section** for **Wrongful Acts** taking place prior to such acquisition at no additional premium.

**Exhibit 1**

MNSCPT                    24

* Subject to Protective Order *

It is understood and agreed that such coverage provided to these **New Portfolio Company Insureds** will be subject to a $5,000,000 **Designated Shared Limit of Liability** under the **D&O Coverage Section**, a $5,000,000 **Designated Shared Limit of Liability** under the **EPL Coverage Section** and a $1,000,000 **Designated Separate Limit of Liability** under the **FLI Coverage Section**. The applicable Retentions for each **New Portfolio Company Insured** will be $25,000 for the **D&O Coverage Section**, $25,000 for the **EPL Coverage Section** and $0 for the **FLI Coverage Section**. It is further understood that coverage for these **New Portfolio Company Insureds** includes a $1,000,000 **Contractual Defense Costs Sublimit of Liability.**

It is further understood that, notwithstanding the foregoing, the following shall apply to any coverage provided under this Policy to any **New Portfolio Company Insureds**:

(i) In the event this policy has a **Policy Period** of greater than one year and a **New Portfolio Company Insured** becomes an **Insured** during the first policy year, then coverage for such **New Portfolio Company Insureds** after the first policy year is subject to the **Insured** providing the **Insurer** with full particulars of the **New Portfolio Company Insureds** and paying when due any additional premium required by the **Insurer** relating to such **New Portfolio Company Insureds**;

(ii) Coverage as is provided under the **EPL** and **FLI Coverage Sections** to any **New Portfolio Company Insured** for **Wrongful Acts** taking place prior to its acquisition shall be subject to a known **Wrongful Acts** exclusion to be added to the policy via endorsement, unless such **New Portfolio Company Insured** had employment practices liability insurance or fiduciary liability insurance (as applicable) in the amount of $5,000,000 or greater for each coverage at the time of its acquisition; and

(iii) Coverage as is provided under the policy to any **New Portfolio Company Insured** that is in the healthcare industry or higher education industry shall be subject to the **Insurer's** standard industry endorsements for such industries, which shall be added to the policy via endorsement

The **Insurer** shall extend coverage for any **New Portfolio Company Insureds** described above, and any **Insured Person** thereof, so long as the **Insureds' Representative** shall have provided the **Insurer** with full particulars of the **New Portfolio Company Insured** no later than: (i) thirty (30) days after the acquisition date; or (ii) the end of the **Policy Period**, whichever is earlier.

## 20. HEADINGS

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000104**

## DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE
## ("D&O COVERAGE SECTION")

**Notice: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this D&O Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this D&O Coverage Section. This is a Claims Made Coverage Section with Defense Expenses included in the Designated Separate Limit of Liability or the Designated Shared Limit of Liability.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

### 1. INSURING AGREEMENTS

With respect to Coverage A, B, D E, and F and the Defense Provisions, solely with respect to **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this Policy, and subject to the other terms, conditions and limitations of this Policy, this **D&O Coverage Section** affords the following coverage:

#### COVERAGE A: INDIVIDUAL INSURED INSURANCE

This **D&O Coverage Section** shall pay the **Loss** of an **Individual Insured** of the **Company** arising from a **Claim** made against such **Individual Insured** for any **Wrongful Act** of such **Individual Insured**, except when and to the extent that the **Company** has indemnified such **Individual Insured**. The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

#### COVERAGE B: PRIVATE COMPANY INSURANCE

This **D&O Coverage Section** shall pay the **Loss** of the **Company** arising from a:

(i)     **Claim** made against the **Company**; or

(ii)    **Claim** made against an **Individual Insured**;

for any **Wrongful Act**, but, in the case of Coverage B(ii) above, only when and to the extent that the **Company** has indemnified the **Individual Insured** for such **Loss**. The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

#### COVERAGE C: CRISISFUND® INSURANCE

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000105**

This **D&O Coverage Section** shall pay the **Crisis Management Loss** of a **Company** solely with respect to a **Crisis Management Event** occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this Policy, up to the amount of the **Crisis Management Fund**; provided that payment of any **Crisis Management Loss** under this **D&O Coverage Section** shall not waive any of the **Insurer's** rights under this **D&O Coverage Section** or at law. This Coverage C shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis**

**Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the **Claim** being first made.

### COVERAGE D: COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND

This **D&O Coverage Section** shall pay the **Costs of Investigation** of the **Company** arising from a **Company Shareholder Derivative Investigation** in response to a **Derivative Demand** up to the amount set forth in Item 5 of the Declarations as amended by Item 3(b) of each **Program Participants Endorsement**. Payment of **Costs of Investigation** to a **Company** shall be made in accordance with and subject to Clause 7 of this **D&O Coverage Section**.

### COVERAGE E: CONTRACT CLAIM DEFENSE COSTS COVERAGE

This **D&O Coverage Section** shall pay the **Defense Costs** of a **Company** arising from a **Contract Claim** up to the amount set forth in Item 5 of the Declarations as amended by Item 3(e) of each **Program Participants Endorsement**. Payment of **Defense Costs** to a **Company** shall be made in accordance with and subject to Clause 7 of this **D&O Coverage Section**.

### COVERAGE F: PRE-CLAIM INQUIRY COSTS FOR PRE-CLAIM INQUIRY

(a) This policy shall pay the **Loss** of any **Individual Insured** arising from a **Pre-Claim Inquiry** first received by such **Individual Insured** during the **Policy Period** or any applicable **Discovery Period**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**; except when and to the extent that an **Company** has indemnified such **Individual Insured**; and

(b) This policy shall pay the **Loss** of a **Company** arising from a **Pre-Claim Inquiry** first received by such **Individual Insured** during the **Policy Period** or any applicable **Discovery Period**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**, but only to the extent that such **Company** has indemnified such **Individual Insured**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000106**

**DEFENSE PROVISIONS**

The **Insurer** does not assume any duty to defend. The **Insurer** shall advance **Defense Costs** of such **Claim**, excess of the applicable Retention amount, on a current basis and, in any event, no later than sixty (60) days after the receipt of invoices of such **Defense Costs**. Selection of counsel to defend a **Securities Claim** shall be made in accordance with Clause 9 of this **D&O Coverage Section**.

With respect to Coverage D above, it shall be the duty of the **Company** and not the duty of the **Insurer** to conduct, investigate and evaluate any **Company Shareholder Derivative Investigation** against its own **Executives**; *provided, however,* that the **Insurer** shall be entitled to associate in the investigation and evaluation of, and the negotiation of any settlement of, any such **Company Shareholder Derivative Investigation**.

2. **DEFINITIONS**

(a) " **Affiliate**" means:

    (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, a **Company**; or

    (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

(b) " **Asset Protection Costs**" means reasonable fees, costs and expenses consented to by the **Insurer** incurred by an **Executive** of a **Company** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

(c) " **Company Shareholder Derivative Investigation**" means the investigation by the **Company** or, on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Company** should bring the civil proceeding demanded in a **Derivative Demand**.

(d) " **Contract Claim**" means any **Claim** for any actual or alleged contractual liability of the **Company** under any express written contract or agreement.

(e) " **Controlling Person**" means any **Individual Insured** who, directly or indirectly,:

    (i) holds a ten percent (10%) or greater equity or debt ownership interest in a **Company**; or

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000107**

(ii)    controls a **Company** within the meaning of Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Act of 1934, as amended, or under common law or under any other applicable statute, rule, regulation or law.

(f)    " **Costs of Investigation**" means all reasonable costs, charges, fees and expenses consented to by the **Insurer** (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors (or any equivalent management body), solely in connection with a **Company Shareholder Derivative Investigation**.

(g)    " **Crisis Management Event**" means **Crisis Management Event**, as that term is defined in Appendix D attached to this Policy.

(h)    " **Crisis Management Fund**" means the dollar amount set forth in Item 5 of the Declarations as amended by Item 3(a) of each **Program Participants**.

(i)    " **Crisis Management Loss**" means **Crisis Management Loss**, as that term is defined in Appendix D attached to this Policy.

(j)    " **Crisis Management Services**" means **Crisis Management Services**, as that term is defined in Appendix D attached to this Policy.

(k)    " **Derivative Demand**" means a written demand by shareholders or creditors upon the board of directors (or equivalent management body) of a **Company** requesting that it file, on behalf of the **Company**, a civil proceeding in a court of law against any **Executive** of the **Company** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

(l)    " **Derivative Investigation**" means after receipt by any **Insured** of a **Claim** that is either a derivatve lawsuit or a **Derivative Demand**, any investigation conducted by the **Company**, or on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the Organization should respon.d

(m)    " **Enforcement Body**" means:

(i)    any federal, state, local or foreign law enforcement authority or other governmental investigation authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000108**

     (ii)     the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

(n)     " **Extradition**" means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

(o)     " **Extradition Costs**" means reasonable fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Individual Insured** lawfully (a) opposing, challenging, resisting or defending against any request for any effort to obtain the **Extradition** of that **Individual Insured**, or (b) appealing any order or other grant of **Extradition** of that **Individual Insured**.

(p)     " **Individual Insured**" means any:

     (i)     **Executive** of a **Company**;

     (ii)     **Employee** of a **Company**;

     (iii)     **Controlling Person**; or

     (iv)     **Outside Entity Executive**.

(q)     " **Insured**" means:

     (i)     an **Individual Insured**; or

     (ii)     a **Company**.

(r)     **Liberty Protection Costs**" means:

     (i) reasonable fees, costs and expenses consented to by the **Insurer** and incurred by an **Individual Insured** in order for an **Individual Insured** to lawfully seek the release of the **Individual Insured** from any pre- **Claim** arrest or confinement to a (a) specified residence or (b) secure custodial premises operated by or on behalf of any law enforcement authority; or

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000109**

(ii) reasonable premiums (but not collateral) consented to by the **Insurer** and incurred by an **Individual Insured** for a bond or other financial instrument to guarantee the contingent obligation of the **Individual Insured** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (a) arise out of an actual or alleged **Wrongful Act**, or (b) are incurred solely by reason of such **Individual Insured's** status as an **Executive** or **Employee** of a **Company**.

(s)     " **Local Policy** " means any **Foreign Policy** issued to a **Company** in a **Foreign Jurisdiction** in order to comply with laws of such **Foreign Jurisdiction**.

(t)     **"Loss"** means damages, judgments, amounts paid in settlement, pre-judgment and post-judgment interest, **Crisis Management Loss** and **Defense Costs**; *provided, however,* **Loss**, other than **Defense Costs**, shall not include:

   (i)     civil or criminal fines or penalties deemed uninsurable by law pursuant to which this Policy shall be construed;

   (ii)     taxes; or

   (iii)     any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; or

   (iv)     amounts which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

**Loss** shall also mean the following items, provided that they arise out of a **Claim**:

   **(1) SOX 304 Costs**;

   **(2) Extradition Costs**;

   **(3) UK Corporate Manslaughter Act Defense Costs** ;

   **(4) Personal Reputation Expenses** , subject to $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

   **(5) Asset Protection Costs**, subject to $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000110**

*Provided, however,* that the Insurer shall not assert that in a **Claim** alleging violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended, the portion of any amounts incurred by **Insureds** which are attributable to such violations constitutes uninsurable loss and shall treat that portion of all settlements, judgments, and **Defense Costs** as constituting **Loss** under this Policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **D&O Coverage Section**, including, but not limited to, exclusions 4(a), 4(b) and 4(c) of this **D&O Coverage Section**, punitive, exemplary and multiple damages where insurable by law. The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss** shall specifically include **Defense Costs** incurred in defense of a **Claim** seeking amounts specifically excluded from **Loss** pursuant to subparagraphs (o)(i) through (o)(iv) above of this Definition, subject to the other terms, conditions and exclusions of this Policy.

**Loss** shall also include any reasonable fees and expenses of any attorney representing any party who has brought a **Claim** against any **Insured** where such fees and expenses are awarded pursuant to a covered judgment against an **Insured** or a covered settlement (consented to by the Insurer, which consent shall not be unreasonably withheld or delayed) to which an **Insured** is a party.

Whether an **Insured** has incurred **Loss** under this Policy shall be determined without regard to any indemnification that may be available to such **Insured** from the **Insured's Representative** or any affiliate or subsidiary thereof that is not a **Company** and without regard to any other insurance coverage that may be available to such **Insured** under any insurance policy issued to any **Insured's Representative** or any affiliate or subsidiary thereof that is not a **Company**.

(u)   " **Personal Reputation Crisis** " means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of a **Company** made during the **Policy Period** by any individual authorized to speak on behalf of an **Enforcement Body**.

(v)   " **Personal Reputation Expenses** " means reasonable fees, costs and expenses of a **Crisis Management Firm** (as defined in the CrisisFund Appendix® attached to this policy) retained within thirty (30) days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the adverse effects specifically to such **Executive's** reputation from a **Personal Reputation Crisis**. **Personal Reputation Expenses** shall not include any fees, costs, or expenses of any **Crisis Firm** incurred by an **Executive** if such **Crisis Firm** is also retained by or on behalf of a **Company**.

* Subject to Protective Order *

**AIGS.000111**

(w)  " **Pre-Claim Inquiry**" means any pre- **Claim**:

   (i)  verifiable request for an **Individual Insured** of any Organization: (a) to appear at a meeting or interview; or (b)  produce documents  that, in either  case, concerns the business of that Organization or  that **Individual Insured**'s insured capacities, but only if the request came from any:

   (1) **Enforcement Body**; or

   (2) **Company**, or, on behalf  of  a **Company**,  by  its board  of  directors  (or  the equivalent management body) or any committee of the board of directors  (or the equivalent management body):

   (A)arising  out  of  an  inquiry  or  investigation  by  an **Enforcement Body** concerning the  business  of  that **Company** or  that **Individual Insured's** insured capacities; or

   (B) as part of its **Derivative Investigation**; and

   (ii) arrest or  confinement of an **Executive** of  a **Company** to a:  (a) specified residence; or (b) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Company** or an **Individual Insured's** capacity as an **Executive** or **Employee** of a **Company**. "

   **Pre-Claim Inquiry**" shall not include  any routine or regularly  scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in a **Company's** and/or **Enforcement Body's** normal review or compliance process.

(x)  " **Pre-Claim Inquiry Costs**" means:

   (i)  with respect to any **Pre-Claim Inquiry** as defined in subparagraph (1) of the Definition of such term, the reasonable pre- **Claim** fees, costs and expenses consented to by the Insurer and incurred by an **Individual Insured** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Individual Insured**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding  (i) any compensation of any **Individual Insured**; and (ii) the costs of complying with any formal or informal discovery  or other request seeking  documents, records or electronic information in  the possession  or  control of  a **Company**,  the  requestor  or  any other third party; and

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000112**

       (ii) with respect to any **Pre-Claim Inquiry** as defined in subparagraph (2) of the Definition of such term, any **Liberty Protection Costs**.

(y)    " **Securities Claim** " means a **Claim** made against any **Insured** and brought anywhere in the world:

    (i)    alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (as defined in the Securities Exchange Act of 1933) or common law, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities or any bond debt which is:

        (1)    brought by, on behalf of, or in the right of any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities (as defined in the Securities Exchange Act of 1933) or any bond debt of a **Company**; or

        (2)    brought by, on behalf of, or in the right of a security holder, purchaser or seller of securities of a **Company** with respect to such security holder's, purchaser's or seller's interest in securities (as defined in the Securities Exchange Act of 1933) or any bond debt of such **Company**; or

    (ii)    brought derivatively on the behalf of a **Company** by a security holder, purchaser or seller of such **Company** or by a holder of any bond debt of the **Company**.

    (iii)    which is brought by or on behalf of one or more securities holders of a **Company** in their capacity as such or one or more holders of any bond debt of the **Company** in their capacities as such; or

    (iv)    which arises from the purchase or sale of, or offer to purchase or sell, any securities (as defined in the Securities Exchange Act of 1933) or bond debt issued by a **Company**, whether such purchase, sale or offer involves a transaction with a **Company** or occurs in the open market.

The term " **Securities Claim** " shall include an administrative or regulatory proceeding against a **Company**.

**Exhibit 1**

* Subject to Protective Order *

(z)  " **SOX 304 Costs**" means reasonable fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a).

(aa)  " **UK Corporate Manslaughter Act Defense Costs** " means **Defense Costs** incurred by an **Individual Insured** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against a **Company** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

(bb)  " **Written Sale Agreement** " means any purchase or sale agreement, plan of merger document, asset sale agreement or other similar document.

(cc)  " **Wrongful Act**" means:

 (i)  with respect to any **Executive** or **Employee** of a **Company**, any actual or alleged act, breach of duty, neglect, error, statement, misstatement, misleading statement, or omission by such **Executive** or **Employee** in their respective capacities as such, or any matter claimed against such **Executive** or **Employee** of a **Company** by reason of his or her status as an **Executive** or **Employee** of a **Company**;

 (ii)  with respect to a **Company**, any actual, or alleged act, breach of duty, neglect, error, statement, misstatement, misleading statement, or omission by a **Company**;

 (iii)  with respect to any **Outside Entity Executive**, any actual, or alleged act, breach of duty, neglect, error, statement, misstatement, misleading statement, or omission by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** by reason of his or her status as such; or

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000114**

    (iv)    with respect to any **Controlling Person**, any actual, or alleged act, or other duty, neglect, error, statement, misstatement, misleading statement, or omission, by such **Controlling Person** in his or her capacity as such, or any matter claimed against such **Controlling Person** solely by reason of his or her status as a **Controlling Person**, but solely to the extent that a **Company** indemnifies such **Controlling Person**.

## 3. WORLDWIDE EXTENSION

Where legally permissible, this Policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

For **Claims** made and maintained in a **Foreign Jurisdiction** against a **Company** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** those terms and conditions (and related provisions) of the relevant **Foreign Policy**, if any, in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction** than the terms and conditions of this Policy; *provided however,* that this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, pre-authorized securities or other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of the **Foreign Policy** when compared to the same or similar clauses of this **D&O Coverage Section**. This paragraph shall not apply to excess provisions or policy provisions that address non-renewal, duty to defend, defense within or without limits, taxes, claims made and reported provisions or any other provision of this policy intended to govern coverage worldwide.

All premiums, limits, retentions, **Loss** and other amounts under this **D&O Coverage Section** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **D&O Coverage Section** (subject to the terms, conditions and limitations of this **D&O Coverage Section**) will be made either in such other currency (at the option of the particular **Named Entity** and if agreeable to the **Insurer**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

It is hereby understood and agreed that with respect to any **Claim** covered under any **Local Policy**, this Policy shall, subject to the terms and conditions of this Policy, pay such **Claim** if and when the **Claim** is not covered under such **Local Policy** or would have been covered but for the erosion of such **Local Policy's** limit of liability.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000115**

Notwithstanding the foregoing, in the event of a **Claim** otherwise covered under both this Policy and a **Local Policy**, coverage under the **Local Policy** shall prevail. With respect to a **Claim** for which coverage is provided by this Policy and which is partially covered by a **Local Policy** there shall be no applicable retention to such **Claim** sustained by the **Insured** under this Policy.

