# FORMS SCHEDULE

Policy Number: 01-308-60-68
Division No: 39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date: May 31, 2017
Printed by: TAWANA WIGGINS
Phone # : 9134954248

Underwriter Name: PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ RTQD01 | | RISK TRANSFER |
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ COM001 | 91222 | POLICYHOLDER NOTICE |
| ☐ QE8355 | | CALIFORNIA D2 NOTICE |
| ☐ QE8942 | | EPL PAK PREMIER INSURED LETTER |
| ☐ QE6634 | | EPL PAK HIGHLIGHT SHEET |
| ☐ MNSDEC | MNSCPT | DIRECTORS & OFFICERS LIABILITY INSURANCE, EMPLOYMENT PRACTICES LIABILITY INSURANCE, FIDUCIARY LIABILITY INSURANCE DECLARATIONS |
| ☐ QE7582 | 99288 | NOTICE TO POLICY HOLDER TAXES AND FEES (Addendum) |
| ☐ MNSOTH | MNSCPT | GENERAL TERMS AND CONDITIONS |
| ☐ MNSOTH | MNSCPT | D&O COVERAGE SECTION |
| ☐ MNSOTH | MNSCPT | EPL COVERAGE SECTION |
| ☐ MNSOTH | MNSCPT | FLI COVERAGE SECTION |
| ☐ QE1731 | | SECURITIES CLAIM PANEL COUNSEL LIST |
| ☐ QE3338 | | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| ☐ QE0741 | 99544 | EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY PANEL COUNSEL |
| ☐ QE6778 | 97886 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |
| ☐ QE6369 | 96311 | APPENDIX D - CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION |
| ☐ QF1992 | 89644 | ECONOMIC SANCTIONS ENDORSEMENT |
| ☐ QE7215 | 99758 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| ☐ QE5938 | 95737 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (ALL COVERAGE SECTIONS) |
| ☐ MNSCPT | MNSCPT | ENTITY V. INSURED EXCLUSION ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | FLSA AND RELATED EXCLUSIONS AMENDED |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - 432002 LLC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - ACCESS CLINICAL PARTNERS, LLC |



NUSFRM

*Archive Copy*

* Subject to Protective Order *

AIGS.000227

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:     39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  May 31, 2017
Printed by: TAWANA WIGGINS
Phone # :  9134954248

Underwriter Name:PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ MNSCPT | 101279 | ADDITIONAL INSUREDS - LISTED AFFILIATES |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - ADVANTEK WASTE MANAGEMENT |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - ALPHABET ENERGY, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - ANGIES HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT- ANUVIA PLANT NUTRIENT HOLDINS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - ARTEL HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - COUNTER BRAND, LLC dba |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - EMPOWER MICRO SYSTEMS INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - EVERGREEN INDUSTRIAL PROPERTIES, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - FRANK RECRUITMENT GROUP |
| ☐ MNSCPT | 112262 | CALIFORNIA EMPLOYMENT PRACTICES CLAIMS |
| ☐ MNSCPT | MNSCPT | PARENT EXCLUSION ENDORSEMENT |
| ☐ MNSCPT | 105027 | TIE-IN OF LIMITS ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - GAVIN DE BECKER & ASSOCIATES, LP |
| ☐ MNSCPT | MNSCPT | ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE EXCLUSION ENDORSEMENT |
| ☐ MNSCPT | M116932 | DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES) |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - GRCY HOLDINGS, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - JAX HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - JONAH ENERGY HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | ADDITIONAL INSUREDS - DEFINITION OF COMPANY AMENDED |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - MERCATUS, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - PHILLIPS EDISON VALUE ADDED GROCERY |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - PHILZ COFFEE, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - SLINGSHOT GLOBAL MEDIA, LLC |

NUSFRM

*Archive Copy*
* Subject to Protective Order *

AIGS.000228

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No: 39
Insured Name: SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date: May 31, 2017
Printed by: TAWANA WIGGINS
Phone # : 9134954248

Underwriter Name: PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TB HOLDINGS II PARENT, INC. |
| ☐ MNSCPT | MNSCPT | PANEL COUNSEL FIRM LIST AMENDED (EPL COVERAGE SECTION) |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP |
| ☐ MNSCPT | 101279 | ADDITIONAL INSUREDS - LISTED AFFILIATES |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TPG PIZZA HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TRAVEL MANAGEMENT COMPANY |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - UTC LABORATORIES, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - GPT TPG SINGLE TENANT VENTURE LLC |
| ☐ MNSCPT | MNSCPT | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT- |
| ☐ MNSCPT | MNSCPT | FOR-PROFIT HEALTH CARE AMENDATORY ENDORSEMENT- UTC LABORATORIES, LLC |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION- 432002 LLC |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION- GAVIN DE BECKER & ASSOCIATES, LP |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION- SLINGSHOT GLOBAL MEDIA, LLC |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION- TPG NEEDLES PARTNERSHIP LP |
| ☐ MNSCPT | MNSCPT | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| ☐ MNSCPT | MNSCPT | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION- TPG NEEDLES PARTNERSHIP LP |
| ☐ MNSCPT | MNSCPT | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION- UTC LABORATORIES, LLC |
| ☐ MNSCPT | MNSCPT | EPL COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| ☐ MNSCPT | MNSCPT | D&O COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT- CLUB PILATES FRANCHISE, LLC |
| ☐ MNSCPT | MNSCPT | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES)- |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000229**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:     39
Insured Name:   SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: **March 31, 2017**
Expiration Date: **March 31, 2018**

Print date:  **May 31, 2017**
Printed by: **TAWANA WIGGINS**
Phone # :  **9134954248**

Underwriter Name: **PATRICK CAIN**
Underwriter Phone # :  646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ QE2392 | 78859 | FORMS INDEX ENDORSEMENT |

**NUSFRM**

***Archive Copy***

**AIGS.000230**

* Subject to Protective Order *

| Account Name: | *SEE PROGRAM PARTICIPANT ENDORSEMENT* | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| Policy Number: | *01-308-60-68* | Policy Effective Date: | *March 31, 2017* |
| Underwriter: | *PATRICK CAIN* | Print Date: | *May 31, 2017* |

| Initial Risk Transfer Assessment Date: | | *March 21, 2017* | |
|---|---|---|---|
| **Risk Assessment Date** | **Risk Transfer Qualification** | **Risk Assessment Date** | **Risk Transfer Qualification** |
| *03/21/2017* | *R1* | *04/24/2017* | *R1* |
| *04/25/2017* | *R1* | *04/26/2017* | *R1* |
| *04/27/2017* | *R1* | *04/27/2017* | *R1* |
| *05/24/2017* | *R1* | *05/30/2017* | *R1* |
| *05/31/2017* | *R1* | | |

**Risk Transfer Qualification Key:**

**R1** - Insurance Accounting - Safe Harbor applies to transaction, no Risk Transfer Worksheet necessary

**R2** - Insurance Accounting - Risk Transfer Worksheet completed, approved, and in UW file

**R3** - Deposit Accounting - Risk Transfer Worksheet completed, approved, and in UW file

**R4** - Bifurcated Accounting (Insurance/Deposit) - Risk Transfer Worksheet completed, approved, and in UW file.

If it has been determined that a Risk Transfer Worksheet needs to be completed, please indicate below the individuals whom are required to sign the worksheet:

_____                    _____
Underwriter                                                              Division President


_____
Chief Financial Officer

Surplus Lines License No:  *441679* _____

***Archive Copy***

* Subject to Protective Order *

**Sanctions Due Diligence Checklist for Commercial Insureds**

The AIG Property Casualty Economic Sanctions Standards require risk-based sanctions due diligence for commercial insureds. This assessment must be made prior to bind. These questions will assist you in completing due diligence pertaining to sanctions risk.

See the AIG PC Sanctions Web Page for guidance, including the following:
- RSAT contacts
- product line underwriting guidance
- de minimis application
- US sanctioned country program summary
(click here or type "sanctions" into the AIG Contact search box).

Insured: *SEE PROGRAM PARTICIPANT ENDORSEMENT*

Date: *March 21, 2017*

| | |
|---|---|
| **During the course of your regular underwriting review, was there any evidence that would lead you to believe that the Commercial insured (including subsidiaries and branches) has sanctions exposure\* in any of the countries / regions listed below?** | YES ☐   NO ☐ |

All sanctions exposure must be escalated to the Regional Sanctions Assistance Team (RSAT)

Cuba
Iran
Myanmar
Sudan
Syria
North Korea
Belarus
Zimbabwe
Crimea region of Ukraine

US and Canada:
sanctions@aig.com

Asia Pacific:
sanctions.asiapacific@aig.com

Central:
sanctions.central@aig.com

For the purpose of this question, "exposure" means any of the following:

- insured is incorporated, domiciled or located in any of the above listed countries
- insured conducts business activity involving Cuba, Crimea region of Ukraine, Iran, Syria or Sudan (e.g. services, shipments, sales, supply channels, covered property).
- information obtained shows that insured board members or officers are domiciled in Cuba, Crimea region of Ukraine, Iran, Syria or Sudan, or that an insured is majority owned by individuals or entities incorporated, domiciled or located in Cuba, Crimea region of Ukraine, Iran, Syria, Sudan. This information must be screened and evaluated.

Latin America:
sanctions.lacr@aig.com

Europe:
sanctions.europe@aig.com

Japan:
sanctions.fareast@aig.co.jp

**It is important to be alert to evidence of sanctions exposure during your regular underwriting review. Common underwriting sources that may contain information which would indicate a sanctions exposure are listed below:**

Underwriting file/submission
Company website
Annual (or other) reports
Discussion with customer/broker
Schedules of covered property, routes, vessels, locations\*

**\*Note:** Endorsements, schedules, tax forms and other policy-related documents should not refer to sanctioned countries in a way that could suggest coverage, regardless of whether a sanctions exclusion is included in the policy.

*For AIG in Canada Underwriters please see the most current version of the local Economic Sanctions Guidelines issued by Compliance.*

Page 1 of 1

**BRANCH**

The material contained herein is proprietary to AIG and is intended for internal use only by employees of AIG. Unauthorized disclosure, dissemination,
copying, or other use of this material without the express written permission of AIG is strictly prohibited.
Copyright © 2015 AIG. All rights reserved.

*Archive Copy*

\* Subject to Protective Order \*

AIGS.000232

Acknowledgement By:    *PATRICK CAIN*

Acknowledgement On:    *March 21, 2017*

Insured Name:    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

Submission/Policy Number: *013086068*

* Subject to Protective Order *

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

May 31, 2017

Direct Dial:   646- 857- 1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646- 857- 1481

Enc.

1503641

*BRANCH Archive Copy*

**AIGS.000234**

* Subject to Protective Order *

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation  or by calling 1-800-706-3102.

91222 (9/10)   *Archive Copy*

AIGS.000235

* Subject to Protective Order *

*May 31, 2017*

Congratulations on purchasing your employment practices liability insurance policy from AIG, one of the premier writers of commercial insurance. Your policy offers many outstanding features, including coverage for claims arising from violations of Title VII of the Civil Rights Act of 1964; the Americans with Disabilities Act (ADA); the Age Discrimination in Employment Act (ADEA); the Equal Pay Act of 1963 (EPA); and the Rehabilitation Act of 1973 (REHAB ACT).

As a AIG policyholder, you have the confidence of knowing that your claims will be handled by experienced claims professionals. In addition, our panel counsel is comprised of leaders in employment practices law throughout the country. The services of these law firms are available to you at preferred AIG rates.

Additionally, our package includes loss-control services included automatically for all eligible insureds through **EPL Pak<sup>®</sup> Premier**. This insurance offering features access to our online EPL Risk Manager located at www.EPLriskmanager.com , designed exclusively for AIG EPL insureds by the attorneys at Littler Mendelson, the nation's largest labor and employment law firm. This web link is exclusive to AIG EPL insurance policyholders and is available at no additional cost. To register, you can log into the site with your policy number. The site offers tools and resources including:

- Human Resources Form Library
- Sample Employee Handbooks
- Employment Law Email Alerts
- Employment Law Policies
- Hire & Fire Manual

- Employment Law Reference Manuals (5000 + pages)
- 50 State Analysis of Key Employment Laws
- Preventing Unlawful Harassment Guide
- Preventing Employment Class Actions Manual
- Discounts on Employment Law Training

All forms and materials may be downloaded and customized. To view a short video tour of the risk management products and services available, please visit: **http://eplriskmanager.com/take_tour.php**. As a AIG policyholder, you also receive ten free seats to Littler Mendelson's monthly webinar series on preventing harassment in the workplace and discounts on over 40 employment law training courses.  For additional information on these services you may contact Brian McMillan at Littler Mendelson at bmcmillan@littler.com or visit www.littler.com.

To complement these offerings, we continue to offer our risk management solutions provided by Jackson Lewis, LLP, a premier employment law firm with offices throughout the United States, including:

- Unlimited Access to the Jackson Lewis Toll Free Risk Management Hotline: (866) 614-0744
- One hour legal consultation with a Jackson Lewis attorney on any topic
- Seminars on topical issues of employment law, recent litigation development, and training
- Email subscription to The Jackson Lewis Newsletter, which highlights employment practices developments and trends
- Email updates regarding significant legislative actions, judicial decisions, and other changes which may impact your business
- Access to a self-audit checklist and a pre-termination checklist, which will assist companies in identifying potential vulnerability to employment claims
- Attendance at CAAB 1825 sexual harassment training in California

To learn more, please contact Paul Siegel at siegelp@jacksonlewis.com, Wendy Melk at mellkw@jacksonlewis.com or view a free demonstration of training at www.jacksonlewis.com , or under the online training section or at www.workplaceanswers.com

Your decision to purchase coverage through AIG has provided your organization with powerful advantages in managing your business. We thank you for choosing AIG and look forward to a continuing successful relationship. If you have any questions or would like additional information, please contact your broker, a AIG representative or email us at FinancialLines@aig.com.

AIG is the marketing name for the worldwide property-casualty and general insurance operations of AIG Property Casualty Inc. For additional information, please visit our website at http://www.aig.com . All products are written by insurance company subsidiaries or affiliates of AIG Property Casualty Inc. Coverage may not be available in all jurisdictions and is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain coverage may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds and insureds are therefore not protected by such funds.

***Archive Copy***

\* Subject to Protective Order \*

**AIGS.000236**



Financial Lines

# EPL Pak® Premier

## Employment Practices Training, Loss Prevention and Risk Management

Controlling employment practices liability exposures while keeping pace with employment litigation trends and regulatory changes is a major challenge for all employers. AIG gives its employment practices liability (EPL) policyholders a unique advantage with EPL Pak® Premier, industry-leading loss prevention offerings. The suite is a combination of training, loss control and risk management tools designed to help our clients manage employment practices risks. EPL Pak Premier's resources are exclusive to AIG, and provide our EPL policyholders with access to expertise and materials from two of the nation's foremost employment and labor law firms, Littler Mendelson, P.C. and Jackson Lewis LLP.

### Putting Experts By Your Side

EPL Pak Premier now includes instant access to www.eplriskmanager.com, which provides first-in-class risk management tools and resources from Littler Mendelson, a leading employment and labor law firm. Materials available include essentials to manage your workforce and reduce exposure to employment related liability including:

- **Handbooks and Policies:** Sample employee handbook and policies to help implement best employment practices, including supplemental information for all 50 states
- **Forms Library:** A library of commonly used human resource forms, which can be customized, to ease your administrative burden
- **Workforce Guides**: A hiring and firing guide to help employers mitigate the risks of these critical phases of the employment relationship and step-by-step guides to prevent harassment, including information to help address and resolve incidents and lessen potential liability
- **Legal Reference Materials:** Over 3,000 pages of employment law reference manuals providing insights on timely topics ranging from layoffs, downsizing, and furloughs, to workplace violence, discrimination, and employment class actions. Includes a state-by-state assessment of employment laws and regulations

EPL Pak Premier gives you access to expertise and resources from two of the nation's foremost employment and labor law firms, Littler Mendelson, P.C. and Jackson Lewis LLP.

*Archive Copy*

* Subject to Protective Order *



# EPL Pak® Premier

## State of the Art Enhancements

These state-of-the-art enhancements complement EPL Pak Premier's original package of risk management solutions from Jackson Lewis, LLP, which include:

- **Legal Consultation:** A one-hour legal consultation on human resources and employment law issues, such as how specific laws impact personnel decisions and potential exposure to liability
- **Liability Updates:** Access to the Jackson Lewis e-Newsletter and e-updates spotlighting important workplace law news and trends. Alerts on significant legislative actions, judicial decisions and other changes with potential impact on our insured's business
- **Checklists:** Self-audit and pre-termination checklists to help insureds identify vulnerabilities and safely navigate risky terrain
- **Special California State Training:** CA AB 1825 training, enabling companies with 50 or more employees in California to fulfill their mandate of providing sexual harassment training for supervisors every two years

EPL Pak Premier also includes Alternative Employment Dispute Resolution Programs from EDR Systems at preferred rates. EDR Systems will assist to resolve employee disputes internally and prevent time and money in litigation. The professionals at EDR Systems have more than 50 years of combined experience in human resource management, strategic planning, change management, and employee relations. They support a wide variety of businesses of all sizes, from national, multi-unit retail operations, to single-facility manufacturers, to professional firms.

---

To learn more about EPL Pak Premier services:

E-mail:
FinancialLines@aig.com

Visit:
www.aig.com

Contact:
Your insurance broker



# Bring on tomorrow

American International Group, Inc. (AIG) is a leading international insurance organization serving customers in more than 130 countries. AIG companies serve commercial, institutional, and individual customers through one of the most extensive worldwide property- casualty networks of any insurer. In addition, AIG companies are leading providers of life insurance and retirement services in the United States. AIG common stock is listed on the New York Stock Exchange and the Tokyo Stock Exchange.

Additional information about AIG can be found at www.aig.com | YouTube: www.youtube.com/aig | Twitter: @AIG_LatestNews | LinkedIn: www.linkedin.com/company/aig

AIG is the marketing name for the worldwide property-casualty, life and retirement, and general insurance operations of American International Group, Inc. For additional information, please visit our website at www.aig.com. All products and services are written or provided by subsidiaries or affiliates of American International Group, Inc. Products or services may not be available in all countries, and coverage is subject to actual policy language. Non-insurance products and services may be provided by independent third parties. Certain property-casualty coverages may be provided by a surplus lines insurer. Surplus lines insurers do not generally participate in state guaranty funds, and insureds are therefore not protected by such funds.

*Archive Copy*

* Subject to Protective Order *

**AIGS.000238**



## AIG Specialty Insurance Company

A capital stock company

POLICY NUMBER: 01-308-60-68     REPLACEMENT OF POLICY NUMBER: 09-706-31-07

**THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS
NOT SUBJECT TO ITS SUPERVISION.**

**DIRECTORS & OFFICERS LIABILITY INSURANCE, EMPLOYMENT PRACTICES LIABILITY
INSURANCE, FIDUCIARY LIABILITY INSURANCE
DECLARATIONS**

NOTICES

[THESE NOTICES ARE APPLICABLE TO ALL COVERAGE SECTIONS]

**COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS
FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD. DEFENSE COSTS
REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO
RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST
APPLICABLE RETENTIONS.**

**THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS
EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION. WHERE THE INSURER HAS NO
DUTY TO DEFEND, IT WILL ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE
RETENTION, PURSUANT TO THE TERMS OF THIS POLICY NO LATER THAN SIXTY (60)
DAYS AFTER RECEIPT OF INVOICES OF SUCH DEFENSE COSTS. PLEASE REFER TO THE
COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.**

**PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER
WITH YOUR INSURANCE AGENT OR BROKER TO DETERMINE WHAT IS AND WHAT IS
NOT COVERED.**

| ITEMS | | | | | |
|---|---|---|---|---|---|
| 1 | **NAMED ENTITY**: | (the "Named Entity") | See Program Participants Endorsement | | |
| 2 | **POLICY PERIOD**: | Inception Date: | March 31, 2017 | Expiration Date: | March 31, 2018 |
| | | 12:01 A.M. at the address stated in Item 1 | | | |

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

| | ITEMS (continued) | | | | |
|---|---|---|---|---|---|
| 3 | **COVERAGE SUMMARY** | | | | |
| | **Liability, Retention, Continuity Date, and Premium Coverage Section** | | | | |
| | **D&O** | **D&O Coverage Section** | See Program Participants Endorsement | | |
| | **EPL** | **Employment Practices Coverage Section** | See Program Participants Endorsement | | |
| | **FLI** | **Fiduciary Liability Coverage Section** | See Program Participants Endorsement | | |
| | *With respect to the D&O, EPL, and FLI Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss.<br>*No Retention amount is applicable to Costs of Investigation for Company Shareholder Derivative Investigations, Crisis Management Events, Voluntary Compliance Loss and HIPAA Penalties. | | | | |
| 4 | **TOTAL PROGRAM PREMIUM** | | | $ | |
| 5 | **OTHER LIMITS OF LIABILITY** | See Program Participants Endorsement | | | |
| 6 | **DISCOVERY PROVISIONS**<br><br>**(Inapplicable to Crime and KRE Coverage Sections)** | **(a) Percentage of Full Annual Premium for; 1 YEAR:** | | | **100%** |
| | | **(b) 2 YEARS:** | | | **110%** |
| | | **(c) 3 YEARS:** | | | **120%** |
| | | **(d) 4 YEARS:** | | | **130%** |
| | | **(e) 5 YEARS:** | | | **140%** |
| | | **(f) 6 YEARS:** | | | **150%** |
| | | **(g) Percentage of Full Annual Premium for unlimited duration:** | | | **TBD** |
| 7 | **NAME AND ADDRESS OF INSUREDS' REPRESENTATIVE** | | | | |
| | TPG<br>345 California Street<br>Suite 3300<br>San Francisco, CA 94104 | | | | |

® All rights reserved
* Subject to Protective Order *

| 8(a) | **NAME AND ADDRESS OF INSURER** |
|---|---|
| | **AIG Specialty Insurance Company**<br>**175 Water Street**<br>**New York, NY 10038**<br><br>**This Policy is issued only by the insurance company indicated in this Item 8(a).** |
| 8(b) | **NOTICE OF CLAIMS AND CIRCUMSTANCES SEND TO:** |
| | **AIG Domestic Claims, Inc.**<br>175 Water Street<br>New York, New York 10038<br>Attention:    "C-Claims, D&O Claims"<br><br>**Reference:   01-308-60-68**<br><br>**Reference:   Appropriate Coverage Section** |

*Archive Copy* 3 **AIGS.000241**

® All rights reserved
* Subject to Protective Order *

**IN WITNESS WHEREOF,** the **Insurer** has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

**PRESIDENT**

AIG Specialty Insurance
Company

**SECRETARY**

AIG Specialty Insurance
Company

**AUTHORIZED REPRESENTATIVE**

**COUNTERSIGNED AT**          **DATE**          **COUNTERSIGNATURE**

WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

1503641

MNSCPT                  4                    **AIGS.000242**

*Archive Copy*

® All rights reserved
* Subject to Protective Order *

**General Terms and Conditions**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

**1.     TERMS AND CONDITIONS**

These **General Terms and Conditions** shall be applicable to all **Coverage Sections**. Terms appearing in these **General Terms and Conditions** which are defined in a **Coverage Section** shall have the meaning provided for such terms in such **Coverage Section** for purposes of coverage provided under such **Coverage Section**. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this Policy.

**2.     DEFINITIONS**

(a)    " **Administrative Claim**" means an administrative or regulatory investigation:

(i)     "by the Equal Employment Opportunity Commission (**"EEOC"**) or similar federal, state or local agency; or

(ii)    of a violation of the Uniformed Services Employment and Reemployment Rights Act, when such investigation is conducted by the United States Department of Labor, Veterans Employment and Training Service, Justice Department or Office of Special Counsel;

which, in either case, is commenced by the filing of a notice of charges or similar document of which notice has been given to an **Insured**.

The term " **Administrative Claim**" shall not mean or include any **Litigated Matter**.

(b)    " **Affiliated Entities**" means:

(i)     a pooled investment vehicle formed and controlled by the **Insureds' Representative** for purposes of making a direct or indirect investment in the **Named Entity**;

(ii)    an entity which is a general partner, managing general partner, managing member, administrative member, sole member, manager, managing shareholder or other sponsor of a pooled investment vehicle described in paragraph (i) above;

*Archive Copy*
© Insurance Services Office
* Subject to Protective Order *

AIGS.000243

(iii) an entity (including, but not limited to, any holding company, special purpose vehicle or other acquisition vehicle) formed  for the sole purpose of holding  a direct or indirect interest in the **Named Entity**, but only if such entity is under **Management Control** directly or indirectly by the **Insureds' Representative**.

(c) "**Application**" means:

(i) the application attached to and  forming part of this Policy,  any attachments to such applications; and

(ii) any materials  submitted therewith,  which  shall  be  retained  on file  by  the **Insurer** and  shall  be  deemed  to  be  physically  attached  to this Policy or incorporated therein.

(d) "**Claim**" means:

(i) any written demand for  monetary or non-monetary  or injunctive relief (including, but  not limited  to,  any request  to toll  or  waive any  statute  of limitations);

(ii) any civil,  criminal,  administrative or regulatory  proceeding  or arbitration, mediation  or  other  dispute  resolution proceeding for monetary  or non-monetary or injunctive relief which is commenced by:

(1) service of a  complaint, motion, writ  or similar pleading  or service  of an order;

(2) return of an indictment, criminal complaint, information or similar document (in the case of a criminal proceeding);

(3) receipt of a notice of deposition;

(4) filing or service of a subpoena;

(5) receipt or filing of a notice of charges; or

(6) receipt of a request or demand to arbitrate or mediate;

*Archive Copy*

2

* Subject to Protective Order *
© All rights reserved

(iii)     any civil, criminal, administrative or regulatory investigation or inquiry by a federal, state, local, foreign or offshore government authority or agency (including without limitation an investigation by the Equal Employment Opportunity Commission, the Securities and Exchange Commission, the Department of Labor, the Department of Justice, the Department of Treasury, any state attorney general's office or securities regulator, the Financial Services Authority, the Pension Benefit Guarantee Corporation or a Grand Jury) or any self-regulatory organization (including, but not limited to, the Financial Industry Regulatory Authority) but only after service of a subpoena, receipt of a Wells Notice, receipt of a "target" letter (within the meaning of Title 9, 11.151 of the United States Attorney's Manual) or receipt of a notice of investigation, notice of charges, SEC Form 1662, a civil investigative demand, a search warrant, service of a complaint or other similar document of which notice has been given to an **Insured** (herein, "**Investigation Claim**");

It is understood and agreed that, notwithstanding anything to the contrary in any Insuring Agreement under this policy, the requirement under any Insuring Agreement that a **Claim** must allege a **Wrongful Act** shall not apply to any **Investigation Claim** as defined in this subparagraph (iii); provided, however, "**Investigation Claim**" shall not mean any routine regulatory supervision, examination, inspection or compliance review.

(iv)     any official written request for **Extradition** of any **Individual Insured** or the execution of a warrant for the arrest of an **Individual Insured** where such execution is an element of **Extradition**;

(v)     the equivalent document in a **Foreign Jurisdiction** for (i)-(iv) above.

The term "**Claim**" shall also include any **Securities Claim**, **Contract Claim** or any **Derivative Demand**, and any equivalent thereof in any **Foreign Jurisdiction**.

The term "**Claim**" shall also include any appeal(s) of any of the foregoing.

Solely with respect to coverage provided under D&O COVERAGE SECTION F: PRE-CLAIM INQUIRY COSTS FOR PRE-CLAIM INQUIRY, "**Claim**" also means a **Pre-Claim Inquiry**; provided, however, that a **Pre-Claim Inquiry** only shall constitute a **Claim** under this Policy only if the **Individual Insured** or **Company** elects to give to the **Insurer** written notice thereof pursuant to Clause 6. "NOTICE/CLAIM REPORTING PROVISIONS" of the policy, at which point such **Pre-Claim Inquiry** shall be deemed first made.

* Subject to Protective Order *
© All rights reserved

However, in no event shall the term " **Claim**" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(e)     " **Cleanup Costs**" means expenses, including, but not limited to, legal and professional fees incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(f)     " **Company**" means

(i)     the **Named Entity** and any **Subsidiary** thereof; and

In the event a bankruptcy proceeding shall be instituted by or against a **Company**, the term " **Company**" shall also mean the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

(g)     " **Continuity Date**" means the date set forth in Item 4 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof with respect to each **Coverage Section**.

(h)     " **Coverage Section**" means each **Coverage Section** that is purchased by the **Insured** as indicated in each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(i)     " **Defense Costs**" means any:

(iv)     legal fees and expenses including, without limitation, all reasonable out of pocket charges and expenses;

(v)     expert, forensic auditor, consultant or witness fees and expenses;

(vi)     mediator or arbitrator fees and expenses;

(vii)     cost of attachment or similar bonds incurred by the **Insureds** in the investigation of or defense of or appeal of any **Claim** or in connection with any written request or other written statement seeking extradition or rendition of an **Insured**;

(viii)     costs of **E-Discovery Consultant Services**;

(ix)     fees and expenses of vendor or service provider retained by an **Insured** or by the **Insured's** defense counsel, including without limitation any document vendor, electronic discovery vendor, database vendor, document review vendor, data recovery vendor, court reporter or investigative service; or

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(x)  other reasonable costs, charges, fees and expenses incurred in the investigation, defense, settlement or appeal of any **Claim**;

in each case, incurred by the **Insureds** in the investigation of, adjustment of, defense of and/or appeal of any **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall also include **Extradition Costs**.

**Defense Costs** shall also include all reasonable fees and expenses incurred by defense counsel selected by the **Insured(s)** in providing reports, updates or other information to the Insurer.

Solely with regard to any **Pre-Claim Inquiry, "Defense Costs"** means only **Pre-Claim Inquiry Costs**.

It is understood and agreed that **Insured Persons** shall be entitled to separate counsel in the event of any potential conflict of interest among the **Insureds** (including without limitation, any defenses being available to one **Insured** that are not available to other **Insureds**) with the consent of the Insurer (such consent shall not be unreasonably withheld or denied).

(j)  **"Designated Policy Aggregate Limit of Liability"** means the **Designated Policy Aggregate Limit of Liability** stated in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(k)  **"Designated Separate Limit of Liability"** means the applicable **Separate Limit of Liability**, if any, stated in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(l)  **"Designated Shared Limit of Liability"** means the applicable **Shared Limit of Liability**, if any, stated in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof, which limit of liability shall be shared between all of the **Coverage Sections** which are listed below such **Designated Shared Limit of Liability** in each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon.

(m)  **"Discovery Period"** means **Discovery Period**, as that term is defined in Clause 8 of these **General Terms and Conditions**.

(n)  **"Domestic Partner"** means any natural person legally recognized as a domestic or civil union partner under the provisions of any:

*Archive Copy*
© All rights reserved
* Subject to Protective Order *
**AIGS.000247**

(i)        applicable federal, state or local law; or

(ii)       program established by the **Company**.

(o)      "**E-Discovery**" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(p)      "**E-Discovery Consultant Services**" means solely the following services performed by an E-Consultant Firm:

      (i)       assisting the **Insured** with managing and minimizing the internal and external costs associated with E-Discovery;

      (ii)     assisting the **Insured** in developing or formulating an E-Discovery strategy which shall include interviewing qualified and cost effective E-Discovery vendors;

      (iii)    serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the Insurer in executing and monitoring the E-Discovery strategy; and

      (iv)    such other services provided by the E-Consultant Firm that the **Insured**, Insurer and E-Consultant Firm agree are reasonable and necessary given the circumstances of the Claim.

(q)      "**Employee**" means any past, present or future:

      (i)       employee, other than an **Executive** of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, volunteer, seasonal and temporary employee. An individual who is leased to the **Company**, contracted to perform work for the **Company**, or who is an independent contractor for the **Company**, shall also be an **Employee**, but only to the extent the **Company** provides indemnification to such leased or contracted individual;

      (ii)     **Employed Lawyer**.

(r)      "**Executive**" means:

© All rights reserved
* Subject to Protective Order *

(i)     any past, present or future duly elected or  appointed director, officer, board observer, trustee or governor, management committee  member, member of the management board, supervisory board, advisory board or any other executive committee of a corporation, limited liability company, or joint venture, natural person general partner of a partnership, natural person limited partner, or equivalent position  or any person found  to have acted in such position under applicable law; or

(ii)    any past, present or future person in  a duly elected or appointed position  in an entity which  is organized  and operated in  a **Foreign Jurisdiction** that  is equivalent to an executive position listed in Definition (r)(i);

(s)    " **Financial Insolvency** " means:

(i)     the appointment by  any government  official, agency,  commission, court  or other governmental authority  of a  receiver, conservator,  liquidator, trustee, rehabilitator, administrator  or  similar official  to take control of,  supervise, manage or liquidate an insolvent **Company**;

(ii)    a **Company** becoming  a debtor-in-possession  pursuant to the  United States bankruptcy law;

(iii)   the filing by or against a **Company** of a petition under the bankruptcy laws of the United States of America; or

(iv)    as to  (i),  (ii) (iii)  in  this  Definition (s),  any  equivalent status  in a  **Foreign Jurisdiction**.

(t)    " **Foreign Jurisdiction** " means any jurisdiction, other than the United States or any of its territories or possessions.

(u)    " **Foreign Policy** " means  the  **Insurer's** or  any  other  company  of American International Group, Inc.'s ("AIG") standard  executive  managerial liability  policy (including any directors and officers, partnership, managerial, employment practices liability fiduciary or pension trust  liability policy and all  mandatory endorsements to such policies, if any) approved  by AIG to be  sold within a **Foreign  Jurisdiction** that provides coverage substantially similar to the coverage afforded under this Policy. If more than one such  policy exists, then  " **Foreign Policy** " means the standard basic policy form typically offered for sale in that **Foreign Jurisdiction** for comparable risks by the Insurer  or any  other company  of AIG.  The term  " **Foreign Policy** " shall not include any  professional liability  coverage, also  known  as errors  and omissions coverage.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(v)  " **Indemnifiable Loss** " means **Loss** for which a **Company** has indemnified or is permitted or required to indemnify an **Individual Insured** pursuant to the fullest extent permitted by the certificate of incorporation, charter, by-laws, articles of association, limited liability company agreement, partnership agreement, operating agreement or other organizational documents of a **Company**.

(w)  " **Insurer**" means the insurance company indicated in the Declarations.

(x)  " **Insureds' Representative** " means the organization stated in Item 7 of the Declarations.

(y)  " **Litigated Matter**" means any civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:

(xi)  service of a complaint or similar pleading; or

(xii)  return of an indictment, information or similar document (in the case of a criminal proceeding).

(z)  " **Management Control**" means:

(i)  owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the manager or members of the management board of a limited liability company;

(ii)  having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a company, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the manager(s) or the management board of a limited liability company;

(iii)  possessing greater than 50% ownership interest in a corporation, joint venture or limited liability company;

(iv)  possessing greater than 50% of the voting power of a partnership;

(v)  having management and/or operational control of a company; or

(vi)  being the sole general partner of a limited partnership or the sole manager of a limited liability company.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(aa)  " **Named Entity** " means each **Named Entity** set forth in Item 1 of any **Program Participants Endorsement** , whether a corporation, association, limited liability company or any other type of business organization.

(bb)  " **Non-Indemnifiable Loss** " means **Loss** that is not **Indemnifiable Loss.**

(cc)  " **Outside Entity** " means:

  (i)  any not-for-profit organization; or

  (ii)  any for-profit organization, other than the **Company** .

(dd)  " **Outside Entity Executive** " means any:

  (i)  **Individual Insured** serving in the capacity as director, officer, board observer, trustee, advisor or governor of  an **Outside Entity** , but only if  such service is at the specific request, direction or consent of the **Company** ; or

  (ii)  any other person listed as an **Outside Entity Executive** in an endorsement  to this Policy.

  It is understood and agreed that, in the event of a disagreement between the **Company** and an individual as to whether such individual was acting "at the specific request, direction, or  consent of the **Company** ," this Policy shall abide  by the determination of  the **Company** on this issue and such determination shall  be made by written  notice to  the **Insurer** within ninety (90) days after the  **Claim** is first reported to  the **Insurer** pursuant to the  terms of the Policy.  In the event no determination is made within such period, this Policy shall apply as if the  **Company** determined that such **Individual  Insured** was not acting  at the **Company's** specific request, direction, or consent.

(ee)  " **Policy Period** " means the period of time from the inception date stated in Item 2 of the Declarations to the  earlier of  the expiration date stated in Item 2 of the Declarations or the effective date  of cancellation of this Policy  with respect to any particular **Named Entity** as set forth in Clause 7.

(ff)  " **Pollutants** " means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or  contaminant, including smoke, vapor,  dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and **Waste** . " **Waste** " includes, but is  not limited to, materials to be  recycled, reconditioned or reclaimed and nuclear materials.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(gg)   " **Prior Acts Date** " means the date set  forth in Item 5  of each **Program Participants Endorsement** with  respect  to  the  corresponding  **Named Entity** thereon  and  the **Insureds** thereof.

(hh)   " **Prior AIG Policy** "  means a  valid and  collectible policy  providing substantially  the same or similar coverage as is provided by this  policy, issued to a particular **Named Entity** by the  **Insurer** (or  any other  insurance company  affiliate thereof),  of which this policy is a continuous renewal.

(ii)   " **Program Participants Endorsement** "  means  each  endorsement  attached  to this Policy entitled " **Program Participants Endorsement** " outlining the  respective **Named Entity** insured hereunder and  certain items and  conditions specific to  the coverage afforded under this Policy to  such **Named Entity** and  any **Insured** thereof, including the applicable Limits  of Liability,  Retention Amounts, **Continuity Dates**, **Prior Acts Date** and Premium Amount.

(jj)   " **Related Claim** " means a **Claim** alleging, arising out of, based upon or attributable to any facts  or **Wrongful Acts** that are the same as  or related  to those that  were alleged in another **Claim** made against an **Insured.**

(kk)   "**Related Pre-Claim Inquiry**" means  **Pre-Claim Inquiry(ies)** which  are the same, related or continuous, or **Pre-Claim Inquiry(ies)** which arise from a common nucleus of facts.  **Claims** can allege **Related Pre-Claim Inquiry(ies)** regardless of whether such **Claims** involve the  same or  different claimants,  **Insureds** or  legal  causes of action.

(ll)   " **Related Wrongful Act(s)** " means **Wrongful  Act(s)** which are  the same,  related or continuous, or **Wrongful Act(s)** which arise from a common nucleus of facts.

(mm)   " **Subsidiary** " means:

(i)   any for-profit entity,  whose securities are  not publicly traded,  of which the particular **Named Entity** has or had **Management Control** (" **Controlled Entity** ") on or before  the  inception  date  of  the  **Policy Period**, either  directly  or indirectly through one or more other **Controlled Entities**;

(ii)   any for-profit entity,  whose securities are  not publicly traded,  of which the particular **Named Entity** acquires **Management Control** during the **Policy Period**, either  directly  or  indirectly  through  one  or  more  other  **Controlled Entities**; or

(iii)   any not-for-profit entity sponsored exclusively by a **Company**.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

Notwithstanding the foregoing, coverage as is afforded under this Policy with respect to a **Claim** made against any **Subsidiary** or any **Individual Insureds** thereof (in their capacity as such) shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time (the " **Acquisition Date**") that the particular **Named Entity** obtained **Management Control** of such **Subsidiary**. Upon the **Acquisition Date**, the **Insurer** agrees to provide coverage for **Wrongful Acts** taking place prior to the **Acquisition Date** at no additional premium, but solely as respects to coverage provided under the **EPL Coverage Section** and the **FLI Coverage Section**, if applicable. However, in no event shall this Policy provide coverage for any **Claim** arising from a **Wrongful Act** that occurred prior to the **Acquisition Date** if any **Individual Insured** of the particular **Named Entity** could reasonably expect that such **Wrongful Act** could give rise to a **Claim** against an **Insured** under the Policy. Furthermore, to the extent any such **Subsidiary** has any valid and collectible Employment Practices or Fiduciary Liability insurance (" **Other Insurance Policy(cies)** ") covering any overlapping time period as the prior acts afforded by this paragraph, such other insurance shall be primary and this policy shall remain excess any coverage provided under such **Other Insurance Policy(cies)**.

There shall be no coverage afforded under this Policy with respect to a **Claim** made against any **Subsidiary** or any **Individual Insureds** thereof (in their capacity as such) for **Wrongful Acts** committed or allegedly committed after the time that such respective **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

3.  **EXTENSIONS**

Subject otherwise to the terms hereof, this Policy shall cover **Loss** arising from any **Claim** made against:

(a)     the estates, heirs, or legal representatives of deceased **Individual Insureds** , and the legal representatives of **Individual Insureds** in the event of incompetency, insolvency or bankruptcy, who were **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed;

(b)     the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) or **Domestic Partner** of an **Individual Insured** for all **Claims** arising solely out of his or her status as the spouse or **Domestic Partner** of an **Individual Insured**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by the **Individual Insured** a nd the spouse or

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**Domestic Partner**, or property  transferred from the **Individual Insured** to  the spouse or **Domestic Partner**; *provided, however,* this extension shall  not afford coverage for any **Claim**  for any actual or  alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims**  arising out of any actual or  alleged **Wrongful Acts**  of an **Individual Insured**, subject to the Policy's terms, conditions and exclusions

(c)  any grantor trust, irrevocable trust, revocable trust, bypass  trust, Generation Skipping Trust, marital trust, or other such  trust(s), or any corporation, partnership limited  liability company  or other  such entities  used for  estate planning purposes  or any  other  estate planning  or wealth  management device(s), maintained by or for  the benefit of such  **Insured Person** or his/her spouse, children, or domestic partner, estate, heirs or assigns but only to the extent that any  of the foregoing is subject  to a **Claim**  by reason of  a **Wrongful Act** by an **Insured**.

## 4.  LIMITS OF LIABILITY  (FOR ALL LOSS  IN THE  AGGREGATE UNDER THIS  POLICY AND UNDER EACH INDIVIDUAL COVERAGE SECTION  - INCLUDING DEFENSE COSTS)

The **Designated Policy Aggregate Limit of Liability** stated in Item  2 of each **Program Participants Endorsement** is the maximum limit of the  **Insurer's** liability for  all **Loss** (other than **Non-Indemnifiable Loss** covered under the  **Side A Excess Limit of Liability**), including  **Defense Costs**, under  all **Coverage  Sections** combined  arising out of  all **Claims** first  made against  the **Insureds**  afforded coverage under  such **Program Participant Endorsement** (in their capacity as such) during the **Policy Period** or the  **Discovery Period**  (if applicable); *provided,  however,* the  **Designated Policy Aggregate Limit of Liability**  for the  **Discovery  Period** shall  be part of, and  not  in addition to, the **Designated Policy Aggregate Limit of Liability**  for the **Policy Period**.

If the **Designated Separate  Limits of Liability**  are  stated in Item 2  of each **Program Participants Endorsement**,  then  each such  **Designated  Separate Limit of  Liability** shall  be  the  maximum limit of  the **Insurer's** liability for all **Loss**  (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**), including **Defense Costs**, arising out  of all **Claims** first  made against the **Insureds**  afforded coverage under such  **Program Participant Endorsement** (in  their capacity  as such) during the **Policy  Period** or the  **Discovery Period** (if  applicable) with respect  to the applicable  **Coverage Section** as  stated on each  **Program Participants Endorsement**; *provided, however,*  the  **Designated Separate Limit of  Liability**  for the  **Discovery Period** shall  be part of,  and not in  addition to, the  **Designated Separate Limit of Liability** for the  **Policy Period**. Each **Designated Separate  Limit of  Liability** shall  be part of and not in  addition to the **Designated  Policy Aggregate Limit of  Liability** for all **Loss**  under this Policy  and shall in  no way  serve to increase  the  **Insurer's Designated Policy Aggregate Limit of Liability** as therein stated.

*Archive Copy*
* Subject to Protective Order *
All rights reserved

If the **Designated Shared Limits of Liability** are stated in Item 2 of each **Program Participants Endorsement**, then each such **Designated Shared Limit of Liability** shall be the maximum limit of the **Insurer's** liability for all **Loss** (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**) arising out of all **Claims** first made against the **Insureds** afforded coverage under such **Program Participant Endorsement** during the **Policy Period** or the **Discovery Period** (if applicable) with respect to all **Coverage Sections** for which such **Designated Shared Limit of Liability** is applicable, as indicated on each **Program Participants Endorsement**; *provided, however,* with respect to all **Coverage Sections** that have a **Designated Shared Limit of Liability**, the **Designated Shared Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Designated Shared Limit of Liability** for the **Policy Period**. Each **Designated Shared Limit of Liability** shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** for all **Loss** under this Policy and shall in no way serve to increase the **Designated Policy Aggregate Limit of Liability** as therein stated.

Notwithstanding the above, it is expressly understood and agreed that each **Named Entity** shall have its own **Designated Policy Aggregate Limit of Liability** which shall be in addition to, and not part of the **Designated Policy Aggregate Limit of Liability** for any of the other **Named Entity(ies)**.

Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 6(b) or 6(c) of these **General Terms and Conditions** is considered made during the **Policy Period** or **Discovery Period**, shall also be subject to the **Designated Policy Aggregate Limit of Liability** and subject to any applicable **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**.

**Defense Costs** are not payable by the **Insurer** in addition to the **Designated Policy Aggregate Limit of Liability** or any applicable **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**. **Defense Costs** are part of **Loss** and as such are subject to the **Designated Policy Aggregate Limit of Liability** for **Loss** and any applicable **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**. Amounts incurred for **Defense Costs** shall be applied against the Retention and will reduce and may exhaust the **Designated Separate Limit of Liability**, **Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

5.    **RETENTION CLAUSE**

The Retentions stated in Item 6 of the respective **Program Participants Endorsement** are separate Retentions pertaining only to the **Coverage Section** for which they are stated in the respective **Program Participants Endorsement**. The application of a Retention to **Loss** under one **Coverage Section** shall not reduce the Retention applicable under any other **Coverage Section**.

In the event a **Claim** triggers a Retention in multiple **Coverage Sections**, then the following shall apply:

(a)      with regard to **Loss** which is payable under any **Coverage Section** which is subject to a **Designated Separate Limit of Liability**, the Retention applicable to such **Loss** pursuant to the Retention Clause of such **Coverage Section** (or pursuant to any applicable endorsement) shall apply separately to such **Loss**, and the applicable Retention for such **Coverage Section** shall not be reduced by payments of **Loss** made towards the Retention required under any other **Coverage Section**; and

(b)      with regard to **Loss** which is payable under any **Coverage Sections** which are subject to a **Designated Shared Limit of Liability**, the highest applicable Retention shall be deemed the Retention applicable to **Loss** arising from such **Claim**.

Notwithstanding the foregoing, no Retention is applicable to the first $25,000 in **Defense Costs** incurred for **E-Discovery Consultant Services**.

6.    **NOTICE/CLAIM REPORTING PROVISIONS**

Notice hereunder shall be given by electronic mail, facsimile transmission or certified mail to the addressee and at the address identified in Item 8(b) of the Declarations; Attention: Claim Department. Notice shall include and reference this policy number as indicated in the Declarations, as well as the **Coverage Section** under which the **Claim** is being noticed. If sent certified mailed or by electronic mail, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

The following shall apply:

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(a)    The **Insureds** shall give written notice to the **Insurer** of any **Claim** made against an **Insured** or a **Crisis Management Event** as soon as practicable after: (i) the **Company's** General Counsel (or equivalent position) first becomes aware in writing that total **Loss** (including **Defense Costs**) of a **Claim** is reasonably estimated to exceed FIFTY PERCENT (50%) of the applicable Retention (unless he or she is prohibited by court order to disclose the details or existence of such **Claim**); or (ii) the **Crisis Management Event** commences.

Failure to give notice of any **Claim** within the time prescribed herein shall not invalidate such **Claim** if it is demonstrated that it was not reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter. Further, if the **Insured** fails to provide notice of a **Claim** to the **Insurer** as specified above, the **Insurer** shall not be entitled to deny coverage for such **Claim** based solely upon late notice unless the Insurer can demonstrate that its interests were materially prejudiced by reason of such late notice.

In all events a **Claim** must be reported no later than either:

(i)    anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

(ii)    within ninety (90) days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

(b)    If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 6(a) above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged in the **Claim** of which such notice has been given, shall be considered made at the time such notice was given.

(c)    If during the **Policy Period** or during the **Discovery Period** (if applicable) the **Insureds** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, then

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

Notwithstanding the foregoing, the provisions of this Clause 6. shall not apply to any **Pre-Claim Inquiry** that the **Insured** elects not to treat as a **Claim** as provided in the definition of **Claim**.

Additionally, to the extent that an **Insured** gives notice to the **Insurer** in accordance with this CLAUSE 6. NOTICE/CLAIM REPORTING PROVISIONS (c) and a **Claim** subsequently arises from such specific circumstances, **Defense Costs** shall also mean all legal fees incurred in the investigation and/or defense of any such specific circumstances that are incurred:

(i)      on or after the date of such notice is received by the Insurer; and

(ii)     prior to the time such specific circumstances rise to the level of a **Claim**.

(d)      Any matter which could involve the payment of **Voluntary Compliance Loss** or of **Covered Penalties** under the **FLI Coverage Section** shall be reported to the **Insurer** in the same manner as a **Claim** under Clause 6(a)(i) and 6(a)(ii) above.

**Note:** With respect to this CLAUSE 6. NOTICE/CLAIM REPORTING PROVISIONS (a), the coverage provided by this Policy shall apply to the broadest extent permitted by law and the availability of such coverage, and the adequacy and timeliness of notice pursuant to CLAUSE 6. NOTICE/CLAIM REPORTING PROVISIONS (a) shall be determined by the law of the jurisdiction most favorable to such coverage.

The following shall apply solely with respect to the **EPL Coverage Section**:

(e)      **Claims Savings Clause for Employment Practices Claims**

*Archive Copy*
* Subject to Protective Order *
® All rights reserved ©

(i)      Notwithstanding the foregoing, with respect to any **Claim** which (i) first becomes a **Litigated Matter** during the **Policy Period** or **Discovery Period** (if applicable); and (ii) is a **Related Claim** with respect to an **Administrative Claim** which was first made against an **Insured** prior to the **Policy Period**, the **Insurer** shall not deny coverage for such **Claim** based upon late notice of such **Claim** or based upon such **Claim** first being made prior to the **Policy Period**, provided that:

      (1)      the **Claim** was first made against the **Insured** at a time during which the particular **Named Entity** was insured under a **Prior AIG Policy**;

      (2)      upon the **Claim** first becoming a **Litigated Matter**, the **Claim** was reported in accordance with Clause 6(a) above; and

      (3)      no **Insured** has made a monetary settlement offer to a claimant or responded to a monetary demand from or on behalf of a claimant with respect to such **Claim**.

(ii)     Coverage under this policy for any **Claim** afforded coverage pursuant to this Clause 6(e) shall be the lesser of:

      (1)      the coverage which would have been provided under this policy for such **Claim** had the **Claim** been made during the **Policy Period** and reported to the **Insurer** as required by this policy; or

      (2)      the coverage, if any, which would have been provided under the **Prior AIG Policy** for such **Claim** if the **Insured** had properly provided notice of such **Claim** in accordance with the provisions of the **Prior AIG Policy**, taking into account all provisions of each policy, including, without limitation, applicable limits of liability (as reduced by payments made under such policy), retentions, exclusions and other restrictions contained in each policy;

      Notwithstanding the foregoing, nothing in this Clause 6(e) shall be construed to increase the **Limit of Liability** of this policy or to provide coverage under the **Prior AIG Policy**, nor shall this Clause 6(e) ever result in providing coverage under this policy for **Loss** for which coverage is in fact provided (or would be provided but for the exhaustion of the limit of liability) under the **Prior AIG Policy**.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

    (iii)    This Clause 6(e) shall not apply to any **Claim** which:

        (1)    prior to the **Policy Period** was a **Litigated Matter**; or

        (2)    is a **Related Claim** with respect to a **Claim** which, prior to the **Policy Period** was a **Litigated Matter**.

The following shall apply solely with respect to the **FLI Coverage Section**:

(f)    Reporting a Fiduciary **Claim** or **Pension Crisis**

The **Insured(s)** shall, as a condition precedent to the obligations of the Insurer under this policy, notify the Insurer in writing of a **Claim** made against an **Insured** or of a **Pension Crisis** as soon as practicable after: (1) the **Named Entity's** General Counsel first receives written notice of the **Claim**; or (2) the **Pension Crisis** commences. In all such events, notification must be provided no later than:

    (i)    ninety (90) days after the end of the **Policy Period** or **Discovery Period** (if applicable) if this policy is not renewed with the **Insurer**; or

    (ii)    two hundred and seventy (270) days after the end of the **Policy Period** or **Discovery Period** (if applicable) if the expiring policy is renewed with the **Insurer**.

As exceptions to the foregoing notice provision the **Insureds** shall have no obligation to give notice of:

    (1)    a fact-finding investigation before the earliest of the time that: (i) it becomes a **Litigated Matter**; (ii) a **Wrongful Act** is alleged in writing; or (iii) any **Insured** has incurred defense costs for which coverage is being sought; or

    (2)    an **Internal Appeal** before the earliest of the time that: (i) it becomes a **Litigated Matter**; (ii) any investment loss within a **Plan** is alleged; or (iii) any **Insured** has incurred **Defense Costs** for which coverage is being sought.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

**7.    CANCELLATION CLAUSE**

This Policy or  any individual **Coverage Section**  may be  canceled by  the **Insureds' Representative** at  any time  by e-mailing  or mailing  by  certified mail  prior written notice to the **Insurer** stating which **Coverage Sections** are to be canceled or that the entire Policy is  to  be  canceled  and  when thereafter  such  cancellation shall  be effective, or by  surrender  thereof  to the **Insurer** or its  authorized  agent. The e-mailing or mailing of  such notice shall be  sufficient notice and the  effective date of cancellation shall be  the date the **Insurer**  received such notice  or any later  date specified in the notice, and  such effective date shall  become the end of  the Policy or applicable **Coverage Sections**.

This Policy may only be canceled by  or on the behalf of the **Insurer**  with respect to any particular **Named  Entity** only in the  event of  non-payment of  premium of  the **Named Entity's**  respective annual  premium amount  as set  forth in  Item 7 of  the **Program Participants Endorsement**. In the event of non-payment of  premium by any particular **Named Entity**,  the **Insurer**  may cancel this  Policy solely  by delivering to such respective **Named Entity** and its  authorized agent  or by mailing to  the particular **Named  Entity** and  its authorized  agent, by  registered, certified  or other first class mail, at  the **Insureds' Representative** address  as stated in  Item 7 of  the Declarations and the  agent of  record's New  York address,  Attention: Willis  M&A Group, written notice stating  when, not less  than fifteen (15)  days thereafter, the cancellation shall  be effective; *provided, however,* that  if the  unpaid premium is paid in full before  12:01 am  on the  16th day  following receipt by  the particular **Named Entity** and  its authorized  agent of the  notice of  cancellation, then,  in that event, the  **Insurer** may  not cancel this  Policy. The mailing of such notice as aforesaid shall be  sufficient proof  of notice. The  **Policy Period** for the  particular **Named Entity** terminates  at the  date and  hour specified  in such notice, or at  the date and time of surrender. The **Insurer** shall  have the right to the premium amount for the portion of the **Policy Period** during which the Policy was in effect. This Policy shall remain in  full  force and effect  for all  remaining **Named Entities**, including **Insureds** thereof,  that  comply  with this Clause  7, subject  to all other  terms, conditions, and exclusions of this Policy.

If the period of  limitation relating to the  giving of notice  as set forth above  is also set forth in  any applicable law  controlling the  construction thereof, the  period set forth above  shall be  deemed  to be  amended so  as to be  equal to  the  minimum period of limitation set forth in the controlling law.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved ©
AIGS.000261

It is further understood and agreed  that the premium amount set  forth in Item 7 of the applicable  **Program Participants Endorsement** for  the respective  **Named Entity** shall be  fully earned  as  of  the  inception  date of  this Policy; *provided,  however,* should  a  particular **Named  Entity** make  a  public offering  of  equity  securities  and incepts  a  new management  liability policy  or policies  with similar   coverage afforded herein  with  the  **Insurer**  or  any  member company  of  AIG, Inc.  ("AIG"),  then  the particular **Named Entity** will be entitled to a pro-rata return  payment of its unearned premium.

8.   **DISCOVERY CLAUSE**

If  the  **Insureds' Representative**  shall  cancel, either  in  total  or  on  behalf  of  a particular **Named Entity** or the **Insureds' Representative** or the **Insurer** shall refuse to renew this Policy,  either in total  or on  behalf of  a  particular **Named Entity,**  or the **Insureds' Representative** or the **Insurer** shall refuse to renew any  **Coverage Section**, either in total or on  behalf of a particular **Named  Entity**, then, solely with regard  to the Policy or **Coverage  Section** which was canceled  or non-renewed, the **Insureds' Representative** or the  respective **Named Entity**  shall have the  right, upon payment of the applicable " **Additional Premium Amount**" described below,  to a period of  up to six  (6)  years  or of  unlimited  duration  following  the  effective  date  of  such cancellation or nonrenewal (herein  referred to as the   " **Discovery Period**"), in which to give the  **Insurer** written  notice of  **Claims**  first made  against any **Insured**  during said **Discovery Period** for any  **Wrongful Act** occurring prior to  the end of the  **Policy Period** and otherwise  covered by the  canceled or non-renewed  Policy or  **Coverage Section**, as applicable. The  rights contained  in this Clause 8  shall  terminate, however,  unless  written notice  of such  election  together with  the  **Additional Premium Amount** due  is  received  by  the  **Insurer** within thirty  (30)  days  of  the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for  the elected **Discovery Period**  shall be the " **Full Annual Premium**" (as defined below) multiplied by the applicable percentage amount indicated  in  Item 6  of  the  Declarations  for  the  length  of  time  elected  for  the **Discovery Period**.

As used herein, " **Full Annual Premium**" means:

(a)     with regard to a canceled or non-renewed Policy, the premium level in  effect immediately prior to the end  of the Policy Period for  each respective **Named Entity** based off  the premium  amount set  forth in Item  7 of  the applicable **Program Participants Endorsement** for the respective **Named Entity**; or

*Archive Copy*

\* Subject to Protective Order \*
All rights reserved

**AIGS.000262**

(b)  with regard to a canceled or non-renewed **Coverage Section**, the total annual premium charged for the respective **Named Entity** for such **Coverage Section**.

In the event of a **Transaction**, as defined in Clause 9 of these **General Terms and Conditions**, as of the effective time of the **Transaction**:

(a)  This Policy shall continue in full force and effect as to **Wrongful Acts** occurring on or prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this Policy for any **Wrongful Act** occurring after the effective time of the **Transaction**.

(b)  The particular **Named Entity** shall have the right to a period of up to six (6) years following the effective time of the **Transaction** (hereinafter " **Run-Off Period**") in which to give written notice to the **Insurer** of **Claims** first made against the **Insureds** during said **Run-Off Period** for any **Wrongful Act** occurring on or prior to the effective time of the **Transaction** and otherwise covered by this Policy, provided that in all events the coverage as is afforded by the **Run-Off Period** shall be conditioned upon the particular **Named Entity** paying when due any additional premium owed to the **Insurer**. If the particular **Named Entity** shall not exercise this right, then the **Insureds' Representative**, or any subsidiary thereof that is not an **Insured**, shall have the right to exercise such right with respect to such particular **Named Entity** upon payment of the requisite additional premium on the same terms and subject to the same limitations and conditions as would have applied to the particular **Named Entity** if it had exercised such right. In the event the **Insureds' Representative** or any such subsidiary exercise such right, then the resulting coverage afforded by the Policy shall be no less or greater than would have resulted had the particular **Named Entity** exercised such right, and in no way shall the **Insureds' Representative** or any other person or entity that is not an Insured under the Policy be afforded coverage as a result of the exercise of such right.

(c)  The additional premium for the election of the **Run-Off Period** shall be no more than 150% of the **Full Annual Premium** less any **Remaining Pro-Rata Premium** of this Policy (as used herein, " **Remaining Pro-Rata Premium** " shall be determined by multiplying the **Daily Premium** by the **Remaining Policy Period**. The **Daily Premium** means the total **Policy Period** premium for the respective **Named Entity** based off the premium amount set forth in Item 7

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

of the applicable **Program Participants Endorsement** for the respective **Named Entity** divided by total number of days in the **Policy Period**. The **Remaining Policy Period** means the number of days between the effective time of the **Transaction** and the expiration date of the **Policy Period**. The **Insurer** hereby agrees that if the amount of the **Remaining Pro-Rata Premium** exceeds the **Run-Off Premium** then the **Insurer** shall return to the particular **Named Entity** that amount of the **Remaining Pro-Rata Premium** which exceeds the **Run-Off Premium**.

The **Run-Off Period** shall be subject to all the terms, conditions and limitations of this Policy. The **Run-Off Period** shall not provide coverage for any **Wrongful Act(s)** occurring after the effective time of the **Transaction**.

The **Discovery Period** or **Run-Off Period** is not cancelable, except that the **Insurer** may cancel the **Discovery Period** or **Run-Off Period** for non-payment of premium. This Clause 8 and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The **Designated Limit of Liability** for the **Run-Off Period** shall be part of and not in addition to the remaining **Designated Limit of Liability** for each respective **Named Entity** in the **Program Participants Endorsement** as of the **Transaction**. In no way shall the language of this endorsement be construed to reinstate, renew or increase the **Designated Limit of Liability** or the **Run-Off Period**.

9.    **CHANGE IN CONTROL OF NAMED ENTITY**

If during the **Policy Period**:

(a)    any particular **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(b)    any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of any particular **Named Entity**;

(either of the above events herein referred to as the " **Transaction**"),

then, with respect to such **Named Entity** which is subject to a **Transaction** (hereinafter referred to as " **Transaction Named Entity**"), this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this Policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved

This Policy and any purchased **Coverage Section** may not be canceled after the effective time of the **Transaction**. The particular **Named Entity** shall also have the right to an offer by the **Insurer** of a **Run-Off Period** described in Clause 8 of these **General Terms and Conditions**.

## 10. SUBROGATION

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to each **Insured's** rights of recovery thereof, and each **Insured** shall execute all papers required and shall do everything that may be reasonably necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to bring suit in the name of the **Insured**. In no event, however, shall the **Insurer** exercise or pursue, directly or indirectly, any right(s) of recovery, right(s) of subrogation or other rights against any **Insured** under this Policy or the **Insureds' Representative**, unless such **Insured** or **Insureds' Representative** has been convicted of a criminal act, or been determined by a final, non-appealable adjudication in the underlying proceeding to have committed a fraudulent act or willful violation of any statute, rule or law, or determined by a final non-appealable adjudication to have obtained any profit or advantage to which such **Insured** was not legally entitled. For purposes of this Clause, in order for a criminal act to permit the **Insurer** to exercise or pursue any rights of subrogation against any **Insured** under this Policy, the act must be a criminal violation in the United States of America.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances; *provided, however,* the **Insurer's** subrogation rights shall not include the assertion of indemnification or contribution rights against the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**. Additionally, upon the **Insurer** making any payment of **Loss** within the Retention, the **Insurer** shall have a direct contractual right under this Policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States) such **Loss** which was paid by the **Insurer** within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Clause 10 and any other rights the **Insurer** may have under applicable law.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved ©

11.   **OTHER INSURANCE**

With respect to all **Coverage Sections**, other than the **EPL Coverage Section** and except in the case of (a) personal liability insurance maintained by an **Individual Insured** or (b) insurance available to an **Individual Insured** through the **Insureds' Representative** or any investment fund established by the **Insureds' Representative**, such insurance as is provided by this Policy shall apply only as excess over any other valid and collectible insurance which actually pays **Loss** otherwise covered by this Policy, unless such other valid and collectible insurance is expressly written to be excess over the **Designated Policy Aggregate Limit of Liability** or any applicable **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** provided by this Policy. Except as provided herein, this Policy specifically shall be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend, and does actually defend a **Claim** for which this Policy may be obligated to pay **Loss**.

Notwithstanding the foregoing, such insurance as is provided by this policy shall apply as primary insurance with respect to:

(a)   any private equity or venture capital liability, general partner liability, or other similar management or professional liability insurance maintained by any direct or indirect shareholder of the **Named Entity** including any liability policy maintained by the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**;

(b)   any indemnification which may be owed to an **Individual Insured** by a direct or indirect shareholder of the **Named Entity** or the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**; or

(c)   any personal liability insurance that may be available to an **Individual Insured**.

Such insurance as is provided by the **EPL Coverage Section** shall be primary unless expressly written to be excess over other applicable insurance.

With respect to all **Coverage Sections**, in the event of a **Claim** against an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** or independent contractor **Employee** as described in the definition of " **Employee**" in the applicable **Coverage Section**, coverage as is afforded by this Policy shall be specifically excess of any:

*Archive Copy*
® All rights reserved
* Subject to Protective Order *
AIGS.000266

(a)    indemnification provided by such **Outside Entity** or leasing company; and

(b)    other valid and  collectible insurance  provided to  such **Outside  Entity** or  its **Executives**, leasing company or independent contractor;

provided, however, that any otherwise covered **Loss** of  an **Outside Entity Executive** which is paid  by an  **Outside Entity**  or by  valid and  collectible insurance  coverage afforded  to such  **Outside Entity Executive** shall  be applied  to  and erode any retention under this policy which is applicable to such **Outside Entity Executive**.

## 12.    NOTICE AND AUTHORITY

Except for the giving of a notice of **Claim**, which shall be governed by the provisions of Clause 6 of  these **General Terms and  Conditions**, all notices  required under this Policy to  be given by  the  **Insured** to  the  **Insurer** shall  be  given by e-mail  or  by certified mail to the **Insurer** at the address stated in Item 8(a) of the  Declarations. It is agreed that the **Insureds' Representative** shall act  on behalf of all **Named Entities** and all **Insureds**  with respect  to the  giving  and receiving  of notice  of  cancellation and nonrenewal, the  payment  of premiums  and  the  receiving of  any return premiums that may  become due  under this  Policy, the  receipt and acceptance  of any endorsements issued to form a part of this Policy, the exercising  or declining of the right  to  tender the  defense  of a  **Claim**  to the  **Insurer**  and the  exercising  or declining to exercise any right to a **Discovery Period**.

## 13.    ASSIGNMENT

This Policy  and any  and all  rights hereunder  are not  assignable without  the prior written consent  of the  **Insurer**, which consent  shall  be in  the sole  and  absolute discretion of the **Insurer**.

## 14.    DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed  that all disputes or differences  which may arise under or in connection  with this Policy, whether  arising before or after  termination of this  Policy, including  any  determination of  the  amount of  **Loss**, must first  be submitted to the non-binding mediation process as set forth in this Clause.

* Subject to Protective Order *    All rights reserved

The non-binding mediation will be administered by any mediation facility to which the **Insurer** and the particular **Named Entity** mutually agree, in which all implicated **Insureds** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the American Arbitration Association's (" **AAA**") then-prevailing Commercial Mediation Rules. The parties shall mutually agree on the selection of a mediator. The mediator shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator shall also give due consideration to the general principles of the law of the state where the particular **Named Entity** is incorporated in the construction or interpretation of the provisions of this Policy. In the event that such non-binding mediation does not result in a settlement of the subject dispute or difference:

(a)     either party shall have the right to commence a judicial proceeding; or

(b)     either party shall have the right, with all other parties consent, to commence an arbitration proceeding with the **AAA** that will be submitted to an arbitration panel of three (3) arbitrators as follows:

(i)     the **Insured** shall select one (1) arbitrator;

(ii)     the **Insurer** shall select one (1) arbitrator; and

(iii)     said arbitrators shall mutually agree upon the selection of the third arbitrator. The arbitration shall be conducted in accordance with the **AAA's** then prevailing Commercial Arbitration Rules.

Notwithstanding the foregoing, no such judicial or arbitration proceeding shall be commenced until at least thirty (30) days after the date the non-binding mediation shall be deemed concluded or terminated. Each party shall share equally the expenses of the non-binding mediation. All applicable statutes of limitation shall be tolled during the pendency of the mediation and during such thirty (30) day period following the conclusion and termination of the mediation.

The non-binding mediation and arbitration proceeding may be commenced in either New York or in the state indicated in Item 1 of the **Program Participants Endorsement** as the mailing address for the respective **Named Entity**. The respective **Named Entity** shall act on behalf of each and every **Insured** in connection with any non-binding mediation under this Clause, the selection of arbitration or judicial proceeding or the selection of mediators or arbitrators.

*Archive Copy*
*© All rights reserved*
* Subject to Protective Order *

**AIGS.000268**

## 15.   ACTION AGAINST INSURER

Except as provided in Clause 14 above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy by the **Insured**, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Insurer** as a party to any action against the **Insured** or the **Company** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by the **Insured** or the **Company** or their legal representatives. Bankruptcy or insolvency of the **Company** or any **Insured** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

## 16.   WORLDWIDE TERRITORY

Where legally permissible, this Policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

## 17.   SERVICE OF SUIT

Subject to Section 14 of this Policy, it is agreed that in the event of failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this Clause 17 constitutes, or should be understood to constitute, a waiver of the **Insurer's** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, AIG Specialty Insurance Company, 175 Water Street New York, NY 10038, or his or her representative, and that in any suit instituted against the **Insurer** upon this contract, the **Insurer** will abide by the final decision of such court or of any appellate court in the event of any appeal.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## 18.   REPRESENTATIONS AND SEVERABILITY

In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this Policy as being accurate and complete in all material respects. All such statements and representations are the basis of this Policy and are to be considered as incorporated into this Policy.

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the Policy and there is a **Claim** based upon or arising out of such particulars or statements, then no coverage shall be afforded under this Policy for such **Claim** with respect to any **Individual Insured** who had actual knowledge as of the inception date of the **Policy Period** that the material facts were not accurately and completely disclosed in the **Application** and only to the extent is was made with the intent to deceive the Insurer. Such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

The **Insurer** shall not be entitled under any circumstances to rescind coverage under this Policy with respect to any **Insured**, but such coverage will be subject to all other terms, conditions and exclusions of this Policy.

It is understood and agreed that this Clause 18. REPRESENTATIONS AND SEVERABILITY supersedes any inconsistent language contained in the **Application**.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**19.  ACQUISITION OR CREATION OF ANOTHER COMPANY BY THE INSUREDS' REPRESENTATIVE**

If during the **Policy Period**, the **Insureds' Representative** obtains **Management Control** of any for-profit organization whose securities are not publicly traded and whose assets total less than $125,000,000 as of the acquisition date then, subject to the terms and conditions of this Policy, such company and the **Insureds** thereof (hereinafter "**New Portfolio Company Insureds**") shall be covered under this Policy as a **Named Entity** with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Insurer** agrees to provide coverage for **Wrongful Acts** taking place prior to such acquisition or creation. At the request of a **New Portfolio Company Insured**, and provided that the **Insureds** have complied with the notice requirements of the last paragraph of this Clause, the **Insurer** agrees to provide coverage under the **EPL Coverage Section** and the **FLI Coverage Section** for **Wrongful Acts** taking place prior to such acquisition at no additional premium.

It is understood and agreed that such coverage provided to these **New Portfolio Company Insureds** will be subject to a $5,000,000 **Designated Shared Limit of Liability** under the **D&O Coverage Section**, a $5,000,000 **Designated Shared Limit of Liability** under the **EPL Coverage Section** and a $5,000,000 **Designated Separate Limit of Liability** under the **FLI Coverage Section**. The applicable Retentions for each **New Portfolio Company Insured** will be $25,000 for the **D&O Coverage Section**, $25,000 for the **EPL Coverage Section** and $0 for the **FLI Coverage Section**. It is further understood that coverage for these **New Portfolio Company Insureds** includes a $1,000,000 **Contractual Defense Costs Sublimit of Liability**.

It is further understood that, notwithstanding the foregoing, the following shall apply to any coverage provided under this Policy to any **New Portfolio Company Insureds**:

(a)  Coverage as is provided under the **EPL** and **FLI Coverage Sections** to any **New Portfolio Company Insured** for **Wrongful Acts** taking place prior to its acquisition shall be subject to a known **Wrongful Acts** exclusion to be added to the policy via endorsement. This exclusion shall be put in place unless such **New Portfolio Company Insured** had employment practices liability insurance in the amount of $5,000,000.00 or fiduciary liability insurance in the amount of $5,000,000.00 (as applicable), or greater for each coverage at the time of its acquisition. Should such **New Portfolio Company Insured** maintain employment practices liability insurance or fiduciary liability insurance prior to the acquisition but in an amount less than those noted above in this paragraph, such known **Wrongful Acts** exclusion shall only be applicable to the limit not previously maintained; and

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

(b)   Coverage as is provided under the policy to any **New Portfolio Company Insured** that is in the healthcare industry or higher education industry shall be subject to the **Insurer's** standard industry endorsements for such industries, which shall be added to the policy via endorsement.

The **Insurer** shall extend coverage for any **New Portfolio Company Insureds** described above, and any **Individual Insured** thereof, so long as the **Insureds' Representative** shall have provided the **Insurer** with full particulars of the **New Portfolio Company Insured** no later than: (i) forty five (45) days after the acquisition date; or (ii) the end of the **Policy Period**, whichever is earlier.

## 20.   FIRST DOLLAR E-DISCOVERY CONSULTANT SERVICES

For any **Claim**, no Retention shall apply to the first $25,000 in **Defense Costs** incurred for **E-Discovery Consultant Services**.

The list of pre-approved e-discovery consulting firms ("**E-Consultant Firms**") is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "e-Consultant Panel Members" link. The list provides the **Insureds** with a choice of firms from which a selection of an **E-Consultant Firm** shall be made. Any **E-Consultant Firm** may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the Insurer.

## 21.   HEADINGS

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**Directors, Officers and Private Company Liability Insurance**
**("D&O Coverage Section")**

**Notice: Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this D&O Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this D&O Coverage Section. This is a Claims Made Coverage Section with Defense Costs included in the Designated Separate Limit of Liability or the Designated Shared Limit of Liability.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

1.    **INSURING AGREEMENTS**

With respect to Coverage A, B, D, E and F and the Defense Provisions, solely with respect to **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this Policy, and subject to the other terms, conditions and limitations of this Policy, this **D&O Coverage Section** affords the following coverage:

**COVERAGE A: INDIVIDUAL INSURED INSURANCE**

This **D&O Coverage Section** shall pay the **Loss** of an **Individual Insured** arising from a **Claim** made against such **Individual Insured** for any **Wrongful Act** of such **Individual Insured**, except when and to the extent that the **Company** has indemnified such **Individual Insured**. Payment of **Defense** shall be made in accordance with and subject to Clause 7 of this **D&O Coverage Section**..

**COVERAGE B: PRIVATE COMPANY INSURANCE**

This **D&O Coverage Section** shall pay the **Loss** of the **Company** arising from a:

(i)       **Claim** made against the **Company**; or

(ii)      **Claim** made against an **Individual Insured**;

for any **Wrongful Act**, but, in the case of Coverage B(ii) above, only when and to the extent that the **Company** has indemnified the **Individual Insured** for such **Loss**. The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

MNSCPT

*Archive Copy*

1

® All rights reserved
* Subject to Protective Order *

AIGS.000273

**COVERAGE C: CRISISFUND® INSURANCE**

This **D&O Coverage Section** shall pay the **Crisis Management Loss** of a **Company** solely with respect to a **Crisis Management Event** occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this Policy, up to the amount of the **Crisis Management Fund** ; provided that payment of any **Crisis Management Loss** under this **D&O Coverage Section** shall not waive any of the **Insurer's** rights under this **D&O Coverage Section** or at law. This Coverage C shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the **Claim** being first made.

**COVERAGE D: COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND**

This **D&O Coverage Section** shall pay the **Costs of Investigation** of the **Company** arising from a **Company Shareholder Derivative Investigation** in response to a **Derivative Demand** up to the amount set forth in Item 5 of the Declarations as amended by Item 3(b) of each **Program Participants Endorsement** . Payment of **Costs of Investigation** to a **Company** shall be made in accordance with and subject to Clause 7 of this **D&O Coverage Section** .

**COVERAGE E: CONTRACT CLAIM DEFENSE COSTS COVERAGE**

This **D&O Coverage Section** shall pay the **Defense Costs** of a **Company** arising from a **Contract Claim** up to the amount set forth in Item 3(e) of each **Program Participants Endorsement** . Payment of **Defense Costs** to a **Company** shall be made in accordance with and subject to Clause 7 of this **D&O Coverage Section** .

**COVERAGE F: PRE-CLAIM INQUIRY COSTS FOR PRE-CLAIM INQUIRY**

(a)    This policy shall pay the **Loss** of any **Individual Insured** arising from a **Pre-Claim Inquiry** first received by such **Individual Insured** during the **Policy Period** or any applicable **Discovery Period**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs** ;   except when and to the extent that an **Company** has indemnified such **Individual Insured** ; and

(b)    This policy shall pay the **Loss** of a **Company** arising from a **Pre-Claim Inquiry** first received by such **Individual Insured** during the **Policy Period** or any applicable **Discovery Period**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs** , but only to the extent that such **Company** has indemnified such **Individual Insured** .

*Archive Copy*
®  All rights reserved
* Subject to Protective Order *

**AIGS.000274**

**DEFENSE PROVISIONS**

The **Insurer** does not assume any duty to defend. The **Insurer** shall advance **Defense Costs** of such **Claim**, excess of the applicable Retention amount, on a current basis and, in any event, no later than sixty (60) days after the receipt of invoices of such **Defense Costs**. Selection of counsel to defend a **Securities Claim** shall be made in accordance with Clause 9 of this **D&O Coverage Section**.

With respect to Coverage D above, it shall be the duty of the **Company** and not the duty of the **Insurer** to conduct, investigate and evaluate any **Company Shareholder Derivative Investigation** against its own **Executives**; *provided, however,* that the **Insurer** shall be entitled to effectively associate in the investigation and evaluation of, and the negotiation of any settlement of, any such **Company Shareholder Derivative Investigation**.

**2.  DEFINITIONS**

(a)  " **Affiliate**" means:

    (i)  any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, a **Company**; or

    (ii)  any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

(b)  " **Asset Protection Costs**" means reasonable fees, costs and expenses consented to by the **Insurer** incurred by an **Executive** of a **Company** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

(c)  " **Company Shareholder Derivative Investigation**" means the investigation by the **Company** or, on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Company** should bring the civil proceeding demanded in a **Derivative Demand**.

(d)  " **Contract Claim**" means any **Claim** for any actual or alleged contractual liability of the **Company** under any express written contract or agreement.

(e)  " **Controlling Person**" means any **Individual Insured** who, directly or indirectly:

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(i)        holds a ten percent (10%) or greater equity or debt ownership interest in a **Company**; or

(ii)       controls a **Company** within the meaning of Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Act of 1934, as amended, or under common law or under any other applicable statute, rule, regulation or law.

(f)       " **Costs of Investigation**" means all reasonable costs, charges, fees and expenses consented to by the **Insurer** (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors (or any equivalent management body), solely in connection with a **Company Shareholder Derivative Investigation**.

(g)      " **Crisis Management Event**" means **Crisis Management Event**, as that term is defined in Appendix D attached to this Policy.

(h)      " **Crisis Management Fund**" means the dollar amount set forth in Item 5 of the Declarations as amended by Item 3(a) of each **Program Participants**.

(i)      " **Crisis Management Loss**" means **Crisis Management Loss**, as that term is defined in Appendix D attached to this Policy.

(j)      " **Crisis Management Services**" means **Crisis Management Services**, as that term is defined in Appendix D attached to this Policy.

(k)      " **Derivative Demand**" means a written demand by shareholders or creditors upon the board of directors (or equivalent management body) of a **Company** requesting that it file, on behalf of the **Company**, a civil proceeding in a court of law against any **Executive** of the **Company** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

(l)      " **Derivative Investigation**" means after receipt by any **Insured** of a **Claim** that is either a derivative lawsuit or a **Derivative Demand**, any investigation conducted by the **Company**, or on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the Organization should respond.

(m)     " **Employed Lawyer**" means any employee of the **Company** if and to the extent such employee is, or during the course of such person's employment was:

*Archive Copy*
® All rights reserved
\* Subject to Protective Order \*

(i)      admitted to practice law; and

(ii)     employed, or was employed, at the time of  the alleged **Wrongful Act**, within the **Company's** office of  general counsel or  its functional equivalent  for the purpose of providing legal services to or for the benefit of the **Company**.

(n)   " **Enforcement Body** " means:

(i)      any federal, state, local or foreign law enforcement authority or other governmental investigation authority (including, but  not limited to, the  U.S. Department of Justice,  the U.S. Securities  and Exchange Commission  and any attorney general), or

(ii)     the enforcement  unit of  any securities  or commodities  exchange or  other self-regulatory organization.

(o)   " **Extradition**" means any formal process by which  an **Individual Insured**  located in any country is  surrendered to  any other  country for  trial or otherwise  to answer any criminal accusation.

(p)   " **Extradition Costs**" means reasonable fees,  costs and  expenses incurred through legal counsel and consented  to by the  **Insurer** resulting from an  **Individual Insured** lawfully (a)  opposing, challenging,  resisting or  defending against  any request  for any effort to obtain  the **Extradition** of that  **Individual Insured**, or (b)  appealing any order or other grant of **Extradition** of that **Individual Insured**.

(q)   " **Individual Insured** " means any:

(i)      **Executive** of a **Company**;

(ii)     **Employee** of a **Company**;

(iii)    **Controlling Person**; or

(iv)    **Outside Entity Executive**.

(r)   " **Insured**" means:

(i)      an **Individual Insured**; or

(ii)     a **Company**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

**AIGS.000277**

(s)     " **Liberty Protection Costs** " means:

(i)     reasonable fees, costs and expenses consented to by the **Insurer** and incurred by an **Individual Insured** in order for an **Individual Insured** to lawfully seek the release of the **Individual Insured** from any pre- **Claim** arrest or confinement to a (a) specified residence or (b) secure custodial premises operated by or on behalf of any law enforcement authority; or

(ii)    reasonable premiums (but not collateral) consented to by the **Insurer** and incurred by an **Individual Insured** for a bond or other financial instrument to guarantee the contingent obligation of the **Individual Insured** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (a) arise out of an actual or alleged **Wrongful Act**, or (b) are incurred solely by reason of such **Individual Insured's** status as an **Executive** or **Employee** of a **Company**.

(t)     " **Local Policy** " means any **Foreign Policy** issued to a **Company** in a **Foreign Jurisdiction** in order to comply with laws of such **Foreign Jurisdiction**.

(u)     **"Loss"** means damages, judgments, settlements, pre-judgment and post-judgment interest, **Crisis Management Loss** and **Defense Costs**; *provided, however,* **Loss**, other than **Defense Costs**, shall not include:

(i)     civil or criminal fines or penalties deemed uninsurable by law pursuant to which this Policy shall be construed other than civil penalties assessed against any individual director or officer pursuant to Sections 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd - 2(g)(2)(B);

(ii)    taxes; or

(iii)   any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; or

(iv)    amounts which may be deemed uninsurable under the law pursuant to which this Policy shall be construed including, without limitation, any disgorgement or payment of ill gotten gains, or any other monies to which an **Insured** was not legally entitled, as established by final adjudication (notwithstanding the foregoing, the Insurer shall not assert that a **Claim** alleging violations of Section 11, 12, 15 or 17 of the Securities Act of 1933, as amended, constitutes uninsurable loss under this Policy);

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

**Loss** shall also mean the following items, provided that they arise out of a **Claim**:

        **(1)**      **SOX 304 Costs**;

        **(2)**      **Extradition Costs**;

        **(3)**      **UK Corporate Manslaughter Act Defense Costs**;

        **(4)**      **Personal Reputation Expenses**, subject to $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

        **(5)**      **Asset Protection Costs**, subject to $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (u)(i) through (u)(iv) above of this Definition, subject to the other terms, conditions and exclusions of this Policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **D&O Coverage Section**, including, but not limited to, exclusions 4(a), 4(b) and 4(c) of this **D&O Coverage Section**, punitive, exemplary and multiple damages where insurable by law. The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss** shall also include any reasonable fees and expenses of any attorney representing any party who has brought a **Claim** against any **Insured** where such fees and expenses are awarded pursuant to a covered judgment against an **Insured** or a covered settlement (consented to by the Insurer, which consent shall not be unreasonably withheld or denied) to which an **Insured** is a party.

Whether an **Insured** has incurred **Loss** under this Policy shall be determined without regard to any indemnification that may be available to such **Insured** from the **Insured's Representative** or any affiliate or subsidiary thereof that is not a **Company** and without regard to any other insurance coverage that may be available to such **Insured** under any insurance policy issued to any **Insured's Representative** or any affiliate or subsidiary thereof that is not a **Company**.

(v)    "**Personal Reputation Crisis**" means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of a **Company** made during the **Policy Period** by any individual authorized to speak on behalf of an **Enforcement Body**.

* Subject to Protective Order *  ® All rights reserved

(w)     " **Personal Reputation Expenses** " means reasonable  fees, costs  and expenses  of a **Crisis Management Firm**  (as defined  in  the  CrisisFund Appendix®  attached  to  this  policy)  retained  within thirty  (30)  days  of a  **Personal Reputation Crisis**  solely and  exclusively  by  an  **Executive**  to  mitigate  the  adverse effects  specifically  to  such  **Executive's**  reputation  from a  **Personal Reputation Crisis** .    **Personal Reputation Expenses**  shall not include any  fees, costs, or expenses of  any **Crisis Firm** incurred  by an **Executive** if such **Crisis Firm** is also retained by or on behalf of a **Company**.

(x)     " **Pre-Claim Inquiry** " means any pre- **Claim** :

    (i)     verifiable request for an **Individual Insured**  of any Organization: (a) to  appear  at a  meeting  or  interview;  or (b)  produce  documents  that,  in  either  case,  concerns  the  business  of that Organization  or that **Individual Insured** 's  insured capacities, but only if the request came from any:

        (1)     **Enforcement Body** ; or

        (2)     **Company**, or, on  behalf of  a **Company**, by  its board  of directors  (or  the equivalent management  body) or any  committee of the  board of  directors (or the equivalent management body):

            (A)     arising  out of  an inquiry  or  investigation by  an **Enforcement Body**  concerning  the  business  of that  **Company**  or  that  **Individual Insured's**  insured capacities; or

            (B)     as part of its **Derivative Investigation** ; and

    (ii)     arrest  or  confinement  of an **Executive** of a **Company** to  a: (a)  specified  residence; or (b)  secure custodial  premises operated  by or  on behalf of  an **Enforcement Body** , in  connection with  the business of  any **Company**  or an **Individual Insured's** capacity as an **Executive** or **Employee** of a **Company**."

**Pre-Claim Inquiry** " shall not include  any routine or regularly  scheduled regulatory or  internal supervision,  inspection, compliance,  review, examination,  production or  audit, including  any request  for mandatory information from a  regulated entity,  conducted in a **Company's** and/or **Enforcement Body's** normal review or compliance  process.

*Archive Copy*
®  All  rights  reserved
* Subject to Protective Order *

(y)    " **Pre-Claim Inquiry Costs** " means:

    (i)    with respect to any **Pre-Claim Inquiry** as defined in subparagraph (1) of the Definition of such term, the reasonable pre- **Claim** fees, costs and expenses consented to by the Insurer and incurred by an **Individual Insured** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Individual Insured**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding (i) any compensation of any **Individual Insured**; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of a **Company**, the requestor or any other third party; and

    (ii)    with respect to any **Pre-Claim Inquiry** as defined in subparagraph (2) of the Definition of such term, any **Liberty Protection Costs**.

(z)    " **Securities Claim** " means a **Claim** made against any **Insured** and brought anywhere in the world:

    (i)    alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (as defined in the Securities Act of 1933) or common law, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

        (1)    brought by, on behalf of, or in the right of any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities (as defined in the Securities Act of 1933) of a **Company**; or

        (2)    brought by, on behalf of, or in the right of a security holder, purchaser or seller of securities of a **Company** with respect to such security holder's, purchaser's or seller's interest in securities (as defined in the Securities Act of 1933) of such **Company**; or

    (ii)    brought derivatively on the behalf of a **Company** by a security holder, purchaser or seller of such **Company**.

    (iii)    which is brought by or on behalf of one or more securities holders of a **Company** in their capacity as such; or

* Subject to Protective Order *  All rights reserved

(iv)    which arises from the purchase or sale of, or offer to purchase or sell, any securities (as defined in the Securities Act of 1933) issued by a **Company**, whether such purchase, sale or offer involves a transaction with a **Company** or occurs in the open market.

The term " **Securities Claim**" shall include an administrative or regulatory proceeding against a **Company**.

(aa)    " **SOX 304 Costs**" means reasonable fees, costs and expenses consented to by the **Insurer** (including the premium or origination fee for a loan or bond) and incurred by the chief executive officer or chief financial officer of the **Named Entity** solely to facilitate the return of amounts required to be repaid by such **Executive** pursuant to Section 304(a) of the Sarbanes Oxley Act of 2002. **SOX 304 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such **Executive** pursuant to Section 304(a).

(bb)    " **UK Corporate Manslaughter Act Defense Costs** " means **Defense Costs** incurred by an **Individual Insured** that result solely from the investigation, adjustment, defense and/or appeal of a **Claim** against a **Company** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

(cc)    " **Written Sale Agreement** " means any purchase or sale agreement, plan of merger document, asset sale agreement or other similar document.

(dd)    " **Wrongful Act** " means:

(i)    with respect to any **Executive** or **Employee** of a **Company**, any actual or alleged act, breach of duty, neglect, error, statement, misstatement, misleading statement, or omission by such **Executive** or **Employee** in their respective capacities as such, or any matter claimed against such **Executive** or **Employee** of a **Company** by reason of his or her status as an **Executive** or **Employee** of a **Company**;

(ii)    with respect to a **Company**, any actual or alleged act, breach of duty, neglect, error, statement, misstatement, misleading statement, or omission by a **Company**;

* Subject to Protective Order *
© All rights reserved

(iii)   with respect to any **Outside Entity Executive**, any actual or alleged act, breach of duty, neglect, error, statement, misstatement, misleading statement, or omission by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** by reason of his or her status as such; or

(iv)   with respect to any **Controlling Person**, any actual or alleged act, or other duty, neglect, error, statement, misstatement, misleading statement, or omission, by such **Controlling Person** in his or her capacity as such, or any matter claimed against such **Controlling Person** solely by reason of his or her status as a **Controlling Person**, but solely to the extent that a **Company** indemnifies such **Controlling Person**.

**3.    WORLDWIDE EXTENSION**

Where legally permissible, this Policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

For **Claims** made and maintained in a **Foreign Jurisdiction** against a **Company** formed and operating in such **Foreign Jurisdiction** or an **Individual Insured** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** those terms and conditions (and related provisions) of the relevant **Foreign Policy**, if any, in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction** than the terms and conditions of this Policy; *provided however,* that this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, pre-authorized securities or other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of the **Foreign Policy** when compared to the same or similar clauses of this **D&O Coverage Section**. This paragraph shall not apply to excess provisions or policy provisions that address non-renewal, duty to defend, defense within or without limits, taxes, claims made and reported provisions or any other provision of this policy intended to govern coverage worldwide.

All premiums, limits, retentions, **Loss** and other amounts under this **D&O Coverage Section** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **D&O Coverage Section** (subject to the terms, conditions and limitations of this **D&O Coverage Section**) will be made either

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

11

**AIGS.000283**

in such other currency (at the option of the particular **Named Entity** and if agreeable to the **Insurer**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

It is hereby understood and agreed that with respect to any **Claim** covered under any **Local Policy**, this Policy shall, subject to the terms and conditions of this Policy, pay such **Claim** if and when the **Claim** is not covered under such **Local Policy** or would have been covered but for the erosion of such **Local Policy's** limit of liability.

Notwithstanding the foregoing, in the event of a **Claim** otherwise covered under both this Policy and a **Local Policy**, coverage under the **Local Policy** shall prevail. With respect to a **Claim** for which coverage is provided by this Policy and which is partially covered by a **Local Policy** there shall be no applicable retention to such **Claim** sustained by the **Insured** under this Policy.

## 4.     EXCLUSIONS

Solely with respect to this **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with that portion of any **Claim** made against an **Insured**:

(a)     arising out of, based upon or attributable to the gaining of any personal profit or financial advantage to which a final non-appealable adjudication adverse to such **Insured** in the underlying action establishes that the **Insured** was not legally entitled; *provided, however,* this exclusion shall not apply to any **Defense Costs** incurred prior to such final non-appealable adjudication;

(b)     arising out of, based upon or attributable to the payment to such **Insured** of any remuneration without the previous approval of the stockholders of the **Company**, if a final non-appealable adjudication adverse to such **Insured** in the underlying action establishes such payment without such previous approval was illegal; *provided, however,* this exclusion shall not apply to any **Defense Costs** incurred prior to such final non-appealable adjudication;

(c)     arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act if a final non-appealable adjudication adverse to the **Insured** in the underlying action establishes that such deliberate criminal or deliberate fraudulent act committed by the **Insured**; *provided, however,* this exclusion shall not apply to any **Defense Costs** incurred prior to such final non-appealable adjudication;

*Archive Copy*    © All rights reserved
* Subject to Protective Order *

*provided, however:*

    (i)    EXCLUSIONS (a), (b), and (c) shall not apply to any **Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933 as amended to the portion of any **Loss** attributable to such violations; or

    (ii)    with respect to EXCLUSION (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred.

(d)    alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act(s)** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **D&O Coverage Section** is a renewal or replacement of in whole or in part or which it may succeed in time; *provided, however,* that this exclusion shall not apply if a notice of circumstance was rejected for lack of specificity under the prior program;

(e)    alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior:

    (i)    litigation against an **Insured**; or

    (ii)    administrative or regulatory proceeding against or investigation of an **Insured**,

of which the **Insured** had notice as of the inception date of the **Policy Period**, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act(s)** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)    with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew that such **Wrongful Act** would lead to a **Claim** under this **D&O Coverage Section**.

(g)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive**, **Employed Lawyer**, **Controlling Person** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

© All rights reserved
* Subject to Protective Order *

(h)  for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued independent of, and without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, the **Company,** or any **Executive** of the **Outside Entity** or the **Company**; *provided, however,* this exclusion shall not apply to:

(i)  any **Claim** brought by an **Executive** of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this **D&O Coverage Section**;

(ii)  in any bankruptcy, insolvency, or liquidation proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, trust, receiver, liquidator, rehabilitator conservator, creditors' committee or any comparable authority (or any assignee thereof) of such **Outside Entity**, if any, or the debtor-in-possession;

(iii)  any **Claim** brought by any former **Executive** of an **Outside Entity** who has not served in such position for an **Outside Entity** for at least two (2) years prior to such **Claim** being first made against any person;

(iv)  any **Claim** brought by an **Executive** of an **Outside Entity** formed and operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(v)  any **Claim** brought by such **Outside Entity** or any **Executive** thereof if failure to make such **Claim** reasonably could result in liability to the **Insured** for failure to do so;

(vi)  any **Claim** brought by or with the assistance, participation, solicitation or intervention of one particular **Named Entity** listed in a **Program Participants Endorsement** or by or with the assistance, participation, solicitation or intervention of a **Subsidiary** or **Insured**

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

thereof, against a different respective **Named Entity** listed in a **Program Participants Endorsement**, or a **Subsidiary** or Insured of such different respective **Named Entity**, so long as such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of **Insured's Representative**. and/or any director, officer, partner, management committee members or members of the Board of Managers of **Insured's Representative**.

(i) which is brought by or on behalf of a **Company** or any **Executive** of a **Company**; or which is brought by any security holder, creditor or other interest holder of the **Company** (other than an **Employee** security holder), whether directly or derivatively, unless such security holder's, creditor's or other interest holder's **Claim** is instigated and continued independent of, and without the active solicitation, active assistance, or active participation of, or intervention of, any **Company** or any **Executive** of a **Company**; *provided, however,* this exclusion shall not apply to:

(i) any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this policy;

(ii) in any bankruptcy, insolvency, or liquidation proceedings brought by or against a **Company**, any **Claim** brought by the examiner, trustee, trust, receiver, liquidator, rehabilitator, conservator, creditors' committee or any comparable authority (or any assignee thereof) of such **Company**, if any, or the debtor-in-possession;

(iii) any **Claim** brought by any former **Executive** of a **Company** who has not served in such capacity for a **Company** for at least two (2) years prior to such **Claim** being first made against any person;

(iv) any **Claim** brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(v) any **Claim** brought by or with the assistance, participation, solicitation or intervention of one particular **Named Entity** listed in a **Program Participants Endorsement** or by or with the assistance, participation, solicitation or intervention of a **Subsidiary** or **Insured** thereof, against a different respective **Named Entity** listed in a **Program Participants Endorsement**, or a **Subsidiary** or Insured of such

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

different respective **Named Entity**, so long as such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Insured's Representative** and/or any director, officer, partner, management committee members or members of the Board of Managers of the **Insured's Representative**;

(vi)   any **Claim** against any **Employed Lawyer**;

(vii)  any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Individual Insured** in defending any **Claim** against that **Individual Insured**;

(viii) any **Claim** brought by or with the solicitation, assistance, participation or intervention of an **Insured Person** who is engaging in any protected activity specified in 18 U.S.C. 1514A(a) ("whistleblower" protection pursuant to the Sarbanes-Oxley Act of 2002), the Dodd Frank Act or any other protected activity specified in any other "whistleblower" protection pursuant to any state, local or foreign laws;

(j)   alleging, arising out of, based upon or attributable to any public offering of equity securities by a **Company**, an **Outside Entity** or an **Affiliate** or alleging a purchase or sale of such equity securities subsequent to such public equity securities offering; *provided, however,* this exclusion will not apply to:

(i)   any purchase or sale of equity securities exempted pursuant to Section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium;

(ii)  any public offering of equity securities (other than a public equity securities offering described in subparagraph 4(j)(i) above), as well as any purchase or sale of such equity securities subsequent to such public equity securities offering, in the event that within thirty (30) days prior to the effective time of such public equity securities offering:

(1)   the particular **Named Entity** shall give the **Insurer** written notice of such public equity securities offering together with full particulars and underwriting information required thereto; and

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

(2)    the particular **Named Entity** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage is also subject to the particular **Named Entity** paying when due any such additional premium. In the event the **Company** gives written notice with full particulars and underwriting information pursuant to subpart 4(j)(ii)(1) above, then the **Insurer** must offer a quote for coverage under this paragraph;

(iii)    any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence an initial public offering (" **IPO**"), including but not limited to any failed offering, and which occurred at any time prior to **12:01 a.m.** on the date the initial public offering commences (" **IPO Effective Time**"), including any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the road show; *provided, however* that the coverage otherwise afforded under this subparagraph (iii) shall be deemed to be void *ab initio* effective the **IPO Effective Time**; *provided further, however,* that coverage shall not be deemed void *ab initio* if:

   (1)    the **Claim** is first made and reported pursuant to Clause 7(a) of the **General Terms and Conditions** prior to the **IPO Effective Time**, and

   (2)    a public company D&O policy does not provide coverage for such **Claim**;

(iv)    any purchase or sale or offer or solicitation of an offer to purchase or sell any securities made pursuant to any exemption under the Securities Act of 1933, including but not limited to any purchase or sale made pursuant to Regulation D or Regulation S under the Securities Act of 1933; or

(v)    any public offering of debt securities, including any purchase or sale of such debt subsequent to such public debt securities offering;

(k)    for bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; *provided, however,* this exclusion shall not apply to any **Securities Claim** or **UK Corporate Manslaughter Act Defense Costs**;

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(l)     for emotional distress or  mental anguish, or for  injury from libel  or slander, or defamation or disparagement, or  for injury from a violation  of a person's right of  privacy; *provided, however,* this  exclusion shall  not  apply to any **Securities Claim**;

(m)     for: (i) any  actual,  alleged or  threatened  discharge,  dispersal, release  or escape of  **Pollutants**; or  (ii) any  direction  or request  to test  for,  monitor, clean up, remove, contain, treat, detoxify or  neutralize **Pollutants**; *provided, however,* this exclusion shall not apply to:

   (1)     **Non-Indemnifiable Loss**, other  than  **Non-Indemnifiable Loss** constituting **Cleanup Costs**; or

   (2)     **Loss** in  connection  with a  **Securities Claim**,  other than  **Loss** constituting **Clean-up Costs**;

(n)     for violation(s) of  any of  the responsibilities, obligations  or duties  imposed by the Employee  Retirement Income  Security Act of  1974, the  Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker  Adjustment and  Retraining  Notification Act,  the  Consolidated Omnibus Budget  Reconciliation Act,  the Occupational Safety  and Health Act, any rules or  regulations of the  foregoing promulgated thereunder,  and amendments thereto or any  similar federal, state, local  or foreign statutory law or common law;

It is acknowledged that **Claims** for violation(s) of  any of the responsibilities, obligations or duties  imposed by "similar federal, state, local or foreign statutory law  or common law,"  as such quoted  language is used  in the immediately-preceding paragraph,  including without  limitation,  any and  all **Claims** which in  whole or in  part allege,  arise out of,  are based  upon, are attributable to,  or are in any  way related  to any  of  the circumstances described in any of the following:

   (i)     the refusal,  failure or  inability of  any **Insured(s)** to pay wages or overtime pay (or amounts representing  such wages or overtime  pay) for services rendered  or time spent  in connection with  work related activities (as opposed  to tort-based back  pay or  front pay damages for torts other than conversion);

   (ii)     improper deductions  from  pay  taken  by  any  **Insured(s)** from  any **Employee(s)** or purported **Employee(s)**; or

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

    (iii)    failure to provide or enforce legally required meal or rest break periods;

*provided, however,* this exclusion shall not apply to:

    (1)    any **Securities Claim**;

    (2)    the extent any **Claim** alleges personal liability of an **Executive** in which case, **Defense Costs** shall be available.

(o)    for any **Wrongful Act(s)** of a particular **Named Entity**, or any **Insured** thereof, which occurred prior to the applicable **Prior Acts Date** for such **Named Entity** as set forth in the respective **Program Participants Endorsement**;

(p)    with respect to Coverage B(i) only:

    (i)    for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights; *provided, however,* this exclusion shall not apply to any **Securities Claim**;

    (ii)    for any actual or alleged contractual liability of the **Company** under any express written contract or agreement; *provided, however,* this exclusion shall not apply to any:

        (1)    **Written Sale Agreement**;

        (2)    **Contract Claim Defense Costs Coverage**;

        (3)    **Securities Claim**; or

        (4)    liability which would have attached in the absence of such express contract or agreement.

For the purpose of determining the applicability of the foregoing Exclusions the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

Notwithstanding the foregoing, except for paragraph (d) of this Clause 4. **EXCLUSIONS**, this Clause 4. **EXCLUSIONS** shall not apply to any **Pre-Claim Inquiry Costs** in connection with a **Pre-Claim Inquiry**).

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

This Clause 4. EXCLUSIONS shall not be applicable to **Crisis Management Loss**.

5. **LIMIT OF LIABILITY**

The following provisions shall apply in addition to the provisions of Clause 4. of the **General Terms and Conditions**:

**CRISISFUND® INSURANCE**

The maximum limit of the **Insurer's** liability for all **Crisis Management Loss** arising from all **Crisis Management Events** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 3(a) of each **Program Participants Endorsement** as the **Crisis Management Fund**. This **Crisis Management Fund** shall be the maximum limit of the **Insurer** under this **D&O Coverage Section** for **Crisis Management Loss**, regardless of the number of **Crisis Management Events** occurring during the **Policy Period**; *provided, however,* the **Crisis Management Fund** shall be part of and not in addition to the **Designated Policy Aggregate Limit of Liability** stated in Item 2 of each **Program Participants Endorsement** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 2 of each **Program Participants Endorsement**.

**SIDE A EXCESS LIMIT OF LIABILITY**

The **Side A Excess Limit of Liability** shall be the amount set forth in Item 3(f) of each **Program Participants Endorsement** and is the aggregate limit of the Insurer's liability under this **D&O Coverage Section** excess of:

(i)   any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section**; and

(ii)  any coverage for **Loss** (whether or not **Non-Indemnifiable Loss**) under any policy of insurance specifically written as excess over any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section**,

for all **Non-Indemnifiable Loss** and all **Loss** incurred by an **Executive** that the **Company** fails or refuses to indemnify or advance to or on behalf of an **Executive** for any reason, including **Financial Insolvency**, under this **D&O Coverage Section** arising out of all **Claims** first made against an **Executive** of a **Company** during the

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**Policy Period** or the **Discovery Period** (if applicable). The **Side A Excess Limit of Liability** for the **Discovery Period** shall be part of, and not in addition to, the **Side A Excess Limit of Liability** for the **Policy Period**. The **Side A Excess Limit of Liability** shall be in addition to the **Designated Policy Aggregate Limit of Liability** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section**.

It is agreed that the **Insurer's** liability to pay **Non-Indemnifiable Loss** shall only attach to the **Side A Excess Limit of Liability** after:

(a)     the full amount of any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** has been exhausted due to **Loss** paid by or on behalf of the Insurer or by or on behalf of the **Insureds**; and

(b)     any coverage for **Loss** (whether or not **Non-Indemnifiable Loss**) under any policy of insurance specifically written as excess over any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** has been exhausted by reason of loss(es) paid by or on behalf of the Insurer or by or on behalf of the **Insureds**.

The **Side A Excess Limit of Liability** shall "drop down" (continue in force as primary insurance) only in the event of (a) and (b) above and shall not drop down for any other reason.

**COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND**

The maximum limit of the **Insurer's** liability for **Costs of Investigation** arising from all **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 3(b) of each **Program Participants Endorsement** (the "**Costs of Investigation Sublimit of Liability**"). The **Costs of Investigation Sublimit of Liability** is the maximum limit of the **Insurer** under this **D&O Coverage Section** for **Costs of Investigation** regardless of the number of such **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable), or the number of **Executives** subject to such **Company Shareholder Derivative Investigations**; *provided, however,* that the **Costs of Investigation Sublimit of Liability** shall be part of and not in addition to the **Designated Policy Aggregate Limit of Liability** set forth in Item 2 of each **Program Participants Endorsement** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 2 of each **Program Participants Endorsement**.

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

**CONTRACT CLAIM DEFENSE COSTS COVERAGE**

The maximum limit of the **Insurer's** liability for all **Defense Costs** under this **D&O Coverage Section** arising from any **Contract Claim** shall be the amount set forth in Item 3(e) of each **Program Participants Endorsement** (hereinafter called the "**Contractual Defense Costs Sublimit of Liability**"). This **Contractual Defense Costs Sublimit of Liability** shall be part of and not in addition to the **Designated Policy Aggregate Limit of Liability** set forth in Item of the Declarations and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3(e) of each **Program Participants Endorsement**.

6.    **RETENTION CLAUSE**

The following provision shall apply in addition to the provisions of Clause 5. RETENTION CLAUSE of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 6 of the respective **Program Participants Endorsement** for this **D&O Coverage Section**, such Retention amount to be borne by the **Company** and/or the **Insureds**, with regard to:

(i)      all **Indemnifiable Loss**; and

(ii)     **Loss** of the **Company**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Act(s)**.

It is further understood and agreed that in the event the **Company** is unable to pay an applicable Retention amount due to **Financial Insolvency** or, with respect to **Loss** incurred by an **Individual Insured**, fails to indemnify an **Individual Insured** for any reason, then the **Insurer** shall commence advancing **Loss** within the Retention; *provided, however,* the **Insurer** shall be entitled to recover the amount of **Loss** advanced within the Retention from the **Company** pursuant to Clause 10. SUBROGATION of the **General Terms and Conditions**.

Advancement, payment or indemnification of an **Individual Insured** by and **Organization** is deemed failed if it has been requested by an **Individual Insured** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

AIGS.000294

No Retention amount is applicable to **Crisis Management Loss** or **Non-Indemnifiable Loss**.

7. **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

The **Insurer** shall advance **Defense Costs** on a current basis and, in any event, no later than sixty (60) days after receipt of invoices of such **Defense Costs**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or the **Company**, severally according to their respective interests, in the event and to the extent that any such **Insured** or the **Company** shall not be entitled under the terms and conditions of this **D&O Coverage Section** to payment of such **Loss**.

No **Insured** may incur any **Defense Costs** in excess of the Retention, or admit any liability for, or settle any **Claim** in excess of the Retention, without the Insurer's consent, such consent not to be unreasonably withheld. The **Insurer** shall have the right to fully and effectively associate with each and every **Insured** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Insured** agrees to provide such information as the **Insurer** may reasonably require and to give the **Insurer** full cooperation.

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** in excess of the Retention without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **D&O Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **D&O Coverage Section**, provided that the **Insurer** shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim** in excess of the Retention, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs** in excess of the Retention, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **D&O Coverage Section**. In addition, in the event of a **Claim**, the **Insured** shall not take any action, without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this **D&O Coverage Section** with respect to such **Claim**.

*Archive Copy*
* Subject to Protective Order *
All rights reserved

This Clause 7 shall not be applicable to **Crisis Management Loss**.

The failure of any **Individual Insured** to give the **Insurer** cooperation and information as required above shall not impair the rights of any other **Individual Insured** under this policy.

8.  **COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND COVERAGE PROVISION**

It is understood and agreed that the **Company** shall be entitled to payment under Coverage D of this **D&O Coverage Section** for reimbursement of its covered **Costs of Investigation** ninety (90) days after:

(i)     the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**; and

(ii)    such decision has been communicated to the shareholders or creditors who made the **Derivative Demand** upon the **Company**. However, such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or any shareholder of the **Company** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

9.  **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS**

This Clause 9 applies only to **Securities Claims**.

Affixed as Appendix A hereto and made a part of this **D&O Coverage Section** is a list of Panel Counsel law firms (" **Panel Counsel Firms** ") from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** against an **Insured** pursuant to the terms set forth in this Clause.

The selection of the **Panel Counsel Firm** shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be either:

(i)     from the jurisdiction in which the **Securities Claim** is brought; or

(ii)    from the state indicated in Item 1 of the **Program Participants Endorsement** as the mailing address for the particular **Named Entity**.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

In the event a **Securities Claim** is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is maintained or where the corporate headquarters or state of formation of the particular **Named Entity** is located. In such instance, however, the **Insurer** may, if at the written request of the particular **Named Entity** or the **Insureds' Representative**, assign a non-Panel Counsel Firm of the **Insurer's** choice in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Securities Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made during the **Policy Period** to the **Panel Counsel Firms** listed in Appendix A without the consent of the **Insureds' Representative**.

Note that this Clause 9. PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

## 10.  ORDER OF PAYMENTS

In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this **D&O Coverage Section**, the **Insurer** shall at the written request of the particular **Named Entity**:

(a)     first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Section**, then with respect to whatever remaining amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** is available after payment of such **Loss**,

(b)     then, only after payment of **Loss** has been made pursuant to Clause 10(a) above, pay such other **Loss** for which coverage is provided under Coverage B(ii) of this **D&O Coverage Section**, and

(c)     then, only after payment of **Loss** has been made pursuant to Clause 10(a) and Clause 10(b) above, pay such **Loss** for which coverage is provided under Coverage B(i), C or D of this **D&O Coverage Section**..

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

The **Financial Insolvency** of any **Company**  or any **Individual Insured** shall  not relieve the **Insurer** of any of its obligations to prioritize payment  of covered **Loss** under this **D&O Coverage Section**  pursuant to this Clause 10.

In addition, if a bankruptcy, liquidation, administration, receivership, rehabilitation or reorganization proceeding  is  commenced  by  a  **Company**  (whether voluntarily  or involuntarily) under  Title  11  of  the  United  States  Code  (as amended),  state  or federal receivership, administration or liquidation  statute or law, or under  any other federal, state,  local or  foreign law  related to  insolvency (collectively,  "Insolvency Law") then, in regard to a covered **Claim** under this Policy, the Insureds hereby:   (a) waive and release  any automatic  stay or  injunction to  the extent  it may  apply in such proceeding to the  proceeds of this  Policy under such Insolvency  Law and (b) agree not to oppose or object to  any efforts by the **Insurer** or any  **Insured** to obtain relief from any  stay or  injunction to  the extent applicable  to the  proceeds of  this Policy as a result of the commencement of such proceeding.

[The balance of this page is intentionally left blank.]

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

**Employment Practices Liability Insurance
("EPL Coverage Section")**

<u>Notice</u>: **Pursuant to Clause 1 of the General Terms  and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and  are expressly applicable to this EPL  Coverage Section, unless  otherwise explicitly  stated to the  contrary in  either the General Terms and Conditions  or in this EPL Coverage  Section . This is a Claims  Made Coverage Section with Defense Costs included in the Designated  Separate Limit of Liability or Designated Shared Limit of Liability.**

In consideration of the payment of the premium, and in reliance upon the statements made to the  Insurer by **Application**,  which forms  a  part of  this  policy, the  Insurer agrees  as follows:

1.    **INSURING AGREEMENTS**

With respect to the  Insuring Agreement and  the Defense Provisions  of this Clause 1, solely with respect to **Claims** first made during the **Policy Period** or the  **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to  the other  terms, conditions  and limitations  of this  policy, this **EPL Coverage Section** affords the following coverage:

This **EPL Coverage  Section** shall  pay the  **Loss** of  an **Insured** arising  from a  **Claim** first made against such **Insured** for any **Wrongful  Act**. Payment of **Defense** shall be made in accordance with and subject to Clause 5 of this  **EPL Coverage Section** .

This **EPL Coverage Section**  shall also pay the  **Loss** of a  **Company** arising from  any **Claim** made against such **Company** for its actual or alleged liability for any **Wrongful Internet Activity** of an **Employee**.

**DEFENSE PROVISIONS**

The Insurer does not assume any duty to defend. The Insurer shall advance **Defense Costs** of such **Claim**, excess of the applicable  Retention amount, on a current basis and, in any event, no later than sixty (60) days after  the receipt of invoices of such **Defense Costs**. Selection of counsel  to defend a **Designated Employment  Practices Claim** shall be made in accordance with Clause 6 of this **EPL Coverage Section** .

2.    **DEFINITIONS**

(a)    " **Designated Employment Practices Claim** " means a **Claim**:

(i)    alleging discrimination or **Retaliation**; or

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**AIGS.000299**

(ii)     that is certified as, or which is seeking certification as, a class action.

(b)     " **Employment Practices Violation** " means any actual or alleged:

(i)     wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(ii)     harassment (including, but not limited to, sexual harassment whether "quid pro quo", hostile work environment or other harassment in the workplace, including "same-sex" sexual harassment);

(iii)     discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, genetic information, pregnancy, military status or disability);

(iv)     **Retaliation** (including, but not limited to, lockouts);

(v)     employment-related misrepresentation(s) to an **Employee** of the **Company** or applicant for employment with the **Company** or an **Outside Entity**;

(vi)     employment-related libel, slander, humiliation, defamation or invasion of privacy;

(vii)     wrongful failure to employ or promote;

(viii)     wrongful deprivation of career opportunity with the **Company**, wrongful demotion or negligent **Employee** evaluation, including, but not limited to, the giving of negative or defamatory statements in connection with an employee reference;

(ix)     wrongful discipline;

(x)     failure to grant tenure;

(xi)     false arrest or false imprisonment; or

(xii)     with respect to any of the foregoing items (i) through (xi) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

*Archive Copy*
©   All rights reserved
* Subject to Protective Order *

but only if the **Employment Practices Violation** relates to an **Employee** of a **Company** or an **Outside Entity**, or applicants for employment with a **Company** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

(c)    " **Individual Insured** " means any:

    (i)    **Executive** of a **Company**;

    (ii)    **Employee** of a **Company**; or

    (iii)    **Outside Entity Executive**.

(d)    " **Insured**" means:

    (i)    an **Individual Insureds**; or

    (ii)    a **Company**.

    " **Company**", as defined in **General Terms and Conditions** Definition (f), shall be deemed to include the **Insureds' Representative.**

    Coverage as is afforded under the **EPL Coverage Section** with respect to a **Claim** made against the **Insureds' Representative** or any **Individual Insured** thereof shall only apply if: (1) such **Claim** arises out of a covered **Claim** for a **Wrongful Act** actually or allegedly committed by an **Insured** (other than the **Insureds' Representative** or an **Individual Insured** thereof); and (2) an **Insured** (other than the **Insureds' Representative** or an **Individual Insured** thereof) is and remains a defendant in the action along with such **Insureds' Representative** or any **Individual Insured** thereof.

    In all events coverage as is afforded under this **EPL Coverage Section** with respect to a **Claim** made against the **Insureds' Representative** or any **Individual Insured** thereof shall only apply to **Wrongful Acts** committed or allegedly committed after the time that such **Insureds' Representative** became an **Insureds' Representative** and prior to the time such **Insureds' Representative** ceases to be an **Insureds' Representative**.

    An entity ceases to be a **Insureds' Representative** when it ceases to have **Management Control** of the **Named Entity**, either directly, or indirectly through one or more of its subsidiaries.

* Subject to Protective Order *
© All rights reserved

(e)     " **Loss**" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest and **Defense Costs**; *provided, however,* **Loss** shall not include:

(i)      civil or criminal fines or penalties imposed by law;

(ii)     taxes;

(iii)    any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**;

(iv)    employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation;

(v)     any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar;

(vi)    matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (e)(i) through (e)(vi) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **EPL Coverage Section**, including, but not limited to, Exclusion 3(a) of this **EPL Coverage Section**, punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss** shall also include any reasonable fees and expenses of any attorney representing any party who has brought a **Claim** against any **Insured** where such fees and expenses are awarded pursuant to a covered judgment against an **Insured** or a covered settlement (consented to by the Insurer, which consent shall not be unreasonably withheld or denied) to which an **Insured** is a party.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved

(f)   " **Retaliation**" means a retaliatory act of an **Insured** alleged to be in  response to any of the following activities:

(i)   the disclosure or threat of  disclosure by an **Employee** of  the **Company** or an **Outside Entity** to a superior or to any  governmental agency of any act by an **Insured** which act is  alleged to be  a violation of  any federal, state,  local or foreign law,  common  or  statutory, or  any  rule  or  regulation promulgated thereunder;

(ii)   the actual  or  attempted exercise  by  an **Employee** of  the **Company** or an **Outside Entity** of  any  right that  such  **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans  with Disabilities  Act or  any other  law relating  to employee rights;

(iii)   the  filing  of  any  claim  under  the  Federal  False  Claims Act  or  any  other federal, state, local or foreign "whistle-blower" law; or

(iv)   strikes of an **Employee** of the **Company** or an **Outside Entity**.

(g)   " **Third Party  Violation**" means  any  actual  or  alleged harassment or  unlawful discrimination, as described in subparagraphs 2(b)(ii) and 2(b)(iii) of the  definition of **Employment Practices  Violation**, or  the  violation of  the  civil  rights  of  a  person relating to  such harassment  or discrimination,  when  such  acts  are alleged to  be committed  against anyone  other than  an **Individual Insured**  or applicant  for employment with the  **Company** or an **Outside Entity**, including,  but not limited  to, students, patients, members, customers, vendors and suppliers.

(h)   " **Wrongful Act**" means any actual or alleged:

(i)   **Employment Practices Violation**, or

(ii)   **Third Party Violation**.

(iii)   **Wrongful Internet Activity**

(i)   " **Wrongful Internet Activity**" means any actual or alleged:

(i)   **Employment Practices Violation** alleged by an **Employee**; or

(ii)   **Third Party Violation**,

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

when committed by an **Employee** by means of the internet, including, but not limited to, social networking activities, regardless of whether such internet activity is during or after work hours or on or off the work premises. For purposes of the application of this definition, an individual shall be deemed to be an **Employee** regardless of whether such individual was acting in his or her capacity as an **Employee**.

3.  **EXCLUSIONS**

Solely with respect to this **EPL Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured**:

(a)  alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Acts** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **EPL Coverage Section** is a renewal or replacement in whole or in part or which it may succeed in time; *provided, however,* that this EXCLUSION (a) shall not apply if a notice of circumstance was rejected for lack of specificity under such prior policy;

(b)  alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior:

(i)  litigation against an **Insured**; or

(ii)  **EEOC** (or similar state, local or foreign agency) proceeding or investigation of an **Insured**,

of which the General Counsel (or equivalent position if none) of the **Company** had written notice, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act** to that alleged in such pending or prior litigation or EEOC (or similar state, local or foreign agency) proceeding or investigation;

(c)  with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if the **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this **EPL Coverage Section**;

(d)  alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(e)     for bodily injury (not including emotional distress or mental anguish), sickness, disease, or death of any person, or damage to, loss of use of or destruction of any tangible property;

(f)     for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar federal, state, local or foreign statutory law or common law;

It is acknowledged that **Claims** for violations of any of the responsibilities, obligations or duties imposed by "similar federal, state, local or foreign statutory law or common law," as such quoted language is used in the immediately-preceding paragraph, include, without limitation, any and all **Claims** which in whole or in part allege, arise out of, are based upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(i)     the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay (or amounts representing such wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

(ii)     improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

(iii)     failure to provide or enforce legally required meal or rest break periods;

*provided, however,* this exclusion (f) shall not apply to the extent that a **Claim** is for **Retaliation**;

(g)     alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; *provided, however,* this exclusion shall not apply to the extent that a **Claim** is for **Retaliation**;

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(h)     alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any **Company** under any express contract or agreement (other than any employee handbooks or human resources policies and procedures, or any organizational or management advisory documents of any **Named Entity**); *provided, however,* this exclusion shall not apply to:

         (i)     liability which would have attached in the absence of such express contract or agreement; or

         (ii)     **Defense Costs**;

(i)     alleging, arising out of, based upon or attributable to any **Claim** brought by a securities holder of a **Company**, an **Outside Entity** or an affiliate of a respective **Named Entity** in their capacity as such in the form of a shareholder class, direct or derivative action on behalf of such **Company**, **Outside Entity** or affiliate;

(j)     for any **Wrongful Act(s)** of a particular **Named Entity**, or any **Insured** thereof, which occurred prior to the applicable **Prior Acts Date** for such **Named Entity** as set forth in the respective **Program Participants Endorsement**.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 3(b) and 3(c), the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

## 4.     RETENTION CLAUSE

The following provision shall apply in addition to the provisions of Clause 5. RETENTION CLAUSE of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 6 of the respective **Program Participants Endorsement** for this **EPL Coverage Section**, such Retention amount to be borne by the **Company** or the **Insureds** and shall remain uninsured, with regard to all:

(a)     **Indemnifiable Loss**; or

(b)     **Loss** of the **Company**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

It is further understood and  agreed that in the event  the **Company** does not in  fact pay an  applicable  Retention  amount  due  to  any  reason,  then  the **Insurer**  shall commence advancing  **Defense Costs**  and pay  any other  covered **Loss**  within  the Retention; *provided,  however,*  except  in  the  event  of  **Financial Insolvency**,  the **Insurer** shall be entitled to recover the amount of Defense **Costs** and any other **Loss** advanced  within  the  Retention  from  the  **Company**  pursuant  to  Clause 10. SUBROGATION of the **General Terms and Conditions**.

**5.    DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer**  does not  assume  any  duty  to  defend. The  **Insureds**  shall  defend and contest any **Claim** made against them.

The **Insurer** shall  advance **Defense Costs**  on a current  basis and, in  any event, no later than  sixty (60)  days after  receipt of  invoices of such  **Defense Costs**. Such advanced payments by the **Insurer**  shall be repaid to the  **Insurer** by the **Insureds**  or the **Company**, severally according  to their respective interests,  in the event and  to the extent that the  **Insureds** or the  **Company** shall not  be entitled under the  terms and conditions of this **EPL Coverage Section**  to payment of such **Loss**.

The **Insureds**  shall  not  admit  or  assume  any  liability,  enter  into any  settlement agreement, stipulate to any judgment,  or incur any **Defense Costs**  in excess of the Retention without the prior written  consent of the  **Insurer**. Only  those settlements, stipulated judgments  and  **Defense Costs**  in  excess  of  the  Retention which  have been consented to by the **Insurer**, in writing, shall be  recoverable as **Loss** under the terms  of  this  **EPL Coverage Section**.  The  **Insurer's**  consent  shall  not  be unreasonably withheld,  provided  that  the  **Insurer**  shall  be  entitled to  fully  and effectively associate in the defense and negotiation  of any settlement of any **Claim** in excess of the  Retention, and provided  further that in  all events the **Insurer**  may withhold consent to any settlement, stipulated judgment or  **Defense Costs**  in excess of the  Retention, or  any portion  thereof, to the extent such **Loss**  is  not covered under the terms of this **EPL Coverage Section**.

The **Insurer** shall  have the  right to  effectively associate with  the **Company**  in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited  to, negotiating  a settlement. The **Company**  and the **Insureds**  shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

The failure of any **Individual Insured** to give  the **Insurer** cooperation and information as required above  shall not impair  the rights  of any other  **Individual Insured**  under this policy.

*Archive Copy*
* Subject to Protective Order *
All rights reserved

6. **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED EMPLOYMENT PRACTICES CLAIMS**

This Clause 6 applies only to **Designated Employment Practices Claims**.

Affixed as Appendix B hereto and made a part of this **EPL Coverage Section** is a list of Panel Counsel law firms (" **Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Designated Employment Practices Claim** against an **Insured** pursuant to the terms set forth in this Clause.

The selection of the **Panel Counsel Firm** shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be either:

(a)     from the jurisdiction in which the   **Designated Employment Practices Claim** is brought; or

(b)     from the state indicated  in Item 1 of  the **Program Participants Endorsement** as the mailing address for the respective **Named Entity**.

In the event  a **Designated Employment Practices Claim** is brought in  a jurisdiction not included  on  the  appropriate list,  the selection  shall  be made  from  a listed jurisdiction which  is  the  nearest  geographic  jurisdiction to  either where  the **Designated Employment Practices Claim** is maintained or  where the corporate headquarters or  state of  formation of  the  respective **Named Entity** is located. In such instance, however, the **Insurer** may, if at the written request  of the respective **Named Entity** or  the **Insureds' Representative**, assign a non- **Panel Counsel Firm** of the **Insurer's** choice in  the jurisdiction  in  which the **Designated Employment Practices Claim** is brought to function  as "local counsel" on the **Designated Employment Practices Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting  the defense of  the **Designated Employment Practices Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different  from that  selected by other **Insured** defendants if such selection is required due to an  actual conflict of interest or  is otherwise reasonably justifiable.

The list of **Panel Counsel  Firms** may be amended  from time to time by  the **Insurer**. However, no change  shall  be made during the  **Policy Period** to the  **Panel Counsel Firms** listed in Appendix B without the consent of the **Insureds' Representative**.

[The balance of this page is intentionally left blank.]

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

**Fiduciary Liability Insurance**
**(" FLI Coverage Section ")**

**Notice**: **Pursuant to Clause 1 of the General Terms  and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and  are expressly applicable to this FLI Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms  and  Conditions or  in  this FLI  Coverage  Section . This  is  a Claims  Made Coverage Section with Defense Costs included in the Designated  Separate Limit of Liability or Designated Shared Limit of Liability.**

In consideration of the payment of the premium, and in reliance upon the statements made to  the  **Insurer**  by  **Application**,  which forms  a  part  of  this  policy, the  **Insurer**  agrees  as follows:

1.     **INSURING AGREEMENTS**

Coverage for **Loss** under this policy is provided solely with respect to: (i) **Claims** first made against an  **Insured**; (ii)  **Voluntary Compliance  Losses**  first  ascertained by  or assessed against an  **Insured**; and  (iii) **Pension  Crises** first  occurring, in  each such event, during the  **Policy Period** or  any applicable **Discovery  Period** and  reported to the Insurer  as required  by  this policy.  **Claims**  that are  fact-finding  investigations which do not allege a  **Wrongful Act** and  **Claims** that are **Internal Appeals** shall each be deemed  first made  when they are reported.  Subject to the foregoing  and  the other  terms,  conditions,  and  limitations  of  this policy,  this policy  affords the following coverage:

A.     **Individual Insured Coverage**

This policy shall pay  the **Loss** of any  **Individual Insured** that no  **Company** or **Plan** has indemnified or paid that arises from any **Claim**:

(1)     made against  such **Individual  Insured** for  any **Wrongful  Act** of  such **Individual Insured**; or

(2)     that is a fact-finding  investigation which does  not allege in  writing a **Wrongful Act** or that is an **Internal Appeal**, if an **Insured** elects to give notice.

B.     **Individual Insured Indemnification Coverage**

This policy shall pay the **Loss** of a **Company** or **Plan** that arises from any **Claim**:

(1)     made against  any  **Individual Insured** for  any **Wrongful  Act**  of such **Individual Insured**; or

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

**AIGS.000309**

    (2)    that is a fact-finding investigation which does not allege in writing a **Wrongful Act** or that is an **Internal Appeal**, if an **Insured** elects to give notice;

but only to the extent that such **Company** or **Plan** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Individual Insured**.

## C.    Company and Plan Coverage

This policy shall pay the **Loss** of any **Company** or **Plan** arising from any **Claim**:

    (1)    made against such **Company** or **Plan** for any **Wrongful Act** of such **Company** or **Plan** (or of any employee for whom such **Company** is legally responsible); or

    (2)    that is a fact-finding investigation which does not allege in writing a **Wrongful Act** or that is an **Internal Appeal**, if an **Insured** elects to give notice.

## D.    Voluntary Compliance Loss Coverage

This policy shall pay any **Voluntary Compliance Loss** first ascertained by or assessed against an **Insured**, subject to the aggregate sublimit of liability set forth on the Declarations.

The payment of any **Voluntary Compliance Loss** under this policy shall not waive any of the Insurer's rights under this policy or at law, including in the event that circumstances giving rise to such **Voluntary Compliance Loss** result in a **Claim**.

## E.    Pension CrisisFund Coverage

This policy shall pay the **Pension Crisis Loss** of a **Company** up to the **Insured's** aggregate sublimit of liability for all **Pension Crisis Loss** under the **Pension CrisisFundSM** set forth in the Declarations (as amended by this endorsement).

The payment of any **Pension Crisis Loss** under this policy shall not waive any of the Insurer's rights under this policy or at law, including in the event that circumstances giving rise to such **Pension Crisis Loss** result in a **Claim**.

© All rights reserved
* Subject to Protective Order *

2.      **DEFENSE AGREEMENT**

The **Insurer** does not assume any duty to defend a **Claim**. The **Insurer** shall advance **Defense Costs** on  a current basis  and, in any  event, no later  than sixty (60)  days after the receipt of invoices of  such **Defense Costs**, subject to  the other provisions of this **FLI Coverage Section**. Such advance payments by the **Insurer** shall be  repaid to the **Insurer**  by the **Insureds**,  severally according  to their respective  interests, in the event and  to the  extent that the  **Insureds**  shall  not be entitled  to payment  of such **Loss** under the terms and conditions of this **FLI Coverage Section**.

Selection of counsel to defend  a **Claim** shall be  made in accordance with Clause  8 of this **FLI Coverage Section** (if applicable).

The **Insureds**  shall  not  admit  or assume  any  liability,  enter  into any  settlement agreement, stipulate to any judgment, or incur any  **Defense Costs** without the prior written consent  of the  **Insurer**. Only  those settlements,  stipulated judgments  and **Defense Costs**  which have  been  consented to  in  writing by  the  **Insurer**  shall  be recoverable as **Loss** under the terms of this **FLI Coverage Section**, such consent not to be unreasonably withheld.

The **Insureds**  shall give  the  **Insurer**  full  cooperation  and such  information  as the **Insurer** may reasonably require.

Notwithstanding the provisions above, if  all **Insured** defendants are  able to dispose of all **Claims** which are subject to one  Retention (inclusive of **Defense Costs**) for an amount  not  exceeding  the  Retention,  then  the  Insurer's  consent  shall  not  be required for such disposition.
Notwithstanding the provisions above, the failure  of any **Insured** to give the  Insurer cooperation and information as it may  reasonably require shall not impair  the rights of any **Individual Insured** under this policy.

3.      **DEFINITIONS**

(a)     " **Benefits**" means any obligation under a **Plan** to a participant or beneficiary under a **Plan** which is  a payment  of money  or property,  or the  grant of  a privilege,  right, option or perquisite.

(b)     " **Breach of Fiduciary Duty**" means a  violation of the  responsibilities, obligations  or duties imposed upon **Insureds** by **ERISA**.

(c)     " **Cafeteria Plan**" means a plan  as defined  in Section 125  of the  Internal Revenue Code of  1986, as amended  or  a plan from  which  the participants  may  choose among two or more benefits consisting of cash and qualified benefits.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved ©

(d)     " **CAP Penalties** " means fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees assessed against or collected from an **Insured** by the Internal Revenue Service (" **IRS** ") pursuant to a written agreement to correct an inadvertent **Plan** defect under an Employee Plans Compliance Resolution System, provided that such agreement to correct such **Plan** defect was entered into in writing by the **Insured** with the **IRS** during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal).

(e)     " **Claim,** " solely with respect to this **FLI Coverage Section** shall also mean, (i) any fact-finding investigation, whether or not a **Wrongful Act** is alleged, by the U.S. Department of Labor ("DOL") or the Pension Benefit Guaranty Corporation ("PBGC") or any similar governmental authority located outside the United States, including, but not limited to the United Kingdom's Pensions Ombudsman or Pensions Regulator; or (ii) any **Internal Appeal**.

(f)     " **Company,** " solely with respect to this **FLI Coverage Section** shall also mean, in any Foreign Jurisdiction, a **Trustee Company** :

(g)     " **Consulting Fees** " means fees charged by a third party actuary, benefits consultant or accountant resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs or expenses associated with:

(i)     a **Plan** audit; or

(ii)     identifying, finding or assessing such **Breach of Fiduciary Duty**.

(h)     " **Covered Penalties** " means solely in connection with a Plan:

(i)     the 5% or less civil penalty imposed upon an **Insured** under Section 502(i) of **ERISA** ;

(ii)     the 20% or less civil penalty imposed upon an **Insured** under Section 502(l) of **ERISA**, with respect to a covered settlement or judgment;

(iii)     the civil fines and penalties assessed against an **Insured** by either the United Kingdom's Pensions Ombudsman or the Pensions Regulator or any successor body thereto;

(iv)     **Voluntary Compliance Loss** subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section** ;

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(v)     the civil penalties under Section 502(c) of **ERISA**, other than penalties under the Pension Protection Act, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section** (" **Section 502(c) Penalties**");

(vi)    the civil penalties under the Pension Protection Act of 2006, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section** (" **Pension Protection Act Penalties**");

**(vii)   HIPAA Penalties**, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section**;

(viii)  The civil penalties imposed under rules and regulations (including interim final rules and regulations) provided by governmental agencies (including the U.S. Department of Health and Human Services, the U.S. Department of the Treasury, the U.S. Internal Revenue Service (" **IRS**"), and the DOL, the Office of Consumer Information and Insurance Oversight, and the Employee Benefits Security Administration), for inadvertent violations by an Insured of **Health Care Reform Law**, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section** (" **Health Care Reform Penalties**"); and

(ix)    the 15% or less tax penalty imposed upon an Insured under Section 4975 of the Internal Revenue Code of 1986, with respect to covered judgments, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section** (" **Section 4975 Penalties**").

(i)     " **Defense Costs**" means reasonable attorney's fees, costs or expenses consented to in writing by the **Insurer** resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs and expenses associated with finding or assessing such **Breach of Fiduciary Duty** and any compensation of **Individual Insureds**.

(j)     " **Delinquent Filer Penalties**" means penalties assessed by the " **DOL**" or the **IRS** under a Delinquent Filer Voluntary Compliance Program for inadvertent failure to file Form 5500, provided that the failure to file such Form 5500 occurred during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal).

(k)     " **Dependent Care Assistance Program**" means a dependent care assistance program as defined in Section 129 of the Internal Revenue Code of 1986, as amended.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(l)  " **Employee Benefit Law** " means **ERISA** or any similar common or statutory law of the United States of America, Canada or any state or other jurisdiction anywhere in the world to which a **Plan** is subject. Solely with respect to subparagraph 3(cc)(ii) of the Definition of **Wrongful Act** in this **FLI Coverage Section** , **Employee Benefit Law** shall also include **HIPAA Privacy Regulations** and any laws concerning unemployment insurance, Social Security, government-mandated disability benefits or similar law. Except as provided in the previous sentence, **Employee Benefit Law** shall not include any law concerning workers' compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

(m)  " **ERISA** " means the Employee Retirement Income Security Act of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, the Health Insurance Portability and Accountability Act of 1996, the Newborns' and Mothers' Health Protection Act of 1996, the Mental Health Parity Act of 1996, and the Women's Health and Cancer Rights Act of 1998, the Pension Protection Act of 2006 and the **Health Care Reform Law** ), including any amendment or revision thereto.

(n)  " **ESOP** " means any employee stock ownership plan as defined in **ERISA** , or any other **Plan** under which investments are made primarily in securities of or issued by: (i) the **Company** ; (ii) any acquired **Subsidiary** ; or (iii) any parent of any acquired **Subsidiary** , or whose assets at any time within twelve (12) months prior to the inception date of this **FLI Coverage Section** were comprised of ten percent (10%) or more of securities of:

(1)  the **Company** ;

(2)  any acquired **Subsidiary** ; or

(3)  any parent of any acquired **Subsidiary** .

(o)  " **Fiduciary** " means a fiduciary as defined in an **Employee Benefit Law** (if applicable), with respect to a **Plan** , or a person or entity who exercises discretionary control as respects the management of a **Plan** or the disposition of its assets.

(p)  " **Fringe Benefit** " means any plan or benefit described in Section 132 of the Internal Revenue Code of 1986, as amended.

(q)  " **Health Care Reform Law** " means the Patient Protection and Affordable Care Act and the Health Care and Education Reconciliation Act of 2010.

(r)  " **HIPAA Penalties** " means civil money penalties imposed upon an **Insured** for violation of **HIPAA Privacy Regulations** .

* Subject to Protective Order *   © All rights reserved

(s)     " **HIPAA Privacy Regulations** " means the privacy provisions of the  Health Insurance Portability and Accountability Act of 1996 and any amendments thereto.

(t)     " **Individual Insured** " means any:

(i)     past, present  or  future  natural  person director,  officer,  governor,  general partner,  management  committee  member, **Pension Oversight  Committee Member,** member of the board of managers or employee of a  **Company** or, if applicable, of a  **Plan**, and as  to all of  the above in  his or her  capacity as a **Fiduciary**, administrator or trustee of a **Plan**; or

(ii)     past, present or  future natural person  in a  position equivalent to  a position listed in subparagraph (i) of this Definition  (t) in the event that the  **Company** is operating in a **Foreign  Jurisdiction**.

(u)     " **Insured** " means:

(i)     any **Individual Insured**;

(ii)     any **Plan**;

(iii)     the **Company**;

(iv)     any **Pension Oversight Committee**;

(v)     **Trustee Company**; or

(vi)     any  other  person  or  entity  in  his,  her  or  its   capacity  as  a **Fiduciary**, administrator or trustee of a **Plan** and included in the Definition  of **Insured** by specific written endorsement attached to this  **FLI Coverage Section**.

(v)     " **Internal Appeal** " means  an  appeal  of  an  adverse  benefits  determination  by an Insured pursuant  to  the  DOL's  claim  procedure  regulation  at  29  C.F.R.  Section 2560.503-1(h) or similar claim procedures pursuant to applicable law.

(w)     " **Loss** " means damages, judgments (including pre  and post-judgment interest  on a covered  judgment),  settlements, **Defense  Costs**, **Voluntary  Compliance  Loss**, **Pension Crisis Loss** and **Covered Penalties**; *provided, however,* **Loss** shall not include:

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

AIGS.000315

(i)     civil or criminal fines or penalties imposed by law (other than **Covered Penalties)**;

(i)     taxes or tax penalties;

(ii)    Cleanup costs relating to hazardous materials, pollution or product defects;

(iii)   Wages, tips and commissions;

(iv)    any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**;

**(v)**    **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Individual Insured**; provided however, that **Loss** shall include a monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a loss to a **Plan** or loss in the actual accounts of participants in a **Plan** by reason of a change in value of the investments held by that **Plan**, including, but not limited to, the securities of the particular **Named Entity**, regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits"; or

(vi)    amounts which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (w)(i) through (w)(v) above of this Definition, subject to the other terms, conditions and exclusions of this **FLI Coverage Section**.

Where permitted by law, **Loss** shall specifically include (subject to the policy's other terms, conditions and exclusions, including, but not limited to, exclusions 5(a) and 5(b) of this **FLI Coverage Section**), punitive or exemplary damages or the multiplied portion of multiplied damages imposed upon any **Insured**. The enforceability of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss** shall include **Voluntary Compliance Loss**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(x)    " **Managed Care Services** " means the administration or management of a health care, pharmaceutical, vision or dental Plan utilizing cost control mechanisms, including, but not limited to utilization review, case management, disease management, pharmacy management, the use of a preferred provider medical, vision or dental network, or a health maintenance organization.

(y)    " **Non-qualified Plan** " means any of the following plans for a select group of management or highly compensated directors, officers or employees: deferred compensation plan, supplemental executive retirement plan, top-hat plan or excess benefit plan.

(z)    " **Pension Crisis** " has the meaning set forth in the **Pension CrisisFundSM** Appendix attached to this policy.

(aa)    " **Pension CrisisFundSM** " means the aggregate sublimit of liability set forth in the Declarations (as amended by this endorsement) for all **Pension Crisis Loss** in the aggregate for all **Pension Crises** first occurring during the **Policy Period** or any applicable **Discovery Period**.

(bb)    " **Pension Crisis Loss** " has the meaning set forth in the **Pension CrisisFundSM** Appendix attached to this policy.

(cc)    " **Pension Oversight Committee** " means any pension oversight committee duly formed by a **Trustee Company** and duly appointed to act as a trustee of the **Plan** or acting as a constructive trustee of the **Plan**.

(dd)    " **Pension Oversight Committee Member** " means any duly elected or appointed member of a **Pension Oversight Committee**.

(ee)    " **Pension Plan** " means a pension plan as defined in any **Employee Benefit Law**.

(ff)    " **Plan** " means automatically any plan, fund, trust or program (including, but not limited to, any plan, fund, trust or program considered or created by the particular **Named Entity** during the **Policy Period**, any IRA-based Plan, **Welfare Plan**, **Cafeteria Plan**, **Dependent Care Assistance Program**, **Fringe Benefit**, **Non-qualified Plan**, or qualified **Pension Plan**), established anywhere in the world, which was, is or shall be sponsored solely by the **Company**, or sponsored jointly by the **Company** and a labor organization, solely for the benefit of the employees or the directors and officers of the **Company**, subject to the provisions set forth below:

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

(i)      if such **Plan** is a **Pension Plan**, other than  an **ESOP** or **Pension Plan** described in subparagraphs (ff)(iv) below,  then the particular **Named  Entity** shall provide written notice of such **Plan** to the **Insurer** prior to  the inception date of this **FLI Coverage Section**,  unless such **Plan** was already  covered under a policy issued by the **Insurer** of which this **FLI Coverage  Section** is a continuous renewal;

(ii)     if such **Plan**  was sold, spun-off  or terminated prior  to the inception  date of this **FLI**  Coverage **Section**  the particular  **Named Entity**  shall have provided written notice of such sale, spin-off or termination  to the **Insurer** prior to the inception date of  this **FLI  Coverage Section**  and pay any  required premium relating to such  **Plan**, unless  such sale,  spin-off or  termination had  already been reported to  the **Insurer**  under a policy  issued by  the **Insurer**  of which this **FLI Coverage Section** is a continuous renewal;

(iii)    if such  **Plan**  is sold,  spun-off  or terminated during  the **Policy  Period**, the particular **Named Entity** shall provide  written notice of such  sale, spin-off or termination to the **Insurer** prior to the end of the **Policy Period**;

(iv)    if such **Plan** is an **ESOP**, stock option plan or stock based compensation plan, this **FLI Coverage Section**  shall  only provide  coverage for  such  plan upon written notice of such **Plan** to the **Insurer**, payment of any required premium, and such **Plan**  has been added  to the Definition  of **Plan**  by specific written endorsement attached to this policy; or

(v)     if such **Plan** is a **Pension Plan** (other than an **ESOP**) and is acquired during the **Policy Period** as a  result  of the  particular **Named  Entity's**  acquisition of  a **Subsidiary**, then this **FLI Coverage Section** shall apply  to such **Plan** (but solely with  respect to  any  **Wrongful Act**  occurring after  the  date of  such acquisition). The particular  **Named Entity**  shall provide  the **Insurer**  with full particulars of such new **Plan** before the end of the **Policy Period**.

The Definition of **Plan** shall  also include: the  following government-mandated programs: unemployment insurance, Social Security or disability benefits, but  solely with respect  to a  **Wrongful  Act** defined  in subparagraph (ii) of the Definition of **Wrongful Act**  in this  **FLI Coverage  Section**; and  any other plan, fund or program which is included in the Definition of **Plan** by specific written endorsement  attached to this **FLI Coverage Section**.

In no event, however, shall the definition of **Plan** include (i) any plan of  an **Affiliated Entity**; or (ii) any multiemployer plan as defined in **Employee Benefit Law**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

AIGS.000318

(gg)  " **Section 502(c)** " means the civil penalties under Section 502(c) of **ERISA,** other than penalties under the Pension Protection Act.

(hh)  " **Trustee Company** " means a corporate trustee company that is:

    (i)  established by a **Company** formed and operating in a **Foreign Jurisdiction**, or any predecessor of such **Company**, and

    (ii)  duly appointed to act as a trustee of a **Plan** in a **Foreign Jurisdiction** and sponsored solely by such **Company**.

(ii)  " **UK Fines and Penalties** " means civil fines and penalties assessed against an **Insured** by either the Pensions Ombudsman appointed by the Secretary of State for Social Services in the United Kingdom, by the Occupational Pensions Regulatory Authority in the United Kingdom, by the Pensions Regulator in the United Kingdom or any successor body thereto, subject to the other terms, conditions and exclusions of this **FLI Coverage Section**.

(jj)  " **Voluntary Compliance Loss** " means fines, penalties, sanctions, and reasonable fees, costs or expenses related to the assessment of or correction of a **Plan's** non-compliance in accordance with any **Voluntary Compliance Program** and which are incurred during the **Policy Period** (or during the policy period of a policy issued by the Insurer of which this policy is a continuous renewal). **Voluntary Compliance Loss** shall not include any compensation of any **Individual Insureds** or any employee of an **Insured**.

(kk)  " **Voluntary Compliance Program** " means any voluntary compliance resolution program or similar voluntary settlement program administered by the DOL, IRS, PBGC or other similar governmental authority or any similar program administered by any governmental authority located outside the United States of America, to correct any inadvertent non-compliance by a Plan, including, but not limited to:

    (i)  Employee Plans Compliance Resolution System;

    (ii)  Delinquent Filer Voluntary Compliance Program;

    (iii)  Voluntary Fiduciary Correction Program;

    (iv)  Premium Compliance Evaluation Program; and

    (v)  Participant Notice Voluntary Correction Program.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(ll)   " **Voluntary Fiduciary Correction Loss** " means damages, **Defense Costs** and **Consulting Fees** incurred in connection with the **DOL** Voluntary Fiduciary Correction Program as set forth in the Federal Register, resulting from an inadvertent **Breach of Fiduciary Duty** occurring during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal), provided that such compliance with the **DOL's** Voluntary Fiduciary Correction Program results in the **Insured** obtaining a "No Action" letter from the **DOL**; *provided, however,* **Voluntary Fiduciary Correction Loss** shall not include:

(i)   civil or criminal fines or penalties imposed by law;

(ii)   punitive or exemplary damages;

(iii)   the multiplied portion of multiplied damages;

(iv)   taxes or tax penalties;

(v)   any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**;

(vi)   **Benefits**, or that portion of damages equal to such **Benefits**;

(vii)   matters of which the **Insured** had knowledge prior to the inception date of this **FLI Coverage Section** or the first policy issued by the **Insurer** to the particular **Named Entity** of which this **FLI Coverage Section** is a continuous renewal; or

(viii)   matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(mm)   " **Welfare Plan** " means a welfare plan as defined in **Employee Benefit Law** .

(nn)   " **Wrongful Act** " means:

(i)   a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; including, but not limited to, the improper selection of or inadequate monitoring of third-party service providers; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, but only with respect to a **Plan**;

(ii)   any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a **Plan**:

*Archive Copy*
All rights reserved
* Subject to Protective Order *

**AIGS.000320**

(1)     counseling employees, participants and beneficiaries;

(2)     providing interpretations;

(3)     handling of records;

(4)     activities effecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan**;

(5)     complying with **HIPAA Privacy Regulations**; or

(6)     in a settlor capacity;

or any matter claimed  against an **Insured**  solely by reason  of his, her  or its status as an administrator, but only with respect to a **Plan**; and

(iii)     as respects  an **Individual Insured**, any  matter claimed  against  him  or her arising out  of  his  or  her  service  as  a **Fiduciary**  or administrator  of any multiemployer plan as  defined by  **ERISA**, but  only if such  service is  at the specific written request or direction of the **Company** and such  multiemployer plan is added by specific written endorsement  attached to this **FLI Coverage Section**, identified as a multiemployer plan and any required premium is paid. In no event shall coverage under this **FLI Coverage Section** extend to a **Claim** against a multiemployer plan itself,  its contributing employer(s) or  any other fiduciaries or administrators of such plan, other than an **Individual Insured.**

## 4.     WORLDWIDE EXTENSION

For **Claims** made and maintained in a **Foreign  Jurisdiction** for **Wrongful Acts** committed in such  **Foreign Jurisdiction**, the  **Insurer** shall  apply to such  **Claims** the provisions of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to such **Insured**  in the  **Foreign  Jurisdiction**; *provided,  however,* this paragraph  shall apply only to  provisions more  favorable by  virtue of  insuring clauses,  extensions, definitions, exclusions, pre-authorized securities or other defense counsel, discovery or extended  reporting  period, notice  and  authority, dispute  resolution  process or order of payments  provisions, if any,  of the **Foreign  Policy** when compared  to the same or similar clauses of this **FLI Coverage Section**. This paragraph  shall not apply to excess provisions or policy provisions  that address non-renewal, duty to  defend, defense within or without limits, taxes, claims made  and reported provisions or any other provision of this policy intended to govern coverage worldwide.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

All premiums, limits, retentions, **Loss** and other amounts under this **FLI Coverage Section** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **FLI Coverage Section** (subject to the terms, conditions and limitations of this **FLI Coverage Section**) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the particular **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer**'s obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

5.   **EXCLUSIONS**

Solely with respect to this **FLI Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured:**

(a)   arising out of, based upon or attributable to the gaining of any personal profit or advantage to which any final non-appealable adjudication adverse to the Insured in the underlying action establishes that the **Insured** was not legally entitled; *provided, however,* this exclusion shall not apply to **Defense Costs** incurred prior to such final non-appealable adjudication.

(b)   arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act, or any knowing or willful violation of any statute, rule or law, including, but not limited to **Employee Benefit Law** by the **Insured** if any final non-appealable adjudication adverse to the **Insured** in the underlying action establishes that such criminal or deliberate fraudulent act was committed; *provided, however,* this exclusion shall not apply to **Defense Costs** incurred prior to such final non-appealable adjudication.

(c)   for discrimination in violation of any law; *provided, however,* this exclusion shall not apply to discrimination in violation of **Employee Benefit Law**;

(d)   alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act** alleged or contained, in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **FLI Coverage Section** is a renewal or replacement of in whole or part or which it may succeed in time; *provided, however,* that this EXCLUSION (d) shall not apply if a notice of circumstance was rejected for lack of specificity under such prior policy;

*Archive Copy*
* Subject to Protective Order *
® All rights reserved

(e)     alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior:

(i)     litigation against an **Insured**; or

(ii)    administrative or regulatory proceeding or investigation of an **Insured**,

of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)     for failure to fund a **Plan** in accordance with **Employee Benefit Law** or the **Plan** instrument, or the failure to collect contributions owed to the **Plan**; *provided, however,* this exclusion shall not apply to:

(i)     **Defense Costs**; or

(ii)    the portion of **Loss** that is payable as a personal obligation or an **Individual Insured**;

(g)     for bodily injury, sickness, disease, death or emotional distress of any person, or damage to, loss of use of or destruction of any tangible property; *provided, however,* this exclusion shall not apply to (i) **Defense Costs** incurred in the defense of a **Claim** for **Breach of Fiduciary Duty**; or (ii) the coverage afforded under Clause 11(C), Managed Care Coverage.

(h)     alleging, arising out of, based upon or attributable to any **Wrongful Act** as respects the **Plan** taking place at any time when the **Company** did not sponsor such **Plan** or when the **Individual Insured** was not a **Fiduciary**, administrator, trustee, director(s), officer(s) or employee of the **Company** or, if applicable, a **Plan**; or

(i)     for any **Wrongful Act(s)** of a particular **Named Entity**, or any **Insured** thereof, which occurred prior to the applicable **Prior Acts Date** for such **Named Entity** as set forth in the respective **Program Participants Endorsement**.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 5(d) and 5(e) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

6.      **LIMIT OF LIABILITY**

The following provision shall  apply in addition to  the provisions of Clause  4. LIMIT OF LIABILITY of the **General Terms and Conditions** :

**VOLUNTARY COMPLIANCE LOSS SUBLIMIT OF LIABILITY**

The maximum  limit  of  the **Insurer's** liability for all **Voluntary  Compliance  Loss** occurring during  the **Policy Period**  or  the **Discovery Period**  (if  applicable), in  the aggregate, shall be the  amount set forth in  Item 3(c) of each  **Program Participants Endorsement** (" **Voluntary  Compliance  Loss  Sublimit  of  Liability** "). The **Voluntary Compliance Loss Sublimit of Liability**  shall be  part of,  and not  in addition  to, the **Designated Policy Aggregate Limit  of Liability**  or  any **Designated Separate  Limit of Liability** or **Designated Shared Limit of Liability**  applicable  to  this **FLI Coverage Section**, and  shall  in  no  way serve  to  increase  the **Insurer's Designated Policy Aggregate Limit of Liability**  or any **Designated Separate  Limit of Liability**  or **Designated Shared Limit of Liability** as stated therein.

**HIPAA PENALTIES SUBLIMIT OF LIABILITY**

The maximum limit of the **Insurer's** liability for all **HIPAA Penalties**, in the aggregate, shall be the amount set forth in Item 3(d) of each **Program Participants Endorsement** (" **HIPAA Penalties  Sublimit of  Liability** ").  The **HIPAA Penalties  Sublimit of  Liability** shall be part  of, and  not in  addition to,  the **Designated Policy  Aggregate Limit  of Liability** and any **Designated  Separate Limit of  Liability**  or **Designated  Shared Limit of Liability**  applicable  to  this **FLI  Coverage Section**,  and shall  in no  way serve  to increase the **Insurer's  Designated Policy  Aggregate Limit  of  Liability**  or  any **Designated Separate  Limit of Liability**  or **Designated Shared Limit of  Liability** as stated therein.

**ADDITIONAL SUBLIMITS OF LIABILITY**

Each of  the following  sublimits  of liability  is  the maximum  limit  of the **Insurer's** liability per Program  Participants Endorsement for  all **Loss** under  this policy that  is subject to that  sublimit of liability.  Each such  sublimit of liability  shall be part  of, and not in  addition to,  the **Designated Policy  Aggregate Limit  of Liability** and any **Designated  Separate Limit of  Liability**  or **Designated  Shared Limit of  Liability** applicable to  this **FLI  Coverage Section**,  as  set forth  in Item  2  of each  **Program Participants Endorsement,** and  shall  in  no  way serve  to increase  the **Insurer's Designated Policy Aggregate Limit  of Liability** or  any **Designated Separate  Limit of Liability** or **Designated Shared Limit of Liability** as stated therein.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved ©

<u>Additional Sublimits of Liability:</u>

| | |
|---|---|
| *Section 502(c) Penalties:* | *$250,000* or 5% of the applicable Designated Separate Limit of Liability or Designated Shared Limit of Liability, whichever is less |
| *Pension Protection Act Penalties:* | *$250,000* or 5% of the applicable Designated Separate Limit of Liability or Designated Shared Limit of Liability, whichever is less |
| *Health Care Reform Penalties:* | *$250,000* or 5% of the applicable Designated Separate Limit of Liability or Designated Shared Limit of Liability, whichever is less |
| *Section 4975 Penalties:* | *$250,000* |
| *Pension CrisisFund* SM : | *$100,000* |

**7.     RETENTION CLAUSE**

The following provision shall apply in addition to the provisions of Clause 5. RETENTION CLAUSE of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the Retention amount stated in Item 6 of the respective **Program Participants Endorsement**, such Retention amount to be borne by the **Insured** and shall remain uninsured, with regard to:

(a)     all **Indemnifiable Loss**; and

(b)     **Loss** of a **Company**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

Notwithstanding the foregoing, no Retention is applicable to **Pension Crisis Loss**, **Voluntary Compliance Loss**, **Pension Protection Act Penalties**, **Health Care Reform Penalties**, **Section 4975 Penalties**, **HIPAA Penalties** or **Section 502(c) Penalties**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

8.    **PRE-AUTHORIZED DEFENSE ATTORNEYS**

This Clause 8 applies only to:

(a)      a **Claim** brought by any government entity;

(b)      a request for coverage for a **Voluntary Compliance Loss**; or

(c)      a **Claim** brought in the form of a class or representative action or which purports to be brought as a class or representative action.

Affixed as Appendix C hereto and made a part of this **FLI Coverage Section** is a list of Panel Counsel law firms ("**Panel Counsel Firm(s)**") from which a selection of legal counsel shall be made to conduct the defense of any **Claim** against an **Insured** to which this Clause 8 applies and pursuant to the terms set forth in this Clause.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Insured**. In addition, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, the **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The selection of a **Panel Counsel Firm** from the attached list to defend the **Claim** against the **Insureds** shall not be restricted to the jurisdiction in which the **Claim** is brought.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Insureds' Representative**. At the request of a particular **Named Entity** or the **Insureds' Representative**, the **Insurer** may in its discretion add one or more law firms to the attached list of **Panel Counsel Firms** for the purposes of defending the **Claim** made against the **Insureds**. The list of **Panel Counsel Firms** may also be amended to add, at the sole discretion of the **Insurer**, a non-**Panel Counsel Firm** for the purpose of acting as "local counsel" to assist an existing **Panel Counsel Firm**, which **Panel Counsel Firm** will act as "lead counsel" in conducting the defense of the **Claim**, for **Claims** brought in a jurisdiction in which the chosen **Panel Counsel Firm** does not maintain an office.

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

9.    **WAIVER OF RECOURSE**

Except for the **Insurer's** subrogation rights set forth in Clause 9 of the **General Terms and Conditions**, the **Insurer** shall have no right of recourse against an **Insured** unless required pursuant to any **Employee Benefit Law**.

It is further provided that in the event of any recovery under this Clause 9, any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** shall be restored to the extent of such recovery after subtracting any costs, expenses or reimbursements incurred by the **Insurer** in connection therewith.

10.   **ORDER OF PAYMENTS**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this **FLI Coverage Section**, then the **Insurer** shall in all events:

(a)    first, pay **Loss** for which coverage is provided under this **FLI Coverage Section** for any **Individual Insured**;

(b)    second, only after payment of **Loss** has been made pursuant to Clause 10(a) above with respect to whatever remaining amount of any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** is available after such payment, pay the **Loss** of any covered **Plan**; and

(c)    then, only after payment of **Loss** has been made pursuant to Clause 10(a) and 10(b) above, with respect to whatever remaining amount of any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** is available after such payment, shall payment for the **Company** be made for such other **Loss** for which coverage is provided under this **FLI Coverage Section**.

11.   **FIDUCIARY EXTENSIONS OF COVERAGE**

A.    **Disproven Allegation Protection**

In the event that an allegation which triggers potential coverage under this policy is disproven, so that a **Claim** is outside the scope of coverage under this policy, the Insurer shall not seek recovery of amounts that it has previously paid. Situations that would trigger this protection include, but are not limited to when it is proven that:

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(1)     an **Executive** or employee of the **Company** who was alleged to be a **Plan** fiduciary was not in fact a **Plan** fiduciary;

(2)     an **Insured's** alleged breach of fiduciary duty was in fact a settlor act;

(3)     an alleged **Plan** was not a plan or was not a covered **Plan**; or

(4)     a **Company** alleged to be the sponsor of a **Plan** was not in fact the sponsor of such plan.

**B.     Independent Fiduciary Fees**

**Loss** shall include reasonable and necessary fees and expenses of an independent fiduciary if such fiduciary is retained to review a proposed settlement of a covered **Claim**. **Loss** shall also include reasonable and necessary fees and expenses of any law firm hired by such independent fiduciary to facilitate a review of such proposed settlement.

**C.     Managed Care Coverage**

This policy shall pay the **Loss** of an **Insured** arising from a **Claim** made against such **Insured** alleging improper or negligent selection of a **Managed Care Services** provider or denial or delay of any benefit under a health care, pharmaceutical, vision, or dental **Plan** of an Insured.

**D.     LMRA Coverage**

If, and during the time that, coverage is provided under this policy, then this policy shall also pay the **Loss** of an **Insured** arising from an allegation that such **Insured** violated Section 301 of the Labor Management Relations Act ("LMRA") relating to alleged violations of collectively bargained contracts in connection with a **Plan**.

*Archive Copy*
* Subject to Protective Order *
All rights reserved

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website and click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                    © All rights reserved.

*Archive Copy*

**BRANCH**                 * Subject to Protective Order *

**APPENDIX B**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Public and Private Companies (Employment Practices Liability)" link and then select the applicable Panel Counsel Directory, either the "4-97 Monoline/Public Companies" link or the "Private Edge" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                    © All rights reserved.

*Archive Copy*

**BRANCH**                    * Subject to Protective Order *

AIGS.000330

**APPENDIX C**
**EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY**
**PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows:   The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at AIG Panel Counsel Directory http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Fiduciary Liability (ERISA and Non-ERISA)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

99544  (7/08)                              Page 1 of 1

*Archive Copy*

**BRANCH**
* Subject to Protective Order *
**AIGS.000331**

**POLICYHOLDER NOTICE**
**REGARDING**
**E- DISCOVERY CONSULTANT SERVICES**

You are hereby notified that the Insureds under the attached policy are entitled to retain the services of a pre- approved E- Consultant Firm from the E- DISCOVERY CONSULTING FIRMS listed below at the rates negotiated by the Insurer for any Claim covered under the policy in which E- Discovery is required or becomes necessary.

For the purpose of the E- Discovery Consultant Services discussed in this notice, the following definitions shall apply:

(a)     "E- Consultant Firm" means any E- DISCOVERY CONSULTING FIRMS listed below. Any "E- Consultant Firm" may be hired by an Insured to perform E- Discovery Consultant Services without further approval by the Insurer.

(b)     "E- Discovery" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c)     "E- Discovery Loss" means the reasonable and necessary consulting fees for the E- Discovery Consultant Services provided solely to the Insured(s) by an E- Consultant Firm.

Provided, however, E- Discovery Loss shall not include any costs of discovery other than E- Discovery Loss.

(d)     "E- Discovery Consultant Services" means solely the following services performed by an E- Consultant Firm:

1.     assisting the Insured with managing and minimizing the internal and external costs associated with E- Discovery;

2.     assisting the Insured in developing or formulating an E- Discovery strategy which shall include interviewing qualified and cost effective E- Discovery vendors;

3.     serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E- Discovery strategy; and

4.     such other services provided by the E- Consultant Firm that the Insured, Insurer and E- Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

PLEASE NOTE: The Insurer shall only be liable for the amount of E- Discovery Loss arising from a Claim (with the exception of a Securities Claim) under the attached policy that is in excess of the applicable Retention amounts stated in Item 4 of the Declarations. The E- DISCOVERY CONSULTANT SERVICES COVERAGE provided for Securities Claims shall be governed by the terms, conditions and exclusions set forth in the attached policy. In all events, the Insurer shall not waive any of the Insurer's rights under this policy or at law.

E- DISCOVERY CONSULTING FIRMS

The list of approved E- Consultant Firms is accessible through our online directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online E- Consultant Firm Directory, please go to the website and click on the "**e- Consultant Panel Members**" link.

References in this policy to the list of E- Consultant Firms or related appendices are deemed amended to refer to the applicable online E- Consultant Firm Directory at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

© All rights reserved.

* Subject to Protective Order *

## APPENDIX D
## CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION

**I.    DEFINITIONS**

(a)    "**Crisis Management Event**" means one of the following events which, in the good faith opinion of the **Company**, did cause or is reasonably likely to cause a **Material Effect**:

1.    <u>Management Crisis</u>:
The death, incapacity or criminal indictment of any **Executive** of the **Company**, or any **Employee** on whom the **Company** maintains key person life insurance.

2.    <u>Employee Layoffs</u>:
The public announcement of layoffs of **Employees** of the Company.

3.    <u>Debt Default</u>:
The public announcement that the **Company** had defaulted or intends to default on its debt.

4.    <u>Bankruptcy</u>:
The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

5.    <u>Mass Tort</u>:
The public announcement or accusation that a **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

6.    <u>Regulatory Crisis</u>:
The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against a **Company**.

The descriptions in the headings of the **Crisis Management Events** are solely for convenience and form no part of the terms and conditions of coverage.

A **Crisis Management Event** shall first commence when the **Company** or any of its **Executives** shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Company** that the crisis no longer exists or when the **Crisis Management Fund** has been exhausted.

(b)    "**Crisis Management Firm**" means any public relations firm, crisis management firm or law firm listed below in Section III of this Appendix D.  Any "**Crisis Management Firm**" may be hired by the **Company** or its **Executives** or **Employees** to perform **Crisis Management Services** without further approval by the Insurer.

(c)    "**Crisis Management Loss**" means the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an Insured arising from the **Crisis Management Event** and, in the case where a

*Archive Copy*
* Subject to Protective Order *

**Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

    (1)    amounts for which the **Company** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Company** arising from a **Crisis Management Event**; and

    (2)    amounts for which the **Company** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by **Executives**, **Employees** or agents of the **Company** or the **Crisis Management Firm**, in connection with the **Crisis Management Event**.

(d)    "**Crisis Management Services**" means those services performed by a **Crisis Management Firm** in advising the **Company** or any of its **Executives** or **Employees** on minimizing potential harm to the **Company** arising from the **Crisis Management Event**, including but not limited to maintaining and restoring public confidence in the **Company**.

(e)    "**Material Effect**" means the publication of unfavorable information regarding the **Company** which can reasonably be considered to lessen public confidence in the competence of the **Company**. Such publication must in occur in either:

    (1)    a daily newspaper of general circulation in the geographic area of the **Company**, or

    (2)    a radio or television news report on a **Company** received in the geographic area of the **Company**.

## II.   <u>EXCLUSIONS</u>

The term **Crisis Management Event** shall not include any event relating to:

    1.    any pending or prior litigation as of the **Continuity Date** for the **D&O Coverage Section** indicated in Item 3 of the Declarations;

    2.    any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

    3.    the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

    4.    the hazardous properties of nuclear materials.

## III.   <u>PRE-APPROVED CRISIS FIRMS</u>

For all **Crisis Management Events**, **Crisis Management Firm(s)** means any public relations firm listed in (1) - (8) below:

1.    Abernathy MacGregor Group, Inc.
    501 Madison Avenue
    New York, New York  10022
    (212) 371-5999
    Contacts: James T. MacGregor    (jtm@abmac.com)
           Rhoda Barnat    (rb@abmac.com)

* Subject to Protective Order *

2.  Burson- Marsteller
    230 Park Avenue South
    New York, New York  10003- 1566
    (212) 614- 5236
    Contact:  Michael Claes            (Michael.Claes@bm.com)

3.  Kekst and Company
    437 Madison Avenue
    New York, New York  10022
    (212) 521- 4800
    Contacts: Jim Fingeroth            (Jim- Fingeroth@kekst.com)
              Lissa Perlman           (Lissa- Perlman@kekst.com)

4.  Patton Boggs, LLP
    2550 M Street, N.W.
    Washington D.C.  20037
    (202) 457- 6040
    Contact:  Thomas Boggs, Esq.       (tboggs@pattonboggs.com)

5.  Reputation Partners, LLC
    105 West Adams Street, Suite 2220
    Chicago, IL  60603- 6265
    (312) 222- 9887
    Contacts: Nick Kalm                (nick@reputationpartners.com)
              Jane Devron              (jane@reputationpartners.com)

6.  Robinson Lerer & Montgomery
    1345 Avenue of The Americas, 4th Floor
    New York, New York  10105
    646- 805- 2000
    Contact:  Michael Gross            (mgross@rlmnet.com)

7.  Sard Verbinnen & Co.
    630 Third Avenue, 9th Floor
    New York, New York  10017
    (212) 687- 8080
    Contacts: George Sard              (gsard@sardverb.com)
              Paul Verbinnen           (pverbinnen@sardverb.com)

8.  Sitrick And Company
    1840 Century Park East, Suite 800
    Los Angeles, CA  90067
    (310) 788- 2850
    Contact:  Michael Sitrick          (mike sitrick@sitrick.com)

* Subject to Protective Order *
AIGS.000335

ENDORSEMENT# *1*

This endorsement, effective at *12:01 am   March 31, 2017*          forms a part of
Policy number *01-308-60-68*
Issued to: *SEE PROGRAM PARTICIPANT ENDORSEMENT*

By: *AIG Specialty Insurance Company*

Product Name: *PrivateEdge Plus*

### ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

*END 001*

89644 (6/13)          *ArcBiRANCGHy*          Page 1 of 1                    **AIGS.000336**

* Subject to Protective Order *

**ENDORSEMENT#** *2*

This endorsement, effective *12:01 am     March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address:

    c-claim@AIG.com

    Your email must reference the policy number for this policy. The date of the Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)  "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

    (b)  "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

    (c)  "Policy" means the policy, bond or other insurance product to which this endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
*END 002*

*BRANCH Archive Copy*
* Subject to Protective Order *
**AIGS.000337**

**ENDORSEMENT#** *3*

This endorsement, effective *12:01 am    March 31, 2017*            forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**
**(ALL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that the
**Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**
made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly
     or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not
     limited to:

     (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or
           on behalf of, the **Company**, or discharged or dispersed therefrom; or

     (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time
           possessed, handled, used, processed, stored, transported or disposed of by or
           on behalf of the **Company**; or

     (3)   the furnishing by an **Insured** or the **Company** of services, materials, parts or
           equipment in connection with the planning, construction, maintenance,
           operation or use of any **Nuclear Facility**; or

     (4)   **Claims** for damage or other injury to the **Company** or its shareholders which
           allege, arise from, are based upon, are attributed to or in any way involve,
           directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear
           Energy Liability Insurance Association, Mutual Atomic Energy Liability
           underwriters, or Nuclear Insurance Association of Canada, or would be insured
           under any such policy but for its termination or exhaustion of its limit of
           liability; or,

     (2)   with respect to which: (a) any person or organization is required to maintain
           financial protection pursuant to the Atomic Energy Act of 1954, or any law
           amendatory thereof, or (b) the **Insured** is, or had this policy not been issued
           would be, entitled to indemnity from the United States of America, or any
           agency thereof, under any agreement entered into by the United States of
           America, or any agency thereof, with any person or organization.

As used in this endorsement:

"**Hazardous Properties**" include radioactive, toxic or explosive properties.

"**Nuclear Facility**" means:

     (a)   any nuclear reactor;

     (b)   any equipment or device designed or used for

© All rights reserved.
*END 003*

* Subject to Protective Order *

## ENDORSEMENT# *3*   (continued)

(1)   separating the isotopes of uranium or plutonium,

(2)   processing or utilizing spent fuel, or

(3)   handling, processing or packaging wastes;

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"**Nuclear Material**" means source material, special nuclear material or byproduct material.

"**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material.

"**Source Material**," "**Special Nuclear Material**," and "**Byproduct Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

"**Waste**" means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

Or Countersignature (In states where applicable)

© All rights reserved.

*END 003*

* Subject to Protective Order *

**AIGS.000339**

ENDORSEMENT# *4*

This endorsement, effective *12:01 am    March 31, 2017*        forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### ENTITY V. INSURED EXCLUSION ENDORSEMENT
### (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 4. EXCLUSIONS of the **D&O Coverage Section**, paragraph (i) is deleted in its entirety and replaced as follows:

(i) which is brought by or on behalf of a **Company** provided, however, this exclusion shall not apply to:

(i)   in any bankruptcy, insolvency, or liquidation proceedings brought by or against a **Company**, any **Claim** brought by the examiner, trustee, trust, receiver, liquidator, rehabilitator, conservator, creditors' committee or any comparable authority (or any assignee thereof) of such **Company** if any, or the debtor-in-possession;

(ii)   any **Claim** brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(iii)   any **Claim** brought by or with the assistance, participation, solicitation or intervention of one particular **Named Entity** listed in a **Program Participants Endorsement** or by or with the assistance, participation, solicitation or intervention of a **Subsidiary** or **Insured** thereof, against a different respective **Named Entity** listed in a **Program Participants Endorsement**, or a **Subsidiary** or Insured of such different respective **Named Entity**, so long as such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Insured's Representative** and/or any director, officer, partner, management committee members or members of the Board of Managers of the **Insured's Representative**;

(iv)   any **Claim** against any **Employed Lawyer**;

(v)   any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

MNSCPT      *BRANCH*     *Archive Copy*  *END 4*                        **AIGS.000340**
* Subject to Protective Order *

**ENDORSEMENT# *4***     **(Continued)**

This endorsement, effective  *12:01 am*     *March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

       (vi)     any **Claim** brought by or with the solicitation, assistance,
participation or intervention of an **Insured Person** who is engaging in
any protected activity specified in 18 U.S.C. 1514A(a)
("whistleblower" protection pursuant to the Sarbanes-Oxley Act of
2002), the Dodd Frank Act or any other protected activity specified
in any other "whistleblower" protection pursuant to any state, local
or foreign laws;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

 

 

 

 

_____

                 AUTHORIZED REPRESENTATIVE
           Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT       **BRANCH**      **END 4**
          ***Archive Copy***

**AIGS.000341**

\* Subject to Protective Order \*

**ENDORSEMENT# 5**

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

## FLSA AND RELATED EXCLUSIONS AMENDED
## (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood  and agreed that the **D&O Coverage Section** (if purchased) and the **EPL Coverage Section** (if purchased) are  amended as follows:

1. Clause 4. EXCLUSIONS of  the **D&O  Coverage Section**  (if purchased) is amended  by deleting Exclusion (o) in its entirety.

2. Clause 3. EXCLUSIONS of  the **EPL Coverage  Section**  (if purchased) is  amended by deleting Exclusions (g) and (h) in their entirety.

3. In Clause 4. EXCLUSIONS  of the **D&O Coverage  Section** (if purchased)  and Clause 3. EXCLUSIONS of  the **EPL  Coverage Section**  (if purchased),  the following  exclusion is added at the end thereof:

   (FL-1)    for violation(s) of  any of the responsibilities,  obligations or duties  imposed by the Employee Retirement  Income Security Act  of 1974, the  Fair Labor Standards Act  (except  the Equal  Pay  Act), the  National  Labor Relations Act,  the  Worker  Adjustment  and  Retraining  Notification Act,  the Consolidated Omnibus Budget Reconciliation  Act, the Occupational  Safety and Health  Act, any  rules or  regulations of  the foregoing  promulgated thereunder, and amendments thereto  or any similar  federal, state, local  or foreign statutory law or common law (hereinafter "  **FLSA Claims**").

   It is acknowledged that **Claims** for violation(s) of any of the responsibilities, obligations  or duties  imposed by  "similar federal,  state, local  or foreign statutory law  or common  law," as  such quoted language  is used  in the immediately-preceding paragraph,  include,  without limitation,  any  and all **Claims** which in whole  or in part  allege, arise  out of, are based  upon, are attributable to,  or are in any way  related  to any  of the  circumstances described in any of the following:

      (1)   the refusal, failure  or inability of any **Insured(s)**  to pay wages or overtime pay (or  amounts representing such  wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

* Subject to Protective Order *

ENDORSEMENT# *5*    (Continued)

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of policy number   *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

> (2)  improper deductions from  pay taken by any  **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

> (3)  failure to  provide or  enforce legally required  meal or  rest break periods;

> Notwithstanding the  foregoing, with  respect to  the  **EPL Coverage Section**, this  exclusion (FL-1)  shall  not  apply  to  the  extent  that a **Claim**  is  for **Retaliation**.

> Notwithstanding the foregoing, with respect to the  **EPL Coverage Section** and the **D&O Coverage Section**,  this exclusion (FL-1)  shall not apply  to **Defense Costs**.

5.   Clause 4. **LIMIT  OF  LIABILITY** ( **FOR ALL LOSS IN THE  AGGREGATE UNDER THIS POLICY AND UNDER  EACH INDIVIDUAL COVERAGE  SECTION - INCLUDING DEFENSE COSTS)** of the  **General Terms and Conditions**  is hereby  amended  by inserting the following at the end thereof:

> Solely with  respect  to  **Loss**  as may  otherwise been  covered  under the  **EPL Coverage Section**, the following shall apply:

> PER PROGRAM  PARTICIPANT FLSA  CLAIMS  DEFENSE COSTS  SUBLIMIT OF LIABILITY

> The maximum limit  of the  **Insurer's** liability  for all  **Defense Costs**  arising from any  **FLSA Claim**  against any  **Program Participant**  under  the  **EPL Coverage Section**  shall be $100,000 (hereinafter called the " **Per Program Participant FLSA Claims Sublimit of Liability** ").

> Both the  **Per Program Participant FLSA Claims  Defense Costs  Sublimit of Liability** and the **Aggregate FLSA Claims Defense Costs Sublimit of Liability**  shall be  part  of,  and not  in addition to,  the  **Designated Policy  Aggregate Limit of Liability**  stated in  the  Item  2  of  the  **Program Participant  Endorsement**  and any **Designated Separate  Limit  of Liability**  or  **Designated Shared  Limit of Liability** applicable to the  **EPL Coverage Section**,  and shall in  no way serve  to increase such **Designated Separate Limit of  Liability, Designated Shared Limit of  Liability** or **Designated Policy Aggregate Limit of Liability** .

*BRANCH*  *Archive Copy* *END 5*        **AIGS.000343**
* Subject to Protective Order *

**ENDORSEMENT# 5**   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of policy number *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

AGGREGATE FLSA CLAIMS DEFENSE COSTS SUBLIMIT OF LIABILITY

The maximum limit of the **Insurer's** liability for all **Defense Costs** arising from any **FLSA Claims** for all **Program Participants** under the **EPL Coverage Section** is $1,000,000 (hereinafter called the "**Aggregate FLSA Claims Defense Costs Sublimit of Liability**").

This **Aggregate FLSA Claims Defense Costs Sublimit of Liability** is part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** stated in the Item 2 of the **Program Participant Endorsement** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to the **EPL Coverage Section**, and shall in no way serve to increase such **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Designated Policy Aggregate Limit of Liability**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH**   **END 5**
*Archive Copy*

**AIGS.000344**

* Subject to Protective Order *

**ENDORSEMENT# *6***

This endorsement, effective *12:01 am      March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - 432002 LLC.

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:       432002 LLC.

        **MAILING ADDRESS**:   4600 MADISON AVE STE 1000
                                       KANSAS CITY, MO 64112

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :       $15,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a. Crisis Management Fund for D&O:                   $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:     $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                 $1,000,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       **ompany** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the " **Side A Excess Limit of**
       **Liability**")

* Subject to Protective Order *

**ENDORSEMENT# *6*** **(Continued)**

This endorsement, effective *12:01 am* *March 31, 2017* forms a part of
policy number *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

Item 4. **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 01/01/2002 |
| EPLI Coverage Section: | 01/01/2002 |
| FLI Coverage Section: | 01/01/2002 |

Item 5. **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | N/A |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6. **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $125,000 |
| EPLI Coverage Section: | $100,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**                    $35,000

Item 8.

**ANNUAL PREMIUM**          $35,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        *BRANCH*        *END 6*
            *Archive Copy*
* Subject to Protective Order *
AIGS.000346

**ENDORSEMENT# 7**

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - ACCESS CLINICAL PARTNERS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:       ACCESS CLINICAL PARTNERS, LLC

**MAILING ADDRESS**:   873 SANTA CRUZ AVENUE, SUITE 202
MENLO PARK, CA 94025

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :   $7,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $6,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

|   |   |
|---|---|
| a. Crisis Management Fund for D&O: | $50,000 |
| b. Costs of Investigation Coverage Sublimit for D&O: | $250,000 |
| c. Voluntary Compliance Loss Sublimit of Liability for FLI: | $100,000 |
| d. HIPAA Penalties Sublimit of Liability for FLI: | $250,000 |
| e. Contract Claim Defense Costs Coverage Sublimit of Liability for D&O: | $3,000,000 |
| f. Side A Excess Limit of Liability | $1,000,000 |

excess aggregate limit of liability for all
**Non-Indemnifiable Loss** solely for **Executives** of a C
ompany (including **Defense Costs**) under the **D&O
Coverage Section** (herein the " **Side A Excess Limit of
Liability**")

* Subject to Protective Order *

**ENDORSEMENT#** *7*    **(Continued)**

This endorsement, effective  *12:01 am*    *March 31, 2017*    forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

     D&O Coverage Section:       08/12/2013 for $2,000,000 Limit of Liability
                                       03/04/2014 for $3,000,000 Excess
                                       $2,000,000 Limit of Liability
                                       02/28/2014 for $1,000,000 Excess
                                       $5,000,000 Limit of Liabilty

     EPLI Coverage Section:       08/12/2013 for $2,000,000 Limit of Liabilty
                                       03/04/2014 for $3,000,000 Excess
                                       $2,000,000 Limit of Liability

     FLI Coverage Section:        03/04/2014

Item 5.   **PRIOR ACT DATES**:

     D&O Coverage Section:       03/04/2014
     EPLI Coverage Section:      N/A
     FLI Coverage Section:       N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

     D&O Coverage Section:       $25,000
     EPLI Coverage Section:      $25,000
     FLI Coverage Section:       $  0

     *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

     **PREMIUM**               $35,000

Item 8.

     **ANNUAL PREMIUM**     $35,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
               AUTHORIZED REPRESENTATIVE
          Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT    **BRANCH    END 7**
          *Archive Copy*

* Subject to Protective Order *

**ENDORSEMENT# 8**

This endorsement, effective *12:01 am     March 31, 2017*          forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

## ADDITIONAL INSUREDS - LISTED AFFILIATES
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement #7, Program Participant Endorsement - ACCESS CLINICAL PARTNERS, LLC, solely with respect to coverage as is provided under the **Coverage Sections** specified in the schedule below, Clause 2. Definition of " **Company**" of the **General Terms and Conditions**, is amended to include the following entity(ies), each of which is an " **Affiliate**" (as defined below), subject to each such **Affiliate's Continuity Date**:

<u>**APPLICABLE COVERAGE SECTION(S) :**</u>

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

| AFFILIATE | CONTINUITY DATE |
|---|---|
| True North Urgent Care, LLC | 08/12/2013 D&O |
| | 08/12/2013 EPL |
| | 03/04/2014 FLI |

It is further understood and agreed that, for the purpose of the applicability of the coverage provided by this endorsement, the **Affiliates** listed above and the **Company** will be conclusively deemed to have indemnified the **Individual Insureds** and other persons afforded coverage by this endorsement to the extent that such **Affiliates** or the **Company** is permitted or required to indemnify such persons pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Company**. The **Affiliates** and the **Company** hereby agree to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

It is further understood and agreed that, solely with respect to any coverage granted by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against the **Affiliates** listed above or any **Clams** made against any **Individual Insured** of such **Affiliate** listed above:

(1)     alleging, arising out of, based upon or attributable to, as of such **Affiliate's** respective **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, or alleging or derived from a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; and

101279 (03/09) *BRANCH*   Archive Copy *END 8*                **AIGS.000349**

* Subject to Protective Order *

**ENDORSEMENT# *8*** **(Continued)**

This endorsement, effective *12:01 am*     *March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

> (2)    alleging any **Wrongful Act** occurring prior to such **Affiliate's** respective **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

In all events, coverage as is afforded under this endorsement with respect to any **Claim** made against any **Affiliate** listed above or any **Individual Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the respective time such **Affiliate** became an **Affiliate** and prior to the time that such **Affiliate** ceased to be an **Affiliate**.

As used in this endorsement, the term "**Affiliate**" means (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

101279 (03/09)   ***BRANCH***          ***END 8***

***Archive Copy***

* Subject to Protective Order *

**AIGS.000350**

**ENDORSEMENT# *9***

This endorsement, effective *12:01 am      March 31, 2017*      forms a part of policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - ADVANTEK WASTE MANAGEMENT SERVICES LLC

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        ADVANTEK WASTE MANAGEMENT SERVICES LLC

 **MAILING ADDRESS**:   3300 S. GESSNER RD, STE 257
 HOUSTON, TX 77062

 **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :        $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

  a. Crisis Management Fund for D&O:          $50,000
  b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
  c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
  d. HIPAA Penalties Sublimit of Liability for FLI:      $250,000
  e. Contract Claim Defense Costs Coverage Sublimit of Liability for D&O:   $3,000,000
  f. Side A Excess Limit of Liability          $1,000,000

 excess aggregate limit of liability for all **Non-Indemnifiable Loss** solely for **Executives** of a C ompany (including **Defense Costs**) under the **D&O Coverage Section** (herein the " **Side A Excess Limit of Liability**")

MNSCPT        **BRANCH**  *Archive Copy* **END 9**        **AIGS.000351**

* Subject to Protective Order *

**ENDORSEMENT# 9** **(Continued)**

This endorsement, effective *12:01 am*    *March 31, 2017*    forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 08/27/2014 |
| EPLI Coverage Section: | 08/27/2014 |
| FLI Coverage Section: | 08/27/2014 |

Item 5.   **PRIOR ACT DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 08/27/2014 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

|  |  |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $25,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**          $20,000

Item 8.

**ANNUAL PREMIUM**          $20,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          *BRANCH          END 9*
                        *Archive Copy*

AIGS.000352

* Subject to Protective Order *

**ENDORSEMENT# 10**

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - ALPHABET ENERGY, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        ALPHABET ENERGY, INC.

   **MAILING ADDRESS**:    26225 EDEN CLANDING RD, SUITE D
                 HAYWARD, CA 94545

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :        $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

   a. Crisis Management Fund for D&O:          $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:  N/A
   d. HIPAA Penalties Sublimit of Liability for FLI:        N/A
   e. Contract Claim Defense Costs Coverage Sublimit of      $3,000,000
      Liability for D&O:
   f. Side A Excess Limit of Liability          $1,000,000

      excess aggregate limit of liability for all
      **Non-Indemnifiable Loss** solely for **Executives** of a C
      **ompany** (including **Defense Costs**) under the **D&O
      Coverage Section** (herein the " **Side A Excess Limit of
      Liability**")

* Subject to Protective Order *

**ENDORSEMENT#** *10*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:     06/24/2016
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:     N/A
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

      D&O Coverage Section:     $25,000
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **PREMIUM**           $23,000

Item 8.

      **ANNUAL PREMIUM**    $23,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                           AUTHORIZED REPRESENTATIVE
                 Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH**   **END 10**
        *Archive Copy*

* Subject to Protective Order *

**AIGS.000354**

**ENDORSEMENT# 11**

This endorsement, effective *12:01 am   March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - ANGIES HOLDINGS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:          ANGIES HOLDINGS, LLC

   **MAILING ADDRESS**:      1918 LOOKOUT DRIVE
                     NORTH MANKATO, MN 56003

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:          $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:              $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:       $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:          $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of     $3,000,000
      Liability for D&O:
   f. Side A Excess Limit of Liability               $1,000,000

   excess aggregate limit of liability for all
   **Non-Indemnifiable Loss** solely for **Executives** of a C
   **ompany** (including **Defense Costs**) under the **D&O**
   **Coverage Section** (herein the "**Side A Excess Limit of**
   **Liability**")

* Subject to Protective Order *

**ENDORSEMENT#** *11*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 09/30/2014 |
| EPLI Coverage Section: | 09/30/2014 |
| FLI Coverage Section: | 09/30/2014 |

Item 5.   **PRIOR ACT DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 09/30/2014 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

|  |  |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $25,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**          $32,000

Item 8.

**ANNUAL PREMIUM**          $32,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          **BRANCH          END 11**
                **Archive Copy**

* Subject to Protective Order *

AIGS.000356

**ENDORSEMENT# *12***

This endorsement, effective *12:01 am     March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT- ANUVIA PLANT NUTRIENT HOLDINS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        ANUVIA PLANT NUTRIENT HOLDINGS, LLC

          **MAILING ADDRESS**:     117 ALLWIN LANE
                                    BEECH ISLAND, SC 29842

          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :        $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

  a. Crisis Management Fund for D&O:                $50,000
  b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
  c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
  d. HIPAA Penalties Sublimit of Liability for FLI:        $250,000
  e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
     Liability for D&O:
  f. Side A Excess Limit of Liability                $1,000,000

     excess aggregate limit of liability for all
     **Non-Indemnifiable Loss** solely for **Executives** of a C
     **ompany** (including **Defense Costs**) under the **D&O**
     **Coverage Section** (herein the " **Side A Excess Limit of**
     **Liability**")

* Subject to Protective Order *

ENDORSEMENT# *12*      (Continued)

This endorsement, effective *12:01 am*      *March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 07/11/2014 |
| EPLI Coverage Section: | 04/30/2009 |
| FLI Coverage Section: | 07/11/2014 |

Item 5.   **PRIOR ACT DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 07/11/2014 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
            Act or Related Wrongful Acts):**

|  |  |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $25,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM** | $27,000 |
|---|---|

Item 8.

| **ANNUAL PREMIUM** | $27,000 |
|---|---|

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT     **BRANCH          END 12**
              *Archive Copy*
* Subject to Protective Order *

AIGS.000358

**ENDORSEMENT# *13***

This endorsement, effective *12:01 am     March 31, 2017*            forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - ARTEL HOLDINGS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:         ARTEL HOLDINGS, LLC

      **MAILING ADDRESS**:     13665 DULLES TECHNOLOGY DR, SUITE 300
                                    HERNDON, VA 20171

      **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :         $10,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | $5,000,000 | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a. Crisis Management Fund for D&O:                         $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:       $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:          $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of        $3,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                         $1,000,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       **ompany** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the " **Side A Excess Limit of**
       **Liability**")

* Subject to Protective Order *

ENDORSEMENT# *13*   (Continued)

This endorsement, effective   *12:01 am*     *March 31, 2017*        forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:      06/01/2011
      EPLI Coverage Section:     06/01/2011
      FLI Coverage Section:      06/01/2011

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:      06/01/2011
      EPLI Coverage Section:     06/01/2011
      FLI Coverage Section:      06/01/2011

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

      D&O Coverage Section:      $25,000
      EPLI Coverage Section:     $25,000
      FLI Coverage Section:      $  0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.
      **PREMIUM**             $50,039

Item 8.
      **ANNUAL PREMIUM**     $50,039

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                         AUTHORIZED REPRESENTATIVE
                Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT    **BRANCH**     **END 13**
*Archive Copy*                            **AIGS.000360**
* Subject to Protective Order *

**ENDORSEMENT# _14_**

This endorsement, effective _12:01 am_    _March 31, 2017_    forms a part of
policy number  _01-308-60-68_
issued to    _SEE PROGRAM PARTICIPANT ENDORSEMENT_

by    _AIG Specialty Insurance Company_

**PROGRAM PARTICIPANT ENDORSEMENT - COUNTER BRAND, LLC dba
BEAUTYCOUNTER**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:      COUNTER BRAND, LLC dba BEAUTYCOUNTER

        **MAILING ADDRESS**:   203 COLORADO AVE
                              SANTA MONICA, CA 90404

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:   $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:            $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:       $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability            $1,000,000

    excess aggregate limit of liability for all
    **Non-Indemnifiable Loss** solely for **Executives** of a C
    **ompany** (including **Defense Costs**) under the **D&O**
    **Coverage Section** (herein the "**Side A Excess Limit of**
    **Liability**")

MNSCPT        **BRANCH**  Archive Copy  END 14              **AIGS.000361**

* Subject to Protective Order *

**ENDORSEMENT# *14*  (Continued)**

This endorsement, effective *12:01 am   March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 07/01/2013 for Primary $2,000,000;<br>12/16/2014 for $3,000,000 Excess<br>$2,000,000 Limit of Liability |
| EPLI Coverage Section: | 07/01/2013 for Primary $2,000,000;<br>12/16/2014 for $3,000,000 Excess<br>$2,000,000 Limit of Liability |
| FLI Coverage Section: | 12/16/2014 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | N/A |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $75,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| | |
|---|---|
| **PREMIUM** | $35,500 |

Item 8.

| | |
|---|---|
| **ANNUAL PREMIUM** | $35,500 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH        END 14**
*Archive Copy*

* Subject to Protective Order *

AIGS.000362

**ENDORSEMENT# 15**

This endorsement, effective  *12:01 am      March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - EMPOWER MICRO SYSTEMS INC.

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:       EMPOWER MICRO SYSTEMS INC.

   **MAILING ADDRESS**:    3020 KENNETH STREET
                SANTA CLARA, CA 95054

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:        $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:              $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:      $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:          $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of       $3,000,000
      Liability for D&O:
   f. Side A Excess Limit of Liability                $1,000,000

      excess aggregate limit of liability for all
      **Non-Indemnifiable Loss** solely for **Executives** of a C
      ompany (including **Defense Costs**) under the **D&O**
      **Coverage Section** (herein the " **Side A Excess Limit of**
      **Liability**")

* Subject to Protective Order *

ENDORSEMENT# *15*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:      02/09/2016
      EPLI Coverage Section:    02/09/2016
      FLI Coverage Section:     02/09/2016

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:      09/02/2015
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

      D&O Coverage Section:      $25,000
      EPLI Coverage Section:    $25,000
      FLI Coverage Section:     $  0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **PREMIUM**              $25,000

Item 8.

      **ANNUAL PREMIUM**     $25,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                                          AUTHORIZED REPRESENTATIVE
                          Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH**   **END 15**
        *Archive Copy*

* Subject to Protective Order *

AIGS.000364

**ENDORSEMENT# 16**

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - EVERGREEN INDUSTRIAL PROPERTIES, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:       EVERGREEN INDUSTRIAL PROPERTIES, LLC

        **MAILING ADDRESS**:    66 FRANKLIN ST, SUITE 200
                                OAKLAND, CA 94607

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.  **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :        $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY** :

        a. Crisis Management Fund for D&O:                  $50,000
        b. Costs of Investigation Coverage Sublimit for D&O:  $250,000
        c. Voluntary Compliance Loss Sublimit of Liability for FLI:  N/A
        d. HIPAA Penalties Sublimit of Liability for FLI:    N/A
        e. Contract Claim Defense Costs Coverage Sublimit of  $3,000,000
           Liability for D&O:
        f. Side A Excess Limit of Liability                 $1,000,000

        excess aggregate limit of liability for all
        **Non-Indemnifiable Loss** solely for **Executives** of a C
        **ompany** (including **Defense Costs**) under the **D&O
        Coverage Section** (herein the " **Side A Excess Limit of
        Liability**")

MNSCPT          ***BRANCH*** Archive Copy *END 16*          **AIGS.000365**

* Subject to Protective Order *

ENDORSEMENT# *16*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

    D&O Coverage Section:     05/16/2014
    EPLI Coverage Section:    N/A
    FLI Coverage Section:     N/A

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:     05/16/2014
    EPLI Coverage Section:    N/A
    FLI Coverage Section:     N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
    Act or Related Wrongful Acts):**

    D&O Coverage Section:     $25,000
    EPLI Coverage Section:    N/A
    FLI Coverage Section:     N/A

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

    **PREMIUM**            $25,000

Item 8.

    **ANNUAL PREMIUM**    $25,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   ***BRANCH***    ***END 16***
    ***Archive Copy***                             **AIGS.000366**

* Subject to Protective Order *

*ENDORSEMENT# 17*

This endorsement, effective *12:01 am     March 31, 2017*          forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

## PROGRAM PARTICIPANT ENDORSEMENT - FRANK RECRUITMENT GROUP INCORPORATED

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:          FRANK RECRUITMENT GROUP INCORPORATED

         **MAILING ADDRESS**:     110 WILLIAM ST FLOOR 21
                                   NEW YORK, NY 10038

         **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :   $11,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a. Crisis Management Fund for D&O:                    $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:       $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                   $1,000,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       **ompany** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the " **Side A Excess Limit of**
       **Liability**")

* Subject to Protective Order *

**ENDORSEMENT# 17**   (Continued)

This endorsement, effective *12:01 am*      *March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 04/27/2016 |
| EPLI Coverage Section: | 04/28/2013 for Primary $1,000,000 Limit of Liability; 04/27/2016 for the $4,000,000 Excess of the Primary $1,000,000 Limit of Liability |
| FLI Coverage Section: | 04/27/2016 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | 04/27/2016 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $50,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

   **PREMIUM**      $25,000

Item 8.

   **ANNUAL PREMIUM**      $25,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      *BRANCH*      *END 17*
   *Archive Copy*
* Subject to Protective Order *

AIGS.000368

ENDORSEMENT# *18*

This endorsement, effective  *12:01 am      March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### CALIFORNIA EMPLOYMENT PRACTICES CLAIMS
### SEPARATE RETENTION
### (EPL COVERAGE SECTION)

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement #17- PROGRAM PARTICIPANT ENDORSEMENT- FRANK RECRUITMENT GROUP INCORPORATED, it is hereby understood and agreed that Clause 5. **RETENTION CLAUSE** of the **General Terms and Conditions** is amended by adding the following paragraph at the end thereof:

(c) Solely with respect to the EPL Coverage Section, the following shall apply:

Notwithstanding the foregoing, with regard to any **California Employment Practices Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from such **California Employment Practices Claim** which is in excess of a Retention amount of $75,000, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (i) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**. In the event a **Claim** triggers more than one applicable retention amount, only the highest such amount shall apply, which amount shall apply to all **Loss** under such **Claim**.

For purposes of this endorsement only, the term **"California Employment Practices Claim"** shall mean any **Claim(s)** under the **EPL Coverage Section** subject to California jurisdiction and/or California law.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
 AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

112262 (03/14)  *BRANCH        END 18*
*Archive Copy*
* Subject to Protective Order *

AIGS.000369

ENDORSEMENT# *19*

This endorsement, effective *12:01 am      March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**PARENT EXCLUSION ENDORSEMENT**
**(D&O, EPL AND FLI COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to the Endorsement #17- PROGRAM PARTICIPANT ENDORSEMENT- FRANK RECRUITMENT GROUP INCORPORATED, the EXCLUSIONS of the **D&O Coverage Section**, **EPL Coverage Section and FLI Coverage Sections** of this policy are amended to include the following paragraph at the end thereof:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim**:

PE(a)      made by or on behalf of the following parent organization (" **Parent**") or any **Executive** (as defined in the **EPL Coverage Section**) or **Employee** thereof; or any **Claim** which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Parent** or any **Executive** or **Employee** thereof.


PARENT ORGANIZATION:

Finders Topco Limited


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT       *BRANCH         END 19*
              *Archive Copy*
* Subject to Protective Order *

AIGS.000370

**ENDORSEMENT# 20**

This endorsement, effective  *12:01 am*      *March 31, 2017*          forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### TIE- IN OF LIMITS ENDORSEMENT
### (ABSOLUTE)
### (MULTIPLE POLICIES)
### (ALL COVERAGE SECTIONS)

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement #17- PROGRAM PARTICIPANT ENDORSEMENT- FRANK RECRUITMENT GROUP INCORPORATED, it is hereby understood and agreed that the combined limit of liability of the **Insurer** for all **Claims** both under this policy and the policies listed below shall be $11,000,000.

POLICY(IES)

(1)     No. 33025500_issued to Finders Topco Limited by AIG EUROPE LIMITED _

(herein, " **Other American International Group Policies** ")

Accordingly, the **Policy Aggregate Limit of Liability** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability** for **Loss** under this policy shall be reduced by **Loss** incurred under the **Other American International Group Policies** , because the limit of liability under the **Other American International Group Policies** are now part of and not in addition to the **Policy Aggregate Limit of Liability** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability** .

Finally, nothing in this endorsement shall be construed to increase (i) the **Insurer's** limit of liability under such **Other American International Group Policies** which shall remain the maximum liability of the **Insurer** for all **Claims** under such **Other American International Group Policies** , or (ii) the **Insurer's Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** under this which shall remain the maximum liability of the **Insurer** for all **Claims** combined under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

105027 (04/10)   *BRANCH*          *END 20*
*Archive Copy*
* Subject to Protective Order *

AIGS.000371

**ENDORSEMENT# 21**

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - GAVIN DE BECKER & ASSOCIATES, LP**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:      GAVIN DE BECKER & ASSOCIATES, LP

  **MAILING ADDRESS**:    11684 VENTURA BLVD, SUITE 440
                STUDIO CITY, CA 91604

  **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.  **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :    $16,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $15,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY** :

|   |   |
|---|---|
| a. Crisis Management Fund for D&O: | $50,000 |
| b. Costs of Investigation Coverage Sublimit for D&O: | $250,000 |
| c. Voluntary Compliance Loss Sublimit of Liability for FLI: | $100,000 |
| d. HIPAA Penalties Sublimit of Liability for FLI: | $250,000 |
| e. Contract Claim Defense Costs Coverage Sublimit of Liability for D&O: | $3,000,000 |
| f. Side A Excess Limit of Liability | $1,000,000 |

excess aggregate limit of liability for all
**Non-Indemnifiable Loss** solely for **Executives** of a C
ompany (including **Defense Costs**) under the **D&O
Coverage Section** (herein the " **Side A Excess Limit of
Liability**")

* Subject to Protective Order *

**ENDORSEMENT#** *21*   **(Continued)**

This endorsement, effective  *12:01 am*   *March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 07/01/2011 for $4,000,000 Limit of Liability; 09/01/2014 for $11,000,000 Excess of $4,000,000 Limit of Liability |
| EPLI Coverage Section: | 04/13/2007 |
| FLI Coverage Section: | 05/10/2012 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | N/A |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $100,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**        $63,000

Item 8.

**ANNUAL PREMIUM**        $63,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        **BRANCH        END 21**
**Archive Copy**
* Subject to Protective Order *

AIGS.000373

ENDORSEMENT# *22*

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE EXCLUSION ENDORSEMENT
(D&O COVERAGE SECTION)**

In consideration for the premium charged, solely with regard to the coverage afforded in
Endorsement #21 - "PROGRAM PARTICIPANT ENDORSEMENT- Gavin De Becker &
Associates, LP", it is hereby understood and agreed that in Clause 4. EXCLUSIONS of the
**D&O Coverage Section**, paragraph (l) is deleted in its entirety and replaced with the
following:

(l)   alleging, arising out of, based upon, attributable to or in any way involving, directly
or indirectly bodily injury, sickness, disease or death of any person, or damage to,
loss of use of or destruction of any tangible property; provided, however, that this
exclusion shall not apply to **Securities Claims**;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   *BRANCH   END 22*
*Archive Copy*
* Subject to Protective Order *

**AIGS.000374**

**ENDORSEMENT# 23**

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of
policy number *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES)
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, solely with regard to the coverage afforded in
Endorsement #21-PROGRAM PARTICIPANT ENDORSEMENT- GAVIN DE BECKER &
ASSOCAITES, LP, it is hereby understood and agreed that, solely with respect to
coverage as is provided under the **Coverage Sections** specified in the schedule below, the
definition of " **Company**" in the **General Terms and Conditions** is amended to include the
following entity(ies), subject to each such entity's **Continuity Date**:

**APPLICABLE COVERAGE SECTION(S)** :

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

| ENTITY(IES) | CONTINUITY DATE |
|---|---|
| Gavin De Becker & Associates Stockholder, LLC | 09/01/2014 |
| Gavin De Becker & Associates Holdco | 09/01/2014 |
| Gavin De Becker & Associates Holdings, LLC | 09/01/2014 |
| Gavin De Becker & Associates GP, LLC | 09/01/2014 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

M116932    **BRANCH        END 23**
**Archive Copy**
* Subject to Protective Order *        **AIGS.000375**

**ENDORSEMENT# 24**

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - GRCY HOLDINGS, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:      GRCY HOLDINGS, INC.

              **MAILING ADDRESS**:   13833 FREEWAY DRIVE
                                      SANTA FE SPRINGS, CA 90670

              **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:      $20,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $20,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                  $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:     $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:  N/A
   d. HIPAA Penalties Sublimit of Liability for FLI:       N/A
   e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
      Liability for D&O:
   f. Side A Excess Limit of Liability                  $1,000,000

      excess aggregate limit of liability for all
      **Non-Indemnifiable Loss** solely for **Executives** of a C
      **ompany** (including **Defense Costs**) under the **D&O**
      **Coverage Section** (herein the " **Side A Excess Limit of**
      **Liability**")

* Subject to Protective Order *

ENDORSEMENT# *24*   (Continued)

This endorsement, effective *12:01 am    March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*


by    *AIG Specialty Insurance Company*


Item 4.   **CONTINUITY DATES**:

     D&O Coverage Section:     02/19/2014
     EPLI Coverage Section:     N/A
     FLI Coverage Section:     N/A

Item 5.   **PRIOR ACT DATES**:

     D&O Coverage Section:     02/19/2014
     EPLI Coverage Section:     N/A
     FLI Coverage Section:     N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

     D&O Coverage Section:     $100,000
     EPLI Coverage Section:     N/A
     FLI Coverage Section:     N/A

     *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

     **PREMIUM**     $108,000

Item 8.

     **ANNUAL PREMIUM**     $108,000


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


                         AUTHORIZED REPRESENTATIVE
                    Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH         END 24**
        *Archive Copy*                    **AIGS.000377**

* Subject to Protective Order *

**ENDORSEMENT# 25**

This endorsement, effective  *12:01 am      March 31, 2017*       forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - JAX HOLDINGS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:         JAX HOLDINGS, LLC

 **MAILING ADDRESS**:      10151 DEERWOOD PARK BLVD.
                          JACKSONVILLE, FL 32256

 **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :         $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

|   |   |
|---|---|
| a. | Crisis Management Fund for D&O: | $50,000 |
| b. | Costs of Investigation Coverage Sublimit for D&O: | $250,000 |
| c. | Voluntary Compliance Loss Sublimit of Liability for FLI: | N/A |
| d. | HIPAA Penalties Sublimit of Liability for FLI: | N/A |
| e. | Contract Claim Defense Costs Coverage Sublimit of Liability for D&O: | $3,000,000 |
| f. | Side A Excess Limit of Liability | $1,000,000 |

excess aggregate limit of liability for all **Non-Indemnifiable Loss** solely for **Executives** of a C ompany (including **Defense Costs**) under the **D&O Coverage Section** (herein the " **Side A Excess Limit of Liability**")

*BRANCH*  *Archive Copy*  *END 25*                    **AIGS.000378**

* Subject to Protective Order *

**ENDORSEMENT#** *25*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

    D&O Coverage Section:      09/27/2016
    EPLI Coverage Section:     N/A
    FLI Coverage Section:      N/A

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:      09/27/2016
    EPLI Coverage Section:     N/A
    FLI Coverage Section:      N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

    D&O Coverage Section:      $25,000
    EPLI Coverage Section:     N/A
    FLI Coverage Section:      N/A

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

    **PREMIUM**             $25,000

Item 8.

    **ANNUAL PREMIUM**    $25,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   ***BRANCH***   ***END 25***
***Archive Copy***
* Subject to Protective Order *

**AIGS.000379**

**ENDORSEMENT# 26**

This endorsement, effective *12:01 am    March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - JONAH ENERGY HOLDINGS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        JONAH ENERGY HOLDINGS, LLC

    **MAILING ADDRESS**:   707 17th STREET, SUITE 200
                           DENVER, CO 80202

    **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :   $10,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $10,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a. Crisis Management Fund for D&O:                   $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:   N/A
    d. HIPAA Penalties Sublimit of Liability for FLI:        N/A
    e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                  $1,000,000

    excess aggregate limit of liability for all
    **Non-Indemnifiable Loss** solely for **Executives** of a C
    **ompany** (including **Defense Costs**) under the **D&O**
    **Coverage Section** (herein the " **Side A Excess Limit of**
    **Liability**")

* Subject to Protective Order *

**ENDORSEMENT#** *26*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of policy number *01-308-60-68*

issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 10/25/2011 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | 10/25/2011 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $50,000 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**                 $50,602

Item 8.

**ANNUAL PREMIUM**          $50,602

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          *BRANCH*          *END 26*
                *Archive Copy*

* Subject to Protective Order *

**AIGS.000381**

ENDORSEMENT# 27

This endorsement, effective *12:01 am    March 31, 2017*       forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### ADDITIONAL INSUREDS - DEFINITION OF COMPANY AMENDED

### FOR SPECIFIED WRONGFUL ACTS
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement #26-PROGRAM PARTICIPANT ENDORSEMENT- JONAH ENERGY HOLDINGS, LLC, it is hereby understood and agreed that, solely with respect to coverage as is provided under the **Coverage Sections** specified in the schedule below, Clause 2. Definition of "**Company**" of the **General Terms and Conditions** is amended to include the following entity, but only for **Wrongful Acts** committed or allegedly committed in connection with the formation of the **Named Entity**, and subject to the **Continuity Date** indicted below:

| COMPANY | CONTINUITY DATE |
|---|---|
| Maverick American Natural Gas, LLC | 05/12/2014 |

**APPLICABLE COVERAGE SECTION(S):**

D&O Coverage Sections

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        **BRANCH         END 27**
              *Archive Copy*

* Subject to Protective Order *

**AIGS.000382**

**ENDORSEMENT# 28**

This endorsement, effective *12:01 am    March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - MERCATUS, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        MERCATUS, INC.

            **MAILING ADDRESS**:     1900 S NORFOLK ST, STE 325
                                     SAN MATEO, CA 94403

            **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :        $1,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $1,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a. Crisis Management Fund for D&O:                    $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:   N/A
    d. HIPAA Penalties Sublimit of Liability for FLI:      N/A
    e. Contract Claim Defense Costs Coverage Sublimit of   $1,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                   $1,000,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       **ompany** (including **Defense Costs**) under the **D&O
       Coverage Section** (herein the " **Side A Excess Limit of
       Liability**")

* Subject to Protective Order *

ENDORSEMENT# *28*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

    D&O Coverage Section:    08/26/2013
    EPLI Coverage Section:    N/A
    FLI Coverage Section:    N/A

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:    N/A
    EPLI Coverage Section:    N/A
    FLI Coverage Section:    N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

    D&O Coverage Section:    $25,000
    EPLI Coverage Section:    N/A
    FLI Coverage Section:    N/A

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.
    **PREMIUM**    $6,500

Item 8.
    **ANNUAL PREMIUM**    $6,500

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

        AUTHORIZED REPRESENTATIVE
        Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH**   **END 28**
    *Archive Copy*   **AIGS.000384**

* Subject to Protective Order *

**ENDORSEMENT# 29**

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by  *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - PHILLIPS EDISON VALUE ADDED GROCERY
VENTURE, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:       PHILLIPS EDISON VALUE ADDED GROCERY VENTURE,
                                 LLC

        **MAILING ADDRESS**:    11501 NORTHLAKE DRIVE
                                CINCINNATI, OH 45249

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:    $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:                                  $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:               $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  N/A
    d. HIPAA Penalties Sublimit of Liability for FLI:            N/A
    e. Contract Claim Defense Costs Coverage Sublimit of         $3,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                          $1,000,000

      excess aggregate limit of liability for all
      **Non-Indemnifiable Loss** solely for **Executives** of a C
      ompany (including **Defense Costs**) under the **D&O
      Coverage Section** (herein the " **Side A Excess Limit of
      Liability**")

* Subject to Protective Order *

ENDORSEMENT# *29*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

     D&O Coverage Section:       03/22/2016
     EPLI Coverage Section:     N/A
     FLI Coverage Section:      N/A

Item 5.   **PRIOR ACT DATES**:

     D&O Coverage Section:       03/22/2016
     EPLI Coverage Section:     N/A
     FLI Coverage Section:      N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

     D&O Coverage Section:       $25,000
     EPLI Coverage Section:     N/A
     FLI Coverage Section:      N/A

     *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

     **PREMIUM**          $25,000

Item 8.

     **ANNUAL PREMIUM**     $25,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                    AUTHORIZED REPRESENTATIVE
                  Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH**     **END 29**

*Archive Copy*
* Subject to Protective Order *

**AIGS.000386**

**ENDORSEMENT# 30**

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - PHILZ COFFEE, INC.

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:     PHILZ COFFEE, INC.

   **MAILING ADDRESS**:   1258 MINNESOTA STREET
   SAN FRANCISCO, CA 94107

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :   $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $1,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

   a. Crisis Management Fund for D&O:                    $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:        $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:            $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of         $3,000,000
      Liability for D&O:
   f. Side A Excess Limit of Liability                          $1,000,000

   excess aggregate limit of liability for all
   **Non-Indemnifiable Loss** solely for **Executives** of a C
   **ompany** (including **Defense Costs**) under the **D&O**
   **Coverage Section** (herein the " **Side A Excess Limit of**
   **Liability**")

MNSCPT          ***BRANCH***  Archive Copy *END 30*                    **AIGS.000387**
* Subject to Protective Order *

**ENDORSEMENT#** *30*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 08/14/2015 for the Primary  $1,000,000 Limit of Liability;  01/06/2017  for the  $4,000,000 Limit Excess the  Primary $1,000,000  Limit of Liability |
| EPLI Coverage Section: | 08/14/2015 |
| FLI Coverage Section: | 01/06/2017 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | N/A |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $50,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**   $80,000

Item 8.

**ANNUAL PREMIUM**   $80,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH**   **END 30**
*Archive Copy*
* Subject to Protective Order *

**AIGS.000388**

**ENDORSEMENT# 31**

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - SLINGSHOT GLOBAL MEDIA, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1. **NAMED ENTITY**:       SLINGSHOT GLOBAL MEDIA, LLC

**MAILING ADDRESS**:   SUITE 900, C/O GETTLESON, WITZER & O'CONNOR
16000 VENTURA BLVD
ENCINO, CA 91436

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2. **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :       $1,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $1,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3. **OTHER POLICY YEAR LIMITS OF LIABILITY** :

a. Crisis Management Fund for D&O:                            $50,000
b. Costs of Investigation Coverage Sublimit for D&O:          $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI:   N/A
d. HIPAA Penalties Sublimit of Liability for FLI:             N/A
e. Contract Claim Defense Costs Coverage Sublimit of         $1,000,000
Liability for D&O:
f. Side A Excess Limit of Liability                          $1,000,000

excess aggregate limit of liability for all
**Non-Indemnifiable Loss** solely for **Executives** of a C
ompany (including **Defense Costs**) under the **D&O
Coverage Section** (herein the " **Side A Excess Limit of
Liability**")

MNSCPT    *BRANCH*  *Archive Copy* *END 31*                    **AIGS.000389**
* Subject to Protective Order *

**ENDORSEMENT#** *31*   **(Continued)**

This endorsement, effective  *12:01 am*     *March 31, 2017*        forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*


Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:     04/30/2014
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:     N/A
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

      D&O Coverage Section:     $25,000
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **PREMIUM**             $11,000

Item 8.

      **ANNUAL PREMIUM**    $11,000


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


                               AUTHORIZED REPRESENTATIVE
                       Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT     ***BRANCH***     ***END 31***
       ***Archive Copy***               **AIGS.000390**

* Subject to Protective Order *

**ENDORSEMENT# *32***

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of policy number *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - TB HOLDINGS II PARENT, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:        TB HOLDINGS II PARENT, INC.

        **MAILING ADDRESS**:    300 E. JOHN CARPENTER FREEWAY, STE 800
                             IRVING, TX 75234

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :        $16,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $10,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a. Crisis Management Fund for D&O:        $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:    $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:    $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of Liability for D&O:    $3,000,000
    f. Side A Excess Limit of Liability        $1,000,000

       excess aggregate limit of liability for all **Non-Indemnifiable Loss** solely for **Executives** of a C ompany (including **Defense Costs**) under the **D&O Coverage Section** (herein the " **Side A Excess Limit of Liability**")

* Subject to Protective Order *

**ENDORSEMENT# *32*   (Continued)**

This endorsement, effective   *12:01 am     March 31, 2017*     forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:     12/01/2015
      EPLI Coverage Section:    06/11/2001
      FLI Coverage Section:     06/11/2001

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:     12/01/2015
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

      D&O Coverage Section:     $100,000
      EPLI Coverage Section:    $150,000
      FLI Coverage Section:     $  0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.
      **PREMIUM**            $116,000

Item 8.
      **ANNUAL PREMIUM**     $116,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT      **BRANCH     END 32**
      ***Archive Copy***               **AIGS.000392**

* Subject to Protective Order *

**ENDORSEMENT# 33**

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of
policy number  *01-308-60-68*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by  *AIG Specialty Insurance Company*

**PANEL COUNSEL FIRM LIST AMENDED (EPL COVERAGE SECTION)**

In consideration of the premium charged, it is hereby understood and agreed solely with respect to the coverage afforded under Endorsement #32, PROGRAM PARTICIPANT ENDORSEMENT - TB HOLDINGS II PARENT, INC., the policy is amended as follows:

1. Appendix A for the Section of the policy entitled "PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED EMPLOYMENT PRACTICES CLAIMS" is hereby amended to include the following law firm (the "Listed Firm"), but solely with regard to a Designated Employment Practices Claim in its jurisdiction(s) listed below:

   LISTED FIRM                APPROVED JURISDICTION(S)

   CROUCH RAMEY               TX

2. The foregoing amendment to Appendix A shall not apply to any Claim for which the Insurer has assumed the defense pursuant to Clause 8 of this policy.

3. With respect to the defense of any Employment Practices Claims by the above listed law firm(s), is agreed that to the extent that services are billed at rates that exceed the Maximum Rates, the excess over such maximum rates shall not be covered under this policy as Defense Costs or otherwise as Loss. The retention shall not be reduced by, and the policyholder shall bear at its own expense, that portion of any fees charged by the Listed Firms that exceeds the applicable Maximum Rate. "Maximum Rate" means, for partners, **$250.00** per hour, for associates, **$200.00** per hour and for paralegals, **$85.00** per hour.

4. The rates set forth in Clause 3 shall apply for the life of any Claim as long as such Claim is in any way covered under this policy.

5. The Insureds agree to require the Listed Firms to follow the Insurer's Litigation Guidelines ("Litigation Guidelines"). Copies of the Litigation Guidelines will be provided to any Insured or their Listed Firms upon request.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH        END 33**
              *Archive Copy*
* Subject to Protective Order *            **AIGS.000393**

**ENDORSEMENT# _34_**

This endorsement, effective _12:01 am     March 31, 2017_     forms a part of
policy number   _01-308-60-68_
issued to     _SEE PROGRAM PARTICIPANT ENDORSEMENT_

by     _AIG Specialty Insurance Company_

**PROGRAM PARTICIPANT ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        TPG NEEDLES PARTNERSHIP LP

          **MAILING ADDRESS**:     6225 N. STATE HWY, SUITE 200
                              IRVING, TX 75038

          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :        $15,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a. Crisis Management Fund for D&O:                      $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:      $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:           $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of      $3,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                        $1,000,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       **ompany** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the " **Side A Excess Limit of**
       **Liability**")

* Subject to Protective Order *

ENDORSEMENT# *34*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 05/10/2013 |
| EPLI Coverage Section: | 05/10/2013 |
| FLI Coverage Section: | 05/10/2013 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | 05/10/2013 |
| EPLI Coverage Section: | 05/10/2013 |
| FLI Coverage Section: | 05/10/2013 |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $50,000 |
| EPLI Coverage Section: | $100,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**                  $63,000

Item 8.

**ANNUAL PREMIUM**           $63,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        **BRANCH        END 34**
                  *Archive Copy*
* Subject to Protective Order *

**AIGS.000395**

ENDORSEMENT# *35*

This endorsement, effective *12:01 am      March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

## ADDITIONAL INSUREDS - LISTED AFFILIATES
## (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement #34, Program Participant Endorsement - TPG NEEDLES PARTNERSHIP LP, solely with respect to coverage as is provided under the **Coverage Sections** specified in the schedule below, Clause 2. Definition of " **Company**" of the **General Terms and Conditions**, is amended to include the following entity(ies), each of which is an " **Affiliate**" (as defined below), subject to each such **Affiliate's Continuity Date**:

**APPLICABLE COVERAGE SECTION(S):**

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

| AFFILIATE | CONTINUITY DATE |
|---|---|
| Northstar Anesthesia, PA | 05/10/2013 |
| Northstar Anesthesia of Tennessee, PLLC | 05/10/2013 |
| Northstar Anesthesia of Oklahoma, PLLC | 05/10/2013 |
| Northstar Anesthesia of Kentucky, PLLC | 05/10/2013 |
| Northstar Anesthesia of West Virgnia, PLLC | 05/10/2013 |
| Northstar Anesthesia of Indiana, PLLC | 05/10/2013 |
| Northstar Anesthesia of Massachusetts, PLLC | 05/10/2013 |
| Northstar Anesthesia of Pennsylvania, LLC | 05/10/2013 |
| Northstar Anesthesia of Kansas, LLC | 05/10/2013 |
| Northstar Anesthesia of Illinois, LLC | 05/10/2013 |
| Northstar Anesthesia of Alabama, LLC | 05/10/2013 |
| Northstar Anesthesia of Georgia, LLC | 05/10/2013 |
| Northstar Anesthesia of Ohio, LLC | 05/10/2013 |
| Northstar Anesthesia of Virginia, LLC | 05/10/2013 |
| NSA Pain Services of Texas, PLLC | 05/10/2013 |
| NSA Pain Services of Ohio, PLLC | 05/10/2013 |
| NSA Pain Services of Kansas, PLLC | 05/10/2013 |

101279 (03/09)  *BRANCH* Archive Copy *END 35*

AIGS.000396

Archive Copy
* Subject to Protective Order *

ENDORSEMENT# *35*   (Continued)

This endorsement, effective *12:01 am*     *March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

| | |
|---|---|
| ACM GP, LLC | 05/10/2013 |
| ACM GP II, LLC | 05/10/2013 |
| ACMUV, LLC | 05/10/2013 |
| ACM Holdco, LP | 05/10/2013 |
| Anesthesia Consulting and Management, LP | 05/10/2013 |
| MIRA Healthcare of Tennessee, PLLC | 05/10/2013 |
| MIRA Healthcare of Texas, PLLC | 05/10/2013 |
| MIRA Healthcare, LLC | 05/10/2013 |
| OmniStaff Anesthesia, LP | 05/10/2013 |
| OmniStaff, LLC | 05/10/2013 |
| Ambulatory Anesthesia Associates, LLC | 05/10/2013 |
| Anesthesia Concepts, LLC | 05/10/2013 |
| Anesthesia Consulting & Management, LP | 05/10/2013 |
| Amsol Professionals of America, LLC | 05/10/2013 |
| Amsol LLC | 05/10/2013 |
| American Integrated Management, LLC | 05/10/2013 |
| VitalMed, Inc. | 05/10/2013 |
| Amsol of Charleston, SC, LLC | 05/10/2013 |
| Amsol of Elkin, NC, LLC | 05/10/2013 |
| Healthcare Quality & Compliance Group, LLC | 05/10/2013 |
| Anesthesia Resources Management Solutions, Inc. | 05/10/2013 |
| Amsol Physicians of Ohio, PC | 05/10/2013 |
| Amsol Anesthetists of Ohio, LLC | 05/10/2013 |
| Anesthesia Solutions of Anniston, LLC | 05/10/2013 |
| Anesthesia Services of Dunn, NC, PC | 05/10/2013 |

AIGS.000397

* Subject to Protective Order *

ENDORSEMENT# *35*   (Continued)

This endorsement, effective  *12:01 am*    *March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

| | |
|---|---|
| Amsol Anesthetists of Dunn, NC, PLLC | 05/10/2013 |
| Nurse Anesthesia of North Carolina, PLLC | 05/10/2013 |
| Nurse Anesthesia of South Carolina, PLLC | 05/10/2013 |
| AmSol Physicians of Georgia, PC | 05/10/2013 |
| AmSol Physicians of Columbus, GA, LLC | 05/10/2013 |
| AmSol Anesthetists of Georgia, LLC | 05/10/2013 |
| Anesthesia Care of West Virginia, Professional Corporation | 05/10/2013 |
| AmSol Anesthetists of Ohio Valley, LLC | 05/10/2013 |
| AmSol Anesthetists of Ohio Valey, PLLC | 05/10/2013 |
| Anesthesia Care of Litchfield, SC | 05/10/2013 |
| AmSol Anesthetists of Litchfield, IL, PC | 05/10/2013 |
| AmSol Physicians of Elkin, NC, PLLC | 05/10/2013 |
| Anesthesia Management Services, LLC | 05/10/2013 |
| Anesthesia Professionals, LLC | 05/10/2013 |
| Central Virginia Anesthesia, LLC | 05/10/2013 |
| Frederick Anesthesia, LLC | 05/10/2013 |
| Mid Atlantic Pain Management, LLC | 05/10/2013 |
| Professional Anesthesia Group, LLC | 05/10/2013 |

It is further understood and agreed that, for the purpose of the applicability of the coverage provided by this endorsement, the **Affiliates** listed above and the **Company** will be conclusively deemed to have indemnified the **Individual Insureds** and other persons afforded coverage by this endorsement to the extent that such **Affiliates** or the **Company** is permitted or required to indemnify such persons pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Company**. The **Affiliates** and the **Company** hereby agree to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

It is further understood and agreed that, solely with respect to any coverage granted by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against the **Affiliates** listed above or any **Clams** made against any **Individual Insured** of such **Affiliate** listed above:

101279 (03/09)  *BRANCH*    Archive Copy  *END 35*                                      **AIGS.000398**
* Subject to Protective Order *

ENDORSEMENT# *35*   **(Continued)**

This endorsement, effective *12:01 am    March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

> (1)  alleging, arising out of, based upon or attributable to, as of such **Affiliate's** respective **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, or alleging or derived from a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; and

> (2)  alleging any **Wrongful Act** occurring prior to such **Affiliate's** respective **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

In all events, coverage as is afforded under this endorsement with respect to any **Claim** made against any **Affiliate** listed above or any **Individual Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the respective time such **Affiliate** became an **Affiliate** and prior to the time that such **Affiliate** ceased to be an **Affiliate**.

As used in this endorsement, the term **"Affiliate"** means (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

101279 (03/09)  *BRANCH*        *END 35*
*Archive Copy*
* Subject to Protective Order *
                                                                          **AIGS.000399**

**ENDORSEMENT# 36**

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - TPG PIZZA HOLDINGS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:    TPG PIZZA HOLDINGS, LLC

**MAILING ADDRESS**:    2300 RESOURCE DR
BIRMINGHAM, AL 35242

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :    $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | $5,000,000 | N/A |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY** :

a. Crisis Management Fund for D&O:                   $50,000
b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
d. HIPAA Penalties Sublimit of Liability for FLI:        $250,000
e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
Liability for D&O:
f. Side A Excess Limit of Liability                 $1,000,000

excess aggregate limit of liability for all
**Non-Indemnifiable Loss** solely for **Executives** of a C
ompany (including **Defense Costs**) under the **D&O
Coverage Section** (herein the " **Side A Excess Limit of
Liability**")

MNSCPT        *BRANCH*  Archive Copy *END 36*        **AIGS.000400**

* Subject to Protective Order *

**ENDORSEMENT#** *36*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 12/30/2013 |
| EPLI Coverage Section: | 11/09/2007 for $500,000 Limit of Liability; 01/18/2012 for $4,500,000 Excess $500,000 Limit of Liability |
| FLI Coverage Section: | 11/09/2007 |

Item 5.   **PRIOR ACT DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 12/30/2013 |
| EPLI Coverage Section: | 11/09/2007 |
| FLI Coverage Section: | 11/09/2007 |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

|  |  |
|---|---|
| D&O Coverage Section: | $50,000 |
| EPLI Coverage Section: | $150,000 |
| FLI Coverage Section: | $ 0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**   $51,000

Item 8.

**ANNUAL PREMIUM**   $51,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   ***BRANCH***   ***END 36***
***Archive Copy***

* Subject to Protective Order *

**AIGS.000401**

ENDORSEMENT# 37

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of policy number *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - TRAVEL MANAGEMENT COMPANY INTERMEDIATE HOLDINGS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:       TRAVEL MANAGEMENT COMPANY INTERMEDIATE HOLDINGS, LLC

        **MAILING ADDRESS**:     2101 COUNTY ROAD 6
                                     ELKHART, IN 46514

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:    $6,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:                                    $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:        $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:    $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:                 $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of Liability for    $3,000,000
       D&O:
    f. Side A Excess Limit of Liability                               $1,000,000

       excess aggregate limit of liability for all **Non-Indemnifiable Loss** solely for **Executives** of a C **ompany** (including **Defense Costs**) under the **D&O Coverage Section** (herein the " **Side A Excess Limit of Liability**")

* Subject to Protective Order *

**ENDORSEMENT#** *37*   **(Continued)**

This endorsement, effective  *12:01 am*     *March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**Item 4.**   **CONTINUITY DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 06/20/2016 |
| EPLI Coverage Section: | 06/20/2016 |
| FLI Coverage Section: | 06/20/2016 |

**Item 5.**   **PRIOR ACT DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 06/20/2016 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

**Item 6.**   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

|  |  |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $25,000 |
| FLI Coverage Section: | $  0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

**PREMIUM**                        $28,000

**Item 8.**

**ANNUAL PREMIUM**                $28,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      ***BRANCH        END 37***
***Archive Copy***
* Subject to Protective Order *

**AIGS.000403**

**ENDORSEMENT# 38**

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - UTC LABORATORIES, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:         UTC LABORATORIES, LLC

   **MAILING ADDRESS**:      1441 CANAL STREET, STE 401
                  NEW ORLEANS, LA 70112

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :   $16,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $15,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

   a. Crisis Management Fund for D&O:                $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:      $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:         $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of      $3,000,000
      Liability for D&O:
   f. Side A Excess Limit of Liability                $1,000,000

   excess aggregate limit of liability for all
   **Non-Indemnifiable Loss** solely for **Executives** of a C
   ompany (including **Defense Costs**) under the **D&O
   Coverage Section** (herein the " **Side A Excess Limit of
   Liability**")

* Subject to Protective Order *

ENDORSEMENT# *38*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 02/27/2014 for Primary $3,000,000 Limit of Liability; 10/31/2014 for $12,000,000 Excess $3,000,000 Limit of Liability |
| EPLI Coverage Section: | 02/27/2014 for Primary $3,000,000 Limit of Liablity; 10/31/2014 for $2,000,000 Excess $3,000,000 Limit of Liability |
| FLI Coverage Section: | 10/31/2014 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | N/A |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $50,000 |
| EPLI Coverage Section: | $50,000 |
| FLI Coverage Section: | $ 0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

**PREMIUM**                    $156,000

Item 8.

**ANNUAL PREMIUM**              $156,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH**      **END 38**
*Archive Copy*
* Subject to Protective Order *

AIGS.000405

**ENDORSEMENT# 39**

This endorsement, effective   *12:01 am     March 31, 2017*                forms a part of
policy number   *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - GPT TPG SINGLE TENANT VENTURE LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        GPT TPG SINGLE TENANT VENTURE LLC

　　　　　**MAILING ADDRESS**:      31303 AGOURA ROAD
　　　　　　　　　　　　　　　　　WESTLAKE VILLAGE, CA 91361

　　　　　**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :   $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

　　　a. Crisis Management Fund for D&O:                    $50,000
　　　b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
　　　c. Voluntary Compliance Loss Sublimit of Liability for FLI:  N/A
　　　d. HIPAA Penalties Sublimit of Liability for FLI:        N/A
　　　e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
　　　　 Liability for D&O:
　　　f. Side A Excess Limit of Liability                     $1,000,000

　　　excess aggregate limit of liability for all
　　　**Non-Indemnifiable Loss** solely for **Executives** of a C
　　　**ompany** (including **Defense Costs**) under the **D&O**
　　　**Coverage Section** (herein the " **Side A Excess Limit of**
　　　**Liability**")

* Subject to Protective Order *

ENDORSEMENT# *39*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

    D&O Coverage Section:     09/09/2016
    EPLI Coverage Section:    N/A
    FLI Coverage Section:     N/A

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:     09/09/2016
    EPLI Coverage Section:    N/A
    FLI Coverage Section:     N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

    D&O Coverage Section:     $25,000
    EPLI Coverage Section:    N/A
    FLI Coverage Section:     N/A

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.
    **PREMIUM**     $26,500

Item 8.
    **ANNUAL PREMIUM**     $26,500

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

        AUTHORIZED REPRESENTATIVE
        Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   ***BRANCH***   ***END 39***
    ***Archive Copy***   AIGS.000407
* Subject to Protective Order *

**ENDORSEMENT# 40**

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT**
**ACCESS CLINICAL PARTNERS, LLC**
**(D&O AND EPL COVERAGE SECTIONS)**

This endorsement modifies insurance provided under the Manuscript Form for TPG
Portfolio.

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement #7 PROGRAM PARTICIPANT
ENDORSEMENT - ACCESS CLINICAL PARTNERS, LLC, the policy is amended as follows:

I. AMENDMENTS TO THE GENERAL TERMS & CONDITIONS SECTION

The General Terms & Conditions section is amended as follows:

A. In Clause 2. "DEFINITIONS" of the General Terms & Conditions Section, the definition
of Company is amended to include the following at the end thereof:

Company shall also include any auxiliary, guild or foundation formed solely for the benefit
of the Named Entity and of which the book value of such entity's assets determined in
accordance with Generally Accepted Accounting Principles totals less than 10% of the
similarly calculated assets of the Named Entity as of the inception date of the Policy
Period.

II. AMENDMENTS TO THE D&O COVERAGE SECTION

The D&O Coverage Section, if purchased, is amended as follows:

1. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Individual
Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly
constituted committee; any individual person engaged by a duly constituted committee for
purposes of providing an expert opinion with regard to peer review or credentialing decision
concerning an individual physician; any individual in charge of any operational department;
and any medical director, staff physician or faculty member of the Company, regardless of
whether or not such person is directly employed by the Company or is considered to be an
independent contractor.

2. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Loss is
amended to include the following at the end thereof:

*BRANCH* *Archive Copy* *END 40*                    **AIGS.000408**

* Subject to Protective Order *

**ENDORSEMENT# *40*   (Continued)**

This endorsement, effective  *12:01 am*    *March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

1.    IRS Fines:

Loss shall include  Defense Costs incurred  in connection with  a Claim seeking  an
assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or
penalties pursuant to the  following  sections of  the Internal  Revenue  Code of  1986 (as
amended):

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax-exempt foundations);
Section 4941  (taxes on self-dealing);
Section 4942  (taxes on failure to distribute income);
Section 4943  (taxes on excess business holding);
Section 4944  (taxes on investments which jeopardize charitable purpose);
Section 4945  (taxes on taxable expenditures);
Section 6652 (c) (1)  (A) and (B) (penalties  for failure to file  certain information returns or
registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.    EMTALA AND HIPAA FINES AND PENALTIES

Notwithstanding the foregoing, Loss shall also include:

(1) civil fines and penalties assessed upon an Insured for a violation of EMTALA, subject to
the EMTALA Sub-limit of Liability; and

(2)    HIPAA Penalties, where insurable by law, subject to the HIPAA Penalties Sublimit of
Liability.

3.    GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

Notwithstanding the  foregoing,  Loss  shall not  include  the  return of  funds  which  were
received from  any federal,  state  or local  governmental agency  or  any interest,  fines or
penalties arising out of  the return of such  funds; provided, however, that  this policy shall
pay Defense Costs in connection with any Claim made against  an Insured for the return of
such funds, subject to the Government Funding Defense Costs Sublimit of Liability and any
co-insurance or separate retention provided for such coverage in this policy.

* Subject to Protective Order *

ENDORSEMENT# *40*   (Continued)

This endorsement, effective *12:01 am   March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

4.   EXCESS BENEFIT PENALTY COVERAGE

"Loss" shall also include any "Excess Benefits" penalty assessed in the amount of 10% by
the Internal Revenue Service ("IRS") against any Insured(s)  for management's involvement
in the award of an "Excess Benefit" and the Defense Costs attributable thereto.  Loss shall
specifically exclude: (1) any 25% penalty  assessed by the IRS against  an Insured deemed
to have received an Excess Benefit;  (2) Defense Costs incurred to defend  any Insured if it
has been in  fact determined that  such individual received  an Excess Benefit;  and (3) any
200% penalty assessed by  the IRS for failure  to correct the  award of an Excess  Benefit.
In all events, the assessment by the IRS  of a 200% penalty against any Insured  shall void
ab initio all coverage afforded pursuant to this paragraph.

3. In Clause 2. "DEFINITIONS"  of the D&O Coverage  Section, the definition of "Wrongful
Act" is amended by adding the following to the end thereof:

(iv)     any violation of the EMTALA.

(v) any violation of the HIPAA Privacy Regulations.

4. In Clause 4. "EXCLUSIONS" of the D&O Coverage Section, paragraph (l) is deleted in its
entirety and replaced with the following:

(l)      alleging, arising out of, based upon or attributable to bodily injury, sickness, disease
or death of any  person, or damage to,  loss of use of or  destruction of any  tangible
property; provided, however, this exclusion shall not apply to any Securities Claim.

5. Clause 5. "LIMIT OF LIABILITY"  of the D&O Coverage Section is  amended by inserting
the following at the end thereof:

   EMTALA SUBLIMIT OF LIABILITY

The aggregate  limit of  the Insurer's  liability for  all Loss  in connection  with  all EMTALA
Claims in the aggregate made and reported  during the Policy Period or Discovery Period  (if
applicable) is $100,000 (hereinafter "EMTALA  Sub-limit of  Liability").   The  EMTALA
Sub-limit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability
and any  Separate  Limit of Liability  or  Shared  Limit of  Liability applicable  to the  D&O
Coverage Section, and  shall in  no way serve  to increase  such Policy  Aggregate Limit of
Liability, Separate Limit of Liability or Shared Limit of Liability.

* Subject to Protective Order *

ENDORSEMENT# *40*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### GOVERNMENT FUNDING DEFENSE COSTS SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Defense Costs in connection with a Claim for the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds is $1,000,000 (the "Government Funding Defense Costs Sublimit of Liability"). The Government Funding Defense Costs Sub-Limit of Liability is part of and not in addition to the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability. With respect to any such sublimited Defense Costs, it is further understood and agreed that the Insurer shall be liable to pay only 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit of Liability. It is a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the Insureds at their own risk and be uninsured.

### HIPAA PENALTIES SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all HIPAA Penalties in the aggregate under this policy is $100,000 (the "HIPAA Penalties Sublimit of Liability"). The HIPAA Penalties Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

III.   AMENDMENTS TO THE EPL COVERAGE SECTION

The EPL Coverage Section, if purchased, is amended as follows:

A. In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of Individual Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly constituted committee; any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialing decision concerning an individual physician; any individual in charge of any operational department; and any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

* Subject to Protective Order *

ENDORSEMENT# *40* (Continued)

This endorsement, effective *12:01 am* *March 31, 2017* forms a part of policy number *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

B. In the definition of Employment Practices Violation in Clause 2. "DEFINITIONS" of the EPL Coverage Section, subparagraph (xi) is deleted in its entirety and replaced with the following:

(xi) defect in peer review or credentialing;

(xii) with respect to any of the foregoing items (i) through (xi) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

C. Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended by deleting paragraphs (e) and (h) thereof in their entirety and replacing them with the following:

(e) alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to any a Claim for Retaliation.

(h) alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Insured Company under any express contract or agreement (other than any employee handbooks or human resources policies and procedures, or any organizational or management advisory documents of any Named Entity); provided, however, this exclusion shall not apply to:

(i) liability which would have attached in the absence of such express contract or agreement; or

(ii) Defense Costs

(iii) Individual Insureds;

(iv) Claims for Loss alleging Wrongful Acts of an Insured with respect to hospital practice privileges, credentialing or peer review matters;

a. The following clause is inserted at the end of the EPL Coverage Section:

HC-1 THIRD PARTY HUMAN CLINICAL TRIAL CLAIMS SUBLIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. "LIMIT OF LIABILITY" of the General Terms and Conditions:

MNSCPT *BRANCH* *Archive Copy* *END 40* AIGS.000412
* Subject to Protective Order *

ENDORSEMENT# *40*   **(Continued)**

This endorsement, effective   *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

The aggregate limit of the Insurer's liability for all Loss under the EPL Coverage Section in connection with all Third Party Human Clinical Trial Claims in the aggregate is $100,000 (hereinafter called the "Third Party Human Clinical Trial Claims Sublimit of Liability"). The Third Party Human Clinical Trial Claims Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the EPL Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

## IV. DEFINITIONS USED IN ENDORSEMENT

As used in this endorsement, the following terms have the meanings set forth below:

HC-1 "EMTALA" means the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

HC-2 "EMTALA Claim" means any Claim alleging a violation of EMTALA, including, without limitation, any Claim seeking civil fines and penalties for a violation of EMTALA.

HC-3 "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

HC-4 "HIPAA Penalties" means civil money penalties imposed upon an Insured for violation of the HIPAA Privacy Regulations.

HC-5 "HIPAA Privacy Regulations" means the privacy provisions of Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder, and amendments thereto, including, but not limited to, any amendment pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH Act")

HC-6 "Third Party Human Clinical Trial Claim" means any Third Party Violation in connection with any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH**   **END 40**
**Archive Copy**

* Subject to Protective Order *

AIGS.000413

ENDORSEMENT# *41*

This endorsement, effective   *12:01 am      March 31, 2017*        forms a part of
policy number   *01-308-60-68*
issued to      *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

**FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT-
TPG NEEDLES PARTNERSHIP LP
(D&O AND EPL COVERAGE SECTIONS)**

This endorsement modifies insurance provided under the Manuscript Form for TPG
Portfolio.

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement #34 PROGRAM PARTICIPANT
ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP, the policy is amended as follows:

I. AMENDMENTS TO THE GENERAL TERMS & CONDITIONS SECTION

The General Terms & Conditions section is amended as follows:

A. In Clause 2. "DEFINITIONS" of the General Terms & Conditions Section, the definition
of Company is amended to include the following at the end thereof:

Company shall also include any auxiliary, guild or foundation formed solely for the benefit
of the Named Entity and of which the book value of such entity's assets determined in
accordance with Generally Accepted Accounting Principles totals less than 10% of the
similarly calculated assets of the Named Entity as of the inception date of the Policy
Period.

II. AMENDMENTS TO THE D&O COVERAGE SECTION

The D&O Coverage Section, if purchased, is amended as follows:

1. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Individual
Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly
constituted committee; any individual person engaged by a duly constituted committee for
purposes of providing an expert opinion with regard to peer review or credentialing decision
concerning an individual physician; any individual in charge of any operational department;
and any medical director, staff physician or faculty member of the Company, regardless of
whether or not such person is directly employed by the Company or is considered to be an
independent contractor.

2. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Loss is
amended to include the following at the end thereof:

*BRANCH* *Archive Copy* *END 41*                          **AIGS.000414**

* Subject to Protective Order *

ENDORSEMENT# *41*   **(Continued)**

This endorsement, effective *12:01 am   March 31, 2017*   forms a part of
policy number *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

1.   IRS Fines:

Loss shall include Defense Costs incurred in connection with a Claim seeking an
assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or
penalties pursuant to the following sections of the Internal Revenue Code of 1986 (as
amended):

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax-exempt foundations);
Section 4941 (taxes on self-dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or
registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.   EMTALA AND HIPAA FINES AND PENALTIES

Notwithstanding the foregoing, Loss shall also include:

(1) civil fines and penalties assessed upon an Insured for a violation of EMTALA, subject to
the EMTALA Sub-limit of Liability; and

(2)   HIPAA Penalties, where insurable by law, subject to the HIPAA Penalties Sublimit of
Liability.

3.   GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

Notwithstanding the foregoing, Loss shall not include the return of funds which were
received from any federal, state or local governmental agency or any interest, fines or
penalties arising out of the return of such funds; provided, however, that this policy shall
pay Defense Costs in connection with any Claim made against an Insured for the return of
such funds, subject to the Government Funding Defense Costs Sublimit of Liability and any
co-insurance or separate retention provided for such coverage in this policy.

* Subject to Protective Order *

ENDORSEMENT# *41*   (Continued)

This endorsement, effective *12:01 am*     *March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

4.     EXCESS BENEFIT PENALTY COVERAGE

"Loss" shall also include any "Excess Benefits" penalty assessed in the amount of 10% by
the Internal Revenue Service ("IRS") against any Insured(s)  for management's involvement
in the award of an "Excess Benefit" and the Defense Costs attributable thereto.  Loss shall
specifically exclude: (1) any 25% penalty  assessed by the IRS against  an Insured deemed
to have received an Excess Benefit;  (2) Defense Costs incurred to defend  any Insured if it
has been in  fact determined that  such individual received  an Excess Benefit;  and (3) any
200% penalty assessed by  the IRS for failure  to correct the  award of an Excess  Benefit.
In all events, the assessment by the IRS  of a 200% penalty against any Insured  shall void
ab initio all coverage afforded pursuant to this paragraph.

3. In Clause 2. "DEFINITIONS"  of the D&O Coverage  Section, the definition of "Wrongful
Act" is amended by adding the following to the end thereof:

(iv)     any violation of the EMTALA.

(v) any violation of the HIPAA Privacy Regulations.

4. In Clause 4. "EXCLUSIONS" of the D&O Coverage Section, paragraph (l) is deleted in its
entirety and replaced with the following:

(l)     alleging, arising out of, based upon or attributable to bodily injury, sickness, disease
or death of any person, or damage to, loss of use of or destruction of any tangible
property; provided, however, this exclusion shall not apply to any Securities Claim.

5. Clause 5. "LIMIT OF LIABILITY"  of the D&O Coverage Section is  amended by inserting
the following at the end thereof:

EMTALA SUBLIMIT OF LIABILITY

The aggregate  limit of  the Insurer's  liability for  all Loss  in connection  with  all EMTALA
Claims in the aggregate made and reported  during the Policy Period or Discovery Period  (if
applicable) is $100,000 (hereinafter "EMTALA Sublimit of Liability").  The  EMTALA
Sub-limit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability
and any  Separate  Limit of Liability  or Shared  Limit of Liability  applicable to  the D&O
Coverage Section, and  shall in  no way serve  to increase  such Policy  Aggregate Limit of
Liability, Separate Limit of Liability or Shared Limit of Liability.

* Subject to Protective Order *

ENDORSEMENT# *41* (Continued)

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of
policy number *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### GOVERNMENT FUNDING DEFENSE COSTS SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Defense Costs in connection with a Claim for the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds is $1,000,000 (the "Government Funding Defense Costs Sublimit of Liability"). The Government Funding Defense Costs Sub-Limit of Liability is part of and not in addition to the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability. With respect to any such sublimited Defense Costs, it is further understood and agreed that the Insurer shall be liable to pay only 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit of Liability. It is a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the Insureds at their own risk and be uninsured.

### HIPAA PENALTIES SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all HIPAA Penalties in the aggregate under this policy is $100,000 (the "HIPAA Penalties Sublimit of Liability"). The HIPAA Penalties Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

III.     AMENDMENTS TO THE EPL COVERAGE SECTION

The EPL Coverage Section, if purchased, is amended as follows:

A. In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of Individual Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly constituted committee; any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialing decision concerning an individual physician; any individual in charge of any operational department; and any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

MNSCPT          *BRANCH* Archive Copy *END 41*          **AIGS.000417**

* Subject to Protective Order *

ENDORSEMENT# *41*   **(Continued)**

This endorsement, effective   *12:01 am*     *March 31, 2017*          forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

B. In the definition of Employment Practices Violation in Clause 2. "DEFINITIONS" of the EPL Coverage Section, subparagraph (xi) is deleted in its entirety and replaced with the following:

(xi) defect in peer review or credentialing;

(xii) with respect to any of the foregoing items (i) through (xi) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

C. Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended by deleting paragraphs (e) and (h) thereof in their entirety and replacing them with the following:

(e) alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to any a Claim for Retaliation.

(h)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Insured Company under any express contract or agreement (other than any employee handbooks or human resources policies and procedures, or any organizational or management advisory documents of any Named Entity); provided, however, this exclusion shall not apply to:

(i)    liability which would have attached in the absence of such express contract or agreement; or

(ii)    Defense Costs

(iii)    Individual Insureds;

(iv)    Claims for Loss alleging Wrongful Acts of an Insured with respect to hospital practice privileges, credentialing or peer review matters;

a. The following clause is inserted at the end of the EPL Coverage Section:

HC-1  THIRD PARTY HUMAN CLINICAL TRIAL CLAIMS SUBLIMIT OF LIABILITY
The following provisions shall apply in addition to the provisions of Clause 4. "LIMIT OF LIABILITY" of the General Terms and Conditions:

* Subject to Protective Order *

ENDORSEMENT# *41* **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

The aggregate limit of the Insurer's liability for all Loss under the EPL Coverage Section in connection with all Third Party Human Clinical Trial Claims in the aggregate is $100,000 (hereinafter called the "Third Party Human Clinical Trial Claims Sublimit of Liability"). The Third Party Human Clinical Trial Claims Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the EPL Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

IV. DEFINITIONS USED IN ENDORSEMENT

As used in this endorsement, the following terms have the meanings set forth below:

HC-1 "EMTALA" means the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

HC-2 "EMTALA Claim" means any Claim alleging a violation of EMTALA, including, without limitation, any Claim seeking civil fines and penalties for a violation of EMTALA.

HC-3 "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

HC-4 "HIPAA Penalties" means civil money penalties imposed upon an Insured for violation of the HIPAA Privacy Regulations.

HC-5 "HIPAA Privacy Regulations" means the privacy provisions of Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder, and amendments thereto, including, but not limited to, any amendment pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH Act")

HC-6 "Third Party Human Clinical Trial Claim" means any Third Party Violation in connection with any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   *BRANCH*   *END 41*
*Archive Copy*   **AIGS.000419**
* Subject to Protective Order *

**ENDORSEMENT# 42**

This endorsement, effective *12:01 am     March 31, 2017*        forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**FOR-PROFIT HEALTH CARE AMENDATORY ENDORSEMENT- UTC LABORATORIES, LLC
(D&O AND EPL COVERAGE SECTIONS)**

This endorsement modifies insurance provided under the Manuscript Form for TPG
Portfolio.

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement #38 PROGRAM PARTICIPANT
ENDORSEMENT - UTC LABORATORIES, LLC, the policy is amended as follows:

I. AMENDMENTS TO THE GENERAL TERMS & CONDITIONS SECTION

The General Terms & Conditions section is amended as follows:

A. In Clause 2. "DEFINITIONS" of the General Terms & Conditions Section, the definition
of Company is amended to include the following at the end thereof:

Company shall also include any auxiliary, guild or foundation formed solely for the benefit
of the Named Entity and of which the book value of such entity's assets determined in
accordance with Generally Accepted Accounting Principles totals less than 10% of the
similarly calculated assets of the Named Entity as of the inception date of the Policy
Period.

II. AMENDMENTS TO THE D&O COVERAGE SECTION

The D&O Coverage Section, if purchased, is amended as follows:

1. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Individual
Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly
constituted committee; any individual person engaged by a duly constituted committee for
purposes of providing an expert opinion with regard to peer review or credentialing decision
concerning an individual physician; any individual in charge of any operational department;
and any medical director, staff physician or faculty member of the Company, regardless of
whether or not such person is directly employed by the Company or is considered to be an
independent contractor.

2. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Loss is
amended to include the following at the end thereof:

* Subject to Protective Order *

ENDORSEMENT# *42*   (Continued)

This endorsement, effective  *12:01 am*    *March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

1.    IRS Fines:

Loss shall include Defense Costs incurred in connection with a Claim seeking an assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or penalties pursuant to the following sections of the Internal Revenue Code of 1986 (as amended):

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax-exempt foundations);
Section 4941 (taxes on self-dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information returns or registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.    EMTALA AND HIPAA FINES AND PENALTIES

Notwithstanding the foregoing, Loss shall also include:

(1) civil fines and penalties assessed upon an Insured for a violation of EMTALA, subject to the EMTALA Sub-limit of Liability; and

(2)    HIPAA Penalties, where insurable by law, subject to the HIPAA Penalties Sublimit of Liability.

3.    GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

Notwithstanding the foregoing, Loss shall not include the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds; provided, however, that this policy shall pay Defense Costs in connection with any Claim made against an Insured for the return of such funds, subject to the Government Funding Defense Costs Sublimit of Liability and any co-insurance or separate retention provided for such coverage in this policy.

4.    EXCESS BENEFIT PENALTY COVERAGE

MNSCPT          *BRANCH* Archive Copy *END 42*                    **AIGS.000421**
* Subject to Protective Order *

ENDORSEMENT# *42*   (Continued)

This endorsement, effective *12:01 am*      *March 31, 2017*          forms a part of
policy number   *01-308-60-68*
issued to      *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by       *AIG Specialty Insurance Company*

"Loss" shall also include any "Excess Benefits" penalty assessed in the amount of 10% by the Internal Revenue Service ("IRS") against any Insured(s) for management's involvement in the award of an "Excess Benefit" and the Defense Costs attributable thereto. Loss shall specifically exclude: (1) any 25% penalty assessed by the IRS against an Insured deemed to have received an Excess Benefit; (2) Defense Costs incurred to defend any Insured if it has been in fact determined that such individual received an Excess Benefit; and (3) any 200% penalty assessed by the IRS for failure to correct the award of an Excess Benefit. In all events, the assessment by the IRS of a 200% penalty against any Insured shall void ab initio all coverage afforded pursuant to this paragraph.

3. In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "Wrongful Act" is amended by adding the following to the end thereof:

(iv)     any violation of the EMTALA.

(v) any violation of the HIPAA Privacy Regulations.

4. In Clause 4. "EXCLUSIONS" of the D&O Coverage Section, paragraph (l) is deleted in its entirety and replaced with the following:

(l)     alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to any Securities Claim.

5. Clause 5. "LIMIT OF LIABILITY" of the D&O Coverage Section is amended by inserting the following at the end thereof:

   EMTALA SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Loss in connection with all EMTALA Claims in the aggregate made and reported during the Policy Period or Discovery Period (if applicable) is $100,000 (hereinafter "EMTALA Sublimit of Liability"). The EMTALA Sub-limit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

* Subject to Protective Order *

ENDORSEMENT# *42*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2017*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

GOVERNMENT FUNDING DEFENSE COSTS SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Defense Costs in connection with a Claim for the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds is $1,000,000 (the "Government Funding Defense Costs Sublimit of Liability"). The Government Funding Defense Costs Sub-Limit of Liability is part of and not in addition to the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability. With respect to any such sublimited Defense Costs, it is further understood and agreed that the Insurer shall be liable to pay only 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit of Liability. It is a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the Insureds at their own risk and be uninsured.

HIPAA PENALTIES SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all HIPAA Penalties in the aggregate under this policy is $100,000 (the "HIPAA Penalties Sublimit of Liability"). The HIPAA Penalties Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

III.   AMENDMENTS TO THE EPL COVERAGE SECTION

The EPL Coverage Section, if purchased, is amended as follows:

A. In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of Individual Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly constituted committee; any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialing decision concerning an individual physician; any individual in charge of any operational department; and any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

MNSCPT   *BRANCH* Archive Copy *END 42*   AIGS.000423

* Subject to Protective Order *

ENDORSEMENT# *42*   **(Continued)**

This endorsement, effective *12:01 am*     *March 31, 2017*          forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by        *AIG Specialty Insurance Company*

B. In the definition of Employment Practices Violation in Clause 2. "DEFINITIONS" of the
EPL Coverage Section, subparagraph (xi) is deleted in its entirety and replaced with the
following:

(xi) defect in peer review or credentialing;

(xii) with respect to any of the foregoing items (i) through (xi) of this definition: negligent
hiring, retention, training or supervision, infliction of emotional distress or mental anguish,
failure to provide or enforce adequate or consistent corporate policies and procedures, or
violation of an individual's civil rights;

C. Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended by deleting
paragraphs (e) and (h) thereof in their entirety and replacing them with the following:

(e) alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or
death of any person, or damage to, loss of use of or destruction of any tangible property;
provided, however, this exclusion shall not apply to any a Claim for Retaliation.

(h)     alleging, arising out of, based upon or attributable to any actual or alleged
contractual liability of any Insured Company under any express contract or agreement
(other than any employee handbooks or human resources policies and procedures, or any
organizational or management advisory documents of any Named Entity); provided,
however, this exclusion shall not apply to:

(i)     liability which would have attached in the absence of such express contract or
agreement; or

(ii)     Defense Costs

(iii)     Individual Insureds;

(iv)     Claims for Loss alleging Wrongful Acts of an Insured with respect to hospital
practice privileges, credentialing or peer review matters;

a. The following clause is inserted at the end of the EPL Coverage Section:

HC-1  THIRD PARTY HUMAN CLINICAL TRIAL CLAIMS SUBLIMIT OF LIABILITY
The following provisions shall apply in addition to the provisions of Clause 4. "LIMIT OF
LIABILITY" of the General Terms and Conditions:

* Subject to Protective Order *

**ENDORSEMENT#** *42*   **(Continued)**

This endorsement, effective   *12:01 am*   *March 31, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

The aggregate limit of the Insurer's liability for all Loss under the EPL Coverage Section in connection with all Third Party Human Clinical Trial Claims in the aggregate is $100,000 (hereinafter called the "Third Party Human Clinical Trial Claims Sublimit of Liability"). The Third Party Human Clinical Trial Claims Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the EPL Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

IV. DEFINITIONS USED IN ENDORSEMENT

As used in this endorsement, the following terms have the meanings set forth below:

HC-1 "EMTALA" means the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

HC-2 "EMTALA Claim" means any Claim alleging a violation of EMTALA, including, without limitation, any Claim seeking civil fines and penalties for a violation of EMTALA.

HC-3 "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

HC-4 "HIPAA Penalties" means civil money penalties imposed upon an Insured for violation of the HIPAA Privacy Regulations.

HC-5 "HIPAA Privacy Regulations" means the privacy provisions of Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder, and amendments thereto, including, but not limited to, any amendment pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH Act")

HC-6 "Third Party Human Clinical Trial Claim" means any Third Party Violation in connection with any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

* Subject to Protective Order *
**AIGS.000425**

ENDORSEMENT# *43*

This endorsement, effective *12:01 am*    *March 31, 2017*        forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

## PROFESSIONAL LIABILITY EXCLUSION- 432002 LLC
## (D&O COVERAGE SECTION)

In consideration of the premium charged, solely with respect to the **Insureds** under
Endorsement #6 PROGRAM PARTICIPANT ENDORSEMENT- 432002 LLC, it is hereby
understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is
amended to add the following exclusion:

> *Solely with respect to Coverage B(i) of this* **D&O Coverage Section,** *the* **Insurer** *shall
> not be liable to make any payment for* **Loss** *in connection with any* **Claim**:

1. made by or on behalf of any client of any **Insured** that seeks damages, specific
   performance or another form of compensation for any act, error or omission in the
   performance of or any failure to perform professional services or supporting services
   for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services
   performed for a client of any **Insured** that seeks damages, specific performance or
   another form of compensation for any act, error or omission in the performance of
   or any failure to perform those professional services or supporting services for that
   client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT          *BRANCH*          *END 43*
                *Archive Copy*
                * Subject to Protective Order *          **AIGS.000426**

**ENDORSEMENT# *44***

This endorsement, effective *12:01 am     March 31, 2017*     forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**PROFESSIONAL LIABILITY EXCLUSION- GAVIN DE BECKER & ASSOCIATES, LP
(D&O COVERAGE SECTION)**

In consideration of the premium charged, solely with respect to the **Insureds** under Endorsement #21 PROGRAM PARTICIPANT ENDORSEMENT- GAVIN DE BECKER & ASSOCIATES, LP, it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is amended to add the following exclusion:

*Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**:*

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT     ***BRANCH        END 44***
*Archive Copy*
* Subject to Protective Order *

**AIGS.000427**

**ENDORSEMENT# 45**

This endorsement, effective *12:01 am    March 31, 2017*    forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROFESSIONAL LIABILITY EXCLUSION- SLINGSHOT GLOBAL MEDIA, LLC
(D&O COVERAGE SECTION)**

In consideration of the premium charged, solely with respect to the **Insureds** under Endorsement #31 PROGRAM PARTICIPANT ENDORSEMENT- SLINGSHOT GLOBAL MEDIA, LLC, it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is amended to add the following exclusion:

*Solely with respect to Coverage B(i) of this* **D&O Coverage Section,** *the* **Insurer** *shall not be liable to make any payment for* **Loss** *in connection with any* **Claim**:

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

ENDORSEMENT# *46*

This endorsement, effective *12:01 am     March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**PROFESSIONAL LIABILITY EXCLUSION- TPG NEEDLES PARTNERSHIP LP**
**(D&O COVERAGE SECTION)**

In consideration of the premium charged, solely with respect to the **Insureds** under Endorsement #34 PROGRAM PARTICIPANT ENDORSEMENT- TPG NEEDLES PARTNERSHIP LP, it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is amended to add the following exclusion:

*Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim***:

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT          *BRANCH          END 46*
                *Archive Copy*
* Subject to Protective Order *

**AIGS.000429**

ENDORSEMENT# 47

This endorsement, effective 12:01 am    March 31, 2017    forms a part of
policy number 01-308-60-68
issued to    SEE PROGRAM PARTICIPANT ENDORSEMENT

by    AIG Specialty Insurance Company

### SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION
### ACCESS CLINICAL PARTNERS, LLC
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that solely with regard to the coverage afforded in Endorsement #7, Program Participant Endorsement - ACCESS CLINICAL PARTNERS, LLC, that solely with respect to **Loss** as may have otherwise been covered under either the **D&O Coverage Section** or the **EPL Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

" **Sexual Misconduct** " means any licentious, immoral or sexual behavior, sexual abuse, sexual assault, or molestation intended to lead to or culminating in any sexual act against any individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT    **BRANCH        END 47**
*Archive Copy*

* Subject to Protective Order *

AIGS.000430

ENDORSEMENT# *48*

This endorsement, effective *12:01 am    March 31, 2017*          forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION- TPG NEEDLES PARTNERSHIP LP
(D&O AND EPL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that solely with regard to the coverage afforded in Endorsement #34, Program Participant Endorsement - TPG NEEDLES PARTNERSHIP LP, that solely with respect to **Loss** as may have otherwise been covered under either the **D&O Coverage Section** or the **EPL Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

"**Sexual Misconduct**" means any licentious, immoral or sexual behavior, sexual abuse, sexual assault, or molestation intended to lead to or culminating in any sexual act against any individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          *BRANCH          END 48*
          *Archive Copy*

* Subject to Protective Order *

**AIGS.000431**

ENDORSEMENT# *49*

This endorsement, effective *12:01 am    March 31, 2017*          forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION- UTC LABORATORIES, LLC
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that solely
with regard to the coverage afforded in Endorsement #38, Program Participant
Endorsement - UTC LABORATORIES, LLC, that solely with respect to **Loss** as may have
otherwise been covered under either the **D&O Coverage Section** or the **EPL Coverage
Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with
any **Claim** (including but not limited to any derivative or representative class actions) made
against any **Insured** alleging, arising out of, based upon or attributable to, or in any way
involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including
but not limited to the employment, supervision, reporting to the proper authorities, failure
to so report or retention of any person.

" **Sexual Misconduct** " means any licentious, immoral or sexual behavior, sexual abuse,
sexual assault, or molestation intended to lead to or culminating in any sexual act against
any individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      *BRANCH          END 49*
            *Archive Copy*

**AIGS.000432**

* Subject to Protective Order *

**ENDORSEMENT# 50**

This endorsement, effective *12:01 am      March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### EPL COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED

In consideration of the premium charged, it is hereby understood  and agreed that Clause 6 of the  EPL  Coverage  Section PRE-AUTHORIZED  SECURITIES  DEFENSE  ATTORNEYS is hereby amended to include  the following but solely  in regard to an  **Employment Practices Claim** brought in any of the below jurisdictions:

| Panel Counsel Law Firm | Jurisdiction |
| --- | --- |
| Kelly Hart & Hallman | Texas |

For the  purposes  of this  Clause  6, Defense  Costs  shall  also mean  any  legal fees  and expenses of Panel Counsel selected by the **Insured(s)** at Panel Counsel's usual  hourly rates (including  usual  and  customary  periodic  increases  in such  rates) and  including all reasonable out of pocket charges and expenses with no discount in rate  or other reduction in such rates or rate of expense reimbursement

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        ***BRANCH        END 50***
              ***Archive Copy***

**AIGS.000433**

* Subject to Protective Order *

ENDORSEMENT# 51

This endorsement, effective *12:01 am    March 31, 2017*      forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

## D&O COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 9 of the D&O Coverage Section PRE-AUTHORIZED SECURITIES DEFENSE ATTORNEYS is hereby amended to include the following solely in regard to a **Securities Claim** brought in any of the below jurisdictions:

| Panel Counsel Law Firm | Jurisdiction |
| --- | --- |
| Ropes & Gray LLP | any jurisdiction in the United States of America, the United Kingdom, Hong Kong, Japan, South Korea and the People's Republic of China |
| Cleary Gottlieb Steen & Hamilton LLP | any jurisdiction in the United States of America, the United Kingdom, the Russian Federation, Italy, Brazil, the Republic of France, Belgium, the Federal Republic of Germany, Hong Kong, South Korea, the United Arab Emirates, and the People's Republic of China |

For the purposes of this Clause 9, Defense Costs shall also mean any legal fees and expenses of Panel Counsel selected by the **Insured(s)** at Panel Counsel's usual hourly rates (including usual and customary periodic increases in such rates) and including all reasonable out of pocket charges and expenses with no discount in rate or other reduction in such rates or rate of expense reimbursement

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      *BRANCH        END 51*
                    *Archive Copy*
* Subject to Protective Order *

AIGS.000434

**ENDORSEMENT# 52**

This endorsement, effective   *12:01 am    May 2, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT- CLUB PILATES FRANCHISE, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:         CLUB PILATES FRANCHISE, LLC

        **MAILING ADDRESS**:      3185 PULLMAN STREET
                                     COSTA MESA, CA 92626

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY** : DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY** :   $10,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY** :

    a. Crisis Management Fund for D&O:              $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:      $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:        $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of    $1,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                $1,000,000

      excess aggregate limit of liability for all
      **Non-Indemnifiable Loss** solely for **Executives** of a C
      **ompany** (including **Defense Costs**) under the **D&O**
      **Coverage Section** (herein the " **Side A Excess Limit of**
      **Liability**")

* Subject to Protective Order *

**ENDORSEMENT#** *52*   **(Continued)**

This endorsement, effective  *12:01 am      May 2, 2017*         forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

    D&O Coverage Section:      05/02/2017
    EPLI Coverage Section:     06/10/2015
    FLI Coverage Section:      05/02/2017

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:      05/02/2017
    EPLI Coverage Section:     06/10/2015
    FLI Coverage Section:      N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

    D&O Coverage Section:      $25,000
    EPLI Coverage Section:     $25,000
    FLI Coverage Section:      $0

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

    **PREMIUM**                Roll-In

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
    AUTHORIZED REPRESENTATIVE
   Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH          END 52**
      **Archive Copy**
* Subject to Protective Order *

AIGS.000436

ENDORSEMENT# 53

This endorsement, effective 12:01 am    May 2, 2017    forms a part of
policy number  01-308-60-68
issued to    SEE PROGRAM PARTICIPANT ENDORSEMENT

by    AIG Specialty Insurance Company

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT
CLUB PILATES FRANCHISE, LLC
(WITH SUBLIMIT)**

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement **# 52- PROGRAM PARTICIPANT ENDORSEMENT- CLUB PILATES FRANCHISE, LLC,** it is hereby understood and agreed that the **General Terms & Conditions** and the **D&O Coverage Section** are amended as follows:

1.    Clause 2. **DEFINITIONS** of the **D&O Coverage Section** are amended as follows:

(a) Paragraph (s), " **Individual Insured** ," is amended to include the following paragraph at the end of that definition:

" **Individual Insured** " also means any **Employed Lawyer(s)** of a **Company**, but only for a **Claim(s)** alleging a **Wrongful Act** in such **Employed Lawyer's(s')** capacity as such, subject to the terms, conditions and exclusions of this policy and this endorsement.

(b) For purposes of the coverage afforded under this endorsement, paragraph (cc), " **Wrongful Act** ," is deleted in its entirety and replaced with the following:

(cc)    " **Wrongful Act** " means any act, error or omission of an **Employed Lawyer(s)**, in the rendering or failure to render professional legal services for a **Company**, but solely in his or her capacity as such; provided, however, the term " **Wrongful Act** " shall not mean, and this endorsement does not provide coverage for, any act, error or omission in connection with any activities by such **Employed Lawyer(s)**: (1) which are not related to such **Employed Lawyer's(s')** employment with a **Company**; (2) which are not rendered on the behalf of a **Company** at the **Company's** written request; or (3) which are performed by the **Employed Lawyer(s)** for others for a fee.

(c) Clause 2. **DEFINITIONS** of the **D&O Coverage Section** is further amended to include the following definition at the end thereof:

(dd)    " **Employed Lawyer** " means any **Employee** of a **Company**, in their capacity as such, who is admitted to practice law and who is or was employed as a lawyer full time and salaried by a **Company**.

2. Clause 4. **EXCLUSIONS** of the **D&O Coverage Section** is amended to include the following paragraph at the end of that Clause:

* Subject to Protective Order *

**ENDORSEMENT# 53**   **(Continued)**

This endorsement, effective   *12:01 am     May 2, 2017*          forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

It is understood and agreed that solely with respect to the coverage afforded by this endorsement, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Employed Lawyer(s)**:

(aa)    alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring at a time when the **Employed Lawyer(s)** was not employed as a lawyer by a **Company**;

(bb)    alleging, arising out of, based upon or attributable to as of 06/10/2015, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(cc)    alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as of 06/10/2015, an **Employed Lawyer(s)** knew or could have reasonably foreseen that such **Wrongful Act** could give rise to a **Claim**; or

(dd)    alleging, arising out of, based upon or attributable to any activities by an **Employed Lawyer(s)** as an officer or director of any entity, other than a **Company**.

3.  Clause 5. **LIMIT OF LIABILITY** of the **D&O Coverage Section** is amended to include the following provision at the end thereof:

**EMPLOYED LAWYERS SUBLIMIT OF LIABILITY**

The maximum limit of the **Insurer's** liability for all **Loss** arising from coverage as is afforded by this endorsement for **Claim(s)** alleging a **Wrongful Act** by an **Employed Lawyer(s)** shall be $2,000,000 (hereinafter the "**Employed Lawyer Coverage Sublimit of Liability**"). This **Employed Lawyer Coverage Sublimit of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** stated in the Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

4.  The **D&O Coverage Section** is further amended to include the following provision at the end thereof:

* Subject to Protective Order *

**ENDORSEMENT# *53*   (Continued)**

This endorsement, effective *12:01 am      May 2, 2017*                forms a part of
policy number   *01-308-60-68*
issued to      *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

**EL-1.      EMPLOYED LAWYERS COVERAGE PROVISIONS**

It is understood  and agreed  that with  respect to  the coverage  afforded under this endorsement, a **Company**  will be conclusively  deemed to have  indemnified the **Employed Lawyer(s)** to the extent that the **Company** is permitted or required to indemnify  them pursuant  to law,  common or  statutory,  or  contract,  or  the charter or by-laws of  the **Company**.  The  **Company** hereby agrees to  indemnify the **Employed  Lawyer(s)** to  the  fullest extent  permitted by  law,  including the making in good faith of any required application for court approval.

It is  further  understood  and  agreed that  coverage  as  is  afforded under  this endorsement shall  apply  to a **Wrongful  Act(s)** only  if  one or  more **Insured(s)** (other than an **Employed Lawyer(s)**)  are and remain co-defendants  in the action along with an **Employed Lawyer(s)**.

5. Clause 11. **OTHER INSURANCE** is amended  to include the  following paragraph at  the end thereof:

**11.      OTHER INSURANCE**

Notwithstanding  the  foregoing,  it is  understood  and  agreed  that  the  coverage provided by this endorsement  is specifically excess  over any other  valid or collectible lawyers' professional insurance, legal malpractice or errors and omissions insurance and shall  only drop down  and be primary  insurance only in  the event of exhaustion of such other insurance due to losses paid thereunder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH        END 53**
                   **Archive Copy**                         **AIGS.000439**
* Subject to Protective Order *

**ENDORSEMENT# *54***

This endorsement, effective   *12:01 am     May 2, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES)- CLUB PILATES FRANCHISE, LLC (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement #52-PROGRAM PARTICIPANT ENDORSEMENT- CLUB PILATES FRANCHISE, LLC, it is hereby understood and agreed that, solely with respect to coverage as is provided under the **Coverage Sections** specified in the schedule below, the definition of "**Company**" in the **General Terms and Conditions** is amended to include the following entity(ies), subject to each such entity's **Continuity Date**:

**APPLICABLE COVERAGE SECTION(S):**

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

| ENTITY(IES) | CONTINUITY DATE |
|---|---|
| TPG GROWTH III MEDIA FINANCE, LP | 05/02/2017 |
| TPG GROWTH III FITNESS, LP | 05/02/2017 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT     ***BRANCH        END 54***
              ***Archive Copy***

AIGS.000440

* Subject to Protective Order *

## ENDORSEMENT# 55

This endorsement, effective 12:01 am    March 31, 2017              forms a part of
policy number  01-308-60-68
issued to SEE PROGRAM PARTICIPANT ENDORSEMENT

by    AIG Specialty Insurance Company

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | DIRECTORS & OFFICERS LIABILITY INSURANCE, EMPLOYMENT PRACTICES LIABILITY INSURANCE, FIDUCIARY LIABILITY INSURANCE DECLARATIONS |
| MNSCPT | | GENERAL TERMS AND CONDITIONS |
| MNSCPT | | D&O COVERAGE SECTION |
| MNSCPT | | EPL COVERAGE SECTION |
| MNSCPT | | FLI COVERAGE SECTION |
| | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
| | 06/08 | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| 99544 | 07/08 | EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY PANEL COUNSEL |
| 97886 | 04/08 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |
| 96311 | 02/08 | APPENDIX D - CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION |
| 89644 | 06/13 | ECONOMIC SANCTIONS ENDORSEMENT |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 95737 | 09/07 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (ALL COVERAGE SECTIONS) |
| MNSCPT | | ENTITY V. INSURED EXCLUSION ENDORSEMENT |
| MNSCPT | | FLSA AND RELATED EXCLUSIONS AMENDED |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - 432002 LLC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ACCESS CLINICAL PARTNERS, LLC |
| 101279 | 03/09 | ADDITIONAL INSUREDS - LISTED AFFILIATES |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ADVANTEK WASTE MANAGEMENT |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ALPHABET ENERGY, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ANGIES HOLDINGS, LLC |

© All rights reserved.

END 055

Archive Copy
BRANCH

78859 (10/01)                    * Subject to Protective Order *          AIGS.000441

**ENDORSEMENT#** *55*

This endorsement, effective *12:01 am    March 31, 2017*                    forms a part of
policy number  *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT- ANUVIA PLANT NUTRIENT HOLDINS, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ARTEL HOLDINGS, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - COUNTER BRAND, LLC dba |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - EMPOWER MICRO SYSTEMS INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - EVERGREEN INDUSTRIAL PROPERTIES, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - FRANK RECRUITMENT GROUP |
| 112262 | 03/14 | CALIFORNIA EMPLOYMENT PRACTICES CLAIMS |
| MNSCPT | | PARENT EXCLUSION ENDORSEMENT |
| 105027 | 04/10 | TIE-IN OF LIMITS ENDORSEMENT |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - GAVIN DE BECKER & ASSOCIATES, LP |
| MNSCPT | | ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE EXCLUSION ENDORSEMENT |
| M116932 | | DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES) |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - GRCY HOLDINGS, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - JAX HOLDINGS, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - JONAH ENERGY HOLDINGS, LLC |
| MNSCPT | | ADDITIONAL INSUREDS - DEFINITION OF COMPANY AMENDED |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - MERCATUS, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - PHILLIPS EDISON VALUE ADDED GROCERY |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - PHILZ COFFEE, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - SLINGSHOT GLOBAL MEDIA, LLC |

©

*END 055*

* Subject to Protective Order *

**AIGS.000442**

**ENDORSEMENT# *55***

This endorsement, effective *12:01 am     March 31, 2017*                forms a part of
policy number  *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TB HOLDINGS II PARENT, INC. |
| MNSCPT | | PANEL COUNSEL FIRM LIST AMENDED (EPL COVERAGE SECTION) |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP |
| 101279 | 03/09 | ADDITIONAL INSUREDS - LISTED AFFILIATES |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TPG PIZZA HOLDINGS, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TRAVEL MANAGEMENT COMPANY |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - UTC LABORATORIES, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - GPT TPG SINGLE TENANT VENTURE LLC |
| MNSCPT | | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| MNSCPT | | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT- |
| MNSCPT | | FOR-PROFIT HEALTH CARE AMENDATORY ENDORSEMENT- UTC LABORATORIES, LLC |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION- 432002 LLC |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION- GAVIN DE BECKER & ASSOCIATES, LP |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION- SLINGSHOT GLOBAL MEDIA, LLC |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION- TPG NEEDLES PARTNERSHIP LP |
| MNSCPT | | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| MNSCPT | | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION- TPG NEEDLES PARTNERSHIP LP |
| MNSCPT | | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION- UTC LABORATORIES, LLC |
| MNSCPT | | EPL COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| MNSCPT | | D&O COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |

©

**END 055**

*Archive Copy*
*BRANCH*
78859 (10/01)                    Page 1 of 2                    **AIGS.000443**
* Subject to Protective Order *

**ENDORSEMENT#** *55*

This endorsement, effective *12:01 am    March 31, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT- CLUB PILATES FRANCHISE, LLC |
| MNSCPT | | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT |
| MNSCPT | | DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES)- |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

©

*END 055*

*Archive Copy*
*BRANCH*                Page 1 of 1

78859 (10/01)

* Subject to Protective Order *

**AIGS.000444**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:  39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Jun 7, 2017
Underwriter Name:PATRICK CAIN                         Printed by:JENNY ROSE FLORES
Underwriter Phone # : 646-857-1481                    Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - LAUREL PARENT HOLDINGS, INC. |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000445**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

June 7, 2017

Direct Dial:   646-857-1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01-308-60-68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646-857-1481

Enc.

1503641

**BRANCH** Archive Copy
* Subject to Protective Order *

**ENDORSEMENT# 56**

This endorsement, effective   *12:01 am      June 1, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to      *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - LAUREL PARENT HOLDINGS, INC.

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.      **NAMED ENTITY**:            LAUREL PARENT HOLDINGS, INC.

              **MAILING ADDRESS**:        201 S DIVISION ST
                                           ANN ARBOR, MI 48104

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**:  DE

Item 2.    **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:    $10,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY**:

      a.  Crisis Management Fund for D&O:                     $50,000

      b.  Costs of Investigation Coverage Sublimit for D&O:        $250,000

      c.  Voluntary Compliance Loss Sublimit of Liability for FLI:     $100,000

      d.  HIPAA Penalties Sublimit of Liability for FLI:           $250,000

      e.  Contract Claim Defense Costs Coverage Sublimit of Liability     $1,000,000
          for D&O:

* Subject to Protective Order *

ENDORSEMENT# *56*   (Continued)

This endorsement, effective *12:01 am     June 1, 2017*          forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

    f.  Side A Excess Limit of Liability                                    $1,000,000

       excess aggregate limit of liability for all

       **Non-Indemnifiable Loss** solely for **Executives** of a **C ompany**

       (including **Defense Costs**) under the **D&O Coverage Section**

       (herein the " **Side A Excess Limit of Liability**")

Item 4.   **CONTINUITY DATES**:

       D&O Coverage Section:      06/01/2017
       EPLI Coverage Section:      09/06/2012
       FLI Coverage Section:        10/06/2013

Item 5.   **PRIOR ACT DATES**:

       D&O Coverage Section:      06/01/2017
       EPLI Coverage Section:      N/A
       FLI Coverage Section:        N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

       D&O Coverage Section:      $25,000
       EPLI Coverage Section:      $25,000
       FLI Coverage Section:        $0

       *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

       **PREMIUM**                        ROLL-IN

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                                  _____
                                    AUTHORIZED REPRESENTATIVE
                          Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT           **BRANCH           END 56**
                  *Archive Copy*                                                        **AIGS.000448**
* Subject to Protective Order *

**ENDORSEMENT#** *57*

This endorsement, effective *12:01 am*     *June 1, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|-------------|--------------|------------|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - LAUREL PARENT HOLDINGS, INC. |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*     *END 057*
*BRANCH*
(1/05)                                         * Subject to Protective Order *                **AIGS.000449**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:  39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective   Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Jun 12, 2017
Printed by: RUBEN PINGOL
Phone # :

Underwriter Name: PATRICK CAIN
Underwriter Phone # :  646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - SUBURBAN HOUSING PARTNERS, LLC |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

NUSFRM

*Archive Copy*
* Subject to Protective Order *

AIGS.000450

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

June 12, 2017

Direct Dial: 646-857-1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE: **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number: **01-308-60-68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646-857-1481

Enc.

1503641

***BRANCH Archive Copy***

* Subject to Protective Order *

**ENDORSEMENT# 58**

This endorsement, effective *12:01 am     May 5, 2017*                    forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - SUBURBAN HOUSING PARTNERS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount  is set forth
in Item 7 of this  endorsement, it is  understood and  agreed that the  following terms  and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:          SUBURBAN HOUSING PARTNERS, LLC

          **MAILING ADDRESS**:      575 WEST CHANDLER BLVD
                                    CHANDLER, AZ 85225


          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:          $5,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:                  $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  N/A
    d. HIPAA Penalties Sublimit of Liability for FLI:        N/A

* Subject to Protective Order *

**ENDORSEMENT# 58**  **(Continued)**

This endorsement, effective  *12:01 am     May 5, 2017*          forms a part of
policy number  *01-308-60-68*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by  *AIG Specialty Insurance Company*

Contract Claim Defense Costs Coverage Sublimit of          $1,000,000
Liability for D&O:

e.  Side A Excess Limit of Liability                        $1,000,000

excess aggregate limit of liability for all
**Non-Indemnifiable Loss** solely for **Executives** of a C
ompany (including **Defense Costs**) under the **D&O
Coverage Section** (herein the " **Side A Excess Limit of
Liability**")

**Item 4.   CONTINUITY DATES**:

D&O Coverage Section:  05/05/2017
EPLI Coverage Section:  N/A
FLI Coverage Section:    N/A

**Item 5.   PRIOR ACT DATES**:

D&O Coverage Section:  05/05/2017
EPLI Coverage Section:  N/A
FLI Coverage Section:    N/A

**Item 6.   RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

D&O Coverage Section: $25,000
EPLI Coverage Section: N/A
FLI Coverage Section:   N/A

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

**PREMIUM 05/05/17-03/31/18          ROLL-IN**

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT          **BRANCH          END 58**
                *Archive Copy*

* Subject to Protective Order *

AIGS.000453

**ENDORSEMENT#** *59*

This endorsement, effective *12:01 am    May 5, 2017*                     forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - SUBURBAN HOUSING PARTNERS, LLC |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*        *END 059*
*BRANCH*
(1/05)                  * Subject to Protective Order *

**AIGS.000454**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:   39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Jun 14, 2017
Printed by: RUBEN PINGOL
Phone # :

Underwriter Name:PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000455**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

June 14, 2017

Direct Dial:  646-857-1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:  **01-308-60-68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646-857-1481

Enc.

1503641

BRANCH Archive Copy
* Subject to Protective Order *
AIGS.000456

**ENDORSEMENT# 60**

This endorsement, effective  *12:01 am*     *March 31, 2017*           forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Item 1 of
Endorsement #26 - Program Participant Endorsement - JONAH ENERGY HOLDINGS, LLC
is deleted in its entirety and replaced with the following:

NAMED ENTITY:              JONAH ENERGY HOLDINGS LLC

MAILING ADDRESS:        707 17TH STREET, SUITE 2700
                                        DENVER, CO 80202

STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:  DE

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        *BRANCH*          *END 60*
                  *Archive Copy*

* Subject to Protective Order *

**AIGS.000457**

**ENDORSEMENT#** *61*

This endorsement, effective *12:01 am    March 31, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          *END 061*
*BRANCH*

* Subject to Protective Order *

AIGS.000458

(1/05)

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No: 39
Insured Name: SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Jul 25, 2017
Printed by: CLEMAR ACE MIRAMBEL
Phone # :

Underwriter Name: PATRICK CAIN
Underwriter Phone # :  646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - MENCODINO FARMS, INC. |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

**NUSFRM**

***Archive Copy***

* Subject to Protective Order *

**AIGS.000459**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

July 25, 2017

Direct Dial:   646- 857- 1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646- 857- 1481

Enc.

1503641

**BRANCH** Archive Copy
* Subject to Protective Order *

**AIGS.000460**

**ENDORSEMENT# *62***

This endorsement, effective *12:01 am*    *July 18, 2017*              forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - MENCODINO FARMS, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.    **NAMED ENTITY**:        MENCODINO FARMS, INC.

        **MAILING ADDRESS**:      300 S GRAND AVE STE LP40
                                       LOS ANGELES, CA 90071

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.    **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:        $10,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:                        $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:        $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:           $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of        $1,000,000
       Liability for D&O:
    f. Side A Excess Limit of Liability                         $1,000,000

       excess aggregate limit of liability for all
       **Non-Indemnifiable Loss** solely for **Executives** of a C
       **ompany** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the " **Side A Excess Limit of**
       **Liability**")

* Subject to Protective Order *

ENDORSEMENT# *62*   (Continued)

This endorsement, effective *12:01 am*   *July 18, 2017*   forms a part of
policy number *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:  07/18/2017
      EPLI Coverage Section:  05/17/2012
      FLI Coverage Section:   07/18/2017

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:  07/18/2017
      EPLI Coverage Section:  05/17/2012
      FLI Coverage Section:   07/18/2017

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

      D&O Coverage Section: $25,000
      EPLI Coverage Section: $25,000
      FLI Coverage Section:   $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **PREMIUM**                    ROLL-IN

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   ***BRANCH***   ***END 62***
***Archive Copy***

* Subject to Protective Order *

AIGS.000462

**ENDORSEMENT#** *63*

This endorsement, effective *12:01 am*   *July 18, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - MENCODINO FARMS, INC. |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*END 063*

*Archive Copy*
*BRANCH*

AIGS.000463

(1/05)

* Subject to Protective Order *

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:      39
Insured Name:   SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective   Date: **March 31, 2017**
Expiration Date: **March 31, 2018**

Print date:  **Aug 3, 2017**
Printed by: **KIM ROVI CABRAL**
Phone # :

Underwriter Name: **PATRICK CAIN**
Underwriter Phone # : **646-857-1481**

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - DISCOVERY DJ HOLDINGS, LLC |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000464**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

August 3, 2017

Direct Dial:   646- 857- 1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646- 857- 1481

Enc.

1503641

*BRANCH* Archive Copy                                                  **AIGS.000465**
* Subject to Protective Order *

**ENDORSEMENT# *64***

This endorsement, effective *12:01 am    July 25, 2017*        forms a part of
policy number   *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - DISCOVERY DJ HOLDINGS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        DISCOVERY DJ HOLDINGS, LLC

        **MAILING ADDRESS**:      7859 WALNUT HILL LANE STE 335
                                DALLAS, TX 75230

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:        $10,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a.  Crisis Management Fund for D&O:                     $50,000
   b.  Costs of Investigation Coverage Sublimit for D&O:   $250,000
   c.  Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
   d.  HIPAA Penalties Sublimit of Liability for FLI:       $250,000

* Subject to Protective Order *

**ENDORSEMENT#** *64*   **(Continued)**

This endorsement, effective *12:01 am*   *July 25, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

e.  Contract Claim Defense Costs Coverage Sublimit of   $1,000,000
    Liability for D&O:

f.  Side A Excess Limit of Liability   $1,000,000

    excess aggregate limit of liability for all
    **Non-Indemnifiable Loss** solely for **Executives** of a C
    ompany (including **Defense Costs**) under the **D&O
    Coverage Section** (herein the " **Side A Excess Limit of
    Liability**")

Item 4.   **CONTINUITY DATES**:

        D&O Coverage Section:  07/25/2017
        EPLI Coverage Section:  07/25/2017
        FLI Coverage Section:   07/25/2017

Item 5.   **PRIOR ACT DATES**:

        D&O Coverage Section:  07/25/2017
        EPLI Coverage Section:  N/A
        FLI Coverage Section:   N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
        Act or Related Wrongful Acts)**:

        D&O Coverage Section: $25,000
        EPLI Coverage Section: $25,000
        FLI Coverage Section:   $0

        *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.   **PREMIUM 7/25/17-3/31/18**   ROLL IN

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   ***BRANCH***   ***END 64***
***Archive Copy***
* Subject to Protective Order *
**AIGS.000467**

**ENDORSEMENT#** *65*

This endorsement, effective *12:01 am    July 25, 2017*                          forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index" Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - DISCOVERY DJ HOLDINGS, LLC |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          *END 065*
*BRANCH*
(1/05)                    * Subject to Protective Order *

**AIGS.000468**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:    39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Aug 24, 2017
Printed by: Hazel Gorordo
Phone # :

Underwriter Name: PATRICK CAIN
Underwriter Phone # :  646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT- MCDERMOTT HOLDINGS, LP |
| ☐ MNSCPT MNSCPT | | THIRD PARTY VIOLATION CLAIMS- SEPARATE RETENTION |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

NUSFRM

*Archive Copy*

* Subject to Protective Order *

AIGS.000469

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

August 24, 2017

Direct Dial:   646- 857- 1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646- 857- 1481

Enc.

1503641

**BRANCH** *Archive Copy*                                        **AIGS.000470**

* Subject to Protective Order *

**ENDORSEMENT# 66**

This endorsement, effective *12:01 am      June 14, 2017*      forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT- MCDERMOTT HOLDINGS, LP**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:                  MCDERMOTT HOLDINGS, LP

    **MAILING ADDRESS**:          1010 N 102ND ST, STE 300

                                                        OMAHA, NE 68114

    **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:        $12,000,000

| Coverage Section | Designated Shared Limit of Liability | Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $2,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                          $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:          $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:             $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of         $3,000,000
      Liability for D&O:
   f. Side A Excess Limit of Liability                           $1,000,000

     excess aggregate limit of liability for all
     **Non-Indemnifiable Loss** solely for **Executives** of a C
     **ompany** (including **Defense Costs**) under the **D&O**
     **Coverage Section** (herein the " **Side A Excess Limit of**
     **Liability**")

* Subject to Protective Order *

**ENDORSEMENT# *66*** (Continued)

This endorsement, effective *12:01 am*      *June 14, 2017*      forms a part of
policy number *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

Item 4.    **CONTINUITY DATES**:

      D&O Coverage Section:  06/14/2017
      EPLI Coverage Section:  08/31/2015
      FLI Coverage Section:   08/31/2015

Item 5.    **PRIOR ACT DATES**:

      D&O Coverage Section:  06/14/2017
      EPLI Coverage Section:  08/31/2015
      FLI Coverage Section:   08/31/2015

Item 6.    **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

      D&O Coverage Section:  $25,000
      EPLI Coverage Section:  $75,000
      FLI Coverage Section:   $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

      **PREMIUM**                    $82,283

Item 8.

      **ANNUAL PREMIUM**              $103,500

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                                  AUTHORIZED REPRESENTATIVE
                      Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT    ***BRANCH***      ***END 66***
         ***Archive Copy***

* Subject to Protective Order *

**AIGS.000472**

ENDORSEMENT# *67*

This endorsement, effective *12:01 am     June 14, 2017*          forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

## THIRD PARTY VIOLATION CLAIMS- SEPARATE RETENTION
## (EPL COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that solely with regard to the coverage afforded in Endorsement #66- "PROGRAM PARTICIPANT ENDORSEMENT- MCDERMOTT HOLDINGS, LP", Clause 5. **RETENTION CLAUSE** of the **EPL Coverage Section** is amended by adding the following paragraph at the end thereof:

> Notwithstanding the foregoing, with regard to any **Third Party Violation Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from such **Third Party Violation Claim** which is in excess of a Retention amount of $250,000, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: all (i) **Indemnifiable Loss**; and (ii) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**. In the event a **Claim** triggers more than one applicable retention amount, only the highest such amount shall apply, which amount shall apply to all **Loss** under such **Claim**.

For purposes of this endorsement only, the term " **Third Party Violation Claim**" means any **Claim** brought against a temporary employee alleging a **Third Party Violation**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      *BRANCH         END 67*
             *Archive Copy*

* Subject to Protective Order *

**AIGS.000473**

**ENDORSEMENT#** *68*

This endorsement, effective *12:01 am    June 14, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|-------------|--------------|------------|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT- MCDERMOTT HOLDINGS, LP |
| MNSCPT | | THIRD PARTY VIOLATION CLAIMS- SEPARATE RETENTION |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          *END 068*
*BRANCH*
(1/05)                                                   **AIGS.000474**

* Subject to Protective Order *

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:      39
Insured Name:   SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: **March 31, 2017**
Expiration Date: **March 31, 2018**

Print date:  **Aug 30, 2017**
Printed by: **Jaythde Deuna**
Phone # :

Underwriter Name:**PATRICK CAIN**
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | DISCOVERY/RUNOFF ELECTED |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000475**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

---

August 30, 2017

Direct Dial:   646- 857- 1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646- 857- 1481

Enc.

1503641

BRANCH Archive Copy
* Subject to Protective Order *

AIGS.000476

ENDORSEMENT# *69*

This endorsement, effective *12:01 am    August 17, 2017*                 forms a part of
policy number   *01-308-60-68*
issued to      *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### DISCOVERY/RUNOFF ELECTED
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the additional  premium of $34,500 (less a  return premium of$14,237,
for a net premium  due of $20,263),  it is hereby  understood and agreed  that, solely with
regard to the coverage afforded under Endorsement #10, Program Participant Endorsement
- ALPHABET ENERGY, INC., and pursuant to the  terms and conditions of Clause 8
"DISCOVERY CLAUSE" of  the General Terms  and Conditions, and  solely with  respect to
the **Coverage Section(s)** listed in paragraph 5., below, as of 12:01 am August 17, 2017  ("
**Effective Time**") this policy is amended as follows:

1.      Clause 8. "DISCOVERY CLAUSE" of the General Terms and Conditions is deleted in
        its entirety and replaced with the following:

        8.      RUNOFF/DISCOVERY CLAUSE

                The **Named Entity** shall have the right to a period  of [6] year(s) following the
                **Effective Time** (herein referred to as the " **Discovery Period**") in which to give
                written notice  to the  **Insurer**  of **Claim(s)**  first made  against  the **Insured(s)**
                during said **Discovery Period** for any **Wrongful  Act(s)** occurring on or prior to
                the **Effective Time** and otherwise covered by this **Policy**.

2.      Clause 7. "CANCELLATION CLAUSE" of the  General  Terms  and Conditions is
        deleted in its entirety and replaced with the following:

        7.      CANCELLATION CLAUSE

                This policy may  not be  canceled, other than  by or  on behalf  of **Insurer** for
                non-payment of premium  (including the  nonpayment of any  additional
                premium for this endorsement). In  the event of nonpayment of  premium the
                **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing
                to the **Named Entity**, by  registered, certified, or other first  class mail, at the
                **Named Entity's**  address as shown in Item 1 of the  Declarations,  written
                notice stating when, not less than the minimum time allowed pursuant to the
                applicable state law, the cancellation shall be effective.  The  mailing of such
                notice as aforesaid shall be  sufficient proof of notice.   The **Policy Period**  (or
                **Discovery Period**,  as  the  case  may be) terminates  at  the date and  hour
                specified in such notice.

                The premium for this policy shall be fully earned at inception.

* Subject to Protective Order *

**ENDORSEMENT# *69***   (Continued)

This endorsement, effective   *12:01 am*     *August 17, 2017*      forms a part of
policy number   *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

3.    Clause 9. "CHANGE  IN CONTROL OF  NAMED ENTITY" of  the General Terms  and
Conditions, is deleted in its entirety.

4.    It is further  understood and  agreed that this  policy shall  not provide  coverage for
any **Claim(s)** alleging **Wrongful Act(s)** occurring after the **Effective Time**.

5.    The coverage  afforded by  this endorsement shall  be applicable  solely to the
following **Coverage Section(s)**:

<u>APPLICABLE COVERAGE SECTIONS</u>:

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT          **BRANCH            END 69**
                     *Archive Copy*
* Subject to Protective Order *

**AIGS.000478**

**ENDORSEMENT#** *70*

This endorsement, effective *12:01 am   August 17, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | DISCOVERY/RUNOFF ELECTED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          ***END 070***
**BRANCH**          <span style="color:red">* Subject to Protective Order *</span>

(1/05)                                                                      **AIGS.000479**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:     39
Insured Name:   SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: **March 31, 2017**
Expiration Date: **March 31, 2018**

Print date:  **Sep 1, 2017**
Printed by: GERALDINE CUDANIN
Phone # :

Underwriter Name:PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT 100692 | | DISCOVERY/RUNOFF ELECTED |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

Page 1 of 1

**NUSFRM**

*Archive Copy*
* Subject to Protective Order *

**AIGS.000480**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

---

September 1, 2017

Direct Dial:   646-857-1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:   **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01-308-60-68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646-857-1481

Enc.

1503641

**BRANCH** Archive Copy                           **AIGS.000481**
* Subject to Protective Order *

**ENDORSEMENT# 71**

This endorsement, effective   *12:01 am     August 21, 2017*          forms a part of
policy number   *01-308-60-68*
issued to      *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

### DISCOVERY/RUNOFF ELECTED
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the additional  premium of $37,500 (less a  return premium of $15,200, for a net premium  due of $22,300),  it is hereby  understood and agreed  that, solely with regard to the coverage afforded under Endorsement #15, Program Participant Endorsement - EMPOWER MICRO SYSTEMS INC., and pursuant to  the terms and conditions of Clause 8 "DISCOVERY CLAUSE" of  the General Terms  and Conditions, and  solely with  respect to the **Coverage  Section(s)** listed in paragraph 5., below,  as of  12:01  am  08/21/2017 ( **"Effective Time"**) this policy is amended as follows:

1.    Clause 8. "DISCOVERY CLAUSE" of the General Terms and Conditions is deleted in its entirety and replaced with the following:

    8.    RUNOFF/DISCOVERY CLAUSE

        The **Named Entity** shall have the right to a period  of [6] year(s) following the **Effective Time** (herein referred to as the **"Discovery Period"**) in which to give written notice  to the  **Insurer**  of **Claim(s)**  first made  against  the **Insured(s)** during said **Discovery Period** for any **Wrongful  Act(s)** occurring on or prior to the **Effective Time** and otherwise covered by this **Policy**.

2.    Clause 7. "CANCELLATION  CLAUSE" of the  General  Terms  and  Conditions is deleted in its entirety and replaced with the following:

    7.    CANCELLATION CLAUSE

        This policy may  not be  canceled, other than  by or  on behalf  of **Insurer** for non-payment of premium  (including the  nonpayment of any  additional premium for this endorsement). In  the event of nonpayment of  premium the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by  registered, certified, or other first  class mail, at the **Named Entity's**  address as shown  in Item 1 of the  Declarations,  written notice stating when, not less than the minimum time allowed pursuant to the applicable state law, the cancellation shall be effective.  The  mailing of such notice as aforesaid shall be  sufficient proof of notice.   The **Policy Period**  (or **Discovery Period**,  as  the  case  may be) terminates  at  the  date  and  hour specified in such notice.

        The premium for this policy shall be fully earned at inception.

3.    Clause 9. "CHANGE  IN CONTROL OF  NAMED ENTITY" of  the General Terms  and Conditions, is deleted in its entirety.

* Subject to Protective Order *

**ENDORSEMENT#** *71*   **(Continued)**

This endorsement, effective *12:01 am*    *August 21, 2017*        forms a part of
policy number   *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*


by    *AIG Specialty Insurance Company*


4.    It is further  understood and  agreed that this  policy shall  not provide  coverage for
any **Claim(s)** alleging **Wrongful Act(s)** occurring after the **Effective Time**.

5.    The  coverage  afforded  by  this  endorsement  shall   be  applicable  solely  to  the
following **Coverage Section(s)**:

<u>APPLICABLE COVERAGE SECTIONS</u>:

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
100692 (05/09)   ***BRANCH***       ***END 71***
***Archive Copy***
* Subject to Protective Order *      **AIGS.000483**

## ENDORSEMENT# *72*

This endorsement, effective *12:01 am*   *August 21, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 100692 | 05/09 | DISCOVERY/RUNOFF ELECTED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*   *END 072*
*BRANCH*
(1/05)                    * Subject to Protective Order *                    **AIGS.000484**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:     39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Sep 25, 2017
Printed by: CHRISHA MARIE ROSE GALVEY
Phone # :

Underwriter Name:PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000485**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

September 25, 2017

Direct Dial:   646-857-1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01-308-60-68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646-857-1481

Enc.

1503641

**BRANCH** *Archive Copy*                                                      **AIGS.000486**
* Subject to Protective Order *

ENDORSEMENT# *73*

This endorsement, effective *12:01 am     July 12, 2017*     forms a part of
policy number  *01-308-60-68*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Item 1 of
Endorsement #31 -  Program Participant Endorsement -  SLINGSHOT GLOBAL MEDIA, LLC
is deleted in its entirety and replaced with the following:

NAMED ENTITY:        PLATFORM ONE MEDIA, LLC

MAILING ADDRESS:     16000 VENTURA BLVD
                     STE 900, C/O GETTLESON, WITZER & O'CONNOR
                     ENCINO, CA 91436

STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:  DE

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

© American International Group, Inc. All rights reserved.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        *BRANCH        END 73*
              *Archive Copy*

* Subject to Protective Order *

**AIGS.000487**

**ENDORSEMENT#** *74*

This endorsement, effective *12:01 am      July 12, 2017*                    forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*      *END 074*
(1/05)      *BRANCH*      * Subject to Protective Order *      **AIGS.000488**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No: 39
Insured Name: SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: **March 31, 2017**
Expiration Date: **March 31, 2018**

Print date: **Nov 1, 2017**
Printed by: **NOVELYN SALAS**
Phone # :

Underwriter Name: **PATRICK CAIN**
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | DISCOVERY/RUNOFF ELECTED |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000489**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

November 1, 2017

Direct Dial:   646-857-1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01-308-60-68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646-857-1481

Enc.

1503641

*BRANCH Archive Copy*                                              **AIGS.000490**
* Subject to Protective Order *

**ENDORSEMENT# *75***

This endorsement, effective   *12:01 am*      *October 23, 2017*      forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### DISCOVERY/RUNOFF ELECTED
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the additional premium of $48,000 (less a return premium of $13,952, for a net premium due of $34,048), it is hereby understood and agreed that, solely with regard to the coverage afforded under Endorsement #11, Program Participant Endorsement - ANGIES HOLDINGS, LLC, and pursuant to the terms and conditions of Clause 8 "DISCOVERY CLAUSE" of the General Terms and Conditions, and solely with respect to the **Coverage Section(s)** listed in paragraph 5., below, as of 12:01 am 10/23/2017 ("**Effective Time**") this policy is amended as follows:

1.    Clause 8. "DISCOVERY CLAUSE" of the General Terms and Conditions is deleted in its entirety and replaced with the following:

8.    RUNOFF/DISCOVERY CLAUSE

The **Named Entity** shall have the right to a period of [6] year(s) following the **Effective Time** (herein referred to as the "**Discovery Period**") in which to give written notice to the **Insurer** of **Claim(s)** first made against the **Insured(s)** during said **Discovery Period** for any **Wrongful Act(s)** occurring on or prior to the **Effective Time** and otherwise covered by this **Policy**.

2.    Clause 7. "CANCELLATION CLAUSE" of the General Terms and Conditions is deleted in its entirety and replaced with the following:

7.    CANCELLATION CLAUSE

This policy may not be canceled, other than by or on behalf of **Insurer** for non-payment of premium (including the nonpayment of any additional premium for this endorsement). In the event of nonpayment of premium the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1 of the Declarations, written notice stating when, not less than the minimum time allowed pursuant to the applicable state law, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** (or **Discovery Period**, as the case may be) terminates at the date and hour specified in such notice.

The premium for this policy shall be fully earned at inception.

3.    Clause 9. "CHANGE IN CONTROL OF NAMED ENTITY" of the General Terms and Conditions, is deleted in its entirety.

4.    It is further understood and agreed that this policy shall not provide coverage for any **Claim(s)** alleging **Wrongful Act(s)** occurring after the **Effective Time**.

*Archive Copy*
* Subject to Protective Order *

ENDORSEMENT# *75*   (Continued)

This endorsement, effective *12:01 am    October 23, 2017*    forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

5.    The coverage afforded by this endorsement shall be applicable solely to the
following **Coverage Section(s)**:

APPLICABLE COVERAGE SECTIONS:

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT         **BRANCH        END 75**
                   *Archive Copy*
* Subject to Protective Order *

**AIGS.000492**

**ENDORSEMENT#** *76*

This endorsement, effective *12:01 am    October 23, 2017*                   forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | DISCOVERY/RUNOFF ELECTED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          ***END 076***

*BRANCH*          * Subject to Protective Order *          **AIGS.000493**

(1/05)          Page 1 of 1

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No: 39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: **March 31, 2017**
Expiration Date: **March 31, 2018**

Print date: **Oct 31, 2017**
Printed by:**Geli Cruz**
Phone # : **6328635800**

Underwriter Name:**PATRICK CAIN**
Underwriter Phone # : **646-857-1481**

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ QF0407 100692 | | DISCOVERY - RUNOFF ELECTED (SPECIFIED COVERAGE SECTIONS) |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000494**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

October 31, 2017

Direct Dial:   646- 857- 1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646- 857- 1481

Enc.

1503641

**BRANCH** Archive Copy
* Subject to Protective Order *

**AIGS.000495**

**ENDORSEMENT#** *75*

This endorsement, effective *12:01 am     October 23, 2017*     forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### DISCOVERY/RUNOFF ELECTED
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the additional premium of *$48,000*, it is hereby understood and agreed that, pursuant to the terms and conditions of Clause 8 "DISCOVERY CLAUSE" of the General Terms and Conditions, and solely with respect to the **Coverage Section(s)** listed in paragraph 5., below, as of 12:01 am *October 23, 2017* ("**Effective Time**") this policy is amended as follows:

1.   Clause 8. "DISCOVERY CLAUSE" of the General Terms and Conditions is deleted in its entirety and replaced with the following:

   8.   RUNOFF/DISCOVERY CLAUSE

      The **Named Entity** shall have the right to a period of *6* year(s) following the **Effective Time** (herein referred to as the "**Discovery Period**") in which to give written notice to the **Insurer** of **Claim(s)** first made against the **Insured(s)** during said **Discovery Period** for any **Wrongful Act(s)** occurring on or prior to the **Effective Time** and otherwise covered by this **Policy**.

2.   Clause 7. "CANCELLATION CLAUSE" of the General Terms and Conditions is deleted in its entirety and replaced with the following:

   7.   CANCELLATION CLAUSE

      This policy may not be canceled, other than by or on behalf of **Named Entity** for non-payment of premium. The **Insurer** may only cancel this policy in the event of nonpayment of premium by the **Named Entity** (including the nonpayment of any additional premium for this endorsement). The **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1 of the Declarations, written notice stating when, not less than the minimum time allowed pursuant to the applicable state law, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** (or **Discovery Period**, as the case may be) terminates at the date and hour specified in such notice.

      The premium for this policy shall be fully earned at inception.

3.   Clause 9. "CHANGE IN CONTROL OF NAMED ENTITY" of the General Terms and Conditions, is deleted in its entirety.

4.   It is further understood and agreed that this policy shall not provide coverage for any **Claim(s)** alleging **Wrongful Act(s)** occurring after the **Effective Time**.

© All rights reserved.
*END 075*

* Subject to Protective Order *

**ENDORSEMENT#** *75*     (continued)

5.   The coverage afforded by this endorsement shall be applicable solely to the following **Coverage Section(s)**:

<u>APPLICABLE COVERAGE SECTIONS:</u>

*D&O Coverage Section*
*EPL Coverage Section*
*FLI Coverage Section*

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.
***END 075***

100692 (5/09)   **BRANCH** *Archive Copy*        Page 2 of 2              **AIGS.000497**
* Subject to Protective Order *

**ENDORSEMENT#** *76*

This endorsement, effective *12:01 am    October 23, 2017*                forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|-------------|--------------|------------|
| 100692 | 05/09 | DISCOVERY - RUNOFF ELECTED (SPECIFIED COVERAGE SECTIONS) |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          *END 076*
(1/05)      *BRANCH*          <span style="color:red">* Subject to Protective Order *</span>          **AIGS.000498**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:     39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: **March 31, 2017**
Expiration Date: **March 31, 2018**

Print date: **Nov 15, 2017**
Printed by: **Mae Kenneth VILLEGAS**
Phone # :

Underwriter Name:**PATRICK CAIN**
Underwriter Phone # : **646-857-1481**

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000499**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

November 15, 2017

Direct Dial:   646- 857- 1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:   **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646- 857- 1481

Enc.

1503641

**BRANCH** Archive Copy

* Subject to Protective Order *

**AIGS.000500**

ENDORSEMENT# 77

This endorsement, effective *12:01 am   November 8, 2017*   forms a part of
policy number   *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Item 1 of Endorsement #62 - Program Participant Endorsement - MENDOCINO FARMS, INC. is deleted in its entirety and replaced with the following:

NAMED ENTITY:        MENDOCINO FARMS, INC.

MAILING ADDRESS:     13103 VENTURA BLVD. STE 100
                     STUDIO CITY, CA 91604

STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:  DE

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        *BRANCH        END 77*
              *Archive Copy*
* Subject to Protective Order *        **AIGS.000501**

**ENDORSEMENT# *78***

This endorsement, effective *12:01 am    November 8, 2017*          forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          *END 078*
*BRANCH*

(1/05)                    * Subject to Protective Order *

AIGS.000502

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No: 39
Insured Name: SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date: Nov 16, 2017
Printed by: Mae Kenneth VILLEGAS
Phone # :

Underwriter Name: PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000503**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005



**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*

---

November 16, 2017

Direct Dial:   646- 857- 1481

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**

Dear Virginia

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
Executive Liability
646- 857- 1481

Enc.

1503641

***BRANCH*** *Archive Copy*

**AIGS.000504**

* Subject to Protective Order *

**ENDORSEMENT# 79**

This endorsement, effective  *12:01 am     November 8, 2017*        forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Item 1 of Endorsement # 6 - Program Participant Endorsement - 432002 LLC is deleted in its entirety and replaced with the following:

NAMED ENTITY:              V2 VENTURES GROUP LLC

MAILING ADDRESS:         4600 MADISON AVE STE 1000
                                        KANSAS CITY, MO 64112

STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:  DE

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH            END 79**
                    **Archive Copy**
* Subject to Protective Order *
**AIGS.000505**

**ENDORSEMENT# *80***

This endorsement, effective *12:01 am     November 8, 2017*          forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          *END 080*
(1/05)          *BRANCH*          * Subject to Protective Order *          **AIGS.000506**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:   39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Underwriter Name:PATRICK CAIN
Underwriter Phone # : 646-857-1481

Print date:  Dec 20, 2017
Printed by:Geli Cruz
Phone # :  (415) 836-2831

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

NUSFRM

***Archive Copy***

* Subject to Protective Order *

AIGS.000507

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



December 20, 2017

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

    Policy Number:   **01- 308- 60- 68**
    Product:         PrivateEdge Plus
    Policy Period:   March 31, 2017 - March 31, 2018

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

                              Very truly yours,


                              PATRICK CAIN
                              Underwriting Analyst
                              646- 857- 1481
                              Patrick.Cain@aig.com


    Enc.


1503641

*BRANCH Archive Copy*                                    **AIGS.000508**
* Subject to Protective Order *

**ENDORSEMENT # 81**

This endorsement, effective *12:01 am     December 18, 2017*     forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Item 1 of
Endorsement # 6 - Program Participant Endorsement - 432002 LLC is deleted in its
entirety and replaced with the following:

NAMED ENTITY:              V2 VENTURES GROUP LLC

MAILING ADDRESS:        300 E. 39TH STREET, STE 4E
                                        KANSAS CITY, MO 64111


STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY:  DE


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH           END 81**
                **Archive Copy**
* Subject to Protective Order *

**AIGS.000509**

**ENDORSEMENT# *82***

This endorsement, effective *12:01 am     December 18, 2017*     forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index" Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|-------------|--------------|------------|
| MNSCPT |  | ITEM 1 OF PROGRAM PARTICIPANT ENDORSEMENT AMENDED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*     *END 082*
*BRANCH*

* Subject to Protective Order *

(1/05)

**AIGS.000510**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:  39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Jan 31, 2018
Printed by: MOISES BANZUELA
Phone # :

Underwriter Name:PATRICK CAIN
Underwriter Phone # :  646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000511**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



January 31, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:  **01- 308- 60- 68**
Product:        PrivateEdge Plus
Policy Period:  March 31, 2017 - March 31, 2018

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
646- 857- 1481
Patrick.Cain@aig.com

Enc.

1503641

*BRANCH Archive Copy*                                    **AIGS.000512**
* Subject to Protective Order *

**ENDORSEMENT# 83**

This endorsement, effective  *12:01 am      September 29, 2017*     forms a part of
policy number   *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT
(WITH SUBLIMIT)**

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement **# 76- PROGRAM PARTICIPANT ENDORSEMENT- H&W FRANCHISE HOLDINGS, LLC,** it is hereby understood and agreed that the **General Terms & Conditions** and the **D&O Coverage Section** are amended as follows:

1. Clause 2. **DEFINITIONS** of the **D&O Coverage Section** are amended as follows:

   (a) Paragraph (s), " **Individual Insured**," is amended to include the following paragraph at the end of that definition:

   " **Individual Insured**" also means any **Employed Lawyer(s)** of a **Company**, but only for a **Claim(s)** alleging a **Wrongful Act** in such **Employed Lawyer's(s')** capacity as such, subject to the terms, conditions and exclusions of this policy and this endorsement.

   (b) For purposes of the coverage afforded under this endorsement, paragraph (cc), " **Wrongful Act**," is deleted in its entirety and replaced with the following:

   (cc)   " **Wrongful Act**" means any act, error or omission of an **Employed Lawyer(s)**, in the rendering or failure to render professional legal services for a **Company**, but solely in his or her capacity as such; provided, however, the term " **Wrongful Act**" shall not mean, and this endorsement does not provide coverage for, any act, error or omission in connection with any activities by such **Employed Lawyer(s)**: (1) which are not related to such **Employed Lawyer's(s')** employment with a **Company**; (2) which are not rendered on the behalf of a **Company** at the **Company's** written request; or (3) which are performed by the **Employed Lawyer(s)** for others for a fee.

   (c) Clause 2. **DEFINITIONS** of the **D&O Coverage Section** is further amended to include the following definition at the end thereof:

   (dd)   " **Employed Lawyer**" means any **Employee** of a **Company**, in their capacity as such, who is admitted to practice law and who is or was employed as a lawyer full time and salaried by a **Company**.

2. Clause 4. **EXCLUSIONS** of the **D&O Coverage Section** is amended to include the following paragraph at the end of that Clause:

* Subject to Protective Order *

ENDORSEMENT# *83* (Continued)

This endorsement, effective *12:01 am    September 29, 2017*    forms a part of policy number *01-308-60-68*

issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

It is understood and agreed that solely with respect to the coverage afforded by this endorsement, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Employed Lawyer(s)**:

(aa)    alleging, arising out of, based upon or attributable to any **Wrongful Act** occurring at a time when the **Employed Lawyer(s)** was not employed as a lawyer by a **Company**;

(bb)    alleging, arising out of, based upon or attributable to as of 04/15/2017, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(cc)    alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as of 04/15/2017, an **Employed Lawyer(s)** knew or could have reasonably foreseen that such **Wrongful Act** could give rise to a **Claim**; or

(dd)    alleging, arising out of, based upon or attributable to any activities by an **Employed Lawyer(s)** as an officer or director of any entity, other than a **Company**.

3.    Clause 5. **LIMIT OF LIABILITY** of the **D&O Coverage Section** is amended to include the following provision at the end thereof:

**EMPLOYED LAWYERS SUBLIMIT OF LIABILITY**

The maximum limit of the **Insurer's** liability for all **Loss** arising from coverage as is afforded by this endorsement for **Claim(s)** alleging a **Wrongful Act** by an **Employed Lawyer(s)** shall be $5,000,000 (hereinafter the " **Employed Lawyer Coverage Sublimit of Liability**"). This **Employed Lawyer Coverage Sublimit of Liability** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** stated in the Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the Declarations.

4.    The **D&O Coverage Section** is further amended to include the following provision at the end thereof:

*BRANCH* *Archive Copy* *END 83*    **AIGS.000514**
* Subject to Protective Order *

**ENDORSEMENT# *83*   (Continued)**

This endorsement, effective   *12:01 am*      *September 29, 2017*      forms a part of
policy number   *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**EL-1.     EMPLOYED LAWYERS COVERAGE PROVISIONS**

It is understood  and agreed  that with  respect to  the coverage  afforded under
this endorsement, a **Company**  will be conclusively  deemed to have  indemnified
the **Employed Lawyer(s)** to the extent that the **Company** is permitted or required
to indemnify  them pursuant  to law, common or  statutory, or  contract, or the
charter or by-laws of  the **Company**.  The  **Company** hereby agrees to  indemnify
the **Employed  Lawyer(s)** to  the  fullest extent  permitted by  law,  including the
making in good faith of any required application for court approval.

It is  further  understood  and  agreed that  coverage as  is  afforded under  this
endorsement shall  apply  to a **Wrongful  Act(s)** only  if  one or  more **Insured(s)**
(other  than an **Employed Lawyer(s)**)  are and remain co-defendants  in the action
along  with an **Employed Lawyer(s)**.

5. Clause 11. **OTHER INSURANCE** is amended  to include the  following paragraph at  the
end thereof:

**11.    OTHER INSURANCE**

Notwithstanding  the  foregoing,  it is  understood  and  agreed  that  the  coverage
provided  by this  endorsement  is  specifically  excess  over any  other  valid or
collectible lawyers' professional insurance, legal malpractice or errors and omissions
insurance and shall  only drop down  and be primary  insurance only in  the event of
exhaustion of such other insurance due to losses paid thereunder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT         **BRANCH          END 83**
**Archive Copy**
* Subject to Protective Order *

AIGS.000515

**ENDORSEMENT#** *84*

This endorsement, effective *12:01 am     September 29, 2017*          forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

(1/05)

*Archive Copy*     *END 084*
*BRANCH*     * Subject to Protective Order *

**AIGS.000516**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No:     39
Insured Name:   SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Mar 13, 2018
Printed by: NOVELYN SALAS
Phone # :

Underwriter Name: PATRICK CAIN
Underwriter Phone # :  646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

NUSFRM

*Archive Copy*

* Subject to Protective Order *

AIGS.000517

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



March 13, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:  **01- 308- 60- 68**
Product:  PrivateEdge Plus
Policy Period:  March 31, 2017 - March 31, 2018

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
646- 857- 1481
Patrick.Cain@aig.com

Enc.

1503641

*BRANCH* Archive Copy
AIGS.000518
* Subject to Protective Order *

**ENDORSEMENT# 88**

This endorsement, effective *12:01 am   March 1, 2018*                    forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS
### COVERAGE FOR ACQUIRED SUBSIDIARY
### (EPL & FLI COVERAGE SECTION)

It is hereby understood and agreed  that solely with regard to  the coverage afforded under Endorsement #66-  "PROGRAM PARTICIPANT ENDORSEMENT- MCDERMOTT HOLDINGS, LP" the policy is amended as follows:

1. Solely with respect to the **EPL** and **FLI Coverage Sections**, the definition of " **Subsidiary**" in Clause 2. "DEFINITIONS" of the **General Terms and Conditions** is amended by inserting the following at the end thereof:

> Notwithstanding the foregoing, coverage  as is afforded  under the **EPL**  and  **FLI Coverage Sections** with respect to a **Claim** against the **Acquired Entity** (as defined below) or any **Individual  Insured** or **Plan** thereof  shall apply to **Wrongful Acts** committed  or allegedly  committed  prior to the effective  time that the **Named Entity** obtained **Management Control** of  the **Acquired Entity**.

2. In Clause  2. **DEFINITIONS** of  the **General  Terms and  Conditions**, the definition of  " **Continuity Date**" is amended to include the following at the end thereof:

Notwithstanding the foregoing:

(i) solely with  respect to  the **EPL  Coverage  Section**, the  **Continuity Date**  for **Claims** first made  against the  **Acquired  Entity** or  any  **Individual Insured**  thereof  shall be 06/13/2003; and

(i) solely with respect to the **FLI Coverage Section**, the **Continuity Date**  for **Claims** first made the **Acquired Entity** or any **Individual Insured** thereof shall be 07/17/2000.

3. As used in this  endorsement,  the term **"Acquired  Entity"** means PPR  HOLDING CORPORATION.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

**AIGS.000519**

* Subject to Protective Order *

**ENDORSEMENT#** *89*

This endorsement, effective *12:01 am*     *March 1, 2018*          forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*     *END 089*
*BRANCH*
(1/05)                    * Subject to Protective Order *                    **AIGS.000520**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No: 39
Insured Name: SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017
Expiration Date: March 31, 2018

Print date:  Mar 23, 2018
Printed by: HAROLD HUISO
Phone # :

Underwriter Name: PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | POLICY PERIOD EXTENDED ENDORSEMENT |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

NUSFRM

*Archive Copy*

* Subject to Protective Order *

AIGS.000521

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



March 23, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE: **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 308- 60- 68**
Product:            PrivateEdge Plus
Policy Period:    March 31, 2017 - March 31, 2018

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
646- 857- 1481
Patrick.Cain@aig.com

Enc.

1503641

*BRANCH* Archive Copy                                    **AIGS.000522**
* Subject to Protective Order *

ENDORSEMENT# *90*

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number  *01-308-60-68*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### POLICY PERIOD EXTENDED ENDORSEMENT
### (SPECIFIED COVERAGE SECTIONS)
### (DECLARATIONS PAGE)

In consideration of the additional premium charged of $12,525, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement **#16 PROGRAM PARTICIPANT ENDORSEMENT- EVERGREEN INDUSTRIAL PROPERTIES, LLC,** solely with respect to the **Specified Coverage Section(s)**, Item 2 " **POLICY PERIOD**" of the policy Declarations is deleted in its entirety and replaced with the following:

| 2 | **POLICY PERIOD**: | Inception Date: | 03/31/2017 | Expiration Date: | 09/30/2018 |
|---|---|---|---|---|---|
| | | 12:01 A.M. at the address stated in Item 1 | | | |

The Policy Period is not extended for any **Coverage Section** other than the **Specified Coverage Section(s)**.

It is further understood and agreed that the **Policy Aggregate Limit of Liability** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability** for the expanded **Policy Period** shall be part of and not in addition to the **Policy Aggregate Limit of Liability** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability** stated in the Declarations.

**SPECIFIED COVERAGE SECTION(S)**
D&O Coverage Section

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   *BRANCH*   *END 90*
*Archive Copy*

AIGS.000523

* Subject to Protective Order *

**ENDORSEMENT#** *91*

This endorsement, effective *12:01 am     March 31, 2018*                    forms a part of
policy number  *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | POLICY PERIOD EXTENDED ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*END 091*

*Archive Copy*
*BRANCH*

(1/05)

* Subject to Protective Order *

**AIGS.000524**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68

Division No:  39

Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2017

Expiration Date: March 31, 2018

Print date:  Mar 30, 2018

Printed by: JESSON AMANEO

Underwriter Name:PATRICK CAIN

Underwriter Phone # :  646-857-1481

Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | POLICY PERIOD EXTENDED ENDORSEMENT |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

**NUSFRM**

***Archive Copy***

* Subject to Protective Order *

**AIGS.000525**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



March 30, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

  Policy Number:  **01- 308- 60- 68**
  Product:        PrivateEdge Plus
  Policy Period:  March 31, 2017 - March 31, 2018

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.



                              Very truly yours,


                              PATRICK CAIN
                              Underwriting Analyst
                              646- 857- 1481
                              Patrick.Cain@aig.com



  Enc.


1503641

*BRANCH Archive Copy*
* Subject to Protective Order *

AIGS.000526

**ENDORSEMENT# *92***

This endorsement, effective  *12:01 am      March 31, 2018*      forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### POLICY PERIOD EXTENDED ENDORSEMENT
### (SPECIFIED COVERAGE SECTIONS)
### (DECLARATIONS PAGE)

In consideration of the additional premium charged of  $2,295, it is hereby understood and agreed that, solely  with regard to  the coverage afforded  in Endorsement **#12  PROGRAM PARTICIPANT ENDORSEMENT- ANUVIA  PLANT NUTRIENT  HOLDINGS, LLC,**  solely with respect to  the **Specified Coverage Section(s),** Item 2  **" POLICY PERIOD"** of the policy Declarations is deleted in its entirety and replaced with the following:

| 2 | **POLICY PERIOD** | Inception Date: | 03/31/2017 | Expiration Date: | 05/01/2018 |
|---|---|---|---|---|---|
| | | | 12:01 A.M. at the address stated in Item 1 | | |

The Policy  Period  is  not  extended  for  any **Coverage  Section** other  than  the **Specified Coverage Section(s).**

It  is  further understood  and agreed  that the **Policy Aggregate  Limit  of Liability** and any applicable **Separate Limit  of Liability**  or **Shared  Limit of Liability** for  the expanded **Policy Period** shall be part of and not in addition to the **Policy Aggregate Limit  of Liability** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability** stated in the Declarations.

**SPECIFIED COVERAGE SECTION(S)**

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        *BRANCH        END 92*
              *Archive Copy*                              **AIGS.000527**

* Subject to Protective Order *

**ENDORSEMENT#** *93*

This endorsement, effective *12:01 am     March 31, 2018*                      forms a part of
policy number   *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | POLICY PERIOD EXTENDED ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*END 093*

*Archive Copy*
*BRANCH*

* Subject to Protective Order *

(1/05)

**AIGS.000528**

**FORMS SCHEDULE**

Policy Number: 01-308-60-68
Division No: 39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: **March 31, 2017**
Expiration Date: **March 31, 2018**

Print date:  **Mar 31, 2018**
Underwriter Name:**PATRICK CAIN**
Underwriter Phone # :  **646-857-1481**

Printed by:**NOVELYN SALAS**
Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | POLICY PERIOD EXTENDED ENDORSEMENT |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

**NUSFRM**

***Archive Copy***
* Subject to Protective Order *

**AIGS.000529**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



March 31, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:  **01- 308- 60- 68**
Product:  PrivateEdge Plus
Policy Period:  March 31, 2017 - March 31, 2018

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
646- 857- 1481
Patrick.Cain@aig.com

Enc.

1503641

*BRANCH Archive Copy*                                    **AIGS.000530**
* Subject to Protective Order *

ENDORSEMENT# *94*

This endorsement, effective *12:01 am     March 31, 2018*        forms a part of
policy number  *01-308-60-68*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

## POLICY PERIOD EXTENDED ENDORSEMENT
## (SPECIFIED COVERAGE SECTIONS)
## (DECLARATIONS PAGE)

In consideration of the additional premium charged of  $4,149, it is hereby understood and
agreed that, solely  with regard to  the coverage afforded  in Endorsement **#26  PROGRAM
PARTICIPANT ENDORSEMENT**- JONAH  ENERGY  HOLDINGS,  LLC, solely with respect to
the **Specified Coverage Section(s)**,  Item 2 " **POLICY PERIOD**" of the policy Declarations  is
deleted in its entirety and replaced with the following:

| 2 | **POLICY PERIOD**: | Inception Date: | 03/31/2017 | Expiration Date: | 04/30/2018 |
|---|---|---|---|---|---|
|   |   | 12:01 A.M. at the address stated in Item 1 |   |   |   |

The Policy  Period  is  not  extended  for  any **Coverage Section** other than  the **Specified
Coverage Section(s)**.

It is  further understood  and agreed  that the **Policy Aggregate  Limit of Liability** and any
applicable **Separate Limit  of Liability**  or **Shared  Limit of  Liability** for  the expanded **Policy
Period** shall be part of and not in addition to the **Policy Aggregate Limit  of Liability** and any
applicable **Separate Limit of Liability** or **Shared Limit of Liability** stated in the Declarations.

**SPECIFIED COVERAGE SECTION(S)**
D&O Coverage Section


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT     *BRANCH          END 94*
         *Archive Copy*

AIGS.000531

* Subject to Protective Order *

**ENDORSEMENT#** *95*

This endorsement, effective *12:01 am*    *March 31, 2018*                    forms a part of
policy number    *01-308-60-68*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | POLICY PERIOD EXTENDED ENDORSEMENT |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*          *END 095*
*BRANCH*
(1/05)                              * Subject to Protective Order *                    **AIGS.000532**