## FORMS SCHEDULE

Policy Number: 01-309-86-42
Division No:    39
Insured Name:   SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2018
Expiration Date: March 31, 2020

Print date:  May 3, 2018
Printed by: CATHERINE BAYNA
Phone # :

Underwriter Name: PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ RTQD01 |  | RISK TRANSFER |
| ☐ ENVPGE LETTER |  | ENVELOPE PAGE |
| ☐ QE8355 |  | CALIFORNIA D2 NOTICE |
| ☐ CLETR2 LETTER |  | REGULAR BROKER COVER LETTER |
| ☐ COM001 91222 |  | POLICYHOLDER NOTICE |
| ☐ MNSDEC MNSCPT |  | DIRECTORS & OFFICERS LIABILITY INSURANCE, EMPLOYMENT PRACTICES LIABILITY INSURANCE, FIDUCIARY LIABILITY INSURANCE |
| ☐ QT0001 96555 |  | TRIA DEC DISCLOSURE FORM |
| ☐ QE7582 99288 |  | NOTICE TO POLICY HOLDER TAXES AND FEES (Addendum) |
| ☐ MNSOTH MNSCPT |  | GENERAL TERMS AND CONDITIONS |
| ☐ MNSOTH MNSCPT |  | D&O COVERAGE SECTION |
| ☐ MNSOTH MNSCPT |  | EPL COVERAGE SECTION |
| ☐ MNSOTH MNSCPT |  | FLI COVERAGE SECTION |
| ☐ QE1731 |  | SECURITIES CLAIM PANEL COUNSEL LIST |
| ☐ QE3338 |  | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| ☐ QE0741 99544 |  | EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY PANEL COUNSEL |
| ☐ QE6778 97886 |  | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |
| ☐ QE6369 96311 |  | APPENDIX D - CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION |
| ☐ QF1992 89644 |  | ECONOMIC SANCTIONS ENDORSEMENT |
| ☐ QE7215 99758 |  | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| ☐ QE5938 95737 |  | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (ALL COVERAGE SECTIONS) |
| ☐ MNSCPT MNSCPT |  | D&O COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| ☐ MNSCPT MNSCPT |  | EPL COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| ☐ MNSCPT MNSCPT |  | ENTITY V. INSURED EXCLUSION ENDORSEMENT |
| ☐ MNSCPT MNSCPT |  | FLSA AND RELATED EXCLUSIONS AMENDED |
| ☐ MNSCPT MNSCPT |  | PROGRAM PARTICIPANT ENDORSEMENT - ACCESS CLINICAL PARTNERS, LLC |



EXHIBIT
3

NUSFRM

*Archive Copy*

* Subject to Protective Order *

AIGS.000533

**FORMS SCHEDULE**

Policy Number: 01-309-86-42
Division No: 39
Insured Name: SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2018
Expiration Date: March 31, 2020

Print date:  May 3, 2018
Underwriter Name: PATRICK CAIN
Underwriter Phone # : 646-857-1481
Printed by: CATHERINE BAYNA
Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ MNSCPT | MNSCPT | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| ☐ MNSCPT | MNSCPT | ADDITIONAL INSUREDS - LISTED AFFILIATES |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - ADVANTEK WASTE MANAGEMENT SERVICES LLC |
| ☐ MNSCPT | MNSCPT | DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES) |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - ARTEL HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - COUNTER BRANDS, LLC dba BEAUTY COUNTER |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - DISCOVERY DJ HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - FRANK RECRUITMENT GROUP INCORPORATED |
| ☐ MNSCPT | MNSCPT | CALIFORNIA EMPLOYMENT PRACTICES CLAIMS |
| ☐ MNSCPT | MNSCPT | PARENT EXCLUSION ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | TIE-IN OF LIMITS ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - FRED SEGAL, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - GAVIN DE BECKER & ASSOCIATES, LP |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION |
| ☐ MNSCPT | MNSCPT | ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE EXCLUSION ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES) |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - GPT TPG SINGLE TENANT VENTURE LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - GRCY HOLDINGS, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - H&W FRANCHISE HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - JAX HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - JONAH ENERGY HOLDINGS LLC |

NUSFRM

*Archive Copy*

* Subject to Protective Order *

AIGS.000534

**FORMS SCHEDULE**

Policy Number: 01-309-86-42
Division No: 39
Insured Name: SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2018
Expiration Date: March 31, 2020

Print date:  May 3, 2018
Underwriter Name:PATRICK CAIN
Underwriter Phone # : 646-857-1481

Printed by:CATHERINE BAYNA
Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ MNSCPT | MNSCPT | ADDITIONAL INSUREDS - DEFINITION OF COMPANY AMENDED |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - LAUREL PARENT HOLDINGS, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - MCDERMOTT HOLDINGS, LP |
| ☐ MNSCPT | MNSCPT | THIRD PARTY VIOLATION CLAIMS - SEPARATE RETENTION |
| ☐ MNSCPT | MNSCPT | DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - MENDOCINO FARMS, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - MERCATUS, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - PHILLIPS EDISON VALUE ADDED GROCERY VENTURE, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - PHILZ COFFEE, INC. |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - PLATFORM ONE MEDIA, LLC |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - RADIATE HOLDINGS, LP |
| ☐ MNSCPT | MNSCPT | DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS |
| ☐ MNSCPT | MNSCPT | DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - SUBURBAN HOUSING PARTNERS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TB HOLDINGS II PARENT, INC. |
| ☐ MNSCPT | MNSCPT | PANEL COUNSEL FIRM LIST AMENDED EMPLOYMENT PRACTICES LIABILITY |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP |
| ☐ MNSCPT | MNSCPT | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION |
| ☐ MNSCPT | MNSCPT | ADDITIONAL INSUREDS - LISTED AFFILIATES |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TPG PIZZA HOLDINGS, LLC |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TPG VII MESO ACQUISITION, INC. |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - TRAVEL MANAGEMENT COMPANY |

**NUSFRM**

*Archive Copy*
* Subject to Protective Order *                                          **AIGS.000535**

**FORMS SCHEDULE**

Policy Number: 01-309-86-42
Division No: 39
Insured Name: SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2018
Expiration Date: March 31, 2020

Print date:  May 3, 2018
Printed by: CATHERINE BAYNA
Phone # :

Underwriter Name: PATRICK CAIN
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - UTC LABORATORIES, LLC |
| ☐ MNSCPT | MNSCPT | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - V2 VENTURES GROUP, LLC |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION |
| ☐ QE2392 | 78859 | FORMS INDEX ENDORSEMENT |

**NUSFRM**

***Archive Copy***

* Subject to Protective Order *

**AIGS.000536**

| Account Name: | *SEE PROGRAM PARTICIPANT ENDORSEMENT* | | |
| --- | --- | --- | --- |
| | | | |
| | | | |
| | | | |

| Policy Number: | *01-309-86-42* | Policy Effective Date: | *March 31, 2018* |
| --- | --- | --- | --- |
| Underwriter: | *PATRICK CAIN* | Print Date: | *May 3, 2018* |

| Initial Risk Transfer Assessment Date: | *March 26, 2018* |
| --- | --- |

| Risk Assessment Date | Risk Transfer Qualification | Risk Assessment Date | Risk Transfer Qualification |
| --- | --- | --- | --- |
| *03/26/2018* | *R1* | *04/27/2018* | *R1* |
| *04/27/2018* | *R1* | *04/30/2018* | *R1* |
| *04/30/2018* | *R1* | *05/01/2018* | *R1* |
| *05/01/2018* | *R1* | *05/01/2018* | *R1* |
| *05/01/2018* | *R1* | | |

**Risk Transfer Qualification Key:**

**R1** - Insurance Accounting - Safe Harbor applies to transaction, no Risk Transfer Worksheet necessary

**R2** - Insurance Accounting - Risk Transfer Worksheet completed, approved, and in UW file

**R3** - Deposit Accounting - Risk Transfer Worksheet completed, approved, and in UW file

**R4** - Bifurcated Accounting (Insurance/Deposit) - Risk Transfer Worksheet completed, approved, and in UW file.

If it has been determined that a Risk Transfer Worksheet needs to be completed, please indicate below the individuals whom are required to sign the worksheet:

_____                    _____
Underwriter                                                          Division President


_____
Chief Financial Officer

Surplus Lines License No:   *88052*   _____

***Archive Copy***                                              **AIGS.000537**

\* Subject to Protective Order \*

**Sanctions Due Diligence Checklist for Commercial Insureds**

The AIG Property Casualty Economic Sanctions Standards require risk-based sanctions due diligence for commercial insureds. This assessment must be made prior to bind. These questions will assist you in completing due diligence pertaining to sanctions risk.

See the AIG PC Sanctions Web Page for guidance, including the following:
- RSAT contacts
- product line underwriting guidance
- de minimis application
- US sanctioned country program summary
(click here or type "sanctions" into the AIG Contact search box).

Insured: *SEE PROGRAM PARTICIPANT*
*ENDORSEMENT*

Date: *March 26, 2018*

| | |
|---|---|
| **During the course of your regular underwriting review, was there any evidence that would lead you to believe that the Commercial insured (including subsidiaries and branches) has sanctions exposure\* in any of the countries / regions listed below?**<br><br>Cuba<br>Iran<br>Myanmar<br>Sudan<br>Syria<br>North Korea<br>Belarus<br>Zimbabwe<br>Crimea region of Ukraine | YES ☐   NO ☐ |

For the purpose of this question, "exposure" means any of the following:

- insured is incorporated, domiciled or located in any of the above listed countries
- insured conducts business activity involving Cuba, Crimea region of Ukraine, Iran, Syria or Sudan (e.g. services, shipments, sales, supply channels, covered property).
- information obtained shows that insured board members or officers are domiciled in Cuba, Crimea region of Ukraine, Iran, Syria or Sudan, or that an insured is majority owned by individuals or entities incorporated, domiciled or located in Cuba, Crimea region of Ukraine, Iran, Syria, Sudan. This information must be screened and evaluated.

**It is important to be alert to evidence of sanctions exposure during your regular underwriting review. Common underwriting sources that may contain information which would indicate a sanctions exposure are listed below:**

Underwriting file/submission
Company website
Annual (or other) reports
Discussion with customer/broker
Schedules of covered property, routes, vessels, locations\*

**\*Note:** Endorsements, schedules, tax forms and other policy-related documents should not refer to sanctioned countries in a way that could suggest coverage, regardless of whether a sanctions exclusion is included in the policy.

*For AIG in Canada Underwriters please see the most current version of the local Economic Sanctions Guidelines issued by Compliance.*

All sanctions exposure must be escalated to the Regional Sanctions Assistance Team (RSAT)

US and Canada:
sanctions@aig.com

Asia Pacific:
sanctions.asiapacific@aig.com

Central:
sanctions.central@aig.com

Latin America:
sanctions.lacr@aig.com

Europe:
sanctions.europe@aig.com

Japan:
sanctions.fareast@aig.co.jp

Page 1 of 1

*BRANCH*

The material contained herein is proprietary to AIG and is intended for internal use only by employees of AIG. Unauthorized disclosure, dissemination,
copying, or other use of this material without the express written permission of AIG is strictly prohibited.
Copyright © 2015 AIG. All rights reserved.

*Archive Copy*

AIGS.000538

\* Subject to Protective Order \*

Acknowledgement By:           *PATRICK CAIN*

Acknowledgement On:           *March 26, 2018*

Insured Name:                 *SEE PROGRAM PARTICIPANT ENDORSEMENT*

Submission/Policy Number: *013098642*

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



May 3, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE: **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 309- 86- 42**
Product:         PrivateEdge Plus
Policy Period:   March 31, 2018 - March 31, 2020

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
646- 857- 1481
Patrick.Cain@aig.com

Enc.

1503641

*BRANCH Archive Copy*
* Subject to Protective Order *

AIGS.000540

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG).  The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy.  You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producer-compensation  or by calling 1-800-706-3102.

*Archive Copy*

* Subject to Protective Order *

**AIGS.000541**



## AIG Specialty Insurance Company

A capital stock company

POLICY NUMBER: 01-309-86-42          REPLACEMENT OF POLICY NUMBER: 01-308-60-68

**THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS
NOT SUBJECT TO ITS SUPERVISION.**

**Directors & Officers Liability Insurance, Employment Practices Liability Insurance,
Fiduciary Liability Insurance
DECLARATIONS**

NOTICES

[THESE NOTICES ARE APPLICABLE TO ALL COVERAGE]

**COVERAGE WITHIN THIS POLICY IS GENERALLY LIMITED TO LOSS FROM CLAIMS
FIRST MADE AGAINST INSUREDS DURING THE POLICY PERIOD.   DEFENSE COSTS
REDUCE THE LIMITS OF LIABILITY (AND, THEREFORE, AMOUNTS AVAILABLE TO
RESPOND TO SETTLEMENTS AND JUDGMENTS) AND ARE APPLIED AGAINST
APPLICABLE RETENTIONS.**

**THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND UNLESS SUCH COVERAGE IS
EXPRESSLY PROVIDED WITHIN A COVERAGE SECTION.  WHERE  THE INSURER HAS NO
DUTY TO DEFEND,  IT WILL ADVANCE  DEFENSE COSTS, EXCESS  OF THE  APPLICABLE
RETENTION, PURSUANT TO THE  TERMS OF THIS POLICY  NO LATER THAN  SIXTY (60)
DAYS AFTER RECEIPT OF INVOICES OF SUCH DEFENSE COSTS.  PLEASE REFER TO THE
COVERAGE SECTIONS PURCHASED FOR DEFENSE RELATED DETAILS.**

**PLEASE READ  THE  POLICY  CAREFULLY AND  DISCUSS  THE  COVERAGE HEREUNDER
WITH YOUR INSURANCE  AGENT OR BROKER  TO DETERMINE WHAT  IS AND WHAT  IS
NOT COVERED.**

| ITEMS | | | | | |
|---|---|---|---|---|---|
| 1 | **NAMED ENTITY**: | (the "Named Entity") | See Program Participants Endorsement | | |
| 2 | **POLICY PERIOD**: | Inception Date: | March 31, 2018 | Expiration Date: | March 31, 2020 |
| | | 12:01 A.M. at the address stated in Item 1 | | | |

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

| **ITEMS** (continued) | | | |
|---|---|---|---|
| 3 | **COVERAGE SUMMARY** | | |
| | **Liability, Retention, Continuity Date, and Premium Coverage Section** | | |
| | **D&O** | **D&O Coverage Section** | See Program Participants Endorsement |
| | **EPL** | **Employment Practices Coverage Section** | See Program Participants Endorsement |
| | **FLI** | **Fiduciary Liability Coverage Section** | See Program Participants Endorsement |
| | *With respect to the D&O, EPL, and FLI Coverage Sections only, no Retention amount is applicable to Non-Indemnifiable Loss.<br>*No Retention amount is applicable to Costs of Investigation for Company Shareholder Derivative Investigations, Crisis Management Events, Voluntary Compliance Loss and HIPAA Penalties. | | |
| 4 | **TOTAL PROGRAM PREMIUM** | | See Program Participants Endorsement |
| 5 | **OTHER LIMITS OF LIABILITY** | See Program Participants Endorsement | |
| 6 | **DISCOVERY PROVISIONS (Inapplicable to Crime and KRE Coverage Sections)** | **(a) Percentage of Full Annual Premium for; 1 YEAR:** | **100%** |
| | | **(b) 2 YEARS:** | **110%** |
| | | **(c) 3 YEARS:** | **120%** |
| | | **(d) 4 YEARS:** | **130%** |
| | | **(e) 5 YEARS:** | **140%** |
| | | **(f) 6 YEARS:** | **150%** |
| | | **(g) Percentage of Full Annual Premium for unlimited duration:** | **TBD** |

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

AIGS.000543

| | |
|---|---|
| **ITEMS** (continued) | |

| 7 | **NAME AND ADDRESS OF INSUREDS' REPRESENTATIVE** |
|---|---|
| | TPG<br>345 CALIFORNIA STREET<br>SUITE 3300<br>SAN FRANCISCO, CA 94104 |

| 8(a) | **NAME AND ADDRESS OF INSURER** |
|---|---|
| | **AIG Specialty Insurance Company<br>175 Water Street<br>New York, NY 10038**<br><br>**This Policy is issued only by the insurance company indicated in this Item 8(a).** |

| 8(b) | **NOTICE OF CLAIMS AND CIRCUMSTANCES SEND TO:** |
|---|---|
| | **AIG Domestic Claims, Inc.**<br>175 Water Street<br>New York, New York 10038<br>Attention:    "C-Claims, D&O Claims"<br><br>**Reference:    01-309-86-42**<br><br>**Reference:    Appropriate Coverage Section** |

*Archive Copy*

3

® All rights reserved

* Subject to Protective Order *

**IN WITNESS WHEREOF,** the **Insurer** has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

_____
                **PRESIDENT**
**AIG Specialty Insurance Company**

_____
                **SECRETARY**
**AIG Specialty Insurance Company**

_____
        **AUTHORIZED REPRESENTATIVE**

_____   _____   _____
**COUNTERSIGNED AT**              **DATE**              **COUNTERSIGNATURE**

WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

1503641

MNSCPT                    *Archive Copy*                    4

® All rights reserved
* Subject to Protective Order *

**AIGS.000545**

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE
### (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury-in consultation with the Secretary of Homeland Security, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING JANUARY 1, 2018; 81% BEGINNING JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *SEE PROGRAM PARTICIPANT ENDORSEMENT*


Policy Number: *01-309-86-42*
Policy Period Effective Date From: *March 31, 2018*      To: *March 31, 2020*

Ⓒ 2015 National Association of Insurance Commissioner

## General Terms and Conditions

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this Policy, the **Insurer** agrees as follows:

**1.     TERMS AND CONDITIONS**

These **General Terms and Conditions** shall be applicable to all **Coverage Sections**. Terms appearing in these **General Terms and Conditions** which are defined in a **Coverage Section** shall have the meaning provided for such terms in such **Coverage Section** for purposes of coverage provided under such **Coverage Section**. The terms and conditions set forth in each **Coverage Section** shall only apply to that particular **Coverage Section** and shall in no way be construed to apply to any other **Coverage Section** of this Policy.

**2.     DEFINITIONS**

(a)    **"Administrative Claim"** means an administrative or regulatory investigation:

(i)    "by the Equal Employment Opportunity Commission **("EEOC")** or similar federal, state or local agency; or

(ii)    of a violation of the Uniformed Services Employment and Reemployment Rights Act, when such investigation is conducted by the United States Department of Labor, Veterans Employment and Training Service, Justice Department or Office of Special Counsel;

which, in either case, is commenced by the filing of a notice of charges or similar document of which notice has been given to an **Insured**.

The term **"Administrative Claim"** shall not mean or include any **Litigated Matter**.

(b)    **"Affiliated Entities"** means:

(i)    a pooled investment vehicle formed and controlled by the **Insureds' Representative** for purposes of making a direct or indirect investment in the **Named Entity**;

(ii)    an entity which is a general partner, managing general partner, managing member, administrative member, sole member, manager, managing shareholder or other sponsor of a pooled investment vehicle described in paragraph (i) above;

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

(iii)    an entity (including, but not limited to, any holding company, special purpose vehicle or other acquisition vehicle) formed for the sole purpose of holding a direct or indirect interest in the **Named Entity**, but only if such entity is under **Management Control** directly or indirectly by the **Insureds' Representative**.

**(c)**    **"Application"** means:

(i)    the application attached to and forming part of this Policy, any attachments to such applications; and

(ii)    any materials submitted therewith, which shall be retained on file by the **Insurer** and shall be deemed to be physically attached to this Policy or incorporated therein.

(d)    **"Claim"** means:

(i)    any written demand for monetary or non-monetary or injunctive relief (including, but not limited to, any request to toll or waive any statute of limitations);

(ii)    any civil, criminal, administrative or regulatory proceeding or arbitration, mediation or other dispute resolution proceeding for monetary or non-monetary or injunctive relief which is commenced by:

(1)    service of a complaint, motion, writ or similar pleading or service of an order;

(2)    return of an indictment, criminal complaint, information or similar document (in the case of a criminal proceeding);

(3)    receipt of a notice of deposition;

(4)    filing or service of a subpoena;

(5)    receipt or filing of a notice of charges; or

(6)    receipt of a request or demand to arbitrate or mediate;

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(iii)    any civil, criminal, administrative or regulatory investigation or inquiry by a federal, state, local, foreign or offshore government authority or agency (including without limitation an investigation by the Equal Employment Opportunity Commission, the Securities and Exchange Commission, the Department of Labor, the Department of Justice, the Department of Treasury, any state attorney general's office or securities regulator, the Financial Services Authority, the Pension Benefit Guarantee Corporation or a Grand Jury) or any self-regulatory organization (including, but not limited to, the Financial Industry Regulatory Authority) but only after service of a subpoena, receipt of a Wells Notice, receipt of a "target" letter (within the meaning of Title 9, 11.151 of the United States Attorney's Manual) or receipt of a notice of investigation, notice of charges, SEC Form 1662, a civil investigative demand, a search warrant, service of a complaint or other similar document of which notice has been given to an **Insured** (herein, **"Investigation Claim"**);

It is understood and agreed that, notwithstanding anything to the contrary in any Insuring Agreement under this policy, the requirement under any Insuring Agreement that a **Claim** must allege a **Wrongful Act** shall not apply to any **Investigation Claim** as defined in this subparagraph (iii); provided, however, **"Investigation Claim"** shall not mean any routine regulatory supervision, examination, inspection or compliance review.

(iv)    any official written request for **Extradition** of any **Individual Insured** or the execution of a warrant for the arrest of an **Individual Insured** where such execution is an element of **Extradition**;

(v)    the equivalent document in a **Foreign Jurisdiction** for (i)-(iv) above.

The term **"Claim"** shall also include any **Securities Claim**, **Contract Claim** or any **Derivative Demand**, and any equivalent thereof in any **Foreign Jurisdiction**.

The term **"Claim"** shall also include any appeal(s) of any of the foregoing.

Solely with respect to coverage provided under D&O COVERAGE SECTION F: PRE-CLAIM INQUIRY COSTS FOR PRE-CLAIM INQUIRY, **"Claim"** also means a **Pre-Claim Inquiry**; provided, however, that a **Pre-Claim Inquiry** only shall constitute a **Claim** under this Policy only if the **Individual Insured** or **Company** elects to give to the **Insurer** written notice thereof pursuant to Clause 6. "NOTICE/CLAIM REPORTING PROVISIONS" of the policy, at which point such **Pre-Claim Inquiry** shall be deemed first made.

However, in no event shall the term **"Claim"** include any labor or grievance proceeding which is subject to a collective bargaining agreement.

* Subject to Protective Order *
© All rights reserved

(e)     **"Cleanup Costs"** means expenses, including, but not limited to, legal and professional fees incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(f)     **"Company"** means

   (i)     the **Named Entity** and any **Subsidiary** thereof; and

In the event a bankruptcy proceeding shall be instituted by or against a **Company**, the term **"Company"** shall also mean the resulting debtor-in-possession (or equivalent status outside the United States of America), if any.

(g)     **"Continuity Date"** means the date set forth in Item 4 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof with respect to each **Coverage Section**.

(h)     **"Coverage Section"** means each **Coverage Section** that is purchased by the **Insured** as indicated in each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(i)     **"Defense Costs"** means any:

   (iv)     legal fees and expenses including, without limitation, all reasonable out of pocket charges and expenses;

   (v)     expert, forensic auditor, consultant or witness fees and expenses;

   (vi)     mediator or arbitrator fees and expenses;

   (vii)    cost of attachment or similar bonds incurred by the **Insureds** in the investigation of or defense of or appeal of any **Claim** or in connection with any written request or other written statement seeking extradition or rendition of an **Insured**;

   (viii)   costs of **E-Discovery Consultant Services**;

   (ix)     fees and expenses of vendor or service provider retained by an **Insured** or by the **Insured's** defense counsel, including without limitation any document vendor, electronic discovery vendor, database vendor, document review vendor, data recovery vendor, court reporter or investigative service; or

   (x)     other reasonable costs, charges, fees and expenses incurred in the investigation, defense, settlement or appeal of any **Claim**;

*Archive Copy*
*© All rights reserved*
\* Subject to Protective Order \*

AIGS.000550

in each case, incurred by the **Insureds** in the investigation of, adjustment of, defense of and/or appeal of any **Claim** against an **Insured**, but excluding compensation of any **Individual Insured**. **Defense Costs** shall also include **Extradition Costs**.

**Defense Costs** shall also include all reasonable fees and expenses incurred by defense counsel selected by the **Insured(s)** in providing reports, updates or other information to the Insurer.

Solely with regard to any **Pre-Claim Inquiry, "Defense Costs"** means only **Pre-Claim Inquiry Costs**.

It is understood and agreed that **Insured Persons** shall be entitled to separate counsel in the event of any potential conflict of interest among the **Insureds** (including without limitation, any defenses being available to one **Insured** that are not available to other **Insureds**) with the consent of the Insurer (such consent shall not be unreasonably withheld or denied).

(j)     **"Designated Policy Aggregate Limit of Liability"** means the **Designated Policy Aggregate Limit of Liability** stated in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(k)     **"Designated Separate Limit of Liability"** means the applicable **Separate Limit of Liability**, if any, stated in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof.

(l)     **"Designated Shared Limit of Liability"** means the applicable **Shared Limit of Liability**, if any, stated in Item 2 of each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon and the **Insureds** thereof, which limit of liability shall be shared between all of the **Coverage Sections** which are listed below such **Designated Shared Limit of Liability** in each **Program Participants Endorsement** with respect to the corresponding **Named Entity** thereon.

(m)     **"Discovery Period"** means **Discovery Period**, as that term is defined in Clause 8 of these **General Terms and Conditions**.

(n)     **"Domestic Partner"** means any natural person legally recognized as a domestic or civil union partner under the provisions of any:

(i)     applicable federal, state or local law; or

(ii)     program established by the **Company**.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

(o)     **"E-Discovery"** means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(p)     **"E-Discovery Consultant Services"** means solely the following services performed by an E-Consultant Firm:

  (i)     assisting the **Insured** with managing and minimizing the internal and external costs associated with E-Discovery;

  (ii)    assisting the **Insured** in developing or formulating an E-Discovery strategy which shall include interviewing qualified and cost effective E-Discovery vendors;

  (iii)   serving as project manager, advisor and/or consultant to the **Insured**, defense counsel and the Insurer in executing and monitoring the E-Discovery strategy; and

  (iv)    such other services provided by the E-Consultant Firm that the **Insured**, Insurer and E-Consultant Firm agree are reasonable and necessary given the circumstances of the Claim.

(q)     **"Employee"** means any past, present or future:

  (i)     employee, other than an **Executive** of a **Company**, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, volunteer, seasonal and temporary employee. An individual who is leased to the **Company**, contracted to perform work for the **Company**, or who is an independent contractor for the **Company**, shall also be an **Employee**, but only to the extent the **Company** provides indemnification to such leased or contracted individual;

  (ii)    **Employed Lawyer**.

(r)     **"Executive"** means:

  (i)     any past, present or future duly elected or appointed director, officer, board observer, trustee or governor, management committee member, member of the management board, supervisory board, advisory board or any other executive committee of a corporation, limited liability company, or joint venture, natural person general partner of a partnership, natural person limited partner, or equivalent position or any person found to have acted in such position under applicable law; or

*Archive Copy*
* Subject to Protective Order *
® All rights reserved

       (ii)      any past, present or future person in  a duly elected or appointed position  in an entity which  is organized  and operated in  a **Foreign  Jurisdiction** that  is equivalent to an executive position listed in Definition (r)(i);

(s)    **"Financial Insolvency"** means:

       (i)      the appointment by  any government  official, agency,  commission, court  or other governmental authority  of a  receiver, conservator,  liquidator, trustee, rehabilitator, administrator  or  similar official  to take control  of, supervise, manage or liquidate an insolvent **Company**;

       (ii)      a **Company** becoming  a debtor-in-possession  pursuant to the  United States bankruptcy law;

       (iii)     the filing by or against a **Company** of a petition under the bankruptcy laws of the United States of America; or

       (iv)     as to  (i), (ii) (iii)  in  this  Definition (s),  any  equivalent status  in  a  **Foreign Jurisdiction**.

(t)    **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

(u)    **"Foreign  Policy"** means  the **Insurer's** or  any  other  company  of  American International Group,  Inc.'s  ("AIG")  standard executive  managerial liability  policy (including any directors and officers, partnership, managerial, employment practices liability fiduciary or pension trust  liability policy and all  mandatory endorsements to such policies, if any) approved  by AIG to be  sold within a **Foreign  Jurisdiction** that provides coverage substantially similar to the coverage afforded under this Policy. If more than one such  policy exists, then  **"Foreign Policy"** means  the standard basic policy form typically offered for sale in that **Foreign Jurisdiction** for comparable risks by the Insurer  or any  other company  of AIG.  The term  **"Foreign Policy"** shall  not include any  professional liability  coverage, also  known as errors  and omissions coverage.

(v)    **"Indemnifiable Loss"** means **Loss** for  which a **Company**  has indemnified or is permitted or required  to indemnify  an **Individual Insured** pursuant  to the fullest extent permitted  by the certificate  of incorporation, charter,  by-laws, articles of association, limited liability  company agreement,  partnership agreement, operating agreement or other organizational documents of a **Company**.

(w)    **"Insurer"** means the insurance company indicated in the Declarations.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

AIGS.000553

(x)    **"Insureds' Representative"** means the organization stated in Item 7 of the Declarations.

(y)    **"Litigated Matter"** means any civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief which is commenced by:

   (xi)    service of a complaint or similar pleading; or

   (xii)   return of an indictment, information or similar document (in the case of a criminal proceeding).

(z)    **"Management Control"** means:

   (i)    owning interests representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the board of directors of a corporation, the management committee members of a joint venture or partnership, or the manager or members of the management board of a limited liability company;

   (ii)   having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of a company, to elect, appoint or designate a majority of: the board of directors of a corporation, the management committee of a joint venture or partnership, or the manager(s) or the management board of a limited liability company;

   (iii)  possessing greater than 50% ownership interest in a corporation, joint venture or limited liability company;

   (iv)   possessing greater than 50% of the voting power of a partnership;

   (v)    having management and/or operational control of a company; or

   (vi)   being the sole general partner of a limited partnership or the sole manager of a limited liability company.

(aa)   **"Named Entity"** means each **Named Entity** set forth in Item 1 of any **Program Participants Endorsement**, whether a corporation, association, limited liability company or any other type of business organization.

(bb)   **"Non-Indemnifiable Loss"** means **Loss** that is not **Indemnifiable Loss.**

(cc)   **"Outside Entity"** means:

   (i)    any not-for-profit organization; or

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(ii)       any for-profit organization, other than the **Company**.

(dd)   **"Outside Entity Executive"** means any:

      (i)       **Individual Insured** serving in the capacity as director, officer, board observer, trustee, advisor or governor of  an **Outside Entity**, but only if  such service is at the specific request, direction or consent of the **Company**; or

      (ii)     any other person listed as an **Outside Entity Executive** in an endorsement  to this Policy.

It is understood and agreed that, in the event of a disagreement between the **Company** and an individual as to whether such individual was acting "at the specific request, direction, or  consent of the **Company**," this Policy shall abide  by the determination of  the **Company** on this issue and such  determination shall  be made by written  notice to  the **Insurer** within ninety  (90) days  after the  **Claim** is first reported to  the **Insurer**  pursuant to the  terms of  the Policy. In the event no determination is made within such period, this Policy shall apply as if the  **Company** determined that such **Individual  Insured** was not acting  at the **Company's** specific request, direction, or consent.

(ee)   **"Policy Period"** means the period of time from the inception date stated  in Item 2 of the Declarations to  the  earlier of  the  expiration date  stated in Item 2 of the Declarations or the effective date  of cancellation of this Policy  with respect to any particular **Named Entity** as set forth in Clause 7.

(ff)    **"Pollutants"** means, but is not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or  contaminant, including smoke, vapor,  dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, chemicals and **Waste**. **"Waste"** includes, but is not limited  to, materials  to be recycled, reconditioned or reclaimed and nuclear materials.

(gg)   **"Prior Acts Date"** means the date set  forth in Item 5  of each **Program Participants Endorsement** with  respect  to  the corresponding  **Named Entity** thereon and the **Insureds** thereof.

(hh)   **"Prior AIG  Policy"** means  a valid  and collectible  policy providing  substantially the same or similar coverage as is provided by this  policy, issued to a particular **Named Entity** by the  **Insurer** (or  any other  insurance company  affiliate thereof),  of which this policy is a continuous renewal.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *
AIGS.000555

(ii)     **"Program Participants Endorsement"** means each endorsement attached to this Policy entitled **"Program Participants Endorsement"** outlining the respective **Named Entity** insured hereunder and  certain items and  conditions specific to  the coverage afforded under this Policy to  such **Named Entity** and  any **Insured** thereof, including the applicable Limits  of Liability,  Retention Amounts, **Continuity Dates**, **Prior Acts Date** and Premium Amount.

(jj)     **"Related Claim"** means a **Claim** alleging, arising out of, based upon or attributable to any facts  or **Wrongful Acts**  that are the same  as  or related  to  those that  were alleged in another **Claim** made against an **Insured.**

(kk)    **"Related Pre-Claim Inquiry"** means **Pre-Claim Inquiry(ies)** which are the same, related or continuous, or **Pre-Claim Inquiry(ies)**  which arise from a common nucleus of facts.  **Claims** can allege **Related Pre-Claim Inquiry(ies)** regardless of whether such **Claims** involve the same or different claimants, **Insureds** or legal causes of action.

(ll)     **"Related Wrongful Act(s)"** means **Wrongful Act(s)**  which are  the same, related  or continuous, or **Wrongful Act(s)** which arise from a common nucleus of facts.

(mm)   **"Subsidiary"** means:

(i)      any for-profit entity,  whose securities are  not publicly traded,  of which the particular **Named Entity** has or had **Management Control ("Controlled Entity")** on  or  before  the  inception  date  of  the  **Policy Period**,  either  directly  or indirectly through one or more other **Controlled Entities**;

(ii)     any for-profit entity,  whose securities are  not publicly traded,  of which the particular **Named Entity** acquires **Management Control** during the **Policy Period**,  either  directly  or  indirectly  through  one  or  more  other **Controlled Entities**; or

(iii)    any not-for-profit entity sponsored exclusively by a **Company**.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

Notwithstanding the foregoing, coverage as is afforded under this Policy with respect to a **Claim** made against  any **Subsidiary** or  any **Individual Insureds**  thereof (in their capacity as such) shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time (the **"Acquisition Date"**) that the particular **Named Entity** obtained **Management Control** of such **Subsidiary**.  Upon  the **Acquisition Date**, the  **Insurer** agrees to  provide coverage for  **Wrongful Acts** taking place prior to the **Acquisition Date**  at no additional premium, but  solely as respects to coverage provided under the **EPL Coverage Section** and the **FLI Coverage Section**, if applicable.  However, in  no event shall  this Policy  provide coverage for any **Claim** arising from a **Wrongful Act** that occurred prior  to the **Acquisition Date** if any **Individual Insured** of  the particular **Named  Entity** could reasonably  expect that such **Wrongful Act**  could give rise  to a **Claim**  against an **Insured**  under the Policy. Furthermore, to  the extent  any  such  **Subsidiary** has any  valid  and collectible Employment Practices or Fiduciary Liability insurance (**"Other Insurance Policy(cies)"**) covering any overlapping time period  as the prior acts afforded by  this paragraph, such other  insurance  shall be  primary  and this  policy  shall remain  excess any coverage provided under such **Other Insurance Policy(cies)**.

There shall be no coverage afforded under this Policy with  respect to a **Claim** made against any **Subsidiary** or any **Individual  Insureds** thereof (in their capacity  as such) for **Wrongful Acts** committed or allegedly committed after the time that such respective **Named Entity** ceased to have **Management Control** of such **Subsidiary**.

3.    **EXTENSIONS**

Subject otherwise to the terms hereof, this Policy  shall cover **Loss** arising from any **Claim** made against:

(a)    the estates, heirs,  or legal  representatives of  deceased **Individual Insureds** , and the  legal representatives of  **Individual Insureds** in the event of incompetency, insolvency or bankruptcy, who were  **Individual Insureds** at the time the **Wrongful Acts** upon which such **Claims** are based were committed;

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**AIGS.000557**

(b)     the lawful  spouse (whether  such  status is  derived by  reason of statutory law, common law or otherwise of any  applicable jurisdiction in the world) or **Domestic Partner** of an  **Individual Insured** for all  **Claims** arising solely  out of his or her status as the spouse  or **Domestic Partner** of an **Individual  Insured**, including a **Claim**  that seeks  damages recoverable  from marital  community property, property  jointly held  by the  **Individual Insured**  and the  spouse  or **Domestic Partner**, or property  transferred from the  **Individual Insured** to  the spouse or **Domestic  Partner**; *provided, however,* this  extension shall  not afford coverage for any **Claim**  for any actual or  alleged **Wrongful Act** of the spouse or **Domestic Partner**, but shall apply only to **Claims**  arising out of any actual or  alleged **Wrongful  Acts**  of an  **Individual Insured**,  subject to the Policy's terms, conditions and exclusions

(c)     any grantor trust, irrevocable trust, revocable trust, bypass  trust, Generation Skipping Trust,  marital  trust,  or other  such  trust(s),  or any  corporation, partnership limited  liability company  or other  such entities  used for  estate planning  purposes  or any  other  estate  planning  or  wealth  management device(s), maintained by or for  the benefit of such  **Insured Person** or his/her spouse, children, or domestic partner, estate, heirs or assigns but only to the extent that  any  of  the  foregoing is  subject  to a  **Claim**  by  reason  of  a **Wrongful Act** by an **Insured**.

## 4.     LIMITS OF LIABILITY  (FOR ALL LOSS  IN THE  AGGREGATE UNDER THIS  POLICY AND  UNDER  EACH  INDIVIDUAL  COVERAGE  SECTION - INCLUDING DEFENSE COSTS)

The **Designated Policy Aggregate Limit of Liability** stated in Item  2 of each **Program Participants Endorsement** is the  maximum limit of the  **Insurer's** liability for  all **Loss** (other than  **Non-Indemnifiable Loss**  covered under  the  **Side A Excess Limit of Liability**), including  **Defense Costs**,  under  all **Coverage  Sections** combined  arising out of  all  **Claims** first  made  against the **Insureds**  afforded  coverage under  such **Program Participant Endorsement** (in their capacity as such) during the **Policy Period** or the  **Discovery Period**  (if  applicable); *provided,  however,* the  **Designated Policy Aggregate Limit  of Liability**  for the  **Discovery Period** shall  be part  of, and  not  in addition to, the **Designated Policy Aggregate Limit of Liability** for the **Policy Period**.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

If the **Designated Separate  Limits of Liability** are  stated in Item 2  of each **Program Participants Endorsement**, then  each such **Designated  Separate Limit of Liability** shall be the maximum limit of  the **Insurer's** liability for all **Loss**  (other than **Non-Indemnifiable Loss** covered under the **Side A Excess Limit of Liability**), including **Defense Costs**, arising out  of all **Claims** first  made against the **Insureds**  afforded coverage under such  **Program Participant Endorsement** (in their capacity  as such) during the **Policy  Period** or the  **Discovery Period** (if  applicable) with respect  to the applicable **Coverage Section** as  stated on each  **Program Participants Endorsement**; *provided, however,* the  **Designated Separate Limit of Liability** for the  **Discovery Period** shall  be part  of, and  not in  addition to, the  **Designated Separate Limit of Liability** for the  **Policy Period**.  Each **Designated Separate  Limit of Liability** shall  be part of and not in  addition to the **Designated  Policy Aggregate Limit of  Liability** for all **Loss** under this Policy  and shall in no  way serve to increase the  **Insurer's Designated Policy Aggregate Limit of Liability** as therein stated.

If the **Designated  Shared Limits  of Liability**  are stated in Item 2  of each **Program Participants Endorsement**, then each such **Designated  Shared Limit of Liability** shall be the  maximum limit of  the **Insurer's** liability for all **Loss**  (other than **Non-Indemnifiable Loss** covered  under the  **Side A Excess  Limit of  Liability**) arising out of  all **Claims** first  made against the **Insureds** afforded coverage under  such **Program Participant Endorsement** during the **Policy Period** or the **Discovery Period** (if applicable) with respect  to all **Coverage Sections** for which such **Designated Shared Limit of Liability** is  applicable, as  indicated on  each **Program  Participants Endorsement**; *provided, however,* with respect to all **Coverage Sections** that have  a **Designated Shared Limit of Liability**, the **Designated Shared Limit  of Liability** for the **Discovery Period** shall  be part of,  and not in addition to,  the **Designated Shared Limit of Liability** for the **Policy Period**. Each **Designated Shared Limit of Liability** shall be part of, and not in addition to,  the **Designated Policy Aggregate Limit of Liability** for all **Loss** under  this Policy and shall  in no way serve  to increase the  **Designated Policy Aggregate Limit of Liability** as therein stated.

Notwithstanding the above, it is expressly understood and  agreed that each **Named Entity** shall have its own  **Designated Policy Aggregate Limit  of Liability** which shall be in addition to, and  not part of the **Designated  Policy Aggregate Limit of  Liability** for any of the other **Named Entity(ies)**.

Further, a **Claim** which is made subsequent to  the **Policy Period** or **Discovery Period** (if applicable) which  pursuant to Clause 6(b)  or 6(c) of these  **General Terms  and Conditions** is  considered made  during the **Policy Period** or **Discovery Period**, shall also be subject to the  **Designated Policy Aggregate Limit of  Liability** and subject to any applicable **Designated Separate  Limit of  Liability, Designated  Shared Limit  of Liability** or **Side A Excess Limit of Liability**.

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

**Defense Costs** are not payable by the **Insurer** in addition to the **Designated Policy Aggregate Limit of Liability** or any applicable **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**. **Defense Costs** are part of **Loss** and as such are subject to the **Designated Policy Aggregate Limit of Liability** for **Loss** and any applicable **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**. Amounts incurred for **Defense Costs** shall be applied against the Retention and will reduce and may exhaust the **Designated Separate Limit of Liability**, **Designated Shared Limit of Liability** or **Side A Excess Limit of Liability**.

5.   **RETENTION CLAUSE**

The Retentions stated in Item 6 of the respective **Program Participants Endorsement** are separate Retentions pertaining only to the **Coverage Section** for which they are stated in the respective **Program Participants Endorsement**. The application of a Retention to **Loss** under one **Coverage Section** shall not reduce the Retention applicable under any other **Coverage Section**.

In the event a **Claim** triggers a Retention in multiple **Coverage Sections**, then the following shall apply:

(a)   with regard to **Loss** which is payable under any **Coverage Section** which is subject to a **Designated Separate Limit of Liability**, the Retention applicable to such **Loss** pursuant to the Retention Clause of such **Coverage Section** (or pursuant to any applicable endorsement) shall apply separately to such **Loss**, and the applicable Retention for such **Coverage Section** shall not be reduced by payments of **Loss** made towards the Retention required under any other **Coverage Section**; and

(b)   with regard to **Loss** which is payable under any **Coverage Sections** which are subject to a **Designated Shared Limit of Liability**, the highest applicable Retention shall be deemed the Retention applicable to **Loss** arising from such **Claim**.

Notwithstanding the foregoing, no Retention is applicable to the first $25,000 in **Defense Costs** incurred for **E-Discovery Consultant Services**.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

6.     **NOTICE/CLAIM REPORTING PROVISIONS**

Notice hereunder shall be given by electronic mail, facsimile transmission or certified mail to the addressee and at the address identified in Item 8(b) of the Declarations; Attention: Claim Department. Notice shall include and reference this policy number as indicated in the Declarations, as well as the **Coverage Section** under which the **Claim** is being noticed. If sent certified mailed or by electronic mail, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

The following shall apply:

(a)     The **Insureds** shall give written notice to the **Insurer** of any **Claim** made against an **Insured** or a **Crisis Management Event** as soon as practicable after: (i) the **Company's** General Counsel (or equivalent position) first becomes aware in writing that total **Loss** (including **Defense Costs**) of a **Claim** is reasonably estimated to exceed FIFTY PERCENT (50%) of the applicable Retention (unless he or she is prohibited by court order to disclose the details or existence of such **Claim**); or (ii) the **Crisis Management Event** commences.

Failure to give notice of any **Claim** within the time prescribed herein shall not invalidate such **Claim** if it is demonstrated that it was not reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter. Further, if the **Insured** fails to provide notice of a **Claim** to the **Insurer** as specified above, the **Insurer** shall not be entitled to deny coverage for such **Claim** based solely upon late notice unless the Insurer can demonstrate that its interests were materially prejudiced by reason of such late notice.

In all events a **Claim** must be reported no later than either:

(i)     anytime during the **Policy Period** or during the **Discovery Period** (if applicable); or

(ii)     within ninety (90) days after the end of the **Policy Period** or the **Discovery Period** (if applicable).

* Subject to Protective Order *
All rights reserved

(b)    If written notice of a **Claim** has been given  to the **Insurer** pursuant to Clause 6(a) above, then any **Claim** which is subsequently made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to the facts  alleged in  the **Claim** for  which such  notice has been  given, or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged  in the  **Claim** of which  such notice  has been given,  shall be considered made at the time such notice was given.

(c)    If during the  **Policy Period** or  during the **Discovery  Period** (if  applicable) the **Insureds** shall become aware of any circumstances which may reasonably be expected to give  rise to a  **Claim** being made  against the **Insureds**  and shall give written  notice to  the **Insurer**  of the  circumstances, the  **Wrongful Act** allegations anticipated  and the reasons  for anticipating  such a  **Claim**, then any **Claim** which is subsequently  made against the **Insureds** and  reported to the **Insurer** alleging,  arising  out of,  based upon  or attributable  to such circumstances or  alleging any  **Wrongful Act**  which is  the same  as or  is a **Related Wrongful  Act** to  that alleged  or contained  in  such circumstances, shall be considered made at the time such notice of such circumstances was given.

Notwithstanding the  foregoing,  the  provisions of this  Clause  6. shall  not apply to any **Pre-Claim Inquiry** that the **Insured** elects  not to treat as a **Claim** as provided in the definition of **Claim**.

Additionally, to  the  extent that an  **Insured**  gives  notice to  the  **Insurer** in accordance with this  CLAUSE 6.  NOTICE/CLAIM REPORTING PROVISIONS (c) and a  **Claim** subsequently  arises  from such  specific circumstances, **Defense Costs**  shall  also mean  all  legal fees  incurred in the  investigation and/or defense of any such specific circumstances that are incurred:

(i)    on or after the date of such notice is received by the Insurer; and

(ii)    prior to  the time  such specific  circumstances rise  to  the  level  of a **Claim**.

(d)    Any matter which could  involve the payment of  **Voluntary Compliance Loss** or of **Covered Penalties** under  the **FLI Coverage Section**  shall be reported to the **Insurer** in  the same manner  as a  **Claim** under Clause  6(a)(i) and  6(a)(ii) above.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved

**Note:** With respect to this CLAUSE 6. NOTICE/CLAIM REPORTING PROVISIONS (a), the coverage provided by this Policy shall apply to the broadest extent permitted by law and the availability of such coverage, and the adequacy and timeliness of notice pursuant to CLAUSE 6. NOTICE/CLAIM REPORTING PROVISIONS (a) shall be determined by the law of the jurisdiction most favorable to such coverage.

The following shall apply solely with respect to the **EPL Coverage Section**:

(e) **Claims Savings Clause for Employment Practices Claims**

(i) Notwithstanding the foregoing, with respect to any **Claim** which (i) first becomes a **Litigated Matter** during the **Policy Period** or **Discovery Period** (if applicable); and (ii) is a **Related Claim** with respect to an **Administrative Claim** which was first made against an **Insured** prior to the **Policy Period**, the **Insurer** shall not deny coverage for such **Claim** based upon late notice of such **Claim** or based upon such **Claim** first being made prior to the **Policy Period**, provided that:

(1) the **Claim** was first made against the **Insured** at a time during which the particular **Named Entity** was insured under a **Prior AIG Policy**;

(2) upon the **Claim** first becoming a **Litigated Matter**, the **Claim** was reported in accordance with Clause 6(a) above; and

(3) no **Insured** has made a monetary settlement offer to a claimant or responded to a monetary demand from or on behalf of a claimant with respect to such **Claim**.

(ii) Coverage under this policy for any **Claim** afforded coverage pursuant to this Clause 6(e) shall be the lesser of:

(1) the coverage which would have been provided under this policy for such **Claim** had the **Claim** been made during the **Policy Period** and reported to the **Insurer** as required by this policy; or

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

AIGS.000563

(2)     the coverage, if any, which would have been provided under the **Prior AIG Policy** for such **Claim** if the **Insured** had properly provided notice of such **Claim** in accordance with the provisions of the **Prior AIG Policy**, taking into account all provisions of each policy, including, without limitation, applicable limits of liability (as reduced by payments made under such policy), retentions, exclusions and other restrictions contained in each policy;

Notwithstanding the foregoing, nothing in this Clause 6(e) shall be construed to increase the **Limit of Liability** of this policy or to provide coverage under the **Prior AIG Policy**, nor shall this Clause 6(e) ever result in providing coverage under this policy for **Loss** for which coverage is in fact provided (or would be provided but for the exhaustion of the limit of liability) under the **Prior AIG Policy**.

(iii)     This Clause 6(e) shall not apply to any **Claim** which:

(1)     prior to the **Policy Period** was a **Litigated Matter**; or

(2)     is a **Related Claim** with respect to a **Claim** which, prior to the **Policy Period** was a **Litigated Matter**.

The following shall apply solely with respect to the **FLI Coverage Section**:

(f)     Reporting a Fiduciary **Claim** or **Pension Crisis**

The **Insured(s)** shall, as a condition precedent to the obligations of the Insurer under this policy, notify the Insurer in writing of a **Claim** made against an **Insured** or of a **Pension Crisis** as soon as practicable after: (1) the **Named Entity's** General Counsel first receives written notice of the **Claim**; or (2) the **Pension Crisis** commences. In all such events, notification must be provided no later than:

(i)     ninety (90) days after the end of the **Policy Period** or **Discovery Period** (if applicable) if this policy is not renewed with the **Insurer**; or

(ii)     two hundred and seventy (270) days after the end of the **Policy Period** or **Discovery Period** (if applicable) if the expiring policy is renewed with the **Insurer**.

As exceptions to the foregoing notice provision the **Insureds** shall have no obligation to give notice of:

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(1)     a fact-finding investigation  before the earliest  of the time  that: (i) it becomes a **Litigated Matter**; (ii)  a **Wrongful Act** is alleged  in writing; or (iii) any **Insured**  has incurred defense costs  for which coverage  is being sought; or

(2)     an **Internal Appeal** before the earliest of  the time that: (i) it becomes a **Litigated Matter**; (ii) any investment loss within a **Plan** is alleged; or (iii) any  **Insured** has  incurred **Defense  Costs**  for which  coverage  is being sought.

## 7.    CANCELLATION CLAUSE

This Policy or  any individual  **Coverage Section**  may be  canceled by  the **Insureds' Representative** at  any time  by e-mailing  or mailing  by  certified mail  prior written notice to the **Insurer** stating which **Coverage Sections** are to be canceled or that the entire Policy is  to  be  canceled  and  when thereafter  such  cancellation  shall  be effective,  or  by  surrender  thereof  to  the  **Insurer**  or  its  authorized  agent. The e-mailing or mailing of  such notice shall be  sufficient notice and the  effective date of cancellation shall be  the date the **Insurer**  received such notice  or any later  date specified in the notice, and  such effective date shall  become the end of  the Policy or applicable **Coverage Sections**.

This Policy may only be canceled by  or on the behalf of the **Insurer**  with respect to any particular **Named  Entity** only in the  event of  non-payment of  premium of  the **Named Entity's**  respective annual  premium amount  as set  forth in  Item  7 of  the **Program Participants Endorsement**. In the event of non-payment of  premium by any particular **Named Entity**,  the **Insurer**  may cancel this  Policy solely  by delivering  to such respective **Named Entity**  and its  authorized agent  or by mailing  to  the particular **Named Entity** and  its authorized  agent, by  registered, certified  or other first class mail, at  the **Insureds' Representative** address  as stated in  Item 7 of  the Declarations and the  agent of  record's New  York address,  Attention: Willis  M&A Group, written notice stating  when, not less  than fifteen (15)  days thereafter, the cancellation shall  be effective; *provided, however,* that  if the  unpaid  premium is paid in  full before  12:01 am  on the  16th day  following receipt by  the particular **Named Entity** and  its authorized  agent of the  notice of  cancellation, then,  in that event,  the **Insurer**  may not cancel this Policy. The mailing  of  such  notice as aforesaid shall  be sufficient proof of  notice. The **Policy Period** for  the particular **Named Entity** terminates  at the  date and  hour specified  in such  notice, or at  the date and time of surrender. The **Insurer** shall  have the right to the premium amount for the portion of the **Policy Period** during which the Policy was in effect. This Policy shall remain in full force and effect for all remaining **Named Entities**, including **Insureds** thereof,  that comply with this Clause 7, subject to all other  terms, conditions, and exclusions of this Policy.

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

If the period of  limitation relating to the  giving of notice  as set forth above  is also set forth in  any applicable law  controlling the  construction thereof, the  period set forth above  shall be  deemed  to be  amended  so  as  to be  equal to the  minimum period of limitation set forth in the controlling law.

It is further understood and agreed  that the premium amount set  forth in Item 7 of the applicable  **Program Participants  Endorsement** for  the respective  **Named Entity** shall be  fully earned  as  of the  inception  date  of  this  Policy; *provided,  however,* should  a  particular **Named  Entity**  make  a  public offering  of equity  securities  and incepts a new management liability policy or policies with similar  coverage afforded herein with  the  **Insurer** or  any  member  company  of AIG, Inc.  ("AIG"),  then the particular **Named Entity** will be entitled to a pro-rata return  payment of its unearned premium.

8.    **DISCOVERY CLAUSE**

If  the  **Insureds'  Representative**  shall  cancel,  either  in  total  or  on  behalf  of  a particular **Named Entity** or the **Insureds' Representative** or the **Insurer** shall refuse to renew this Policy,  either in total  or on  behalf of a  particular **Named Entity,**  or the **Insureds' Representative** or the **Insurer** shall refuse to renew any  **Coverage Section**, either in total or on  behalf of a particular **Named  Entity**, then, solely with regard  to the Policy or **Coverage  Section** which was canceled  or non-renewed, the  **Insureds' Representative** or the  respective **Named Entity**  shall have the  right, upon payment of the applicable **"Additional Premium  Amount"** described below, to  a period of up to six  (6)  years  or  of  unlimited  duration  following  the  effective  date  of  such cancellation or nonrenewal (herein  referred to as the  **"Discovery Period"**), in which to give the  **Insurer** written  notice of **Claims**  first made  against any **Insured** during said **Discovery Period** for any  **Wrongful Act** occurring prior to  the end of the  **Policy Period** and otherwise  covered by the  canceled or non-renewed  Policy or **Coverage Section**, as applicable. The  rights contained  in this Clause 8  shall  terminate, however,  unless  written  notice  of such  election  together  with  the  **Additional Premium Amount** due  is  received  by the  **Insurer**  within thirty  (30)  days  of  the effective date of cancellation or nonrenewal.

The **Additional Premium Amount** for  the elected **Discovery Period**  shall be the **"Full Annual Premium"** (as defined below) multiplied by the applicable percentage amount indicated  in  Item  6  of  the  Declarations  for  the  length  of  time  elected  for  the **Discovery Period**.

As used herein, **"Full Annual Premium"** means:

(a)    with regard to a canceled or non-renewed Policy, the premium level in  effect immediately prior to the end  of the Policy Period for  each respective **Named Entity** based off  the premium  amount set  forth in Item  7 of  the applicable **Program Participants Endorsement** for the respective **Named Entity**; or

*Archive Copy*
\* Subject to Protective Order \*
© All rights reserved

(b)     with regard to a canceled or non-renewed **Coverage Section**, the total annual premium charged for the respective **Named Entity** for such **Coverage Section**.

In the event of a **Transaction**, as defined in Clause 9 of these **General Terms and Conditions**, as of the effective time of the **Transaction**:

(a)     This Policy shall continue in full force and effect as to **Wrongful Acts** occurring on or prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this Policy for any **Wrongful Act** occurring after the effective time of the **Transaction**.

(b)     The particular **Named Entity** shall have the right to a period of up to six (6) years following the effective time of the **Transaction** (hereinafter **"Run-Off Period"**) in which to give written notice to the **Insurer** of **Claims** first made against the **Insureds** during said **Run-Off Period** for any **Wrongful Act** occurring on or prior to the effective time of the **Transaction** and otherwise covered by this Policy, provided that in all events the coverage as is afforded by the **Run-Off Period** shall be conditioned upon the particular **Named Entity** paying when due any additional premium owed to the **Insurer**. If the particular **Named Entity** shall not exercise this right, then the **Insureds' Representative**, or any subsidiary thereof that is not an **Insured**, shall have the right to exercise such right with respect to such particular **Named Entity** upon payment of the requisite additional premium on the same terms and subject to the same limitations and conditions as would have applied to the particular **Named Entity** if it had exercised such right. In the event the **Insureds' Representative** or any such subsidiary exercise such right, then the resulting coverage afforded by the Policy shall be no less or greater than would have resulted had the particular **Named Entity** exercised such right, and in no way shall the **Insureds' Representative** or any other person or entity that is not an Insured under the Policy be afforded coverage as a result of the exercise of such right.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(c)     The additional premium for the election of the **Run-Off Period** shall be no more than 150% of the **Full Annual Premium** less any **Remaining Pro-Rata Premium** of this Policy (as used herein, **"Remaining Pro-Rata Premium"** shall be determined by multiplying the **Daily Premium** by the **Remaining Policy Period**. The **Daily Premium** means the total **Policy Period** premium for the respective **Named Entity** based off the premium amount set forth in Item 7 of the applicable **Program Participants Endorsement** for the respective **Named Entity** divided by total number of days in the **Policy Period**. The **Remaining Policy Period** means the number of days between the effective time of the **Transaction** and the expiration date of the **Policy Period**. The **Insurer** hereby agrees that if the amount of the **Remaining Pro-Rata Premium** exceeds the **Run-Off Premium** then the **Insurer** shall return to the particular **Named Entity** that amount of the **Remaining Pro-Rata Premium** which exceeds the **Run-Off Premium**.

The **Run-Off Period** shall be subject to all the terms, conditions and limitations of this Policy. The **Run-Off Period** shall not provide coverage for any **Wrongful Act(s)** occurring after the effective time of the **Transaction**.

The **Discovery Period** or **Run-Off Period** is not cancelable, except that the **Insurer** may cancel the **Discovery Period** or **Run-Off Period** for non-payment of premium. This Clause 8 and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The **Designated Limit of Liability** for the **Run-Off Period** shall be part of and not in addition to the remaining **Designated Limit of Liability** for each respective **Named Entity** in the **Program Participants Endorsement** as of the **Transaction**. In no way shall the language of this endorsement be construed to reinstate, renew or increase the **Designated Limit of Liability** or the **Run-Off Period**.

9.     **CHANGE IN CONTROL OF NAMED ENTITY**

If during the **Policy Period**:

(a)     any particular **Named Entity** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

(b)     any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of any particular **Named Entity**;

(either of the above events herein referred to as the **"Transaction"**),

*Archive Copy*
* Subject to Protective Order *
All rights reserved

then, with respect to such **Named Entity** which is subject to a **Transaction** (hereinafter referred to as **"Transaction Named Entity"**), this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this Policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**.

This Policy and any purchased **Coverage Section** may not be canceled after the effective time of the **Transaction**. The particular **Named Entity** shall also have the right to an offer by the **Insurer** of a **Run-Off Period** described in Clause 8 of these **General Terms and Conditions**.

10.     **SUBROGATION**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to the extent of such payment to each **Insured's** rights of recovery thereof, and each **Insured** shall execute all papers required and shall do everything that may be reasonably necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to bring suit in the name of the **Insured**. In no event, however, shall the **Insurer** exercise or pursue, directly or indirectly, any right(s) of recovery, right(s) of subrogation or other rights against any **Insured** under this Policy or the **Insureds' Representative**, unless such **Insured** or **Insureds' Representative** has been convicted of a criminal act, or been determined by a final, non-appealable adjudication in the underlying proceeding to have committed a fraudulent act or willful violation of any statute, rule or law, or determined by a final non-appealable adjudication to have obtained any profit or advantage to which such **Insured** was not legally entitled. For purposes of this Clause, in order for a criminal act to permit the **Insurer** to exercise or pursue any rights of subrogation against any **Insured** under this Policy, the act must be a criminal violation in the United States of America.

In the event that the **Insurer** shall for any reason pay **Indemnifiable Loss** on behalf of an **Individual Insured**, the **Insurer's** subrogation rights shall include, but not be limited to, the assertion of indemnification or contribution rights with respect to any such payments it makes or advances; *provided, however,* the **Insurer's** subrogation rights shall not include the assertion of indemnification or contribution rights against the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**. Additionally, upon the **Insurer** making any payment of **Loss** within the Retention, the **Insurer** shall have a direct contractual right under this Policy to recover from the **Company**, or in the event of the bankruptcy of the **Company**, from the debtor-in-possession (or equivalent status outside the United States) such **Loss** which was paid by the **Insurer** within the Retention. Such direct contractual right of recovery against the **Company** shall be in addition to and independent of the **Insurer's** subrogation right pursuant to this Clause 10 and any other rights the **Insurer** may have under applicable law.

* Subject to Protective Order *     © All rights reserved *

**11.   OTHER INSURANCE**

With respect to all **Coverage Sections**, other than the **EPL Coverage Section** and except in the case of (a) personal liability insurance maintained by an **Individual Insured** or (b) insurance available to an **Individual Insured** through the **Insureds' Representative** or any investment fund established by the **Insureds' Representative**, such insurance as is provided by this Policy shall apply only as excess over any other valid and collectible insurance which actually pays **Loss** otherwise covered by this Policy, unless such other valid and collectible insurance is expressly written to be excess over the **Designated Policy Aggregate Limit of Liability** or any applicable **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** provided by this Policy. Except as provided herein, this Policy specifically shall be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend, and does actually defend a **Claim** for which this Policy may be obligated to pay **Loss**.

Notwithstanding the foregoing, such insurance as is provided by this policy shall apply as primary insurance with respect to:

(a)     any private equity or venture capital liability, general partner liability, or other similar management or professional liability insurance maintained by any direct or indirect shareholder of the **Named Entity** including any liability policy maintained by the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**;

(b)     any indemnification which may be owed to an **Individual Insured** by a direct or indirect shareholder of the **Named Entity** or the **Insureds' Representative** or any affiliate or subsidiary thereof that is not a **Company**; or

(c)     any personal liability insurance that may be available to an **Individual Insured**.

Such insurance as is provided by the **EPL Coverage Section** shall be primary unless expressly written to be excess over other applicable insurance.

With respect to all **Coverage Sections**, in the event of a **Claim** against an **Outside Entity Executive**, or a **Claim** against an **Insured** for the **Insured's** liability with respect to a leased **Employee** or independent contractor **Employee** as described in the definition of **"Employee"** in the applicable **Coverage Section**, coverage as is afforded by this Policy shall be specifically excess of any:

(a)     indemnification provided by such **Outside Entity** or leasing company; and

(b)     other valid and collectible insurance provided to such **Outside Entity** or its **Executives**, leasing company or independent contractor;

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

provided, however, that any otherwise covered **Loss** of an **Outside Entity Executive** which is paid by an **Outside Entity** or by valid and collectible insurance coverage afforded to such **Outside Entity Executive** shall be applied to and erode any retention under this policy which is applicable to such **Outside Entity Executive**.

## 12.    NOTICE AND AUTHORITY

Except for the giving of a notice of **Claim**, which shall be governed by the provisions of Clause 6 of these **General Terms and Conditions**, all notices required under this Policy to be given by the **Insured** to the **Insurer** shall be given by e-mail or by certified mail to the **Insurer** at the address stated in Item 8(a) of the Declarations. It is agreed that the **Insureds' Representative** shall act on behalf of all **Named Entities** and all **Insureds** with respect to the giving and receiving of notice of cancellation and nonrenewal, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the receipt and acceptance of any endorsements issued to form a part of this Policy, the exercising or declining of the right to tender the defense of a **Claim** to the **Insurer** and the exercising or declining to exercise any right to a **Discovery Period**.

## 13.    ASSIGNMENT

This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**, which consent shall be in the sole and absolute discretion of the **Insurer**.

## 14.    DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this Policy, whether arising before or after termination of this Policy, including any determination of the amount of **Loss**, must first be submitted to the non-binding mediation process as set forth in this Clause.

The non-binding mediation will be administered by any mediation facility to which the **Insurer** and the particular **Named Entity** mutually agree, in which all implicated **Insureds** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the American Arbitration Association's (**"AAA"**) then-prevailing Commercial Mediation Rules. The parties shall mutually agree on the selection of a mediator. The mediator shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator shall also give due consideration to the general principles of the law of the state where the particular **Named Entity** is incorporated in the construction or interpretation of the provisions of this Policy. In the event that such non-binding mediation does not result in a settlement of the subject dispute or difference:

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(a)    either party shall have the right to commence a judicial proceeding; or

(b)    either party shall have the right, with all other parties consent, to commence an arbitration proceeding with the **AAA** that will be submitted to an arbitration panel of three (3) arbitrators as follows:

    (i)     the **Insured** shall select one (1) arbitrator;

    (ii)    the **Insurer** shall select one (1) arbitrator; and

    (iii)   said arbitrators shall mutually agree upon the selection of the third arbitrator. The arbitration shall be conducted in accordance with the **AAA's** then prevailing Commercial Arbitration Rules.

Notwithstanding the foregoing, no such judicial or arbitration proceeding shall be commenced until at least thirty (30) days after the date the non-binding mediation shall be deemed concluded or terminated. Each party shall share equally the expenses of the non-binding mediation. All applicable statutes of limitation shall be tolled during the pendency of the mediation and during such thirty (30) day period following the conclusion and termination of the mediation.

The non-binding mediation and arbitration proceeding may be commenced in either New York or in the state indicated in Item 1 of the **Program Participants Endorsement** as the mailing address for the respective **Named Entity**. The respective **Named Entity** shall act on behalf of each and every **Insured** in connection with any non-binding mediation under this Clause, the selection of arbitration or judicial proceeding or the selection of mediators or arbitrators.

## 15.    ACTION AGAINST INSURER

Except as provided in Clause 14 above, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy by the **Insured**, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Insurer** as a party to any action against the **Insured** or the **Company** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by the **Insured** or the **Company** or their legal representatives. Bankruptcy or insolvency of the **Company** or any **Insured** or of their estates shall not relieve the **Insurer** of any of its obligations hereunder.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**16.   WORLDWIDE TERRITORY**

Where legally permissible, this Policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

**17.   SERVICE OF SUIT**

Subject to Section 14 of this Policy, it is agreed that in the event of failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this Clause 17 constitutes, or should be understood to constitute, a waiver of the **Insurer's** rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, AIG Specialty Insurance Company, 175 Water Street New York, NY 10038, or his or her representative, and that in any suit instituted against the **Insurer** upon this contract, the **Insurer** will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**18.   REPRESENTATIONS AND SEVERABILITY**

In granting coverage under this Policy, it is agreed that the **Insurer** has relied upon the statements and representations contained in the **Application** for this Policy as being accurate and complete in all material respects. All such statements and representations are the basis of this Policy and are to be considered as incorporated into this Policy.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

The **Insureds** agree that in the event that the particulars and statements contained in the **Application** are not accurate and complete and materially affect either the acceptance of the risk or the hazard assumed by the **Insurer** under the Policy and there is a **Claim** based upon or arising out of such particulars or statements, then no coverage shall be afforded under this Policy for such **Claim** with respect to any **Individual Insured** who had actual knowledge as of the inception date of the **Policy Period** that the material facts were not accurately and completely disclosed in the **Application** and only to the extent is was made with the intent to deceive the Insurer. Such aforesaid knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

The **Insurer** shall not be entitled under any circumstances to rescind coverage under this Policy with respect to any **Insured**, but such coverage will be subject to all other terms, conditions and exclusions of this Policy.

It is understood and agreed that this Clause 18. REPRESENTATIONS AND SEVERABILITY supersedes any inconsistent language contained in the **Application**.

## 19.  ACQUISITION OR CREATION OF ANOTHER COMPANY BY THE INSUREDS' REPRESENTATIVE

If during the **Policy Period**, the **Insureds' Representative** obtains **Management Control** of any for-profit organization whose securities are not publicly traded and whose assets total less than $125,000,000 as of the acquisition date then, subject to the terms and conditions of this Policy, such company and the **Insureds** thereof (hereinafter **"New Portfolio Company Insureds"**) shall be covered under this Policy as a **Named Entity** with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Insurer** agrees to provide coverage for **Wrongful Acts** taking place prior to such acquisition or creation. At the request of a **New Portfolio Company Insured**, and provided that the **Insureds** have complied with the notice requirements of the last paragraph of this Clause, the **Insurer** agrees to provide coverage under the **EPL Coverage Section** and the **FLI Coverage Section** for **Wrongful Acts** taking place prior to such acquisition at no additional premium.

It is understood and agreed that such coverage provided to these **New Portfolio Company Insureds** will be subject to a $5,000,000 **Designated Shared Limit of Liability** under the **D&O Coverage Section**, a $5,000,000 **Designated Shared Limit of Liability** under the **EPL Coverage Section** and a $5,000,000 **Designated Separate Limit of Liability** under the **FLI Coverage Section**. The applicable Retentions for each **New Portfolio Company Insured** will be $25,000 for the **D&O Coverage Section**, $25,000 for the **EPL Coverage Section** and $0 for the **FLI Coverage Section**. It is further understood that coverage for these **New Portfolio Company Insureds** includes a $1,000,000 **Contractual Defense Costs Sublimit of Liability.**

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

It is further understood that, notwithstanding the foregoing, the following shall apply to any coverage provided under this Policy to any **New Portfolio Company Insureds**:

(a)    Coverage as is provided under the **EPL** and **FLI Coverage Sections** to any **New Portfolio Company Insured** for **Wrongful Acts** taking place prior to its acquisition shall be subject to a known **Wrongful Acts** exclusion to be added to the policy via endorsement. This exclusion shall be put in place unless such **New Portfolio Company Insured** had employment practices liability insurance in the amount of $5,000,000.00 or fiduciary liability insurance in the amount of $5,000,000.00 (as applicable), or greater for each coverage at the time of its acquisition. Should such **New Portfolio Company Insured** maintain employment practices liability insurance or fiduciary liability insurance prior to the acquisition but in an amount less than those noted above in this paragraph, such known **Wrongful Acts** exclusion shall only be applicable to the limit not previously maintained; and

(b)    Coverage as is provided under the policy to any **New Portfolio Company Insured** that is in the healthcare industry or higher education industry shall be subject to the **Insurer's** standard industry endorsements for such industries, which shall be added to the policy via endorsement.

The **Insurer** shall extend coverage for any **New Portfolio Company Insureds** described above, and any **Individual Insured** thereof, so long as the **Insureds' Representative** shall have provided the **Insurer** with full particulars of the **New Portfolio Company Insured** no later than: (i) forty five (45) days after the acquisition date; or (ii) the end of the **Policy Period**, whichever is earlier.

## 20.    FIRST DOLLAR E-DISCOVERY CONSULTANT SERVICES

For any **Claim**, no Retention shall apply to the first $25,000 in **Defense Costs** incurred for **E-Discovery Consultant Services**.

The list of pre-approved e-discovery consulting firms (**"E-Consultant Firms"**) is accessible through the online directory at http://www.aig.com/us/panelcounseldirectory under the "e-Consultant Panel Members" link. The list provides the **Insureds** with a choice of firms from which a selection of an **E-Consultant Firm** shall be made. Any **E-Consultant Firm** may be hired by an **Insured** to perform **E-Discovery Consultant Services** without further approval by the Insurer.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**21.    HEADINGS**

The descriptions in the headings of this  Policy are solely for convenience, and form no part of the terms and conditions of coverage.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved

**Directors, Officers and Private Company Liability Insurance**
**("D&O COVERAGE SECTION")**

**Notice: Pursuant to Clause 1 of the General Terms  and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and  are expressly applicable to this D&O Coverage  Section, unless otherwise explicitly  stated to the contrary  in either the General Terms and Conditions or in this D&O Coverage Section. This  is a Claims Made Coverage Section with Defense Costs included in the Designated Separate Limit of Liability or the Designated Shared Limit of Liability.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a  part of this Policy, the **Insurer** agrees as follows:

1.   **INSURING AGREEMENTS**

With respect to Coverage A, B, D, E and F and the Defense Provisions, solely with respect to **Claims** first made during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this Policy, and subject to the other terms, conditions and  limitations of this Policy, this **D&O Coverage Section** affords the following coverage:

**COVERAGE A: INDIVIDUAL INSURED INSURANCE**

This **D&O Coverage Section** shall pay the **Loss** of an **Individual Insured** arising from a **Claim** made against such **Individual  Insured** for any **Wrongful  Act** of such **Individual Insured**, except when and to the extent that the  **Company** has indemnified such **Individual Insured**. Payment of **Defense** shall be made in accordance with and subject to Clause 7 of this **D&O Coverage Section**..

**COVERAGE B: PRIVATE COMPANY INSURANCE**

This **D&O Coverage Section** shall pay the **Loss** of the **Company** arising from a:

(i)      **Claim** made against the **Company**; or

(ii)     **Claim** made against an **Individual Insured**;

for any **Wrongful Act**, but,  in the case of  Coverage B(ii) above, only  when and to the extent that the **Company** has  indemnified the **Individual Insured** for such  **Loss**. The **Insurer** shall, in accordance with and subject to Clause 7 of this **D&O Coverage Section**, advance  **Defense Costs** of such **Claim** prior to its  final disposition.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

1

**COVERAGE C: CRISISFUND® INSURANCE**

This **D&O Coverage Section** shall pay the **Crisis Management Loss** of a **Company** solely with respect to a **Crisis Management Event** occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this Policy, up to the amount of the **Crisis Management Fund** ; provided that payment of any **Crisis Management Loss** under this **D&O Coverage Section** shall not waive any of the **Insurer's** rights under this **D&O Coverage Section** or at law. This Coverage C shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis Management Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the **Claim** being first made.

**COVERAGE D: COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND**

This **D&O Coverage Section** shall pay the **Costs of Investigation** of the **Company** arising from a **Company Shareholder Derivative Investigation** in response to a **Derivative Demand** up to the amount set forth in Item 5 of the Declarations as amended by Item 3(b) of each **Program Participants Endorsement**. Payment of **Costs of Investigation** to a **Company** shall be made in accordance with and subject to Clause 7 of this **D&O Coverage Section**.

**COVERAGE E: CONTRACT CLAIM DEFENSE COSTS COVERAGE**

This **D&O Coverage Section** shall pay the **Defense Costs** of a **Company** arising from a **Contract Claim** up to the amount set forth in Item 3(e) of each **Program Participants Endorsement**. Payment of **Defense Costs** to a **Company** shall be made in accordance with and subject to Clause 7 of this **D&O Coverage Section**.

**COVERAGE F: PRE-CLAIM INQUIRY COSTS FOR PRE-CLAIM INQUIRY**

(a)     This policy shall pay the **Loss** of any **Individual Insured** arising from a **Pre-Claim Inquiry** first received by such **Individual Insured** during the **Policy Period** or any applicable **Discovery Period**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**; except when and to the extent that an **Company** has indemnified such **Individual Insured**; and

(b)     This policy shall pay the **Loss** of a **Company** arising from a **Pre-Claim Inquiry** first received by such **Individual Insured** during the **Policy Period** or any applicable **Discovery Period**, to the extent that such **Loss** is either **Pre-Claim Inquiry Costs** or **Liberty Protection Costs**, but only to the extent that such **Company** has indemnified such **Individual Insured**.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

**DEFENSE PROVISIONS**

The **Insurer** does not assume any duty to defend. The **Insurer** shall advance **Defense Costs** of such **Claim**, excess of the applicable Retention amount, on a current basis and, in any event, no later than sixty (60) days after the receipt of invoices of such **Defense Costs**. Selection of counsel to defend a **Securities Claim** shall be made in accordance with Clause 9 of this **D&O Coverage Section**.

With respect to Coverage D above, it shall be the duty of the **Company** and not the duty of the **Insurer** to conduct, investigate and evaluate any **Company Shareholder Derivative Investigation** against its own **Executives**; *provided, however,* that the **Insurer** shall be entitled to effectively associate in the investigation and evaluation of, and the negotiation of any settlement of, any such **Company Shareholder Derivative Investigation**.

2.      **DEFINITIONS**

(a)     **"Affiliate"** means:

    (i)      any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, a **Company**; or

    (ii)     any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

(b)     **"Asset Protection Costs"** means reasonable fees, costs and expenses consented to by the **Insurer** incurred by an **Executive** of a **Company** to oppose any efforts by an **Enforcement Body** to seize or otherwise enjoin the personal assets or real property of such **Executive** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in any way impairing the use thereof.

(c)     **"Company Shareholder Derivative Investigation"** means the investigation by the **Company** or, on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body), as to whether or not the **Company** should bring the civil proceeding demanded in a **Derivative Demand**.

(d)     **"Contract Claim"** means any **Claim** for any actual or alleged contractual liability of the **Company** under any express written contract or agreement.

(e)     **"Controlling Person"** means any **Individual Insured** who, directly or indirectly:

*Archive Copy*
© All rights reserved
* Subject to Protective Order *
**AIGS.000579**

(i)  holds a ten percent (10%) or greater equity or debt ownership interest in a **Company**; or

(ii)  controls a **Company** within the meaning of Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Act of 1934, as amended, or under common law or under any other applicable statute, rule, regulation or law.

(f)  **"Costs of Investigation"** means all reasonable costs, charges, fees and expenses consented to by the **Insurer** (including but not limited to attorney's fees and expert's fees but not including any settlement, judgment or damages and not including any compensation or fees of any **Individual Insured**) incurred by the **Company** or its board of directors (or any equivalent management body), or any committee of the board of directors (or any equivalent management body), solely in connection with a **Company Shareholder Derivative Investigation**.

(g)  **"Crisis Management Event"** means **Crisis Management Event**, as that term is defined in Appendix D attached to this Policy.

(h)  **"Crisis Management Fund"** means the dollar amount set forth in Item 5 of the Declarations as amended by Item 3(a) of each **Program Participants**.

(i)  **"Crisis Management Loss"** means **Crisis Management Loss**, as that term is defined in Appendix D attached to this Policy.

(j)  **"Crisis Management Services"** means **Crisis Management Services**, as that term is defined in Appendix D attached to this Policy.

(k)  **"Derivative Demand"** means a written demand by shareholders or creditors upon the board of directors (or equivalent management body) of a **Company** requesting that it file, on behalf of the **Company**, a civil proceeding in a court of law against any **Executive** of the **Company** for a **Wrongful Act** of such **Executive** in order to obtain relief from damages arising out of such **Wrongful Acts**.

(l)  **"Derivative Investigation"** means after receipt by any **Insured** of a **Claim** that is either a derivative lawsuit or a **Derivative Demand**, any investigation conducted by the **Company**, or on behalf of the **Company** by its board of directors (or the equivalent management body) or any committee of the board of directors (or equivalent management body), as to how the Organization should respond.

(m)  **"Employed Lawyer"** means any employee of the **Company** if and to the extent such employee is, or during the course of such person's employment was:

(i)  admitted to practice law; and

*Archive Copy*
© All rights reserved
* Subject to Protective Order *
4

    (ii)      employed, or was employed, at the time of the alleged **Wrongful Act**, within the **Company's** office of general counsel or its functional equivalent for the purpose of providing legal services to or for the benefit of the **Company**.

(n)    **"Enforcement Body"** means:

    (i)      any federal, state, local or foreign law enforcement authority or other governmental investigation authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general), or

    (ii)      the enforcement unit of any securities or commodities exchange or other self-regulatory organization.

(o)    **"Extradition"** means any formal process by which an **Individual Insured** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

(p)    **"Extradition Costs"** means reasonable fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Individual Insured** lawfully (a) opposing, challenging, resisting or defending against any request for any effort to obtain the **Extradition** of that **Individual Insured**, or (b) appealing any order or other grant of **Extradition** of that **Individual Insured**.

(q)    **"Individual Insured"** means any:

    (i)      **Executive** of a **Company**;

    (ii)      **Employee** of a **Company**;

    (iii)      **Controlling Person**; or

    (iv)      **Outside Entity Executive**.

(r)    **"Insured"** means:

    (i)      an **Individual Insured**; or

    (ii)      a **Company**.

(s)    **"Liberty Protection Costs"** means:

* Subject to Protective Order *
® All rights reserved

(i)        reasonable fees, costs and expenses consented to by the **Insurer** and incurred by an **Individual Insured** in order for an **Individual Insured** to lawfully seek the release of the **Individual Insured** from any pre- **Claim** arrest or confinement to a (a) specified residence or (b) secure custodial premises operated by or on behalf of any law enforcement authority; or

(ii)      reasonable premiums (but not collateral) consented to by the **Insurer** and incurred by an **Individual Insured** for a bond or other financial instrument to guarantee the contingent obligation of the **Individual Insured** for a specified amount required by a court that are incurred or required outside the United States of America during the **Policy Period**, if such premiums: (a) arise out of an actual or alleged **Wrongful Act**, or (b) are incurred solely by reason of such **Individual Insured's** status as an **Executive** or **Employee** of a **Company**.

(t)    **"Local Policy"** means any **Foreign Policy** issued to a **Company** in a **Foreign Jurisdiction** in order to comply with laws of such **Foreign Jurisdiction**.

(u)    **"Loss"** means damages, judgments, settlements, pre-judgment and post-judgment interest, **Crisis Management Loss** and **Defense Costs**; *provided, however,* **Loss**, other than **Defense Costs**, shall not include:

(i)        civil or criminal fines or penalties deemed uninsurable by law pursuant to which this Policy shall be construed other than civil penalties assessed against any individual director or officer pursuant to Sections 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd - 2(g)(2)(B);

(ii)      taxes; or

(iii)     any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; or

(iv)     amounts which may be deemed uninsurable under the law pursuant to which this Policy shall be construed including, without limitation, any disgorgement or payment of ill gotten gains, or any other monies to which an **Insured** was not legally entitled, as established by final adjudication (notwithstanding the foregoing, the Insurer shall not assert that a **Claim** alleging violations of Section 11, 12, 15 or 17 of the Securities Act of 1933, as amended, constitutes uninsurable loss under this Policy);

**Loss** shall also mean the following items, provided that they arise out of a **Claim**:

(1)    **SOX 304 Costs**;

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(2)    **Extradition Costs**;

(3)    **UK Corporate Manslaughter Act Defense Costs**;

(4)    **Personal Reputation Expenses**, subject to $100,000 per **Executive** and a $500,000 aggregate sublimit of liability; and

(5)    **Asset Protection Costs**, subject to $50,000 per **Executive** and a $250,000 aggregate sublimit of liability.

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (u)(i) through (u)(iv) above of this Definition, subject to the other terms, conditions and exclusions of this Policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **D&O Coverage Section**, including, but not limited to, exclusions 4(a), 4(b) and 4(c) of this **D&O Coverage Section**, punitive, exemplary and multiple damages where insurable by law. The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss** shall also include any reasonable fees and expenses of any attorney representing any party who has brought a **Claim** against any **Insured** where such fees and expenses are awarded pursuant to a covered judgment against an **Insured** or a covered settlement (consented to by the Insurer, which consent shall not be unreasonably withheld or denied) to which an **Insured** is a party.

Whether an **Insured** has incurred **Loss** under this Policy shall be determined without regard to any indemnification that may be available to such **Insured** from the **Insured's Representative** or any affiliate or subsidiary thereof that is not a **Company** and without regard to any other insurance coverage that may be available to such **Insured** under any insurance policy issued to any **Insured's Representative** or any affiliate or subsidiary thereof that is not a **Company**.

(v)    **"Personal Reputation Crisis"** means any negative statement that is included in any press release or published by any print or electronic media outlet regarding an **Executive** of a **Company** made during the **Policy Period** by any individual authorized to speak on behalf of an **Enforcement Body**.

© All rights reserved
* Subject to Protective Order *

(w)     **"Personal Reputation Expenses"** means reasonable fees, costs and expenses of a **Crisis Management Firm** (as defined in the CrisisFund Appendix® attached to this policy) retained within thirty (30) days of a **Personal Reputation Crisis** solely and exclusively by an **Executive** to mitigate the adverse effects specifically to such **Executive's** reputation from a **Personal Reputation Crisis**. **Personal Reputation Expenses** shall not include any fees, costs, or expenses of any **Crisis Firm** incurred by an **Executive** if such **Crisis Firm** is also retained by or on behalf of a **Company**.

(x)     **"Pre-Claim Inquiry"** means any pre- **Claim**:

(i)     verifiable request for an **Individual Insured** of any Organization: (a) to appear at a meeting or interview; or (b) produce documents that, in either case, concerns the business of that Organization or that **Individual Insured**'s insured capacities, but only if the request came from any:

(1)     **Enforcement Body**; or

(2)     **Company**, or, on behalf of a **Company**, by its board of directors (or the equivalent management body) or any committee of the board of directors (or the equivalent management body):

(A)     arising out of an inquiry or investigation by an **Enforcement Body** concerning the business of that **Company** or that **Individual Insured's** insured capacities; or

(B)     as part of its **Derivative Investigation**; and

(ii)     arrest or confinement of an **Executive** of a **Company** to a: (a) specified residence; or (b) secure custodial premises operated by or on behalf of an **Enforcement Body**, in connection with the business of any **Company** or an **Individual Insured's** capacity as an **Executive** or **Employee** of a **Company**."

Pre-Claim Inquiry" shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity, conducted in a **Company's** and/or **Enforcement Body's** normal review or compliance process.

(y)     **"Pre-Claim Inquiry Costs"** means:

*Archive Copy*
* Subject to Protective Order *
All rights reserved

(i)     with respect to any **Pre-Claim Inquiry** as defined in subparagraph (1) of the Definition of such term, the reasonable pre-**Claim** fees, costs and expenses consented to by the Insurer and incurred by an **Individual Insured** solely in connection with his/her preparation for and response to a **Pre-Claim Inquiry** directed to such **Individual Insured**, including attendance at an interview or meeting requested by an **Enforcement Body**, but excluding (i) any compensation of any **Individual Insured**; and (ii) the costs of complying with any formal or informal discovery or other request seeking documents, records or electronic information in the possession or control of a **Company**, the requestor or any other third party; and

(ii)    with respect to any **Pre-Claim Inquiry** as defined in subparagraph (2) of the Definition of such term, any **Liberty Protection Costs**.

(z)    **"Securities Claim"** means a **Claim** made against any **Insured** and brought anywhere in the world:

(i)     alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (as defined in the Securities Act of 1933) or common law, including, but not limited to, the purchase or sale, or offer or solicitation of an offer to purchase or sell securities which is:

    (1)    brought by, on behalf of, or in the right of any person or entity alleging, arising out of, based upon or attributable to the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities (as defined in the Securities Act of 1933) of a **Company**; or

    (2)    brought by, on behalf of, or in the right of a security holder, purchaser or seller of securities of a **Company** with respect to such security holder's, purchaser's or seller's interest in securities (as defined in the Securities Act of 1933) of such **Company**; or

(ii)    brought derivatively on the behalf of a **Company** by a security holder, purchaser or seller of such **Company**.

(iii)    which is brought by or on behalf of one or more securities holders of a **Company** in their capacity as such; or

(iv)    which arises from the purchase or sale of, or offer to purchase or sell, any securities (as defined in the Securities Act of 1933) issued by a **Company**, whether such purchase, sale or offer involves a transaction with a **Company** or occurs in the open market.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved

The term **"Securities Claim"** shall include an administrative or regulatory proceeding against a **Company**.

(aa) **"SOX 304 Costs"** means  reasonable fees, costs and expenses consented to  by the **Insurer** (including the premium or origination fee for  a loan or bond) and incurred by the chief executive  officer or  chief financial  officer of the  **Named Entity**  solely to facilitate the return of amounts required to be repaid  by such **Executive** pursuant to Section 304(a) of the Sarbanes Oxley Act  of 2002. **SOX 304 Costs** do not  include the  payment, return, reimbursement, disgorgement  or restitution of any such amounts requested or required  to be repaid by  such **Executive** pursuant to  Section 304(a).

(bb) **"UK Corporate Manslaughter Act Defense  Costs"** means **Defense Costs** incurred by an **Individual Insured**  that result solely  from the investigation,  adjustment, defense and/or appeal of  a **Claim**  against a  **Company** for  violation of  the United  Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar  statute in any jurisdiction.

(cc) **"Written Sale  Agreement"** means any purchase or  sale agreement, plan of merger document, asset sale agreement or other similar document.

(dd) **"Wrongful Act"** means:

(i) with respect  to any  **Executive** or **Employee**  of a  **Company**, any  actual or alleged  act,  breach  of duty,   neglect, error,  statement,  misstatement, misleading  statement, or  omission by  such **Executive**  or **Employee**  in their respective capacities as such, or any matter claimed against such **Executive** or **Employee** of a **Company** by reason of his or her status as an **Executive**  or **Employee** of a **Company**;

(ii) with respect  to a  **Company**, any actual  or alleged  act, breach  of duty, neglect, error, statement, misstatement,  misleading statement, or  omission by a **Company**;

(iii) with respect  to any **Outside  Entity Executive**, any  actual or  alleged act, breach of  duty,  neglect,  error,  statement,  misstatement, misleading statement,  or omission  by such **Outside  Entity Executive** in his or  her capacity  as such  or  any matter claimed  against such **Outside  Entity Executive** by reason of his or her status as such; or

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

(iv)    with respect to  any **Controlling Person**, any actual  or alleged act,  or other duty, neglect, error, statement, misstatement, misleading statement, or omission, by such **Controlling  Person** in his or  her capacity as such,  or any matter claimed against such **Controlling Person** solely by reason of his or her status as  a **Controlling  Person**,  but solely  to the extent  that  a **Company** indemnifies such **Controlling Person**.

3.    **WORLDWIDE EXTENSION**

Where legally  permissible, this  Policy shall  apply to  any  **Claim** made  against any **Insured** anywhere in the world.

For **Claims** made  and maintained in  a **Foreign Jurisdiction** against a **Company** formed and operating in such **Foreign Jurisdiction** or an **Individual Insured** thereof for **Wrongful Acts** committed in  such  **Foreign Jurisdiction**,  the **Insurer**  shall  apply to such **Claims**  those  terms and  conditions  (and related  provisions)  of the  relevant **Foreign Policy**, if  any, in  the **Foreign  Jurisdiction** that  are more  favorable to  such **Insured** in  the  **Foreign Jurisdiction**  than the  terms  and  conditions  of this Policy; *provided however,* that this paragraph shall apply  only to provisions more favorable by virtue  of  insuring  clauses,  extensions,  definitions,  exclusions,  pre-authorized securities  or other defense  counsel, discovery or  extended reporting period,  notice and authority, dispute resolution process or order of  payments provisions, if any, of the **Foreign  Policy** when  compared to  the  same  or similar  clauses  of this **D&O Coverage Section**.  This  paragraph shall  not  apply to  excess  provisions or  policy provisions that  address  non-renewal, duty  to defend,  defense within  or  without limits, taxes,  claims made  and reported  provisions  or any  other provision  of  this policy intended to govern coverage worldwide.

All premiums, limits, retentions, **Loss**  and other amounts under this  **D&O Coverage Section** are expressed and payable in the currency of the United States of  America. If judgment is  rendered, settlement  is denominated or  other elements  of **Loss**  are stated or  incurred in  a  currency other  than  United States  of America  dollars, payment of  covered **Loss**  due  under this  **D&O  Coverage Section** (subject to the terms, conditions and limitations of this **D&O Coverage Section**) will be made either in such other currency (at the option of the particular **Named Entity** and if agreeable to the  **Insurer**) or,  in  United States  of  America dollars,  at the  rate of  exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

It is hereby  understood and  agreed that with  respect to  any **Claim** covered  under any **Local Policy**, this Policy shall, subject to the terms and conditions of this Policy, pay such **Claim** if and  when the   **Claim** is  not covered under  such **Local  Policy** or would have been covered but for the erosion of such **Local Policy's** limit of liability.

Notwithstanding the  foregoing, in  the event  of  a **Claim** otherwise covered  under both this Policy  and a  **Local Policy**,  coverage under the  **Local Policy**  shall prevail. With respect to a **Claim** for  which coverage is provided by  this Policy and which is partially covered  by a  **Local Policy** there shall  be no  applicable retention  to  such **Claim** sustained by the **Insured** under this Policy.

## 4.    EXCLUSIONS

Solely with respect to this **D&O Coverage  Section**, the **Insurer** shall not be liable  to make any  payment for  **Loss**  in connection  with that portion of any  **Claim** made against an **Insured**:

(a)    arising out  of, based  upon  or attributable  to  the gaining  of any  personal profit or  financial advantage  to  which a  final  non-appealable adjudication adverse to such **Insured** in the underlying action establishes that the **Insured** was not legally entitled; *provided, however,* this exclusion shall not apply to any **Defense Costs** incurred prior to such final non-appealable adjudication;

(b)    arising out of, based upon or attributable to the  payment to such **Insured** of any remuneration without the  previous approval of  the stockholders of the **Company**, if a  final non-appealable adjudication  adverse to such  **Insured** in the  underlying action  establishes such  payment without such   previous approval was  illegal; *provided,  however,* this  exclusion  shall not  apply to any **Defense Costs** incurred prior to such final non-appealable adjudication;

(c)    arising out  of,  based upon or   attributable to the  committing of any deliberate criminal  or  deliberate fraudulent  act if  a final  non-appealable adjudication adverse  to the **Insured** in the  underlying action establishes that such deliberate  criminal  or deliberate  fraudulent act  committed by  the **Insured**; *provided, however,* this exclusion  shall not  apply to  any **Defense Costs** incurred prior to such final non-appealable adjudication;

*provided, however:*

(i)    EXCLUSIONS (a),  (b), and  (c) shall  not  apply to  any **Claim** alleging violations of Section  11, 12 or  15 of the  Securities Act of  1933 as amended to the portion of any **Loss** attributable to such violations; or

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(ii)      with respect to EXCLUSION (b), for acts or omissions which are treated as a criminal violation in a **Foreign Jurisdiction** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred.

(d)      alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act(s)** alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this **D&O Coverage Section** is a renewal or replacement of in whole or in part or which it may succeed in time; *provided, however,* that this exclusion shall not apply if a notice of circumstance was rejected for lack of specificity under the prior program;

(e)      alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior:

(i)      litigation against an **Insured**; or

(ii)      administrative or regulatory proceeding against or investigation of an **Insured**,

of which the **Insured** had notice as of the inception date of the **Policy Period**, or alleging any **Wrongful Act** which is the same or **Related Wrongful Act(s)** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)      with respect to an **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew that such **Wrongful Act** would lead to a **Claim** under this **D&O Coverage Section**.

(g)      alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive**, **Employed Lawyer**, **Controlling Person** or **Employee** of a **Company**, or as an **Outside Entity Executive** of an **Outside Entity**;

* Subject to Protective Order *
© All rights reserved

(h)    for any **Wrongful Act** arising out of an **Individual Insured** serving in a capacity as an **Outside Entity Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued independent of, and without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, the **Company,** or any **Executive** of the **Outside Entity** or the **Company**; *provided, however,* this exclusion shall not apply to:

    (i)    any **Claim** brought by an **Executive** of an **Outside Entity** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** that is covered by this **D&O Coverage Section**;

    (ii)    in any bankruptcy, insolvency, or liquidation proceeding by or against an **Outside Entity**, any **Claim** brought by the examiner, trustee, trust, receiver, liquidator, rehabilitator conservator, creditors' committee or any comparable authority (or any assignee thereof) of such **Outside Entity**, if any, or the debtor-in-possession;

    (iii)    any **Claim** brought by any former **Executive** of an **Outside Entity** who has not served in such position for an **Outside Entity** for at least two (2) years prior to such **Claim** being first made against any person;

    (iv)    any **Claim** brought by an **Executive** of an **Outside Entity** formed and operating in a **Foreign Jurisdiction** against any **Outside Entity Executive** of such **Outside Entity**, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

    (v)    any **Claim** brought by such **Outside Entity** or any **Executive** thereofif failure to make such **Claim** reasonably could result in liability to the **Insured** for failure to do so;

© All rights reserved
* Subject to Protective Order *

(vi)     any **Claim** brought by or with the assistance, participation, solicitation or intervention of one particular **Named Entity** listed in a **Program Participants Endorsement** or by or with the assistance, participation, solicitation or intervention of a **Subsidiary** or **Insured** thereof, against a different respective **Named Entity** listed in a **Program Participants Endorsement**, or a **Subsidiary** or Insured of such different respective **Named Entity**, so long as such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of **Insured's Representative**. and/or any director, officer, partner, management committee members or members of the Board of Managers of **Insured's Representative**.

(i)     which is brought by or on behalf of a **Company** or any **Executive** of a **Company**; or which is brought by any security holder, creditor or other interest holder of the **Company** (other than an **Employee** security holder), whether directly or derivatively, unless such security holder's, creditor's or other interest holder's **Claim** is instigated and continued independent of, and without the active solicitation, active assistance, or active participation of, or intervention of, any **Company** or any **Executive** of a **Company**; *provided, however,* this exclusion shall not apply to:

(i)     any **Claim** brought by an **Individual Insured** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a **Claim** which is covered by this policy;

(ii)     in any bankruptcy, insolvency, or liquidation proceedings brought by or against a **Company**, any **Claim** brought by the examiner, trustee, trust, receiver, liquidator, rehabilitator, conservator, creditors' committee or any comparable authority (or any assignee thereof) of such **Company**, if any, or the debtor-in-possession;

(iii)     any **Claim** brought by any former **Executive** of a **Company** who has not served in such capacity for a **Company** for at least two (2) years prior to such **Claim** being first made against any person;

(iv)     any **Claim** brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

(v)     any **Claim** brought by or with the assistance, participation, solicitation or intervention of one particular **Named Entity** listed in a **Program Participants Endorsement** or by or with the assistance, participation, solicitation or intervention of a **Subsidiary** or **Insured** thereof, against a different respective **Named Entity** listed in a **Program Participants Endorsement**, or a **Subsidiary** or Insured of such different respective **Named Entity**, so long as such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Insured's Representative** and/or any director, officer, partner, management committee members or members of the Board of Managers of the **Insured's Representative**;

(vi)    any **Claim** against any **Employed Lawyer**;

(vii)   any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Individual Insured** in defending any **Claim** against that **Individual Insured**;

(viii)   any **Claim** brought by or with the solicitation, assistance, participation or intervention of an **Insured Person** who is engaging in any protected activity specified in 18 U.S.C. 1514A(a) ("whistleblower" protection pursuant to the Sarbanes-Oxley Act of 2002), the Dodd Frank Act or any other protected activity specified in any other "whistleblower" protection pursuant to any state, local or foreign laws;

(j)    alleging, arising out of, based upon or attributable to any public offering of equity securities by a **Company**, an **Outside Entity** or an **Affiliate** or alleging a purchase or sale of such equity securities subsequent to such public equity securities offering; *provided, however,* this exclusion will not apply to:

(i)    any purchase or sale of equity securities exempted pursuant to Section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium;

(ii)    any public offering of equity securities (other than a public equity securities offering described in subparagraph 4(j)(i) above), as well as any purchase or sale of such equity securities subsequent to such public equity securities offering, in the event that within thirty (30) days prior to the effective time of such public equity securities offering:

MNSCPT

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

AIGS.000592

(1)    the particular **Named Entity** shall give the **Insurer** written notice of such public equity securities offering together with full particulars and underwriting information required thereto; and

(2)    the particular **Named Entity** accepts such terms, conditions and additional premium required by the **Insurer** for such coverage. Such coverage is also subject to the particular **Named Entity** paying when due any such additional premium. In the event the **Company** gives written notice with full particulars and underwriting information pursuant to subpart 4(j)(ii)(1) above, then the **Insurer** must offer a quote for coverage under this paragraph;

(iii)    any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the **Insured's** preparations to commence an initial public offering (**"IPO"**), including but not limited to any failed offering, and which occurred at any time prior to **12:01 a.m.** on the date the initial public offering commences (**"IPO Effective Time"**), including any **Claim** for **Loss** alleging a **Wrongful Act** which occurred during the road show; *provided, however* that the coverage otherwise afforded under this subparagraph (iii) shall be deemed to be void *ab initio* effective the **IPO Effective Time**; *provided further, however,* that coverage shall not be deemed void *ab initio* if:

(1)    the **Claim** is first made and reported pursuant to Clause 7(a) of the **General Terms and Conditions** prior to the **IPO Effective Time**, and

(2)    a public company D&O policy does not provide coverage for such **Claim**;

(iv)    any purchase or sale or offer or solicitation of an offer to purchase or sell any securities made pursuant to any exemption under the Securities Act of 1933, including but not limited to any purchase or sale made pursuant to Regulation D or Regulation S under the Securities Act of 1933; or

(v)    any public offering of debt securities, including any purchase or sale of such debt subsequent to such public debt securities offering;

© All rights reserved
* Subject to Protective Order *

(k)     for bodily injury,  sickness, disease  or death  of any person,  or damage  to, loss of use  of or  destruction of  any tangible property;  *provided, however,* this exclusion  shall  not  apply  to any **Securities  Claim**  or **UK  Corporate Manslaughter Act Defense Costs**;

(l)     for emotional distress or  mental anguish, or for  injury from libel  or slander, or defamation or disparagement, or  for injury from a violation  of a person's right of  privacy; *provided,  however,* this  exclusion  shall  not  apply  to  any **Securities  Claim**;

(m)     for: (i)  any actual,  alleged or  threatened  discharge,  dispersal, release  or escape of  **Pollutants**; or  (ii) any  direction  or request  to test  for,  monitor, clean  up, remove, contain, treat, detoxify or  neutralize **Pollutants**; *provided, however,* this exclusion shall not apply to:

   (1)    **Non-Indemnifiable  Loss**,  other  than  **Non-Indemnifiable  Loss** constituting **Cleanup Costs**; or

   (2)    **Loss**  in  connection  with  a  **Securities  Claim**,  other  than  **Loss** constituting **Clean-up Costs**;

(n)     for violation(s) of  any of  the responsibilities, obligations  or duties  imposed by the Employee  Retirement Income  Security Act of  1974, the  Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker  Adjustment and  Retraining  Notification Act,  the  Consolidated Omnibus Budget Reconciliation  Act,  the Occupational Safety  and  Health Act, any rules or  regulations of the  foregoing promulgated thereunder,  and amendments thereto or any  similar federal, state, local  or foreign statutory law or common law;

   It is acknowledged that **Claims** for violation(s) of  any of the responsibilities, obligations or  duties  imposed  by  "similar  federal, state, local  or foreign statutory law  or  common law,"  as  such quoted  language is used  in the immediately-preceding paragraph,  including without  limitation,  any and  all **Claims** which in  whole or in  part allege,  arise out of,  are based  upon, are attributable to,  or  are  in  any  way  related to any of  the  circumstances described in any of the following:

   (i)     the refusal,  failure or  inability of any  **Insured(s)** to pay wages  or overtime pay (or amounts representing  such wages or overtime  pay) for services rendered  or time spent  in connection with  work related activities (as opposed  to tort-based back  pay or  front pay damages for torts other than conversion);

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(ii)     improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

(iii)    failure to provide or enforce legally required meal or rest break periods;

*provided, however,* this exclusion shall not apply to:

(1)     any **Securities Claim**;

(2)     the extent any **Claim** alleges personal liability of an **Executive** in which case, **Defense Costs** shall be available.

(o)     for any **Wrongful Act(s)** of a particular **Named Entity**, or any **Insured** thereof, which occurred prior to the applicable **Prior Acts Date** for such **Named Entity** as set forth in the respective **Program Participants Endorsement**;

(p)     with respect to Coverage B(i) only:

(i)     for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights; *provided, however,* this exclusion shall not apply to any **Securities Claim**;

(ii)    for any actual or alleged contractual liability of the **Company** under any express written contract or agreement; *provided, however,* this exclusion shall not apply to any:

(1)     **Written Sale Agreement**;

(2)     **Contract Claim Defense Costs Coverage**;

(3)     **Securities Claim**; or

(4)     liability which would have attached in the absence of such express contract or agreement.

For the purpose of determining the applicability of the foregoing Exclusions the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

Notwithstanding the foregoing, except for paragraph (d) of this Clause 4. **EXCLUSIONS**, this Clause 4. **EXCLUSIONS** shall not apply to any **Pre-Claim Inquiry Costs** in connection with a **Pre-Claim Inquiry**).

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

This Clause 4. EXCLUSIONS shall not be applicable to **Crisis Management Loss**.

5.  **LIMIT OF LIABILITY**

The following provisions shall apply in addition to the  provisions of Clause 4. of the **General Terms and Conditions**:

**CRISISFUND® INSURANCE**

The maximum limit  of the **Insurer's**  liability for  all **Crisis Management  Loss** arising from  all **Crisis Management Events** occurring   during  the **Policy Period** or  the **Discovery Period** (if  applicable), in the  aggregate, shall be  the amount set  forth in Item 3(a)  of each  **Program Participants Endorsement** as  the  **Crisis Management Fund**. This **Crisis Management Fund** shall be the maximum limit of the **Insurer**  under this **D&O Coverage Section**  for **Crisis Management Loss**,  regardless of the  number of **Crisis Management Events** occurring during the **Policy Period**; *provided, however,* the **Crisis Management Fund**  shall be part of  and not in addition  to the **Designated Policy Aggregate  Limit of  Liability** stated  in Item  2 of each  **Program Participants Endorsement** and any  **Designated Separate Limit  of Liability**  or **Designated Shared Limit of Liability** applicable to  this **D&O Coverage Section**  as set forth in  Item 2 of each **Program Participants Endorsement**.

**SIDE A EXCESS LIMIT OF LIABILITY**

The **Side A  Excess Limit  of Liability**  shall be the  amount set  forth in  Item 3(f) of each **Program Participants  Endorsement** and is  the aggregate limit  of the Insurer's liability under this **D&O Coverage Section** excess of:

(i)      any **Designated  Separate  Limit of Liability**  or  **Designated Shared Limit of Liability** applicable to this **D&O Coverage Section**; and

(ii)     any coverage  for **Loss**  (whether or  not **Non-Indemnifiable Loss**) under any policy  of insurance  specifically  written as  excess over any **Designated Separate Limit of  Liability** or **Designated  Shared Limit of  Liability** applicable to this **D&O Coverage Section**,

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

for all **Non‑ Indemnifiable Loss** and all **Loss** incurred by an **Executive** that the **Company** fails or  refuses to indemnify  or advance to  or on behalf  of an **Executive** for any  reason, including **Financial Insolvency**, under  this **D&O  Coverage Section** arising out of  all **Claims** first  made against an  **Executive** of a  **Company** during the **Policy Period**  or the  **Discovery Period**  (if  applicable). The  **Side A  Excess  Limit of Liability** for the **Discovery Period** shall be  part of, and not in addition  to, the **Side A Excess Limit of  Liability** for the  **Policy Period**. The  **Side A Excess  Limit of Liability** shall be  in addition  to the  **Designated Policy  Aggregate Limit  of Liability** and any **Designated  Separate  Limit of Liability**  or  **Designated  Shared  Limit  of  Liability** applicable to this **D&O Coverage Section**.

It is  agreed  that  the  **Insurer's** liability  to pay  **Non‑ Indemnifiable Loss** shall  only attach to the **Side A Excess Limit of Liability** after:

(a)     the full amount  of any **Designated  Separate Limit of  Liability** or **Designated Shared Limit of  Liability** applicable to  this **D&O Coverage  Section** has been exhausted due to **Loss** paid by or  on behalf of the Insurer or  by or on behalf of the **Insureds**; and

(b)     any coverage  for **Loss**  (whether or  not **Non‑Indemnifiable Loss**)  under any policy  of insurance  specifically  written as   excess over any  **Designated Separate Limit of  Liability** or **Designated  Shared Limit of  Liability** applicable to this **D&O Coverage Section** has been exhausted by reason of loss(es) paid by or on behalf of the Insurer or by or on behalf of the **Insureds**.

The **Side A Excess Limit of Liability** shall "drop down"  (continue in force as primary insurance) only in  the event of  (a) and (b)  above and shall  not drop down  for any other reason.

*Archive Copy*
* Subject to Protective Order *
All rights reserved

**COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND**

The maximum limit of the **Insurer's** liability for **Costs of Investigation** arising from all **Company Shareholder Derivative Investigations** occurring during the **Policy Period** or the **Discovery Period** (if applicable),  in the aggregate, shall be  the amount set forth in Item 3(b) of each **Program  Participants Endorsement** (the "**Costs of  Investigation Sublimit of Liability"**).  The   **Costs  of  Investigation  Sublimit  of  Liability** is  the maximum limit of the  **Insurer** under this  **D&O Coverage Section** for  **Costs of Investigation** regardless  of  the number  of  such  **Company Shareholder  Derivative Investigations** occurring  during  the  **Policy  Period** or  the  **Discovery Period** (if applicable), or  the  number  of  **Executives**  subject  to such  **Company  Shareholder Derivative Investigations**; *provided,  however,* that  the  **Costs  of Investigation Sublimit of  Liability** shall  be part of and  not in  addition to  the  **Designated Policy Aggregate  Limit of  Liability** set forth in Item  2 of each **Program Participants Endorsement** and any  **Designated Separate Limit  of Liability**  or **Designated Shared Limit of Liability** applicable to  this **D&O Coverage Section**  as set forth in  Item  2 of each **Program Participants Endorsement**.

**CONTRACT CLAIM DEFENSE COSTS COVERAGE**

The maximum limit  of the  **Insurer's** liability  for all **Defense  Costs** under  this **D&O Coverage Section** arising from  any **Contract Claim** shall  be be the amount set  forth in Item 3(e) of each  **Program  Participants  Endorsement** (hereinafter  called  the "**Contractual Defense Costs Sublimit  of Liability"**). This **Contractual  Defense Costs Sublimit of  Liability** shall  be part of and  not in  addition to  the  **Designated Policy Aggregate Limit of Liability** set forth in Item of the Declarations and any  **Designated Separate Limit of Liability**  or **Designated Shared  Limit of Liability** applicable to this **D&O Coverage  Section** as set forth in  Item 3(e) of each **Program  Participants Endorsement**.

6.   **RETENTION CLAUSE**

The  following  provision  shall  apply  in  addition  to  the  provisions  of  Clause  5. RETENTION CLAUSE of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising  from a **Claim** which is in excess  of the  applicable Retention  amount  stated in  Item 6  of the  respective **Program Participants Endorsement**  for this **D&O  Coverage Section**, such  Retention amount to be borne by the **Company** and/or the **Insureds**, with regard to:

(i)      all **Indemnifiable Loss**; and

(ii)     **Loss** of the **Company**.

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

A single Retention  amount shall  apply to **Loss**  arising from  all **Claims**  alleging the same **Wrongful Act** or **Related Wrongful Act(s)**.

It is further understood and agreed  that in the event the  **Company** is unable to pay an applicable Retention amount due to **Financial Insolvency** or, with respect  to **Loss** incurred by  an **Individual  Insured**, fails  to indemnify  an **Individual  Insured**  for any reason, then  the  **Insurer**  shall  commence advancing  **Loss** within  the  Retention; *provided, however,*  the  **Insurer**  shall be  entitled  to  recover  the  amount  of  **Loss** advanced  within  the  Retention  from  the  **Company**  pursuant  to  Clause 10. SUBROGATION of the **General Terms and Conditions**.

Advancement,  payment  or  indemnification  of  an  **Individual  Insured**  by  and **Organization** is deemed  failed if  it has  been requested  by an **Individual  Insured** in writing and has not been provided by, agreed to be provided by or acknowledged as an obligation by an **Organization** within 60 days of such request.

No Retention amount is applicable to  **Crisis Management Loss** or **Non-Indemnifiable Loss**.

7.     **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer**  does not  assume any  duty to  defend. The  **Insureds**  shall  defend and contest any **Claim** made against them.

The **Insurer** shall  advance **Defense Costs**  on a current  basis and, in  any event, no later than  sixty (60)  days after  receipt of  invoices  of such  **Defense Costs**.  Such advanced payments by the **Insurer** shall  be repaid to the **Insurer**  by each and every **Insured** or  the **Company**, severally  according to  their  respective interests,  in the event and to the extent that any  such **Insured** or the **Company** shall not  be entitled under the terms and  conditions of this **D&O  Coverage Section** to payment  of such **Loss**.

No **Insured** may incur  any **Defense Costs**  in excess of the  Retention, or admit  any liability for,  or settle  any **Claim**  in excess  of the  Retention, without  the Insurer's consent, such consent not to  be unreasonably withheld. The **Insurer**  shall have the right to fully and effectively associate with each and every  **Insured** in the defense of any **Claim** that  appears reasonably  likely to involve  the **Insurer**,  including, but  not limited to, negotiating a settlement. Each  and every **Insured** agrees to provide  such information as  the  **Insurer**  may  reasonably  require  and  to  give  the  **Insurer**  full cooperation.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

Additionally, the **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** in excess of the Retention without the prior written consent of the **Insurer**. If the **Insured** admits or assumes any liability in connection with any **Claim** without the consent of the **Insurer**, then the **Insurer** shall not have any obligation to pay **Loss** with respect to such **Claim**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this **D&O Coverage Section**. The **Insurer** shall not unreasonably withhold any consent required under this **D&O Coverage Section**, provided that the **Insurer** shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim** in excess of the Retention, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs** in excess of the Retention, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **D&O Coverage Section**. In addition, in the event of a **Claim**, the **Insured** shall not take any action, without the **Insurer's** written consent, which prejudices the **Insurer's** rights under this **D&O Coverage Section** with respect to such **Claim**.

This Clause 7 shall not be applicable to **Crisis Management Loss**.

The failure of any **Individual Insured** to give the **Insurer** cooperation and information as required above shall not impair the rights of any other **Individual Insured** under this policy.

## 8.    COSTS OF INVESTIGATION FOR DERIVATIVE DEMAND COVERAGE PROVISION

It is understood and agreed that the **Company** shall be entitled to payment under Coverage D of this **D&O Coverage Section** for reimbursement of its covered **Costs of Investigation** ninety (90) days after:

(i)     the **Company** has made its final decision not to bring a civil proceeding in a court of law against any of its **Executives**; and

(ii)    such decision has been communicated to the shareholders or creditors who made the **Derivative Demand** upon the **Company**. However, such payment shall be subject to an undertaking by the **Company**, in a form acceptable to the **Insurer**, that the **Company** shall return to the **Insurer** such payment in the event any **Company** or any shareholder of the **Company** brings a **Claim** alleging, arising out of, based upon or attributable to any **Wrongful Acts** which were the subject of the **Derivative Demand**.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved

9.     PRE-AUTHORIZED DEFENSE ATTORNEYS FOR SECURITIES CLAIMS

This Clause 9 applies only to **Securities Claims**.

Affixed as Appendix A  hereto and made a  part of this **D&O  Coverage Section** is  a list of Panel  Counsel law firms  (**"Panel Counsel  Firms"**) from which  a selection of legal counsel shall be made to  conduct the defense of any **Securities  Claim** against an **Insured** pursuant to the terms set forth in this Clause.

The selection of the **Panel Counsel Firm** shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be either:

(i)       from the jurisdiction in which the **Securities Claim** is brought; or

(ii)      from the state indicated  in Item 1 of  the **Program Participants  Endorsement** as the mailing address for the particular **Named Entity**.

In the event  a **Securities Claim** is brought  in a jurisdiction  not included on  the appropriate list, the  selection shall be  made from a  listed jurisdiction  which is the nearest geographic jurisdiction to either where the **Securities Claim** is  maintained or where the  corporate headquarters  or state of  formation of  the  particular **Named Entity** is located. In such  instance, however,  the **Insurer** may, if at  the written request of  the particular **Named Entity** or  the **Insureds' Representative**, assign a non-Panel Counsel  Firm  of  the **Insurer's** choice  in  the  jurisdiction  in  which  the **Securities Claim** is brought to function as "local counsel" on the  **Securities Claim** to assist the **Panel  Counsel Firm** which  will function as  "lead counsel"  in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different  from that  selected by  other **Insured** defendants if such selection is required due to an  actual conflict of interest or  is otherwise reasonably justifiable.

The list of **Panel Counsel  Firms** may be amended  from time to time by  the **Insurer**. However, no change  shall be  made during the  **Policy Period** to the  **Panel Counsel Firms** listed in Appendix A without the consent of the **Insureds' Representative**.

Note that  this Clause  9. PRE-AUTHORIZED DEFENSE ATTORNEYS  FOR SECURITIES CLAIMS does not apply to  **Defense Costs** solely relating to  **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

*Archive Copy*
* Subject to Protective Order *
All rights reserved

10.    **ORDER OF PAYMENTS**

In the event of **Loss** arising from a **Claim** for which payment is due under the provisions of this **D&O Coverage Section**, the **Insurer** shall at the written request of the particular **Named Entity**:

(a)    first pay such **Loss** for which coverage is provided under Coverage A of this **D&O Coverage Section**, then with respect to whatever remaining amount of the applicable **Separate Limit of Liability** or **Shared Limit of Liability** is available after payment of such **Loss**,

(b)    then, only after payment of **Loss** has been made pursuant to Clause 10(a) above, pay such other **Loss** for which coverage is provided under Coverage B(ii) of this **D&O Coverage Section**, and

(c)    then, only after payment of **Loss** has been made pursuant to Clause 10(a) and Clause 10(b) above, pay such Loss for which coverage is provided under Coverage B(i), C or D of this **D&O Coverage Section**..

The **Financial Insolvency** of any **Company** or any **Individual Insured** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this **D&O Coverage Section** pursuant to this Clause 10.

In addition, if a bankruptcy, liquidation, administration, receivership, rehabilitation or reorganization proceeding is commenced by a **Company** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), state or federal receivership, administration or liquidation statute or law, or under any other federal, state, local or foreign law related to insolvency (collectively, "Insolvency Law") then, in regard to a covered **Claim** under this Policy, the Insureds hereby: (a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this Policy under such Insolvency Law and (b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction to the extent applicable to the proceeds of this Policy as a result of the commencement of such proceeding.

[The balance of this page is intentionally left blank.]

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

**Employment Practices Liability Insurance**
**("EPL COVERAGE SECTION")**

<u>Notice</u>: **Pursuant to Clause 1 of the General Terms  and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and  are expressly applicable to this EPL  Coverage Section, unless  otherwise explicitly  stated to the  contrary in  either the General Terms and Conditions  or in this EPL Coverage  Section. This is a Claims  Made Coverage Section with Defense Costs included in the Designated Separate Limit of Liability or Designated Shared Limit of Liability.**

In consideration of the payment of the premium, and in reliance upon the statements made to the  Insurer by **Application**,  which forms  a  part of  this  policy, the  Insurer agrees  as follows:

1.    **INSURING AGREEMENTS**

With respect to the  Insuring Agreement and  the Defense Provisions  of this Clause 1, solely with respect to **Claims** first made during the **Policy Period** or the  **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to  the other  terms, conditions  and limitations  of this  policy, this **EPL Coverage Section** affords the following coverage:

This **EPL Coverage  Section** shall  pay the  **Loss** of  an **Insured** arising  from a  **Claim** first made against such **Insured** for any **Wrongful  Act**. Payment of **Defense** shall be made in accordance with and subject to Clause 5 of this **EPL Coverage Section**.

This **EPL Coverage Section**  shall also pay the  **Loss** of a  **Company** arising from  any **Claim** made against such **Company** for its actual or alleged liability for any **Wrongful Internet Activity** of an **Employee**.

**DEFENSE PROVISIONS**

The Insurer does not assume any duty to defend. The Insurer shall advance **Defense Costs** of such **Claim**, excess of the applicable  Retention amount, on a current basis and, in any event, no later than sixty (60) days after  the receipt of invoices of such **Defense Costs**. Selection of counsel  to defend a **Designated Employment  Practices Claim** shall be made in accordance with Clause 6 of this **EPL Coverage Section**.

2.    **DEFINITIONS**

(a)    **"Designated Employment Practices Claim"** means a **Claim**:

(i)     alleging discrimination or **Retaliation**; or

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

(ii)    that is certified as, or which is seeking certification as, a class action.

(b)    **"Employment Practices Violation"** means any actual or alleged:

(i)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(ii)    harassment (including, but not limited to, sexual harassment whether "quid pro quo", hostile work environment or other harassment in the workplace, including "same-sex" sexual harassment);

(iii)    discrimination (including, but not limited to, discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, genetic information, pregnancy, military status or disability);

(iv)    **Retaliation** (including, but not limited to, lockouts);

(v)    employment-related misrepresentation(s) to an **Employee** of the **Company** or applicant for employment with the **Company** or an **Outside Entity**;

(vi)    employment-related libel, slander, humiliation, defamation or invasion of privacy;

(vii)    wrongful failure to employ or promote;

(viii)    wrongful deprivation of career opportunity with the **Company**, wrongful demotion or negligent **Employee** evaluation, including, but not limited to, the giving of negative or defamatory statements in connection with an employee reference;

(ix)    wrongful discipline;

(x)    failure to grant tenure;

(xi)    false arrest or false imprisonment; or

(xii)    with respect to any of the foregoing items (i) through (xi) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

**AIGS.000604**

but only if the **Employment Practices Violation** relates to an **Employee** of a **Company** or an **Outside Entity**, or applicants for employment with a **Company** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally.

(c)    **"Individual Insured"** means any:

    (i)    **Executive** of a **Company**;

    (ii)   **Employee** of a **Company**; or

    (iii)  **Outside Entity Executive**.

(d)    **"Insured"** means:

    (i)    an **Individual Insureds**; or

    (ii)   a **Company**.

        **"Company"**, as defined in **General Terms and Conditions** Definition (f), shall be deemed to include the **Insureds' Representative.**

        Coverage as is afforded under the **EPL Coverage Section** with respect to a **Claim** made against the **Insureds' Representative** or any **Individual Insured** thereof shall only apply if: (1) such **Claim** arises out of a covered **Claim** for a **Wrongful Act** actually or allegedly committed by an **Insured** (other than the **Insureds' Representative** or an **Individual Insured** thereof); and (2) an **Insured** (other than the **Insureds' Representative** or an **Individual Insured** thereof) is and remains a defendant in the action along with such **Insureds' Representative** or any **Individual Insured** thereof.

        In all events coverage as is afforded under this **EPL Coverage Section** with respect to a **Claim** made against the **Insureds' Representative** or any **Individual Insured** thereof shall only apply to **Wrongful Acts** committed or allegedly committed after the time that such **Insureds' Representative** became an **Insureds' Representative** and prior to the time such **Insureds' Representative** ceases to be an **Insureds' Representative.**

        An entity ceases to be a **Insureds' Representative** when it ceases to have **Management Control** of the **Named Entity**, either directly, or indirectly through one or more of its subsidiaries.

*Archive Copy*
© All rights reserved
\* Subject to Protective Order \*

3

(e)    **"Loss"** means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest and **Defense Costs**; *provided, however,* **Loss** shall not include:

      (i)       civil or criminal fines or penalties imposed by law;

      (ii)      taxes;

      (iii)     any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**;

      (iv)     employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation;

      (v)      any liability or costs incurred by any **Insured** to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar;

      (vi)     matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (e)(i) through (e)(vi) above of this Definition, subject to the other terms, conditions and exclusions of this policy.

**Loss** shall specifically include, subject to the other terms, conditions and exclusions of this **EPL Coverage Section**, including, but not limited to, Exclusion 3(a) of this **EPL Coverage Section**, punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). The enforceability of the first sentence of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss** shall also include any reasonable fees and expenses of any attorney representing any party who has brought a **Claim** against any **Insured** where such fees and expenses are awarded pursuant to a covered judgment against an **Insured** or a covered settlement (consented to by the Insurer, which consent shall not be unreasonably withheld or denied) to which an **Insured** is a party.

(f)    **"Retaliation"** means a retaliatory act of an **Insured** alleged to be in response to any of the following activities:

*Archive Copy*
® All rights reserved
* Subject to Protective Order *
AIGS.000606

(i)    the disclosure or threat of disclosure by an **Employee** of the **Company** or an **Outside Entity** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

(ii)    the actual or attempted exercise by an **Employee** of the **Company** or an **Outside Entity** of any right that such **Employee** has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights;

(iii)    the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or

(iv)    strikes of an **Employee** of the **Company** or an **Outside Entity**.

(g)    **"Third Party Violation"** means any actual or alleged harassment or unlawful discrimination, as described in subparagraphs 2(b)(ii) and 2(b)(iii) of the definition of **Employment Practices Violation**, or the violation of the civil rights of a person relating to such harassment or discrimination, when such acts are alleged to be committed against anyone other than an **Individual Insured** or applicant for employment with the **Company** or an **Outside Entity**, including, but not limited to, students, patients, members, customers, vendors and suppliers.

(h)    **"Wrongful Act"** means any actual or alleged:

(i)    **Employment Practices Violation**, or

(ii)    **Third Party Violation**.

(iii)    **Wrongful Internet Activity**

(i)    **"Wrongful Internet Activity"** means any actual or alleged:

(i)    **Employment Practices Violation** alleged by an **Employee**; or

(ii)    **Third Party Violation**,

when committed by an **Employee** by means of the internet, including, but not limited to, social networking activities, regardless of whether such internet activity is during or after work hours or on or off the work premises. For purposes of the application of this definition, an individual shall be deemed to be an **Employee** regardless of whether such individual was acting in his or her capacity as an **Employee**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

3.    **EXCLUSIONS**

Solely with respect to  this **EPL Coverage Section**,  the **Insurer** shall not  be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured**:

(a)    alleging, arising out of, based upon  or attributable to the facts alleged,  or to the same or **Related Wrongful  Acts** alleged or contained  in any claim which has been reported, or in any  circumstances of which notice has  been given, under any policy of which this **EPL Coverage Section** is a renewal  or replacement of in whole or in part or which it may succeed in time; *provided, however,* that this EXCLUSION (a) shall not apply if a notice of circumstance was rejected for lack of specificity under such prior policy;

(b)    alleging, arising out  of, based  upon or  attributable to,  as of the  **Continuity Date**, any pending or prior:

(i)    litigation against an **Insured**; or

(ii)    **EEOC** (or similar  state,  local  or  foreign  agency)  proceeding  or investigation of an **Insured**,

of which the General Counsel (or equivalent position if none) of the **Company** had written  notice,  or alleging any  **Wrongful Act** which is the same or **Related Wrongful  Act** to  that alleged  in such  pending  or prior  litigation or EEOC (or similar state, local or foreign agency) proceeding or investigation;

(c)    with respect to an **Outside  Entity Executive**, for any **Wrongful  Act** occurring prior to the **Continuity Date** if the **Insured**,  as of such **Continuity Date**, knew or could have  reasonably foreseen  that such  **Wrongful Act** could  lead to  a **Claim** under this **EPL Coverage Section**;

(d)    alleging, arising out  of, based  upon or attributable  to any  actual or  alleged act or omission of an **Individual Insured** serving in any capacity, other than as an **Executive** or **Employee**  of a **Company**,  or as an  **Outside Entity Executive** of an **Outside Entity**;

(e)    for bodily injury  (not including  emotional distress  or mental anguish), sickness, disease, or  death of any  person, or  damage to, loss  of use of  or destruction of any tangible property;

*Archive Copy*
6

* Subject to Protective Order *
© All rights reserved

AIGS.000608

(f)     for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act),  the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations  of the foregoing promulgated thereunder, and amendments thereto or  any similar federal,  state, local  or foreign statutory law or common law;

It is acknowledged  that **Claims**  for violations  of any of  the responsibilities, obligations or duties  imposed  by "similar federal, state, local or foreign statutory law or  common law," as such quoted  language is used in the immediately-preceding paragraph,  include,  without  limitation,  any and all **Claims** which in  whole or  in part allege, arise out of,  are based  upon, are attributable to, or are in any way related to any of the circumstances described in any of the following:

(i)      the refusal, failure or inability of any **Insured(s)** to pay wages or overtime pay (or  amounts representing such  wages or overtime  pay) for services rendered  or time  spent in  connection with work  related activities (as opposed  to tort-based  back pay  or front  pay damages for torts other than conversion);

(ii)     improper deductions from pay taken by any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

(iii)    failure to provide or enforce legally required  meal or rest break periods;

*provided, however,* this  exclusion (f) shall  not apply  to the extent  that  a **Claim** is for **Retaliation**;

(g)     alleging, arising out of, based upon or attributable  to any obligation pursuant to any  worker's  compensation,  disability  benefits,  unemployment compensation, unemployment insurance, retirement  benefits, social security benefits or similar  law; *provided, however,* this exclusion shall  not apply to the extent that a **Claim** is for **Retaliation**;

(h)     alleging, arising out  of, based  upon or attributable  to any  actual or  alleged contractual liability  of any **Company**  under any  express contract  or agreement (other than any employee handbooks or human resources  policies and procedures, or any organizational or management advisory documents of any **Named Entity**); *provided, however,* this exclusion shall not apply to:

*Archive Copy*
* Subject to Protective Order *
© All rights reserved.

(i)      liability which would have attached in the absence of such express contract or agreement; or

(ii)     **Defense Costs**;

(i)     alleging, arising out of, based upon or attributable to any **Claim** brought by a securities holder of a **Company**, an **Outside Entity** or an affiliate of a respective **Named Entity** in their capacity as such in the form of a shareholder class, direct or derivative action on behalf of such **Company**, **Outside Entity** or affiliate;

(j)     for any **Wrongful Act(s)** of a particular **Named Entity**, or any **Insured** thereof, which occurred prior to the applicable **Prior Acts Date** for such **Named Entity** as set forth in the respective **Program Participants Endorsement**.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 3(b) and 3(c), the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

**4.**    **RETENTION CLAUSE**

The following provision shall apply in addition to the provisions of Clause 5. RETENTION CLAUSE of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amount stated in Item 6 of the respective **Program Participants Endorsement** for this **EPL Coverage Section**, such Retention amount to be borne by the **Company** or the **Insureds** and shall remain uninsured, with regard to all:

(a)    **Indemnifiable Loss**; or

(b)    **Loss** of the **Company**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**.

It is further understood and agreed that in the event the **Company** does not in fact pay an applicable Retention amount due to any reason, then the **Insurer** shall commence advancing **Defense Costs** and pay any other covered **Loss** within the Retention; *provided, however,* except in the event of **Financial Insolvency**, the **Insurer** shall be entitled to recover the amount of **Defense Costs** and any other **Loss** advanced within the Retention from the **Company** pursuant to Clause 10. SUBROGATION of the **General Terms and Conditions**.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

**5.** **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any **Claim** made against them.

The **Insurer** shall advance **Defense Costs** on a current basis and, in any event, no later than sixty (60) days after receipt of invoices of such **Defense Costs**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds** or the **Company**, severally according to their respective interests, in the event and to the extent that the **Insureds** or the **Company** shall not be entitled under the terms and conditions of this **EPL Coverage Section** to payment of such **Loss**.

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** in excess of the Retention without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** in excess of the Retention which have been consented to by the **Insurer**, in writing, shall be recoverable as **Loss** under the terms of this **EPL Coverage Section**. The **Insurer's** consent shall not be unreasonably withheld, provided that the **Insurer** shall be entitled to fully and effectively associate in the defense and negotiation of any settlement of any **Claim** in excess of the Retention, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs** in excess of the Retention, or any portion thereof, to the extent such **Loss** is not covered under the terms of this **EPL Coverage Section**.

The **Insurer** shall have the right to effectively associate with the **Company** in the defense of any **Claim** that appears reasonably likely to involve the **Insurer**, including, but not limited to, negotiating a settlement. The **Company** and the **Insureds** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

The failure of any **Individual Insured** to give the **Insurer** cooperation and information as required above shall not impair the rights of any other **Individual Insured** under this policy.

**6.** **PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED EMPLOYMENT PRACTICES CLAIMS**

This Clause 6 applies only to **Designated Employment Practices Claims**.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

Affixed as Appendix B hereto and made a part of this **EPL Coverage Section** is a list of Panel Counsel law firms ("**Panel Counsel Firms**") from which a selection of legal counsel shall be made to conduct the defense of any **Designated Employment Practices Claim** against an **Insured** pursuant to the terms set forth in this Clause.

The selection of the **Panel Counsel Firm** shall be from the list of **Panel Counsel Firms** designated for the type of **Claim** and be either:

(a)     from the jurisdiction in which the **Designated Employment Practices Claim** is brought; or

(b)     from the state indicated in Item 1 of the **Program Participants Endorsement** as the mailing address for the respective **Named Entity**.

In the event a **Designated Employment Practices Claim** is brought in a jurisdiction not included on the appropriate list, the selection shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the **Designated Employment Practices Claim** is maintained or where the corporate headquarters or state of formation of the respective **Named Entity** is located. In such instance, however, the **Insurer** may, if at the written request of the respective **Named Entity** or the **Insureds' Representative**, assign a non- **Panel Counsel Firm** of the **Insurer's** choice in the jurisdiction in which the **Designated Employment Practices Claim** is brought to function as "local counsel" on the **Designated Employment Practices Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Designated Employment Practices Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insured** defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made during the **Policy Period** to the **Panel Counsel Firms** listed in Appendix B without the consent of the **Insureds' Representative**.

[The balance of this page is intentionally left blank.]

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

AIGS.000612

**Fiduciary Liability Insurance**
**("FLI COVERAGE SECTION")**

**Notice**: **Pursuant to Clause 1 of the General Terms and Conditions, the General Terms and Conditions are incorporated by reference into, made a part of, and are expressly applicable to this FLI Coverage Section, unless otherwise explicitly stated to the contrary in either the General Terms and Conditions or in this FLI Coverage Section. This is a Claims Made Coverage Section with Defense Costs included in the Designated Separate Limit of Liability or Designated Shared Limit of Liability.**

In consideration of the payment of the premium, and in reliance upon the statements made to the **Insurer** by **Application**, which forms a part of this policy, the **Insurer** agrees as follows:

1.     **INSURING AGREEMENTS**

Coverage for **Loss** under this policy is provided solely with respect to: (i) **Claims** first made against an **Insured**; (ii) **Voluntary Compliance Losses** first ascertained by or assessed against an **Insured**; and (iii) **Pension Crises** first occurring, in each such event, during the **Policy Period** or any applicable **Discovery Period** and reported to the Insurer as required by this policy. **Claims** that are fact-finding investigations which do not allege a **Wrongful Act** and **Claims** that are **Internal Appeals** shall each be deemed first made when they are reported. Subject to the foregoing and the other terms, conditions, and limitations of this policy, this policy affords the following coverage:

A.     **Individual Insured Coverage**

This policy shall pay the **Loss** of any **Individual Insured** that no **Company** or **Plan** has indemnified or paid that arises from any **Claim**:

(1)     made against such **Individual Insured** for any **Wrongful Act** of such **Individual Insured**; or

(2)     that is a fact-finding investigation which does not allege in writing a **Wrongful Act** or that is an **Internal Appeal**, if an **Insured** elects to give notice.

B.     **Individual Insured Indemnification Coverage**

This policy shall pay the **Loss** of a **Company** or **Plan** that arises from any **Claim**:

(1)     made against any **Individual Insured** for any **Wrongful Act** of such **Individual Insured**; or

MNSCPT

1

*Archive Copy*

* Subject to Protective Order *
* All rights reserved *

**AIGS.000613**

    (2)    that is a fact-finding investigation which does not allege in writing a **Wrongful Act** or that is an **Internal Appeal**, if an **Insured** elects to give notice;

but only to the extent that such **Company** or **Plan** has indemnified such **Loss** of, or paid such **Loss** on behalf of, the **Individual Insured**.

**C.**    **Company and Plan Coverage**

This policy shall pay the **Loss** of any **Company** or **Plan** arising from any **Claim**:

    (1)    made against such **Company** or **Plan** for any **Wrongful Act** of such **Company** or **Plan** (or of any employee for whom such **Company** is legally responsible); or

    (2)    that is a fact-finding investigation which does not allege in writing a **Wrongful Act** or that is an **Internal Appeal**, if an **Insured** elects to give notice.

**D.**    **Voluntary Compliance Loss Coverage**

This policy shall pay any **Voluntary Compliance Loss** first ascertained by or assessed against an **Insured**, subject to the aggregate sublimit of liability set forth on the Declarations.

The payment of any **Voluntary Compliance Loss** under this policy shall not waive any of the Insurer's rights under this policy or at law, including in the event that circumstances giving rise to such **Voluntary Compliance Loss** result in a **Claim**.

**E.**    **Pension CrisisFund Coverage**

This policy shall pay the **Pension Crisis Loss** of a **Company** up to the **Insured's** aggregate sublimit of liability for all **Pension Crisis Loss** under the **Pension CrisisFund**<sup>SM</sup> set forth in the Declarations (as amended by this endorsement).

The payment of any **Pension Crisis Loss** under this policy shall not waive any of the Insurer's rights under this policy or at law, including in the event that circumstances giving rise to such **Pension Crisis Loss** result in a **Claim**.

*Archive Copy*   © All rights reserved
* Subject to Protective Order *

## 2.   DEFENSE AGREEMENT

The **Insurer** does not assume any duty to defend a **Claim**. The **Insurer** shall advance **Defense Costs** on a current basis and, in any event, no later than sixty (60) days after the receipt of invoices of such **Defense Costs**, subject to the other provisions of this **FLI Coverage Section**. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled to payment of such **Loss** under the terms and conditions of this **FLI Coverage Section**.

Selection of counsel to defend a **Claim** shall be made in accordance with Clause 8 of this **FLI Coverage Section** (if applicable).

The **Insureds** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to in writing by the **Insurer** shall be recoverable as **Loss** under the terms of this **FLI Coverage Section**, such consent not to be unreasonably withheld.

The **Insureds** shall give the **Insurer** full cooperation and such information as the **Insurer** may reasonably require.

Notwithstanding the provisions above, if all **Insured** defendants are able to dispose of all **Claims** which are subject to one Retention (inclusive of **Defense Costs**) for an amount not exceeding the Retention, then the Insurer's consent shall not be required for such disposition.
Notwithstanding the provisions above, the failure of any **Insured** to give the Insurer cooperation and information as it may reasonably require shall not impair the rights of any **Individual Insured** under this policy.

## 3.   DEFINITIONS

(a)   **"Benefits"** means any obligation under a **Plan** to a participant or beneficiary under a **Plan** which is a payment of money or property, or the grant of a privilege, right, option or perquisite.

(b)   **"Breach of Fiduciary Duty"** means a violation of the responsibilities, obligations or duties imposed upon **Insureds** by **ERISA**.

(c)   **"Cafeteria Plan"** means a plan as defined in Section 125 of the Internal Revenue Code of 1986, as amended or a plan from which the participants may choose among two or more benefits consisting of cash and qualified benefits.

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

(d)     **"CAP Penalties"** means fines, penalties, sanctions, voluntary correction fees, compliance fees or user fees assessed against or collected from an **Insured** by the Internal Revenue Service (**"IRS"**) pursuant to a written agreement to correct an inadvertent **Plan** defect under an Employee Plans Compliance Resolution System, provided that such agreement to correct such **Plan** defect was entered into in writing by the **Insured** with the **IRS** during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal).

(e)     **"Claim,"** solely with respect to this **FLI Coverage Section** shall also mean, (i) any fact-finding investigation, whether or not a **Wrongful Act** is alleged, by the U.S. Department of Labor ("DOL") or the Pension Benefit Guaranty Corporation ("PBGC") or any similar governmental authority located outside the United States, including, but not limited to the United Kingdom's Pensions Ombudsman or Pensions Regulator; or (ii) any **Internal Appeal**.

(f)     **"Company,"** solely with respect to this **FLI Coverage Section** shall also mean, in any Foreign Jurisdiction, a **Trustee Company**:

(g)     **"Consulting Fees"** means fees charged by a third party actuary, benefits consultant or accountant resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs or expenses associated with:

   (i)     a **Plan** audit; or

   (ii)    identifying, finding or assessing such **Breach of Fiduciary Duty**.

(h)     **"Covered Penalties"** means solely in connection with a Plan:

   (i)     the 5% or less civil penalty imposed upon an **Insured** under Section 502(i) of **ERISA**;

   (ii)    the 20% or less civil penalty imposed upon an **Insured** under Section 502(l) of **ERISA**, with respect to a covered settlement or judgment;

   (iii)   the civil fines and penalties assessed against an **Insured** by either the United Kingdom's Pensions Ombudsman or the Pensions Regulator or any successor body thereto;

   (iv)    **Voluntary Compliance Loss** subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section**;

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

     (v)     the civil penalties under Section 502(c) of **ERISA**, other than penalties under the Pension Protection Act, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section ("Section 502(c) Penalties")**;

     (vi)     the civil penalties under the Pension Protection Act of 2006, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section ("Pension Protection Act Penalties")**;

     (vii)     **HIPAA Penalties**, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section**;

     (viii)     The civil penalties imposed under rules and regulations (including interim final rules and regulations) provided by governmental agencies (including the U.S. Department of Health and Human Services, the U.S. Department of the Treasury, the U.S. Internal Revenue Service (**"IRS"**), and the DOL, the Office of Consumer Information and Insurance Oversight, and the Employee Benefits Security Administration), for inadvertent violations by an Insured of **Health Care Reform Law**, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section ("Health Care Reform Penalties")**; and

     (ix)     the 15% or less tax penalty imposed upon an Insured under Section 4975 of the Internal Revenue Code of 1986, with respect to covered judgments, subject to the sublimit of liability set forth in the Limit of Liability Clause of this **FLI Coverage Section ("Section 4975 Penalties")**.

(i)     **"Defense Costs"** means reasonable attorney's fees, costs or expenses consented to in writing by the **Insurer** resulting solely from the correction of an actual or potential **Breach of Fiduciary Duty**, but excluding any fees, costs and expenses associated with finding or assessing such **Breach of Fiduciary Duty** and any compensation of **Individual Insureds**.

(j)     **"Delinquent Filer Penalties"** means penalties assessed by the **"DOL"** or the **IRS** under a Delinquent Filer Voluntary Compliance Program for inadvertent failure to file Form 5500, provided that the failure to file such Form 5500 occurred during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal).

(k)     **"Dependent Care Assistance Program"** means a dependent care assistance program as defined in Section 129 of the Internal Revenue Code of 1986, as amended.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

(l)     **"Employee Benefit Law"** means  **ERISA** or  any similar common  or statutory law  of the United States of America, Canada or any state or other  jurisdiction anywhere in the world to which a **Plan** is subject. Solely with respect to subparagraph 3(cc)(ii) of the Definition of **Wrongful Act** in this **FLI Coverage Section**,  **Employee Benefit Law** shall also include **HIPAA Privacy Regulations** and any  laws concerning unemployment insurance, Social Security,  government-mandated disability benefits or similar law. Except as  provided in the previous  sentence, **Employee Benefit Law** shall not include  any law  concerning workers' compensation, unemployment insurance, Social Security, government-mandated disability benefits or similar law.

(m)    **"ERISA"** means the Employee  Retirement Income Security Act  of 1974 (including, but not limited to, amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985, the Health  Insurance Portability and Accountability Act of 1996, the  Newborns' and Mothers'  Health Protection Act  of 1996,  the Mental Health Parity  Act  of 1996, and the Women's  Health and Cancer Rights Act of 1998, the Pension Protection Act  of 2006 and the **Health Care Reform Law**), including any amendment or revision thereto.

(n)    **"ESOP"** means any employee  stock ownership plan as defined  in **ERISA**, or  any other **Plan** under which investments are made primarily in securities of or issued by: (i) the **Company**; (ii) any acquired **Subsidiary**; or (iii) any parent of any  acquired **Subsidiary**, or  whose assets  at any  time  within twelve  (12) months  prior  to the inception date of this **FLI Coverage Section** were comprised of ten percent (10%) or more of securities of:

(1)     the **Company**;

(2)     any acquired **Subsidiary**; or

(3)     any parent of any acquired **Subsidiary**.

(o)    **"Fiduciary"** means a fiduciary as defined in an **Employee Benefit Law** (if  applicable), with respect to a **Plan**, or  a person or entity who exercises  discretionary control as respects the management of a **Plan** or the disposition of its assets.

(p)    **"Fringe Benefit"** means any plan or benefit described  in Section 132 of the Internal Revenue Code of 1986, as amended.

(q)    **"Health Care Reform  Law"** means the  Patient Protection  and Affordable Care  Act and the Health Care and Education Reconciliation Act of 2010.

(r)    **"HIPAA Penalties"** means civil  money penalties imposed upon  an **Insured** for violation of **HIPAA Privacy Regulations**.

*Archive Copy*
* Subject to Protective Order *
All rights reserved

(s)    **"HIPAA Privacy Regulations"** means the  privacy provisions of the  Health Insurance Portability and Accountability Act of 1996 and any amendments thereto.

(t)    **"Individual Insured"** means any:

(i)    past, present  or  future  natural  person  director,  officer,  governor,  general partner,  management committee member, **Pension Oversight  Committee Member,** member of the board of managers or employee of a  **Company** or, if applicable, of a  **Plan**, and as  to all of  the above in  his or her  capacity as a **Fiduciary**, administrator or trustee of a **Plan**; or

(ii)   past, present or  future natural person  in a  position equivalent to  a position listed in subparagraph (i) of this Definition  (t) in the event that the  **Company** is operating in a **Foreign Jurisdiction**.

(u)    **"Insured"** means:

(i)    any **Individual Insured**;

(ii)   any **Plan**;

(iii)  the **Company**;

(iv)   any **Pension Oversight Committee**;

(v)    **Trustee Company**; or

(vi)   any  other  person  or  entity  in  his,  her  or  its   capacity  as  a  **Fiduciary**, administrator or trustee of a **Plan** and included in the Definition  of **Insured** by specific written endorsement attached to this **FLI Coverage Section**.

(v)    **"Internal Appeal"** means  an  appeal  of  an  adverse  benefits  determination  by  an Insured pursuant  to  the  DOL's  claim  procedure  regulation  at  29  C.F.R.  Section 2560.503-1(h) or similar claim procedures pursuant to applicable law.

(w)    **"Loss"** means damages, judgments  (including pre  and post-judgment interest  on a covered  judgment),  settlements,  **Defense  Costs**,  **Voluntary  Compliance  Loss**, **Pension Crisis Loss** and **Covered Penalties**; *provided, however,* **Loss** shall not include:

(i)    civil or criminal  fines  or  penalties  imposed  by  law  (other  than  **Covered Penalties)**;

(i)    taxes or tax penalties;

*Archive Copy*

© All rights reserved
* Subject to Protective Order *

(ii)    Cleanup costs relating to hazardous materials, pollution or product defects;

(iii)   Wages, tips and commissions;

(iv)    any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**;

(v)    **Benefits**, or that portion of any settlement or award in an amount equal to such **Benefits**, unless and to the extent that recovery of such **Benefits** is based upon a covered **Wrongful Act** and is payable as a personal obligation of an **Individual Insured**; provided however, that **Loss** shall include a monetary award in, or fund for settling, a **Claim** against any **Insured** to the extent it alleges a loss to a **Plan** or loss in the actual accounts of participants in a **Plan** by reason of a change in value of the investments held by that **Plan**, including, but not limited to, the securities of the particular **Named Entity**, regardless of whether the amounts sought in such **Claim** have been characterized by plaintiffs as "benefits" or held by a court to be "benefits"; or

(vi)    amounts which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

**Defense Costs** shall be provided for items specifically excluded from **Loss** pursuant to subparagraphs (w)(i) through (w)(v) above of this Definition, subject to the other terms, conditions and exclusions of this **FLI Coverage Section**.

Where permitted by law, **Loss** shall specifically include (subject to the policy's other terms, conditions and exclusions, including, but not limited to, exclusions 5(a) and 5(b) of this **FLI Coverage Section**), punitive or exemplary damages or the multiplied portion of multiplied damages imposed upon any **Insured**. The enforceability of this paragraph shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages.

**Loss** shall include **Voluntary Compliance Loss**.

(x)    **"Managed Care Services"** means the administration or management of a health care, pharmaceutical, vision or dental Plan utilizing cost control mechanisms, including, but not limited to utilization review, case management, disease management, pharmacy management, the use of a preferred provider medical, vision or dental network, or a health maintenance organization.

(y)    **"Non-qualified Plan"** means any of the following plans for a select group of management or highly compensated directors, officers or employees: deferred compensation plan, supplemental executive retirement plan, top-hat plan or excess benefit plan.

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(z)     **"Pension Crisis"** has the meaning set  forth in the **Pension CrisisFund**<sup>SM</sup> Appendix attached to this policy.

(aa)    **"Pension CrisisFund**<sup>SM</sup> means the aggregate  sublimit of  liability set forth  in the Declarations (as  amended by  this endorsement)  for all **Pension Crisis  Loss** in  the aggregate  for  all **Pension Crises** first occurring during  the **Policy Period** or  any applicable **Discovery Period**.

(bb)    **"Pension Crisis Loss"** has  the  meaning  set  forth  in  the  **Pension CrisisFund**<sup>SM</sup> Appendix attached to this policy.

(cc)    **"Pension Oversight  Committee"** means any pension oversight  committee duly formed by a **Trustee Company** and duly appointed to act  as a trustee of the **Plan** or acting as a constructive trustee of the **Plan**.

(dd)    **"Pension Oversight  Committee  Member"** means any  duly elected  or  appointed member of a **Pension Oversight Committee**.

(ee)    **"Pension Plan"** means a pension plan as defined in any **Employee Benefit Law**.

(ff)    **"Plan"** means  automatically any  plan,  fund,  trust or program  (including, but  not limited to, any plan,  fund, trust or program  considered or created  by the particular **Named Entity** during the **Policy  Period**, any IRA-based Plan, **Welfare  Plan**, **Cafeteria Plan**, **Dependent  Care  Assistance Program**, **Fringe  Benefit**, **Non-qualified Plan**, or qualified **Pension Plan**), established anywhere in the world, which was, is or shall be sponsored solely by the **Company**, or sponsored jointly by the  **Company** and a labor organization, solely for the benefit of the employees  or the directors and officers of the **Company**, subject to the provisions set forth below:

(i)     if such **Plan** is a **Pension Plan**, other than  an **ESOP** or **Pension Plan** described in subparagraphs (ff)(iv) below,  then the particular **Named  Entity** shall provide written notice of such **Plan**  to the **Insurer** prior to  the inception date of this **FLI Coverage Section**,  unless such **Plan** was already  covered under a policy issued by the **Insurer**  of which this **FLI Coverage  Section** is  a continuous renewal;

(ii)    if such **Plan**  was sold, spun-off  or terminated prior  to the inception  date of this **FLI**  Coverage **Section** the particular  **Named  Entity** shall  have provided written notice of such sale, spin-off or termination  to the **Insurer** prior to the inception date of  this **FLI  Coverage Section**  and pay any  required premium relating to such  **Plan**, unless  such sale,  spin-off or  termination had  already been reported to  the **Insurer** under a policy  issued by  the **Insurer** of which this **FLI Coverage Section** is a continuous renewal;

*Archive Copy*

* Subject to Protective Order *

(iii)    if such **Plan** is sold, spun-off or terminated during the **Policy Period**, the particular **Named Entity** shall provide written notice of such sale, spin-off or termination to the **Insurer** prior to the end of the **Policy Period**;

(iv)    if such **Plan** is an **ESOP**, stock option plan or stock based compensation plan, this **FLI Coverage Section** shall only provide coverage for such plan upon written notice of such **Plan** to the **Insurer**, payment of any required premium, and such **Plan** has been added to the Definition of **Plan** by specific written endorsement attached to this policy; or

(v)    if such **Plan** is a **Pension Plan** (other than an **ESOP**) and is acquired during the **Policy Period** as a result of the particular **Named Entity's** acquisition of a **Subsidiary**, then this **FLI Coverage Section** shall apply to such **Plan** (but solely with respect to any **Wrongful Act** occurring after the date of such acquisition). The particular **Named Entity** shall provide the **Insurer** with full particulars of such new **Plan** before the end of the **Policy Period**.

The Definition of **Plan** shall also include: the following government-mandated programs: unemployment insurance, Social Security or disability benefits, but solely with respect to a **Wrongful Act** defined in subparagraph (ii) of the Definition of **Wrongful Act** in this **FLI Coverage Section**; and any other plan, fund or program which is included in the Definition of **Plan** by specific written endorsement attached to this **FLI Coverage Section**.

In no event, however, shall the definition of **Plan** include (i) any plan of an **Affiliated Entity**; or (ii) any multiemployer plan as defined in **Employee Benefit Law**.

(gg)    **"Section 502(c)"** means the civil penalties under Section 502(c) of **ERISA,** other than penalties under the Pension Protection Act.

(hh)    **"Trustee Company"** means a corporate trustee company that is:

(i)    established by a **Company** formed and operating in a **Foreign Jurisdiction**, or any predecessor of such **Company**, and

(ii)    duly appointed to act as a trustee of a **Plan** in a **Foreign Jurisdiction** and sponsored solely by such **Company**.

(ii)    **"UK Fines and Penalties"** means civil fines and penalties assessed against an **Insured** by either the Pensions Ombudsman appointed by the Secretary of State for Social Services in the United Kingdom, by the Occupational Pensions Regulatory Authority in the United Kingdom, by the Pensions Regulator in the United Kingdom or any successor body thereto, subject to the other terms, conditions and exclusions of this **FLI Coverage Section**.

* Subject to Protective Order *   © All rights reserved

(jj)   **"Voluntary Compliance Loss"** means fines, penalties, sanctions, and reasonable fees, costs or expenses related to the assessment of or correction of a **Plan's** non-compliance in accordance with any **Voluntary Compliance Program** and which are incurred during the **Policy Period** (or during the policy period of a policy issued by the Insurer of which this policy is a continuous renewal). **Voluntary Compliance Loss** shall not include any compensation of any **Individual Insureds** or any employee of an **Insured**.

(kk)   **"Voluntary Compliance Program"** means any voluntary compliance resolution program or similar voluntary settlement program administered by the DOL, IRS, PBGC or other similar governmental authority or any similar program administered by any governmental authority located outside the United States of America, to correct any inadvertent non-compliance by a Plan, including, but not limited to:

   (i)     Employee Plans Compliance Resolution System;

   (ii)    Delinquent Filer Voluntary Compliance Program;

   (iii)   Voluntary Fiduciary Correction Program;

   (iv)    Premium Compliance Evaluation Program; and

   (v)     Participant Notice Voluntary Correction Program.

(ll)   **"Voluntary Fiduciary Correction Loss"** means damages, **Defense Costs** and **Consulting Fees** incurred in connection with the **DOL** Voluntary Fiduciary Correction Program as set forth in the Federal Register, resulting from an inadvertent **Breach of Fiduciary Duty** occurring during the **Policy Period** (or during the policy period of a policy issued by the **Insurer** of which this **FLI Coverage Section** is a continuous renewal), provided that such compliance with the **DOL's** Voluntary Fiduciary Correction Program results in the **Insured** obtaining a "No Action" letter from the **DOL**; *provided, however,* **Voluntary Fiduciary Correction Loss** shall not include:

   (i)     civil or criminal fines or penalties imposed by law;

   (ii)    punitive or exemplary damages;

   (iii)   the multiplied portion of multiplied damages;

   (iv)    taxes or tax penalties;

   (v)     any amount for which an **Insured** is not financially liable or which is without legal recourse to the **Insured**;

   (vi)    **Benefits**, or that portion of damages equal to such **Benefits**;

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

(vii)   matters of which the **Insured** had knowledge prior to the inception date of this **FLI Coverage Section** or the first policy issued by the **Insurer** to the particular **Named Entity** of which this **FLI Coverage Section** is a continuous renewal; or

(viii)   matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

(mm)   **"Welfare Plan"** means a welfare plan as defined in **Employee Benefit Law**.

(nn)   **"Wrongful Act"** means:

(i)   a violation of any of the responsibilities, obligations or duties imposed upon **Fiduciaries** by **Employee Benefit Law** with respect to a **Plan**; including, but not limited to, the improper selection of or inadequate monitoring of third-party service providers; or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary**, but only with respect to a **Plan**;

(ii)   any act, error or omission solely in the performance of one or more of the following administrative duties or activities, but only with respect to a **Plan**:

(1)   counseling employees, participants and beneficiaries;

(2)   providing interpretations;

(3)   handling of records;

(4)   activities effecting enrollment, termination or cancellation of employees, participants and beneficiaries under the **Plan**;

(5)   complying with **HIPAA Privacy Regulations**; or

(6)   in a settlor capacity;

or any matter claimed against an **Insured** solely by reason of his, her or its status as an administrator, but only with respect to a **Plan**; and

*Archive Copy*
® All rights reserved
* Subject to Protective Order *

**AIGS.000624**

(iii)     as respects an **Individual Insured**, any matter claimed against him or her arising out of his or her service as a **Fiduciary** or administrator of any multiemployer plan as defined by **ERISA**, but only if such service is at the specific written request or direction of the **Company** and such multiemployer plan is added by specific written endorsement attached to this **FLI Coverage Section**, identified as a multiemployer plan and any required premium is paid. In no event shall coverage under this **FLI Coverage Section** extend to a **Claim** against a multiemployer plan itself, its contributing employer(s) or any other fiduciaries or administrators of such plan, other than an **Individual Insured**.

**4.     WORLDWIDE EXTENSION**

For **Claims** made and maintained in a **Foreign Jurisdiction** for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claims** the provisions of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to such **Insured** in the **Foreign Jurisdiction**; *provided, however,* this paragraph shall apply only to provisions more favorable by virtue of insuring clauses, extensions, definitions, exclusions, pre-authorized securities or other defense counsel, discovery or extended reporting period, notice and authority, dispute resolution process or order of payments provisions, if any, of the **Foreign Policy** when compared to the same or similar clauses of this **FLI Coverage Section**. This paragraph shall not apply to excess provisions or policy provisions that address non-renewal, duty to defend, defense within or without limits, taxes, claims made and reported provisions or any other provision of this policy intended to govern coverage worldwide.

All premiums, limits, retentions, **Loss** and other amounts under this **FLI Coverage Section** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this **FLI Coverage Section** (subject to the terms, conditions and limitations of this **FLI Coverage Section**) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the particular **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer**'s obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

**5.     EXCLUSIONS**

Solely with respect to this **FLI Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim** made against an **Insured**:

*Archive Copy*
* Subject to Protective Order *
© All rights reserved

(a) arising out of, based upon or attributable to the gaining of any personal profit or advantage to which any final non-appealable adjudication adverse to the Insured in the underlying action establishes that the **Insured** was not legally entitled; *provided, however,* this exclusion shall not apply to **Defense Costs** incurred prior to such final non-appealable adjudication.

(b) arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act, or any knowing or willful violation of any statute, rule or law, including, but not limited to **Employee Benefit Law** by the **Insured** if any final non-appealable adjudication adverse to the **Insured** in the underlying action establishes that such criminal or deliberate fraudulent act was committed; *provided, however,* this exclusion shall not apply to **Defense Costs** incurred prior to such final non-appealable adjudication.

(c) for discrimination in violation of any law; *provided, however,* this exclusion shall not apply to discrimination in violation of **Employee Benefit Law**;

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or **Related Wrongful Act** alleged or contained, in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this **FLI Coverage Section** is a renewal or replacement of in whole or part or which it may succeed in time; *provided, however,* that this EXCLUSION (d) shall not apply if a notice of circumstance was rejected for lack of specificity under such prior policy;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior:

(i) litigation against an **Insured**; or

(ii) administrative or regulatory proceeding or investigation of an **Insured**,

of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) for failure to fund a **Plan** in accordance with **Employee Benefit Law** or the **Plan** instrument, or the failure to collect contributions owed to the **Plan**; *provided, however,* this exclusion shall not apply to:

(i) **Defense Costs**; or

*Archive Copy*
* Subject to Protective Order *
All rights reserved

AIGS.000626

(ii) the portion of **Loss** that is payable as a personal obligation or an **Individual Insured**;

(g) for bodily injury, sickness, disease, death or emotional distress of any person, or damage to, loss of use of or destruction of any tangible property; *provided, however,* this exclusion shall not apply to (i) **Defense Costs** incurred in the defense of a **Claim** for **Breach of Fiduciary Duty**; or (ii) the coverage afforded under Clause 11(C), Managed Care Coverage.

(h) alleging, arising out of, based upon or attributable to any **Wrongful Act** as respects the **Plan** taking place at any time when the **Company** did not sponsor such **Plan** or when the **Individual Insured** was not a **Fiduciary**, administrator, trustee, director(s), officer(s) or employee of the **Company** or, if applicable, a **Plan**; or

(i) for any **Wrongful Act(s)** of a particular **Named Entity**, or any **Insured** thereof, which occurred prior to the applicable **Prior Acts Date** for such **Named Entity** as set forth in the respective **Program Participants Endorsement**.

For the purpose of determining the applicability of the foregoing Exclusions, other than exclusions 5(d) and 5(e) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured**.

## 6.   LIMIT OF LIABILITY

The following provision shall apply in addition to the provisions of Clause 4. LIMIT OF LIABILITY of the **General Terms and Conditions**:

**VOLUNTARY COMPLIANCE LOSS SUBLIMIT OF LIABILITY**

The maximum limit of the **Insurer's** liability for all **Voluntary Compliance Loss** occurring during the **Policy Period** or the **Discovery Period** (if applicable), in the aggregate, shall be the amount set forth in Item 3(c) of each **Program Participants Endorsement ("Voluntary Compliance Loss Sublimit of Liability")**. The **Voluntary Compliance Loss Sublimit of Liability** shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** or any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section**, and shall in no way serve to increase the **Insurer's Designated Policy Aggregate Limit of Liability** or any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** as stated therein.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

**HIPAA PENALTIES SUBLIMIT OF LIABILITY**

The maximum limit of the **Insurer's** liability for all **HIPAA Penalties**, in the aggregate, shall be the amount set forth in Item 3(d) of each **Program Participants Endorsement** (**"HIPAA Penalties Sublimit of Liability"**). The **HIPAA Penalties Sublimit of Liability** shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section**, and shall in no way serve to increase the **Insurer's Designated Policy Aggregate Limit of Liability** or any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** as stated therein.

**ADDITIONAL SUBLIMITS OF LIABILITY**

Each of the following sublimits of liability is the maximum limit of the **Insurer's** liability per Program Participants Endorsement for all **Loss** under this policy that is subject to that sublimit of liability. Each such sublimit of liability shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section**, as set forth in Item 2 of each **Program Participants Endorsement,** and shall in no way serve to increase the **Insurer's Designated Policy Aggregate Limit of Liability** or any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** as stated therein.

Additional Sublimits of Liability:

| | |
|---|---|
| *Section 502(c) Penalties:* | *$250,000* or 5% of the applicable Designated Separate Limit of Liability or Designated Shared Limit of Liability, whichever is less |
| *Pension Protection Act Penalties:* | *$250,000* or 5% of the applicable Designated Separate Limit of Liability or Designated Shared Limit of Liability, whichever is less |
| *Health Care Reform Penalties:* | *$250,000* or 5% of the applicable Designated Separate Limit of Liability or Designated Shared Limit of Liability, whichever is less |
| *Section 4975 Penalties:* | *$250,000* |
| *Pension CrisisFund* SM : | *$100,000* |

MNSCPT

*Archive Copy*
* Subject to Protective Order *
All rights reserved

AIGS.000628

7.    **RETENTION CLAUSE**

The following provision shall apply in addition to the provisions of Clause 5. RETENTION CLAUSE of the **General Terms and Conditions**:

The **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the Retention amount stated in Item 6 of the respective **Program Participants Endorsement**, such Retention amount to be borne by the **Insured** and shall remain uninsured, with regard to:

(a)    all **Indemnifiable Loss**; and

(b)    **Loss** of a **Company**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

Notwithstanding the foregoing, no Retention is applicable to **Pension Crisis Loss**, **Voluntary Compliance Loss**, **Pension Protection Act Penalties**, **Health Care Reform Penalties**, **Section 4975 Penalties**, **HIPAA Penalties** or **Section 502(c) Penalties**.

8.    **PRE-AUTHORIZED DEFENSE ATTORNEYS**

This Clause 8 applies only to:

(a)    a **Claim** brought by any government entity;

(b)    a request for coverage for a **Voluntary Compliance Loss**; or

(c)    a **Claim** brought in the form of a class or representative action or which purports to be brought as a class or representative action.

Affixed as Appendix C hereto and made a part of this **FLI Coverage Section** is a list of Panel Counsel law firms (**"Panel Counsel Firm(s)"**) from which a selection of legal counsel shall be made to conduct the defense of any **Claim** against an **Insured** to which this Clause 8 applies and pursuant to the terms set forth in this Clause.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Insured**. In addition, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, the **Insured** may select a **Panel Counsel Firm** different from that selected by other **Insureds** if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

*Archive Copy*
* Subject to Protective Order *
® All rights reserved ©

The selection of a **Panel Counsel Firm** from the attached list to defend the **Claim** against the **Insureds** shall not be restricted to the jurisdiction in which the **Claim** is brought.

The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no change shall be made to the specific list attached to this policy during the **Policy Period** without the consent of the **Insureds' Representative**. At the request of a particular **Named Entity** or the **Insureds' Representative**, the **Insurer** may in its discretion add one or more law firms to the attached list of **Panel Counsel Firms** for the purposes of defending the **Claim** made against the **Insureds**. The list of **Panel Counsel Firms** may also be amended to add, at the sole discretion of the **Insurer**, a non- **Panel Counsel Firm** for the purpose of acting as "local counsel" to assist an existing **Panel Counsel Firm**, which **Panel Counsel Firm** will act as "lead counsel" in conducting the defense of the **Claim**, for **Claims** brought in a jurisdiction in which the chosen **Panel Counsel Firm** does not maintain an office.

9.    **WAIVER OF RECOURSE**

Except for the **Insurer's** subrogation rights set forth in Clause 9 of the **General Terms and Conditions**, the **Insurer** shall have no right of recourse against an **Insured** unless required pursuant to any **Employee Benefit Law**.

It is further provided that in the event of any recovery under this Clause 9, any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** shall be restored to the extent of such recovery after subtracting any costs, expenses or reimbursements incurred by the **Insurer** in connection therewith.

10.   **ORDER OF PAYMENTS**

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this **FLI Coverage Section**, then the **Insurer** shall in all events:

(a)     first, pay **Loss** for which coverage is provided under this **FLI Coverage Section** for any **Individual Insured**;

(b)     second, only after payment of **Loss** has been made pursuant to Clause 10(a) above with respect to whatever remaining amount of any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** is available after such payment, pay the **Loss** of any covered **Plan**; and

*Archive Copy*
* Subject to Protective Order *
* All rights reserved *

(c)    then, only after payment of **Loss** has been made pursuant to Clause 10(a) and 10(b) above, with respect to whatever remaining amount of any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to this **FLI Coverage Section** is available after such payment, shall payment for the **Company** be made for such other **Loss** for which coverage is provided under this **FLI Coverage Section**.

## 11.    FIDUCIARY EXTENSIONS OF COVERAGE

### A.    Disproven Allegation Protection

In the event that an allegation which triggers potential coverage under this policy is disproven, so that a **Claim** is outside the scope of coverage under this policy, the Insurer shall not seek recovery of amounts that it has previously paid. Situations that would trigger this protection include, but are not limited to when it is proven that:

(1)    an **Executive** or employee of the **Company** who was alleged to be a **Plan** fiduciary was not in fact a **Plan** fiduciary;

(2)    an **Insured's** alleged breach of fiduciary duty was in fact a settlor act;

(3)    an alleged **Plan** was not a plan or was not a covered **Plan**; or

(4)    a **Company** alleged to be the sponsor of a **Plan** was not in fact the sponsor of such plan.

### B.    Independent Fiduciary Fees

**Loss** shall include reasonable and necessary fees and expenses of an independent fiduciary if such fiduciary is retained to review a proposed settlement of a covered **Claim**. **Loss** shall also include reasonable and necessary fees and expenses of any law firm hired by such independent fiduciary to facilitate a review of such proposed settlement.

### C.    Managed Care Coverage

This policy shall pay the **Loss** of an **Insured** arising from a **Claim** made against such **Insured** alleging improper or negligent selection of a **Managed Care Services** provider or denial or delay of any benefit under a health care, pharmaceutical, vision, or dental **Plan** of an Insured.

*Archive Copy*
© All rights reserved
* Subject to Protective Order *

**D.**     **LMRA Coverage**

If, and during the time that, coverage is provided under this policy, then this policy shall also  pay the **Loss**  of an **Insured**  arising from an  allegation that such **Insured** violated Section  301 of the Labor  Management Relations Act ("LMRA") relating to alleged violations of collectively  bargained contracts in connection with a  **Plan**.

*Archive Copy*

\* Subject to Protective Order \*

© All rights reserved

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website and click on the "Directors & Officers (Securities Claims)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                    © All rights reserved.

*Archive Copy*

**BRANCH**                    * Subject to Protective Order *                    **AIGS.000633**

**APPENDIX B**
**EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL**

In consideration of the premium charged, it is understood and agreed as follows: The information in our Panel Counsel lists/appendices is accessible through our online Panel Counsel Directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Public and Private Companies (Employment Practices Liability)" link and then select the applicable Panel Counsel Directory, either the "4-97 Monoline/Public Companies" link or the "Private Edge" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Revised (6/08)                © All rights reserved.

*Archive Copy*

**BRANCH**          * Subject to Protective Order *          **AIGS.000634**

**APPENDIX C**
**EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY**
**PANEL COUNSEL LIST**

In consideration of the premium charged, it is understood and agreed as follows:  The information in our Panel Counsel lists/appendices is now accessible through our online Panel Counsel Directory at AIG Panel Counsel Directory http://www.aig.com/us/panelcounseldirectory. To access the applicable online Panel Counsel Directory, please go to the website, click on the "Fiduciary Liability (ERISA and Non-ERISA)" link.

References in this policy to list of Panel Counsel law firms or related appendices are deemed amended to refer to the applicable Panel Counsel Directories at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

99544 (7/08)                                 Page 1 of 1

*Archive Copy*

**BRANCH**                    * Subject to Protective Order *                    **AIGS.000635**

**POLICYHOLDER NOTICE
REGARDING
E- DISCOVERY CONSULTANT SERVICES**

You are hereby notified that the Insureds under the attached policy are entitled to retain the services of a pre- approved E- Consultant Firm from the E- DISCOVERY CONSULTING FIRMS listed below at the rates negotiated by the Insurer for any Claim covered under the policy in which E- Discovery is required or becomes necessary.

For the purpose of the E- Discovery Consultant Services discussed in this notice, the following definitions shall apply:

(a) "E- Consultant Firm" means any E- DISCOVERY CONSULTING FIRMS listed below. Any "E- Consultant Firm" may be hired by an Insured to perform E- Discovery Consultant Services without further approval by the Insurer.

(b) "E- Discovery" means the development, collection, storage, organization, cataloging, preservation and/or production of electronically stored information.

(c) "E- Discovery Loss" means the reasonable and necessary consulting fees for the E- Discovery Consultant Services provided solely to the Insured(s) by an E- Consultant Firm.

Provided, however, E- Discovery Loss shall not include any costs of discovery other than E- Discovery Loss.

(d) "E- Discovery Consultant Services" means solely the following services performed by an E- Consultant Firm:

1. assisting the Insured with managing and minimizing the internal and external costs associated with E- Discovery;

2. assisting the Insured in developing or formulating an E- Discovery strategy which shall include interviewing qualified and cost effective E- Discovery vendors;

3. serving as project manager, advisor and/or consultant to the Insured, defense counsel and the Insurer in executing and monitoring the E- Discovery strategy; and

4. such other services provided by the E- Consultant Firm that the Insured, Insurer and E- Consultant Firm agree are reasonable and necessary given the circumstances of the Securities Claim.

PLEASE NOTE: The Insurer shall only be liable for the amount of E- Discovery Loss arising from a Claim (with the exception of a Securities Claim) under the attached policy that is in excess of the applicable Retention amounts stated in Item 4 of the Declarations. The E- DISCOVERY CONSULTANT SERVICES COVERAGE provided for Securities Claims shall be governed by the terms, conditions and exclusions set forth in the attached policy. In all events, the Insurer shall not waive any of the Insurer's rights under this policy or at law.

E- DISCOVERY CONSULTING FIRMS

The list of approved E- Consultant Firms is accessible through our online directory at http://www.aig.com/us/panelcounseldirectory. To access the applicable online E- Consultant Firm Directory, please go to the website and click on the "**e- Consultant Panel Members**" link.

References in this policy to the list of E- Consultant Firms or related appendices are deemed amended to refer to the applicable online E- Consultant Firm Directory at the website referenced above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

© All rights reserved.

97886 (4/08)          *Archive Copy*          1          **AIGS.000636**

* Subject to Protective Order *

**APPENDIX D**
**CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION**

I.   <u>**DEFINITIONS**</u>

(a)   "**Crisis Management Event**" means one of the following events which, in the good faith opinion of the **Company**, did cause or is reasonably likely to cause a **Material Effect**:

   1.   <u>Management Crisis</u>:
        The death, incapacity or criminal indictment of any **Executive** of the **Company**, or any **Employee** on whom the **Company** maintains key person life insurance.

   2.   <u>Employee Layoffs</u>:
        The public announcement of layoffs of **Employees** of the Company.

   3.   <u>Debt Default</u>:
        The public announcement that the **Company** had defaulted or intends to default on its debt.

   4.   <u>Bankruptcy</u>:
        The public announcement that the **Company** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of the **Company**; or the imminence of bankruptcy proceedings, whether voluntary or involuntary.

   5.   <u>Mass Tort</u>:
        The public announcement or accusation that a **Company** has caused the bodily injury, sickness, disease, death or emotional distress of a group of persons, or damage to or destruction of any tangible group of properties, including the loss of use thereof.

   6.   <u>Regulatory Crisis</u>:
        The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against a **Company**.

The descriptions in the headings of the **Crisis Management Events** are solely for convenience and form no part of the terms and conditions of coverage.

A **Crisis Management Event** shall first commence when the **Company** or any of its **Executives** shall first become aware of the event during the **Policy Period** and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Company** that the crisis no longer exists or when the **Crisis Management Fund** has been exhausted.

(b)   "**Crisis Management Firm**" means any public relations firm, crisis management firm or law firm listed below in Section III of this Appendix D.  Any "**Crisis Management Firm**" may be hired by the **Company** or its **Executives** or **Employees** to perform **Crisis Management Services** without further approval by the Insurer.

(c)   "**Crisis Management Loss**" means the following amounts incurred during the pendency of or within 90 days prior to and in anticipation of, the **Crisis Management Event**, regardless of whether a **Claim** is ever made against an Insured arising from the **Crisis Management Event** and, in the case where a

*Archive Copy*
* Subject to Protective Order *

AIGS.000637

**Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**:

    (1)    amounts for which the **Company** is legally liable for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Company** arising from a **Crisis Management Event**; and

    (2)    amounts for which the **Company** is legally liable for the reasonable and necessary printing, advertising, mailing of materials, or travel by **Executives**, **Employees** or agents of the **Company** or the **Crisis Management Firm**, in connection with the **Crisis Management Event**.

(d)    "**Crisis Management Services**" means those services performed by a **Crisis Management Firm** in advising the **Company** or any of its **Executives** or **Employees** on minimizing potential harm to the **Company** arising from the **Crisis Management Event**, including but not limited to maintaining and restoring public confidence in the **Company**.

(e)    "**Material Effect**" means the publication of unfavorable information regarding the **Company** which can reasonably be considered to lessen public confidence in the competence of the **Company**. Such publication must in occur in either:

    (1)    a daily newspaper of general circulation in the geographic area of the **Company**, or

    (2)    a radio or television news report on a **Company** received in the geographic area of the **Company**.

## II.  <u>EXCLUSIONS</u>

The term **Crisis Management Event** shall not include any event relating to:

    1.    any pending or prior litigation as of the **Continuity Date** for the **D&O Coverage Section** indicated in Item 3 of the Declarations;

    2.    any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

    3.    the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**, or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; or

    4.    the hazardous properties of nuclear materials.

## III.  <u>PRE-APPROVED CRISIS FIRMS</u>

For all **Crisis Management Events**, **Crisis Management Firm(s)** means any public relations firm listed in (1) - (8) below:

1.    Abernathy MacGregor Group, Inc.
    501 Madison Avenue
    New York, New York  10022
    (212) 371-5999
    Contacts: James T. MacGregor    (jtm@abmac.com)
                Rhoda Barnat    (rb@abmac.com)

* Subject to Protective Order *

2.     Burson- Marsteller
       230 Park Avenue South
       New York, New York  10003- 1566
       (212) 614- 5236
       Contact:  Michael Claes           (Michael.Claes@bm.com)

3.     Kekst and Company
       437 Madison Avenue
       New York, New York  10022
       (212) 521- 4800
       Contacts: Jim Fingeroth        (Jim- Fingeroth@kekst.com)
              Lissa Perlman         (Lissa- Perlman@kekst.com)

4.     Patton Boggs, LLP
       2550 M Street, N.W.
       Washington D.C.  20037
       (202) 457- 6040
       Contact:  Thomas Boggs, Esq.     (tboggs@pattonboggs.com)

5.     Reputation Partners, LLC
       105 West Adams Street, Suite 2220
       Chicago, IL  60603- 6265
       (312) 222- 9887
       Contacts: Nick Kalm          (nick@reputationpartners.com)
              Jane Devron         (jane@reputationpartners.com)

6.     Robinson Lerer & Montgomery
       1345 Avenue of The Americas, 4th Floor
       New York, New York  10105
       646- 805- 2000
       Contact:  Michael Gross        (mgross@rlmnet.com)

7.     Sard Verbinnen & Co.
       630 Third Avenue, 9th Floor
       New York, New York  10017
       (212) 687- 8080
       Contacts: George Sard        (gsard@sardverb.com)
              Paul Verbinnen      (pverbinnen@sardverb.com)

8.     Sitrick And Company
       1840 Century Park East, Suite 800
       Los Angeles, CA  90067
       (310) 788- 2850
       Contact:  Michael Sitrick       (mike sitrick@sitrick.com)

* Subject to Protective Order *

ENDORSEMENT# *1*

This endorsement, effective at *12:01 am   March 31, 2018*      forms a part of
Policy number *01-309-86-42*
Issued to: *SEE PROGRAM PARTICIPANT ENDORSEMENT*

By: *AIG Specialty Insurance Company*

Product Name: *PrivateEdge Plus*

## ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

**END 001**

89644 (6/13)          *ArcBRANCHy*          Page 1 of 1                          **AIGS.000640**
* Subject to Protective Order *

**ENDORSEMENT#** *2*

This endorsement, effective *12:01 am     March 31, 2018*          forms a part of
policy number   *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**NOTICE OF CLAIM**
**(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.  *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of
    Claim Reporting under this policy, such notice may also be given in writing pursuant
    to the policy's other terms and conditions to the Insurer by email at the following
    email address:

    c-claim@AIG.com

    Your email must reference the policy number for this policy. The date of the
    Insurer's receipt of the emailed notice shall constitute the date of notice.

    In addition to Notice of Claim Reporting via email, notice may also be given to the
    Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947,
    Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.  *Definitions*: For this endorsement only, the following definitions shall apply:

    (a)  "Insurer" means the "Insurer," "Underwriter" or "Company" or other name
         specifically ascribed in this policy as the insurance company or underwriter for
         this policy.

    (b)  "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of
         loss" or other reference in the policy designated for reporting of claims, loss
         or occurrences or situations that may give rise or result in loss under this
         policy.

    (c)  "Policy" means the policy, bond or other insurance product to which this
         endorsement is attached.

3.  This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage
    Section, if any, provided by this policy.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

Or Countersignature (In states where applicable)

© All rights reserved.
*END 002*

99758 (8/08)     **BRANCH** **Archive Copy**          Page 1 of 1          **AIGS.000641**
* Subject to Protective Order *

**ENDORSEMENT#** *3*

This endorsement, effective *12:01 am     March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT**
**(ALL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**, including but not limited to:

    (1)    **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Company**, or discharged or dispersed therefrom; or

    (2)    **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Company**; or

    (3)    the furnishing by an **Insured** or the **Company** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

    (4)    **Claims** for damage or other injury to the **Company** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of **Nuclear Material**.

B.    (1)    which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

    (2)    with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

**"Hazardous Properties"** include radioactive, toxic or explosive properties.

**"Nuclear Facility"** means:

    (a)    any nuclear reactor;

    (b)    any equipment or device designed or used for

© All rights reserved.
*END 003*

* Subject to Protective Order *

<u>**ENDORSEMENT#**</u> *3*     (continued)

      (1)   separating the isotopes of uranium or plutonium,
      (2)   processing or utilizing spent fuel, or
      (3)   handling, processing or packaging wastes;

(c)     any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; and

(d)     any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"**Nuclear Material**" means source material, special nuclear material or byproduct material.

"**Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material.

"**Source Material**," "**Special Nuclear Material**," and "**Byproduct Material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"**Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor.

"**Waste**" means any waste material (1) containing by product material and (2) resulting from the operation by any person or organization of any **Nuclear Facility** included within the definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

 

_____

AUTHORIZED REPRESENTATIVE

Or Countersignature (In states where applicable)

© All rights reserved.

*END 003*

**AIGS.000643**

* Subject to Protective Order *

ENDORSEMENT# *4*

This endorsement, effective *12:01 am*    *March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### D&O COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED

In consideration of the premium charged, it is hereby understood  and agreed that Clause 9 of the  D&O Coverage  Section PRE-AUTHORIZED  SECURITIES DEFENSE  ATTORNEYS  is hereby amended to include  the following solely in  regard to a  **Securities Claim** brought  in any of the below jurisdictions:

| Panel Counsel Law Firm | Jurisdiction |
|---|---|
| Ropes & Gray LLP | any jurisdiction  in  the  United  States  of America,  the  United  Kingdom,  Hong Kong,  Japan,  South  Korea  and  the People's Republic of China |
| Cleary Gottlieb Steen & Hamilton LLP | any jurisdiction  in  the  United  States  of America,  the  United  Kingdom,  the Russian  Federation,  Italy,  Brazil,  the Republic of  France, Belgium,  the Federal Republic of Germany,  Hong Kong,  South Korea, the United Arab  Emirates, and the People's Republic of China |

For the purposes  of this Clause  9, Defense  Costs shall also  mean any legal  fees and expenses of Panel  Counsel selected by  the **Insured(s)** at  Panel Counsel's usual  hourly rates (including usual and customary  periodic increases in such rates)  and including all reasonable out  of  pocket  charges  and expenses  with  no  discount  in rate  or  other reduction in such rates or rate of expense reimbursement

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT          *BRANCH          END 4*
                 *Archive Copy*
* Subject to Protective Order *          **AIGS.000644**

ENDORSEMENT# *5*

This endorsement, effective *12:01 am    March 31, 2018*        forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

## EPL COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED

In consideration of the premium charged, it is hereby understood  and agreed that Clause 6 of the  EPL  Coverage  Section PRE-AUTHORIZED  SECURITIES  DEFENSE  ATTORNEYS is hereby amended to include  the following but solely  in regard to an  **Employment Practices Claim** brought in any of the below jurisdictions:

| Panel Counsel Law Firm | Jurisdiction |
| --- | --- |
| Kelly Hart & Hallman | Texas |

For the  purposes  of this  Clause  6, Defense  Costs  shall  also  mean  any  legal fees  and expenses of Panel Counsel selected by the **Insured(s)** at Panel Counsel's usual  hourly rates (including usual and  customary periodic  increases in such  rates) and  including all reasonable out of pocket charges and expenses with no discount in rate  or other reduction in such rates or rate of expense reimbursement

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          ***BRANCH          END 5***
                ***Archive Copy***
* Subject to Protective Order *

AIGS.000645

**ENDORSEMENT# *6***

This endorsement, effective  *12:01 am        March 31, 2018*        forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

## ENTITY V. INSURED EXCLUSION ENDORSEMENT
## (D&O COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that in Clause 4. EXCLUSIONS of the **D&O Coverage Section**, paragraph (i) is deleted in its entirety and replaced as follows:

(i)     which is brought by or on behalf of a **Company** provided, however, this exclusion shall not apply to:

    (i)     in any bankruptcy, insolvency, or liquidation proceedings brought by or against a **Company**, any **Claim** brought by the examiner, trustee, trust, receiver, liquidator, rehabilitator, conservator, creditors' committee or any comparable authority (or any assignee thereof) of such **Company** if any, or the debtor-in-possession;

    (ii)     any **Claim** brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

    (iii)     any **Claim** brought by or with the assistance, participation, solicitation or intervention of one particular **Named Entity** listed in a **Program Participants Endorsement** or by or with the assistance, participation, solicitation or intervention of a **Subsidiary** or **Insured** thereof, against a different respective **Named Entity** listed in a **Program Participants Endorsement**, or a **Subsidiary** or Insured of such different respective **Named Entity**, so long as such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Insured's Representative** and/or any director, officer, partner, management committee members or members of the Board of Managers of the **Insured's Representative**;

    (iv)     any **Claim** against any **Employed Lawyer**;

    (v)     any **Defense Costs** which constitute **Non-Indemnifiable Loss** incurred by any **Insured Person** in defending any **Claim** against that **Insured Person**;

* Subject to Protective Order *

**ENDORSEMENT# *6*** (Continued)

This endorsement, effective *12:01 am     March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

> (vi)   any **Claim** brought by  or  with  the  solicitation,   assistance,
> participation or intervention of an  **Insured Person** who is  engaging in
> any  protected  activity  specified  in  18  U.S.C.   1514A(a)
> ("whistleblower" protection  pursuant  to  the Sarbanes-Oxley  Act  of
> 2002), the Dodd Frank  Act or any other  protected activity specified
> in any other  "whistleblower" protection pursuant  to any state,  local
> or foreign laws;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          **BRANCH          END 6**
                **Archive Copy**

* Subject to Protective Order *

**AIGS.000647**

**ENDORSEMENT# *7***

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### FLSA AND RELATED EXCLUSIONS AMENDED
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood  and agreed that the **D&O Coverage Section** (if purchased) and the **EPL Coverage Section** (if purchased) are  amended as follows:

1. Clause 4. EXCLUSIONS of the **D&O Coverage Section** (if purchased) is amended  by deleting Exclusion (o) in its entirety.

2. Clause 3. EXCLUSIONS of the  **EPL Coverage Section** (if  purchased) is amended by deleting Exclusions (g) and (h) in their entirety.

3. In Clause 4. EXCLUSIONS of  the **D&O Coverage Section** (if  purchased) and Clause 3. EXCLUSIONS of the **EPL Coverage Section** (if purchased), the following exclusion is added at the end thereof:

   (FL-1)   for violation(s) of any of the responsibilities, obligations or duties imposed by the  Employee Retirement Income  Security Act  of 1974, the Fair Labor Standards Act (except the Equal Pay Act),  the National Labor  Relations  Act,  the  Worker   Adjustment  and  Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules  or regulations of the foregoing promulgated thereunder, and amendments  thereto or any similar  federal, state,  local or  foreign statutory  law or  common law (hereinafter  **"FLSA Claims"**).

   It is  acknowledged that   **Claims**  for  violation(s) of any of  the responsibilities, obligations  or duties imposed by  "similar federal, state, local or foreign statutory law or  common law," as such quoted language is  used in  the  immediately-preceding paragraph,  include, without limitation, any and all **Claims** which in whole or in part allege, arise out of,  are based upon, are  attributable to,  or are  in any  way related to any of the circumstances described in any of the following:

   (1)   the refusal, failure  or inability of  any **Insured(s)** to  pay wages or overtime pay (or amounts  representing  such  wages or overtime pay) for services rendered or time spent in connection with work related activities (as opposed to tort-based back pay or front pay damages for torts other than conversion);

   (2)   improper deductions  from  pay taken by  any **Insured(s)** from any **Employee(s)** or purported **Employee(s)**; or

   (3)   failure to provide or enforce legally required  meal or rest break periods;

*BRANCH*  *Archive Copy*  *END 7*

* Subject to Protective Order *

**AIGS.000648**

ENDORSEMENT# *7*    (Continued)

This endorsement, effective  *12:01 am    March 31, 2018*         forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

Notwithstanding the foregoing, with respect to the **EPL Coverage Section**, this exclusion (FL-1) shall not apply to the extent that a **Claim** is for **Retaliation**.

Notwithstanding the foregoing, with respect to the **EPL Coverage Section** and the **D&O Coverage Section**, this exclusion (FL-1) shall not apply to **Defense Costs**.

5.    Clause 4. **LIMIT OF LIABILITY** ( **FOR ALL LOSS IN THE AGGREGATE UNDER THIS POLICY AND UNDER EACH INDIVIDUAL COVERAGE SECTION - INCLUDING DEFENSE COSTS)** of the **General Terms and Conditions** is hereby amended by inserting the following at the end thereof:

Solely with respect to **Loss** as may otherwise been covered under the **EPL Coverage Section**, the following shall apply:

PER PROGRAM PARTICIPANT FLSA CLAIMS DEFENSE COSTS SUBLIMIT OF LIABILITY

The maximum limit of the **Insurer's** liability for all **Defense Costs** arising from any **FLSA Claim** against any **Program Participant** under the **EPL Coverage Section** shall be $100,000 (hereinafter called the **"Per Program Participant FLSA Claims Sublimit of Liability"**).

Both the **Per Program Participant FLSA Claims Defense Costs Sublimit of Liability** and the **Aggregate FLSA Claims Defense Costs Sublimit of Liability** shall be part of, and not in addition to, the **Designated Policy Aggregate Limit of Liability** stated in the Item 2 of the **Program Participant Endorsement** and any **Designated Separate Limit of Liability** or **Designated Shared Limit of Liability** applicable to the **EPL Coverage Section**, and shall in no way serve to increase such **Designated Separate Limit of Liability, Designated Shared Limit of Liability** or **Designated Policy Aggregate Limit of Liability**.

AGGREGATE FLSA CLAIMS DEFENSE COSTS SUBLIMIT OF LIABILITY

The maximum limit of the **Insurer's** liability for all **Defense Costs** arising from any **FLSA Claims** for all **Program Participants** under the **EPL Coverage Section** is $1,000,000 (hereinafter called the **"Aggregate FLSA Claims Defense Costs Sublimit of Liability"**).

* Subject to Protective Order *

ENDORSEMENT# *7*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

This **Aggregate FLSA Claims Defense Costs Sublimit of Liability** is part of, and
not in addition to, the **Designated Policy Aggregate Limit of Liability** stated in the
Item 2 of the **Program Participant Endorsement** and any **Designated Separate
Limit of Liability** or **Designated Shared Limit of Liability** applicable to the **EPL
Coverage Section**, and shall in no way serve to increase such **Designated
Separate Limit of Liability, Designated Shared Limit of Liability** or **Designated
Policy Aggregate Limit of Liability**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH   END 7**
**Archive Copy**
* Subject to Protective Order *   **AIGS.000650**

**ENDORSEMENT# 8**

This endorsement, effective *12:01 am     March 31, 2018*     forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - ACCESS CLINICAL PARTNERS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        ACCESS CLINICAL PARTNERS, LLC

   **MAILING ADDRESS**:        873 SANTA CRUZ AVENUE, STE 202
                  MENLO PARK, CA 94025

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
      $7,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $6,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                 $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:       $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:          $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
      Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT# *8*  (Continued)**

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by  *AIG Specialty Insurance Company*

 

 

f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
liability for all **Non-Indemnifiable Loss** solely for **Executives**
of a **Company** (including **Defense Costs**) under the **D&O
Coverage Section** (herein the **"Side A Excess Limit of
Liability"**)

Item 4.   **CONTINUITY DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 08/12/2013 for $2,000,000 Limit of Liability |
|  | 03/04/2014 for $3,000,000 Excess |
|  | $2,000,000 Limit of Liability |
|  | 02/28/2014 for $1,000,000 Excess |
|  | $5,000,000 Limit of Liability |
| EPLI Coverage Section: | 08/12/2013 for $2,000,000 Limit of Liability |
|  | 03/04/2014 for $3,000,000 Excess |
|  | $2,000,000 Limit of Liability |
| FLI Coverage Section: | 03/04/2014 |

Item 5.   **PRIOR ACT DATES**:

|  |  |
|---|---|
| D&O Coverage Section: | 03/04/2014 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

|  |  |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $50,000 |
| FLI Coverage Section: | $0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

* Subject to Protective Order *

**ENDORSEMENT# *8*** **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 7.

| PREMIUM POLICY YEAR 1: | $40,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |
| PREMIUM POLICY YEAR 2: | $40,000 |
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH      END 8**
          *Archive Copy*

* Subject to Protective Order *

AIGS.000653

ENDORSEMENT# *9*

This endorsement, effective *12:01 am    March 31, 2018*      forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT
### (D&O AND EPL COVERAGE SECTIONS)

This endorsement modifies insurance provided under the Manuscript Form for TPG
Portfolio.

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement #8 PROGRAM PARTICIPANT
ENDORSEMENT - ACCESS CLINICAL PARTNERS, LLC, the policy is amended as follows:

I.      AMENDMENTS TO THE GENERAL TERMS & CONDITIONS SECTION

        The General Terms & Conditions section is amended as follows:

A.      In Clause 2. "DEFINITIONS" of the General Terms & Conditions Section, the
        definition of Company is amended to include the following at the end thereof:

        Company shall also include any auxiliary, guild or foundation formed solely for the
        benefit of the Named Entity and of which the book value of such entity's assets
        determined in accordance with Generally Accepted Accounting Principles totals less
        than 10% of the similarly calculated assets of the Named Entity as of the inception
        date of the Policy Period.

II.     AMENDMENTS TO THE D&O COVERAGE SECTION

        The D&O Coverage Section, if purchased, is amended as follows:

1.      In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of
        Individual Insured(s) is amended to include the following at the end thereof:

        Individual Insured(s) shall also include any past, present or future member of
        any duly constituted committee; any individual person engaged by a duly
        constituted committee for purposes of providing an expert opinion with
        regard to peer review or credentialing decision concerning an individual
        physician; any individual in charge of any operational department; and any
        medical director, staff physician or faculty member of the Company,
        regardless of whether or not such person is directly employed by the
        Company or is considered to be an independent contractor.

MNSCPT        *BRANCH*   Archive Copy*END 9*                              AIGS.000654

* Subject to Protective Order *

ENDORSEMENT# *9*  (Continued)

This endorsement, effective  *12:01 am*      *March 31, 2018*      forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

2.    In Clause 2. "DEFINITIONS" of the D&O Coverage Section,  the definition of Loss is
      amended to include the following at the end thereof:

      1.      IRS Fines:

      Loss shall  include Defense  Costs incurred  in connection  with a  Claim seeking  an
      assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or
      penalties pursuant to the  following sections of the  Internal Revenue Code of  1986
      (as amended):

      Section 4911 (tax on excess expenditures to influence legislation);
      Section 4940 (a) (tax on net investment income of tax-exempt foundations);
      Section 4941 (taxes on self-dealing);
      Section 4942 (taxes on failure to distribute income);
      Section 4943 (taxes on excess business holding);
      Section 4944 (taxes on investments which jeopardize charitable purpose);
      Section 4945 (taxes on taxable expenditures);
      Section 6652 (c) (1)  (A)  and (B)  (penalties  for failure  to  file certain  information
      returns or registration statements);
      Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
      Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.    EMTALA AND HIPAA FINES AND PENALTIES

      Notwithstanding the foregoing, Loss shall also include:

      (1)    civil fines and penalties assessed upon an Insured for a violation of EMTALA,
             subject to the EMTALA Sub-limit of Liability; and

      (2)    HIPAA Penalties,  where insurable  by  law, subject  to  the HIPAA  Penalties
             Sublimit of Liability.

3.    GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

      Notwithstanding the  foregoing, Loss  shall  not include  the  return of funds  which
      were received from any federal, state or local governmental  agency or any interest,
      fines or penalties  arising out of  the return of  such funds;  provided, however, that
      this policy shall pay  Defense Costs in  connection with any Claim  made against an
      Insured for the  return of  such funds, subject  to  the  Government Funding Defense
      Costs Sublimit of  Liability and any  co-insurance or  separate retention provided  for
      such coverage in this policy.

* Subject to Protective Order *

ENDORSEMENT# *9*   (Continued)

This endorsement, effective   *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

4.   EXCESS BENEFIT PENALTY COVERAGE

"Loss" shall also include any "Excess Benefits" penalty assessed in the amount of 10% by the Internal Revenue Service ("IRS") against any Insured(s) for management's involvement in the award of an "Excess Benefit" and the Defense Costs attributable thereto. Loss shall specifically exclude: (1) any 25% penalty assessed by the IRS against an Insured deemed to have received an Excess Benefit; (2) Defense Costs incurred to defend any Insured if it has been in fact determined that such individual received an Excess Benefit; and (3) any 200% penalty assessed by the IRS for failure to correct the award of an Excess Benefit. In all events, the assessment by the IRS of a 200% penalty against any Insured shall void ab initio all coverage afforded pursuant to this paragraph.

3.   In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "Wrongful Act" is amended by adding the following to the end thereof:

(iv)   any violation of the EMTALA.

(v)   any violation of the HIPAA Privacy Regulations.

4.   In Clause 4. "EXCLUSIONS" of the D&O Coverage Section, paragraph (l) is deleted in its entirety and replaced with the following:

(l)   alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to any Securities Claim.

5.   Clause 5. "LIMIT OF LIABILITY" of the D&O Coverage Section is amended by inserting the following at the end thereof:

EMTALA SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Loss in connection with all EMTALA Claims in the aggregate made and reported during the Policy Period or Discovery Period (if applicable) is $100,000 (hereinafter "EMTALA Sublimit of Liability"). The EMTALA Sub-limit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

MNSCPT   *BRANCH*   *Archive Copy* *END 9*   AIGS.000656
* Subject to Protective Order *

ENDORSEMENT# *9*   **(Continued)**

This endorsement, effective   *12:01 am*     *March 31, 2018*      forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

GOVERNMENT FUNDING DEFENSE COSTS SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Defense Costs in connection with a Claim for the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds is $1,000,000 (the "Government Funding Defense Costs Sublimit of Liability"). The Government Funding Defense Costs Sub-Limit of Liability is part of and not in addition to the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability. With respect to any such sublimited Defense Costs, it is further understood and agreed that the Insurer shall be liable to pay only 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit of Liability. It is a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the Insureds at their own risk and be uninsured.

HIPAA PENALTIES SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all HIPAA Penalties in the aggregate under this policy is $100,000 (the "HIPAA Penalties Sublimit of Liability"). The HIPAA Penalties Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

III.   AMENDMENTS TO THE EPL COVERAGE SECTION

The EPL Coverage Section, if purchased, is amended as follows:

A.    In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of Individual Insured(s) is amended to include the following at the end thereof:

* Subject to Protective Order *

**ENDORSEMENT# *9*   (Continued)**

This endorsement, effective *12:01 am   March 31, 2018*           forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

Individual Insured(s) shall also include any past, present or future member of any duly constituted committee; any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialing decision concerning an individual physician; any individual in charge of any operational department; and any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

B.   In the definition of Employment Practices Violation in Clause 2. "DEFINITIONS" of the EPL Coverage Section, subparagraph (xi) is deleted in its entirety and replaced with the following:

   (xi)   defect in peer review or credentialing;

   (xii)   with respect to any of the foregoing items (i) through (xi) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

C.   Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended by deleting paragraphs (e) and (h) thereof in their entirety and replacing them with the following:

   (e)   alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to any a Claim for Retaliation.

   (h)   alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Insured Company under any express contract or agreement (other than any employee handbooks or human resources policies and procedures, or any organizational or management advisory documents of any Named Entity); provided, however, this exclusion shall not apply to:

   (i)   liability which would have attached in the absence of such express contract or agreement; or

   (ii)   Defense Costs

MNSCPT          *BRANCH*   *Archive Copy*   *END 9*                    **AIGS.000658**
* Subject to Protective Order *

ENDORSEMENT# *9*   (Continued)

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

      (iii)    Individual Insureds;

      (iv)    Claims for Loss alleging Wrongful Acts of an Insured with respect to
           hospital practice privileges, credentialing or peer review matters;

    a.    The following clause is inserted at the end of the EPL Coverage Section:

HC-1 THIRD PARTY HUMAN CLINICAL TRIAL CLAIMS SUBLIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. "LIMIT
OF LIABILITY" of the General Terms and Conditions:

The aggregate limit of the Insurer's liability for all Loss under the EPL Coverage
Section in connection with all Third Party Human Clinical Trial Claims in the
aggregate is $100,000 (hereinafter called the "Third Party Human Clinical Trial
Claims Sublimit of Liability"). The Third Party Human Clinical Trial Claims Sublimit
of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability
and any Separate Limit of Liability or Shared Limit of Liability applicable to the EPL
Coverage Section, and shall in no way serve to increase such Policy Aggregate
Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

IV.    DEFINITIONS USED IN ENDORSEMENT

    As used in this endorsement, the following terms have the meanings set forth
    below:

    HC-1 "EMTALA" means the Emergency Medical Treatment and Active Labor Act
    ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

    HC-2 "EMTALA Claim" means any Claim alleging a violation of EMTALA,
    including, without limitation, any Claim seeking civil fines and penalties for a
    violation of EMTALA.

    HC-3 "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of
    Rights Act, 2, 26 U.S.C. 4958.

    HC-4 "HIPAA Penalties" means civil money penalties imposed upon an Insured for
    violation of the HIPAA Privacy Regulations.

* Subject to Protective Order *

**ENDORSEMENT# *9*** **(Continued)**

This endorsement, effective *12:01 am*    *March 31, 2018*        forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

HC-5 "HIPAA Privacy Regulations" means the privacy provisions of Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder, and amendments thereto, including, but not limited to, any amendment pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH Act")

HC-6 "Third Party Human Clinical Trial Claim" means any Third Party Violation in connection with any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

* Subject to Protective Order *     **AIGS.000660**

ENDORSEMENT# *10*

This endorsement, effective *12:01 am     March 31, 2018*          forms a part of
policy number *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION
### (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that solely
with regard to the coverage afforded in Endorsement #8, Program Participant Endorsement
- ACCESS CLINICAL PARTNERS, LLC, that solely with respect to **Loss** as may have
otherwise been covered under either the **D&O Coverage Section** or the **EPL Coverage
Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with
any **Claim** (including but not limited to any derivative or representative class actions) made
against any **Insured** alleging, arising out of, based upon or attributable to, or in any way
involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including
but not limited to the employment, supervision, reporting to the proper authorities, failure
to so report or retention of any person.

**"Sexual Misconduct"** means any licentious, immoral or sexual behavior, sexual abuse,
sexual assault, or molestation intended to lead to or culminating in any sexual act against
any individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT          *BRANCH          END 10*
                *Archive Copy*
* Subject to Protective Order *                    **AIGS.000661**

**ENDORSEMENT# 11**

This endorsement, effective  *12:01 am      March 31, 2018*       forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### ADDITIONAL INSUREDS - LISTED AFFILIATES
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement #8, Program Participant Endorsement - ACCESS CLINICAL PARTNERS, LLC, solely with respect to coverage as is provided under the **Coverage Sections** specified in the schedule below, Clause 2. Definition of **"Company"** of the **General Terms and Conditions**, is amended to include the following entity(ies), each of which is an **"Affiliate"** (as defined below), subject to each such **Affiliate's Continuity Date**:

**APPLICABLE COVERAGE SECTION(S):**

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

| AFFILIATE | CONTINUITY DATE |
|---|---|
| True North Urgent Care, LLC | 08/12/2013 D&O<br>08/12/2013 EPL<br>03/04/2014 FLI |

It is further understood and agreed that, for the purpose of the applicability of the coverage provided by this endorsement, the **Affiliates** listed above and the **Company** will be conclusively deemed to have indemnified the **Individual Insureds** and other persons afforded coverage by this endorsement to the extent that such **Affiliates** or the **Company** is permitted or required to indemnify such persons pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Company**. The **Affiliates** and the **Company** hereby agree to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

It is further understood and agreed that, solely with respect to any coverage granted by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against the **Affiliates** listed above or any **Clams** made against any **Individual Insured** of such **Affiliate** listed above:

(1)     alleging, arising out of, based upon or attributable to, as of such **Affiliate's** respective **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, or alleging or derived from a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; and

* Subject to Protective Order *

**ENDORSEMENT# *11*** **(Continued)**

This endorsement, effective *12:01 am*    *March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

    (2)    alleging any **Wrongful Act** occurring prior to such **Affiliate's** respective **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

In all events, coverage as is afforded under this endorsement with respect to any **Claim** made against any **Affiliate** listed above or any **Individual Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the respective time such **Affiliate** became an **Affiliate** and prior to the time that such **Affiliate** ceased to be an **Affiliate**.

As used in this endorsement, the term **"Affiliate"** means (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT    ***BRANCH***    ***END 11***
***Archive Copy***
* Subject to Protective Order *

AIGS.000663

**ENDORSEMENT# *12***

This endorsement, effective *12:01 am     March 31, 2018*            forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - ADVANTEK WASTE MANAGEMENT SERVICES
LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.    **NAMED ENTITY**:        ADVANTEK WASTE MANAGEMENT SERVICES LLC

        **MAILING ADDRESS**:    11000 RICHMOND AVE, STE 190
                                      HOUSTON, TX 77042

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.    **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
        $6,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:                    $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:         $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:    $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:            $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
       Liability for D&O:

MNSCPT        ***BRANCH*** *Archive Copy* *END 12*                    **AIGS.000664**
* Subject to Protective Order *

ENDORSEMENT# *12*   (Continued)

This endorsement, effective *12:01 am*    *March 31, 2018*    forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

     f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
      liability for all **Non-Indemnifiable Loss** solely for **Executives**
      of a **Company** (including **Defense Costs**) under the **D&O**
      **Coverage Section** (herein the **"Side A Excess Limit of**
      **Liability"**)

Item 4.    **CONTINUITY DATES**:

        D&O Coverage Section:     08/27/2014
        EPLI Coverage Section:    08/27/2014
        FLI Coverage Section:     08/27/2014

Item 5.    **PRIOR ACT DATES**:

        D&O Coverage Section:     08/27/2014
        EPLI Coverage Section:    N/A
        FLI Coverage Section:     N/A

Item 6.    **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
        **Act or Related Wrongful Acts):**

        D&O Coverage Section:     $25,000
        EPLI Coverage Section:    $25,000
        FLI Coverage Section:     $0

        *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR 1:** | $21,250 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

ENDORSEMENT# *12*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| PREMIUM POLICY YEAR 2: | $21,250 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH   END 12**
**Archive Copy**
* Subject to Protective Order *

AIGS.000666

ENDORSEMENT# *13*

This endorsement, effective *12:01 am*    *March 31, 2018*    forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES)
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, solely with regard to the coverage afforded in
Endorsement #12 -PROGRAM PARTICIPANT ENDORSEMENT ADVANTEK WASTE
MANAGEMENT SERVICES LLC, it is hereby understood and agreed that, solely with
respect to coverage as is provided under the **Coverage Sections** specified in the schedule
below, the definition of **"Company"** in the **General Terms and Conditions** is amended to
include the following entity(ies), subject to each such entity's **Continuity Date**:

**APPLICABLE COVERAGE SECTION(S):**

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

| ENTITY(IES) | CONTINUITY DATE |
|---|---|
| Advantek International, Inc. | 3/31/18 |
| AWMS Series Interest Holdings | 3/31/18 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT    *BRANCH*    *END 13*
*Archive Copy*

AIGS.000667

* Subject to Protective Order *

**ENDORSEMENT# *14***

This endorsement, effective *12:01 am    March 31, 2018*        forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - ARTEL HOLDINGS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:      ARTEL HOLDINGS, LLC

         **MAILING ADDRESS**:      13665 DULLES TECHNOLOGY DR, STE 300
                                       HERNDON, VA 20171

         **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
         $10,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | $5,000,000 | N/A |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

     a. Crisis Management Fund for D&O:                    $50,000
     b. Costs of Investigation Coverage Sublimit for D&O:        $250,000
     c. Voluntary Compliance Loss Sublimit of Liability for FLI:    $100,000
     d. HIPAA Penalties Sublimit of Liability for FLI:            $250,000
     e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
         Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT#** *14*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

       f. Side A Excess Limit of Liability excess aggregate limit of    $1,000,000
       liability for all **Non-Indemnifiable Loss** solely for **Executives**
       of a **Company** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the **"Side A Excess Limit of**
       **Liability"**)

**Item 4.**   **CONTINUITY DATES**:

      D&O Coverage Section:     06/01/2011
      EPLI Coverage Section:    06/01/2011
      FLI Coverage Section:     06/01/2011

**Item 5.**   **PRIOR ACT DATES**:

      D&O Coverage Section:     06/01/2011
      EPLI Coverage Section:    06/01/2011
      FLI Coverage Section:     06/01/2011

**Item 6.**   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
          **Act or Related Wrongful Acts):**

      D&O Coverage Section:     $25,000
      EPLI Coverage Section:    $25,000
      FLI Coverage Section:     $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

| **PREMIUM POLICY YEAR 1:** | $53,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

**BRANCH** *Archive Copy* *END 14*          **AIGS.000669**
* Subject to Protective Order *

**ENDORSEMENT#** *14*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $53,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH   END 14**
**Archive Copy**
* Subject to Protective Order *
AIGS.000670

**ENDORSEMENT# 15**

This endorsement, effective  *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - COUNTER BRANDS, LLC dba BEAUTY COUNTER**

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        COUNTER BRANDS, LLC dba BEAUTY COUNTER

   **MAILING ADDRESS**:     2803 COLORADO AVE
                            SANTA MONICA, CA 90404

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
          $6,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                      $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:       $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
      Liability for D&O:

* Subject to Protective Order *

ENDORSEMENT# *15*   **(Continued)**

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

 

 

     f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
       liability for all **Non-Indemnifiable Loss** solely for **Executives**
       of a **Company** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the **"Side A Excess Limit of**
       **Liability"**)

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 07/01/2013 for Primary $2,000,000; 12/16/2014 for $3,000,000 Excess $2,000,000 Limit of Liability |
| EPLI Coverage Section: | 07/01/2013 for Primary $2,000,000; 12/16/2014 for $3,000,000 Excess $2,000,000 Limit of Liability |
| FLI Coverage Section: | 12/16/2014 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | N/A |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $75,000 |
| FLI Coverage Section: | $0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

MNSCPT     ***BRANCH*** Archive Copy *END 15*     **AIGS.000672**

* Subject to Protective Order *

**ENDORSEMENT#** *15*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of policy number   *01-309-86-42*

issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 7.

| PREMIUM POLICY YEAR 1: | $38,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |
| PREMIUM POLICY YEAR 2: | $38,000 |
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH      END 15**
**Archive Copy**

**AIGS.000673**

* Subject to Protective Order *

ENDORSEMENT# *16*

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - DISCOVERY DJ HOLDINGS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:      DISCOVERY DJ HOLDINGS, LLC

**MAILING ADDRESS**:     7859 WALNUT HILL LANE, STE 335
DALLAS, TX 75230

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
$10,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

a. Crisis Management Fund for D&O:                    $50,000
b. Costs of Investigation Coverage Sublimit for D&O:          $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI:      $100,000
d. HIPAA Penalties Sublimit of Liability for FLI:            $250,000
e. Contract Claim Defense Costs Coverage Sublimit of       $3,000,000
   Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT# *16*** **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

        f. Side  A Excess Limit  of Liability excess  aggregate limit of   $1,000,000
        liability for all **Non-Indemnifiable Loss** solely for **Executives**
        of a **Company**  (including **Defense  Costs**) under  the **D&O
        Coverage Section** (herein the **"Side  A  Excess  Limit  of
        Liability"**)

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 07/25/2017 |
| EPLI Coverage Section: | 07/25/2017 |
| FLI Coverage Section: | 07/25/2017 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | 07/25/2017 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | $25,000 |
| FLI Coverage Section: | $0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

***BRANCH*** Archive Copy ***END 16***   **AIGS.000675**

* Subject to Protective Order *

**ENDORSEMENT# 16** (Continued)

This endorsement, effective 12:01 am   March 31, 2018   forms a part of policy number 01-309-86-42
issued to   SEE PROGRAM PARTICIPANT ENDORSEMENT

by   AIG Specialty Insurance Company

Item 7.

| PREMIUM POLICY YEAR 1: | $30,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |
| PREMIUM POLICY YEAR 2: | $30,000 |
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH   END 16**
**Archive Copy**

AIGS.000676

* Subject to Protective Order *

**ENDORSEMENT# *17***

This endorsement, effective   *12:01 am     March 31, 2018*     forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - FRANK RECRUITMENT GROUP INCORPORATED**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.    **NAMED ENTITY**:        FRANK RECRUITMENT GROUP INCORPORATED

               **MAILING ADDRESS**:    110 WILLIAM ST FLOOR 21
                                         NEW YORK, NY 10038

               **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.    **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
               $11,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY**:

      a. Crisis Management Fund for D&O:                    $50,000
      b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
      c. Voluntary Compliance Loss Sublimit of Liability for FLI:    $100,000
      d. HIPAA Penalties Sublimit of Liability for FLI:        $250,000
      e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
         Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT#** *17*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
liability for all **Non-Indemnifiable Loss** solely for
**Executives** of a **Company** (including **Defense Costs**)
under the **D&O Coverage Section** (herein the **"Side A
Excess Limit of Liability"**)

Item 4. **CONTINUITY DATES**:

D&O Coverage Section:        04/27/2016
EPLI Coverage Section:       04/28/2013 For the Primary $1,000,000 Limit
                             of Liability; 04/27/2016 for the $4,000,000
                             Excess of the Primary $1,000,000 Limit of
                             Liability
FLI Coverage Section:        04/27/2016

Item 5. **PRIOR ACT DATES**:

D&O Coverage Section:        04/27/2016
EPLI Coverage Section:       N/A
FLI Coverage Section:        N/A

Item 6. **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts)**:

D&O Coverage Section:        $25,000
EPLI Coverage Section:       $50,000
FLI Coverage Section:        $0

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7. **PREMIUM**        $26,500

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        *BRANCH        END 17*
              *Archive Copy*
* Subject to Protective Order *        **AIGS.000678**

ENDORSEMENT# *18*

This endorsement, effective *12:01 am*    *March 31, 2018*        forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**CALIFORNIA EMPLOYMENT PRACTICES CLAIMS
SEPARATE RETENTION
(EPL COVERAGE SECTION)**

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement #17- PROGRAM PARTICIPANT ENDORSEMENT- FRANK RECRUITMENT GROUP INCORPORATED, it is hereby understood and agreed that Clause 5. **RETENTION CLAUSE** of the **General Terms and Conditions** is amended by adding the following paragraph at the end thereof:

(c) Solely with respect to the EPL Coverage Section, the following shall apply:

Notwithstanding the foregoing, with regard to any **California Employment Practices Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from such **California Employment Practices Claim** which is in excess of a Retention amount of $75,000, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: (i) all **Indemnifiable Loss**; and (i) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**. In the event a **Claim** triggers more than one applicable retention amount, only the highest such amount shall apply, which amount shall apply to all **Loss** under such **Claim**.

For purposes of this endorsement only, the term **"California Employment Practices Claim"** shall mean any **Claim(s)** under the **EPL Coverage Section** subject to California jurisdiction and/or California law.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT    **BRANCH**        **END 18**
    **Archive Copy**

* Subject to Protective Order *

**AIGS.000679**

ENDORSEMENT# *19*

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### PARENT EXCLUSION ENDORSEMENT
### (D&O, EPL AND FLI COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely with respect to the Endorsement #17- PROGRAM PARTICIPANT ENDORSEMENT- FRANK RECRUITMENT GROUP INCORPORATED, the EXCLUSIONS of the **D&O Coverage Section** , **EPL Coverage Section and FLI Coverage Sections** of this policy are amended to include the following paragraph at the end thereof:

The **Insurer** shall not be liable to make any payment for **Loss** in connection with a **Claim**:

PE(a)     made by or on behalf of the following parent organization **("Parent")** or any **Executive** (as defined in the **EPL Coverage Section**) or **Employee** thereof; or any **Claim** which is brought by any security holder of the **Company**, whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Parent** or any **Executive** or **Employee** thereof.

PARENT ORGANIZATION:

Finders Topco Limited

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT     **BRANCH     END 19**
**Archive Copy**

* Subject to Protective Order *

AIGS.000680

**ENDORSEMENT# *20***

This endorsement, effective *12:01 am     March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### TIE-IN OF LIMITS ENDORSEMENT
### (ABSOLUTE)
### (MULTIPLE POLICIES)
### (ALL COVERAGE SECTIONS)

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement #17- PROGRAM PARTICIPANT ENDORSEMENT- FRANK RECRUITMENT GROUP INCORPORATED, it is hereby understood and agreed that the combined limit of liability of the **Insurer** for all **Claims** both under this policy and the policies listed below shall be $11,000,000.

POLICY(IES)

(1)     No. 0033025500_issued to Finders Topco Limited by AIG EUROPE LIMITED

(herein, **"Other American International Group Policies"**)

Accordingly, the **Policy Aggregate Limit of Liability** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability** for **Loss** under this policy shall be reduced by **Loss** incurred under the **Other American International Group Policies**, because the limit of liability under the **Other American International Group Policies** are now part of and not in addition to the **Policy Aggregate Limit of Liability** and any applicable **Separate Limit of Liability** or **Shared Limit of Liability**.

Finally, nothing in this endorsement shall be construed to increase (i) the **Insurer's** limit of liability under such **Other American International Group Policies** which shall remain the maximum liability of the **Insurer** for all **Claims** under such **Other American International Group Policies**, or (ii) the **Insurer's Policy Aggregate Limit of Liability** or any applicable **Separate Limit of Liability** or **Shared Limit of Liability** under this which shall remain the maximum liability of the **Insurer** for all **Claims** combined under this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT     **BRANCH        END 20**
**Archive Copy**
* Subject to Protective Order *

**AIGS.000681**

**ENDORSEMENT# 21**

This endorsement, effective *12:01 am  March 31, 2018*  forms a part of
policy number *01-309-86-42*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by  *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - FRED SEGAL, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:  FRED SEGAL, LLC

**MAILING ADDRESS**:  1808 THAYER AVE, THRD FLOOR
LOS ANGELES, CA 90025

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
$2,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $1,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

a. Crisis Management Fund for D&O:  $50,000
b. Costs of Investigation Coverage Sublimit for D&O:  $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
d. HIPAA Penalties Sublimit of Liability for FLI:  $250,000
e. Contract Claim Defense Costs Coverage Sublimit of Liability for D&O:  $1,000,000

* Subject to Protective Order *

ENDORSEMENT# *21*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

 

     f. Side  A Excess Limit  of Liability excess  aggregate limit of   $1,000,000
       liability for all **Non-Indemnifiable Loss** solely for **Executives**
       of a **Company** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the "**Side A Excess Limit of**
       **Liability**")

Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:      12/23/2016
      EPLI Coverage Section:     N/A
      FLI Coverage Section:      12/23/2016

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:      N/A
      EPLI Coverage Section:     N/A
      FLI Coverage Section:      N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
       **Act or Related Wrongful Acts):**

      D&O Coverage Section:      $50,000
      EPLI Coverage Section:     N/A
      FLI Coverage Section:      $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

*BRANCH* Archive Copy *END 21*
**AIGS.000683**
* Subject to Protective Order *

ENDORSEMENT# *21*  **(Continued)**

This endorsement, effective  *12:01 am*    *March 31, 2018*        forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 7.

| PREMIUM POLICY YEAR 1: | $8,400 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |
| PREMIUM POLICY YEAR 2: | $8,400 |
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        **BRANCH        END 21**
                    *Archive Copy*

AIGS.000684

* Subject to Protective Order *

**ENDORSEMENT# 22**

This endorsement, effective *12:01 am     March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - GAVIN DE BECKER & ASSOCIATES, LP**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:      GAVIN DE BECKER & ASSOCIATES, LP

**MAILING ADDRESS**:    11684 VENTURA BLVD, STE 440
STUDIO CITY, CA 91604

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
$11,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

|   |   |   |
|---|---|---|
| a. | Crisis Management Fund for D&O: | $50,000 |
| b. | Costs of Investigation Coverage Sublimit for D&O: | $250,000 |
| c. | Voluntary Compliance Loss Sublimit of Liability for FLI: | $100,000 |
| d. | HIPAA Penalties Sublimit of Liability for FLI: | $250,000 |
| e. | Contract Claim Defense Costs Coverage Sublimit of Liability for D&O: | $3,000,000 |

* Subject to Protective Order *

ENDORSEMENT# *22*   **(Continued)**

This endorsement, effective *12:01 am    March 31, 2018*      forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

      f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
      liability for all **Non-Indemnifiable Loss** solely for **Executives**
      of a **Company** (including **Defense Costs**) under the **D&O**
      **Coverage Section** (herein the **"Side A Excess Limit of**
      **Liability"**)

Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:  07/01/2011 for   $4,000,000 Limit of Liability;
                                 09/01/2014 for  $6,000,000 Excess of  $4,000,000
                                   Limit of Liability
      EPLI Coverage Section:  04/13/2007
      FLI Coverage Section:   05/10/2012

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:      N/A
      EPLI Coverage Section:     N/A
      FLI Coverage Section:      N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
      **Act or Related Wrongful Acts):**

      D&O Coverage Section:      $25,000
      EPLI Coverage Section:     $100,000
      FLI Coverage Section:      $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| PREMIUM POLICY YEAR 1: | $67,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

**ENDORSEMENT#** *22*   **(Continued)**

This endorsement, effective *12:01 am*     *March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $67,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT     **BRANCH          END 22**
          **Archive Copy**
* Subject to Protective Order *     **AIGS.000687**

ENDORSEMENT# *23*

This endorsement, effective *12:01 am     March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROFESSIONAL LIABILITY EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, solely with respect to the **Insureds** under Endorsement #22 PROGRAM PARTICIPANT ENDORSEMENT- GAVIN DE BECKER & ASSOCIATES, LP, it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is amended to add the following exclusion:

*Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**:*

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          ***BRANCH***          ***END 23***
          ***Archive Copy***
* Subject to Protective Order *          **AIGS.000688**

ENDORSEMENT# *24*

This endorsement, effective *12:01 am       March 31, 2018*           forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

**ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE EXCLUSION ENDORSEMENT
(D&O COVERAGE SECTION)**

In consideration for the premium charged, solely with regard to the coverage afforded in
Endorsement #22 - "PROGRAM PARTICIPANT ENDORSEMENT- Gavin De Becker &
Associates, LP", it is hereby understood and agreed that in Clause 4. EXCLUSIONS of the
**D&O Coverage Section**, paragraph (l) is deleted in its entirety and replaced with the
following:

(l)   alleging, arising out of, based upon, attributable to or in any way involving, directly
or indirectly bodily injury, sickness, disease or death of any person, or damage to,
loss of use of or destruction of any tangible property; provided, however, that this
exclusion shall not apply to **Securities Claims**;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT       **BRANCH            END 24**
**Archive Copy**

* Subject to Protective Order *

AIGS.000689

ENDORSEMENT# *25*

This endorsement, effective *12:01 am   March 31, 2018*          forms a part of
policy number *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

### DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES)
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement #22-PROGRAM PARTICIPANT ENDORSEMENT- GAVIN DE BECKER & ASSOCIATES, LP, it is hereby understood and agreed that, solely with respect to coverage as is provided under the **Coverage Sections** specified in the schedule below, the definition of **"Company"** in the **General Terms and Conditions** is amended to include the following entity(ies), subject to each such entity's **Continuity Date**:

**APPLICABLE COVERAGE SECTION(S):**

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

| ENTITY(IES) | CONTINUITY DATE |
|---|---|
| Gavin De Becker & Associates Stockholder, LLC | 09/01/2014 |
| Gavin De Becker & Associates Holdco | 09/01/2014 |
| Gavin De Becker & Associates Holdings, LLC | 09/01/2014 |
| Gavin De Becker & Associates GP, LLC | 09/01/2014 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT          *BRANCH          END 25*
                *Archive Copy*
* Subject to Protective Order *

AIGS.000690

**ENDORSEMENT# *26***

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - GPT TPG SINGLE TENANT VENTURE LLC

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:      GPT TPG SINGLE TENANT VENTURE LLC

**MAILING ADDRESS**:      31303 AGOURA ROAD
WESTLAKE VILLAGE, CA 91361

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
$5,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

a. Crisis Management Fund for D&O:                    $50,000
b. Costs of Investigation Coverage Sublimit for D&O:          $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI:     N/A
d. HIPAA Penalties Sublimit of Liability for FLI:             N/A
e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
Liability for D&O:

MNSCPT        ***BRANCH*** Archive Copy *END 26*                    **AIGS.000691**
* Subject to Protective Order *

**ENDORSEMENT# *26*   (Continued)**

This endorsement, effective  *12:01 am*     *March 31, 2018*       forms a part of
policy number  *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

   f. Side  A Excess Limit  of Liability excess  aggregate limit of   $1,000,000
    liability for all **Non-Indemnifiable Loss** solely for **Executives**
    of a **Company** (including **Defense Costs**) under the **D&O**
    **Coverage Section** (herein the "**Side A Excess Limit of**
    **Liability**")

Item 4. **CONTINUITY DATES**:

   D&O Coverage Section:  09/09/2016
   EPLI Coverage Section:  N/A
   FLI Coverage Section:  N/A

Item 5. **PRIOR ACT DATES**:

   D&O Coverage Section:  09/09/2016
   EPLI Coverage Section:  N/A
   FLI Coverage Section:  N/A

Item 6. **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
   **Act or Related Wrongful Acts):**

   D&O Coverage Section:  $25,000
   EPLI Coverage Section:  N/A
   FLI Coverage Section:  N/A

   *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR  1:** | $26,500 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

ENDORSEMENT# 26    (Continued)

This endorsement, effective 12:01 am    March 31, 2018    forms a part of
policy number  01-309-86-42
issued to   SEE PROGRAM PARTICIPANT ENDORSEMENT

by   AIG Specialty Insurance Company

| **PREMIUM POLICY YEAR 2:** | $26,500 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH        END 26**
        **Archive Copy**
* Subject to Protective Order *

AIGS.000693

ENDORSEMENT# 27

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - GRCY HOLDINGS, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1. **NAMED ENTITY**: GRCY HOLDINGS, INC.

**MAILING ADDRESS**: 13833 FREEWAY DRIVE
SANTA FE SPRINGS, CA 90670

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2. **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
$10,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $10,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3. **OTHER POLICY YEAR LIMITS OF LIABILITY**:

a. Crisis Management Fund for D&O: $50,000
b. Costs of Investigation Coverage Sublimit for D&O: $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI: N/A
d. HIPAA Penalties Sublimit of Liability for FLI: N/A
e. Contract Claim Defense Costs Coverage Sublimit of Liability for D&O: $3,000,000

* Subject to Protective Order *

**ENDORSEMENT# *27*** **(Continued)**

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

      f. Side  A Excess Limit  of Liability excess  aggregate limit  of    $1,000,000
      liability for all **Non-Indemnifiable Loss** solely for **Executives**
      of a **Company** (including **Defense Costs**) under the **D&O
      Coverage Section** (herein the **"Side A Excess Limit of
      Liability"**)

**Item 4.** **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 02/19/2014 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

**Item 5.** **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | 02/19/2014 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

**Item 6.** **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $100,000 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

| **PREMIUM POLICY YEAR  1:** | $75,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

**BRANCH** *Archive Copy* **END 27** **AIGS.000695**

* Subject to Protective Order *

ENDORSEMENT# *27*  **(Continued)**

This endorsement, effective *12:01 am    March 31, 2018*        forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $75,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        **BRANCH        END 27**
                    **Archive Copy**
* Subject to Protective Order *
**AIGS.000696**

**ENDORSEMENT# *28***

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - H&W FRANCHISE HOLDINGS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:     H&W FRANCHISE HOLDINGS, LLC

   **MAILING ADDRESS**:   3185 PULLMAN STREET
   COSTA MESA, CA 92626

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
   $10,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                      $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:       $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
      Liability for D&O:

MNSCPT          *BRANCH*   *Archive Copy*  *END 28*                    **AIGS.000697**
* Subject to Protective Order *

**ENDORSEMENT# *28***   **(Continued)**

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

      f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
      liability for all **Non-Indemnifiable Loss** solely for **Executives**
      of a **Company** (including **Defense Costs**) under the **D&O**
      **Coverage Section** (herein the **"Side A Excess Limit of**
      **Liability"**)

**Item 4.**   **CONTINUITY DATES**:

      D&O Coverage Section:     05/02/2017
      EPLI Coverage Section:    06/10/2015
      FLI Coverage Section:     05/02/2017

**Item 5.**   **PRIOR ACT DATES**:

      D&O Coverage Section:     05/02/2017 (Club Pilates)
                                       09/29/2017 (CycleBar)
                                       09/29/2017 (STG)
      EPLI Coverage Section:    06/10/2015
      FLI Coverage Section:     N/A

**Item 6.**   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
       **Act or Related Wrongful Acts):**

      D&O Coverage Section:     $25,000
      EPLI Coverage Section:    $75,000
      FLI Coverage Section:     $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

| PREMIUM POLICY YEAR 1: | $48,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

ENDORSEMENT# *28* (Continued)

This endorsement, effective *12:01 am* *March 31, 2018* forms a part of
policy number *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

| PREMIUM POLICY YEAR 2: | $48,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

---

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        **BRANCH        END 28**
                **Archive Copy**

* Subject to Protective Order *

**AIGS.000699**

ENDORSEMENT# *29*

This endorsement, effective *12:01 am     March 31, 2018*        forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT
(WITH SUBLIMIT)**

In consideration of the premium charged, solely with regard to the coverage afforded in
Endorsement **# 28**- **PROGRAM PARTICIPANT ENDORSEMENT**- **H&W FRANCHISE
HOLDINGS, LLC,** it is hereby understood and agreed that the **General Terms & Conditions**
and the **D&O Coverage Section** are amended as follows:

1.      Clause 2. **DEFINITIONS** of the **D&O Coverage Section** are amended as follows:

   (a)    Paragraph (s), **"Individual Insured,"** is amended to include the following
          paragraph at the end of that definition:

          **"Individual Insured"** also means any **Employed Lawyer(s)** of a **Company**, but
          only for a **Claim(s)** alleging a **Wrongful Act** in such **Employed Lawyer's(s')**
          capacity as such, subject to the terms, conditions and exclusions of this
          policy and this endorsement.

   (b)    For purposes of the coverage afforded under this endorsement, paragraph
          (cc), **"Wrongful Act,"** is deleted in its entirety and replaced with the
          following:

          (cc)    **"Wrongful Act"** means any act, error or omission of an **Employed
                  Lawyer(s)**, in the rendering or failure to render professional legal
                  services for a **Company**, but solely in his or her capacity as such;
                  provided, however, the term **"Wrongful Act"** shall not mean, and this
                  endorsement does not provide coverage for, any act, error or
                  omission in connection with any activities by such **Employed
                  Lawyer(s)**: (1) which are not related to such **Employed Lawyer's(s')**
                  employment with a **Company**; (2) which are not rendered on the
                  behalf of a **Company** at the **Company's** written request; or (3) which
                  are performed by the **Employed Lawyer(s)** for others for a fee.

   (c)    Clause 2. **DEFINITIONS** of the **D&O Coverage Section** is further amended to
          include the following definition at the end thereof:

          (dd)    **"Employed Lawyer"** means any **Employee** of a **Company**, in their
                  capacity as such, who is admitted to practice law and who is or was
                  employed as a lawyer full time and salaried by a **Company**.

2.      Clause 4. **EXCLUSIONS** of the **D&O Coverage Section** is amended to include the
        following paragraph at the end of that Clause:

        It is understood and agreed that solely with respect to the coverage afforded by this
        endorsement, the **Insurer** shall not be liable to make any payment for **Loss** in
        connection with any **Claim** made against an **Employed Lawyer(s)**:

* Subject to Protective Order *

ENDORSEMENT# *29*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

(aa)  alleging, arising out of, based upon or attributable to any **Wrongful Act**
occurring at a time when the **Employed Lawyer(s)** was not employed as a
lawyer by a **Company**;

(bb)  alleging, arising out of, based upon or attributable to as of 04/15/2017, any
pending or prior: (1) litigation; or (2) administrative or regulatory proceeding
or investigation of which an **Insured** had notice, or alleging any **Wrongful Act**
which is the same or **Related Wrongful Act** to that alleged in such pending or
prior litigation or administrative or regulatory proceeding or investigation;

(cc)  alleging, arising out of, based upon or attributable to any **Wrongful Act**, if as
of 04/15/2017, an **Employed Lawyer(s)** knew or could have reasonably
foreseen that such **Wrongful Act** could give rise to a **Claim**; or

(dd)  alleging, arising out of, based upon or attributable to any activities by an
**Employed Lawyer(s)** as an officer or director of any entity, other than a
**Company**.

3.  Clause 5. **LIMIT OF LIABILITY** of the **D&O Coverage Section** is amended to include
the following provision at the end thereof:

**EMPLOYED LAWYERS SUBLIMIT OF LIABILITY**

The maximum limit of the **Insurer's** liability for all **Loss** arising from coverage as is
afforded by this endorsement for **Claim(s)** alleging a **Wrongful Act** by an **Employed
Lawyer(s)** shall be $5,000,000 (hereinafter the **"Employed Lawyer Coverage
Sublimit of Liability"**). This **Employed Lawyer Coverage Sublimit of Liability** shall be
part of and not in addition to the **Policy Aggregate Limit of Liability** stated in the
Item 7(a) of the Declarations and any **Separate Limit of Liability** or **Shared Limit of
Liability** applicable to this **D&O Coverage Section** as set forth in Item 3 of the
Declarations.

4.  The **D&O Coverage Section** is further amended to include the following provision at
the end thereof:

**EL-1.  EMPLOYED LAWYERS COVERAGE PROVISIONS**

It is understood and agreed that with respect to the coverage afforded under
this endorsement, a **Company** will be conclusively deemed to have
indemnified the **Employed Lawyer(s)** to the extent that the **Company** is
permitted or required to indemnify them pursuant to law, common or
statutory, or contract, or the charter or by-laws of the **Company**. The
**Company** hereby agrees to indemnify the **Employed Lawyer(s)** to the fullest
extent permitted by law, including the making in good faith of any required
application for court approval.

*BRANCH*   *Archive Copy* *END 29*   **AIGS.000701**
* Subject to Protective Order *

ENDORSEMENT# *29*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

It is further understood and agreed that coverage as is afforded under this
endorsement shall apply to a **Wrongful Act(s)** only if one or more **Insured(s)**
(other than an **Employed Lawyer(s)**) are and remain co-defendants in the
action along with an **Employed Lawyer(s)**.

5.   Clause 11. **OTHER INSURANCE** is amended to include the following paragraph at
the end thereof:

**11.   OTHER INSURANCE**

Notwithstanding the foregoing, it is understood and agreed that the coverage
provided by this endorsement is specifically excess over any other valid or
collectible lawyers' professional insurance, legal malpractice or errors and omissions
insurance and shall only drop down and be primary insurance only in the event of
exhaustion of such other insurance due to losses paid thereunder.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH   END 29**
**Archive Copy**   AIGS.000702
* Subject to Protective Order *

**ENDORSEMENT# 30**

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - JAX HOLDINGS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount  is set forth
in Item 7 of this  endorsement, it is  understood and  agreed that the  following terms  and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:   JAX HOLDINGS, LLC

      **MAILING ADDRESS**:   10151 DEERWOOD PARK BLVD.
                                   JACKSONVILLE, FL 32256

      **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
      $5,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:                   $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:    N/A
    d. HIPAA Penalties Sublimit of Liability for FLI:         N/A
    e. Contract Claim  Defense  Costs Coverage  Sublimit  of  $3,000,000
       Liability for D&O:

*BRANCH*  *Archive Copy*  *END 30*
* Subject to Protective Order *
AIGS.000703

**ENDORSEMENT# *30*   (Continued)**

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

    f. Side  A Excess Limit  of Liability excess  aggregate limit of    $1,000,000
       liability for all **Non-Indemnifiable Loss** solely for **Executives**
       of a  **Company** (including  **Defense Costs**) under the  **D&O**
       **Coverage Section** (herein the "**Side A Excess Limit of**
       **Liability**")

Item 4.   **CONTINUITY DATES**:

    D&O Coverage Section:       09/27/2016
    EPLI Coverage Section:       N/A
    FLI Coverage Section:        N/A

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:       09/27/2016
    EPLI Coverage Section:       N/A
    FLI Coverage Section:        N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
       **Act or Related Wrongful Acts):**

    D&O Coverage Section:       $25,000
    EPLI Coverage Section:       N/A
    FLI Coverage Section:        N/A

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR 1:** | $26,500 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

**ENDORSEMENT#** *30*   **(Continued)**

This endorsement, effective  *12:01 am*   *March 31, 2018*   forms a part of policy number  *01-309-86-42*

issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $26,500 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT    **BRANCH          END 30**
          **Archive Copy**

* Subject to Protective Order *

AIGS.000705

**ENDORSEMENT# *31***

This endorsement, effective *12:01 am    April 30, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - JONAH ENERGY HOLDINGS LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:      JONAH ENERGY HOLDINGS LLC

   **MAILING ADDRESS**:   707 17TH STREET, STE 2700
                          DENVER, CO 80202

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
          $10,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $10,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                       $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:     $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   N/A
   d. HIPAA Penalties Sublimit of Liability for FLI:        N/A
   e. Contract Claim Defense Costs Coverage Sublimit of     $3,000,000
      Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT#** *31*   **(Continued)**

This endorsement, effective *12:01 am*   *April 30, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

      f. Side A Excess Limit of Liability excess aggregate limit   $1,000,000
        of liability for all **Non-Indemnifiable Loss** solely for
        **Executives** of a **Company** (including **Defense Costs**)
        under the **D&O Coverage Section** (herein the **"Side A
        Excess Limit of Liability"**)

**Item 4.**   **CONTINUITY DATES**:

      D&O Coverage Section:      10/25/2011
      EPLI Coverage Section:     N/A
      FLI Coverage Section:      N/A

**Item 5.**   **PRIOR ACT DATES**:

      D&O Coverage Section:      10/25/2011
      EPLI Coverage Section:     N/A
      FLI Coverage Section:      N/A

**Item 6.**   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
        Act or Related Wrongful Acts):**

      D&O Coverage Section:      $50,000
      EPLI Coverage Section:     N/A
      FLI Coverage Section:      N/A

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

| PREMIUM 4/30/18-3/31/19: | $52,326 |
| --- | --- |
| ANNUAL PREMIUM: | $57,000 |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                                     AUTHORIZED REPRESENTATIVE
                          Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT      **BRANCH**     **END 31**
              **Archive Copy**             **AIGS.000707**

* Subject to Protective Order *

**ENDORSEMENT# 32**

This endorsement, effective *12:01 am    April 30, 2018*    forms a part of
policy number *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### ADDITIONAL INSUREDS - DEFINITION OF COMPANY AMENDED
### FOR SPECIFIED WRONGFUL ACTS
### (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, solely with regard to the coverage afforded in Endorsement #31- PROGRAM PARTICIPANT ENDORSEMENT- JONAH ENERGY HOLDINGS, LLC, it is hereby understood and agreed that, solely with respect to coverage as is provided under the **Coverage Sections** specified in the schedule below, Clause 2. Definition of **"Company"** of the **General Terms and Conditions** is amended to include the following entity, but only for **Wrongful Acts** committed or allegedly committed in connection with the formation of the **Named Entity**, and subject to the **Continuity Date** indicted below:

| COMPANY | CONTINUITY DATE |
|---|---|
| Maverick American Natural Gas, LLC | 05/12/2014 |

**APPLICABLE COVERAGE SECTION(S):**

D&O Coverage Sections

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      *BRANCH          END 32*
                 *Archive Copy*
* Subject to Protective Order *
**AIGS.000708**

ENDORSEMENT# 33

This endorsement, effective  *12:01 am      March 31, 2018*      forms a part of
policy number  *01-309-86-42*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by  *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - LAUREL PARENT HOLDINGS, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        LAUREL PARENT HOLDINGS, INC.

   **MAILING ADDRESS**:     201 S. DIVISION STREET
   ANN ARBOR, MI 48104

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
   $10,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                      $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:          $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:      $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:            $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of      $3,000,000
   Liability for D&O:

*BRANCH* Archive Copy *END 33*                          **AIGS.000709**
* Subject to Protective Order *

ENDORSEMENT# *33*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

   f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
   liability for all **Non-Indemnifiable Loss** solely for **Executives**
   of a **Company** (including **Defense Costs**) under the **D&O**
   **Coverage Section** (herein the **"Side A Excess Limit of**
   **Liability"**)

Item 4.   **CONTINUITY DATES**:

   D&O Coverage Section:      06/01/2017
   EPLI Coverage Section:     09/06/2012
   FLI Coverage Section:      10/06/2013

Item 5.   **PRIOR ACT DATES**:

   D&O Coverage Section:      06/01/2017
   EPLI Coverage Section:     N/A
   FLI Coverage Section:      N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
   **Act or Related Wrongful Acts):**

   D&O Coverage Section:      $25,000
   EPLI Coverage Section:     $25,000
   FLI Coverage Section:      $0

   *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| PREMIUM POLICY YEAR 1: | $27,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

**BRANCH**   *Archive Copy*   *END 33*   **AIGS.000710**

* Subject to Protective Order *

**ENDORSEMENT#** *33*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $27,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   ***BRANCH***   ***END 33***
***Archive Copy***

**AIGS.000711**

* Subject to Protective Order *

**ENDORSEMENT# 34**

This endorsement, effective *12:01 am    March 31, 2018*      forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - MCDERMOTT HOLDINGS, LP**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount  is set forth
in Item 7 of this endorsement, it is  understood and  agreed that the  following terms  and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:      MCDERMOTT HOLDINGS, LP

  **MAILING ADDRESS**:    1010 N 102ND ST, STE 300
                OMAHA, NE 68114

  **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
      $12,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $2,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

  a. Crisis Management Fund for D&O:          $50,000
  b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
  c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
  d. HIPAA Penalties Sublimit of Liability for FLI:      $250,000
  e. Contract Claim Defense  Costs Coverage Sublimit of    $3,000,000
     Liability for D&O:

* Subject to Protective Order *

ENDORSEMENT# *34*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

f. Side A Excess  Limit of Liability excess aggregate limit of   $1,000,000
liability  for all  **Non-Indemnifiable Loss** solely for
**Executives** of a **Company** (including **Defense Costs**)
under the  **D&O Coverage Section** (herein the "**Side A
Excess Limit of Liability**")

Item 4.   **CONTINUITY DATES**:

D&O Coverage Section:      06/14/2017
EPLI Coverage Section:     08/31/2015
FLI Coverage Section:      08/31/2015

Item 5.   **PRIOR ACT DATES**:

D&O Coverage Section:      06/14/2017
EPLI Coverage Section:     08/31/2015
FLI Coverage Section:      08/31/2015

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

D&O Coverage Section:      $25,000
EPLI Coverage Section:     $75,000
FLI Coverage Section:      $0

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR 1:** | $98,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

ENDORSEMENT# *34* **(Continued)**

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| PREMIUM POLICY YEAR 2: | $98,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      **BRANCH        END 34**
                 *Archive Copy*
* Subject to Protective Order *

AIGS.000714

ENDORSEMENT# *35*

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number    *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### THIRD PARTY VIOLATION CLAIMS - SEPARATE RETENTION
### (EPL COVERAGE SECTION)

In consideration of the premium charged, it is hereby understood and agreed that solely with regard to the coverage afforded in Endorsement #34- "PROGRAM PARTICIPANT ENDORSEMENT- MCDERMOTT HOLDINGS, LP", Clause 5. **RETENTION CLAUSE** of the **EPL Coverage Section** is amended by adding the following paragraph at the end thereof:

Notwithstanding the foregoing, with regard to any **Third Party Violation Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from such **Third Party Violation Claim** which is in excess of a Retention amount of $250,000, such Retention amount to be borne by the **Company** and/or the **Insureds** and shall remain uninsured, with regard to: all (i) **Indemnifiable Loss**; and (ii) **Loss** of the **Company**. A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Related Wrongful Acts**. In the event a **Claim** triggers more than one applicable retention amount, only the highest such amount shall apply, which amount shall apply to all **Loss** under such **Claim**.

For purposes of this endorsement only, the term **"Third Party Violation Claim"** means any **Claim** brought against a temporary employee alleging a **Third Party Violation**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT    *BRANCH*    *END 35*
*Archive Copy*
* Subject to Protective Order *

**AIGS.000715**

ENDORSEMENT# *36*

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS
COVERAGE FOR ACQUIRED SUBSIDIARY
(EPL & FLI COVERAGE SECTION)**

It is hereby understood and agreed  that solely with regard to  the coverage afforded under
Endorsement #34-  "PROGRAM PARTICIPANT ENDORSEMENT- MCDERMOTT HOLDINGS,
LP" the policy is amended as follows:

1.    Solely with respect to the **EPL** and  **FLI Coverage Sections**, the definition of
**"Subsidiary"** in Clause  2. "DEFINITIONS"  of the  **General Terms  and Conditions**  is
amended by inserting the following at the end thereof:

>    Notwithstanding the foregoing,  coverage as  is afforded  under the  **EPL** and
>    **FLI Coverage Sections**  with respect  to a **Claim**  against the  **Acquired Entity**
>    (as defined  below) or  any **Individual  Insured** or  **Plan** thereof  shall  apply to
>    **Wrongful Acts** committed or  allegedly committed prior to  the effective time
>    that the **Named Entity** obtained **Management Control** of the **Acquired Entity**.

2.    In Clause 2. **DEFINITIONS** of  the **General  Terms and  Conditions**, the  definition of
**"Continuity Date"** is amended to include the following at the end thereof:

Notwithstanding the foregoing:

(i)    solely with  respect to  the  **EPL Coverage  Section**, the  **Continuity Date**  for
**Claims** first  made against  the **Acquired  Entity** or  any **Individual  Insured**
thereof shall be 06/13/2003; and

(i)    solely with  respect  to the  **FLI Coverage  Section**, the  **Continuity  Date**  for
**Claims** first made the  **Acquired Entity** or any  **Individual Insured** thereof shall
be 07/17/2000.

3.    As used  in this  endorsement, the  term  **"Acquired Entity"**  means  PPR HOLDING
CORPORATION.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.


_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT       *BRANCH        END 36*
*Archive Copy*
* Subject to Protective Order *       **AIGS.000716**

ENDORSEMENT# *37*

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - MENDOCINO FARMS, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:        MENDOCINO FARMS, INC.

   **MAILING ADDRESS**:    13103 VENTURA BLVD, STE 100
                 STUDIO CITY, CA 91604

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
   $10,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:               $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:        $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
      Liability for D&O:

* Subject to Protective Order *

ENDORSEMENT# *37*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

     f. Side A Excess  Limit of Liability excess aggregate limit of   $1,000,000
liability for all **Non-Indemnifiable Loss** solely for
**Executives** of a **Company** (including **Defense Costs**)
under the **D&O Coverage Section** (herein the "**Side A
Excess Limit of Liability**")

Item 4.   **CONTINUITY DATES**:

    D&O Coverage Section:    07/18/2017
    EPLI Coverage Section:    05/17/2012
    FLI Coverage Section:    07/18/2017

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:    07/18/2017
    EPLI Coverage Section:    05/17/2012
    FLI Coverage Section:    07/18/2017

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts)**:

    D&O Coverage Section:    $25,000
    EPLI Coverage Section:    $25,000
    FLI Coverage Section:    $0

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR  1:** | $42,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

***BRANCH*** Archive Copy *END 37*   **AIGS.000718**

* Subject to Protective Order *

**ENDORSEMENT#** *37*   **(Continued)**

This endorsement, effective   *12:01 am     March 31, 2018*        forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $42,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          **BRANCH          END 37**
                **Archive Copy**

* Subject to Protective Order *

**AIGS.000719**

**ENDORSEMENT# 38**

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - MERCATUS, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:   MERCATUS, INC.

   **MAILING ADDRESS**:   1900 S NORFOLK ST, STE 325
   SAN MATEO, CA 94403

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
   $1,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
| --- | --- | --- |
| D&O Coverage Section: | N/A | $1,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                     $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:   $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   N/A
   d. HIPAA Penalties Sublimit of Liability for FLI:      N/A
   e. Contract Claim Defense Costs Coverage Sublimit of   $1,000,000
      Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT#** *38*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

     f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
     liability for all **Non-Indemnifiable Loss** solely for
     **Executives** of a **Company** (including **Defense Costs**) under
     the **D&O Coverage Section** (herein the **"Side A Excess
     Limit of Liability"**)

**Item 4.**   **CONTINUITY DATES**:

     D&O Coverage Section:   08/26/2013
     EPLI Coverage Section:   N/A
     FLI Coverage Section:   N/A

**Item 5.**   **PRIOR ACT DATES**:

     D&O Coverage Section:   N/A
     EPLI Coverage Section:   N/A
     FLI Coverage Section:   N/A

**Item 6.**   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
     Act or Related Wrongful Acts):**

     D&O Coverage Section:   $25,000
     EPLI Coverage Section:   N/A
     FLI Coverage Section:   N/A

     *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**   **ANNUAL PREMIUM:**   $6,500

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
     AUTHORIZED REPRESENTATIVE
     Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH**   **END 38**
     *Archive Copy*
* Subject to Protective Order *   **AIGS.000721**

**ENDORSEMENT# *39***

This endorsement, effective *12:01 am    March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - PHILLIPS EDISON VALUE ADDED GROCERY
VENTURE, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:       PHILLIPS EDISON VALUE ADDED GROCERY VENTURE,
LLC

**MAILING ADDRESS**:   11501 NORTHLAKE DRIVE
CINCINNATI, OH 45249

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
$5,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

a. Crisis Management Fund for D&O:                          $50,000
b. Costs of Investigation Coverage Sublimit for D&O:        $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI: N/A
d. HIPAA Penalties Sublimit of Liability for FLI:           N/A
e. Contract Claim Defense Costs Coverage Sublimit of       $3,000,000
   Liability for D&O:

* Subject to Protective Order *

ENDORSEMENT# *39*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*


by   *AIG Specialty Insurance Company*



    f. Side  A Excess Limit  of Liability excess  aggregate limit of   $1,000,000
       liability for all **Non-Indemnifiable Loss** solely for **Executives**
       of a  **Company** (including  **Defense Costs**) under the  **D&O**
       **Coverage Section** (herein the  **"Side A Excess Limit of**
       **Liability"**)

Item 4.   **CONTINUITY DATES**:

    D&O Coverage Section:    03/22/2016
    EPLI Coverage Section:    N/A
    FLI Coverage Section:    N/A

Item 5.   **PRIOR ACT DATES**:

    D&O Coverage Section:    03/22/2016
    EPLI Coverage Section:    N/A
    FLI Coverage Section:    N/A

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
       **Act or Related Wrongful Acts):**

    D&O Coverage Section:    $25,000
    EPLI Coverage Section:    N/A
    FLI Coverage Section:    N/A

    *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR 1:** | $26,500 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

**ENDORSEMENT#** *39*   **(Continued)**

This endorsement, effective  *12:01 am*    *March 31, 2018*         forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

| PREMIUM POLICY YEAR 2: | $26,500 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT    **BRANCH          END 39**
          **Archive Copy**

**AIGS.000724**

* Subject to Protective Order *

ENDORSEMENT# 40

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - PHILZ COFFEE, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:      PHILZ COFFEE, INC.

   **MAILING ADDRESS**:      1258 MINNESOTA STREET
         SAN FRANCISCO, CA 94107

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
      $6,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $1,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:          $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:      $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
   d. HIPAA Penalties Sublimit of Liability for FLI:         $250,000
   e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
      Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT# _40_**   **(Continued)**

This endorsement, effective _12:01 am_     _March 31, 2018_     forms a part of
policy number  _01-309-86-42_
issued to     _SEE PROGRAM PARTICIPANT ENDORSEMENT_

by     _AIG Specialty Insurance Company_

    f. Side A Excess Limit of Liability excess aggregate limit of    $1,000,000
       liability for all **Non-Indemnifiable Loss** solely for **Executives**
       of a **Company** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the "**Side A Excess Limit of**
       **Liability**")

Item 4.  **CONTINUITY DATES**:

       D&O Coverage Section:     08/14/2015 For the Primary $1,000,000 Limit
                                           of Liability; 01/06/2017 for the $4,000,000
                                           Limit Excess the Primary $1,000,000 Limit of
                                           Liability
       EPLI Coverage Section:     08/14/2015
       FLI Coverage Section:     01/06/2017

Item 5.  **PRIOR ACT DATES**:

       D&O Coverage Section:     N/A
       EPLI Coverage Section:     N/A
       FLI Coverage Section:     N/A

Item 6.  **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
           **Act or Related Wrongful Acts)**:

       D&O Coverage Section:     $25,000
       EPLI Coverage Section:     $70,000
       FLI Coverage Section:     $0

       _Note: No Retention amount is applicable to non-Indemnifiable Loss._

* Subject to Protective Order *

ENDORSEMENT# *40*   **(Continued)**

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 7.

| PREMIUM POLICY YEAR 1: | $70,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |
| PREMIUM POLICY YEAR 2: | $70,000 |
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   **BRANCH       END 40**
        *Archive Copy*
* Subject to Protective Order *   **AIGS.000727**

**ENDORSEMENT# 41**

This endorsement, effective *12:01 am    March 31, 2018*       forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - PLATFORM ONE MEDIA, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:       PLATFORM ONE MEDIA, LLC

   **MAILING ADDRESS**:   STE 900, C/O GETTLESON, WITZER & O'CONNOR
                       1600 VENTURA BLVD
                       ENCINO, CA 91436

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
          $1,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $1,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a. Crisis Management Fund for D&O:                    $50,000
   b. Costs of Investigation Coverage Sublimit for D&O:     $250,000
   c. Voluntary Compliance Loss Sublimit of Liability for FLI:   N/A
   d. HIPAA Penalties Sublimit of Liability for FLI:           N/A
   e. Contract Claim Defense Costs Coverage Sublimit of   $1,000,000
      Liability for D&O:

MNSCPT        ***BRANCH*** Archive Copy *END 41*                **AIGS.000728**

* Subject to Protective Order *

**ENDORSEMENT# *41*    (Continued)**

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

 

 

       f. Side  A Excess Limit of Liability  excess aggregate limit of    $1,000,000
       liability  for  all  **Non-Indemnifiable  Loss**  solely  for
       **Executives** of a **Company** (including **Defense Costs**) under
       the **D&O  Coverage Section**  (herein  the **"Side  A  Excess
       Limit of Liability"**)

Item 4.    **CONTINUITY DATES**:

      D&O Coverage Section:     04/30/2014
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

Item 5.    **PRIOR ACT DATES**:

      D&O Coverage Section:     N/A
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

Item 6.    **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
       Act or Related Wrongful Acts):**

      D&O Coverage Section:     $25,000
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR 1:** | $14,000 |
| --- | --- |
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

ENDORSEMENT# *41*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $14,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH**       **END 41**
**Archive Copy**

* Subject to Protective Order *

AIGS.000730

ENDORSEMENT# *42*

This endorsement, effective *12:01 am     March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROFESSIONAL LIABILITY EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, solely with respect to the **Insureds** under Endorsement #41 PROGRAM PARTICIPANT ENDORSEMENT- PLATFORM ONE MEDIA, LLC, it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is amended to add the following exclusion:

*Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**:*

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH          END 42**
                 *Archive Copy*
* Subject to Protective Order *

**AIGS.000731**

ENDORSEMENT# *43*

This endorsement, effective *12:01 am     March 31, 2018*     forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - RADIATE HOLDINGS, LP**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:       RADIATE HOLDINGS, LP

            **MAILING ADDRESS**:     650 COLLEGE EAST ROAD, STE 3
                                       PRINCETON, NJ 08540

            **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
                 $30,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $10,000,000 |
| EPLI Coverage Section: | N/A | $10,000,000 |
| FLI Coverage Section: | N/A | $10,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

      a. Crisis Management Fund for D&O:                         $50,000
      b. Costs of Investigation Coverage Sublimit for D&O:        $250,000
      c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
      d. HIPAA Penalties Sublimit of Liability for FLI:            $250,000
      e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
         Liability for D&O:

MNSCPT   **BRANCH** *Archive Copy* **END 43**                    **AIGS.000732**
* Subject to Protective Order *

ENDORSEMENT# *43*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

    f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
       liability for all **Non-Indemnifiable Loss** solely for
       **Executives** of a **Company** (including **Defense Costs**) under
       the **D&O Coverage Section** (herein the "**Side A Excess
       Limit of Liability**")

**Item 4.** **CONTINUITY DATES:**

| | |
|---|---|
| D&O Coverage Section: | 02/01/2017 |
| EPLI Coverage Section: | 02/01/2017 |
| FLI Coverage Section: | 02/01/2017 |

**Item 5.** **PRIOR ACT DATES:**

| | |
|---|---|
| D&O Coverage Section: | 02/01/2017 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

**Item 6.** **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $150,000 |
| EPLI Coverage Section: | $100,000 |
| FLI Coverage Section: | $0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

| **PREMIUM POLICY YEAR 1:** | $180,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

***BRANCH*** *Archive Copy* *END 43* **AIGS.000733**

* Subject to Protective Order *

**ENDORSEMENT#** *43*   **(Continued)**

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $180,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH**       **END 43**
**Archive Copy**
* Subject to Protective Order *

**AIGS.000734**

**ENDORSEMENT# *44***

This endorsement, effective  *12:01 am      March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by  *AIG Specialty Insurance Company*

### DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS
### COVERAGE FOR ACQUIRED SUBSIDIARY
### (EPL & FLI COVERAGE SECTION)

It is hereby understood and agreed  that solely with regard to  the coverage afforded under
Endorsement #43, Program Participant Endorsement -  RADIATE HOLDINGS, LP, the policy
is amended as follows:

1.　Solely with respect to the **EPL** and **FLI Coverage Sections**, the definition of
**"Subsidiary"** in Clause  2. "DEFINITIONS"  of the **General Terms  and Conditions**  is
amended by inserting the following at the end thereof:

　　Notwithstanding the foregoing,  coverage as  is afforded  under the  **EPL** and
**FLI Coverage Sections**  with respect  to a **Claim**  against the **Acquired Entity**
(as defined  below) or  any **Individual  Insured** or **Plan** thereof  shall  apply to
**Wrongful Acts** committed or  allegedly committed prior to  the effective time
that the **Named Entity** obtained **Management Control** of the **Acquired Entity**.

2.　In Clause 2.  **DEFINITIONS** of  the **General  Terms and  Conditions**, the  definition of
**"Continuity Date"** is amended to include the following at the end thereof:

Notwithstanding the foregoing:

(i)　solely with  respect  to the  **EPL Coverage  Section**, the **Continuity  Date** for
**Claims**  first made  against the  **Acquired  Entity** or any  **Individual  Insured**
thereof shall be 04/12/1999; and

(i)　solely with  respect  to the  **FLI Coverage  Section**, the  **Continuity  Date**  for
**Claims** first made the  **Acquired Entity** or any  **Individual Insured** thereof shall
be 08/26/2010.

3.　As used  in this  endorsement, the  term **"Acquired  Entity"** means  YANKEE CABLE
PARTNERS, LLC.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

***Archive Copy***                        **AIGS.000735**
* Subject to Protective Order *

**ENDORSEMENT# *45***

This endorsement, effective *12:01 am      March 31, 2018*      forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS
COVERAGE FOR ACQUIRED SUBSIDIARY
(EPL & FLI COVERAGE SECTION)**

It is hereby understood and agreed  that solely with regard to  the coverage afforded under
Endorsement #43, Program Participant Endorsement -  RADIATE HOLDINGS,  LP the policy
is amended as follows:

1.    Solely with respect to the  **EPL** and  **FLI Coverage Sections**, the definition of
**"Subsidiary"** in Clause  2. "DEFINITIONS"  of the  **General Terms  and Conditions**  is
amended by inserting the following at the end thereof:

> Notwithstanding the foregoing,  coverage as  is afforded  under the  **EPL** and
> **FLI Coverage Sections**  with respect  to a **Claim**  against the  **Acquired Entity**
> (as defined  below) or  any **Individual  Insured** or  **Plan** thereof  shall  apply to
> **Wrongful Acts** committed or  allegedly committed prior to  the effective time
> that the **Named Entity** obtained **Management Control** of the **Acquired Entity**.

2.    In Clause 2.  **DEFINITIONS** of  the **General  Terms and  Conditions**, the  definition of
**"Continuity Date"** is amended to include the following at the end thereof:

Notwithstanding the foregoing:

(i)    solely with  respect to  the  **EPL Coverage Section** , the  **Continuity Date**  for
**Claims** first made  against the  **Acquired Entity**  or any  **Individual Insured**
thereof shall be 09/14/2009; and

(i)    solely with  respect to the  **FLI Coverage Section**, the  **Continuity Date**  for
**Claims** first made the  **Acquired Entity**  or any  **Individual Insured** thereof shall
be 09/14/2009.

3.    As used  in this  endorsement, the  term  **"Acquired Entity"**  means GRANDE
MANAGER, LLC.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT    ***BRANCH        END 45***
***Archive Copy***
* Subject to Protective Order *

**AIGS.000736**

**ENDORSEMENT# 46**

This endorsement, effective *12:01 am    March 31, 2018*        forms a part of
policy number *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - SUBURBAN HOUSING PARTNERS, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:        SUBURBAN HOUSING PARTNERS, LLC

          **MAILING ADDRESS**:     575 WEST CHANDLER BLVD
                                   CHANDLER, AZ 85225

          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
          $5,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | N/A |
| FLI Coverage Section: | N/A | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

      a. Crisis Management Fund for D&O:                      $50,000
      b. Costs of Investigation Coverage Sublimit for D&O:     $250,000
      c. Voluntary Compliance Loss Sublimit of Liability for FLI:   N/A
      d. HIPAA Penalties Sublimit of Liability for FLI:          N/A
      e. Contract Claim Defense Costs Coverage Sublimit of  $3,000,000
         Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT# *46*   (Continued)**

This endorsement, effective  *12:01 am     March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

 

 

f. Side A Excess Limit of Liability excess aggregate limit of liability for all **Non-Indemnifiable Loss** solely for **Executives** of a **Company** (including **Defense Costs**) under the **D&O Coverage Section** (herein the **"Side A Excess Limit of Liability"**)     $1,000,000

**Item 4.   CONTINUITY DATES:**

| | |
|---|---|
| D&O Coverage Section: | 05/05/2017 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

**Item 5.   PRIOR ACT DATES:**

| | |
|---|---|
| D&O Coverage Section: | 05/05/2017 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

**Item 6.   RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $25,000 |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

| **PREMIUM POLICY YEAR 1:** | $26,500 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

ENDORSEMENT# *46*   **(Continued)**

This endorsement, effective *12:01 am*     *March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| PREMIUM POLICY YEAR 2: | $26,500 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      **BRANCH        END 46**
            **Archive Copy**
* Subject to Protective Order *
**AIGS.000739**

**ENDORSEMENT# 47**

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - TB HOLDINGS II PARENT, INC.**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:         TB HOLDINGS II PARENT, INC.

          **MAILING ADDRESS**:   300 E. JOHN CARPENTER FWY, STE 800
                                    INRVING, TX 75234

          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
          $16,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $10,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:                     $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:          $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:     $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:             $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of     $3,000,000
       Liability for D&O:

MNSCPT    *BRANCH* *Archive Copy* *END 47*                     **AIGS.000740**
* Subject to Protective Order *

ENDORSEMENT# *47*   **(Continued)**

This endorsement, effective  *12:01 am     March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by  *AIG Specialty Insurance Company*

    f. Side A Excess Limit of Liability excess aggregate limit of  $1,000,000
       liability for all **Non-Indemnifiable Loss** solely for **Executives**
       of a **Company** (including **Defense Costs**) under the **D&O**
       **Coverage Section** (herein the **"Side A Excess Limit of**
       **Liability"**)

**Item 4.**   **CONTINUITY DATES**:

      D&O Coverage Section:     12/01/2015
      EPLI Coverage Section:    06/11/2001
      FLI Coverage Section:     06/11/2001

**Item 5.**   **PRIOR ACT DATES**:

      D&O Coverage Section:     12/01/2015
      EPLI Coverage Section:    N/A
      FLI Coverage Section:     N/A

**Item 6.**   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
          **Act or Related Wrongful Acts):**

      D&O Coverage Section:     $100,000
      EPLI Coverage Section:    $150,000
      FLI Coverage Section:     $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

| **PREMIUM POLICY YEAR  1:** | $116,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

**ENDORSEMENT#** *47*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $116,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   ***BRANCH***   ***END 47***
***Archive Copy***
* Subject to Protective Order *

AIGS.000742

**ENDORSEMENT# *48***

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PANEL COUNSEL FIRM LIST AMENDED EMPLOYMENT PRACTICES LIABILITY**

In consideration of the premium charged, it is hereby understood and agreed solely with respect to the coverage afforded under Endorsement #47, PROGRAM PARTICIPANT ENDORSEMENT - TB HOLDINGS II PARENT, INC., the policy is amended as follows:

1.    Appendix A for the Section of the policy entitled "PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED EMPLOYMENT PRACTICES CLAIMS" is hereby amended to include the following law firm (the "Listed Firm"), but solely with regard to a Designated Employment Practices Claim in its jurisdiction(s) listed below:

LISTED FIRM                APPROVED JURISDICTION(S)

CROUCH RAMEY                        TX

2.    The foregoing amendment to Appendix A shall not apply to any Claim for which the Insurer has assumed the defense pursuant to Clause 8 of this policy.

3.    With respect to the defense of any Employment Practices Claims by the above listed law firm(s), is agreed that to the extent that services are billed at rates that exceed the Maximum Rates, the excess over such maximum rates shall not be covered under this policy as Defense Costs or otherwise as Loss. The retention shall not be reduced by, and the policyholder shall bear at its own expense, that portion of any fees charged by the Listed Firms that exceeds the applicable Maximum Rate. "Maximum Rate" means, for partners, **$250.00** per hour, for associates, **$200.00** per hour and for paralegals, **$85.00** per hour.

4.    The rates set forth in Clause 3 shall apply for the life of any Claim as long as such Claim is in any way covered under this policy.

5.    The Insureds agree to require the Listed Firms to follow the Insurer's Litigation Guidelines ("Litigation Guidelines"). Copies of the Litigation Guidelines will be provided to any Insured or their Listed Firms upon request.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT        **BRANCH        END 48**
**Archive Copy**

* Subject to Protective Order *

**AIGS.000743**

**ENDORSEMENT# 49**

This endorsement, effective  *12:01 am    March 31, 2018*         forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:       TPG NEEDLES PARTNERSHIP LP

        **MAILING ADDRESS**:     6225 N. STATE HWY, STE 200
                                   IRVING, TX 75038

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
        $15,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:                    $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:     $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:        $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
       Liability for D&O:

* Subject to Protective Order *

ENDORSEMENT# *49*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

      f. Side A Excess Limit of Liability excess aggregate limit of   $1,000,000
         liability for all **Non-Indemnifiable Loss** solely for **Executives**
         of a **Company** (including **Defense Costs**) under the **D&O**
         **Coverage Section** (herein the **"Side A Excess Limit of**
         **Liability"**)

Item 4.   **CONTINUITY DATES**:

      D&O Coverage Section:      05/10/2013
      EPLI Coverage Section:     05/10/2013
      FLI Coverage Section:      05/10/2013

Item 5.   **PRIOR ACT DATES**:

      D&O Coverage Section:      05/10/2013
      EPLI Coverage Section:     05/10/2013
      FLI Coverage Section:      05/10/2013

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
        Act or Related Wrongful Acts):**

      D&O Coverage Section:      $50,000
      EPLI Coverage Section:     $100,000
      FLI Coverage Section:      $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR 1:** | $68,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

**ENDORSEMENT#** *49*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| PREMIUM POLICY YEAR 2: | $68,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH**   **END 49**
**Archive Copy**
* Subject to Protective Order *

AIGS.000746

**ENDORSEMENT# *50***

This endorsement, effective  *12:01 am      March 31, 2018*          forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### FOR- PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT
### (D&O AND EPL COVERAGE SECTIONS)

This endorsement modifies insurance  provided under the  Manuscript Form for TPG
Portfolio.

In consideration of  the premium charged,  it is hereby  understood and agreed  that, solely
with  regard  to  the  coverage  afforded  in  Endorsement #49  PROGRAM  PARTICIPANT
ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP, the policy is amended as follows:

I.      AMENDMENTS TO THE GENERAL TERMS & CONDITIONS SECTION

        The General Terms & Conditions section is amended as follows:

        A.      In Clause 2. "DEFINITIONS" of the General Terms  & Conditions Section, the
                definition  of  Company  is  amended  to  include  the  following  at  the  end
                thereof:

        Company shall also include  any auxiliary, guild  or foundation formed  solely for the
        benefit of the  Named Entity  and of  which the book  value of  such entity's  assets
        determined in accordance with Generally Accepted Accounting Principles totals less
        than 10% of the similarly calculated assets of the Named  Entity as of the inception
        date of the Policy Period.

II.     AMENDMENTS TO THE D&O COVERAGE SECTION

        The D&O Coverage Section, if purchased, is amended as follows:

        1.      In Clause 2. "DEFINITIONS" of  the D&O Coverage Section, the  definition of
                Individual Insured(s) is amended to include the following at the end thereof:

                Individual Insured(s) shall also include any past, present  or future member of
                any duly  constituted committee;  any  individual person  engaged by a  duly
                constituted committee  for purposes  of providing  an expert  opinion with
                regard  to  peer  review  or  credentialing  decision  concerning  an  individual
                physician; any individual  in charge  of any  operational department;  and any
                medical director,  staff  physician  or  faculty member of  the Company,
                regardless of  whether  or  not such  person  is  directly  employed by the
                Company or is considered to be an independent contractor.

        2.      In Clause 2. "DEFINITIONS" of  the D&O Coverage Section, the  definition of
                Loss is amended to include the following at the end thereof:

* Subject to Protective Order *

ENDORSEMENT# *50*   (Continued)

This endorsement, effective *12:01 am     March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

1.    IRS Fines:

Loss shall include Defense Costs incurred in connection with a Claim seeking an
assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or
penalties pursuant to the following sections of the Internal Revenue Code of 1986
(as amended):

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax-exempt foundations);
Section 4941 (taxes on self-dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652 (c) (1) (A) and (B) (penalties for failure to file certain information
returns or registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.    EMTALA AND HIPAA FINES AND PENALTIES

Notwithstanding the foregoing, Loss shall also include:

(1)    civil fines and penalties assessed upon an Insured for a violation of EMTALA,
subject to the EMTALA Sub-limit of Liability; and

(2)    HIPAA Penalties, where insurable by law, subject to the HIPAA Penalties
Sublimit of Liability.

3.    GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

Notwithstanding the foregoing, Loss shall not include the return of funds which
were received from any federal, state or local governmental agency or any interest,
fines or penalties arising out of the return of such funds; provided, however, that
this policy shall pay Defense Costs in connection with any Claim made against an
Insured for the return of such funds, subject to the Government Funding Defense
Costs Sublimit of Liability and any co-insurance or separate retention provided for
such coverage in this policy.

MNSCPT         *BRANCH*  Archive Copy  *END 50*                **AIGS.000748**

* Subject to Protective Order *

ENDORSEMENT# *50*   (Continued)

This endorsement, effective   *12:01 am*    *March 31, 2018*         forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

4.     EXCESS BENEFIT PENALTY COVERAGE

"Loss" shall also include any "Excess Benefits" penalty assessed in the amount of 10% by the Internal Revenue Service ("IRS") against any Insured(s) for management's involvement in the award of an "Excess Benefit" and the Defense Costs attributable thereto. Loss shall specifically exclude: (1) any 25% penalty assessed by the IRS against an Insured deemed to have received an Excess Benefit; (2) Defense Costs incurred to defend any Insured if it has been in fact determined that such individual received an Excess Benefit; and (3) any 200% penalty assessed by the IRS for failure to correct the award of an Excess Benefit. In all events, the assessment by the IRS of a 200% penalty against any Insured shall void ab initio all coverage afforded pursuant to this paragraph.

3.     In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "Wrongful Act" is amended by adding the following to the end thereof:

   (iv)     any violation of the EMTALA.

   (v)      any violation of the HIPAA Privacy Regulations.

4.     In Clause 4. "EXCLUSIONS" of the D&O Coverage Section, paragraph (l) is deleted in its entirety and replaced with the following:

   (l)      alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to any Securities Claim.

5.     Clause 5. "LIMIT OF LIABILITY" of the D&O Coverage Section is amended by inserting the following at the end thereof:

   EMTALA SUBLIMIT OF LIABILITY

   The aggregate limit of the Insurer's liability for all Loss in connection with all EMTALA Claims in the aggregate made and reported during the Policy Period or Discovery Period (if applicable) is $100,000 (hereinafter "EMTALA Sublimit of Liability"). The EMTALA Sub-limit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

MNSCPT          *BRANCH* Archive Copy *END 50*          AIGS.000749
* Subject to Protective Order *

ENDORSEMENT# *50*   (Continued)

This endorsement, effective *12:01 am   March 31, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

GOVERNMENT FUNDING DEFENSE COSTS SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Defense Costs in connection with
a Claim for the return of funds which were received from any federal, state or local
governmental agency or any interest, fines or penalties arising out of the return of
such funds is $1,000,000 (the "Government Funding Defense Costs Sublimit of
Liability"). The Government Funding Defense Costs Sub-Limit of Liability is part of
and not in addition to the Policy Aggregate Limit of Liability and any Separate Limit
of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and
shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate
Limit of Liability or Shared Limit of Liability. With respect to any such sublimited
Defense Costs, it is further understood and agreed that the Insurer shall be liable to
pay only 50% of such Defense Costs, excess of a retention in the amount of
$1,000,000, up to the Government Funding Defense Costs Sublimit of Liability. It is
a condition of this insurance that the remaining 50% of such Defense Costs shall be
carried by the Insureds at their own risk and be uninsured.

HIPAA PENALTIES SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all HIPAA Penalties in the aggregate
under this policy is $100,000 (the "HIPAA Penalties Sublimit of Liability"). The
HIPAA Penalties Sublimit of Liability is part of, and not in addition to, the Policy
Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of
Liability applicable to the D&O Coverage Section, and shall in no way serve to
increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or
Shared Limit of Liability.

III.   AMENDMENTS TO THE EPL COVERAGE SECTION

The EPL Coverage Section, if purchased, is amended as follows:

A.   In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of
Individual Insured(s) is amended to include the following at the end thereof:

MNSCPT   *BRANCH* *Archive Copy* *END 50*   AIGS.000750

* Subject to Protective Order *

ENDORSEMENT# *50*   **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Individual Insured(s) shall also include any past, present or future member of any duly constituted committee; any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialing decision concerning an individual physician; any individual in charge of any operational department; and any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

B.  In the definition of Employment Practices Violation in Clause 2. "DEFINITIONS" of the EPL Coverage Section, subparagraph (xi) is deleted in its entirety and replaced with the following:

(xi)  defect in peer review or credentialing;

(xii)  with respect to any of the foregoing items (i) through (xi) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress or mental anguish, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights;

C.  Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended by deleting paragraphs (e) and (h) thereof in their entirety and replacing them with the following:

(e)  alleging, arising out of, based upon or attributable to bodily injury, sickness, disease or death of any person, or damage to, loss of use of or destruction of any tangible property; provided, however, this exclusion shall not apply to any a Claim for Retaliation.

(h)  alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of any Insured Company under any express contract or agreement (other than any employee handbooks or human resources policies and procedures, or any organizational or management advisory documents of any Named Entity); provided, however, this exclusion shall not apply to:

(i)  liability which would have attached in the absence of such express contract or agreement; or

(ii)  Defense Costs

***BRANCH*** *Archive Copy* *END 50*   **AIGS.000751**
* Subject to Protective Order *

ENDORSEMENT# *50*   (Continued)

This endorsement, effective *12:01 am*     *March 31, 2018*     forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

      (iii)    Individual Insureds;

      (iv)    Claims for Loss alleging Wrongful Acts of an Insured with respect to
hospital practice privileges, credentialing or peer review matters;

a.    The following clause is inserted at the end of the EPL Coverage Section:

HC-1 THIRD PARTY HUMAN CLINICAL TRIAL CLAIMS SUBLIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. "LIMIT
OF LIABILITY" of the General Terms and Conditions:

The aggregate limit of the Insurer's liability for all Loss under the EPL Coverage
Section in connection with all Third Party Human Clinical Trial Claims in the
aggregate is $100,000 (hereinafter called the "Third Party Human Clinical Trial
Claims Sublimit of Liability"). The Third Party Human Clinical Trial Claims Sublimit
of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability
and any Separate Limit of Liability or Shared Limit of Liability applicable to the EPL
Coverage Section, and shall in no way serve to increase such Policy Aggregate
Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

IV.    DEFINITIONS USED IN ENDORSEMENT

As used in this endorsement, the following terms have the meanings set forth below:

HC-1 "EMTALA" means the Emergency Medical Treatment and Active Labor Act
("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

HC-2 "EMTALA Claim" means any Claim alleging a violation of EMTALA, including,
without limitation, any Claim seeking civil fines and penalties for a violation of EMTALA.

HC-3 "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of Rights
Act, 2, 26 U.S.C. 4958.

HC-4 "HIPAA Penalties" means civil money penalties imposed upon an Insured for violation
of the HIPAA Privacy Regulations.

* Subject to Protective Order *

ENDORSEMENT# *50*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

HC-5 "HIPAA Privacy Regulations" means the privacy provisions of Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder, and amendments thereto, including, but not limited to, any amendment pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH Act")

HC-6 "Third Party Human Clinical Trial Claim" means any Third Party Violation in connection with any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT   ***BRANCH***   ***END 50***
***Archive Copy***

* Subject to Protective Order *

AIGS.000753

ENDORSEMENT# *51*

This endorsement, effective *12:01 am    March 31, 2018*        forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

## SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION
## (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that solely with regard to the coverage afforded in Endorsement #49, Program Participant Endorsement - TPG NEEDLES PARTNERSHIP LP, that solely with respect to **Loss** as may have otherwise been covered under either the **D&O Coverage Section** or the **EPL Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

**"Sexual Misconduct"** means any licentious, immoral or sexual behavior, sexual abuse, sexual assault, or molestation intended to lead to or culminating in any sexual act against any individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          *BRANCH*          *END 51*
                *Archive Copy*

* Subject to Protective Order *

AIGS.000754

ENDORSEMENT# *52*

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROFESSIONAL LIABILITY EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, solely with respect to the **Insureds** under Endorsement #49 PROGRAM PARTICIPANT ENDORSEMENT- TPG NEEDLES PARTNERSHIP LP, it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is amended to add the following exclusion:

*Solely with respect to Coverage B(i) of this* **D&O Coverage Section,** *the* **Insurer** *shall not be liable to make any payment for* **Loss** *in connection with any* **Claim**:

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        *BRANCH          END 52*
            *Archive Copy*

AIGS.000755

* Subject to Protective Order *

ENDORSEMENT# *53*

This endorsement, effective *12:01 am    March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to  *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

## ADDITIONAL INSUREDS - LISTED AFFILIATES
## (SPECIFIED COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded in Endorsement #49, Program Participant
Endorsement - TPG NEEDLES PARTNERSHIP LP, solely with respect to coverage as is
provided under the **Coverage Sections** specified in the schedule below, Clause 2. Definition
of **"Company"** of the **General Terms and Conditions**, is amended to include the following
entity(ies), each of which is an **"Affiliate"** (as defined below), subject to each such
**Affiliate's Continuity Date**:

**APPLICABLE COVERAGE SECTION(S):**

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

| AFFILIATE | CONTINUITY DATE |
|---|---|
| Northstar Anesthesia, PA | 05/10/2013 |
| Northstar Anesthesia of Tennessee, PLLC | 05/10/2013 |
| Northstar Anesthesia of Oklahoma, PLLC | 05/10/2013 |
| Northstar Anesthesia of Kentucky, PLLC | 05/10/2013 |
| Northstar Anesthesia of West Virgina, PLLC | 05/10/2013 |
| Northstar Anesthesia of Indiana, PLLC | 05/10/2013 |
| Northstar Anesthesia of Massachusetts, PLLC | 05/10/2013 |
| Northstar Anesthesia of Pennsylvania, LLC | 05/10/2013 |
| Northstar Anesthesia of Kansas, LLC | 05/10/2013 |
| Northstar Anesthesia of Illinois, LLC | 05/10/2013 |
| Northstar Anesthesia of Alabama, LLC | 05/10/2013 |
| Northstar Anesthesia of Georgia, LLC | 05/10/2013 |

* Subject to Protective Order *

ENDORSEMENT# *53*   (Continued)

This endorsement, effective  *12:01 am*     *March 31, 2018*      forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

| | |
|---|---|
| Northstar Anesthesia of Ohio, LLC | 05/10/2013 |
| Northstar Anesthesia of Virginia, LLC | 05/10/2013 |
| NSA Pain Services of Texas, PLLC | 05/10/2013 |
| NSA Pain Services of Ohio, PLLC | 05/10/2013 |
| NSA Pain Services of Kansas, PLLC | 05/10/2013 |
| ACM GP, LLC | 05/10/2013 |
| ACM GP II, LLC | 05/10/2013 |
| ACMUV, LLC | 05/10/2013 |
| ACM Holdco, LP | 05/10/2013 |
| Anesthesia Consulting and Management, LP | 05/10/2013 |
| MIRA Healthcare of Tennessee, PLLC | 05/10/2013 |
| MIRA Healthcare of Texas, PLLC | 05/10/2013 |
| MIRA Healthcare, LLC | 05/10/2013 |
| OmniStaff Anesthesia, LP | 05/10/2013 |
| OmniStaff, LLC | 05/10/2013 |
| Ambulatory Anesthesia Associates, LLC | 05/10/2013 |
| Anesthesia Concepts, LLC | 05/10/2013 |
| Anesthesia Consulting & Management, LP | 05/10/2013 |
| Amsol Professionals of America, LLC | 05/10/2013 |
| Amsol LLC | 05/10/2013 |
| American Integrated Management, LLC | 05/10/2013 |

* Subject to Protective Order *

ENDORSEMENT# 53    (Continued)

This endorsement, effective  *12:01 am*    *March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

| | |
|---|---|
| VitalMed, Inc. | 05/10/2013 |
| Amsol of Charleston, SC, LLC | 05/10/2013 |
| Amsol of Elkin, NC, LLC | 05/10/2013 |
| Healthcare Quality & Compliance Group, LLC | 05/10/2013 |
| Anesthesia Resources Management Solutions, Inc. | 05/10/2013 |
| Amsol Physicians of Ohio, PC | 05/10/2013 |
| Amsol Anesthetists of Ohio, LLC | 05/10/2013 |
| Anesthesia Solutions of Anniston, LLC | 05/10/2013 |
| Anesthesia Services of Dunn, NC, PC | 05/10/2013 |
| Amsol Anesthetists of Dunn, NC, PLLC | 05/10/2013 |
| Nurse Anesthesia of North Carolina, PLLC | 05/10/2013 |
| Nurse Anesthesia of South Carolina, PLLC | 05/10/2013 |
| AmSol Physicians of Georgia, PC | 05/10/2013 |
| AmSol Physicians of Columbus, GA, LLC | 05/10/2013 |
| AmSol Anesthetists of Georgia, LLC | 05/10/2013 |
| Anesthesia Care of West Virginia, Professional Corporation | 05/10/2013 |
| AmSol Anesthetists of Ohio Valley, LLC | 05/10/2013 |
| AmSol Anesthetists of Ohio Valey, PLLC | 05/10/2013 |
| Anesthesia Care of Litchfield, SC | 05/10/2013 |
| AmSol Anesthetists of Litchfield, IL, PC | 05/10/2013 |
| AmSol Physicians of Elkin, NC, PLLC | 05/10/2013 |

MNSCPT          *BRANCH* *Archive Copy* *END 53*          AIGS.000758
* Subject to Protective Order *

ENDORSEMENT# *53*  (Continued)

This endorsement, effective *12:01 am*     *March 31, 2018*     forms a part of
policy number  *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

| | |
|---|---|
| Anesthesia Management Services, LLC | 05/10/2013 |
| Anesthesia Professionals, LLC | 05/10/2013 |
| Central Virginia Anesthesia, LLC | 05/10/2013 |
| Frederick Anesthesia, LLC | 05/10/2013 |
| Mid Atlantic Pain Management, LLC | 05/10/2013 |
| Professional Anesthesia Group, LLC | 05/10/2013 |

It is further understood and agreed that, for the purpose of the applicability of the coverage provided by this endorsement, the **Affiliates** listed above and the **Company** will be conclusively deemed to have indemnified the **Individual Insureds** and other persons afforded coverage by this endorsement to the extent that such **Affiliates** or the **Company** is permitted or required to indemnify such persons pursuant to law, common or statutory, or contract, or the charter or by-laws of the **Company**. The **Affiliates** and the **Company** hereby agree to indemnify such persons to the fullest extent permitted by law, including the making in good faith of any required application for court approval.

It is further understood and agreed that, solely with respect to any coverage granted by virtue of this endorsement, the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against the **Affiliates** listed above or any **Clams** made against any **Individual Insured** of such **Affiliate** listed above:

(1)     alleging, arising out of, based upon or attributable to, as of such **Affiliate's** respective **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation, or alleging or derived from a **Related Wrongful Act** to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation; and

(2)     alleging any **Wrongful Act** occurring prior to such **Affiliate's** respective **Continuity Date** if the **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy.

In all events, coverage as is afforded under this endorsement with respect to any **Claim** made against any **Affiliate** listed above or any **Individual Insured** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the respective time such **Affiliate** became an **Affiliate** and prior to the time that such **Affiliate** ceased to be an **Affiliate**.

* Subject to Protective Order *

**ENDORSEMENT# *53*   (Continued)**

This endorsement, effective   *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

As used in this endorsement, the term **"Affiliate"** means (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH   END 53**
*Archive Copy*

* Subject to Protective Order *

AIGS.000760

**ENDORSEMENT# 54**

This endorsement, effective *12:01 am      March 31, 2018*      forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - TPG PIZZA HOLDINGS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:      TPG PIZZA HOLDINGS, LLC

        **MAILING ADDRESS**:      2300 RESOURCE DR
                                           BIRMINGHAM, AL 35242

        **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
        $5,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | $5,000,000 | N/A |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a. Crisis Management Fund for D&O:  $50,000
    b. Costs of Investigation Coverage Sublimit for D&O:  $250,000
    c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d. HIPAA Penalties Sublimit of Liability for FLI:  $250,000
    e. Contract Claim Defense Costs Coverage Sublimit of Liability  $3,000,000
       for D&O:

*BRANCH* *Archive Copy* *END 54*   **AIGS.000761**
* Subject to Protective Order *

**ENDORSEMENT# *54*** **(Continued)**

This endorsement, effective *12:01 am* *March 31, 2018* forms a part of
policy number *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

      f. Side A Excess Limit of Liability excess aggregate limit of  $1,000,000
      liability for all **Non-Indemnifiable Loss** solely for **Executives**
      of a **Company** (including **Defense Costs**) under the **D&O**
      **Coverage Section** (herein the **"Side A Excess Limit of**
      **Liability"**)

Item 4.    **CONTINUITY DATES**:

      D&O Coverage Section:    12/30/2013
      EPLI Coverage Section:    11/09/2007 for $500,000 Limit of Liability;
                                 01/18/2012 for $4,500,000 Excess $500,000
                                 Limit of Liability
      FLI Coverage Section:     11/09/2007

Item 5.    **PRIOR ACT DATES**:

      D&O Coverage Section:    12/30/2013
      EPLI Coverage Section:    11/09/2007
      FLI Coverage Section:     11/09/2007

Item 6.    **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful**
           **Act or Related Wrongful Acts):**

      D&O Coverage Section:    $50,000
      EPLI Coverage Section:    $150,000
      FLI Coverage Section:     $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

* Subject to Protective Order *

**ENDORSEMENT# 54** **(Continued)**

This endorsement, effective *12:01 am*    *March 31, 2018*    forms a part of
policy number    *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

Item 7.

| PREMIUM POLICY YEAR 1: | $58,250 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |
| PREMIUM POLICY YEAR 2: | $58,250 |
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH        END 54**
                   *Archive Copy*
* Subject to Protective Order *        **AIGS.000763**

**ENDORSEMENT# 55**

This endorsement, effective *12:01 am     March 31, 2018*     forms a part of
policy number *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - TPG VII MESO ACQUISITION, INC.

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.    **NAMED ENTITY**:        TPG VII MESO ACQUISITION, INC.

           **MAILING ADDRESS**:     11711 W 79TH STREET
                                     LENAXA, KS 66214

           **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.    **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
           $14,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $10,000,000 |
| EPLI Coverage Section: | N/A | $3,000,000 |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.    **OTHER POLICY YEAR LIMITS OF LIABILITY**:

a. Crisis Management Fund for D&O:                    $50,000
b. Costs of Investigation Coverage Sublimit for D&O:  $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
d. HIPAA Penalties Sublimit of Liability for FLI:     $250,000
e. Contract Claim Defense Costs Coverage Sublimit of  $3,000,000
   Liability for D&O:

MNSCPT          *BRANCH*    *Archive Copy*    *END 55*              **AIGS.000764**

* Subject to Protective Order *

**ENDORSEMENT# 55**   **(Continued)**

This endorsement, effective *12:01 am*    *March 31, 2018*      forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

f. Side A Excess Limit of Liability excess aggregate limit of      $1,000,000
liability for all **Non-Indemnifiable Loss** solely for **Executives**
of a **Company** (including **Defense Costs**) under the **D&O
Coverage Section** (herein the **"Side A Excess Limit of
Liability"**)

Item 4.   **CONTINUITY DATES**:

D&O Coverage Section:      02/09/2017
EPLI Coverage Section:     06/14/2007
FLI Coverage Section:      02/09/2017

Item 5.   **PRIOR ACT DATES**:

D&O Coverage Section:      02/09/2017
EPLI Coverage Section:     N/A
FLI Coverage Section:      02/09/2017

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
Act or Related Wrongful Acts):**

D&O Coverage Section:      $50,000
EPLI Coverage Section:     $50,000
FLI Coverage Section:      $0

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR 1:** | $88,500 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

* Subject to Protective Order *

**ENDORSEMENT# 55**   **(Continued)**

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| PREMIUM POLICY YEAR 2: | $88,500 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT          **BRANCH          END 55**
                **Archive Copy**

AIGS.000766

* Subject to Protective Order *

ENDORSEMENT# *56*

This endorsement, effective *12:01 am*    *March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROFESSIONAL LIABILITY EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, solely with respect to the **Insureds** under Endorsement #55 PROGRAM PARTICIPANT ENDORSEMENT- TPG VII MESO ACQUISITION, INC., it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is amended to add the following exclusion:

> *Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim***:

1.    made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2.    made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT    **BRANCH**    **END 56**
**Archive Copy**
* Subject to Protective Order *

**AIGS.000767**

**ENDORSEMENT# *57***

This endorsement, effective *12:01 am      March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - TRAVEL MANAGEMENT COMPANY INTERMEDIATE HOLDINGS, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth in Item 7 of this endorsement, it is understood and agreed that the following terms and conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.     **NAMED ENTITY**:     TRAVEL MANAGEMENT COMPANY INTERMEDIATE
HOLDINGS, LLC

**MAILING ADDRESS**:     201 COUNTRY ROAD 6
ELKHART, IN 46514

**STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.     **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
$6,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $5,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.     **OTHER POLICY YEAR LIMITS OF LIABILITY**:

a. Crisis Management Fund for D&O:                      $50,000
b. Costs of Investigation Coverage Sublimit for D&O:    $250,000
c. Voluntary Compliance Loss Sublimit of Liability for FLI:    $100,000
d. HIPAA Penalties Sublimit of Liability for FLI:       $250,000
e. Contract Claim Defense Costs Coverage Sublimit of   $3,000,000
   Liability for D&O:

MNSCPT          *BRANCH**Archive Copy**END 57*                                **AIGS.000768**

* Subject to Protective Order *

**ENDORSEMENT# 57**   (Continued)

This endorsement, effective *12:01 am*    *March 31, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

      f. Side A Excess Limit of Liability excess aggregate limit    $1,000,000
      of liability for all **Non-Indemnifiable Loss** solely for
      **Executives** of a **Company** (including **Defense Costs**)
      under the **D&O Coverage Section** (herein the "**Side A**
      **Excess Limit of Liability**")

**Item 4.**   **CONTINUITY DATES**:

      D&O Coverage Section:      06/20/2016
      EPLI Coverage Section:     06/20/2016
      FLI Coverage Section:      06/20/2016

**Item 5.**   **PRIOR ACT DATES**:

      D&O Coverage Section:      06/20/2016
      EPLI Coverage Section:     N/A
      FLI Coverage Section:      N/A

**Item 6.**   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
          Act or Related Wrongful Acts):**

      D&O Coverage Section:      $25,000
      EPLI Coverage Section:     $25,000
      FLI Coverage Section:      $0

      *Note: No Retention amount is applicable to non-Indemnifiable Loss.*

**Item 7.**

| **PREMIUM POLICY YEAR 1:** | $30,000 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |

***BRANCH*** *Archive Copy* ***END 57***    **AIGS.000769**
* Subject to Protective Order *

**ENDORSEMENT# 57**   **(Continued)**

This endorsement, effective *12:01 am*    *March 31, 2018*       forms a part of
policy number *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

| **PREMIUM POLICY YEAR 2:** | $30,000 |
|---|---|
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        **BRANCH        END 57**
              **Archive Copy**
* Subject to Protective Order *
**AIGS.000770**

**ENDORSEMENT# 58**

This endorsement, effective *12:01 am   March 31, 2018*                forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - UTC LABORATORIES, LLC**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount  is set forth
in Item 7 of this  endorsement, it is  understood and  agreed that the  following terms  and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:          UTC LABORATORIES, LLC

   **MAILING ADDRESS**:       1411 CANAL STREET, STE 401
                          NEW ORLEANS, LA 70112

   **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
          $11,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $1,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

   a.  Crisis Management Fund for D&O:                    $50,000
   b.  Costs of Investigation Coverage Sublimit for D&O:     $250,000
   c.  Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
   d.  HIPAA Penalties Sublimit of Liability for FLI:          $250,000
   e.  Contract Claim Defense  Costs Coverage Sublimit of   $3,000,000
       Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT# *58*** **(Continued)**

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

   f. Side A Excess Limit of Liability excess aggregate limit   $1,000,000
     of liability for all **Non-Indemnifiable Loss** solely for
     **Executives** of a **Company** (including **Defense Costs**)
     under the **D&O Coverage Section** (herein the **"Side A**
     **Excess Limit of Liability"**)

**Item 4.** **CONTINUITY DATES:**

| | |
|---|---|
| D&O Coverage Section: | 02/27/2014 for Primary $3,000,000 Limit of Liability; 10/31/2014 for $7,000,000 Excess $3,000,000 Limit of Liability |
| EPLI Coverage Section: | 02/27/2014 for Primary $3,000,000 Limit of Liability; 10/31/2014 for $2,000,000 Excess $3,000,000 Limit of Liability |
| FLI Coverage Section: | 10/31/2014 |

**Item 5.** **PRIOR ACT DATES:**

| | |
|---|---|
| D&O Coverage Section: | N/A |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

**Item 6.** **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $75,000 |
| EPLI Coverage Section: | $75,000 |
| FLI Coverage Section: | $0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

*BRANCH* *Archive Copy* *END 58* AIGS.000772
* Subject to Protective Order *

**ENDORSEMENT# *58*** **(Continued)**

This endorsement, effective *12:01 am*     *March 31, 2018*     forms a part of
policy number *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

Item 7.

| **PREMIUM POLICY YEAR 1:** | $111,500 |
|---|---|
| (Effective Date of Program Participant Endorsement to 3/31/2019) | Premium due 30 days from Effective Date |
| **PREMIUM POLICY YEAR 2:** | $111,500 |
| (3/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due 30 days from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT     *BRANCH*          *END 58*
          *Archive Copy*
* Subject to Protective Order *

AIGS.000773

**ENDORSEMENT# *59***

This endorsement, effective *12:01 am     March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

### FOR- PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT
### (D&O AND EPL COVERAGE SECTIONS)

This endorsement modifies insurance  provided under the  Manuscript Form  for TPG
Portfolio.

In consideration of  the premium charged,  it is hereby  understood and agreed  that, solely
with  regard  to  the  coverage  afforded  in  Endorsement #58  PROGRAM  PARTICIPANT
ENDORSEMENT - UTC LABORATORIES, LLC, the policy is amended as follows:

I.      AMENDMENTS TO THE GENERAL TERMS & CONDITIONS SECTION

        The General Terms & Conditions section is amended as follows:

        A.      In Clause 2. "DEFINITIONS" of the General Terms  & Conditions Section, the
                definition  of  Company  is  amended  to  include  the  following  at  the  end
                thereof:

        Company shall also include  any auxiliary, guild  or foundation formed  solely for the
        benefit of the  Named Entity  and of  which the book  value of  such entity's  assets
        determined in accordance with Generally Accepted Accounting Principles totals less
        than 10% of the similarly calculated assets of the Named  Entity as of the inception
        date of the Policy Period.

II.     AMENDMENTS TO THE D&O COVERAGE SECTION

        The D&O Coverage Section, if purchased, is amended as follows:

        1.      In Clause 2. "DEFINITIONS" of  the D&O Coverage Section, the  definition of
                Individual Insured(s) is amended to include the following at the end thereof:

                Individual Insured(s) shall also include any past, present  or future member of
                any duly  constituted committee;  any  individual person  engaged by a  duly
                constituted committee  for  purposes  of  providing  an  expert  opinion  with
                regard  to  peer  review  or  credentialing  decision  concerning  an  individual
                physician; any individual  in charge  of any  operational department;  and any
                medical  director,  staff  physician  or  faculty  member  of  the  Company,
                regardless  of  whether  or  not  such  person  is  directly  employed  by  the
                Company or is considered to be an independent contractor.

        2.      In Clause 2. "DEFINITIONS" of  the D&O Coverage Section, the  definition of
                Loss is amended to include the following at the end thereof:

MNSCPT        *BRANCH* Archive Copy *END 59*                          **AIGS.000774**

* Subject to Protective Order *

ENDORSEMENT# *59*   (Continued)

This endorsement, effective *12:01 am    March 31, 2018*      forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

1.    IRS Fines:

Loss shall  include Defense  Costs incurred  in connection  with a  Claim seeking  an
assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or
penalties pursuant to the  following sections of the  Internal Revenue Code of  1986
(as amended):

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax-exempt foundations);
Section 4941 (taxes on self-dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652  (c) (1)  (A)  and (B)  (penalties  for failure  to file certain  information
returns or registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.    EMTALA AND HIPAA FINES AND PENALTIES

Notwithstanding the foregoing, Loss shall also include:

(1)    civil fines and penalties assessed upon an Insured for a violation of EMTALA,
       subject to the EMTALA Sub-limit of Liability; and

(2)    HIPAA Penalties,  where insurable  by law, subject  to  the HIPAA  Penalties
       Sublimit of Liability.

3.    GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

Notwithstanding the  foregoing, Loss  shall  not include  the  return of  funds  which
were received from any federal, state or local governmental  agency or any interest,
fines or penalties  arising out of  the return of  such funds;  provided, however, that
this policy shall pay  Defense Costs in  connection with any Claim  made against an
Insured for the  return of  such funds, subject  to the  Government Funding Defense
Costs Sublimit of  Liability and any  co-insurance or  separate retention provided  for
such coverage in this policy.

MNSCPT          *BRANCH*   *Archive Copy*  *END 59*                    AIGS.000775

* Subject to Protective Order *

ENDORSEMENT# *59*   (Continued)

This endorsement, effective *12:01 am    March 31, 2018*   forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

4.   EXCESS BENEFIT PENALTY COVERAGE

"Loss" shall also include any "Excess Benefits" penalty assessed in the amount of
10% by the Internal Revenue Service ("IRS") against any Insured(s) for
management's involvement in the award of an "Excess Benefit" and the Defense
Costs attributable thereto. Loss shall specifically exclude: (1) any 25% penalty
assessed by the IRS against an Insured deemed to have received an Excess Benefit;
(2) Defense Costs incurred to defend any Insured if it has been in fact determined
that such individual received an Excess Benefit; and (3) any 200% penalty assessed
by the IRS for failure to correct the award of an Excess Benefit. In all events, the
assessment by the IRS of a 200% penalty against any Insured shall void ab initio all
coverage afforded pursuant to this paragraph.

3.   In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of
"Wrongful Act" is amended by adding the following to the end thereof:

(iv)   any violation of the EMTALA.

(v)   any violation of the HIPAA Privacy Regulations.

4.   In Clause 4. "EXCLUSIONS" of the D&O Coverage Section, paragraph (l) is deleted
in its entirety and replaced with the following:

(l)   alleging, arising out of, based upon or attributable to bodily injury, sickness, disease
or death of any person, or damage to, loss of use of or destruction of any tangible
property; provided, however, this exclusion shall not apply to any Securities Claim.

5.   Clause 5. "LIMIT OF LIABILITY" of the D&O Coverage Section is amended by
inserting the following at the end thereof:

EMTALA SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Loss in connection with all
EMTALA Claims in the aggregate made and reported during the Policy Period or
Discovery Period (if applicable) is $100,000 (hereinafter "EMTALA Sublimit of
Liability"). The EMTALA Sub-limit of Liability is part of, and not in addition to, the
Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit
of Liability applicable to the D&O Coverage Section, and shall in no way serve to
increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or
Shared Limit of Liability.

* Subject to Protective Order *

ENDORSEMENT# *59*   (Continued)

This endorsement, effective  *12:01 am*   *March 31, 2018*        forms a part of
policy number  *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

GOVERNMENT FUNDING DEFENSE COSTS SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Defense Costs in  connection with
a Claim for the return of funds which were received  from any federal, state or local
governmental agency or any  interest, fines or penalties  arising out of the  return of
such funds  is $1,000,000  (the "Government Funding  Defense  Costs Sublimit  of
Liability"). The Government Funding  Defense Costs Sub-Limit  of Liability is  part of
and not in addition to the Policy Aggregate  Limit of Liability and any Separate Limit
of Liability or Shared Limit of Liability applicable to  the D&O Coverage Section, and
shall in no way serve  to increase such Policy Aggregate  Limit of Liability, Separate
Limit of Liability  or Shared  Limit of  Liability. With  respect to  any such sublimited
Defense Costs, it is further understood and agreed that the  Insurer shall be liable to
pay only 50%  of such Defense  Costs,  excess  of a retention  in the amount  of
$1,000,000, up to the Government Funding Defense Costs Sublimit of Liability. It is
a condition of this insurance that the remaining 50% of such Defense Costs shall be
carried by the Insureds at their own risk and be uninsured.

HIPAA PENALTIES SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for  all HIPAA Penalties in the aggregate
under this policy is $100,000 (the  "HIPAA Penalties  Sublimit of  Liability"). The
HIPAA Penalties Sublimit of Liability  is part of, and  not in addition to,  the Policy
Aggregate Limit of  Liability and  any Separate  Limit of  Liability or Shared  Limit of
Liability applicable to  the D&O  Coverage  Section, and  shall  in no  way  serve  to
increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or
Shared Limit of Liability.

III.   AMENDMENTS TO THE EPL COVERAGE SECTION

The EPL Coverage Section, if purchased, is amended as follows:

A.     In Clause 2.  "DEFINITIONS" of the  EPL Coverage Section,  the definition  of
       Individual Insured(s) is amended to include the following at the end thereof:

       Individual Insured(s) shall also include any past, present  or future member of
       any duly  constituted committee;  any  individual person  engaged  by a duly
       constituted committee  for purposes  of providing  an expert  opinion  with
       regard to  peer  review  or  credentialing  decision  concerning  an individual
       physician; any individual  in charge  of any  operational department;  and any
       medical director, staff  physician or  faculty member  of the Company,
       regardless of  whether  or  not  such person  is directly  employed  by the
       Company or is considered to be an independent contractor.

* Subject to Protective Order *

ENDORSEMENT# *59*   (Continued)

This endorsement, effective  *12:01 am      March 31, 2018*        forms a part of
policy number   *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

B.    In the definition of Employment Practices Violation in Clause 2.
"DEFINITIONS" of the EPL Coverage Section,  subparagraph (xi) is deleted in
its entirety and replaced with the following:

(xi)    defect in peer review or credentialing;

(xii)   with  respect  to  any  of  the  foregoing items  (i)  through  (xi) of this
definition: negligent hiring, retention, training  or supervision, infliction
of emotional distress or  mental anguish, failure to  provide or enforce
adequate or consistent corporate policies and procedures,  or violation
of an individual's civil rights;

C.    Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended by
deleting paragraphs (e)  and (h)  thereof in  their entirety and  replacing them
with the following:

(e)    alleging, arising out of,  based  upon or  attributable  to bodily  injury,
sickness, disease or death of any person, or damage to, loss of use of
or  destruction of  any  tangible property; provided, however,  this
exclusion shall not apply to any a Claim for Retaliation.

(h)    alleging, arising  out of,  based  upon  or attributable  to any  actual  or
alleged  contractual  liability of any  Insured  Company  under any
express contract or  agreement (other than  any employee  handbooks
or human resources policies  and procedures, or any  organizational or
management advisory  documents  of any Named Entity);  provided,
however, this exclusion shall not apply to:

(i)    liability which  would  have attached  in  the  absence of  such
express contract or agreement; or

(ii)    Defense Costs

(iii)    Individual Insureds;

(iv)    Claims for  Loss alleging Wrongful Acts of an Insured with
respect to  hospital practice privileges, credentialing or  peer
review matters;

MNSCPT          *BRANCH*  Archive Copy *END 59*                    AIGS.000778
* Subject to Protective Order *

ENDORSEMENT# *59*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

a.   The following clause is inserted at the end of the EPL Coverage Section:

HC-1 THIRD PARTY HUMAN CLINICAL TRIAL CLAIMS SUBLIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. "LIMIT OF LIABILITY" of the General Terms and Conditions:

The aggregate limit of the Insurer's liability for all Loss under the EPL Coverage Section in connection with all Third Party Human Clinical Trial Claims in the aggregate is $100,000 (hereinafter called the "Third Party Human Clinical Trial Claims Sublimit of Liability"). The Third Party Human Clinical Trial Claims Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the EPL Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

IV.   DEFINITIONS USED IN ENDORSEMENT

As used in this endorsement, the following terms have the meanings set forth below:

HC-1 "EMTALA" means the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

HC-2 "EMTALA Claim" means any Claim alleging a violation of EMTALA, including, without limitation, any Claim seeking civil fines and penalties for a violation of EMTALA.

HC-3 "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

HC-4 "HIPAA Penalties" means civil money penalties imposed upon an Insured for violation of the HIPAA Privacy Regulations.

HC-5 "HIPAA Privacy Regulations" means the privacy provisions of Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder, and amendments thereto, including, but not limited to, any amendment pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH Act")

MNSCPT   *BRANCH* Archive Copy *END 59*   AIGS.000779

* Subject to Protective Order *

**ENDORSEMENT# 59** (Continued)

This endorsement, effective 12:01 am    March 31, 2018         forms a part of
policy number 01-309-86-42
issued to    SEE PROGRAM PARTICIPANT ENDORSEMENT

by    AIG Specialty Insurance Company

HC-6 "Third Party Human Clinical Trial Claim" means any Third Party Violation in connection with any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

© All rights reserved.

MNSCPT    **BRANCH    END 59**
**Archive Copy**

* Subject to Protective Order *

AIGS.000780

ENDORSEMENT# 60

This endorsement, effective 12:01 am    March 31, 2018         forms a part of
policy number  01-309-86-42
issued to    SEE PROGRAM PARTICIPANT ENDORSEMENT

by    AIG Specialty Insurance Company

## SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION
## (D&O AND EPL COVERAGE SECTIONS)

In consideration of the premium charged, it is hereby understood and agreed that solely with regard to the coverage afforded in Endorsement #58, Program Participant Endorsement - UTC LABORATORIES, LLC, that solely with respect to **Loss** as may have otherwise been covered under either the **D&O Coverage Section** or the **EPL Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

**"Sexual Misconduct"** means any licentious, immoral or sexual behavior, sexual abuse, sexual assault, or molestation intended to lead to or culminating in any sexual act against any individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        *BRANCH*        *END 60*
              *Archive Copy*

* Subject to Protective Order *

AIGS.000781

**ENDORSEMENT# *61***

This endorsement, effective *12:01 am    March 31, 2018*    forms a part of
policy number *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROGRAM PARTICIPANT ENDORSEMENT - V2 VENTURES GROUP, LLC

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.  **NAMED ENTITY**:        V2 VENTURES GROUP, LLC

  **MAILING ADDRESS**:     300 E. 39TH ST, STE 4E
                 KANSAS CITY, MO 64111

  **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.  **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
     $15,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | N/A | $5,000,000 |
| EPLI Coverage Section: | N/A | $5,000,000 |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.  **OTHER POLICY YEAR LIMITS OF LIABILITY**:

  a. Crisis Management Fund for D&O:              $50,000
  b. Costs of Investigation Coverage Sublimit for D&O:      $250,000
  c. Voluntary Compliance Loss Sublimit of Liability for FLI:   $100,000
  d. HIPAA Penalties Sublimit of Liability for FLI:          $250,000
  e. Contract Claim Defense Costs Coverage Sublimit of    $3,000,000
     Liability for D&O:

* Subject to Protective Order *

**ENDORSEMENT#** *61*   (Continued)

This endorsement, effective *12:01 am*   *March 31, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

  f. Side  A Excess Limit  of Liability excess  aggregate limit of   $1,000,000
     liability for all **Non-Indemnifiable Loss** solely for **Executives**
     of a **Company** (including **Defense Costs**) under the **D&O
     Coverage Section** (herein the **"Side A Excess Limit of
     Liability"**)

Item 4.   **CONTINUITY DATES**:

|   |   |
|---|---|
| D&O Coverage Section: | 01/01/2002 |
| EPLI Coverage Section: | 01/01/2002 |
| FLI Coverage Section: | 01/01/2002 |

Item 5.   **PRIOR ACT DATES**:

|   |   |
|---|---|
| D&O Coverage Section: | N/A |
| EPLI Coverage Section: | N/A |
| FLI Coverage Section: | N/A |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful
          Act or Related Wrongful Acts):**

|   |   |
|---|---|
| D&O Coverage Section: | $125,000 |
| EPLI Coverage Section: | $100,000 |
| FLI Coverage Section: | $0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.   **ANNUAL PREMIUM:**      $41,000

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT   **BRANCH        END 61**
          *Archive Copy*
* Subject to Protective Order *

AIGS.000783

ENDORSEMENT# *62*

This endorsement, effective *12:01 am     March 31, 2018*          forms a part of
policy number  *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

### PROFESSIONAL LIABILITY EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, solely with respect to the **Insureds** under
Endorsement #61 PROGRAM PARTICIPANT ENDORSEMENT- V2 VENTURES GROUP, LLC,
it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage
Section** is amended to add the following exclusion:

> *Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the **Insurer** shall
> not be liable to make any payment for **Loss** in connection with any **Claim***:

1.      made by or on behalf of any client of any **Insured** that seeks damages,
specific performance or another form of compensation for any act, error or
omission in the performance of or any failure to perform professional
services or supporting services for that client; or

2.      made by or on behalf of any third-party beneficiary of any professional
services performed for a client of any **Insured** that seeks damages, specific
performance or another form of compensation for any act, error or omission
in the performance of or any failure to perform those professional services or
supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT          ***BRANCH***          ***END 62***
          ***Archive Copy***
* Subject to Protective Order *
AIGS.000784

**ENDORSEMENT# *63***

This endorsement, effective *12:01 am     March 31, 2018*                forms a part of
policy number  *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | DIRECTORS & OFFICERS LIABILITY INSURANCE, EMPLOYMENT PRACTICES LIABILITY INSURANCE, FIDUCIARY LIABILITY INSURANCE |
| 96555 | 01/15 | TRIA DEC DISCLOSURE FORM |
| MNSCPT | | GENERAL TERMS AND CONDITIONS |
| MNSCPT | | D&O COVERAGE SECTION |
| MNSCPT | | EPL COVERAGE SECTION |
| MNSCPT | | FLI COVERAGE SECTION |
| | 06/08 | SECURITIES CLAIM PANEL COUNSEL LIST |
| | 06/08 | EMPLOYMENT PRACTICES CLAIM PANEL COUNSEL |
| 99544 | 07/08 | EMPLOYEE BENEFIT PLAN FIDUCIARY LIABILITY PANEL COUNSEL |
| 97886 | 04/08 | POLICYHOLDER NOTICE REGARDING E-DISCOVERY CONSULTANT SERVICES |
| 96311 | 02/08 | APPENDIX D - CRISIS MANAGEMENT COVERAGE FOR D&O COVERAGE SECTION |
| 89644 | 06/13 | ECONOMIC SANCTIONS ENDORSEMENT |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 95737 | 09/07 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (ALL COVERAGE SECTIONS) |
| MNSCPT | | D&O COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| MNSCPT | | EPL COVERAGE SECTION PANEL COUNSEL FIRMS AMENDED |
| MNSCPT | | ENTITY V. INSURED EXCLUSION ENDORSEMENT |
| MNSCPT | | FLSA AND RELATED EXCLUSIONS AMENDED |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ACCESS CLINICAL PARTNERS, LLC |
| MNSCPT | | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| MNSCPT | | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| MNSCPT | | ADDITIONAL INSUREDS - LISTED AFFILIATES |

© All rights reserved.

*END 063*

Archive Copy
BRANCH

78859 (10/01)                            Page 4 of 6

AIGS.000785

* Subject to Protective Order *

**ENDORSEMENT# 63**

This endorsement, effective 12:01 am    March 31, 2018                    forms a part of
policy number  01-309-86-42
issued to SEE PROGRAM PARTICIPANT ENDORSEMENT

by    AIG Specialty Insurance Company

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ADVANTEK WASTE MANAGEMENT SERVICES LLC |
| MNSCPT | | DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES) |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ARTEL HOLDINGS, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - COUNTER BRANDS, LLC dba BEAUTY COUNTER |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - DISCOVERY DJ HOLDINGS, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - FRANK RECRUITMENT GROUP INCORPORATED |
| MNSCPT | | CALIFORNIA EMPLOYMENT PRACTICES CLAIMS |
| MNSCPT | | PARENT EXCLUSION ENDORSEMENT |
| MNSCPT | | TIE-IN OF LIMITS ENDORSEMENT |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - FRED SEGAL, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - GAVIN DE BECKER & ASSOCIATES, LP |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION |
| MNSCPT | | ABSOLUTE BODILY INJURY AND PROPERTY DAMAGE EXCLUSION ENDORSEMENT |
| MNSCPT | | DEFINITION OF COMPANY AMENDED TO ADD ADDITIONAL LISTED ENTITY(IES) |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - GPT TPG SINGLE TENANT VENTURE LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - GRCY HOLDINGS, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - H&W FRANCHISE HOLDINGS, LLC |
| MNSCPT | | EMPLOYED LAWYERS PROFESSIONAL LIABILITY EXTENSION ENDORSEMENT |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - JAX HOLDINGS, LLC |

©

**END 063**

Archive Copy
BRANCH

78859 (10/01)                              Page 2 of 4

* Subject to Protective Order *

**AIGS.000786**

**ENDORSEMENT# *63***

This endorsement, effective *12:01 am    March 31, 2018*                     forms a part of
policy number  *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - JONAH ENERGY HOLDINGS LLC |
| MNSCPT | | ADDITIONAL INSUREDS - DEFINITION OF COMPANY AMENDED |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - LAUREL PARENT HOLDINGS, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - MCDERMOTT HOLDINGS, LP |
| MNSCPT | | THIRD PARTY VIOLATION CLAIMS - SEPARATE RETENTION |
| MNSCPT | | DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - MENDOCINO FARMS, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - MERCATUS, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - PHILLIPS EDISON VALUE ADDED GROCERY VENTURE, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - PHILZ COFFEE, INC. |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - PLATFORM ONE MEDIA, LLC |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - RADIATE HOLDINGS, LP |
| MNSCPT | | DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS |
| MNSCPT | | DEFINITION OF SUBSIDIARY AMENDED TO PROVIDE PRIOR ACTS |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - SUBURBAN HOUSING PARTNERS, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TB HOLDINGS II PARENT, INC. |
| MNSCPT | | PANEL COUNSEL FIRM LIST AMENDED EMPLOYMENT PRACTICES LIABILITY |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TPG NEEDLES PARTNERSHIP LP |
| MNSCPT | | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| MNSCPT | | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION |
| MNSCPT | | ADDITIONAL INSUREDS - LISTED AFFILIATES |

©

**END 063**

*Archive Copy*
*BRANCH*

Page 4 of 4

* Subject to Protective Order *

**AIGS.000787**

78859 (10/01)

**ENDORSEMENT#** *63*

This endorsement, effective *12:01 am*    *March 31, 2018*                    forms a part of
policy number   *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TPG PIZZA HOLDINGS, LLC |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TPG VII MESO ACQUISITION, INC. |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - TRAVEL MANAGEMENT COMPANY |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - UTC LABORATORIES, LLC |
| MNSCPT | | FOR-PROFIT HEALTH CARE ORGANIZATION AMENDATORY ENDORSEMENT |
| MNSCPT | | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - V2 VENTURES GROUP, LLC |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

©

*END 063*

*Archive Copy*
*BRANCH*                    * Subject to Protective Order *

**AIGS.000788**

**FORMS SCHEDULE**

Policy Number:  01-309-86-42
Division No:  39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2018
Expiration Date: March 31, 2020

Print date:  May 19, 2018
Printed by: HAROLD HUISO
Phone # :

Underwriter Name:PATRICK CAIN
Underwriter Phone # :  646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE LETTER | | ENVELOPE PAGE |
| ☐ CLETR2 LETTER | | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT MNSCPT | | POLICY PERIOD AMENDED |
| ☐ QE3921 SYSLIB | | FORMS INDEX (AMENDED) |

NUSFRM

*Archive Copy*

* Subject to Protective Order *

AIGS.000789

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



May 19, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

    Policy Number:   **01- 309- 86- 42**
    Product:         PrivateEdge Plus
    Policy Period:   March 31, 2018 - March 31, 2020

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

                              Very truly yours,


                              PATRICK CAIN
                              Underwriting Analyst
                              646- 857- 1481
                              Patrick.Cain@aig.com


    Enc.


1503641

*BRANCH Archive Copy*                              **AIGS.000790**
* Subject to Protective Order *

ENDORSEMENT# *64*

This endorsement, effective *12:01 am*    *March 31, 2018*        forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

## POLICY PERIOD AMENDED
## (DECLARATIONS)

In consideration of the premium charged, it is hereby understood and agreed that, solely
with regard to the coverage afforded under endorsement #61, V2 VENTURES GROUP,
LLC, and solely with respect to the Specified Program Participant below, Item 2. **POLICY
PERIOD** of the Declarations is amended as follows:

SPECIFIED PROGRAM PARTICIPANT
V2 VENTURES GROUP, LLC

| 2 | POLICY PERIOD: | Inception Date: | March 31, 2018 | Expiration Date: | March 31, 2019 |
|---|---|---|---|---|---|
| | | 12:01 A.M. at the address stated in Item 1 | | | |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
        AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT    *BRANCH*        *END 64*
        *Archive Copy*

* Subject to Protective Order *

AIGS.000791

**ENDORSEMENT#** *65*

This endorsement, effective *12:01 am    March 31, 2018*                forms a part of
policy number   *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|-------------|--------------|------------|
| MNSCPT      |              | POLICY PERIOD AMENDED |
| SYSLIB      | 01/05        | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*    *END 065*
*BRANCH*

* Subject to Protective Order *

**AIGS.000792**

**FORMS SCHEDULE**

Policy Number: 01-309-86-42
Division No:   39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: **March 31, 2018**
Expiration Date: **March 31, 2020**

Print date:  **Jul 18, 2018**
Printed by: **NOVELYN SALAS**
Phone # :

Underwriter Name:**PATRICK CAIN**
Underwriter Phone # : 646-857-1481

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ENVPGE | LETTER | ENVELOPE PAGE |
| ☐CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐MNSCPT | MNSCPT | DISCOVERY/RUNOFF ELECTED |
| ☐QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000793**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212- 458- 5000
**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



July 18, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:   **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:   **01- 309- 86- 42**
Product:             PrivateEdge Plus
Policy Period:     March 31, 2018 - March 31, 2020

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
646- 857- 1481
Patrick.Cain@aig.com

Enc.

1503641

*BRANCH Archive Copy*                          **AIGS.000794**
* Subject to Protective Order *

**ENDORSEMENT# _68_**

This endorsement, effective   _12:01 am_      _June 28, 2018_        forms a part of
policy number   _01-309-86-42_
issued to      _SEE PROGRAM PARTICIPANT ENDORSEMENT_

by      _AIG Specialty Insurance Company_

## DISCOVERY/RUNOFF ELECTED
## (SPECIFIED COVERAGE SECTIONS)

In consideration of the additional premium of $72,000 (less a return premium of $36,296, for a net premium due of $35,704), it is hereby understood and agreed that, solely with regard to the coverage afforded under Endorsement #28, Program Participant Endorsement - H&W Franchise Holdings, LLC and pursuant to the terms and conditions of Clause 8 "DISCOVERY CLAUSE" of the General Terms and Conditions, and solely with respect to the **Coverage Section(s)** listed in paragraph 5., below, as of 12:01 am 06/28/2018 ("**Effective Time**") this policy is amended as follows:

1.      Clause 8. "DISCOVERY CLAUSE" of the General Terms and Conditions is deleted in its entirety and replaced with the following:

      8.      RUNOFF/DISCOVERY CLAUSE

      The **Named Entity** shall have the right to a period of [6] year(s) following the **Effective Time** (herein referred to as the "**Discovery Period**") in which to give written notice to the **Insurer** of **Claim(s)** first made against the **Insured(s)** during said **Discovery Period** for any **Wrongful Act(s)** occurring on or prior to the **Effective Time** and otherwise covered by this **Policy**.

2.      Clause 7. "CANCELLATION CLAUSE" of the General Terms and Conditions is deleted in its entirety and replaced with the following:

      7.      CANCELLATION CLAUSE

      This policy may not be canceled, other than by or on behalf of **Insurer** for non-payment of premium (including the nonpayment of any additional premium for this endorsement). In the event of nonpayment of premium the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1 of the Declarations, written notice stating when, not less than the minimum time allowed pursuant to the applicable state law, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** (or **Discovery Period**, as the case may be) terminates at the date and hour specified in such notice.

      The premium for this policy shall be fully earned at inception.

3.      Clause 9. "CHANGE IN CONTROL OF NAMED ENTITY" of the General Terms and Conditions, is deleted in its entirety.

4.      It is further understood and agreed that this policy shall not provide coverage for any **Claim(s)** alleging **Wrongful Act(s)** occurring after the **Effective Time**.

* Subject to Protective Order *

ENDORSEMENT# *68*   (Continued)

This endorsement, effective *12:01 am*     *June 28, 2018*         forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

5.    The coverage afforded by this endorsement shall  be applicable solely to the
following **Coverage Section(s)**:

APPLICABLE COVERAGE SECTIONS:

D&O Coverage Section
EPL Coverage Section
FLI Coverage Section

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      **BRANCH          END 68**
             **Archive Copy**
                      * Subject to Protective Order *

**AIGS.000796**

**ENDORSEMENT#** *69*

This endorsement, effective *12:01 am*     *June 28, 2018*                    forms a part of
policy number   *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|-------------|--------------|------------|
| MNSCPT | | DISCOVERY/RUNOFF ELECTED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

(1/05)

*Archive Copy*     *END 069*
*BRANCH*          * Subject to Protective Order *

**AIGS.000797**

**FORMS SCHEDULE**

Policy Number: 01-309-86-42
Division No:  39
Insured Name:  SEE PROGRAM PARTICIPANT ENDORSEMENT

Effective  Date: March 31, 2018
Expiration Date: March 31, 2020

Print date:  Aug 20, 2018
Underwriter Name:PATRICK CAIN                         Printed by: JESSON AMANEO
Underwriter Phone # : 646-857-1481                    Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ MNSCPT | MNSCPT | PROGRAM PARTICIPANT ENDORSEMENT - ACM HOLDCO, LP |
| ☐ MNSCPT | MNSCPT | FOR-PROFIT HEALTHCARE ORGANIZATION AMENDATORY ENDORSEMENT - ACM HOLDCO, LP |
| ☐ MNSCPT | MNSCPT | PROFESSIONAL LIABILITY EXCLUSION |
| ☐ MNSCPT | MNSCPT | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| ☐ QE3921 | SYSLIB | FORMS INDEX (AMENDED) |

**NUSFRM**

*Archive Copy*

* Subject to Protective Order *

**AIGS.000798**

**AIG Specialty Insurance Company**
80 Pine Street
New York, NY 10005

212-458-5000
**http://www.aig.com**
*NOTICE:THIS INSURER IS NOT LICENSED IN THE STATE OF*
*NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.*



August 20, 2018

Virginia Mcmunigal
WILLIS OF NEW YORK, INC
1 WORLD FINANCIAL CENTER
200 LIBERTY STREET
NEW YORK, NY 10281

RE:  **SEE PROGRAM PARTICIPANT ENDORSEMENT**

Policy Number:  **01-309-86-42**
Product:  PrivateEdge Plus
Policy Period:  March 31, 2018 - March 31, 2020

Dear Virginia

I am happy to deliver to you the original and copy(ies) of the policy and/ or endorsement(s) for the captioned account.

Please visit www.aig.com/business for additional information on AIG products and services.

If you have any questions, please feel free to contact me at the below listed number.

Very truly yours,

PATRICK CAIN
Underwriting Analyst
646-857-1481
Patrick.Cain@aig.com

Enc.

1503641

*BRANCH Archive Copy*
AIG
* Subject to Protective Order *

**AIGS.000799**

**ENDORSEMENT# *73***

This endorsement, effective *12:01 am    June 29, 2018*    forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

**PROGRAM PARTICIPANT ENDORSEMENT - ACM HOLDCO, LP**

In consideration of the premium amount charged for the **Named Entity** listed on this
endorsement and any **Insured** of such **Named Entity**, as such premium amount is set forth
in Item 7 of this endorsement, it is understood and agreed that the following terms and
conditions are particular to such **Named Entity** and any **Insured** thereof:

Item 1.   **NAMED ENTITY**:      ACM HOLDCO, LP

          **MAILING ADDRESS**:    6225 N. STATE HWY, STE 200
                                    IRVING, TX 75038

          **STATE OF INCORPORATION/FORMATION OF THE NAMED ENTITY**: DE

Item 2.   **PER POLICY YEAR DESIGNATED POLICY AGGREGATE LIMIT OF LIABILITY**:
          $15,000,000

| Coverage Section | Per Policy Year Designated Shared Limit of Liability | Per Policy Year Designated Separate Limit of Liability |
|---|---|---|
| D&O Coverage Section: | $10,000,000 | N/A |
| EPLI Coverage Section: | $5,000,000 | N/A |
| FLI Coverage Section: | N/A | $5,000,000 |

Item 3.   **OTHER POLICY YEAR LIMITS OF LIABILITY**:

    a.  Crisis Management Fund for D&O:  $50,000
    b.  Costs of Investigation Coverage Sublimit for D&O:  $250,000
    c.  Voluntary Compliance Loss Sublimit of Liability for FLI:  $100,000
    d.  HIPAA Penalties Sublimit of Liability for FLI:  $250,000
    e.  Contract Claim Defense Costs Coverage Sublimit of Liability for D&O:  $3,000,000
    f.  Side A Excess Limit of Liability  $1,000,000

       excess aggregate limit of liability for all **Non-Indemnifiable Loss**
       solely for **Executives** of a C **ompany** (including **Defense Costs**)
       under the **D&O Coverage Section** (herein the " **Side A Excess Limit**
       **of Liability**")

* Subject to Protective Order *

**ENDORSEMENT#** *73*   **(Continued)**

This endorsement, effective *12:01 am*   *June 29, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

Item 4.   **CONTINUITY DATES**:

| | |
|---|---|
| D&O Coverage Section: | 06/29/2018 |
| EPLI Coverage Section: | 05/10/2013 |
| FLI Coverage Section: | 05/10/2013 |

Item 5.   **PRIOR ACT DATES**:

| | |
|---|---|
| D&O Coverage Section: | 06/29/2018 |
| EPLI Coverage Section: | 05/10/2013 |
| FLI Coverage Section: | 05/10/2013 |

Item 6.   **RETENTION AMOUNTS (for Loss arising from Claims alleging the same Wrongful Act or Related Wrongful Acts):**

| | |
|---|---|
| D&O Coverage Section: | $50,000 |
| EPLI Coverage Section: | $100,000 |
| FLI Coverage Section: | $0 |

*Note: No Retention amount is applicable to non-Indemnifiable Loss.*

Item 7.

| **PREMIUM POLICY YEAR  1:** | $50,122 |
|---|---|
| (Effective Date of Program Participant Endorsement to 03/31/2019) | Premium due  30  days  from Effective Date |
| **PREMIUM POLICY YEAR 2:** | $66,525 |
| (03/31/2019 or Effective Date of Program Participant, whichever is later, to 03/31/2020) | Premium due  30  days  from Effective Date |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      **BRANCH        END 73**
            *Archive Copy*
* Subject to Protective Order *      **AIGS.000801**

ENDORSEMENT# *74*

This endorsement, effective  *12:01 am      June 29, 2018*      forms a part of
policy number  *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**FOR-PROFIT HEALTHCARE ORGANIZATION AMENDATORY ENDORSEMENT - ACM HOLDCO, LP**

This endorsement modifies insurance provided under the Manuscript Form for TPG Portfolio.

In consideration of the premium charged, it is hereby understood and agreed that, solely with regard to the coverage afforded in Endorsement #73 PROGRAM PARTICIPANT ENDORSEMENT - ACM HOLDCO LP, the policy is amended as follows:

I.   AMENDMENTS TO THE GENERAL TERMS & CONDITIONS SECTION

     The General Terms & Conditions section is amended as follows:

A.  In Clause 2. "DEFINITIONS" of the General Terms & Conditions Section, the definition of Company is amended to include the following at the end thereof:

Company shall also include any auxiliary, guild or foundation formed solely for the benefit of the Named Entity and of which the book value of such entity's assets determined in accordance with Generally Accepted Accounting Principles totals less than 10% of the similarly calculated assets of the Named Entity as of the inception date of the Policy Period.

II.  AMENDMENTS TO THE D&O COVERAGE SECTION

     The D&O Coverage Section, if purchased, is amended as follows:

1.   In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Individual Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly constituted committee; any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialing decision concerning an individual physician; any individual in charge of any operational department; and any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

2.   In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of Loss is amended to include the following at the end thereof:

MNSCPT          *BRANCH* *Archive Copy* *END 74*                          AIGS.000802

* Subject to Protective Order *

ENDORSEMENT# *74*   (Continued)

This endorsement, effective *12:01 am*   *June 29, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*


1.  IRS Fines:

Loss shall include  Defense Costs incurred  in connection with  a Claim seeking  an
assessment of taxes, initial taxes, additional taxes, tax deficiencies, excise taxes or
penalties pursuant  to the following  sections of  the Internal  Revenue  Code of  1986 (as
amended):

Section 4911 (tax on excess expenditures to influence legislation);
Section 4940 (a) (tax on net investment income of tax-exempt foundations);
Section 4941 (taxes on self-dealing);
Section 4942 (taxes on failure to distribute income);
Section 4943 (taxes on excess business holding);
Section 4944 (taxes on investments which jeopardize charitable purpose);
Section 4945 (taxes on taxable expenditures);
Section 6652 (c) (1)  (A) and (B) (penalties  for failure to file  certain information returns or
registration statements);
Section 6655 (a) (1) (penalties for failure to pay estimated income tax); and
Section 6656 (a) and (b) (penalties for failure to make deposit of taxes).

2.  EMTALA AND HIPAA FINES AND PENALTIES

Notwithstanding the foregoing, Loss shall also include:

(1)  civil fines and penalties  assessed upon an Insured  for a violation of  EMTALA, subject
to the EMTALA Sub-limit of Liability; and

(2)  HIPAA Penalties, where  insurable by law,  subject to the  HIPAA Penalties Sublimit  of
Liability.

3.  GOVERNMENTAL FUNDING DEFENSE COST COVERAGE

Notwithstanding the  foregoing,  Loss shall not  include  the return of funds  which were
received from  any federal,  state  or local  governmental agency  or  any interest,  fines or
penalties arising out of  the return of such  funds; provided, however, that  this policy shall
pay Defense Costs in connection with any Claim made against  an Insured for the return of
such funds, subject to the Government Funding Defense Costs Sublimit of Liability and any
co-insurance or separate retention provided for such coverage in this policy.


MNSCPT        *BRANCH* *Archive Copy* *END 74*                    AIGS.000803
* Subject to Protective Order *

ENDORSEMENT# *74*   **(Continued)**

This endorsement, effective *12:01 am*   *June 29, 2018*   forms a part of
policy number *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

4.   EXCESS BENEFIT PENALTY COVERAGE

"Loss" shall also include any "Excess Benefits" penalty assessed in the amount of 10% by
the Internal Revenue Service ("IRS") against any Insured(s)  for management's involvement
in the award of an "Excess Benefit" and the Defense Costs attributable thereto.  Loss shall
specifically exclude: (1) any 25% penalty  assessed by the IRS against  an Insured deemed
to have received an Excess Benefit;  (2) Defense Costs incurred to defend  any Insured if it
has been in  fact determined that  such individual received  an Excess Benefit;  and (3) any
200% penalty assessed by the IRS for failure to correct the award of an Excess Benefit. In
all events, the assessment by the IRS of a 200% penalty  against any Insured shall void ab
initio all coverage afforded pursuant to this paragraph.

3.   In Clause 2. "DEFINITIONS" of the D&O Coverage Section, the definition of "Wrongful
     Act" is amended by adding the following to the end thereof:

(iv) any violation of the EMTALA.

(v)  any violation of the HIPAA Privacy Regulations.

4.   In Clause 4. "EXCLUSIONS" of  the D&O Coverage Section, paragraph (l)  is deleted in
     its entirety and replaced with the following:

(l)   alleging, arising out of, based upon or attributable  to bodily injury, sickness, disease or
      death of  any  person, or  damage  to, loss  of use  of or  destruction of any  tangible
      property; provided, however, this exclusion shall not apply to any Securities Claim.

5.   Clause 5. "LIMIT OF LIABILITY" of the D&O Coverage Section is amended by inserting
     the following at the end thereof:

     EMTALA SUBLIMIT OF LIABILITY

The aggregate  limit of  the Insurer's  liability for  all Loss  in connection  with all EMTALA
Claims in the aggregate made and reported  during the Policy Period or Discovery Period  (if
applicable) is $100,000 (hereinafter "EMTALA  Sublimit of  Liability").   The  EMTALA
Sub-limit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability
and any  Separate  Limit of Liability  or  Shared  Limit  of Liability applicable  to the  D&O
Coverage Section, and  shall in  no way serve  to increase  such Policy  Aggregate Limit of
Liability, Separate Limit of Liability or Shared Limit of Liability.

* Subject to Protective Order *

ENDORSEMENT# *74*  (Continued)

This endorsement, effective *12:01 am*    *June 29, 2018*      forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

GOVERNMENT FUNDING DEFENSE COSTS SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all Defense Costs in connection with a Claim for the return of funds which were received from any federal, state or local governmental agency or any interest, fines or penalties arising out of the return of such funds is $1,000,000 (the "Government Funding Defense Costs Sublimit of Liability"). The Government Funding Defense Costs Sub-Limit of Liability is part of and not in addition to the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability. With respect to any such sublimited Defense Costs, it is further understood and agreed that the Insurer shall be liable to pay only 50% of such Defense Costs, excess of a retention in the amount of $1,000,000, up to the Government Funding Defense Costs Sublimit of Liability. It is a condition of this insurance that the remaining 50% of such Defense Costs shall be carried by the Insureds at their own risk and be uninsured.

HIPAA PENALTIES SUBLIMIT OF LIABILITY

The aggregate limit of the Insurer's liability for all HIPAA Penalties in the aggregate under this policy is $100,000 (the "HIPAA Penalties Sublimit of Liability"). The HIPAA Penalties Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the D&O Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

III. AMENDMENTS TO THE EPL COVERAGE SECTION

The EPL Coverage Section, if purchased, is amended as follows:

A. In Clause 2. "DEFINITIONS" of the EPL Coverage Section, the definition of Individual Insured(s) is amended to include the following at the end thereof:

Individual Insured(s) shall also include any past, present or future member of any duly constituted committee; any individual person engaged by a duly constituted committee for purposes of providing an expert opinion with regard to peer review or credentialing decision concerning an individual physician; any individual in charge of any operational department; and any medical director, staff physician or faculty member of the Company, regardless of whether or not such person is directly employed by the Company or is considered to be an independent contractor.

* Subject to Protective Order *

ENDORSEMENT# *74*   (Continued)

This endorsement, effective *12:01 am*   *June 29, 2018*   forms a part of
policy number   *01-309-86-42*
issued to   *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by   *AIG Specialty Insurance Company*

B.  In the definition of Employment Practices  Violation in Clause 2. "DEFINITIONS" of  the
EPL Coverage Section, subparagraph (xi) is deleted in its entirety and replaced with the
following:

(xi) defect in peer review or credentialing;

(xii) with respect to any  of the foregoing items  (i) through (xi)  of this definition: negligent
hiring, retention, training or supervision, infliction of emotional distress or mental
anguish, failure  to provide  or enforce  adequate or  consistent corporate  policies and
procedures, or violation of an individual's civil rights;

C.  Clause 3. "EXCLUSIONS" of the EPL Coverage Section is amended by deleting
paragraphs (e) and (h) thereof in their entirety and replacing them with the following:

(e)  alleging, arising out of, based upon or  attributable to bodily injury, sickness, disease or
death of  any  person, or damage  to, loss  of  use  of or  destruction of any  tangible
property; provided, however, this exclusion  shall not apply to any  a Claim for
Retaliation.

(h)  alleging, arising out of,  based upon or attributable to any actual  or alleged contractual
liability of any Insured Company under  any express contract or agreement  (other than
any employee handbooks or human resources  policies and  procedures, or any
organizational or  management advisory  documents of any  Named Entity); provided,
however, this exclusion shall not apply to:

(i)   liability which would have  attached in  the  absence of  such express contract or
agreement; or

(ii)  Defense Costs

(iii)  Individual Insureds;

(iv) Claims for  Loss alleging Wrongful Acts of an  Insured with respect to hospital practice
privileges, credentialing or peer review matters;

a.  The following clause is inserted at the end of the EPL Coverage Section:

* Subject to Protective Order *

ENDORSEMENT# *74*   (Continued)

This endorsement, effective   *12:01 am*      *June 29, 2018*        forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*


HC-1    THIRD PARTY HUMAN CLINICAL TRIAL CLAIMS SUBLIMIT OF LIABILITY

The following provisions shall apply in addition to the provisions of Clause 4. "LIMIT OF LIABILITY" of the General Terms and Conditions:

The aggregate limit of the Insurer's liability for all Loss under the EPL Coverage Section in connection with all Third Party Human Clinical Trial Claims in the aggregate is $100,000 (hereinafter called the "Third Party Human Clinical Trial Claims Sublimit of Liability").  The Third Party Human Clinical Trial Claims Sublimit of Liability is part of, and not in addition to, the Policy Aggregate Limit of Liability and any Separate Limit of Liability or Shared Limit of Liability applicable to the EPL Coverage Section, and shall in no way serve to increase such Policy Aggregate Limit of Liability, Separate Limit of Liability or Shared Limit of Liability.

IV.  DEFINITIONS USED IN ENDORSEMENT

As used in this endorsement, the following terms have the meanings set forth below:

HC-1    "EMTALA" means the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C., 1396dd et seq., and any similar state or local statute.

HC-2    "EMTALA Claim" means any Claim alleging a violation of EMTALA, including, without limitation, any Claim seeking civil fines and penalties for a violation of EMTALA.

HC-3    "Excess Benefits" means an excess benefit as defined in the Taxpayer Bill of Rights Act, 2, 26 U.S.C. 4958.

HC-4    "HIPAA Penalties" means civil money penalties imposed upon an Insured for violation of the HIPAA Privacy Regulations.

HC-5    "HIPAA Privacy Regulations" means the privacy provisions of Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder, and amendments thereto, including, but not limited to, any amendment pursuant to the Health Information Technology for Economic and Clinical Health ("HITECH Act")

HC-6    "Third Party Human Clinical Trial Claim" means any Third Party Violation in connection with any study utilizing humans to provide clinical data for the assessment of a medical treatment, procedure or pharmaceutical.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT      **BRANCH        END 74**
            *Archive Copy*                                    **AIGS.000807**
* Subject to Protective Order *

ENDORSEMENT# *75*

This endorsement, effective *12:01 am     June 29, 2018*          forms a part of
policy number  *01-309-86-42*
issued to    *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by    *AIG Specialty Insurance Company*

### PROFESSIONAL LIABILITY EXCLUSION
### (D&O COVERAGE SECTION)

In consideration of the premium charged, solely with respect to the **Insureds** under Endorsement #73 PROGRAM PARTICIPANT ENDORSEMENT- ACM HOLDCO, LP, it is hereby understood and agreed that Clause 4. EXCLUSIONS of the **D&O Coverage Section** is amended to add the following exclusion:

*Solely with respect to Coverage B(i) of this **D&O Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim**:*

1. made by or on behalf of any client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform professional services or supporting services for that client; or

2. made by or on behalf of any third-party beneficiary of any professional services performed for a client of any **Insured** that seeks damages, specific performance or another form of compensation for any act, error or omission in the performance of or any failure to perform those professional services or supporting services for that client.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT        *BRANCH          END 75*
              *Archive Copy*
* Subject to Protective Order *

AIGS.000808

ENDORSEMENT# *76*

This endorsement, effective   *12:01 am        June 29, 2018*                forms a part of
policy number   *01-309-86-42*
issued to     *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by     *AIG Specialty Insurance Company*

**SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION
(D&O AND EPL COVERAGE SECTIONS)**

In consideration of the premium charged, it is hereby understood and agreed that solely with regard to the coverage afforded in Endorsement #73, Program Participant Endorsement - ACM HOLDCO, LP, that solely with respect to **Loss** as may have otherwise been covered under either the **D&O Coverage Section** or the **EPL Coverage Section**, the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** (including but not limited to any derivative or representative class actions) made against any **Insured** alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, any **Sexual Misconduct**, child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

"**Sexual Misconduct**" means any licentious, immoral or sexual behavior, sexual abuse, sexual assault, or molestation intended to lead to or culminating in any sexual act against any individual.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)
© All rights reserved.

MNSCPT     ***BRANCH        END 76***
*Archive Copy*
* Subject to Protective Order *
**AIGS.000809**

**ENDORSEMENT#** *77*

This endorsement, effective *12:01 am      June 29, 2018*                    forms a part of
policy number   *01-309-86-42*
issued to *SEE PROGRAM PARTICIPANT ENDORSEMENT*

by      *AIG Specialty Insurance Company*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| MNSCPT | | PROGRAM PARTICIPANT ENDORSEMENT - ACM HOLDCO, LP |
| MNSCPT | | FOR-PROFIT HEALTHCARE ORGANIZATION AMENDATORY ENDORSEMENT - ACM HOLDCO, LP |
| MNSCPT | | PROFESSIONAL LIABILITY EXCLUSION |
| MNSCPT | | SEXUAL MISCONDUCT AND CHILD ABUSE EXCLUSION |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE
Or Countersignature (In states where applicable)

*Archive Copy*        *END 077*
*BRANCH*

(1/05)

* Subject to Protective Order *

AIGS.000810