## 4. EXCLUSIONS

Solely with respect to this **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a)     arising out of, based upon or attributable to the gaining of any personal profit or financial advantage to which a final non-appealable adjudication adverse to such **Insured** in the underlying action establishes that the **Insured** was not legally entitled; *provided, however,* this exclusion shall not apply to any **Defense Costs** incurred prior to such final non-appealable adjudication;

(b)     arising out of, based upon or attributable to the payment to such **Insured** of any remuneration without the previous approval of the stockholders of the **Company**, if a final non-appealable adjudication adverse to such **Insured** in the underlying action establishes such payment without such previous approval was illegal; *provided, however,* this exclusion shall not apply to any **Defense Costs** incurred prior to such final non-appealable adjudication;

(c)     arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act if a final non-appealable adjudication adverse to the **Insured** in the underlying action establishes that such deliberate criminal or deliberate fraudulent act committed by the **Insured**; *provided, however,* this exclusion shall not apply to any **Defense Costs** incurred prior to such final non-appealable adjudication;

*provided, however:*

(i)     EXCLUSIONS (a), (b), and (c) shall not apply to any **Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933 as amended to the portion of any **Loss** attributable to such violations; or

(ii)     with respect to EXCLUSION (c) for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred.

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000116**

(d)     alleging, arising out  of, based upon  or attributable  to the facts  alleged, or  to the
        same or **Related Wrongful Act(s)** alleged or contained in  any claim which has been
        reported, or in any circumstances of which notice has been given, under any policy
        of which this **D&O Coverage Section** is a  renewal or replacement of in whole or in
        part or which it may  succeed in time; *provided,  however,* that this exclusion shall
        not apply if a notice of circumstance was  rejected for lack of specificity under  the
        prior program;

(e)     alleging, arising out  of, based  upon or attributable  to, as  of the  **Continuity Date**,
        any pending or prior:

        (i)     litigation against an **Insured**; or

        (ii)    administrative or  regulatory  proceeding against,  or investigation  of, an
                **Insured** of  which the  **Insured** had notice  as  of the  inception date  of the
                **Policy Period**, or alleging any  **Wrongful Act**  which is  the same  or **Related
                Wrongful Act(s)**  to that alleged  in  such pending or  prior litigation or
                administrative or regulatory proceeding or investigation;

(f)     with respect to an  **Outside Entity Executive**, for  any **Wrongful Act**  occurring prior
        to the **Continuity Date** if  any **Insured**, as of such  **Continuity Date**, knew that such
        **Wrongful Act** would lead to a  **Claim** under this **D&O Coverage Section**.

(g)     alleging, arising out of,  based upon or  attributable to any  actual or alleged  act or
        omission of an **Individual Insured** serving in any capacity,  other than as  an
        **Executive**, **Controlling Person** or  **Employee** of a  **Company**, or as an  **Outside Entity
        Executive** of an **Outside Entity**;

(h)     for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an
        **Outside Entity  Executive**  of  an **Outside  Entity**  if such **Claim**  is brought by  the
        **Outside Entity** or any **Executive** thereof; or which is brought by any  security holder
        of the **Outside Entity**, whether directly or derivatively, unless such security holder's
        **Claim** is instigated and continued independent of, and without the solicitation of, or
        assistance of, or active  participation of, or  intervention of the  **Outside Entity**, the
        **Company,** or any **Executive** of the **Outside Entity**  or the  **Company**; *provided,
        however,* this exclusion shall not apply to:

        (i)     any **Claim** brought by an **Executive** of an **Outside Entity** in the  form of  a
                cross-claim or third-party claim for contribution or indemnity which is part of
                and results  directly  from a  **Claim** that is  covered by this  **D&O Coverage
                Section**;

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000117**

(ii)   in any bankruptcy, insolvency, or liquidation proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, trust, receiver, liquidator, rehabilitator conservator, creditors' committee or any comparable authority (or any assignee thereof) of such **Outside Entity**, if any, or the debtor-in-possession;

(iii)  any **Claim** brought by any former **Executive** of an **Outside Entity** who has not served in such position for an **Outside Entity** for at least two (2) years prior to such **Claim** being first made against any person;

(iv)   any **Claim** brought by an **Executive** of an **Outside Entity** formed and operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(v)    by an **Insured** with respect to which failure to make such **Claim** reasonably could result in liability to the **Insured** for failure to do so; or

(vi)   any **Claim** brought by or with the assistance, participation, solicitation or intervention of one particular **Named Entity** listed in a **Program Participants Endorsement** or by or with the assistance, participation, solicitation or intervention of a **Subsidiary** or **Insured** thereof, against a different respective **Named Entity** listed in a **Program Participants Endorsement**, or a **Subsidiary** or Insured of such different respective **Named Entity**, so long as such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of **Insured's Representative**. and/or any director, officer, partner, management committee members or members of the Board of Managers of **Insured's Representative**.

(h)  which is brought by or on behalf of a **Company** or any **Executive** of a **Company**; or which is brought by any security holder, creditor or other interest holder of the **Company** (other than an **Employee** security holder), whether directly or derivatively, unless such security holder's, creditor's or other interest holder's **Claim** is instigated and continued independent of, and without the active solicitation, active assistance, or active participation of, or intervention of, any **Company** or any **Executive** of a **Company**; *provided, however,* this exclusion shall not apply to:

(i)    any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this policy;

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000118**

(ii)   in any bankruptcy, insolvency, or liquidation proceeding brought by or against a **Company**, any **Claim** brought by the examiner, trustee, trust, receiver, liquidator, rehabilitator, conservator, creditors' committee or any comparable authority (or any assignee thereof) of such **Company**, if any, or the debtor-in-possession;

(iii)   any **Claim** brought by any former **Executive** of a **Company** who has not served in such capacity for a **Company** for at least two (2) years prior to such **Claim** being first made against any person;

(iv)   any **Claim** brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(v)   an **Individual Insured's** engaging in any protected activity specified in 18 U.S.C. 1514A(a) ("whistleblower" protection pursuant to the Sarbanes-Oxley Act of 2002) Section 21F of the Securities Exchange Act of 1934, the False Claims Act or any protected activity specified in any other "whistleblower" protection pursuant to any state, local, or foreign laws;

(vi)   any **Claim** brought by or with the assistance, participation, solicitation or intervention of one particular **Named Entity** listed in a **Program Participants Endorsement** or by or with the assistance, participation, solicitation or intervention of a **Subsidiary** or **Insured** thereof, against a different respective **Named Entity** listed in a **Program Participants Endorsement**, or a **Subsidiary** or Insured of such different respective **Named Entity**, so long as such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Insured's Representative** and/or any director, officer, partner, management committee members or members of the Board of Managers of the **Insured's Representative** ;

(i)   alleging, arising out of, based upon or attributable to any public offering of equity securities by a **Company**, an **Outside Entity** or an **Affiliate** or alleging a purchase or sale of such equity securities subsequent to such public equity securities offering; *provided, however,* this exclusion will not apply to:

(i)   any purchase or sale of equity securities exempted pursuant to Section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium;

**Exhibit 1**

MNSCPT                                  15

* Subject to Protective Order *

(ii)  any public offering of equity securities (other than a public equity securities offering described in subparagraph 4(j)(i) above), as well as any purchase or sale of such equity securities subsequent to such public equity securities offering, in the event that within thirty (30) days prior to the effective time of such public equity securities offering:

   (1)  the particular **Named Entity** shall give the **Insurer** written notice of such public equity securities offering together with full particulars and underwriting information required thereto; and

   (2)  the particular **Named Entity** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage is also subject to the particular **Named Entity** paying when due any such additional premium. In the event the **Company** gives written notice with full particulars and underwriting information pursuant to subpart 4(j)(ii)(1) above, then the **Insurer** must offer a quote for coverage under this paragraph;

(iii)  any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence an initial public offering (" **IPO** "), including but not limited to any failed offering, and which occurred at any time prior to **12:01 a.m.** on the date the initial public offering commences (" **IPO Effective Time** "), including any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the road show; *provided, however* that the coverage otherwise afforded under this subparagraph (iii) shall be deemed to be void *ab initio* effective the **IPO Effective Time**; *provided further, however,* that coverage shall not be deemed void *ab initio* if:

   (1)  the **Claim** is first made and reported pursuant to Clause 7(a) of the **General Terms and Conditions** prior to the **IPO Effective Time**, and

   (2)  a public company D&O policy does not provide coverage for such **Claim**;

(iv)  any purchase or sale or offer or solicitation of an offer to purchase or sell any securities made pursuant to any exemption under the Securities Act of 1933, including but not limited to any purchase or sale made pursuant to Regulation D or Regulation S under the Securities Act of 1933; or

(v)  any public offering of debt securities, including any purchase or sale of such debt subsequent to such public debt securities offering;

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000120**

(j) alleging, arising out of, based upon or attributable to the purchase by a **Company** of securities of a " **Publicly Traded Entity**" (as defined below) in a transaction which resulted in such entity becoming an **Affiliate** or a **Subsidiary** of a **Company** (herein, a " **Public Company Acquisition**"); provided, however, this exclusion shall not apply:

   (1) to any **Public Company Acquisition** in which:

      (i) the **Publicly Traded Entity** has a total asset value of less than 50% of the total assets value of the respective **Named Entity**; and

      (ii) the securities of the **Publicly Traded Entity** are no longer publicly traded after the acquisition; or

   (2) to any **Public Company Acquisition** not described in subparagraph (1) above, if within thirty (30) days prior to it becoming an **Affiliate** or **Subsidiary**, the respective **Named Entity** or **Insureds' Representative** gives written notice of the transaction to the **Insurer** together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this **D&O Coverage Section** required by the **Insurer** relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the respective **Named Entity** paying when due any additional premium required by the **Insurer** relating to the transaction.

   An entity is a **Publicly Traded Entity** if any securities of such entity have previously been subject to a public offering;

(k) for bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; *provided, however,* this exclusion shall not apply to any **Securities Claim** or **UK Corporate Manslaughter Act Defense Costs**;;

(l) for emotional distress or mental anguish, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy; *provided, however,* this exclusion shall not apply to any **Securities Claim**;

(m) for: (i) any actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; *provided, however,* this exclusion shall not apply to:

   (1) **Non-Indemnifiable Loss**, other than **Non-Indemnifiable Loss** constituting **Cleanup Costs**; or

   (2) **Loss** in connection with a **Securities Claim**, other than **Loss** constituting **Clean-up Costs**;

(n)  for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law; *provided, however,* this exclusion shall not apply to any **Securities Claim**;

It is acknowledged that **Claims** for violation(s) of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, including without limitation, any and all **Claims** which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(1)  the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(2)  improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

(3)  failure to provide or enforce legally required meal or rest break periods;

(o)  for any **Wrongful Act(s)** of a particular **Named Entity**, or any **Insured** thereof, which occurred prior to the applicable **Prior Acts Date** for such **Named Entity** as set forth in the respective **Program Participants Endorsement**;

(p)  with respect to Coverage B(i) only:

(i)  for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights; *provided, however,* this exclusion shall not apply to any **Securities Claim**;

(ii)  alleging, arising out of, based upon, or attributable to any **Employment Practices Violations** and/or any **Third Party Violations** (as such terms are defined in the **EPL Coverage Section**); or

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000122**

     (iii)    for any actual or alleged contractual liability of the **Company** under any express written contract or agreement; *provided, however,* this exclusion shall not apply to any:

          (1)    **Written Sale Agreement**;

          (2)    **Contract Claim Defense Costs Coverage**;

          (3)    **Securities Claim**; or

          (4)    liability which would have attached in the absence of such express contract or agreement.

For the purpose of determining the applicability of the foregoing Exclusions the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

This Clause 4. EXCLUSIONS shall not be applicable to **Crisis Management Loss**.

Notwithstanding the foregoing, except for paragraph (d) of this Clause 4. **EXCLUSIONS**, this Clause 4. **EXCLUSIONS** shall not apply to any **Pre-Claim Inquiry Costs** in connection with a **Pre-Claim Inquiry**).

## 5. LIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. of the **General Terms and Conditions**:

**CRISISFUND® INSURANCE**

The maximum limit of the **Insurer's** liability for all **Crisis Management Loss** arising from all **Crisis Management Events** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 3(a) of each **Program Participants Endorsement** as the **Crisis Management Fund**. This **Crisis Management Fund** shall be the maximum limit of the **Insurer** under this **D&O Coverage Section** for **Crisis Management Loss**, regardless of the number of **Crisis Management Events** occurring during the **Policy Period**; *provided, however,* the **Crisis Management Fund** shall be part of and not in addition to the **Designated Policy Aggregate Limit of Liability** stated in Item 2 of each **Program Participants Endorsement** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 2 of each **Program Participants Endorsement**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000123**

**SIDE A EXCESS LIMIT OF LIABILITY**

The **Side A Excess Limit of Liability** shall be the amount set forth in Item 3(f) of each **Program Participants Endorsement** and is the aggregate limit of the Insurer's liability under this **D&O Coverage Section** excess of:

(i)     any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section**; and

(ii)    any coverage for **Loss** (whether or not **Non-Indemnifiable Loss**) under any policy of insurance specifically written as excess over any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section**,

for all **Non-Indemnifiable Loss** and all **Loss** incurred by an **Executive** that the **Company** fails or refuses to indemnify or advance to or on behalf of any **Executive** for any reason, including **Financial Insolvency**, under this **D&O Coverage Section** arising out of all **Claims** first made against an **Executive** of a **Company** during the **Policy Period** or the **Discovery Period** (if applicable). The **Side A Excess Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Side A Excess Limit of Liability** for the **Policy Period**. The **Side A Excess Limit of Liability** shall be in addition to the **Designated Policy Aggregate Limit of Liability** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section**.

It is agreed that the **Insurer's** liability to pay **Non-Indemnifiable Loss** shall only attach to the **Side A Excess Limit of Liability** after:

(a)    the full amount of any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** has been exhausted due to **Loss** paid by or on behalf of the **Insurer** or by or on behalf of the **Insureds**; and

(b)    any coverage for **Loss** (whether or not **Non-Indemnifiable Loss**) under any policy of insurance specifically written as excess over any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** has been exhausted by reason of loss(s) paid by or on behalf of such insurers or by or on behalf of the **Insureds**.

The **Side A Excess Limit of Liability** shall "drop down" (continue in force as primary insurance) only in the event of (a) and (b) above and shall not drop down for any other reason.

**COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND**

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000124**

The maximum limit of the **Insurer's** liability for **Costs of Investigation** arising from all **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 3(b) of each **Program Participants Endorsement** (the " **Costs of Investigation Sublimit of Liability**"). The **Costs of Investigation Sublimit of Liability** is the maximum limit of the **Insurer** under this **D&O Coverage Section** for **Costs of Investigation** regardless of the number of such **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Executives** subject to such **Company Shareholder Derivative Investigations** ; *provided, however,* that the **Costs of Investigation Sublimit of Liability** shall be part of and not in addition to the **Designated Policy Aggregate Limit of Liability** set forth in Item 2 of each **Program Participants Endorsement** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 2 of each **Program Participants Endorsement** .

### CONTRACT CLAIM DEFENSE COSTS COVERAGE

The maximum limit of the **Insurer's** liability for all **Defense Costs** under this **D&O Coverage Section** arising from any **Contract Claim** shall be the amount set forth in Item 3(e) of each **Program Participants Endorsement** (hereinafter called the " **Contractual Defense Costs Sublimit of Liability** "). This **Contractual Defense Costs Sublimit of Liability** shall be part of and not in addition to the **Designated Policy Aggregate Limit of Liability** set forth in Item of the Declarations and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3(e) of each **Program Participants Endorsement** .

6. **RETENTION CLAUSE**

    The following provision shall apply in addition to the provisions of Clause 5. RETENTION of the **General Terms and Conditions** :

    The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 6 of the respective **Program Participants Endorsement** for this **D&O Coverage Section** , such Retention amount to be borne by the **Company** and/or the **Insureds** , with regard to:

    (i)      all **Indemnifiable Loss** ; and

    (ii)     **Loss** of the **Company** .

    A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act(s)** .

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000125**

It is further understood and agreed that in the event the **Company** is unable to pay an applicable Retention amount due to **Financial Insolvency** or, with respect to **Loss** incurred by an **Individual Insured**, fails to indemnify an **Individual Insured** for any reason, then the **Insurer** shall commence advancing **Loss** within the Retention; *provided, however,* the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from the **Company** pursuant to Clause 10. SUBROGATION of the **General Terms and Conditions**.

Advancement, payment or indemnification of an **Insured Person** by and **Organization** is deemed failed if it has been requested by an **Insured Person** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request.

No Retention amount is applicable to **Crisis Management Loss** or **Non-Indemnifiable Loss**.

7. **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

The **Insurer** shall advance **Defense Costs** on a current basis and, in any event, no later than sixty (60) days after receipt of invoices of such **Defense Costs**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or the **Company**, severally according to their respective interests, in the event and to the extent that any such **Insured** or the **Company** shall not be entitled under the terms and conditions of this **D&O Coverage Section** to payment of such **Loss**.

No **Insured** may incur any **Defense Expenses** in excess of the Retention, or admit any liability for, or settle any **Claim** in excess of the Retention, without the Insurer's consent, such consent not to be unreasonably withheld. The **Insurer** shall have the right to fully associate with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000126**

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** in excess of the Retention without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **D&O Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **D&O Coverage Section**, provided that the **Insurer** shall be entitled to associate in the defense and the negotiation of any settlement of any **Claim** in excess of the Retention, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs** in excess of the Retention, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **D&O Coverage Section**. In addition, in the event of a **Claim**, the **Insured** shall not take any action, without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this **D&O Coverage Section** with respect to such **Claim**.

This Clause 7 shall not be applicable to **Crisis Management Loss**.

8. **COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND COVERAGE PROVISION**

It is understood and agreed that the **Company** shall be entitled to payment under Coverage D of this **D&O Coverage Section** for reimbursement of its covered **Costs of Investigation** ninety (90) days after:

(i)    the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**; and

(ii)   such decision has been communicated to the shareholders or creditors who made the **Derivative Demand** upon the **Company**. However, such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or any shareholder of the **Company** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

9. **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS**

This Clause 9 applies only to **Securities Claims**.

Affixed as Appendix A hereto and made a part of this **D&O Coverage Section** is a list of Panel Counsel law firms (" **Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** against an **Insured** pursuant to the terms set forth in this Clause.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000127**

The selection of the **Panel Counsel Firm** shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be either:

(i)     from the jurisdiction in which the **Securities Claim** is brought; or

(ii)    from the state indicated in Item 1 of the **Program Participants Endorsement** as the mailing address for the particular **Named Entity.**

In the event a **Securities Claim** is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is maintained or where the corporate headquarters or state of formation of the particular **Named Entity** is located. In such instance, however, the **Insurer** may, if at the written request of the particular **Named Entity** or the **Insureds' Representative**, assign a non-Panel Counsel Firm of the **Insurer's** choice in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Securities Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim.**

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer.** However, no change shall be made during the **Policy Period** to the **Panel Counsel Firms** listed in Appendix A without the consent of the **Insureds' Representative.**

Note that this Clause 9. PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim.**

**10. ORDER OF PAYMENTS**

In the event of **Loss** arising from any **Claim** for which payment is due under the provisions of this **D&O Coverage Section**, then the **Insurer** shall:

(a)    first, pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Section**, then with respect to whatever remaining amount of the applicable **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** is available after payment of such **Loss,**

(b)    then, only after payment of Loss has been made pursuant to Clause 10.(a) above, pay such other **Loss** for which coverage is provided under Coverage B(ii) of this **D&O Coverage Section**, and

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000128**

(c)     then, only after payment of Loss has been made  pursuant to Clause 10.(a) and Clause 10.(b) above, pay such other **Loss** for which coverage is  provided under Coverage B(i), C or D of this **D&O Coverage Section**.

In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this **D&O Coverage Section** (including those circumstances described in the first paragraph of this  Clause 10, the **Insurer** shall  at the written  request of the  particular **Named Entity**:

(a)     first pay such  **Loss** for  which coverage  is provided under  Coverage A  of this **D&O Coverage Section**, then

(b)     either pay or hold payment for such  **Loss** for which coverage is provided  under Coverage B, C or D of this **D&O Coverage Section**.

In the event that the **Insurer** withholds payment under  Coverage B, C or D of this **D&O Coverage Section** pursuant to  the above request, then  the **Insurer** shall  at any time in the future, at the request of the particular **Named Entity**, release such **Loss** payment to the **Company**, or make such **Loss** payment directly to  the **Individual Insured** in the event of  covered **Loss** under  any **Claim** covered  under this **D&O Coverage Section** pursuant to Coverage A of this **D&O Coverage Section**.

The **Financial Insolvency** of any **Company** or any  **Individual Insured** shall not relieve the **Insurer** of any of  its obligations to  prioritize payment of  covered **Loss** under this  **D&O Coverage Section** pursuant to this Clause 10.

In addition,  if a  bankruptcy,  liquidation, administration,  receivership, rehabilitation or reorganization proceeding  is  commenced by  a **Company** (whether  voluntarily or involuntarily) under Title 11  of the United  States Code (as  amended), state or federal receivership, administration  or liquidation  statute or law, or  under any other  federal, state, local or foreign law related to insolvency (collectively, "Insolvency Law") then, in regard to a covered **Claim** under this Policy,  the Insureds hereby: (a) waive and release any automatic stay or  injunction to the  extent it may  apply in such proceeding  to the proceeds of  this Policy  under  such Insolvency  Law and (b)  agree  not to  oppose  or object to  any efforts  by the  **Insurer** or  any **Insured**  to obtain  relief from  any stay  or injunction to  the extent  applicable to  the  proceeds of  this  Policy as  a result of  the commencement of such proceeding.

## 11. EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION

For purposes of this extension  of coverage, **Individual Insured** shall  include  any **Employed Lawyer** (as defined  below), but only for  actual or alleged **Wrongful  Acts** (as defined below) of such **Employed Lawyer**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000129**

Solely for the purposes of this extension of coverage, **Wrongful Act** means any actual or alleged act, error or omission of an **Employed Lawyer**, in the rendering or failure to render professional legal services for or to the **Company**, in his or her capacity as such or in his or her capacity as a director or officer of the **Company**. *Provided, however,* for purposes of this extension of coverage the term **Wrongful Act** shall not mean any act, error or omission in connection with any activities by such **Employed Lawyer**:

(1)     which are not related to such **Employed Lawyer's** employment with the **Company**; or

(2)     which are performed by the **Employed Lawyer** for others for a fee.

It is further understood and agreed that with respect to all **Loss** arising from coverage as is afforded by this Clause 11, the maximum limit of the Insurer's liability shall be $1,000,000 (hereinafter the "Employed Lawyers Sublimit of Liability"). This **Employed Lawyers Sublimit of Liability** shall be part of and not in addition to the **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to the **D&O Coverage Section** as set forth in Item 2 of the **Program Participants Endorsement**.

The term **Employed Lawyer** means any **Employee** of the **Company** who is admitted to practice law and who is employed, or was employed, at the time of the alleged **Wrongful Act** as a lawyer for and paid by the **Company**.

[The balance of this page is intentionally left blank.]

* Subject to Protective Order *

**AIGS.000130**

EMPLOYMENT PRACTICES LIABILITY INSURANCE
("EPL COVERAGE SECTION")

**Notice:** Pursuant to Clause 1 of the General Terms  and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and  are expressly applicable to this EPL  Coverage Section, unless  otherwise explicitly  stated to the  contrary in  either the General Terms and Conditions  or in this EPL Coverage  Section . This is a Claims  Made Coverage Section  with Defense  Expenses included in  the Designated  Separate  Limit  of Liability or Designated Shared Limit of Liability.

In consideration of the payment of the premium, and in reliance upon the statements made to the  Insurer by  **Application**,  which forms  a  part of  this  policy, the  Insurer agrees  as follows:

1. **INSURING AGREEMENTS**

     With respect to  the Insuring Agreement  and the Defense  Provisions of  this Clause 1, solely with respect to  **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable)  and reported  to  the **Insurer**  pursuant  to  the  terms of  this  policy, and subject to the other terms,  conditions and limitations of  this policy, this **EPL Coverage Section** affords the following coverage:

     This **EPL Coverage Section**  shall pay the  **Loss** of an  **Insured** arising from  a **Claim** first made against such **Insured** for any **Wrongful Act**.  The **Insurer** shall, in accordance with and subject to Clause 7 of this  **EPL Coverage Section**, advance **Defense Costs** of  such **Claim** prior to its final disposition.

     This **EPL Coverage Section** shall also pay the **Loss** of a **Company** arising from any **Claim** made against such **Company** for  its actual or alleged liability  for any **Wrongful Internet Activity** of an **Employee**.


     **DEFENSE PROVISIONS**

     The Insurer does  not assume  any duty to  defend. The  Insurer shall advance  **Defense Costs** of  such  **Claim**,  excess of  the applicable  Retention amount,  prior to  its final disposition. Selection of  counsel to defend  a **Designated  Employment Practices Claim** shall be made in accordance with Clause 8 of this **EPL Coverage Section**.

2. **DEFINITIONS**

(a)     " **Designated Employment Practices Claim** " means a **Claim**:

     (i)     alleging discrimination or **Retaliation**; or

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000131**

(ii)     that is certified as, or which is seeking certification as, a class action.

(b)     " **Employment Practices Violation** " means any actual or alleged:

(i)     wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(ii)    harassment (including, but  not limited to,  sexual harassment whether  "quid pro quo", hostile work environment or other harassment in the workplace);

(iii)   discrimination (including, but  not limited to,  discrimination based  upon age, gender, race, color, national origin, religion, sexual  orientation or preference, pregnancy, or disability);

(iv)    **Retaliation** (including, but not limited to, lockouts);

(v)     employment-related misrepresentation(s) to an **Employee**  of the **Company** or applicant for employment with the **Company** or an **Outside Entity**;

(vi)    employment-related libel, slander, humiliation, defamation or invasion of privacy;

(vii)   wrongful failure to employ or promote;

(viii)  wrongful deprivation of career opportunity with the **Company**, wrongful demotion or negligent **Employee** evaluation, including, but  not limited to, the giving of negative or defamatory statements in connection with an employee reference;

(ix)    wrongful discipline;

(x)     failure to grant tenure; or

(xi)    with respect to  any of the  foregoing items (i)  through (x)  of  this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental  anguish, failure to  provide or enforce  adequate or consistent corporate policies  and procedures,  or violation  of an  individual's civil rights;

but only if the **Employment Practices Violation** relates to an **Employee** of a **Company** or an **Outside Entity**,  or applicants for  employment with a  **Company** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

(c)     " **Individual Insured** " means any:

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000132**

      (i)      **Executive** of a **Company**;

      (ii)     **Employee** of a **Company**; or

      (iii)    **Outside Entity Executive**.

(d)    " **Insured**" means:

      (i)     an **Individual Insureds**; or

      (ii)    a **Company**.


(e)    " **Loss**" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest and **Defense Costs**; *provided, however,* **Loss** shall not include:

      (i)     civil or criminal fines or penalties imposed by law;

      (ii)    taxes;

      (iii)   any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**;

      (iv)   employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation;

      (v)    any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar;

      (vi)   amounts which may be deemed uninsurable under the law pursuant to which this policy shall be construed. **Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (e)(i) through (e)(vi) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000133**

**Loss** shall specifically include, subject to the other terms, conditions  and exclusions of this **EPL  Coverage Section**, including, but  not limited  to, Exclusion 3(a)  of this **EPL Coverage  Section**, punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age  Discrimination in Employment Act and  the  Equal Pay Act). The  enforceability  of  the  first  sentence  of  this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss**  shall  also  include any  reasonable fees  and expenses  of any  attorney representing any party  who has  brought a  **Claim** against  any **Insured**  where such fees and expenses are awarded pursuant to  a covered judgment against an  **Insured** or a  covered settlement  (consented to  by  the Insurer,) to which  an **Insured**  is  a party.

Whether an **Insured** has incurred **Loss** under this  Policy shall be determined without regard to  any  indemnification that  may  be  available to  such **Insured**  from  the **Insured's Representative** or any affiliate or subsidiary thereof that is not a  **Company** and without regard to  any other insurance coverage  that may be available  to such **Insured** under any  insurance policy  issued to  any **Insured's  Representative**  or  any affiliate or subsidiary thereof that is not a **Company**.

(f)     " **Outside Entity**" means:

    (i)     any not-for-profit organization; or

    (ii)    any for-profit organization.

(g)     " **Outside Entity Executive**" means any **Executive**  of the **Company**  serving in  the capacity as  director, officer, trustee, board  observer, advisor or governor of  an **Outside Entity**,  but only if such service is at  the specific  request, direction or consent  of the  **Company**. It is understood  and agreed that, in  the  event of  a disagreement between the **Company** and an individual as to whether such individual was acting at  the specific request,  direction or consent  of the  **Company**,  this **EPL Coverage Section** shall abide by the determination of the **Company** on this issue and such determination shall be made by written notice to the  **Insurer** within ninety (90) days after the  **Claim**  is  first reported  to  the  **Insurer** pursuant  to  the  terms of  the policy. In the event no determination is made within such period, this  **EPL Coverage Section** shall apply as if  the **Company** determined that  such **Individual Insured** was not acting at the **Company's** specific request, direction or consent.

(h)     " **Retaliation**" means a retaliatory act of an **Insured** alleged to be in  response to any of the following activities:

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000134**

(i)    the disclosure or threat of disclosure by an **Employee** of the **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

(ii)   the actual or attempted exercise by an **Employee** of the **Company** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

(iii)  the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or

(iv)  strikes of an **Employee** of the **Company** or an **Outside Entity**.

(i)    " **Settlement Opportunity** " means an **Insurer** recommended settlement that is within the **Designated Policy Aggregate Limit of Liability**, **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability**, if any, and that is acceptable to the claimant.

(j)    " **Third Party Violation**" means any actual, or alleged harassment or unlawful discrimination, as described in subparagraphs 2(b)(ii) and 2(b)(iii) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Company** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers.

(k)   " **Wrongful Act**" means any actual or alleged:

    (i)    **Employment Practices Violation**; or

    (i)    **Third Party Violation**.

(l)    " **Wrongful Internet Activity** " means any actual or alleged:

    (i)    **Employment Practices Violation** alleged by an **Employee**; or

    (ii)   **Third Party Violation**,

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000135**

when committed by an **Employee** by means of the internet, including, but not limited to, social networking activities, regardless of whether such internet activity is during or after work hours or on or off the work premises. For purposes of the application of this definition, an individual shall be deemed to be an **Employee** regardless of whether such individual was acting in his or her capacity as an **Employee**.

## 3.  EXCLUSIONS

Solely with respect to this **EPL Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured**:

(a)   alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Acts** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **EPL Coverage Section** is a renewal or replacement of in whole or in part or which it may succeed in time;

(b)   alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior:

    (i)   litigation against an **Insured**; or

    (ii)   **EEOC** (or similar state, local or foreign agency) proceeding or investigation of an **Insured** of which the General Counsel (or equivalent position if none) of the **Company** had written notice, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act** to that alleged in such pending or prior litigation or EEOC (or similar state, local or foreign agency) proceeding or investigation;

(c)   with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **EPL Coverage Section**;

(d)   alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

(e)   for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to, loss of use of or destruction of any tangible property;

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000136**

(f)   for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law;

It is acknowledged that **Claims** for violations of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all Claims which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(i)    the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(ii)   improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

(iii)  failure to provide or enforce legally required meal or rest break periods;

*provided, however,* this exclusion (f) shall not apply to:

(i)    the extent that a **Claim** is for **Retaliation**;

(g)   alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; *provided, however,* this exclusion shall not apply to the extent that a **Claim** is for **Retaliation**;

(h)   alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any **Insured Company** under any express contract or agreement (other than any employee handbooks or human resources policies and procedures, or any organizational or management advisory documents of any **Named Entity**); *provided, however,* this exclusion shall not apply to:

(i)    liability which would have attached in the absence of such express contract or agreement; or

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000137**

      (ii)     **Defense Costs**

      (iii)    Individual insureds;

(i)     alleging, arising out of, based upon or attributable to any **Claim** brought by a securities holder of a **Company**, an **Outside Entity** or an affiliate of a respective **Named Entity** in their capacity as such in the form of a shareholder class, direct or derivative action on behalf of such **Company**, **Outside Entity** or affiliate;

(j)     for any **Wrongful Act(s)** of a particular **Named Entity**, or any **Insured** thereof, which occurred prior to the applicable **Prior Acts Date** for such **Named Entity** as set forth in the respective **Program Participants Endorsement**.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 3(b), 3(c), and 3(d): the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

4.     **RETENTION CLAUSE**

     The following provision shall apply in addition to the provisions of Clause 5. RETENTION of the **General Terms and Conditions**:

     The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 6 of the respective **Program Participants Endorsement** for this **EPL Coverage Section**, such Retention amount to be borne by the **Company** or the **Insureds** and shall remain uninsured, with regard to all:

     (1)     **Indemnifiable Loss**; or

     (2)     **Loss** of the **Company**.

     A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

     It is further understood and agreed that in the event the **Company** does not in fact pay an applicable Retention amount due to any reason, then the **Insurer** shall commence advancing **Defense Costs** and pay any other covered **Loss** within the Retention; *provided, however,* except in the event of **Financial Insolvency**, the **Insurer** shall be entitled to recover the amount of **Defense Costs** and any other **Loss** advanced within the Retention from the **Company** pursuant to Clause 10. SUBROGATION of the **General Terms and Conditions**.

5.     **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000138**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

The **Insurer** shall advance **Defense Costs** on a current basis and, in any event, no later than sixty (60) days after receipt of invoices of such **Defense Costs**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this **EPL Coverage Section** to payment of such **Loss**.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** in excess of the Retention without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** in excess of the Retention which have been consented to by the **Insurer**, in writing, shall be recoverable as **Loss** under the terms of this **EPL Coverage Section**. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to fully and associate in the defense and negotiation of any settlement of any **Claim** in excess of the Retention, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs** in excess of the Retention, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **EPL Coverage Section**.

The **Insurer** shall have the right to associate with the **Company** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. The **Company** and the **Insureds** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

6.   **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED EMPLOYMENT PRACTICES CLAIMS**

This Clause 6 applies only to **Designated Employment Practices Claims**.

Affixed as Appendix B hereto and made a part of this **EPL Coverage Section** is a list of Panel Counsel law firms (" **Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Designated Employment Practices Claim** against an **Insured** pursuant to the terms set forth in this Clause.

The selection of the **Panel Counsel Firm** shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be either:

(i)   from the jurisdiction in which the **Designated Employment Practices Claim** is brought; or

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000139**

(ii)     from the state indicated in Item 1 of the **Program Participants Endorsement** as the mailing address for the respective **Named Entity**.

In the event a **Designated Employment Practices Claim** is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Designated Employment Practices Claim** is maintained or where the corporate headquarters or state of formation of the respective **Named Entity** is located. In such instance, however, the **Insurer** may, if at the written request of the respective **Named Entity** or the **Insureds' Representative**, assign a non- **Panel Counsel Firm** of the **Insurer's** choice in the jurisdiction in which the **Designated Employment Practices Claim** is brought to function as "local counsel" on the **Designated Employment Practices Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Designated Employment Practices Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made during the **Policy Period** to the **Panel Counsel Firms** listed in Appendix B without the consent of the **Insureds' Representative**.

[The balance of this page is intentionally left blank.]

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000140**

FIDUCIARY LIABILITY INSURANCE
(" FLI COVERAGE SECTION ")

**Notice:** **Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this FLI Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this FLI Coverage Section . This is a Claims Made Coverage Section with Defense Expenses included in the Designated Separate Limit of Liability or Designated Shared Limit of Liability.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

1.    **INSURING AGREEMENTS**

Subject to the other terms, conditions and limitations of this policy, this **FLI Coverage Section** affords the following coverage:

(a)    Solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, this **FLI Coverage Section** shall pay the **Loss** of an **Insured** arising from a **Claim** against an **Insured** for any actual or alleged **Wrongful Act** by any such **Insured** (or by any employee for whom such **Insured** is legally responsible).

(b)    Solely with respect to **CAP Penalties** and **Delinquent Filer Penalties** assessed against an **Insured**, and **Voluntary Fiduciary Correction Loss** incurred by an **Insured**, during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, this **FLI Coverage Section** shall:

(i)    pay the **CAP Penalties** and **Delinquent Filer Penalties**; and

(ii)    reimburse the **Voluntary Fiduciary Correction Loss**,

of an **Insured**, subject to the **Voluntary Compliance Loss Sublimit of Liability** set forth and defined under Clause 7. "LIMIT OF LIABILITY" of this **FLI Coverage Section**; provided that the **Insured** shall select a Panel Counsel Firm as provided in Clause 9 of this **FLI Coverage Section**.

The payment of any **Voluntary Compliance Loss** under this **FLI Coverage Section** shall not waive any of the **Insurer's** rights under this policy or at law, including in the event that a **Voluntary Compliance Loss** results in a **Claim**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000141**

2.   **DEFENSE AGREEMENT**

The **Insurer** does not assume any duty to defend a **Claim**. The **Insurer** shall advance **Defense Costs** prior to the final disposition of a **Claim**, subject to the other provisions of this **FLI Coverage Section**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this **FLI Coverage Section**.

Selection of counsel to defend a **Claim** shall be made in accordance with Clause 9 of this **FLI Coverage Section** (if applicable).

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to in writing by the **Insurer** shall be recoverable as **Loss** under the terms of this **FLI Coverage Section**, such consent not to be unreasonably withheld.

The **Insureds** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

3.   **DEFINITIONS**

(a)   " **Benefits**" means any obligation under a **Plan** to a participant or beneficiary under a **Plan** which is a payment of money or property, or the grant of a privilege, right, option or perquisite.

(b)   " **Breach of Fiduciary Duty** " means a violation of the responsibilities, obligations or duties imposed upon **Insureds** by **ERISA**.

(c)   " **Cafeteria Plan** " means a plan as defined in Section 125 of the Internal Revenue Code of 1986, as amended or a plan from which the participants may choose among two or more benefits consisting of cash and qualified benefits.

(d)   " **CAP Penalties**" means fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees assessed against or collected from an **Insured** by the Internal Revenue Service (" **IRS**") pursuant to a written agreement to correct an inadvertent **Plan** defect under an Employee Plans Compliance Resolution System, provided that such agreement to correct such **Plan** defect was entered into in writing by the **Insured** with the **IRS** during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal).

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000142**

(e)     " **Consulting Fees**" means fees charged by a third party actuary, benefits consultant or accountant resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs or expenses associated with:

    (i)     a **Plan** audit; or

    (ii)    identifying, finding or assessing such **Breach of Fiduciary Duty**.

(f)     " **Defense Expenses**" means reasonable attorney's fees, costs or expenses consented to in writing by the **Insurer** resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs and expenses associated with finding or assessing such **Breach of Fiduciary Duty** and any compensation of **Individual Insureds**.

(g)     " **Delinquent Filer Penalties**" means penalties assessed by the U.S. Department of Labor (" **DOL**") or the **IRS** under a Delinquent Filer Voluntary Compliance Program for inadvertent failure to file Form 5500, provided that the failure to file such Form 5500 occurred during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal).

(h)     " **Dependent Care Assistance Program**" means a dependent care assistance program as defined in Section 129 of the Internal Revenue Code of 1986, as amended.

(i)     " **Employee Benefit Law**" means **ERISA** or any similar common or statutory law of the United States of America, Canada or any state or other jurisdiction anywhere in the world to which a **Plan** is subject. Solely with respect to subparagraph 3(cc)(ii) of the Definition of **Wrongful Act** in this **FLI Coverage Section**, **Employee Benefit Law** shall also include **HIPAA Privacy Regulations** and any laws concerning unemployment insurance, Social Security, government-mandated disability benefits or similar law. Except as provided in the previous sentence, **Employee Benefit Law** shall not include any law concerning workers' compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

(j)     " **ERISA**" means the Employee Retirement Income Security Act of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, the Health Insurance Portability and Accountability Act of 1996, the Newborns' and Mothers' Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998), including any amendment or revision thereto.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000143**

(k)     " **ESOP**" means any employee stock ownership plan as defined in **ERISA**, or any other **Plan** under which investments are made primarily in securities of or issued by: (i) the **Company**; (ii) any acquired **Subsidiary**; or (iii) any parent of any acquired **Subsidiary**, or whose assets at any time within twelve (12) months prior to the inception date of this **FLI Coverage Section** were comprised of ten percent (10%) or more of securities of:

     (1)     the **Company**;

     (2)     any acquired **Subsidiary**; or

     (3)     any parent of any acquired **Subsidiary**.

(l)     " **Fiduciary**" means a fiduciary as defined in an **Employee Benefit Law** (if applicable), with respect to a **Plan**, or a person or entity who exercises discretionary control as respects the management of a **Plan** or the disposition of its assets.

(m)     **Fringe Benefit**" means any plan or benefit described in Section 132 of the Internal Revenue Code of 1986, as amended.

(n)     " **HIPAA Penalties**" means civil money penalties imposed upon an **Insured** for violation of **HIPAA Privacy Regulations**.

(o)     " **HIPAA Privacy Regulations**" means the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 and any amendments thereto.

(p)     " **Individual Insured**" means any:

     (i)     past, present or future natural person director, officer, governor, general partner, management committee member, **Pension Oversight Committee Member,** member of the board of managers or employee of a **Company** or, if applicable, of a **Plan**, and as to all of the above in his or her capacity as a **Fiduciary**, administrator or trustee of a **Plan**; or

     (ii)     past, present or future natural person in a position equivalent to a position listed in subparagraph (i) of this Definition (p) in the event that the **Company** is operating in a **Foreign Jurisdiction**.

(q)     " **Insured**" means:

     (i)     any **Individual Insured**;

     (ii)     any **Plan**;

     (iii)     the **Company**;

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000144**

      (iv)     any **Pension Oversight Committee**; or

      (v)     any other person or entity in his, her or its capacity as a **Fiduciary**, administrator or trustee of a **Plan** and included in the Definition of **Insured** by specific written endorsement attached to this **FLI Coverage Section**.

(r)     "**Loss**" means damages, judgments (including pre and post-judgment interest on a covered judgment), settlements and **Defense Costs**; *provided, however,* **Loss** shall not include:

      (i)     civil or criminal fines or penalties imposed by law, except:

            (1)     to the extent set forth in Insuring Agreement 1(b) of this **FLI Coverage Section** for **Voluntary Compliance Loss**,

            (2)     **UK Fines and Penalties**,

            (3)     **HIPAA Penalties**, subject to the HIPAA Penalties Sublimit of Liability set forth under Clause 6. "LIMIT OF LIABILITY" of **this FLI Coverage Section**,

            (4)     the five percent (5%) or less civil penalty imposed upon an **Insured** under Section 502(i) of **ERISA**,

            (5)     the twenty percent (20%) or less penalty imposed upon an **Insured** under Section 502(l) of **ERISA**, with respect to covered settlements or judgments; or

            (6)     the civil penalties under Section 502(c) of **ERISA**;

      (ii)    taxes or tax penalties;

      (iii)    any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**;

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000145**

(iv) **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Individual Insured**; provided however, that **Loss** shall include a monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a loss to a **Plan** or loss in the actual accounts of participants in a **Plan** by reason of a change in value of the investments held by that **Plan**, including, but not limited to, the securities of the particular **Named Entity**, regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits"; or

(v) amounts which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (r)(i) through (r)(v) above of this Definition, subject to the other terms, conditions and exclusions of this **FLI Coverage Section**.

Where permitted by law, **Loss** shall specifically include (subject to the policy's other terms, conditions and exclusions, including, but not limited to, exclusions 5(a) and 5(b) of this **FLI Coverage Section**), punitive or exemplary damages or the multiplied portion of multiplied damages imposed upon any **Insured**. The enforceability of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss** shall include **Voluntary Compliance Loss**.

(s) "**Non-qualified Plan**" means any of the following plans for a select group of management or highly compensated directors, officers or employees: deferred compensation plan, supplemental executive retirement plan, top-hat plan or excess benefit plan.

(t) "**Pension Oversight Committee**" means any pension oversight committee duly formed by a **Trustee Company** and duly appointed to act as a trustee of the **Plan** or acting as a constructive trustee of the **Plan**.

(u) "**Pension Oversight Committee Member**" means any duly elected or appointed member of a **Pension Oversight Committee**.

(v) "**Pension Plan**" means a pension plan as defined in any **Employee Benefit Law**.

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000146**

(w)   " **Plan**" means automatically any plan, fund, trust or program (including, but not limited to, any plan, fund, trust or program considered or created by the particular **Named Entity** during the **Policy Period**, any IRA-based Plan, **Welfare Plan**, **Cafeteria Plan**, **Dependent Care Assistance Program**, **Fringe Benefit**, **Non-qualified Plan**, or qualified **Pension Plan**), established anywhere in the world, which was, is or shall be sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the employees or the directors and officers of the **Company**, subject to the provisions set forth below:

(i)   if such **Plan** is a **Pension Plan**, other than an **ESOP** or **Pension Plan** described in subparagraphs (w)(iv) below, then the particular **Named Entity** shall provide written notice of such **Plan** to the **Insurer** prior to the inception date of this **FLI Coverage Section**, unless such **Plan** was already covered under a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal;

(ii)   if such **Plan** was sold, spun-off or terminated prior to the inception date of this **FLI** Coverage **Section** the particular **Named Entity** shall have provided written notice of such sale, spin-off or termination to the **Insurer** prior to the inception date of this **FLI Coverage Section** and pay any required premium relating to such **Plan**, unless such sale, spin-off or termination had already been reported to the **Insurer** under a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal;

(iii)   if such **Plan** is sold, spun-off or terminated during the **Policy Period**, the particular **Named Entity** shall provide written notice of such sale, spin-off or termination to the **Insurer** prior to the end of the **Policy Period**;

(iv)   if such **Plan** is an **ESOP**, stock option plan or stock based compensation plan, this **FLI Coverage Section** shall only provide coverage for such plan upon written notice of such **Plan** to the **Insurer**, payment of any required premium, and such **Plan** has been added to the Definition of **Plan** by specific written endorsement attached to this policy; or

(v)   if such **Plan** is a **Pension Plan** (other than an **ESOP**) and is acquired during the **Policy Period** as a result of the particular **Named Entity's** acquisition of a **Subsidiary**, then this **FLI Coverage Section** shall apply to such **Plan** (but solely with respect to any **Wrongful Act** occurring after the date of such acquisition). The particular **Named Entity** shall provide the **Insurer** with full particulars of such new **Plan** before the end of the **Policy Period**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000147**

The Definition of **Plan** shall also include: the following government-mandated programs: unemployment insurance, Social Security or disability benefits, but solely with respect to a **Wrongful Act** defined in subparagraph (ii) of the Definition of **Wrongful Act** in this **FLI Coverage Section**; and any other plan, fund or program which is included in the Definition of **Plan** by specific written endorsement attached to this **FLI Coverage Section**.

In no event, however, shall the definition of **Plan** include any multiemployer plan as defined in **Employee Benefit Law**.

(x)   " **UK Fines and Penalties** " means civil fines and penalties assessed against an **Insured** by either the Pensions Ombudsman appointed by the Secretary of State for Social Services in the United Kingdom, by the Occupational Pensions Regulatory Authority in the United Kingdom, by the Pensions Regulator in the United Kingdom or any successor body thereto, subject to the other terms, conditions and exclusions of this **FLI Coverage Section**.

(y)   " **Trustee Company** " means a corporate trustee company that is:

    (i)   established by a **Company** formed and operating in a **Foreign Jurisdiction**, or any predecessor of such **Company**, and

    (ii)   duly appointed to act as a trustee of a **Plan** in a **Foreign Jurisdiction** and sponsored solely by such **Company**.

(z)   " **Voluntary Compliance Loss** " means **CAP Penalties**, **Delinquent Filer Penalties** and **Voluntary Fiduciary Correction Loss**.

(aa)   " **Voluntary Fiduciary Correction Loss** " means damages, **Defense Expenses** and **Consulting Fees** incurred in connection with the **DOL** Voluntary Fiduciary Correction Program as set forth in the Federal Register, resulting from an inadvertent **Breach of Fiduciary Duty** occurring during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal), provided that such compliance with the **DOL's** Voluntary Fiduciary Correction Program results in the **Insured** obtaining a "No Action" letter from the **DOL**; *provided, however,* **Voluntary Fiduciary Correction Loss** shall not include:

    (i)   civil or criminal fines or penalties imposed by law;

    (ii)   punitive or exemplary damages;

    (iii)   the multiplied portion of multiplied damages;

    (iv)   taxes or tax penalties;

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000148**

(v)    any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**;

(vi)    **Benefits**, or that portion of damages equal to such **Benefits**;

(vii)    matters of which the **Insured** had knowledge prior to the inception date of this **FLI Coverage Section** or the first policy issued by the **Insurer** to the particular **Named Entity** of which this **FLI Coverage Section** is a continuous renewal; or

(viii)    matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(bb)    " **Welfare Plan** " means a welfare plan as defined in **Employee Benefit Law** .

(cc)    " **Wrongful Act** " means:

    (i)    a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**, including, but not limited to, the improper selection of or inadequate monitoring of third-party service providers; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, but only with respect to a **Plan**;

    (ii)    any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a **Plan**:

        (1)    counseling employees, participants and beneficiaries;

        (2)    providing interpretations;

        (3)    handling of records;

        (4)    activities effecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan**; or

        (5)    complying with **HIPAA Privacy Regulations**;

    or any matter claimed against an **Insured** solely by reason of his, her or its status as an administrator, but only with respect to a **Plan**; and

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000149**

(iii)    as respects an **Individual Insured**, any matter claimed against him or her arising out of his or her service as a **Fiduciary** or administrator of any multiemployer plan as defined by **ERISA**, but only if such service is at the specific written request or direction of the **Company** and such multiemployer plan is added by specific written endorsement attached to this **FLI Coverage Section**, identified as a multiemployer plan and any required premium is paid. In no event shall coverage under this **FLI Coverage Section** extend to a **Claim** against a multiemployer plan itself, its contributing employer(s) or any other fiduciaries or administrators of such plan, other than an **Individual Insured**.

## 4.    WORLDWIDE EXTENSION

For **Claims** made and maintained in a **Foreign Jurisdiction** for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** the provisions of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction**; *provided, however,* this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, pre-authorized securities or other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of the **Foreign Policy** when compared to the same or similar clauses of this **FLI Coverage Section**. This paragraph shall not apply to excess provisions or policy provisions that address non-renewal, duty to defend, defense within or without limits, taxes, claims made and reported provisions or any other provision of this policy intended to govern coverage worldwide.

All premiums, limits, retentions, **Loss** and other amounts under this **FLI Coverage Section** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **FLI Coverage Section** (subject to the terms, conditions and limitations of this **FLI Coverage Section**) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the particular **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer**'s obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

## 5.    EXCLUSIONS

Solely with respect to this **FLI Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured**:

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000150**

(a)  arising out of, based upon or attributable to the gaining of any personal profit or advantage to which any final non-appealable adjudication adverse to the Insured in the underlying action establishes that the **Insured** was not legally entitled; *provided, however,* this exclusion shall not apply to **Defense Costs** incurred prior to such final non-appealable adjudication.

(b)  arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act, or any knowing or willful violation of any statute, rule or law, including, but not limited to **Employee Benefit Law** by the **Insured** if any final non-appealable adjudication adverse to the **Insured** in the underlying action establishes that such criminal or deliberate fraudulent act was committed; *provided, however,* this exclusion shall not apply to **Defense Costs** incurred prior to such final non-appealable adjudication.

(c)  for discrimination in violation of any law; *provided, however,* this exclusion shall not apply to discrimination in violation of **Employee Benefit Law**;

(d)  alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Act** alleged or contained, in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **FLI Coverage Section** is a renewal or replacement of in whole or part or which it may succeed in time;

(e)  alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior:

    (i)  litigation against an **Insured**; or

    (ii)  administrative or regulatory proceeding or investigation of an **Insured**,

of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)  for failure to fund a **Plan** in accordance with **Employee Benefit Law** or the **Plan** instrument, or the failure to collect contributions owed to the **Plan**; *provided, however,* this exclusion shall not apply to:

    (i)  **Defense Costs**; or

    (ii)  the portion of **Loss** that is payable as a personal obligation or an **Individual Insured**;

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000151**

(g)     alleging, arising out of, based  upon or attributable to  any act or omission of an **Insured** in  his, her or  its capacity  as a **Fiduciary**  or administrator of  any plan, fund  or program,  other  than a **Plan**  as defined  in  this **FLI  Coverage Section**, or by reason of his,  her or its status as a  **Fiduciary**  or administrator of such other plan, fund or program;

(h)     for  bodily  injury,  sickness,  disease,  death  or  emotional  distress  of  any person, or damage to, loss of use  of or destruction of any tangible property; *provided, however,* this exclusion  shall not apply  to **Defense Costs** incurred in the defense of a **Claim** for **Breach of Fiduciary Duty**;

(i)     alleging, arising out of, based  upon or  attributable to any **Wrongful Act**  as respects the **Plan**  taking  place at  any time  when the  **Company** did  not sponsor such **Plan**  or when  the **Individual  Insured**  was not a  **Fiduciary**, administrator, trustee,  **Pension Oversight  Committee Member**,  director, officer, governor, management committee member,  member of the board of managers, general partner  or employee  of the **Company**  or, if  applicable, a **Plan**;

(j)     alleging, arising out of, based  upon, attributable to, or in  any way involving, directly or indirectly:

        (i)     the  actual,  alleged  or  threatened  discharge,  dispersal,   release  or escape of **Pollutants**; or

        (ii)    any  direction  or  request  to  test for,  monitor,  clean  up,  remove, contain, treat, detoxify or neutralize **Pollutants**;

        *provided, however,* this  exclusion shall not  apply to  non-Indemnifiable **Loss** arising from a **Claim** alleging damage to  a **Plan**, other than non-Indemnifiable **Loss** constituting **Cleanup Costs**;

(k)     alleging, arising out  of, based  upon or  attributable to any **Wrongful Act**  as respects the **Plan**  taking  place at  any time  when the  **Company** did  not sponsor such **Plan**  or when  the **Individual  Insured**  was not a  **Fiduciary**, administrator, trustee, director(s), officer(s) or employee  of the **Company** or, if applicable, a **Plan**; or

(l)     for  any  **Wrongful Act(s)**  of a  particular  **Named Entity**,  or any  **Insured** thereof, which  occurred  prior to  the  applicable **Prior  Acts  Date** for  such **Named Entity**  as  set  forth  in  the  respective  **Program  Participants Endorsement**.

* Subject to Protective Order *

**AIGS.000152**

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 5(d) and 5(e) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

6.   **LIMIT OF LIABILITY**

The following provision shall apply in addition to the provisions of Clause 4. LIMIT OF LIABILITY of the **General Terms and Conditions**:

**VOLUNTARY COMPLIANCE LOSS SUBLIMIT OF LIABILITY**

The maximum limit of the **Insurer's** liability for all **Voluntary Compliance Loss** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 3(c) of each **Program Participants** ("**Voluntary Compliance Loss Sublimit of Liability**"). The **Voluntary Compliance Loss Sublimit of Liability** shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** or any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section**, and shall in no way serve to increase the **Insurer's Designated Policy Aggregate Limit of Liability** or any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** as stated therein.

**HIPAA PENALTIES SUBLIMIT OF LIABILITY**

The maximum limit of the **Insurer's** liability for all **HIPAA Penalties**, in the aggregate, shall be the amount set forth in Item 3(d) of each **Program Participants** ("**HIPAA Penalties Sublimit of Liability**"). The **HIPAA Penalties Sublimit of Liability** shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section**, and shall in no way serve to increase the **Insurer's Designated Policy Aggregate Limit of Liability** or any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** as stated therein.

7.   **RETENTION CLAUSE**

The following provision shall apply in addition to the provisions of Clause 5. RETENTION of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the Retention amount stated in Item 6 of the respective **Program Participants Endorsement**, such Retention amount to be borne by the **Insured** and shall remain uninsured, with regard to:

(1)   all **Indemnifiable Loss**; and

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000153**

(2)    **Loss** of a **Company**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

Notwithstanding the foregoing, no Retention is applicable to **Voluntary Compliance Loss** or **HIPAA Penalties**.

8.    **PRE-AUTHORIZED DEFENSE ATTORNEYS**

This Clause 8 applies only to:

(1)    a **Claim** brought by any government entity;

(2)    a request for coverage for a **Voluntary Compliance Loss**; or

(3)    a **Claim** brought in the form of a class or representative action or which purports to be brought as a class or representative action.

Affixed as Appendix C hereto and made a part of this **FLI Coverage Section** is a list of Panel Counsel law firms (" **Panel Counsel Firm(s)** ") from which a selection of legal counsel shall be made to conduct the defense of any **Claim** against an **Insured** to which this Clause 8 applies and pursuant to the terms set forth in this Clause.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Insured**. In addition, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, the **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The selection of a **Panel Counsel Firm** from the attached list to defend the **Claim** against the **Insureds** shall not be restricted to the jurisdiction in which the **Claim** is brought.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000154**

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Insureds' Representative**. At the request of a particular **Named Entity** or the **Insureds' Representative**, the **Insurer** may in its discretion add one or more law firms to the attached list of **Panel Counsel Firms** for the purposes of defending the **Claim** made against the **Insureds**. The list of **Panel Counsel Firms** may also be amended to add, at the sole discretion of the **Insurer**, a non- **Panel Counsel Firm** for the purpose of acting as "local counsel" to assist an existing **Panel Counsel Firm**, which **Panel Counsel Firm** will act as "lead counsel" in conducting the defense of the **Claim**, for **Claims** brought in a jurisdiction in which the chosen **Panel Counsel Firm** does not maintain an office.

9.    **WAIVER OF RECOURSE**

Except for the **Insurer's** subrogation rights set forth in Clause 9 of the **General Terms and Conditions**, the **Insurer** shall have no right of recourse against an **Insured** unless required pursuant to any **Employee Benefit Law**.

It is further provided that in the event of any recovery under this Clause 9, any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** shall be restored to the extent of such recovery after subtracting any costs, expenses or reimbursements incurred by the **Insurer** in connection therewith.

10.    **ORDER OF PAYMENTS**
In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this **FLI Coverage Section**, then the **Insurer** shall in all events:

(a)    first, pay **Loss** for which coverage is provided under this **FLI Coverage Section** for any **Individual Insured**;

(b)    second, only after payment of **Loss** has been made pursuant to Clause 10(a) above with respect to whatever remaining amount of any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** is available after such payment, pay the **Loss** of any covered **Plan**; and

(c)    then, only after payment of **Loss** has been made pursuant to Clause 10(a) and 10(b) above, with respect to whatever remaining amount of any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** is available after such payment, shall payment for the **Company** be made for such other **Loss** for which coverage is provided under this **FLI Coverage Section**.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000155**

[The balance of this page is intentionally left blank.]

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000156**

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website and click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                                    ◊ All rights reserved.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000157**

**APPENDIX B**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Public and Private Companies (Employment Practices Liability)" link and then select the applicable Panel Counsel Directory, either the "4-97 Monoline/Public Companies" link or the "Private Edge" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                    © All rights reserved.

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000158**

**APPENDIX C**
**EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY**
**PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at AIG Panel Counsel Directory http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Fiduciary Liability (ERISA and Non-ERISA)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

99544 (7/08)                          Page 1 of 1

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000159**

**POLICYHOLDER NOTICE**
**REGARDING**
**E- DISCOVERY CONSULTANT SERVICES**

You are hereby notified that the Insureds under the attached policy are entitled to retain the services of a pre- approved E- Consultant Firm from the E- DISCOVERY CONSULTING FIRMS listed below at the rates negotiated by the Insurer for any Claim covered under the policy in which E- Discovery is required or becomes necessary.

For the purpose of the E- Discovery Consultant Services discussed in this notice, the following definitions shall apply:

(a)  "E- Consultant Firm" means any E- DISCOVERY CONSULTING FIRMS listed below. Any "E- Consultant Firm" may be hired by an Insured to perform E- Discovery Consultant Services without further approval by the Insurer.

(b)  "E- Discovery" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c)  "E- Discovery Loss" means the reasonable and necessary consulting fees for the E- Discovery Consultant Services provided solely to the Insured(s) by an E- Consultant Firm.

Provided, however, E- Discovery Loss shall not include any costs of discovery other than E- Discovery Loss.

(d)  "E- Discovery Consultant Services" means solely the following services performed by an E- Consultant Firm:

1.  assisting the Insured with managing and minimizing the internal and external costs associated with E- Discovery;

2.  assisting the Insured in developing or formulating an E- Discovery strategy which shall include interviewing qualified and cost effective E- Discovery vendors;

3.  serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E- Discovery strategy; and

4.  such other services provided by the E- Consultant Firm that the Insured, Insurer and E- Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

PLEASE NOTE: The Insurer shall only be liable for the amount of E- Discovery Loss arising from a Claim (with the exception of a Securities Claim) under the attached policy that is in excess of the applicable Retention amounts stated in Item 4 of the Declarations. The E- DISCOVERY CONSULTANT SERVICES COVERAGE provided for Securities Claims shall be governed by the terms, conditions and exclusions set forth in the attached policy. In all events, the Insurer shall not waive any of the Insurer's rights under this policy or at law.

E- DISCOVERY CONSULTING FIRMS

The list of approved E- Consultant Firms is accessible through our online directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online E- Consultant Firm Directory, please go to the website and click on the "e- Consultant Panel Members" link.

References in this policy to the list of E- Consultant Firms or related appendices are deemed amended to refer to the applicable online E- Consultant Firm Directory at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

◊ All rights reserved.

**Exhibit 1**

97886 (4/08)

1

* Subject to Protective Order *

**AIGS.000160**

APPENDIX D
CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION

I.   **DEFINITIONS**

(a)   **"Crisis Management Event"** means one of the following events which, in the good faith opinion of the **Company**, did cause or is reasonably likely to cause a **Material Effect**:

  1.   Management Crisis:
      The death, incapacity or criminal indictment of any **Executive** of the **Company**, or any **Employee** on whom the **Company** maintains key person life insurance.

  2.   Employee Layoffs:
      The public announcement of layoffs of **Employees** of the Company.

  3.   Debt Default:
      The public announcement that the **Company** had defaulted or intends to default on its debt.

  4.   Bankruptcy:
      The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

  5.   Mass Tort:
      The public announcement or accusation that a **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

  6.   Regulatory Crisis:
      The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against a **Company**.

The descriptions in the headings of the **Crisis Management Events** are solely for convenience and form no part of the terms and conditions of coverage.

A **Crisis Management Event** shall first commence when the **Company** or any of its **Executives** shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Company** that the crisis no longer exists or when the **Crisis Management Fund** has been exhausted.

(b)   **"Crisis Management Firm"** means any firm listed in the Insurer's online directory, at http://www.aig.com/us/panelcounseldirectory, as a pre-approved Crisis Management Firm. To access the applicable online Crisis Management Firm Directory, please go to the website and click on the "CrisisFund® " link.

(c)   **"Crisis Management Loss"** means the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an Insured arising from the **Crisis Management Event** and, in the case where a

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000161**

**Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

(1)    amounts for which the **Company** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Company** arising from a **Crisis Management Event**; and

(2)    amounts for which the **Company** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by **Executives, Employees** or agents of the **Company** or the **Crisis Management Firm**, in connection with the **Crisis Management Event**.

(d)    "**Crisis Management Services**" means those services performed by a **Crisis Management Firm** in advising the **Company** or any of its **Executives** or **Employees** on minimizing potential harm to the **Company** arising from the **Crisis Management Event**, including but not limited to maintaining and restoring public confidence in the **Company**.

(e)    "**Material Effect**" means the publication of unfavorable information regarding the **Company** which can reasonably be considered to lessen public confidence in the competence of the **Company**. Such publication must in occur in either:

(1)    a daily newspaper of general circulation in the geographic area of the **Company**, or

(2)    a radio or television news report on an **Company** received in the geographic area of the **Company**.

## II.   EXCLUSIONS

The term **Crisis Management Event** shall not include any event relating to:

1.    any pending or prior litigation as of the **Continuity Date** for the **D&O Coverage Section** indicated in Item 3 of the Declarations;

2.    any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

3.    the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

4.    the hazardous properties of nuclear materials.

**Exhibit 1**

96311 (2/08)

2

* Subject to Protective Order *

**AIGS.000162**

**ENDORSEMENT#** *1*

This endorsement, effective *12:01 am     March 31, 2015*        forms a part of
policy number   *09-706-31-07*
issued to *TPG GROWTH*

by      *AIG Specialty Insurance Company*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of
     Claim Reporting under this policy, such notice may also be given in writing pursuant
     to the policy's other terms and conditions to the Insurer by email at the following
     email address:

     c-claim@AIG.com

     Your email must reference the policy number for this policy. The date of the
     Insurer's receipt of the emailed notice shall constitute the date of notice.

     In addition to Notice of Claim Reporting via email, notice may also be given to the
     Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947,
     Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.   *Definitions*: For this endorsement only, the following definitions shall apply:

     (a)   "Insurer" means the "Insurer," "Underwriter" or "Company" or other name
           specifically ascribed in this policy as the insurance company or underwriter for
           this policy.

     (b)   "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of
           loss" or other reference in the policy designated for reporting of claims, loss
           or occurrences or situations that may give rise or result in loss under this
           policy.

     (c)   "Policy" means the policy, bond or other insurance product to which this
           endorsement is attached.

3.   This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage
     Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
**END 001**

99758 (8/08)                      Page 1 of 1                    **Exhibit 1**
* Subject to Protective Order *            **AIGS.000163**

## ENDORSEMENT# *2*

This endorsement, effective at *12:01 am    March 31, 2015*       forms a part of
Policy No. *09-706-31-07*
Issued to: *TPG GROWTH*

By: *AIG Specialty Insurance Company*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

*END 002*
Page 1 of 1

**Exhibit 1**

89644 (6/13)

* Subject to Protective Order *

**AIGS.000164**

**ENDORSEMENT# *3***

This endorsement, effective *12:01 am      March 31, 2015*        forms a part of
policy number   *09-706-31-07*
issued to *TPG GROWTH*

by      *AIG Specialty Insurance Company*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**
**(ALL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.     alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

   (1)    **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Company**, or discharged or dispersed therefrom; or

   (2)    **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Company**; or

   (3)    the furnishing by an **Insured** or the **Company** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)    **Claims** for damage or other injury to the **Company** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B.     (1)    which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

   (2)    with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

**"Hazardous Properties"** include radioactive, toxic or explosive properties.

**"Nuclear Facility"** means:

   (a)    any nuclear reactor;

   (b)    any equipment or device designed or used for

© All rights reserved.
*END 003*

* Subject to Protective Order *

**Exhibit 1**

**AIGS.000165**

**ENDORSEMENT#** *3*     (continued)

    (1)   separating the isotopes of uranium or plutonium,
    (2)   processing or utilizing spent fuel, or
    (3)   handling, processing or packaging wastes;

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"**Nuclear Material**" means source material, special nuclear material or byproduct material.

"**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material.

"**Source Material**," "**Special Nuclear Material**," and "**Byproduct Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

"**Waste**" means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

◊ All rights reserved.
*END 003*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000166**

## ENDORSEMENT# *4*

This endorsement, effective *12:01 am      March 31, 2015*          forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - ACCESS CLINICAL

Item 1.   **NAMED ENTITY:**          ACCESS CLINICAL PARTNERS, LLC

          **MAILING ADDRESS:**     873 SANTA CRUZ AVENUE, SUITE 202
                                    MENLO PARK, CA 94025

      **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY :** DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY :**          $7,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $6,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY :**

    a.   Crisis Management Fund for D&O:                $50,000
    b.   Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c.   Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d.   HIPAA Penalties Sublimit of Liability for FLI:      $25,000
    e.   Contract Claim Defense Costs Coverage Sublimit
         of Liability for D&O:                       $1,000,000
    f.   Side A Excess Limit of Liability             $500,000
         excess aggregate limit of liability for all **Non-Indemnifiable Loss**
         solely for **Executives** of a **Company** (including **Defense Costs**)
         under the **D&O Coverage Section** (herein the " **Side A Excess**
         **Limit of Liability**").

**Exhibit 1**

*END 4*
* Subject to Protective Order *

**AIGS.000167**

**ENDORSEMENT#** *4*    (Continued)

This endorsement, effective *12:01 am*    *March 31, 2015*    forms a part of
policy number    *09-706-31-07*
issued to    *TPG GROWTH*

by    *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

   D&O Coverage Section:        08/12/2013 for $2M limit of liability
                                03/04/2014 for $3M excess of $2M limit of
                                liability
                                02/28/2014      for $1M excess of $5M limit of
                                liability

   EPLI Coverage Section:       08/12/2013 for $2M limit of liability
                                03/04/2014 for $3M excess of $2M limit of
                                liability
   FLI Coverage Section:         03/04/2014

Item 5.   **PRIOR ACT DATES**:

   D&O Coverage Section: 03/04/2014
   EPLI Coverage Section: N/A
   FLI Coverage Section:  N/A

tem 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
         Act or Related Wrongful Acts):**

   D&O Coverage Section: $25,000
   EPLI Coverage Section: $25,000
   FLI Coverage Section:  $0

   *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

|                  |           |
|------------------|-----------|
| **YEAR 1 PREMIUM:** | $35,000 |
| **YEAR 2 PREMIUM:** | $35,000 |

**Exhibit 1**

*END 4*
          * Subject to Protective Order *          **AIGS.000168**

## ENDORSEMENT# 4     (Continued)

This endorsement, effective  *12:01 am*      *March 31, 2015*       forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*

by     *AIG Specialty Insurance Company*


Item 8.

**ANNUAL PREMIUM**          $35,000

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

**Exhibit 1**

MNSCPT                    *END 4*

* Subject to Protective Order *

**AIGS.000169**

## ENDORSEMENT# 5

This endorsement, effective *12:01 am*      *March 31, 2015*      forms a part of
policy number    *09-706-31-07*
issued to     *TPG GROWTH*

by      *AIG Specialty Insurance Company*

### SEPARATE SUBLIMIT OF LIABILITY FOR SPECIFIED ENTITY
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed the policy is hereby amended as follows:

1. This Endorsement only applies to coverage otherwise provided under Endorsement #6 - Program Participant Endorsement - ACCESS CLINICAL.

2. Notwithstanding anything to the contrary in the  policy, the aggregate limit of the Insurer's liability  for all  Loss under  the D&O  Coverage Section arising  from any  and  all Specified Claims is $1,000,000 (hereinafter called the "Specified Insured Sublimit of Liability").  This Specified Insured Sublimit of Liability shall be part of and not in addition to the Designated Policy Aggregate Limit of Liability and  any  Designated Separate or Shared Limit of Liability otherwise applicable to the Specified Claim.

3. For purposes of this endorsement only, the term "Specified Claim" means any Claim made against TRUE NORTH URGENT CARE, LLC or any Individual Insured thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

**Exhibit 1**

*END 5*

* Subject to Protective Order *

**AIGS.000170**

ENDORSEMENT# *6*

This endorsement, effective *12:01 am*      *March 31, 2015*      forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by      *AIG Specialty Insurance Company*

### ADDITIONAL INSUREDS - LISTED AFFILIATES - ACCESS CLINICAL
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement #6, Program Participant Endorsement - Access Clinical, solely with respect to coverage as is provided under the Coverage Sections specified in the schedule below, Clause 2. Definition of "Company" of the General Terms and Conditions, is amended to include the following entity(ies), each of which is an " **Affiliate**" (as defined below), subject to each such Affiliate's **Continuity Date**:

APPLICABLE COVERAGE SECTION(S):

All Coverage Sections
D&O
EPL
FLI

**AFFILIATE**
**CONTINUITY DATE**
True North Urgent Care, LLC
D&O   08/12/2013
EPL   08/12/2013
FLI      03/04/2014

It is further understood and agreed that, for the purpose of the applicability of the coverage provided by this endorsement, the Affiliates listed above and the Company will be conclusively deemed to have indemnified the Individual Insureds and other persons afforded coverage by this endorsement to the extent that such Affiliates or the Company is permitted or required to indemnify such persons pursuant to law, common or statutory, or contract, or the charter or by-laws of the Company. The Affiliates and the Company hereby agree to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

It is further understood and agreed that, solely with respect to any coverage granted by virtue of this endorsement, the Insurer shall not be liable for any Loss in connection with any Claim made against the Affiliates listed above or any Clams made against any Individual Insured of such Affiliate listed above:

**Exhibit 1**

*END 6*
* Subject to Protective Order *
**AIGS.000171**

ENDORSEMENT# *6* (Continued)

This endorsement, effective *12:01 am* *March 31, 2015* forms a part of
policy number *09-706-31-07*
issued to *TPG GROWTH*

by *AIG Specialty Insurance Company*

(1) alleging, arising out of, based upon or attributable to, as of such Affiliate's respective Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, or alleging or derived from a Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; and

(2) alleging any Wrongful Act occurring prior to such Affiliate's respective Continuity Date if the Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy.

In all events, coverage as is afforded under this endorsement with respect to any Claim made against any Affiliate listed above or any Individual Insured thereof shall only apply for Wrongful Acts committed or allegedly committed after the respective time such Affiliate became an Affiliate and prior to the time that such Affiliate ceased to be an Affiliate.

As used in this endorsement, the term " **Affiliate**" means (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

**Exhibit 1**

MNSCPT *END 6*

* Subject to Protective Order *

**AIGS.000172**

## ENDORSEMENT# 7

This endorsement, effective *12:01 am     April 14, 2015*          forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - ADAPTIV.IO

Item 1.   **NAMED ENTITY:**          ADAPTIV.IO, INC.

   **MAILING ADDRESS:**     3501 JAMBOREE RD, SUITE 5000
                           NEWPORT BEACH, CA 92660

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :          $4,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $ 3,000,000 | N/A |
| EPLI Coverage Section: | $ 3,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

   a. Crisis Management Fund for D&O:                    $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:  $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $25,000
   d. HIPAA Penalties Sublimit of Liability for FLI:     $25,000
   e. Contract Claim Defense Costs Coverage Sublimit of  $1,000,000
      Liability for D&O:
   f. Side A Excess Limit of Liability                   $500,000

      excess aggregate limit of liability for all
      **Non-Indemnifiable Loss** solely for **Executives** of a C
      ompany (including **Defense Costs**) under the **D&O
      Coverage Section** (herein the " **Side A Excess Limit of
      Liability**")

Item 4.   **CONTINUITY DATES** :

        D&O Coverage Section:       04/14/2015
        EPLI Coverage Section:      04/14/2015
        FLI Coverage Section:       04/14/2015

**Exhibit 1**

*END 7*
                              * Subject to Protective Order *          **AIGS.000173**

**ENDORSEMENT#** *7*     **(Continued)**

This endorsement, effective  *12:01 am*     *April 14, 2015*        forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

Item 5.   **PRIOR ACT DATES**:

  D&O Coverage Section:      N/A
  EPLI Coverage Section:    N/A
  FLI Coverage Section:      N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

  D&O Coverage Section: 25,000
  EPLI Coverage Section: 25,000
  FLI Coverage Section:   $0

  *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

  **YEAR 1 PREMIUM:**              $14,430
  **(4/14/2015 - 3/31/2016)**

  **YEAR 2 PREMIUM:**              $15,000
  **(3/31/2016 - 3/31/2017)**

Item 8.

  **ANNUAL PREMIUM**              $15,000

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

*END 7*

* Subject to Protective Order *

**AIGS.000174**

## ENDORSEMENT# *8*

This endorsement, effective  *12:01 am*      *March 31, 2015*        forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*

by     *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - ADKNOWLEDGE, INC.

Item 1.   **NAMED ENTITY:**          ADKNOWLEDGE, INC.

          **MAILING ADDRESS**:     4600 MADISON AVE STE 1000
                                 KANSAS CITY, MISSOURI 64112-3042

      **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :          $15,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a.  Crisis Management Fund for D&O:                    $50,000
    b.  Costs of Investigation Coverage Sublimit for D&O:      $250,000
    c.  Voluntary Compliance Loss Sublimit of Liability for FLI:   $25,000
    d.  HIPAA Penalties Sublimit of Liability for FLI:          $25,000
    e.  Contract Claim Defense Costs Coverage Sublimit of      $3,000,000
       Liability for D&O:
    f.  Side A Excess Limit of Liability                  $500,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       ompany (including **Defense Costs**) under the **D&O
       Coverage Section** (herein the " **Side A Excess Limit of
       Liability**")

Item 4.   **CONTINUITY DATES** :

       D&O Coverage Section:  1/1/2002
       EPLI Coverage Section:  1/1/2002
       FLI Coverage Section:   1/1/2002

**Exhibit 1**

**ENDORSEMENT#** *8*      (Continued)

This endorsement, effective  *12:01 am*      *March 31, 2015*      forms a part of
policy number  *09-706-31-07*
issued to  *TPG GROWTH*

by    *AIG Specialty Insurance Company*

Item 5.    **PRIOR ACT DATES:**

      D&O Coverage Section:  N/A
      EPLI Coverage Section:  N/A
      FLI Coverage Section:   N/A

Item 6.    **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

      D&O Coverage Section: $125,000
      EPLI Coverage Section: $100,000
      FLI Coverage Section:   $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **YEAR 1 PREMIUM:**               $39,618

      **YEAR 2 PREMIUM:**               $39,618

Item 8.

      **ANNUAL PREMIUM**               $39,618

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT                *END 8*

\* Subject to Protective Order \*

**AIGS.000176**

**ENDORSEMENT# *9***

This endorsement, effective *12:01 am*     *March 31, 2015*          forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - ADVANTEK**

Item 1.   **NAMED ENTITY**:        ADVANTEK WASTE MANAGEMENT SERVICES, LLC

           **MAILING ADDRESS**:     3300 S. GESSNER RD., SUITE 257
                                       HOUSTON, TX 77063

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:          $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

      a. Crisis Management Fund for D&O:                           $50,000
      b. Costs of Investigation Coverage Sublimit for D&O:        $250,000
      c. Voluntary Compliance Loss Sublimit of Liability for FLI: $25,000
      d. HIPAA Penalties Sublimit of Liability for FLI:           $25,000
      e. Contract Claim Defense Costs Coverage Sublimit of        $1,000,000
         Liability for D&O:
      f. Side A Excess Limit of Liability                         $500,000

         excess aggregate limit of liability for all
         **Non-Indemnifiable Loss** solely for **Executives** of a C
         ompany (including **Defense Costs**) under the **D&O**
         **Coverage Section** (herein the " **Side A Excess Limit of**
         **Liability**")

Item 4.   **CONTINUITY DATES**:

         D&O Coverage Section:  8/27/2014
         EPLI Coverage Section:  8/27/2014
         FLI Coverage Section:   8/27/2014

**Exhibit 1**

*END 9*
* Subject to Protective Order *
**AIGS.000177**

**ENDORSEMENT#** *9*      (Continued)

This endorsement, effective  *12:01 am*      *March 31, 2015*        forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

Item 5.   **PRIOR ACT DATES**:

   D&O Coverage Section:  8/27/2014
   EPLI Coverage Section:  N/A
   FLI Coverage Section:   N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

   D&O Coverage Section: $25,000
   EPLI Coverage Section: $25,000
   FLI Coverage Section:   $0

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

   **YEAR 1 PREMIUM:**              $20,000

   **YEAR 2 PREMIUM:**              $20,000

Item 8.
**ANNUAL PREMIUM**

                                   $20,000

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.
**Exhibit 1**

*END 9*

* Subject to Protective Order *

**AIGS.000178**

**ENDORSEMENT# *10***

This endorsement, effective *12:01 am*   *March 31, 2015*   forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - ANGIE'S**

Item 1.   **NAMED ENTITY:**   ANGIE'S HOLDINGS, LLC

          **MAILING ADDRESS:**   1918 LOOKOUT DRIVE
                                   NORTH MANKATO, MN 56003-1705

          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY :** DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY :**   $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $ 5,000,000 | N/A |
| EPLI Coverage Section: | $ 5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY :**

    a. Crisis Management Fund for D&O:   $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $25,000
    d. HIPAA Penalties Sublimit of Liability for FLI:   $25,000
    e. Contract Claim Defense Costs Coverage Sublimit of   $1,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability   $500,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       ompany (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the " **Side A Excess Limit of**
       **Liability**")

Item 4.   **CONTINUITY DATES:**

          D&O Coverage Section:   09/30/2014
          EPLI Coverage Section:   09/30/2014
          FLI Coverage Section:   09/30/2014

**Exhibit 1**

*END 10*
* Subject to Protective Order *
**AIGS.000179**

## ENDORSEMENT# 10    (Continued)

This endorsement, effective *12:01 am*    *March 31, 2015*         forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

Item 5.    **PRIOR ACT DATES**:

    D&O Coverage Section:        09/30/2014
    EPLI Coverage Section:     N/A
    FLI Coverage Section:         N/A

Item 6.    **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

    D&O Coverage Section: 25,000
    EPLI Coverage Section: 25,000
    FLI Coverage Section:   $0

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

        **YEAR 1 PREMIUM:**            $30,000

        **YEAR 2 PREMIUM:**            $30,000

Item 8.

        **ANNUAL PREMIUM**            $30,000

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT                              *END 10*

* Subject to Protective Order *

**AIGS.000180**

ENDORSEMENT# *11*

This endorsement, effective *12:01 am*    *March 31, 2015*        forms a part of
policy number  *09-706-31-07*
issued to    *TPG GROWTH*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT- ARTEL LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.    **NAMED ENTITY:**        ARTEL HOLDINGS, LLC

   **MAILING ADDRESS:**    13665 Dulles Technology Drive Suite 300
                Herndon, VA 20171

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY :** DE

Item 2.    **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY :**        $10,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | $5,000,000 | N/A |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY :**

   a.   Crisis Management Fund for D&O:            $50,000
   b.   Costs of Investigation Coverage Sublimit for D&O:    $250,000
   c.   Voluntary Compliance Loss Sublimit of Liability for FLI:  $25,000
   d.   HIPAA Penalties Sublimit of Liability for FLI:        $25,000
   e.   Contract Claim Defense Costs Coverage Sublimit
       of Liability for D&O:                $1,000,000
   f.   Side A Excess Limit of Liability            $500,000
       excess aggregate limit of liability for all **Non-Indemnifiable Loss**
       solely for **Executives** of a **Company** (including **Defense Costs**)
       under the **D&O Coverage Section** (herein the " **Side A Excess
       Limit of Liability**").

**Exhibit 1**

*END 11*
          * Subject to Protective Order *                **AIGS.000181**

**ENDORSEMENT# *11***   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2015*   forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES:**

    D&O Coverage Section:  06/01/2011
    EPLI Coverage Section:  06/01/2011
    FLI Coverage Section:   06/01/2011

Item 5.   **PRIOR ACT DATES:**

    D&O Coverage Section:  06/01/2011
    EPLI Coverage Section:  06/01/2011
    FLI Coverage Section:   06/01/2011

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

    D&O Coverage Section:      $25,000
    EPLI Coverage Section:    $25,000
    FLI Coverage Section:     $0

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

    **YEAR 1 PREMIUM**      **$48,039**
    **YEAR 2 PREMIUM**      **$48,039**

Item 8.

    **ANNUAL PREMIUM**      **$48,039**

    **COMMISSION:**      **16.00%**

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT   *END 11*

* Subject to Protective Order *

**AIGS.000182**

**ENDORSEMENT#** *12*

This endorsement, effective *12:01 am      March 31, 2015*      forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by      *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT- COUNTER BRANDS**

Item 1.    **NAMED ENTITY:**      COUNTER BRAND, LLC dba BEAUTYCOUNTER

              **MAILING ADDRESS:**    2803 Colorado Ave
                                     Santa Monica, CA 90404

              **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:** DE

Item 2.    **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY:**      $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY:**

    a. Crisis Management Fund for D&O:      $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:      $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $25,000
    d. HIPAA Penalties Sublimit of Liability for FLI:      $25,000
    e. Contract Claim Defense Costs Coverage Sublimit of      $1,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability      $500,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       ompany (including **Defense Costs**) under the **D&O
       Coverage Section** (herein the " **Side A Excess Limit of
       Liability**")

Item 4.    **CONTINUITY DATES:**

           D&O Coverage Section: First $2,000,000 - 07/01/2013
                          $3,000,000 x/s First $2,000,000 - 12/16/2014

**Exhibit 1**

*END 12*
*\* Subject to Protective Order \**
**AIGS.000183**

**ENDORSEMENT# *12*** **(Continued)**

This endorsement, effective *12:01 am* *March 31, 2015* forms a part of policy number *09-706-31-07*
issued to *TPG GROWTH*

by *AIG Specialty Insurance Company*

      EPLI Coverage Section: First $2,000,000 - 07/01/2013
                            $3,000,000 x/s First $2,000,000 - 12/16/2014

      FLI Coverage Section: 12/16/2014

Item 5. **PRIOR ACT DATES**:

      D&O Coverage Section: N/A
      EPLI Coverage Section: N/A
      FLI Coverage Section: N/A

Item 6. **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

      D&O Coverage Section:      $25,000
      EPLI Coverage Section:     $25,000
      FLI Coverage Section:      $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **YEAR 1 PREMIUM:**      $29,500

      **YEAR 2 PREMIUM:**      $29,500

Item 8.

      **ANNUAL PREMIUM**      $29,500

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved. **Exhibit 1**

*END 12*

* Subject to Protective Order *

**AIGS.000184**

## ENDORSEMENT# *13*

This endorsement, effective  *12:01 am*      *March 31, 2015*        forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by      *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - EVERGREEN

Item 1.   **NAMED ENTITY:**        EVERGREEN INDUSTRIAL PROPERTIES, LLC

　　　　　**MAILING ADDRESS:**     66 Franklin ST, Suite 200
　　　　　　　　　　　　　　　　　Oakland, CA 94607

　　　　　**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:** CA

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY :**        $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY :**

　　　　a.   Crisis Management Fund for D&O:              $50,000
　　　　b.   Costs of Investigation Coverage Sublimit for D&O:    $250,000
　　　　c.   Voluntary Compliance Loss Sublimit of Liability for FLI:  N/A
　　　　d.   HIPAA Penalties Sublimit of Liability for FLI:        N/A
　　　　e.   Contract Claim Defense Costs Coverage Sublimit
　　　　　　 of Liability for D&O:                    $3,000,000
　　　　f.   Side A Excess Limit of Liability            $500,000
　　　　　　 excess aggregate limit of liability for all **Non-Indemnifiable Loss**
　　　　　　 solely for **Executives** of a **Company** (including **Defense Costs**)
　　　　　　 under the **D&O Coverage Section** (herein the " **Side A Excess
　　　　　　 Limit of Liability**").

Item 4.   **CONTINUITY DATES:**

　　　　D&O Coverage Section: 05/16/2014
　　　　EPLI Coverage Section: N/A
　　　　FLI Coverage Section:   N/A

**Exhibit 1**

*END 13*
* Subject to Protective Order *

**AIGS.000185**

**ENDORSEMENT#** *13*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2015*   forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by   *AIG Specialty Insurance Company*

Item 5.   **PRIOR ACT DATES**:

D&O Coverage Section: 05/16/2014
EPLI Coverage Section: N/A
FLI Coverage Section:   N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

D&O Coverage Section: $25,000
EPLI Coverage Section: N/A
FLI Coverage Section:   N/A

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**YEAR 1 PREMIUM:**          $25,000

**YEAR 2 PREMIUM:**          $25,000

Item 8.

**ANNUAL PREMIUM**          $25,000

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.          **Exhibit 1**

*END 13*

* Subject to Protective Order *

**AIGS.000186**

## ENDORSEMENT# *14*

This endorsement, effective *12:01 am      March 31, 2015*      forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by      *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - GAVIN DE BECKER**

Item 1.   **NAMED ENTITY:**      GAVIN DE BECKER & ASSOCIATES, LP

        **MAILING ADDRESS:**   11684 Ventura Boulevard, Suite 440
                                        Studio City, California 91604
     **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:** DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY:**      $16,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $15,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY:**

    a.   Crisis Management Fund for D&O:            $50,000
    b.   Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c.   Voluntary Compliance Loss Sublimit of Liability for FLI:  $25,000
    d.   HIPAA Penalties Sublimit of Liability for FLI:     $25,000
    e.   Contract Claim Defense Costs Coverage Sublimit
          of Liability for D&O:                   $1,000,000
    f.   Side A Excess Limit of Liability           $500,000
          excess aggregate limit of liability for all **Non-Indemnifiable Loss**
          solely for **Executives** of a **Company** (including **Defense Costs**)
          under the **D&O Coverage Section** (herein the " **Side A Excess
          Limit of Liability**").

Item 4.   **CONTINUITY DATES:**

     D&O Coverage Section:  7/01/2011 $4M limit of liability
                                   09/01/2014 for $11M excess of $4M limit of liability
     EPLI Coverage Section:  04/13/2007
     FLI Coverage Section:  05/10/2012

**Exhibit 1**

*END 14*
*\* Subject to Protective Order \**

**AIGS.000187**

**ENDORSEMENT# *14*   (Continued)**

This endorsement, effective *12:01 am*   *March 31, 2015*   forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by   *AIG Specialty Insurance Company*

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:  N/A
    EPLI Coverage Section:  N/A
    FLI Coverage Section:   N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

    D&O Coverage Section: 25,000
    EPLI Coverage Section: 100,000
    FLI Coverage Section:   $0

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

    **YEAR 1 PREMIUM:**       $63,491

    **YEAR 2 PREMIUM:**       $63,491
Item 8.

    **ANNUAL PREMIUM**       $63,491

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   *END 14*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000188**

**ENDORSEMENT# *15***

This endorsement, effective  *12:01 am*     *March 31, 2015*      forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*

by    *AIG Specialty Insurance Company*

**ADDITIONAL INSUREDS - DEFINITION OF COMPANY AMENDED - GAVIN DE BECKER
(SPECIFIED COVERAGE SECTIONS)**

In consideration of  the premium charged,  it is hereby  understood and agreed that, solely
with regard to  the coverage afforded  in Endorsement  # [14], Program  Participant
Endorsement - GAVIN DE BECKER.  and Clause 2.  Definition of "Company" of the General
Terms and Conditions,  is amended to  include the following  entity(ies) and any  subsidiary
thereof, each of which is subject to each such entity(ies) Continuity Date:

APPLICABLE COVERAGE SECTION(S):

D&O
EPL
FLI


**COMPANY**
**CONTINUITY DATE**
    GAVIN DE BECKER & ASSOCIATES STOCKHOLDER, LLC
    09/01/2014
    GAVIN DE BECKER & ASSICATES HOLDCO
    09/01/2014
    GAVIN DE BECKER & ASSOCIATES HODLINGS, LLC
    09/01/2014
    GAVIN DE BECKER & ASSOCIATES GP, LLC
    09/01/2014


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.                **Exhibit 1**

MNSCPT                           ***END 15***

* Subject to Protective Order *                **AIGS.000189**

ENDORSEMENT# *16*

This endorsement, effective *12:01 am     March 31, 2015*     forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

**ABSOLUTE BI / PD**
**EXCLUSION AMENDED ENDORSEMENT**
**(D&O AND EPL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement # 14, Program Participant
Endorsement - Gavin De Becker it is hereby agreed as follows:

1. Solely with respect to **Loss** as may have otherwise been covered under the **D&O
   Coverage Section**, paragraph (l) of Clause 4. **EXCLUSIONS** of the **D&O Coverage
   Section** is deleted in its entirety and replaced as follows:

   (l) alleging, arising out of, based upon or attributable to bodily injury, sickness,
      disease or death of any person, or damage to, loss of use of or destruction of
      any tangible property; provided, however, that this exclusion shall not apply to
      **Securities Claims**;

2. Solely with respect to **Loss** as may have otherwise been covered under the **EPL
   Coverage Section**, paragraph (f) of Clause 3. **EXCLUSIONS** of the **EPL Coverage
   Section** is deleted in its entirety and replaced as follows:

   (f) alleging, arising out of, based upon or attributable to bodily injury (other than
      emotional distress or mental anguish), sickness, disease, or death of any person,
      or damage to, loss of use of or destruction of any tangible property;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT     *END 16*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000190**

## ENDORSEMENT# *17*

This endorsement, effective *12:01 am     March 31, 2015*          forms a part of
policy number  *09-706-31-07*
issued to  *TPG GROWTH*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP

Item 1.    **NAMED ENTITY:**          TPG NEEDLES PARTNERSHIP LP

          **MAILING ADDRESS:**      6225 N. State Hwy, Suite 200
                                          Irving, TX 75038

          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:** DE

Item 2.    **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY:**          $15,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY:**

        a.    Crisis Management Fund for D&O:          $50,000
        b.    Costs of Investigation Coverage Sublimit for D&O:      $250,000
        c.    Voluntary Compliance Loss Sublimit of Liability for FLI: $25,000
        d.    HIPAA Penalties Sublimit of Liability for FLI:      $25,000
        e.    Contract Claim Defense Costs Coverage Sublimit
            of Liability for D&O:                    $1,000,000
        f.    Side A Excess Limit of Liability          $500,000
            excess aggregate limit of liability for all **Non-Indemnifiable Loss**
            solely for **Executives** of a **Company** (including **Defense Costs**)
            under the **D&O Coverage Section** (herein the " **Side A Excess**
            **Limit of Liability**").

Item 4.    **CONTINUITY DATES:**

        D&O Coverage Section:  5/10/2013
        EPLI Coverage Section:  5/10/2013
        FLI Coverage Section:    5/10/2013

**Exhibit 1**

*END 17*
* Subject to Protective Order *
**AIGS.000191**

**ENDORSEMENT#** *17*     (Continued)

This endorsement, effective  *12:01 am*     *March 31, 2015*        forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*

by      *AIG Specialty Insurance Company*

Item 5.    **PRIOR ACT DATES:**

      D&O Coverage Section:  5/10/2013
      EPLI Coverage Section:  5/10/2013
      FLI Coverage Section:   5/10/2013

Item 6.    **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

      D&O Coverage Section: $50,000
      EPLI Coverage Section: $100,000
      FLI Coverage Section:   $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **YEAR 1 PREMIUM:**              $53,707

      **YEAR 2 PREMIUM:**              $53,707

Item 8.

      **ANNUAL PREMIUM**             $53,707

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

*END 17*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000192**

ENDORSEMENT# *18*

This endorsement, effective *12:01 am     March 31, 2015*        forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*

by     *AIG Specialty Insurance Company*

**FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT
(D&O AND EPL COVERAGE SECTIONS)**

This endorsement modifies insurance provided under the Manuscript Form for TPG Growth
Portfolio.

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement #17, Program Participant
Endorsement - TPG Needles, the policy is amended as follows:

I. AMENDMENTS TO THE GENERAL TERMS & CONDITIONS SECTION

The General Terms & Conditions section is amended as follows:

A. In Clause 2. "DEFINITIONS" of the General Terms & Conditions Section, the definition
of Company is amended to include the following at the end thereof:

Company shall also include any auxiliary, guild or foundation formed solely for the benefit
of the Named Entity and of which the book value of such entity's assets determined in
accordance with Generally Accepted Accounting Principles totals less than 10% of the
similarly calculated assets of the Named Entity as of the inception date of the Policy
Period.

II. AMENDMENTS TO THE D&O COVERAGE SECTION

The D&O Coverage Section, if purchased, is amended as follows:

1. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Individual
Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly
constituted committee; any individual person engaged by a duly constituted committee for
purposes of providing an expert opinion with regard to peer review or credentialing decision
concerning an individual physician; any individual in charge of any operational department;
and any medical director, staff physician or faculty member of the Company, regardless of
whether or not such person is directly employed by the Company or is considered to be an
independent contractor.

2. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Loss is
amended to include the following at the end thereof:

**Exhibit 1**

*END 18*
* Subject to Protective Order *
**AIGS.000193**

**ENDORSEMENT# *18*   (Continued)**

This endorsement, effective *12:01 am     March 31, 2015*     forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by   *AIG Specialty Insurance Company*

1.   IRS Fines:

Loss shall include Defense Costs incurred in connection with a Claim seeking an
assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or
penalties pursuant to the following sections of the Internal Revenue Code of 1986 (as
amended):

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax-exempt foundations);
Section 4941 (taxes on self-dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or
registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.   EMTALA AND HIPAA FINES AND PENALTIES

Notwithstanding the foregoing, Loss shall also include:

(1) civil fines and penalties assessed upon an Insured for a violation of EMTALA, subject to
the EMTALA Sub-limit of Liability; and

(2)   HIPAA Penalties, where insurable by law, subject to the HIPAA Penalties Sublimit of
Liability.

3.   GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

Notwithstanding the foregoing, Loss shall not include the return of funds which were
received from any federal, state or local governmental agency or any interest, fines or
penalties arising out of the return of such funds; provided, however, that this policy shall
pay Defense Costs in connection with any Claim made against an Insured for the return of
such funds, subject to the Government Funding Defense Costs Sublimit of Liability and any
co-insurance or separate retention provided for such coverage in this policy.

**Exhibit 1**

**ENDORSEMENT# *18*** **(Continued)**

This endorsement, effective *12:01 am*      *March 31, 2015*      forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by      *AIG Specialty Insurance Company*

4.     EXCESS BENEFIT PENALTY COVERAGE

"Loss" shall also include any "Excess Benefits" penalty assessed in the amount of 10% by
the Internal Revenue Service ("IRS") against any Insured(s) for management's involvement
in the award of an "Excess Benefit" and the Defense Costs attributable thereto. Loss shall
specifically exclude: (1) any 25% penalty assessed by the IRS against an Insured deemed
to have received an Excess Benefit; (2) Defense Costs incurred to defend any Insured if it
has been in fact determined that such individual received an Excess Benefit; and (3) any
200% penalty assessed by the IRS for failure to correct the award of an Excess Benefit.
In all events, the assessment by the IRS of a 200% penalty against any Insured shall void
ab initio all coverage afforded pursuant to this paragraph.

3. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "Wrongful
Act" is amended by adding the following to the end thereof:

(iv)      any violation of the EMTALA.

(v) any violation of the HIPAA Privacy Regulations.

4. In Clause 4. "EXCLUSIONS" of the D&O Coverage Section, paragraph (l) is deleted in its
entirety and replaced with the following:

(l)      alleging, arising out of, based upon or attributable to bodily injury, sickness, disease
or death of any person, or damage to, loss of use of or destruction of any tangible
property; provided, however, this exclusion shall not apply to any Securities Claim.

5. Clause 5. "LIMIT OF LIABILITY" of the D&O Coverage Section is amended by inserting
the following at the end thereof:

  EMTALA SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Loss in connection with all EMTALA
Claims in the aggregate made and reported during the Policy Period or Discovery Period (if
applicable) is $100,000 (hereinafter "EMTALA Sublimit of Liability"). The EMTALA
Sub-limit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability
and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O
Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of
Liability, Separate Limit of Liability or Shared Limit of Liability.

**Exhibit 1**

*END 18*
* Subject to Protective Order *
**AIGS.000195**

**ENDORSEMENT# *18*** **(Continued)**

This endorsement, effective *12:01 am*     *March 31, 2015*         forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

### GOVERNMENT FUNDING DEFENSE COSTS SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Defense Costs in connection with a Claim for the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds is $1,000,000 (the "Government Funding Defense Costs Sublimit of Liability"). The Government Funding Defense Costs Sub-Limit of Liability is part of and not in addition to the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability. With respect to any such sublimited Defense Costs, it is further understood and agreed that the Insurer shall be liable to pay only 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit of Liability. It is a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the Insureds at their own risk and be uninsured.

### HIPAA PENALTIES SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all HIPAA Penalties in the aggregate under this policy is $100,000 (the "HIPAA Penalties Sublimit of Liability"). The HIPAA Penalties Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

III.    AMENDMENTS TO THE EPL COVERAGE SECTION

The EPL Coverage Section, if purchased, is amended as follows:

A. In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of Individual Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly constituted committee; any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialing decision concerning an individual physician; any individual in charge of any operational department; and any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

**Exhibit 1**

MNSCPT                              *END 18*                                    **AIGS.000196**
* Subject to Protective Order *

**ENDORSEMENT#** *18*   (**Continued**)

This endorsement, effective  *12:01 am*      *March 31, 2015*       forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by      *AIG Specialty Insurance Company*

B. In the definition of Employment Practices Violation in Clause 2. "DEFINITIONS" of the EPL Coverage Section, subparagraph (xi) is deleted in its entirety and replaced with the following:

(xi) defect in peer review or credentialing;

(xii) with respect to any of the foregoing items (i) through (xi) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

C. Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended by deleting paragraphs (e) and (h) thereof in their entirety and replacing them with the following:

(e) alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to any a Claim for Retaliation.

(h)     alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Insured Company under any express contract or agreement (other than any employee handbooks or human resources policies and procedures, or any organizational or management advisory documents of any Named Entity); provided, however, this exclusion shall not apply to:

(i)     liability which would have attached in the absence of such express contract or agreement; or

(ii)    Defense Costs

(iii)   Individual Insureds;

(iv)   Claims for Loss alleging Wrongful Acts of an Insured with respect to hospital practice privileges, credentialing or peer review matters;

a. The following clause is inserted at the end of the EPL Coverage Section:

HC-1  THIRD PARTY HUMAN CLINICAL TRIAL CLAIMS SUBLIMIT OF LIABILITY

**Exhibit 1**

*END 18*
* Subject to Protective Order *
**AIGS.000197**

**ENDORSEMENT# *18*   (Continued)**

This endorsement, effective *12:01 am*    *March 31, 2015*    forms a part of
policy number  *09-706-31-07*
issued to  *TPG GROWTH*

by  *AIG Specialty Insurance Company*

The following provisions shall apply in addition to the provisions of Clause 4. "LIMIT OF LIABILITY" of the General Terms and Conditions:

The aggregate limit of the Insurer's liability for all Loss under the EPL Coverage Section in connection with all Third Party Human Clinical Trial Claims in the aggregate is $100,000 (hereinafter called the "Third Party Human Clinical Trial Claims Sublimit of Liability"). The Third Party Human Clinical Trial Claims Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the EPL Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

IV. DEFINITIONS USED IN ENDORSEMENT

As used in this endorsement, the following terms have the meanings set forth below:

HC-1 "EMTALA" means the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

HC-2 "EMTALA Claim" means any Claim alleging a violation of EMTALA, including, without limitation, any Claim seeking civil fines and penalties for a violation of EMTALA.

HC-3 "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

HC-4 "HIPAA Penalties" means civil money penalties imposed upon an Insured for violation of the HIPAA Privacy Regulations.

HC-5 "HIPAA Privacy Regulations" means the privacy provisions of Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder, and amendments thereto, including, but not limited to, any amendment pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH Act")

HC-6 "Third Party Human Clinical Trial Claim" means any Third Party Violation in connection with any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.    **Exhibit 1**

MNSCPT                    *END 18*

* Subject to Protective Order *    **AIGS.000198**

ENDORSEMENT# *19*

This endorsement, effective *12:01 am*     *March 31, 2015*          forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*

by     *AIG Specialty Insurance Company*

### ADDITIONAL INSUREDS - LISTED AFFILIATES - TPG NEEDLES
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement #16, Program Participant
Endorsement - TPG Needles, solely with respect to coverage as is provided under the
Coverage Sections specified in the schedule below, Clause 2. Definition of "Company" of
the General Terms and Conditions, is amended to include the following entity(ies), each of
which is an " **Affiliate**" (as defined below), subject to each such Affiliate's **Continuity Date**:

APPLICABLE COVERAGE SECTION(S):

All Coverage Sections
D&O
EPL
FLI

**AFFILIATE**
**CONTINUITY DATE**
Northstar Anesthesia, P.A
05/10/2013
Northstar Anesthesia of Tennessee, PLLC
05/10/2013
Northstar Anesthesia of Oklahoma, PLLC
05/10/2013
Northstar Anesthesia of Kentucky, PLLC
05/10/2013
Northstar Anesthesia of West Virginia, PLLC
05/10/2013
NorthStar Anesthesia of Indiana, LLC
05/10/2013
NorthStar Anesthesia of Massachusetts, PLLC
05/10/2013
NorthStar Anesthesia of Pennsylvania, LLC
05/10/2013
NorthStar Anesthesia of Kansas, LLC
05/10/2013
NorthStar Anesthesia of Illinois, LLC
05/10/2013

**Exhibit 1**

*END 19*
                              * Subject to Protective Order *                    **AIGS.000199**

ENDORSEMENT# *19*   (Continued)

This endorsement, effective  *12:01 am*     *March 31, 2015*        forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*


by      *AIG Specialty Insurance Company*


NorthStar  Anesthesia of Alabama, LLC
05/10/2013
NorthStar  Anesthesia of Georgia, LLC
05/10/2013
NorthStar  Anesthesia of Ohio, LLC
05/10/2013
NorthStar  Anesthesia of Pennsylvania, LLC
05/10/2013
NorthStar  Anesthesia of Virginia, LLC
05/10/2013
NSA Pain Services of Texas, PLLC
05/10/2013
NSA Pain Services of Ohio, PLLC
05/10/2013
NSA Pain Services of Kansas, PLLC
05/10/2013
ACM GP, LLC
05/10/2013
ACM GP II, LLC
05/10/2013
ACMUV, LLC
05/10/2013
ACM Holdco, LP
05/10/2013
Anesthesia Consulting and Management, LP
05/10/2013
MIRA Healthcare of Tennessee, PLLC
05/10/2013
MIRA Healthcare of Texas, PLLC
05/10/2013
Mira Healthcare, LLC
05/10/2013
OmniStaff Anesthesia, LP
05/10/2013
OmniStaff, LLC
05/10/2013
Ambulatory Anesthesia Associates, LLC
05/10/2013


**Exhibit 1**

*END 19*                            **AIGS.000200**
* Subject to Protective Order *

## ENDORSEMENT# 19    (Continued)

This endorsement, effective   *12:01 am*      *March 31, 2015*        forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*


by      *AIG Specialty Insurance Company*


Anesthesia Concepts, LLC
05/10/2013
Anesthesia Consulting & Management, LP
05/10/2013
Amsol Professionals of America, LLC
05/10/2013
Amsol LLC
05/10/2013
American Integrated Management, LLC
05/10/2013
VitalMed, Inc.
05/10/2013
Amsol of Charleston, S.C., LLC
05/10/2013
Amsol of Elkin, N.C.; LLC
05/10/2013
Healthcare Quality & Compliance Group LLC
05/10/2013
Anesthesia Resources Management Solutions, Inc.
05/10/2013
Amsol Physicians of Ohio, P.C.
05/10/2013
Amsol Anesthetists of Ohio, LLC
05/10/2013
Anesthesia Solutions of Anniston, LLC
05/10/2013
Anesthesia Services of Dunn, NC, PC (NC)
05/10/2013
AmSol Anesthetists of Dunn, NC, PLLC (NC)
05/10/2013
Nurse Anesthesia of North Carolina, P.L.L.C. (NC)
05/10/2013
Nurse Anesthesia of South Carolina, L.L.C. (SC)
05/10/2013
AmSol Physicians of Georgia, P.C. (Georgia)
05/10/2013
AmSol Physicians of Columbus, GA, L.L.C. (Georgia)
05/10/2013

**Exhibit 1**

*END 19*
* Subject to Protective Order *

**AIGS.000201**

**ENDORSEMENT# 19**   (Continued)

This endorsement, effective  *12:01 am*     *March 31, 2015*      forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by    *AIG Specialty Insurance Company*

AmSol Anesthetists of Georgia, L.L.C. (Georgia)
05/10/2013
Anesthesia Care of West Virginia, Professional Corporation (WV)
05/10/2013
AmSol Anesthetists of Ohio Valley, LLC (WV)
05/10/2013
AmSol Physicians of Ohio Valley, PLLC (WV)
05/10/2013
Anesthesia Care of Litchfield, S.C. (IL)
05/10/2013
AmSol Anesthetists of Litchfield, IL, P.C. (IL)
05/10/2013
AmSol Physicians of Elkin, N.C., P.L.L.C. (NC)
05/10/2013
Anesthesia Management Services, LLC
05/10/2013
Anesthesia Professionals, LLC
05/10/2013
Central Virginia Anesthesia, LLC
05/10/2013
Frederick Anesthesia, LLC
05/10/2013
Mid Atlantic Pain Management, LLC
05/10/2013
Professional Anesthesia Group, LLC
05/10/2013

It is further understood and agreed that, for the purpose of the applicability of the coverage provided by this endorsement, the Affiliates listed above  and the Company will be conclusively deemed to have  indemnified the Individual Insureds and other persons afforded coverage by this endorsement to the extent that such Affiliates or the Company is permitted or required to indemnify such persons  pursuant to law, common or statutory,  or contract, or the charter or by-laws of the Company.  The Affiliates and the Company hereby agree to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

It is further  understood and agreed that, solely with respect to  any coverage granted by virtue of this endorsement,  the Insurer shall not  be liable for any Loss in connection with any Claim made against the Affiliates listed above or any Clams made against any Individual Insured of such Affiliate listed above:

**Exhibit 1**

*END 19*
*Subject to Protective Order *

**AIGS.000202**

**ENDORSEMENT# *19*** (Continued)

This endorsement, effective *12:01 am    March 31, 2015*    forms a part of
policy number *09-706-31-07*
issued to *TPG GROWTH*

by *AIG Specialty Insurance Company*

(1) alleging, arising out of, based upon or attributable to, as of such Affiliate's respective Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, or alleging or derived from a Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; and

(2) alleging any Wrongful Act occurring prior to such Affiliate's respective Continuity Date if the Insured knew or could have reasonably foreseen that such Wrongful Act could lead to a Claim under this policy.

In all events, coverage as is afforded under this endorsement with respect to any Claim made against any Affiliate listed above or any Individual Insured thereof shall only apply for Wrongful Acts committed or allegedly committed after the respective time such Affiliate became an Affiliate and prior to the time that such Affiliate ceased to be an Affiliate.

As used in this endorsement, the term "**Affiliate**" means (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT                    *END 19*

* Subject to Protective Order *

**AIGS.000203**

**ENDORSEMENT# 20**

This endorsement, effective  *12:01 am*      *March 31, 2015*         forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - PJU HOLDINGS

Item 1.   **NAMED ENTITY**:      TPG PIZZA HOLDINGS, LLC

          **MAILING ADDRESS**:    2300 RESOURCE DR
                                     BIRMINGHAM, AL 35242

          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : AL

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :         $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | $5,000,000 | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

| | | |
|---|---|---|
| a. | Crisis Management Fund for D&O: | $50,000 |
| b. | Costs of Investigation Coverage Sublimit for D&O: | $250,000 |
| c. | Voluntary Compliance Loss Sublimit of Liability for FLI: | $25,000 |
| d. | HIPAA Penalties Sublimit of Liability for FLI: | $25,000 |
| e. | Contract Claim Defense Costs Coverage Sublimit of Liability for D&O: | $3,000,000 |
| f. | Side A Excess Limit of Liability | $500,000 |

        excess aggregate limit of liability for all
**Non-Indemnifiable Loss** solely for **Executives** of a C
ompany (including **Defense Costs**) under the **D&O
Coverage Section** (herein the " **Side A Excess Limit of
Liability**")

**Exhibit 1**

*END 20*
* Subject to Protective Order *
**AIGS.000204**

**ENDORSEMENT# *20*** **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2015*   forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES:**

      D&O Coverage Section: 12/30/2013
      EPLI Coverage Section: 11/9/2007
                      1/18/2012 for $4,500,000 excess of the $500,000
                      limit of liability
      FLI Coverage Section:   11/9/2007

Item 5.   **PRIOR ACT DATES:**

      D&O Coverage Section: 12/30/2013
      EPLI Coverage Section: 11/9/2007
      FLI Coverage Section:   11/9/2007

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

      D&O Coverage Section: $50,000
      EPLI Coverage Section: $150,000
      FLI Coverage Section:   $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **YEAR 1 PREMIUM:**             $49,000

      **YEAR 2 PREMIUM:**             $49,000

Item 8.
**ANNUAL PREMIUM**

                      $49,000

                              AUTHORIZED REPRESENTATIVE
                              Or Countersignature (In states where applicable)

**Exhibit 1**

© All rights reserved.

MNSCPT                       *END 20*

**AIGS.000205**

* Subject to Protective Order *

## ENDORSEMENT# *21*

This endorsement, effective *12:01 am      March 31, 2015*          forms a part of
policy number  *09-706-31-07*
issued to    *TPG GROWTH*

by      *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT- UTC LABORATORIES, LLC

Item 1.    **NAMED ENTITY:**        UTC LABORATORIES, LLC

**MAILING ADDRESS:**    1441 Canal Street Ste. 401
New Orleans, LA 70112

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.    **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:        $16,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $15,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY**:

a.    Crisis Management Fund for D&O:                $50,000
b.    Costs of Investigation Coverage Sublimit for D&O:    $250,000
c.    Voluntary Compliance Loss Sublimit of Liability for FLI:  $25,000
d.    HIPAA Penalties Sublimit of Liability for FLI:        $25,000
e.    Contract Claim Defense Costs Coverage Sublimit
     of Liability for D&O:                $1,000,000
f.    Side A Excess Limit of Liability            $500,000
     excess aggregate limit of liability for all **Non-Indemnifiable Loss**
     solely for **Executives** of a **Company** (including **Defense Costs**)
     under the **D&O Coverage Section** (herein the " **Side A Excess
     Limit of Liability**").

**Exhibit 1**

*END 21*
* Subject to Protective Order *              **AIGS.000206**

**ENDORSEMENT# *21*** **(Continued)**

This endorsement, effective *12:01 am    March 31, 2015*    forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by    *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES:**

D&O Coverage Section:  2/27/2014 for $3M limit of liability
10/31/14 $12M limit of liability  excess of $3M limit  of liability
EPLI Coverage Section:   2/27/2014 for $3M limit of liability
10/31/14 $2M limit  of liability  excess of  $3M limit  of liability

FLI Coverage Section:  10/31/2014

Item 5.   **PRIOR ACT DATES:**

D&O Coverage Section:  N/A
EPLI Coverage Section:  N/A
FLI Coverage Section:   N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

D&O Coverage Section:       $25,000
EPLI Coverage Section:      $25,000
FLI Coverage Section:       $0

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Exhibit 1**

*END 21*
* Subject to Protective Order *
**AIGS.000207**

**ENDORSEMENT#** *21*     **(Continued)**

This endorsement, effective  *12:01 am*     *March 31, 2015*        forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*


Item 7.

        **YEAR 1 PREMIUM:**          $60,500


        **YEAR 2 PREMIUM:**          $60,500

Item 8.
**ANNUAL PREMIUM**

                  $60,500


—————————————————————
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

**Exhibit 1**

*END 21*

* Subject to Protective Order *

**AIGS.000208**

**ENDORSEMENT#** *22*

This endorsement, effective *12:01 am*   *March 31, 2015*   forms a part of
policy number *09-706-31-07*
issued to   *TPG GROWTH*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - RIDE**

Item 1.   **NAMED ENTITY:**   RIDE HOLDINGS, INC.

          **MAILING ADDRESS:**   309 CHERRY STREET
                                   PHILADELPHIA, PA 19016

       **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :   $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | $5,000,000 | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

     a.   Crisis Management Fund for D&O:   $50,000
     b.   Costs of Investigation Coverage Sublimit for D&O:   $250,000
     c.   Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
     d.   HIPAA Penalties Sublimit of Liability for FLI:   $25,000
     e.   Contract Claim Defense Costs Coverage Sublimit
         of Liability for D&O:   Coverage Not Purchased

     f.   Side A Excess Limit of Liability   $500,000
         excess aggregate limit of liability for all **Non-Indemnifiable Loss**
         solely for **Executives** of a **Company** (including **Defense Costs**)
         under the **D&O Coverage Section** (herein the " **Side A Excess Limit of Liability**").

**Exhibit 1**

*END 22*
\* Subject to Protective Order \*   **AIGS.000209**

**ENDORSEMENT# 22**    (Continued)

This endorsement, effective *12:01 am*   *March 31, 2015*       forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by    *AIG Specialty Insurance Company*

Item 4.    **CONTINUITY DATES**:

      D&O Coverage Section:  12/23/2010
      EPLI Coverage Section:  12/23/2010
      FLI Coverage Section:    12/23/2010

Item 5.    **PRIOR ACT DATES**:

      D&O Coverage Section:  N/A
      EPLI Coverage Section:  N/A
      FLI Coverage Section:    N/A

Item 6.    **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

      D&O Coverage Section: $25,000
      EPLI Coverage Section: $25,000
      FLI Coverage Section:   $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **YEAR 1 PREMIUM:**       $23,879

      **YEAR 2 PREMIUM:**       $23,879

Item 8.
**ANNUAL PREMIUM**
        $23,879

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT                      *END 22*

* Subject to Protective Order *

**AIGS.000210**

**ENDORSEMENT#** *23*

This endorsement, effective *12:01 am    March 31, 2015*        forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by     *AIG Specialty Insurance Company*

**DEFINITION OF "COMPANY" AMENDED - RIDE**
**(SPECIFIED COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement # 22, Program Participant
Endorsement - RIDE.  and Clause 2. Definition of "Company" of the General Terms and
Conditions, is amended to include the following entity(ies) and any subsidiary thereof, each
of which is subject to each such entity(ies) Continuity Date:

APPLICABLE COVERAGE SECTION(S):

D&O
EPL
FLI


COMPANY
CONTINUITY DATE
VPSI Titling Co.
12/23/2010
vRide, Inc.
12/23/2010
vRide Parent, Inc.
12/23/2010
VPSI, Inc
12/23/2010

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT        *END 23*

* Subject to Protective Order *

**AIGS.000211**

## ENDORSEMENT# 24

This endorsement, effective *12:01 am*     *March 31, 2015*          forms a part of
policy number  *09-706-31-07*
issued to  *TPG GROWTH*

by     *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT- VITAG HOLDINGS, LLC

Item 1.   **NAMED ENTITY**:        VITAG HOLDINGS, LLC

          **MAILING ADDRESS**:     117 ALLWIN LN
                                      BEECH ISLAND, SOUTH CAROLINA 29842-8941

          STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :          $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
| --- | --- | --- |
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

        a.   Crisis Management Fund for D&O:                    $50,000
        b.   Costs of Investigation Coverage Sublimit for D&O:     $250,000
        c.   Voluntary Compliance Loss Sublimit of Liability for FLI:  $25,000
        d.   HIPAA Penalties Sublimit of Liability for FLI:         $25,000
        e.   Contract Claim Defense Costs Coverage Sublimit
             of Liability for D&O:                            $1,000,000
        f.   Side A Excess Limit of Liability                   $500,000
             excess aggregate limit of liability for all **Non-Indemnifiable Loss**
             solely for **Executives** of a **Company** (including **Defense Costs**)
             under the **D&O Coverage Section** (herein the " **Side A Excess
             Limit of Liability**").

**Exhibit 1**

*END 24*
\* Subject to Protective Order \*          **AIGS.000212**

**ENDORSEMENT# _24_**   (Continued)

This endorsement, effective _12:01 am_   _March 31, 2015_   forms a part of
policy number   _09-706-31-07_
issued to   _TPG GROWTH_

by   _AIG Specialty Insurance Company_

Item 4.   **CONTINUITY DATES:**

      D&O Coverage Section: 7/11/2014
      EPLI Coverage Section: 4/30/2009
      FLI Coverage Section:   7/11/2014

Item 5.   **PRIOR ACT DATES:**

      D&O Coverage Section: 7/11/2014
      EPLI Coverage Section: N/A
      FLI Coverage Section:   N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

      D&O Coverage Section:      $25,000
      EPLI Coverage Section:     $25,000
      FLI Coverage Section:      $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

    **YEAR 1 PREMIUM:**      $27,000

    **YEAR 2 PREMIUM:**      $27,000

Item 8.
**ANNUAL PREMIUM**

      $27,000

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT                          *END 24*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000213**

**ENDORSEMENT# 25**

This endorsement, effective *12:01 am*      *March 31, 2015*      forms a part of
policy number *09-706-31-07*
issued to   *TPG GROWTH*

by      *AIG Specialty Insurance Company*

**D&O COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED**

In consideration of the premium charged, it is hereby understood  and agreed that Clause 9
of the D&O Coverage Section PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS is
hereby amended to include  the following solely in  regard to a **Securities Claim** brought  in
any of the below jurisdictions:

| Panel Counsel Law Firm | Jurisdiction |
|---|---|
| Ropes & Gray LLP | any jurisdiction in the United States of America, the United Kingdom, Hong Kong, Japan, South Korea and the People's Republic of China |
| Cleary Gottlieb Steen & Hamilton LLP | any jurisdiction in the United States of America, the United Kingdom, the Russian Federation, Italy, Brazil, the Republic of France, Belgium, the Federal Republic of Germany, Hong Kong, South Korea, the United Arab Emirates, and the People's Republic of China |

For the purposes  of this Clause  9, Defense  Costs shall also  mean any legal  fees and
expenses of Panel  Counsel selected by  the **Insured(s)** at  Panel Counsel's usual  hourly
rates (including usual and customary  periodic increases in such rates)  and including all
reasonable out  of pocket  charges and expenses  with no  discount  in rate  or other
reduction in such rates or rate of expense reimbursement

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

——————————————————
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT                    *END 25*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000214**

## ENDORSEMENT# *26*

This endorsement, effective *12:01 am*     *March 31, 2015*        forms a part of
policy number  *09-706-31-07*
issued to     *TPG GROWTH*

by     *AIG Specialty Insurance Company*

### EPL COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED

In consideration of the premium charged, it is hereby understood  and agreed that Clause 6 of the  EPL  Coverage  Section PRE-AUTHORIZED  SECURITIES  DEFENSE  ATTORNEYS is hereby amended to include  the following but solely  in regard to an **Employment Practices Claim** brought in any of the below jurisdictions:

| Panel Counsel Law Firm | Jurisdiction |
|---|---|
| Kelly Hart & Hallman | Texas |

For the  purposes  of this  Clause  6, Defense  Costs  shall  also mean  any  legal fees and expenses of Panel Counsel selected by the **Insured(s)** at Panel Counsel's usual  hourly rates (including usual and  customary  periodic  increases in such  rates) and  including all reasonable out of pocket charges and expenses with no discount in rate  or other reduction in such rates or rate of expense reimbursement

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT                                        *END 26*

* Subject to Protective Order *

**AIGS.000215**

**ENDORSEMENT#** *27*

This endorsement, effective   *12:01 am*      *March 31, 2015*           forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*

by     *AIG Specialty Insurance Company*

**PARENT COMPANY & AFFILIATED ENTITY(IES) COVERAGE ENDORSEMENT
(CO-DEFENDANT BASIS ONLY)
(D&O and EPL COVERAGE SECTION)**

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to **Loss** as may otherwise have been covered under the **D&O and EPL Coverage Section**, the policy is hereby amended as follows:

1. Clause 2. DEFINITIONS of the General Terms and Conditions is amended as follows:

   (a) Subject to the provisions of sections 1 and 2 of this endorsement, the definition of "**Company**" is deleted in its entirety and replaced with the following:

   "**Company**" means:
   (1) the **Named Entity;**
   (2) each **Subsidiary** of the **Named Entity;**
   (3) the **Insured Representative ;**
   (4) each **Affiliated Entity** of the **Insured Representative** , and
   (5) in the event a bankruptcy proceeding shall be instituted by or against any of the foregoing entities, the resulting debtor-in-possession (or equivalent status outside the United States of America), if any;

   (b) The following definitions are added to the General Terms and Conditions:

   "**Affiliated Entities**" means:

   (1) a pooled investment vehicle formed and controlled by the **Insured Representative** for purposes of making a direct or indirect investment in the **Named Entity;**

   (2) an entity which is a general partner, managing general partner, managing member, administrative member, sole member, manager, managing shareholder or other sponsor of a pooled investment vehicle described in paragraph 1 above;

   (3) an entity (including, but not limited to, any holding company, special purpose vehicle or other acquisition vehicle) formed for the sole purpose of holding a direct or indirect interest in the **Named Entity**, but only if such entity is majority-owned and controlled by a pooled investment vehicle described in paragraph 1 above and/or directly by the **Insured Representative** .

**Exhibit 1**

*END 27*
                    * Subject to Protective Order *           **AIGS.000216**

**ENDORSEMENT#** *27*      (Continued)

This endorsement, effective   *12:01 am*      *March 31, 2015*      forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by    *AIG Specialty Insurance Company*

" **Co-Defendant(s)**" means the **Insured Representative** , each **Affiliated Entity** of the **Insured Representative** , and any **Individual Insured** of the **Insured Representative**  or **Affiliated Entity**.

2. Notwithstanding the foregoing, coverage as is afforded under this policy with respect to a **Claim** made against any **Co-Defendant**:

   (a) shall only apply if:

       (i)     such **Claim** is for a **Wrongful Act** committed by an **Insured** (other than a **Co-Defendant**);

       (ii)    an **Insured** (other than a **Co-Defendant**) is and remains a defendant in the action along with such **Co-Defendant(s)**;

       (iii)   the **Co-Defendant** becomes a co-defendant in such **Claim** solely by reason of such **Co-Defendant(s)**' ownership in or **Management Control** of the **Named Entity**; and

       (iv)   the **Co-Defendant(s)** and other **Insureds** are represented by the same counsel in such **Claim**;

   (b) shall not apply to any **Wrongful Act** committed or allegedly committed (i) by a **Co-Defendant**; or (ii) at a time when such **Co-Defendant** did not have ownership in or **Management Control** of the **Named Entity**.

3. In the event of **Loss** of a **Co-Defendant** is covered under another insurance policy issued by the **Insurer** or any member company of American International Group, Inc. (" **AIG**"), then the **Insurer's** maximum aggregate limit of liability for all **Loss** combined in connection with a **Claim** covered, in part or in whole, by this policy and such other insurance policy issued by **AIG**, shall not exceed the greater of (i) the **Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** of this policy, or (ii) the limit of liability of such other **AIG** insurance policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

 

 

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT                    *END 27*

* Subject to Protective Order *

**AIGS.000217**

**ENDORSEMENT#** *28*

This endorsement, effective *12:01 am*      *March 31, 2015*          forms a part of
policy number   *09-706-31-07*
issued to    *TPG GROWTH*

by      *AIG Specialty Insurance Company*

**PROFESSIONAL ERRORS & OMISSIONS EXCLUSION ENDORSEMENT
(D&O COVERAGE SECTION) - ADKNOWLEDGE, INC.**

In consideration of the premium charged, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement #8, Program Participant Endorsement - Adknowledge, Inc., that Clause 4. EXCLUSIONS of the D&O Coverage Section is amended to add the following:

> Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT

*END 28*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000218**

**ENDORSEMENT# *29***

This endorsement, effective *12:01 am*    *March 31, 2015*      forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by    *AIG Specialty Insurance Company*

**PROFESSIONAL ERRORS & OMISSIONS EXCLUSION ENDORSEMENT
(D&O COVERAGE SECTION) - GAVIN DE BECKER**

In consideration of the premium charged, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement #14, Program Participant Endorsement - Gavin De Becker that Clause 4. EXCLUSIONS of the D&O Coverage Section is amended to add the following:

*Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:*

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.                    **Exhibit 1**

MNSCPT                          *END 29*

* Subject to Protective Order *                    **AIGS.000219**

**ENDORSEMENT# *30***

This endorsement, effective *12:01 am    March 31, 2015*    forms a part of
policy number  *09-706-31-07*
issued to   *TPG GROWTH*

by   *AIG Specialty Insurance Company*

### PROFESSIONAL ERRORS & OMISSIONS EXCLUSION ENDORSEMENT
### (D&O COVERAGE SECTION) - TPG NEEDLES PARTNERSHIP LP

In consideration of the premium charged, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement #17, Program Participant Endorsement - TPG Needles Partnership LP that Clause 4. EXCLUSIONS of the D&O Coverage Section is amended to add the following:

> Solely with respect to Coverage B(i) of this **D&O Coverage Section,** the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

**Exhibit 1**

MNSCPT                                    *END 30*

* Subject to Protective Order *

**AIGS.000220**

**ENDORSEMENT#** *31*

This endorsement, effective *12:01 am*      *March 31, 2015*         forms a part of
policy number   *09-706-31-07*
issued to   *TPG GROWTH*

by      *AIG Specialty Insurance Company*

### SETTLOR CAPACITY AMENDATORY
### (WRONGFUL ACT DEFINITION AMENDED)
### (FLI COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that the Definition of " **Wrongful Act**", as used in the **FLI Coverage Section,** is amended to include any actual or alleged act, error or omission by an **Insured** in a settlor capacity as respects a **Plan**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

**Exhibit 1**

MNSCPT                                    *END 31*

\* Subject to Protective Order \*

**AIGS.000221**

**ENDORSEMENT#** *32*

This endorsement, effective *12:01 am     March 31, 2015*                    forms a part of
policy number   *09-706-31-07*
issued to *TPG GROWTH*

by      *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PRIVATEEDGE PLUS - DECLARATION PAGE |
| MNSCPT | | GENERAL TERMS AND CONDITIONS |
| MNSCPT | | DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE |
| MNSCPT | | EMPLOYMENT PRACTICES LIABILITY INSURANCE |
| MNSCPT | | FIDUCIARY LIABILITY INSURANCE |
| | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
| | 06/08 | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| 99544 | 07/08 | EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY PANEL COUNSEL |
| 97886 | 04/08 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |
| 96311 | 02/08 | APPENDIX D - CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 89644 | 06/13 | ECONOMIC SANCTIONS ENDORSEMENT |
| 95737 | 09/07 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (ALL COVERAGE SECTIONS) |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ACCESS CLINICAL |
| MNSCPT | | SEPARATE SUBLIMIT OF LIABILITY FOR SPECIFIED ENTITY |
| MNSCPT | | ADDITIONAL INSUREDS - LISTED AFFILIATES - ACCESS CLINICAL |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ADAPTIV.IO |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ADKNOWLEDGE, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ADVANTEK |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ANGIE'S |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT- ARTEL LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT- COUNTER BRANDS |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - EVERGREEN |

℗ All rights reserved.

*END 032*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000222**

**ENDORSEMENT#** *32*

This endorsement, effective *12:01 am*      *March 31, 2015*                    forms a part of
policy number   *09-706-31-07*
issued to *TPG GROWTH*

by     *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - GAVIN DE BECKER |
| MNSCPT | | ADDITIONAL INSUREDS - DEFINITION OF COMPANY AMENDED - GAVIN DE BECKER |
| MNSCPT | | ABSOLUTE BI / PD |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP |
| MNSCPT | | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| MNSCPT | | ADDITIONAL INSUREDS - LISTED AFFILIATES - TPG NEEDLES |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - PJU HOLDINGS |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT- UTC LABORATORIES, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - RIDE |
| MNSCPT | | DEFINITION OF "COMPANY" AMENDED - RIDE |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT- VITAG HOLDINGS, LLC |
| MNSCPT | | D&O COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| MNSCPT | | EPL COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| MNSCPT | | PARENT COMPANY & AFFILIATED ENTITY(IES) COVERAGE ENDORSEMENT |
| MNSCPT | | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION ENDORSEMENT |
| MNSCPT | | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION ENDORSEMENT |
| MNSCPT | | PROFESSIONAL ERRORS & OMISSIONS EXCLUSION ENDORSEMENT |
| MNSCPT | | SETTLOR CAPACITY AMENDATORY |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

✆

*END 032*

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000223**

**ENDORSEMENT#** *32*

This endorsement, effective *12:01 am*      *March 31, 2015*                forms a part of
policy number   *09-706-31-07*
issued to *TPG GROWTH*

by    *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

☼

*END 032*

* Subject to Protective Order *

78859 (10/01)

**Exhibit 1**

**AIGS.000224**



# CLAIM REPORTING FORM

Issuing Company: *AIG Specialty Insurance Company*

Reported under Policy/Bond Number: _09·706·31·07_      Date: _____

Type of Coverage: D&O _____ E&O _____ Fidelity _____ (complete the Fidelity Supplemental on the next page)

Insured's Name, as given on Policy Declarations (Face Page):

*TPG GROWTH* _____

_____

_____

Contact Person: _____

Title: _____

Phone: _(_____)_____-_____Ext_____

eMail: _____ @ _____

Case or Claimant Name: _____

_____

If the party involved is different from "Insured" Name (as given on Policy Declarations) state relationship:

_____

Insurance Broker/Agent: *WILLIS OF NEW YORK, INC*

Address: *1 WORLD FINANCIAL CENTER, 200 LIBERTY STREET*

Address: *NEW YORK, NY 10281*

Contact: *Virginia Mcmunigal*      Phone: _____

eMail: *Virginia.mcmunigal@willis.com*

Send Notice of Claims to:   AIG                       Phone: (888) 602-5246
                            Financial Lines Claims    Fax:   (866) 227-1750
                            P.O. Box 25947            Email: c-Claim@AIG.com
                            Shawnee Mission, KS 66225

**Exhibit 1**

* Subject to Protective Order *

**AIGS.000225**



## CLAIM REPORTING FORM
## FIDELITY SUPPLEMENTAL
**(Only complete this supplemental if the Claim is being reported under Fidelity Coverage)**

Issuing Company: *AIG Specialty Insurance Company*

Reported under Policy/Bond Number:  *09-706-31-07*

---

Date of Discovery: ————————————   Estimated Amount of loss: ————————————

Cause of Loss:

| | | | |
|---|---|---|---|
| Employee Dishonesty | _____ | Computer Fraud | _____ |
| Funds Transfer | _____ | Robbery/Burglary | _____ |
| ID Theft | _____ | Forgery | _____ |
| Client Property | _____ | In Transit | _____ |
| ERISA | _____ | Credit Card Forgery | _____ |
| Other | _____ | if Other, describe: | _____ |

---

Send Notice Of Claims To:   AIG
Financial Lines Claims
P.O. Box 25947
Shawnee Mission, KS 66225

Phone: (888) 602-5246
Fax:    (866) 227-1750
Email:  c-Claim@AIG.com

**Exhibit 1**

*centralized Customer Link and Information Management*
* Subject to Protective Order *

**AIGS.000226**